IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BEARBOX LLC and AUSTIN STORMS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-534-MN |
| | ) | |
| LANCIUM LLC, MICHAEL T. MCNAMARA, and RAYMOND E. CLINE, JR. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>AMENDED COMPLAINT</u>

Plaintiffs BearBox LLC ("BearBox") and Austin Storms (collectively, "Plaintiffs") bring this action against Lancium LLC ("Lancium"), Michael T. McNamara, and Raymond E. Cline, Jr. (collectively "Defendants") to correct the inventorship of U.S. Patent No. 10,608,433 (the "'433 Patent") and to recover damages, injunctive relief, declaratory relief, and other remedies for Defendants' wrongful actions to obtain, misuse, disclose, and claim as their own Plaintiffs' proprietary cryptocurrency mining technology. Plaintiffs further allege as follows:

## INTRODUCTION

1.      This case is about the Defendants' theft of inventions that rightfully belong to Plaintiffs.

2.      Plaintiffs developed proprietary technology relating to cryptocurrency mining systems (the "BearBox Technology").  By way of background, the BearBox Technology generally relates to an energy-efficient cryptocurrency mining system and related methods that reduce the inefficiency and environmental impact of energy-expensive mining operations by better utilizing available energy resources to increase stability of the energy grid, minimize a

mining operation's impact on peak-demand, and also alleviate energy over-supply conditions. The BearBox Technology can be used to mine cryptocurrency, such as Bitcoin.

3.      The Defendants induced the Plaintiffs to disclose the BearBox Technology to them under the guise of a possible business deal between Defendants and Plaintiffs to jointly commercialize the BearBox Technology. Before disclosing the BearBox Technology to Defendants, Plaintiffs obtained assurances of confidentiality from Defendants.

4.      The Defendants stole the BearBox Technology from Plaintiffs by converting and misappropriating it and claiming it as their own. Defendants filed a U.S. patent application that wrongfully disclosed the BearBox Technology to the U.S. Patent and Trademark Office and ultimately to the public. The claimed subject matter of the '433 Patent falls fully within the scope of the BearBox Technology. And by obtaining the '433 Patent with claims directed to the BearBox Technology, the Defendants have wrongfully obtained a patent covering the BearBox Technology and wrongfully claimed the BearBox Technology as their own.

5.      Plaintiffs bring this action to correct the named inventors on the '433 Patent. The inventions claimed in the '433 Patent are inventions conceived by Storms, founder and president of BearBox.

## PARTIES

6.      Plaintiff BearBox LLC ("BearBox") is a limited liability company organized and existing under the laws of Louisiana with its principal place of business at 4422 Highway 22, Mandeville, Louisiana 70471.

7.      Plaintiff Austin Storms is an individual residing in Mandeville, Louisiana.

8.      On information and belief, Defendant Lancium is a Delaware limited liability company with its principal place of business at 6006 Thomas Rd, Houston, Texas 77041. On

information and belief, Lancium has a registered agent capable of accepting service in this district, Harvard Business Services, Inc. with a place of business at 16192 Coastal Highway, Lewes, DE 19958.

9.      On information and belief, Defendant Michael T. McNamara is the Chief Executive Officer and a founder of Lancium and resides in Newport Beach, California. Defendant McNamara is named as a purported inventor on the face of the '433 Patent.

10.     On information and belief, Defendant Raymond E. Cline, Jr. is the Chief Computing Officer of Lancium and resides in Houston, Texas. Defendant Cline is named as a purported inventor on the face of the '433 Patent.

**JURISDICTION**

11.     This is an action seeking correction of the named inventors of a United States patent under 35 U.S.C. § 256. As such, this action arises under the laws of the United States.

12.     This Court has exclusive subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because the matter arises under an Act of Congress relating to patents, specifically 35 U.S.C. § 256.

.

13.     The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over all asserted claims under state law because those claims are so related to the claims in this action that arise under federal law that they form part of the same case or controversy.

14.     The Court also has jurisdiction pursuant to 28 U.S.C. § 1332, as complete diversity of citizenship exists among the parties, and the amount in controversy exceeds $75,000. Plaintiff BearBox is a citizen of the State of Louisiana because it is organized under the laws of the State of Louisiana and has its principal place of business in the State of Louisiana. Plaintiff

Storms is a citizen of the State of Louisiana because he resides in the State of Louisiana. In contrast, none of the Defendants are citizens of the State of Louisiana. Defendant Lancium is a citizen of the States of Delaware and Texas because it is organized under the laws of the State of Delaware and has its principal place of business in the State of Texas. Defendant McNamara is a citizen of the State of California because he resides in the State of California. Defendant Cline is a citizen of the State of Texas because he resides in the State of Texas. Therefore, because the Plaintiffs are both citizens of the State of Louisiana (and no other states) for purposes of diversity jurisdiction, and none of the Defendants are citizens of the State of Louisiana, complete diversity exists among the parties.

15.     This Court has general personal jurisdiction over Lancium because it is organized under the laws of the State of Delaware and because it maintains an ongoing presence in this District at least through its registered agent.

16.     This Court has specific personal jurisdiction over each of Defendants McNamara and Cline at least under Title 6 of the Delaware Code, § 18-109(a).

17.     On information and belief, Defendant McNamara is the Chief Executive Officer of Lancium. On information and belief, as the Chief Executive Offer, McNamara participates materially in the management of Lancium, has control and/or decision-making authority over Lancium, and is a key individual who takes actions on behalf of Lancium.

18.     McNamara is a necessary or proper party to this action because he has a legal interest in the dispute that is separate from the interests of Lancium and because Plaintiffs' claims against him arise out of the same facts and occurrences as the claims against Lancium. Accordingly, it serves judicial economy to consider the claims against Lancium and Defendant

McNamara together. Plaintiffs' claims against Defendant McNamara arise out of his exercise of his powers as Chief Executive Officer of Lancium.

19.     On information and belief, Defendant Cline is the Chief Computing Officer of Lancium. On information and belief, as the Chief Computing Officer, Cline participates materially in the management of Lancium, has control and/or decision-making authority over Lancium, and is a key individual who takes actions on behalf of Lancium.

20.     Cline is a necessary or proper party to this action because he has a legal interest in the dispute that is separate from Lancium's interest and because Plaintiffs' claims against him arise out of the same facts and occurrences as the claim against Lancium. Accordingly, it serves judicial economy to consider the claims against Lancium and Defendant Cline together. Plaintiffs' claims against Defendant Cline arise out of his exercise of his powers as Chief Computing Officer of Lancium.

21.     The actions of Defendants McNamara and Cline establish sufficient minimum contacts with Delaware under Delaware law and the United States Constitution to give this Court personal jurisdiction over each of them.

22.     As described below, each Defendant has committed acts giving rise to this action.

## VENUE

23.     Venue is proper in this District under 28 U.S.C. § 1391(b)(3) because there is no district in which an action may otherwise be brought as provided in § 1391(b) and Defendant Lancium is subject to the Court's personal jurisdiction with respect to this action.

## PLAINTIFFS' PROPRIETARY
## CRYPTOCURRENCY MINING TECHNOLOGY

24.     As of 2018, the amount of energy required to process computer algorithms to mine cryptocurrencies like Bitcoin was three times greater than the energy required to physically mine gold. Conventional mining of "copper, gold, platinum, and rare earth oxides are 4, 5, 7, and 9 megajoules to generate one U.S. dollars," while "it costs an average of 17 megajoules to mine $1 worth of bitcoin."[1] The large amount of energy required to mine cryptocurrencies can make such mining financially prohibitive, and even when financially lucrative, the large energy requirements make cryptocurrency mining harmful to the global environment, with studies showing carbon dioxide emissions from cryptocurrency mining "single-handedly rais[ing] global temperatures by 2 degrees by 2023." *Id*.

25.     At the same time, some forms of electrical power generation are terribly inefficient. When producers of electrical power are unable to quickly adjust their operations in response to dynamically changing grid conditions, these producers frequently sell power at low or even negative prices until demand and market prices increase.

26.     Because cryptocurrency mining is a computationally demanding process, it requires significant energy. As a result, industrial-scale cryptocurrency mining places a large energy burden on the power grid, driving demand and costs as well as increasing the likelihood of grid component failure.

27.     In late 2018 and early 2019, Austin Storms sought to address these problems by developing energy-efficient cryptocurrency mining systems and methods that reduce the environmental impact of energy-intensive mining operations. Storms conceived of a system that

---

[1] https://www.marketwatch.com/story/mining-bitcoin-is-3-times-more-expensive-than-mining-gold-research-paper-finds-2018-11-06

better uses available energy resources to increase the stability of the energy grid, minimize a mining operation's impact on peak-demand, and alleviate energy over supply conditions, all while decreasing the overall energy costs of the mining operation and increasing its profitability.

28.     Austin Storms conceived of and developed the BearBox Technology. Storms is the president and founder of BearBox. The BearBox Technology includes hardware and software components. Structurally, the BearBox Technology includes a housing for a plurality of miners (such as ASICs, graphics cards, or the like) under the direction of a smart controller(s).

29.     The smart controller monitors various external factors, such as current and expected energy demand and pricing information, current and expected cryptocurrency pricing, and the like. Based on these external factors, the system may determine whether conditions are appropriate to mine cryptocurrency and, if so, subsequently mines the cryptocurrency. Optionally, the system also includes other components for cooling, air-filtration, and related features.

30.     In the BearBox Technology, a controller (such as a power distribution unit, network interface, or the like) monitors various external factors, such as current and expected energy demand/pricing information, current and expected cryptocurrency pricing, and the like. Based on these external factors, the controller(s) determines appropriate times to mine cryptocurrency in accordance with a desired performance strategy (for example, profitability thresholds). At the appropriate times, the controller initiates mining, for example, by powering on the miners.

**DEFENDANTS WRONGFULLY CLAIM THE
BEARBOX TECHNOLOGY AS THEIR OWN**

31.     In May 2019, Storms attended the Fidelity FCAT Mining Summit in Boston,
Massachusetts on behalf of BearBox to promote the BearBox Technology and seek potential
customers for his revolutionary system.

32.     While at the conference, Storms met Defendant McNamara. Defendant
McNamara showed immediate interest in the BearBox Technology. Under the rouse of a
potential business relationship, McNamara pumped Storms for details about the BearBox
Technology over the course of several exchanges, which included conversations, emails, and text
messages about the BearBox Technology. Storms took McNamara to dinner where McNamara
continued to pump Storms for details about the BearBox Technology. At all times before and
during Storms's disclosure of this information, Storms told McNamara that the BearBox
Technology was confidential, and Storms relied on McNamara's good faith assurances that he
would keep confidential the information he received from Storms about the BearBox
Technology.

33.     Following the conference, McNamara continued to press Storms for additional
details about the BearBox Technology via text messaging and email. Again relying on Defendant
McNamara's assurances of confidentiality, Storms provided annotated system diagrams,
component specifications, and modeled data sets to mimic real-world Bitcoin and energy prices.
Storms included express confidentiality notices in his communications with Defendant
McNamara.

34.     After Storms disclosed the BearBox Technology to McNamara, McNamara
abruptly ended all communications with Storms.

35.     Storms last communicated with McNamara on May 9, 2019 via e-mail, and after sending that message, Storms did not hear from McNamara again.

36.     At that time, Storms understood that McNamara was not interested in investing in the BearBox Technology. He had no reason to suspect that McNamara would steal the BearBox Technology and claim it as his own.

37.     On information and belief, Defendants filed U.S. provisional patent application No. 62/927,119 on October 28, 2019, naming Defendants McNamara and Cline as the purported sole joint inventors of the inventions disclosed in the application.

38.     In addition to falsely claiming to be the inventors of the inventions disclosed in the application, Defendants wrongfully disclosed, without authorization, the confidential BearBox Technology to the United States Patent and Trademark Office.

39.     Likewise, on December 4, 2019, Defendants filed U.S. Patent Application Serial No. 16/702,931, once again naming Defendants McNamara and Cline as the purported sole joint inventors of the inventions disclosed in the application.

40.     The '433 Patent issued on March 31, 2020 naming Defendants McNamara and Cline as the sole purported inventors on the face of the patent. A true and correct copy of the '433 Patent is attached hereto as Exhibit A.

41.     The inventions claimed in the '433 patent fall within the scope of the BearBox Technology, yet Defendants falsely identified themselves as the inventors of the claimed inventions, when, in fact, Storms is the sole inventor of the claimed inventions.

42.     On information and belief, McNamara and Cline assigned their purported rights in the '433 patent to Lancium. On information and belief, at all times, Lancium was aware that

McNamara and Cline, both officers of Lancium, were not the rightful inventors of the BearBox Technology disclosed in the patent and the inventions claimed in the patent.

43.     Defendants McNamara and Cline each submitted signed declarations falsely swearing that they were "an original joint inventor" of the claimed subject matter . A true and correct copy of Defendant McNamara's and Defendant Cline's declarations are attached as Exhibit B.

44.     On August 14, 2020, Lancium filed a lawsuit in the U.S. District Court for the Western District of Texas against Layer1 Technologies, Inc. ("Layer1") asserting that Layer1 infringes the '433 patent. That case is captioned *Lancium LLC v. Layer1 Technologies, Inc.*, Case No. 6:20-cv-739 (W.D. Texas) (the "Layer1 Lawsuit").

45.     As part of the Layer1 Lawsuit, Defendants falsely asserted that McNamara and Cline are the sole inventors of the inventions claimed in the '433 patent.

46.     Plaintiffs became aware of Defendants' wrongful use of the BearBox Technology on or about August 17, 2020, when they learned about the Layer1 Lawsuit through a press release dated August 14, 2020, posted by Lancium on PRNewswire. That press release is available at the following URL: https://www.prnewswire.com/news-releases/controllable-load-resource-clr-market-leader-lancium-files-patent-infringement-lawsuit-against-layer1-301112687.html.

47.     Before seeing the August 14, 2020 press release, Plaintiffs were unaware of Defendants' wrongful use of the BearBox Technology and was unaware of the '433 patent.

48.     On March 5, 2021, Lancium and Layer1 entered a Stipulation to Dismiss with Prejudice in the Layer1 Lawsuit. According to the stipulation, the parties had entered a Settlement Agreement to resolve the Layer1 Lawsuit.

49.     According to a press release issued by Lancium on March 8, 2021, Lancium and Layer 1 "have entered into a mutually beneficial partnership. Layer1 has licensed Lancium's intellectual property and Lancium will provide Smart Response™ software and services to Layer1." The press release is available at the following URL: https://www.prnewswire.com/news-releases/lancium-and-layer1-settle-patent-infringement-suit-301242602.html

50.     On information and belief, as part of the Settlement Agreement between Lancium and Layer1 to settle the Layer1 Lawsuit, Lancium received and continues to receive valuable consideration from Layer1, all of which rightly belongs to Plaintiffs, the rightful owners of the inventions claimed in the '433 Patent.

## COUNT I
## CORRECTION OF INVENTORSHIP FOR THE '433 PATENT:
## AUSTIN STORMS AS SOLE INVENTOR

51.     Plaintiffs incorporate the above paragraphs by reference.

52.     Storms is the sole inventor of the subject matter claimed in the '433 Patent.

53.     Through omission, inadvertence, and/or error, Storms was not listed as an inventor on the '433 patent and the currently listed inventors on the '433 patent were improperly listed. The omission, inadvertence, and/or error occurred without any deceptive intent on the part of Storms or BearBox.

54.     Unless Defendants Lancium, McNamara, and Cline are enjoined from asserting that McNamara and Cline are the sole inventors of the '433 Patent in violation of U.S. federal patent laws, Plaintiffs will suffer irreparable injury. Plaintiffs have no adequate remedy at law.

**COUNT II**
**IN THE ALTERNATIVE, CORRECTION OF INVENTORSHIP FOR THE '433**
**PATENT: AUSTIN STORMS AS JOINT INVENTOR WITH THE CURRENTLY**
**NAMED INVENTORS**

55.     Plaintiffs incorporates the above paragraphs by reference.

56.     In the alternative, Storms is a joint inventor of the subject matter claimed in the

'433 Patent and should be added to the individuals currently named as inventors on the '433

Patent.

57.     Through omission, inadvertence, and/or error, Storms was not listed as an

inventor on the '433 patent and the currently listed inventors on the '433 patent were improperly

listed. The omission, inadvertence, and/or error occurred without any deceptive intent on the part

of Storms.

58.     Unless Defendants Lancium, McNamara, and Cline are enjoined from asserting

that McNamara and Cline are the sole inventors of the '433 Patent in violation of U.S. federal

patent laws, Plaintiffs will suffer irreparable injury. Plaintiffs have no adequate remedy at law.

**COUNT III**
**CONVERSION BY LANCIUM, MCNAMARA, AND CLINE**

59.     Plaintiffs incorporates the above paragraphs by reference.

60.     Austin Storms, in his capacity as founder and President of BearBox, conceived,

developed, and reduced to practice the BearBox Technology. Plaintiffs own the BearBox

Technology, related know-how, and related intellectual property. Plaintiffs owned this property

during all relevant time periods in this suit. Information on the BearBox Technology was

provided to Defendants solely for the purposes of evaluation for a potential business relationship

and under strict confidentiality obligations.

61.     Defendants assumed dominion and control over the BearBox Technology by claiming it as their own in the '433 patent. Through their wrongful conduct in obtaining the '433 Patent and claiming the BearBox Technology as their own, the Defendants have wrongfully obtained the purported ability to exclude Plaintiffs and others from using the BearBox Technology. This constitutes unauthorized and unlawful conversion by Defendants.

62.     As a result of Defendants' wrongful actions, Plaintiffs will suffer imminent and irreparable damages in an amount to be proven at trial. In particular, Plaintiffs have been damaged by losing valuable intellectual property from which Plaintiffs would have derived substantial revenue via licensing and/or selling patented products.

## COUNT IV
## UNJUST ENRICHMENT BY LANCIUM, MCNAMARA, AND CLINE

63.     Plaintiffs incorporate the above paragraphs by reference.

64.     Plaintiffs conferred a benefit on Defendants by providing them valuable intellectual property about cryptocurrency mining systems and related confidential information and materials under the boundaries of a potential collaboration between BearBox and Lancium.

65.     Defendants accepted that cryptocurrency mining intellectual property and, indeed, continuously asked Storms to provide more information and materials, having recognized the benefit that Defendants received by having access to the BearBox Technology.

66.     Defendants accepted and retained the BearBox Technology, and used it to their own advantage, at Plaintiffs' expense.

67.     Defendants have been and continue to be unjustly enriched by profiting from their wrongful conduct. In particular, Defendants have unlawfully used Plaintiffs' property by asserting inventorship over the BearBox Technology, and deriving an unjust benefit from

exploiting Storms's cryptocurrency mining inventions. It would be inequitable for Defendants to retain these benefits under these circumstances.

68.     Plaintiffs have incurred, and continue to incur, detriment in the form of loss of money and property as a result of Defendants' wrongful use of Plaintiffs' intellectual property, including the right to any patent based on their own intellectual property. The intellectual property, including the right to any patents based on Plaintiffs' intellectual property and to any patent documents (including assignment documents), U.S. and foreign, are unique and there is no adequate remedy at law.

69.     The harm to Plaintiffs is continuous, substantial, and irreparable.

## COUNT V
## NEGLIGENT MISREPRESENTATION BY LANCIUM AND MCNAMARA

70.     Plaintiffs incorporate the above paragraphs by reference.

71.     In connection with the potential work involving cryptocurrency mining systems and related methods, Storms told Defendant McNamara that the cryptocurrency mining systems and related methods were proprietary to Plaintiffs and not to be used or shared outside of Lancium. Defendant McNamara gave his word that he would abide by this confidentiality. On information and belief, Defendant McNamara agreed to keep the BearBox Technology confidential despite later recklessly incorporating the BearBox Technology into his own patent applications and swearing, as recently as December 4, 2019, that he is an inventor of the BearBox Technology. Storms relied on Defendant McNamara's assurances of confidentiality and continued to share details about the BearBox Technology with Defendants.

72.     If Plaintiffs had known that Defendants would secretly incorporate the BearBox Technology into Defendants' own patent applications to claim them as Defendants' intellectual

property, Plaintiffs would not have continued working with and sharing intellectual property with Defendants.

73.     Plaintiffs suffered a pecuniary loss based on this reliance including the loss of potential patent rights, and the costs of Plaintiffs' know-how converted under the guise of a potential business relationship.

## JURY DEMAND

74.     Under Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs respectfully demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, BearBox respectfully requests the following relief:

A.      An order that the Director of the United States Patent and Trademark Office correct the inventorship of the '433 Patent to name Austin Storms as the sole inventor, or, in the alternative, as a joint inventor to one or both of the individuals currently listed as inventors on the '433 Patent;

B.      Alternatively, an order that Defendants sign the requisite documents to correct inventorship of the '433 Patent to name Austin Storms as the sole inventor, or, in the alternative, as a joint inventor to one or both of the individuals currently listed as inventors on the '433 Patent;

C.      A declaration that Austin Storms is the sole inventor, or, in the alternative, is a joint inventor to one or both of the individuals currently listed as inventors on the '433 Patent;

D.      A preliminary and a permanent injunction enjoining Defendants Lancium, McNamara, and Cline from asserting that McNamara or Cline are inventors of the '433 Patent in violation of the United States federal patent laws;

E.      An order that Defendants immediately transfer to Plaintiffs all right, title, and interest in all information, patent applications, patents, technology, products, and other materials in the possession, custody, or control of Defendants that wrongfully constitute, contain, were based on, and/or derived in whole or in part from the use of Plaintiffs' intellectual property;

F.      An order for a constructive trust over all information, patent applications, patents, technology, products, and other materials in the possession, custody, or control of Defendants that wrongfully constitute, contain, were based on, and/or derived in whole or in part from the use of Plaintiffs' intellectual property;

G.      Financial relief including damages, consequential damages, disgorgement of Defendants' ill-gotten profits, Defendants' unjust enrichment, reasonable royalty damages, lost profits damages, reliance damages, and/or all other appropriate financial relief, all in an amount to be determined at trial, with interest;

H.      An award of the amount by which Defendants have been unjustly enriched by their actions set forth in this Complaint and their purported ownership of patents covering Plaintiffs' intellectual property;

I.      A finding that this is an exceptional case warranting imposition of attorney fees against Defendants and an award to Plaintiffs of its reasonable costs and attorney fees incurred in bringing this action pursuant to 35 U.S.C. § 285; and

J.      An award of such further relief at law or in equity, such as preliminary and/or permanent injunctive relief, as the Court deems just and proper.

ASHBY & GEDDES

*/s/ Andrew C. Mayo*

_____
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
amayo@ashbygeddes.com

*Attorneys for Plaintiffs*
*BearBox LLC and Austin Storms*

*Of Counsel:*

Benjamin T. Horton
John R. Labbe
Raymond R. Ricordati, III
Chelsea M. Murray
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive
6300 Willis Tower
Chicago, IL 60606-6357
(312) 474-6300

Dated:  May 24, 2021