**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| BEARBOX LLC and AUSTIN STORMS, | |
| Plaintiffs, | |
| v. | C.A. No. 21-534-MN |
| LANCIUM LLC, MICHAEL T. MCNAMARA, and RAYMOND E. CLINE, JR., | |
| Defendants. | |

**DEFENDANTS LANCIUM LLC, MICHAEL T. MCNAMARA, AND RAYMOND E.
CLINE, JR.'S OPENING BRIEF IN SUPPORT OF
<u>THEIR MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

## TABLE OF CONTENTS

**Page**

Table of Contents ......................................................................................................... i

I.      Introduction ......................................................................................................... 1

II.     Nature and Stage of the Proceedings ................................................................ 2

III.    Summary of Argument ........................................................................................ 3

IV.     Concise Statement of the Facts ......................................................................... 3

V.      Argument ............................................................................................................. 6

    A.      Legal Standards ........................................................................................... 6

    B.      Plaintiffs' State Law Claims Are Preempted By Federal Patent Law ......... 7

        1.      Plaintiffs' Conversion Claim is Preempted ...................................... 7

        2.      Plaintiffs' Unjust Enrichment Claim Is Preempted ......................... 9

        3.      Plaintiffs' Negligent Misrepresentation Claim Is Preempted .......... 11

    C.      Plaintiffs' State Law Claims Fail As A Matter Of Law .............................. 13

        1.      Plaintiffs' Conversion Claim Fails as a Matter of Law Because Intellectual Property Cannot Be Converted ......................................................... 14

        2.      Plaintiffs' Unjust Enrichment Claim Fails As a Matter of Law Because Other Remedies Are Available For the Alleged Conduct ............................... 16

        3.      Plaintiffs' Negligent Misrepresentation Claim Fails as a Matter of Law Because Neither Lancium Nor McNamara Owed a Duty to Plaintiffs .............. 18

VI.     Conclusion ......................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbott Lab. v. NutraMax Prod., Inc.*,
  844 F. Supp. 443 (N.D. Ill. 1994) ...........................................................................14

*Anderson v. Dimon*,
  No. 1:19-cv-1153-MN, 2020 WL 6392814 (D. Del. Nov. 2, 2020) ..........................6

*BASF Agrochemical Prods. v. Unkel*,
  No. 05-1478, 2006 WL 3533133 (W.D. La. Dec. 7, 2006) .....................................15

*Bavarian Nordic A/S v. Acambis Inc.*,
  486 F. Supp. 2d 354 (D. Del. 2007)........................................................................13

*Argyle Indep. Sch. Dist. ex rel. Bd. of Trustees v. Wolf*,
  234 S.W.3d 229 (Tex. App.–Fort Worth 2007)......................................................17

*Brand Coupon Network, LLC v. Catalina Mktg. Corp.*,
  No. 11-00556, 2014 WL 6674034 (M.D. La. Nov. 24, 2014)..................................15

*Brown v. Brown*,
  No. 13-3318, 2013 WL 5947032 (N.D. Cal. Nov. 5, 2013) ......................................9

*Bunge Corp. v. GATX Corp.*,
  557 So.2d 1376 (La. 1990) .....................................................................................19

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997)....................................................................................6

*Canter v. West Pub. Co., Inc.*,
  31 F. Supp. 2d 1193 (N.D. Cal. 1999) ....................................................................12

*Carson v. Dynegy, Inc.*,
  344 F.3d 446 (5th Cir. 2003) ..................................................................................15

*Cenac Inland, LLC v. River Valley Shipyards, LLC*,
  No. CIV.A. 12-2260, 2013 WL 1786641 (E.D. La. Apr. 25, 2013).........................16

*Citisteel USA, Inc. v. Gen. Elec. Co.*,
  78 F. App'x 832 (3d Cir. 2003) ................................................................................6

*Core Wireless Licensing S.A.R.L., v. Apple, Inc.*,
  No. 6:12-cv-100, 2015 WL 4775973 (E.D. Tex. Aug. 11, 2015)............................11

*DHI Group, Inc. v. Kent*,
    No. H-16-1670, 2017 WL 8794877 (S.D. Tex. Apr. 21, 2017)................................................18

*Dorsey v. Money Mack Music, Inc.*,
    304 F. Supp. 2d 858 (E.D. La. 2003) ....................................................................................15

*Doss v. Homecoming Fin. Network, Inc.*,
    210 S.W.3d 706 (Tex. App.–Corpus Christi 2006) ................................................................17

*Eckhardt v. Qualitest Pharms. Inc.*,
    889 F. Supp. 2d 901 (S.D. Tex. 2012) ...................................................................................18

*Eckhardt v. Qualitest Pharms. Inc.*,
    751 F.3d 674 (5th Cir. 2014) .................................................................................................18

*Express One Int'l, Inc. v. Steinbeck*,
    *53 S.W.3d 895 (Tex. App.–Dallas 2001)*..............................................................................15

*Ferrara Fire Apparatus, Inc. v. JLG Indus., Inc.*
    581 Fed. App'x 440 (5th Cir. 2014) ......................................................................................17

*Garza v. Citigroup Inc.*,
    192 F. Supp. 3d 508 (D. Del. 2016).........................................................................................6

*Gen. Elec. Co. v. Wilkins*,
    No. 1:10-cv-674, 2011 WL 3163348 (E.D. Cal. July 26, 2011)...............................................8

*Gerawan Farming, Inc. v. Rehrig Pacific Co.*,
    No. 1:11-cv-1273, 2012 WL 691758 (E.D. Cal. Mar. 2, 2012)............................................7, 8

*Greene v. Gulf Coast Bank*,
    593 So.2d 630 (La. 1992) ................................................................................................19, 20

*HIF Bio, Inc. v, Yung Shin Pharm. Indus. Co., Ltd.*,
    600 F.3d 1347 (Fed. Cir. 2010)................................................................................................7

*House of Raeford Farms of La. LLC v. Poole*,
    No. 19-271, 2021 WL 101837 (W.D. La. Mar. 18, 2021)................................................19, 20

*Hunter Douglas, Inc. v. Harmonic Design, Inc.*,
    153 F.3d 1318 (Fed. Cir. 1998) .........................................................................................7, 12

*James v. J2 Cloud Serv. Inc.*,
    No. 2:16-cv-5769, 2018 WL 6092461 (C.D. Cal. Nov. 19, 2018) ..............................10, 11, 12

*Jeffers v. Kerzner Int'l Hotels Ltd.*,
    319 F. Supp. 3d 1267 (S.D. Fla. 2018) ..................................................................................14

*JP Mack Indus. LLC v. Mosaic Fertilizer, LLC*,
   970 F. Supp. 2d 516 (E.D. La. 2013) .................................................................16

*Landers v. Landers*,
   No. 02-19-00303-CV, 2021 WL 1570011 (Tex. App. –Fort Worth Apr. 22,
   2021) .................................................................................................................17

*Mele v. Fed. Reserve Bank of New York*,
   359 F.3d 251 (3d Cir. 2004) .................................................................................6

*Methode Elecs., Inc. v. Hewlett-Packard Co.*,
   No. 99-4214, 2000 WL 1157933 (N.D. Cal. May 4, 2000).............................12, 13

*Midwest Indus., Inc. v. Karavan Trailers, Inc.*,
   175 F.3d 1356 (Fed. Cir. 1999).............................................................................7

*Miller v. Lowe*,
   No. CIV. A. 08-1624, 2009 WL 4730201 (W.D. La. Dec. 4, 2009) ..........18, 19, 20

*Mission Trading Co., Inc. v. Lewis*,
   CV H-16-3368, 2017 WL 4941408 (S.D. Tex. Nov. 1, 2017) ..............................17

*Mission Trading Co., Inc. v. Lewis*,
   No. H-16-3368, 2017 WL 6935824 (S.D. Tex. July 31, 2017) ............................17

*Mowbray v. Avery*,
   76 S.W.3d 663 (Tex. App.–Corpus Christi 2002) .................................................17

*OptoLum, Inc. v. Cree, Inc.*,
   244 F. Supp. 3d 1005 (D. Ariz. 2017) .................................................................11

*Pennsylvania Emp., Benefit Tr. Fund v. Zeneca, Inc.*,
   710 F. Supp. 2d 458 (D. Del. 2010).................................................................13, 14

*Powell v. Home Depot U.S.A., Inc.*,
   No. 07-80435, 2010 WL 375796 (S.D. Fla. Jan. 26, 2010).............................11, 12

*Pure Air Daigle, LLC v. Stagg*,
   No. 6:16-1322, 2017 WL 11534244 (W.D. La. Jan. 11, 2017) ............................16

*Quantlab Techs. Ltd. (BVI) v. Godlevsky*,
   719 F. Supp. 2d 766 (S.D. Tex. 2010) .................................................................15

*Revell v. Port Auth. of N.Y. & N.J.*,
   598 F.3d 128 (3d Cir. 2010).................................................................................6

*Rodriguez v. Stevenson*,
   243 F. Supp. 2d 58 (D. Del. 2002).......................................................................6

*Selective Ins. Co. v. Phila. Indem. Ins. Co.*,
   No. N17C-08-325, 2018 WL 2215885 (Del. Super. Ct. May 15, 2018) ...............................13

*Sikirica v. Nationwide Ins. Co.*,
   416 F.3d 214 (3d Cir. 2005).............................................................................................6

*Smith v. Healy*,
   744 F. Supp. 2d 1112 (D. Or. 2010) ...............................................................................8

*Speedfit LLC v. Woodway USA, Inc.*,
   226 F. Supp. 3d 149 (E.D.N.Y. 2016) ............................................................................8

*Stanley v. Wyeth, Inc.*,
   991 So.2d 31 (La. Ct. App. 2008).................................................................................18

*Tavory v. NTP, Inc.*,
   No. 297 Fed. App'x 976 (Fed. Cir. 2008).............................................................9, 10, 11

*Tracer Prot. Servs., Inc. v. Burton*,
   No. 2015-0215, 2015 WL 5515793 (La. Ct. App. 2015)......................................14, 15

*Ultra-Precision Mfg., Ltd v. Ford Motor Co.*,
   411 F.3d 1369 (Fed. Cir. 2005).....................................................................................7

*Uptown Grill, LLC v. Camellia Grill Holdings, Inc.*
   920 F.3d 243 (5th Cir. 2019) ........................................................................................16

*Uptown Grill, LLC v. Shwartz*,
   No. 13-6560, 2017 WL 2312882 (E.D. La. May 26, 2017)............................................15

*Walker v. Cotter Properties, Inc.*,
   181 S.W.3d 895 (Tex. App.–*Dallas* 2006) ...............................................................17

*Walters v. MedSouth Rec. Mgmt., LLC*,
   38 So. 3d 241 (La. 2010) ................................................................................................17

*WesternGeco v. Ion Geophysical Corp.*,
   No. 09–cv–1827, 2009 WL 3497123 (S.D. Tex. 2009).............................................15

*Zaveri v. Condor Petroleum Corp.*,
   27 F. Supp. 3d 695 (W.D. La. 2014).............................................................................17

**Statutes**

35 U.S.C. § 256.......................................................................................................................4

La. Civ. Code Ann. Art. 2298.................................................................................................16

**Other Authorities**

Fed. R. Civ. P..................................................................................................................6

Fed. R. Civ. P. 12(b)(6)....................................................................................................6

## I.      INTRODUCTION

This case is an inventorship dispute. In October 2019, Defendant Lancium LLC ("Lancium") filed a provisional patent application that matured into U.S. Patent No. 10,608,433 (the "'433 patent) for which Defendants Michael T. McNamara ("McNamara") and Raymond E. Cline, Jr. ("Cline") are the named inventors. Plaintiffs BearBox LLC ("BearBox") and Austin Storms ("Storms") (collectively, "Plaintiffs") allege that the '433 patent is based on information provided to McNamara by Storms at a conference in May 2019 rather than being based on Lancium's own development. Defendants Lancium, McNamara, and Cline vigorously dispute this claim. Indeed, on February 13, 2018, more than 14 months before Storms ever met McNamara, Lancium filed a patent application that published as WO 2019/139632 A1 and that discloses everything that Plaintiffs allege in the Amended Complaint as their proprietary "BearBox Technology."

Plaintiffs' first two counts are to correct the inventorship of the '433 patent to list Storms as the sole inventor (Count I) or as a joint inventor (Count II). These counts are not the subject of this motion. Plaintiffs also allege conversion (Count III), unjust enrichment (Count IV), and negligent misrepresentation (Count V). But these additional counts are based on the same alleged actions as the inventorship counts: Lancium did not name Storms as an inventor when submitting the application that led to the '433 patent and instead listed Lancium inventors.

Under well-settled Federal Circuit law, Plaintiffs' conversion, unjust enrichment, and negligent misrepresentation claims are preempted by federal patent law and should be dismissed. Each state law claim also suffers other fatal flaws: (1) Plaintiffs' conversion claim is based on the alleged conversion of intangible, intellectual property, but as a matter of law, such intangible property cannot be the subject of a conversion claim; (2) Plaintiffs' unjust enrichment claim is

precluded by the availability of other remedies for the alleged conduct; and (3) Defendants did not owe Plaintiffs any duty, as a matter of law, that could give rise to a claim for negligent misrepresentation. Thus, Plaintiffs state law claims should be dismissed.

## II.   NATURE AND STAGE OF THE PROCEEDINGS

On April 14, 2021, Plaintiffs filed their original Complaint against Defendants, which included seven counts asserting claims for: (1) correction of inventorship for the '433 patent to list Austin Storms as the sole inventor; (2) an alternative claim for correction of inventorship for the '433 patent to list Storms as a co-inventor; (3) conversion; (4) unjust enrichment; (5) trade secret misappropriation under the federal Defend Trade Secrets Act; (6) trade secret misappropriation under Texas state law; and (7) negligent misrepresentation. *See* D.I. 1 (Complaint). On May 3, 2021, Defendants filed their Answer and Counterclaims to the Complaint, disputing each of Plaintiffs' claims and asserting several affirmative defenses and counterclaims, including that Plaintiffs failed to state a claim for trade secret misappropriation. *See* D.I. 13 (Answer & Counterclaims).

In lieu of answering Defendants' Counterclaims, on May 24, 2021, Plaintiffs filed an Amended Complaint against Defendants, which primarily withdrew Plaintiffs' trade secret claims. *See* D.I. 19 (Amended Complaint). Accordingly, Plaintiffs' Amended Complaint, the operative complaint, asserts five counts: (1) correction of inventorship for the '433 patent to list Austin Storms as the sole inventor; (2) an alternative claim for correction of inventorship for the '433 patent to list Storms as a co-inventor; (3) conversion; (4) unjust enrichment; and (5) negligent misrepresentation. On June 4, 2021, Defendants filed their Answer and Counterclaims to the Amended Complaint, D.I. 23, and on June 23, 2021, Plaintiffs filed their Answer to Defendants' Counterclaims. D.I. 26. On June 25, 2021, Defendants filed an Amended Answer to clearly plead

what they had already told Plaintiffs and the Court: preemption bars Plaintiffs' conversion, unjust enrichment, and negligent misrepresentation counts.

## III.   SUMMARY OF ARGUMENT

1.   Plaintiffs' claims for conversion, unjust enrichment, and negligent misrepresentation are preempted by federal patent law and should be dismissed.

2.   Plaintiffs' conversion claim should be dismissed because, as a matter of law, intangible property cannot be converted.

3.   Plaintiffs' unjust enrichment claim should be dismissed because other remedies are available for the alleged conduct, which precludes this claim.

4.   Plaintiffs' negligent misrepresentation claim should be dismissed because Defendants, as a matter of law, did not owe any duty to Plaintiffs that could support this claim.

## IV.   CONCISE STATEMENT OF THE FACTS

On February 13, 2018, Lancium filed a patent application, for which McNamara and Cline are the inventors, that published as WO 2019/139632 A1 (the "'632 application). D.I. 23 at Counterclaims ¶¶ 9-10; D.I. 26 ¶ 10. The '632 application is titled "Method and System for Dynamic Power Delivery to a Flexible Datacenter Using Unutilized Energy Sources" and explains that, for example, its inventions are useful for "[b]lockchain miners" because "[t]he intensive computational demand of blockchain applications makes the widespread adoption of blockchain technology inefficient and unsustainable from an energy and environmental perspective. D.I. 23-1 at Cover, ¶¶ 19-20.

In May 2019, more than 14 months after filing the '632 application, McNamara attended an industry conference where he met Storms. D.I. 19 ¶¶ 31-32; D.I. 23 at Answer ¶ 32. Plaintiffs allege that Storms then told McNamara about the so-called "BearBox Technology" that

purportedly "generally relates to an energy-efficient cryptocurrency mining system and related methods that reduce the inefficiency and environmental impact of energy-expensive mining operations by better utilizing available energy resources to increase stability, minimize a mining operation's impact on peak-demand, and also alleviate energy over-supply conditions." D.I. 19 ¶ 2. Storms alleges that he told McNamara about the BearBox Technology at a dinner, D.I. 19 ¶ 32, and admits that "[a]t the dinner, there were approximately eight people in attendance at McNamara's table" and "[c]onversations between Storms and McNamara occurred in front of the other attendees, which included Bitcoin mining competitors." D.I. 23 at Counterclaims ¶¶ 41, 43; D.I. 26 ¶¶ 41, 43 (admitting same). Plaintiffs also allege that "Storms last communicated with McNamara on May 9, 2019." D.I. 19 ¶ 35.

In August 2020, Lancium filed a patent infringement suit against a company called Layer1 Technologies, Inc. ("Layer1") asserting infringement of the '433 patent. D.I. 19 ¶ 44; D.I. 23 Answer ¶ 44. Plaintiffs acknowledge that they became aware of the Layer1 lawsuit "on or about August 17, 2020" but did not contact Lancium at this time or make any claim to have invented the patented technology. D.I. 19 ¶ 46. Then, around March 8, 2021, Plaintiffs read a press release announcing that "Layer 1 has licensed Lancium's intellectual property and Lancium will provide Smart Response™ software and services to Layer1." D.I. 19 ¶ 49.

A few weeks later, on April 14, 2021, Plaintiffs initiated this lawsuit alleging Storms should have been listed as an inventor on the '433 patent. D.I. 1. Plaintiffs' Amended Complaint, the operative complaint, alleges that "[t]his is an action seeking correction of the named inventors of a United States patent under 35 U.S.C. § 256," and "[a]s such, this action arises under the laws of the United States." D.I. 19 ¶ 11. Likewise, Plaintiffs' claims for correction of inventorship assert that "[t]hrough omission, inadvertence, and/or error Storms was not listed as an inventor on the

'433 patent and the currently listed inventors on the '433 patent were improperly listed." *Id.* ¶¶ 53, 57. Count I further asserts that "Storms is the sole inventor of the subject matter claimed in the '433 Patent," and Count II asserts that "[i]n the alternative, Storms is a joint inventor of the subject matter claims in the '433 Patent and should be added to the individuals currently named as inventors on the '433 Patent." D.I. 19 ¶¶ 52, 56. Additional allegations that Defendants McNamara and Cline were wrongly identified as the inventors of the '433 patent are found throughout the Amended Complaint. *See, e.g.*, D.I. ¶¶ 41-43, 45.

Plaintiffs' other claims are also based on the allegedly incorrect inventorship of the '433 patent. Each of Count III (conversion), Count IV (unjust enrichment), and Count V (negligent misrepresentation), expressly "incorporate" the allegations from Plaintiffs' inventorship claims. D.I. 19 ¶¶ 59, 63, 70. In addition, Plaintiffs' conversion claim alleges, for example, that "Austin Storms, in his capacity as founder and President of BearBox, conceived, developed, and reduced to practice the BearBox Technology," "Defendants assumed dominion and control over the BearBox Technology by claiming it as their own in the '433 patent," and "[t]hrough their wrongful conduct in obtaining the '433 Patent and claiming the BearBox Technology as their own, the Defendants have wrongfully obtained the purported ability to exclude Plaintiffs and others from using the BearBox Technology." D.I. 19 ¶¶ 60-61.

Similarly, Plaintiffs' unjust enrichment claim alleges that "Defendants have been and continue to be unjustly enriched by profiting from their wrongful conduct[,] [i]n particular, Defendants have unlawfully used Plaintiffs' property by asserting inventorship over the BearBox Technology." D.I. 19 ¶ 64. Plaintiffs' negligent misrepresentation claim likewise alleges that "[o]n information and belief, Defendant McNamara agreed to keep the BearBox Technology confidential despite later recklessly incorporating the BearBox Technology into his own patent

applications and swearing, as recently as December 4, 2019, that he is an inventor of the BearBox Technology" and "Plaintiffs suffered a pecuniary loss based on [their] reliance including the loss of potential patent rights." D.I. 19 ¶¶ 71, 73.

## V.    ARGUMENT

### A.    Legal Standards

Federal Rule of Civil Procedure 12(c) provides that "[a]fter pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." "The purpose of judgment on the pleadings is to dispose of claims where the material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and documents incorporated by reference." *Anderson v. Dimon*, No. 1:19-cv-1153-MN, 2020 WL 6392814, at *3 (D. Del. Nov. 2, 2020), *quoting Venetec Int'l, Inc. v. Nexus Med., LLC*, 541 F. Supp. 2d 612, 617 (D. Del. 2008); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (explaining that any documents integral to pleadings may be considered in connection with Rule 12(c) motion).

A motion for judgment on the pleadings should be granted when: (1) there are no material facts in dispute and (2) the moving party is entitled to judgment as a matter of law. *See Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005); *Rodriguez v. Stevenson*, 243 F. Supp. 2d 58, 62 (D. Del. 2002). A Rule 12(c) motion for judgment on the pleadings is subject to the same standard as a Rule 12(b)(6) motion to dismiss. *See Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010); *Citisteel USA, Inc. v. Gen. Elec. Co.*, 78 F. App'x 832, 835 n.3 (3d Cir. 2003); *Garza v. Citigroup Inc.*, 192 F. Supp. 3d 508, 511 (D. Del. 2016). "In deciding a Rule 12(c) motion, the court [generally] does not consider matters outside the pleadings." *Mele v. Fed. Reserve Bank of New York*, 359 F.3d 251, 257 (3d Cir. 2004).

**B.    Plaintiffs' State Law Claims Are Preempted By Federal Patent Law**

It is well-established that "[i]f a plaintiff bases its tort action on conduct that is protected or governed by federal patent law, then the plaintiff may not invoke the state law remedy, which must be preempted for conflict with federal patent law." *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1335 (Fed. Cir. 1998), *overruled on other grounds by, Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1361 (Fed. Cir. 1999). Specifically, the Federal Circuit "has held that 'the field of federal patent law preempts any state law that purports to define rights based on inventorship.'" *HIF Bio, Inc. v, Yung Shin Pharm. Indus. Co., Ltd.*, 600 F.3d 1347, 1354 (Fed. Cir. 2010), *quoting Univ. of Colo. Found. v. Am. Cyanamid Co.*, 196 F.3d 1366, 1372 (Fed. Cir. 1999). And "Federal Circuit law governs whether federal patent law preempts a state law claim." *Ultra-Precision Mfg., Ltd v. Ford Motor Co.*, 411 F.3d 1369, 1376 (Fed. Cir. 2005) (affirming finding of preemption of unjust enrichment claim by federal patent law).

Here, each of Plaintiffs' state law claims (*i.e.*, conversion, unjust enrichment, and negligent misrepresentation) are premised on Storms' alleged inventorship or joint inventorship of Lancium's '433 patent and thus are preempted.

1.    *Plaintiffs' Conversion Claim is Preempted*

"In the specific context of a conversion claim, courts have differentiated between claims that are dependent on a determination of patent inventorship or ownership and those that are a based on a non-patent theory of conversion. Claims that are dependent on a determination of patent inventorship or ownership, such as misappropriation of patent rights, are generally preempted by federal patent law." *Gerawan Farming, Inc. v. Rehrig Pacific Co.*, No. 1:11-cv-1273, 2012 WL 691758, at *7 (E.D. Cal. Mar. 2, 2012) (finding conversion claim preempted).

Here, Plaintiffs' conversion claim alleges that "Defendants assumed dominion and control over the BearBox Technology ***by claiming it as their own in the '433 patent***," and "[t]hrough their

wrongful conduct in obtaining the '433 Patent and claiming the BearBox Technology as their own, the Defendants have wrongfully obtained the purported ability to exclude Plaintiffs and others from using the BearBox Technology" through the allegedly ill-gotten patent.[1] D.I. 19 at ¶ 61. Moreover, Plaintiffs' alleged harm is "***losing valuable intellectual property*** from which Plaintiffs would have derived substantial revenue via licensing and/or selling patented products." *Id.* ¶ 62. In other words, Plaintiffs allege that because Storms was not listed as an inventor of the '433 patent, they have lost ownership rights in that patent and the ability to generate revenue, including licensing revenue, from that patent. As such, Plaintiffs' conversion claim is "dependent on a determination of patent inventorship or ownership" and is therefore preempted. *Gerawan Farming*, 2012 WL 691758, at *7.

Indeed, *Gerawan Farming* is instructive as there the plaintiff "allege[d] that '[defendant] substantially interfered with [plaintiff]'s rightful property by omitting [plaintiff] as an inventor' and as such, 'wrongfully exercised control over [plaintiff]'s rights in … the '293 Patent.'" *Id.* (quoting Complaint, internal citations omitted). "In other words," the court found that "[plaintiff] claims that [defendant] misappropriated [plaintiff]'s patent rights," but "[s]uch a claim is preempted by federal patent law." *Id.* Moreover, other courts have routinely found similar conversion claims based on allegedly incorrect inventorship to be preempted by federal patent law. *See, e.g.*, *Speedfit LLC v. Woodway USA, Inc.*, 226 F. Supp. 3d 149, 160 (E.D.N.Y. 2016) (finding conversion claim premised on the alleged omission of individuals as inventors or co-inventors on patents preempted); *Gen. Elec. Co. v. Wilkins*, No. 1:10-cv-674, 2011 WL 3163348, at *8-9 (E.D. Cal. July 26, 2011) (finding conversion claim preempted because "where a conversion claim is based on alleged misappropriation of patent rights, it is preempted by federal patent law."); *Smith*

---

[1] All emphases added unless otherwise noted.

*v. Healy*, 744 F. Supp. 2d 1112, 1130 (D. Or. 2010) ("Plaintiffs' proposed conversion claim does not concern Plaintiffs' tangible property but rather their intangible idea. The Court, therefore, concludes Plaintiffs' proposed conversion claim would be preempted by patent law."); *Brown v. Brown*, No. 13-3318, 2013 WL 5947032, at *7 (N.D. Cal. Nov. 5, 2013) ("Because plaintiff's conversion claim is based on his contention that he was improperly omitted as an inventor on the sink utility patent application, plaintiff's conversion claim as pled is preempted.").

Thus, Plaintiffs' conversion claim, which is based on Storms' alleged inventorship or co-inventorship of the '433 Patent, is preempted and should be dismissed.

2.      *Plaintiffs' Unjust Enrichment Claim Is Preempted*

Unjust enrichment claims based on the determination of inventorship or ownership of patents, like conversion claims, are preempted by patent law. *See Tavory v. NTP, Inc.*, 297 Fed. App'x 976 (Fed. Cir. 2008). And Plaintiffs' unjust enrichment claim is clearly dependent on Storms' alleged inventorship of the '433 Patent. In addition to incorporating the allegations of its inventorship and conversion claims, D.I. 19 at ¶ 63, Plaintiffs' unjust enrichment claim specifically alleges that "Plaintiffs conferred a benefit on Defendants by providing them valuable ***intellectual property*** about cryptocurrency mining systems and related confidential information and materials" and that "Defendants have been and continue to be unjustly enriched by profiting from their wrongful conduct[,] ***[i]n particular, Defendants have unlawfully used Plaintiffs' property by asserting inventorship*** over the BearBox Technology, and deriving an unjust benefit from exploiting Storms' cryptocurrency mining inventions." D.I. 19 ¶¶ 64, 67. Plaintiffs' also allege their damages are "loss of money and property as a result of Defendants' ***wrongful use of Plaintiffs' intellectual property, including the right to any patent*** based on their own intellectual property." *Id.* ¶ 68. Simply put, Plaintiffs' seek the allegedly unjust enrichment that Defendants

9

purportedly obtained by owning the '433 patent, which they allege is due to the incorrect identification of the '433 patent's inventors. Thus, this claim is preempted.

In *Tavory v. NTP, Inc.*, the Federal Circuit addressed this exact issue. 297 Fed. App'x at 977. Just as Plaintiffs in this case allege that Lancium, McNamara, and Cline are unjustly enriched by asserting inventorship and patent rights over the alleged "BearBox Technology," in *Tavory*, the plaintiff's "unjust enrichment claim essentially s[ought] his share of monies received by NTP from the licensing and enforcement of the patents-in-suit, such as those from the RIM settlement, which he is allegedly entitled to due to his contribution to the conception of the invention claimed in those patents, i.e., because he is the co-inventor of those patents." *Id.* at 982. Specifically, "Tavory's complaint allege[d] that NTP "'has received substantial and valuable benefits from Tavory in the form of royalties, payments or other compensation for the use of Tavory's wireless email invention and of [Tavory's] Push Software,' and that 'it would be inequitable and unjust for Defendant, NTP, to retain the benefit of the use of the Tavory invention and the Tavory Push Software without payment to Tavory for the fair value of such use.'" *Id*. As such, the Federal Circuit held that "since Tavory's status as a co-owner [of the patents-in-suit] depends entirely on whether he was a co-inventor, the dispositive issue is Tavory's alleged co-inventorship, which is governed exclusively by federal patent law." *Id.* at 984. Accordingly, the court "affirm[ed] the dismissal of Tavory's unjust enrichment claim as preempted by federal patent law." *Id.*

Plaintiffs' unjust enrichment claim is also directly analogous to the unjust enrichment claim found to be preempted in *James v. J2 Cloud Serv. Inc.*, No. 2:16-cv-5769, 2018 WL 6092461 (C.D. Cal. Nov. 19, 2018). In *J2 Cloud*, the "Plaintiff's unjust enrichment claim [wa]s based on allegations that he is the 'sole inventor and owner of the '638 patent,' that he provided defendants with 'his valuable inventions ... and expected it to be treated as a trade secret,' and that defendants

'deliberately and fraudulently filed the application that led to the issuance of the '638 patent naming Rieley and Muller as the inventors, instead of [plaintiff] as the sole inventor.'" *Id.* at *4. Based on these allegations, [t]he Court f[ound] that plaintiff's unjust enrichment claim, as pleaded, appears to be preempted by federal patent law because it is fundamentally based on plaintiff's assertion that he should have been named on the '638 patent." *Id.* at *5.

Other district courts have also repeatedly found unjust enrichment claims that were dependent on a determination of inventorship to be preempted. *See, e.g., OptoLum, Inc. v. Cree, Inc.*, 244 F. Supp. 3d 1005, 1014 (D. Ariz. 2017) ("Because OptoLum's unjust enrichment claim depends on the determination that OptoLum, not Cree, invented the LED technology at issue here, the claim is preempted by federal patent law."); *Core Wireless Licensing S.A.R.L., v. Apple, Inc.*, No. 6:12-cv-100, 2015 WL 4775973, at *4 (E.D. Tex. Aug. 11, 2015) ("Core's claim of unjust enrichment based on the benefit Apple received for the alleged use of the patented technology, as pleaded, is preempted by the Patent Act and must be dismissed."); *Powell v. Home Depot U.S.A., Inc.*, No. 07-80435, 2010 WL 375796, at *5 (S.D. Fla. Jan. 26, 2010) (because defendants' "counterclaims are based on allegations of co-inventorship, a field governed by federal patent law, the court concludes that the counterclaims [including unjust enrichment claims] are preempted).

Here, Plaintiffs' unjust enrichment claim is fundamentally based on their assertion that Storms should have been named on the '433 patent and Storms' inventorship is a dispositive issue. Thus, as in *Tavory* and *J2 Cloud*, Plaintiff's unjust enrichment claim is preempted by federal patent law and should be dismissed. *Tavory*, 297 Fed. App'x at 984; *J2 Cloud*, 2018 WL 6092491, at *4-5.

3.    *Plaintiffs' Negligent Misrepresentation Claim Is Preempted*

Because Plaintiffs' claim for negligent misrepresentation—like its other tort claims—is

dependent upon its assertion that Storms is an inventor of the '433 patent and therefore is based "on conduct that is protected or governed by federal patent law," it is preempted. *See Hunter Douglas*, 153 F.3d at 1335. Indeed, Plaintiffs' negligent misrepresentation claim is plainly based on Storms' alleged inventorship of the '433 patent and loss of patent rights. The Amended Complaint explicitly premises this claim on Defendants allegedly "incorporating ***the BearBox Technology into [McNamara's] own patent applications and swearing***, as recently as December 4, 2019 [the filing date of the '433 patent], ***that he is an inventor of the BearBox Technology***." D.I. 19 ¶ 71. And the only harm Plaintiffs identify is "the ***loss of potential patent rights***, and the costs of Plaintiffs' know-how [*i.e.*, the "BearBox Technology"] converted under the guise of a potential business relationship." *Id.* at ¶ 73.

*Methode Elecs., Inc. v. Hewlett-Packard Co.*, No. 99-4214, 2000 WL 1157933 (N.D. Cal. May 4, 2000) is instructive. In *Methode*, in response to the plaintiff's patent infringement claims, the defendant asserted three state law counterclaims for conversion and trespass to chattels, unfair competition, and unjust enrichment where "the allegation that Methode should have named Finistar in its patent application dominates each of the three counterclaims at issue." *Id.* at *1-2. Thus, because "[t]he fundamental premise of each of these counterclaims as pled is that Methode should have named Finistar on the patent" and "[f]ederal patent law controls that analysis" the court held these counterclaims were preempted. *Id.* at *2. Numerous other courts have also found similar tort claims to be preempted. *See, e.g., J2 Cloud Services*, 2018 WL 6092461, at *6 (finding unfair competition claim "based on the allegation that defendants' 'actions have deprived [plaintiff] of his rights as the sole inventor of the ''638 patent'" to be preempted); *Powell*, 2010 WL 375796, at *5 (counterclaims for unjust enrichment and violation of Florida's Deceptive and Unfair Trade Practices Act "based on allegations of co-inventorship" preempted); *Canter v. West*

*Pub. Co., Inc.*, 31 F. Supp. 2d 1193, 1205 (N.D. Cal. 1999) ("To the extent Plaintiffs base this [state law negligence] cause of action on alleged negligent failure to name Canter as a co-inventor on the Turtle patents, the claim is preempted by the patent laws … ."), *withdrawn from publication at court's request.*

Although these cases did not specifically address preemption of claims for negligent misrepresentation,[2] their reasoning applies equally here. Just like in *Methode*, the "fundamental premise" of each of Plaintiffs' state law claims, including its negligent misrepresentation claim, is that Storms should have been named on a patent—here the '433 patent. 2000 WL 1157933, at *2. Accordingly, because "[f]ederal patent law control that analysis," Plaintiffs' negligent misrepresentation claim is preempted and should be dismissed. *Id.*

### C. Plaintiffs' State Law Claims Fail As A Matter Of Law

The Amended Complaint does not specify under which state's law Plaintiffs assert their claims for conversion, unjust enrichment, or negligent misrepresentation. *See* D.I. 19. However, under the "most significant relationship" test applied in Delaware to resolve conflict of laws issues, Louisiana law applies to the extent a conflict of laws exists. *Pennsylvania Emp., Benefit Tr. Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 466 (D. Del. 2010) (Delaware applies the "most significant relationship" test for conflicts of law); *see also Bavarian Nordic A/S v. Acambis Inc.*, 486 F. Supp. 2d 354, 361 (D. Del. 2007). This is because both BearBox and Storms are located in Louisiana, D.I. 19 ¶¶ 6-7, and any harm they allegedly suffered through loss of intellectual property rights also would have occurred in Louisiana.[3] *See Selective Ins. Co. v. Phila. Indem. Ins. Co.*, No. N17C-

---

[2] Defendants are not aware of any case specifically addressing preemption of a claim for negligent misrepresentation by federal patent law.

[3] Moreover, no other state has a more significant relationship to Plaintiffs' claims as Defendants are located in both Texas and California, *see* D.I. 23 ¶¶ 8-10, and there is no single state where the alleged conduct causing Plaintiffs' purported injury occurred or where any relationship between

08-325, 2018 WL 2215885, at *3 (Del. Super. Ct. May 15, 2018) ("[T]he Delaware Supreme Court held 'the law of the state where the injury occurred should apply unless, with respect to the particular issue, some other state has a more significant relationship … ." (quoting *State Farm Mut. Auto. Ins. Co. v. Patterson*, 7 A.3d 454, 457 (Del. 2010)); *see also Abbott Lab. v. NutraMax Prod.*, *Inc.*, 844 F. Supp. 443, 446 (N.D. Ill. 1994) ("[t]he place of injury usually defines the locus of a cause of action" involving intellectual property, "and the damage to intellectual property rights is usually realized where the owner of the protected rights suffers the damage"); *Jeffers v. Kerzner Int'l Hotels Ltd.*, 319 F. Supp. 3d 1267, 1271 (S.D. Fla. 2018) ("Generally, in tort cases, the location where the injury occurred is the decisive consideration in determining the applicable choice of law").

As set forth below, Plaintiffs' state law claims each fail under applicable law and should be dismissed.

### 1. *Plaintiffs' Conversion Claim Fails as a Matter of Law Because Intellectual Property Cannot Be Converted*

Under Louisiana law, "[a] conversion is an act in derogation of the plaintiff's possessory rights and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time" and "is committed when any of the following occurs: (1) possession is acquired in an unauthorized manner; (2) the chattel is removed from one place to another with the intent to exercise control over it; (3) possession of the chattel is transferred without authority; (4) possession is withheld from the owner or possessor; (5) the chattel is altered or destroyed; (6) the chattel is used improperly; or (7) ownership is asserted over the chattel." *Tracer Prot. Servs., Inc. v. Burton*, No. 2015-0215, 2015 WL 5515793, at *6 (La. Ct. App. 2015) (citing *Dual Drilling Co. v. Mills Equip. Invs., Inc.*, 721 So. 2d 853, 857 (La. 1998)).

---

the parties is centered. *Pennsylvania Emp., Benefit Tr. Fund*, 710 F. Supp. 2d at 467-68.

Thus, a claim for conversion applies only to "goods" or "chattel." *See id.*; *see also Dorsey v. Money Mack Music, Inc.*, 304 F. Supp. 2d 858, 866 (E.D. La. 2003) ("[T]he torts of conversion and trespass relate to interference with tangible rather than intangible property."); *Brand Coupon Network, LLC v. Catalina Mktg. Corp.*, No. 11-00556, 2014 WL 6674034, at *6 (M.D. La. Nov. 24, 2014) ("[C]onversion requires unlawful interference with *chattel*.") (emphasis in original). In Louisiana, chattel "is deemed 'corporeal movable' property." *BASF Agrochemical Prods. v. Unkel*, No. 05-1478, 2006 WL 3533133, at *7 (W.D. La. Dec. 7, 2006).

Although "intangible property can be converted if the right is embodied in or merged into a document," Louisiana courts "have limited conversion to those intangible property rights which are traditionally merged into or identified with some document," such as "stock certificates and bonds, which represent valuable intangible property rights." *Id.* But unlike stock certificates and bonds, possession of a physical patent does not represent ownership of rights in the patent. Moreover, in *BASF* the court held that a conversion claim based on "depriving Plaintiffs of their rights" in patented technology "is outside the scope of Louisiana conversion law." *Id.* *6-7. Other courts have also found that intangible, intellectual property rights cannot be converted.[4] *See Uptown Grill, LLC v. Shwartz*, No. 13-6560, 2017 WL 2312882, at *10 (E.D. La. May 26, 2017))

---

[4] Although Louisiana law applies, Plaintiffs previously asserted a now-withdrawn claim for trade secret misappropriation under Texas law. *See* D.I. 1; D.I. 19-3 pp. 14-16. To the extent Plaintiffs contend that Texas law should apply, there is no conflict, as "Texas law has never recognized a cause of action for conversion of intangible property except in cases where an underlying intangible right has been merged into a document and that document has been converted." *Express One Int'l, Inc. v. Steinbeck*, 53 S.W.3d 895, 901 (Tex. App.–Dallas 2001) (affirming summary judgment dismissing conversion claim.); *see also Carson v. Dynegy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003) (a conversion claim that "involves only intellectual property rights … is outside the scope of Texas conversion law, which concerns only physical property."); *Quantlab Techs. Ltd. (BVI) v. Godlevsky*, 719 F. Supp. 2d 766, 779 (S.D. Tex. 2010) ("Because intellectual property is not subject to conversion under Texas law, [Plaintiff's] conversion claim must therefore fail."); *WesternGeco v. Ion Geophysical Corp.*, No. 09–cv–1827, 2009 WL 3497123, at *3 (S.D. Tex. 2009) (dismissing a conversion claim for confidential information and technology.

(holding that "conversion is not applicable to incorporeal movables such as the intellectual property rights at issue in this matter"), *aff'd in part, rev'd in part on other grounds*, *Uptown Grill, LLC v. Camellia Grill Holdings, Inc*., 920 F.3d 243 (5th Cir. 2019); *Pure Air Daigle, LLC v. Stagg*, No. 6:16-1322, 2017 WL 11534244, at *14 (W.D. La. Jan. 11, 2017) ("The tort of conversion is limited to major interferences with a person's rights in his movable property.").

As addressed above in Section V.B.1, Plaintiffs' conversion claim is based on the premise that "Defendants assumed dominion and control over the BearBox Technology by claiming it as their own in the '433 patent." D.I. 19 ¶ 61. And their only alleged harm is "losing valuable intellectual property from which Plaintiffs would have derived substantial revenue via licensing and/or selling patented products." *Id*. ¶ 62. Plaintiffs make no allegation of conversion of physical property. *See id*. ¶¶ 59-62. Thus, because Plaintiffs' claim is based on the alleged conversion of intangible intellectual property—which is not a legally cognizable theory of conversion—it should be dismissed.

2.    *Plaintiffs' Unjust Enrichment Claim Fails As a Matter of Law Because Other Remedies Are Available For the Alleged Conduct*

Under the Louisiana Civil Code, a claim for unjust enrichment can only proceed if the Plaintiff has no other remedy at law. La. Civ. Code Ann. Art. 2298. This is because unjust enrichment is a "subsidiary claim," which cannot be pled in the alternative. *Id*.; *see also JP Mack Indus. LLC v. Mosaic Fertilizer, LLC*, 970 F. Supp. 2d 516, 521 (E.D. La. 2013) ("[T]he availability of another remedy bars a plaintiff's claim for unjust enrichment, regardless of whether the plaintiff prevails in his pursuit of those other remedies."); *Cenac Inland, LLC v. River Valley Shipyards, LLC*, No. CIV.A. 12-2260, 2013 WL 1786641, at *4 (E.D. La. Apr. 25, 2013) (holding that where the plaintiff has stated a claim for the conduct alleged, the court "must dismiss Plaintiff's alternative claim for unjust enrichment, irrespective of whether Plaintiff is ultimately

able to successfully pursue its claim"). Indeed, unjust enrichment is considered "a **remedy of last resort** under Louisiana law and is only applicable to fill a gap in the law where no express remedy is provided." *Zaveri v. Condor Petroleum Corp.*, 27 F. Supp. 3d 695, 702 (W.D. La. 2014) (internal quotations omitted). As the Fifth Circuit held in *Ferrara Fire Apparatus, Inc. v. JLG Indus., Inc.*, "[t]he important question is whether another remedy is available, not whether the party seeking a remedy will be successful." 581 Fed. App'x 440, 443–44 (5th Cir. 2014) (applying Louisiana law). Moreover, unjust enrichment may not be asserted against a defendant "as a mere catchall or safety net in the event that a plaintiff fails to succeed on the merits of his or her other claims." *Id.* (citation omitted); *see Walters v. MedSouth Rec. Mgmt., LLC*, 38 So. 3d 241, 242 (La. 2010), (holding that unjust enrichment was unavailable to Plaintiff because another remedy at law was technically available, even though that alternate remedy had been dismissed for failure to file a claim within the statute of limitations).

As addressed above in Section V.B, Plaintiffs' unjust enrichment claim is premised upon the same conduct as their other pled claims: Defendants' alleged omission of Storms as an inventor on the '433 patent. As such, there are other remedies available to address Plaintiffs' alleged grievances and unjust enrichment is not an available claim, regardless of whether Plaintiff can successfully proceed under any alternate theory. *See Walters,* 38 So. 3d at 242.[5] Accordingly,

---

[5] Although Louisiana law applies, Plaintiffs' unjust enrichment claim also fails under Texas law. Indeed, courts have "repeatedly held that unjust enrichment, itself, is not an independent cause of action" under Texas law. *Landers v. Landers*, No. 02-19-00303-CV, 2021 WL 1570011 (Tex. App. –Fort Worth Apr. 22, 2021) (collecting cases); *Argyle Indep. Sch. Dist. ex rel. Bd. of Trustees v. Wolf*, 234 S.W.3d 229 (Tex. App.–Fort Worth 2007) ("Unjust enrichment, itself, is not an independent cause of action . . . ."); *Doss v. Homecoming Fin. Network, Inc.*, 210 S.W.3d 706 (Tex. App.–Corpus Christi 2006) (same); *Walker v. Cotter Properties, Inc*., 181 S.W.3d 895 (Tex. App.–Dallas 2006) (same); *Mowbray v. Avery,* 76 S.W.3d 663, 679 (Tex. App.–Corpus Christi 2002) ("[U]njust enrichment is not a distinct independent cause of action but simply a theory of recovery"); *Mission Trading Co., Inc. v. Lewis*, No. H-16-3368, 2017 WL 6935824, at *6 (S.D. Tex. July 31, 2017), *report and recommendation adopted*, *Mission Trading Co., Inc. v. Lewis,* CV H-16-3368, 2017 WL 4941408 (S.D. Tex. Nov. 1, 2017) ("The court is persuaded by this view

Plaintiff's unjust enrichment claim should be dismissed.

        3.      *Plaintiffs' Negligent Misrepresentation Claim Fails as a Matter of Law Because Neither Lancium Nor McNamara Owed a Duty to Plaintiffs*

"[F]or a negligent misrepresentation cause of action to arise, there must be a legal duty on the part of the defendant to supply correct information, there must be a breach of that duty, and the breach must have caused plaintiff damage*." Miller v. Lowe*, No. CIV. A. 08-1624, 2009 WL 4730201, at *4 (W.D. La. Dec. 4, 2009) (citing *Barrie v. Exterminators, Inc.,* 625 So.2d 1007, 1015 (La. 1993)). "[T]he initial inquiry is whether, as a matter of law, a duty is owed to this particular plaintiff to protect him from this particular harm," and "[a] negative answer … results in a determination of no liability*." Id.* (citing *Daye v. Gen. Motors Corp.,* 720 So.2d 654, 660 (La. 1998)); *Stanley v. Wyeth, Inc.*, 991 So.2d 31, 34 (La. Ct. App. 2008) (affirming dismissal of negligent misrepresentation claim where no duty was owed as a matter of law).[6]

In deciding whether to impose a duty in a particular case, Louisiana courts examine "whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty." *Miller*, 2009 WL 4730201, at *4 (citing *Faucheaux v. Terrebonne Consol. Gov't,* 615 So.2d 289, 292 (La. 1993); *Audler v. CBC Innovis Inc.,* 519 F.3d 239, 249 (5th Cir. 2008)) (same). A duty arises from a special relationship of trust and confidence like a fiduciary relationship, "such as that of principal and agent or executor

---

that unjust enrichment is not a separate cause of action under Texas law. Therefore, Plaintiff's claim for unjust enrichment should be dismissed."); *DHI Group, Inc. v. Kent,* No. H-16-1670, 2017 WL 8794877, at *12 (S.D. Tex. Apr. 21, 2017) (dismissing claim for unjust enrichment as not a cause of action).

[6] Again, although Louisiana law applies, there is no apparent conflict with Texas law. *Eckhardt v. Qualitest Pharms. Inc*., 889 F. Supp. 2d 901, 910 (S.D. Tex. 2012), *aff'd*, 751 F.3d 674 (5th Cir. 2014) (for negligent misrepresentation "[w]hether a duty exists is a threshold inquiry and a question of law; liability cannot be imposed if no duty exists" and "Texas law generally imposes no duty to take action to prevent harm to others absent certain special relationships or circumstances. Sometimes, a defendant owes no duty to a plaintiff.").

and beneficiary of an estate," or from contracts, "such as those of suretyship or guaranty."[7] *Bunge Corp. v. GATX Corp.*, 557 So.2d 1376, 1383-84 (La. 1990). However, Louisiana courts have found that business or commercial relationships such as that between a bank and depositor or supplier and customer do not give rise to a duty. *See House of Raeford Farms of La. LLC v. Poole*, No. 19-271, 2021 WL 101837, at *5-6 (W.D. La. Mar. 18, 2021) (holding that a seller-buyer relationship did not impose a duty upon which a negligent misrepresentation claim could be based); *Greene v. Gulf Coast Bank*, 593 So.2d 630, 632-33 (La. 1992) (holding a bank did not owe a duty to its depositor, an experienced businessman, to provide information regarding an investment in another depositor of the bank). Moreover, "negligent misrepresentation is typically employed to remedy damages caused to a non-contracting party by a breach of contract and not between two contracting parties." *Miller*, 2009 WL 4730201, at *5 (granting summary judgment dismissing negligent misrepresentation claim because no duty existed between buyer and seller on a real estate contract).

In this case, Plaintiffs have not pled that Defendants owed them any duty. Moreover, the heart of Plaintiffs' claim is that McNamara—who had no previous relationship with Storms—"agreed to keep the BearBox Technology confidential despite later recklessly incorporating the BearBox Technology into his own patent applications and swearing … that he is an inventor of the BearBox Technology" and that "Storms relied on Defendant McNamara's assurances of confidentiality and continued to share details about the BearBox Technology with Defendants" while allegedly discussing "a potential business relationship." D.I. 19 ¶¶ 32, 71-73. Nothing about the parties' interactions or relationship supports the existence of a duty. Indeed, discussions between two sophisticated businesspeople about an alleged "potential business

---

[7] The type of special relationship giving rise to a duty is also sometimes referred to as a "confidential" relationship, meaning a "relation of trust and confidence." *Bunge Corp.*, 557 So.2d at 1384 n.4.

relationship" does not create a relationship of trust and confidence akin to a fiduciary relationship. *See Raeford Farms*, 2021 WL 101837, at *5-6; *Greene*, 593 So.2d at 632-33; *Miller*, 2009 WL 4730201, at *4. This is especially true where, as here, "[c]onversations between Storms and McNamara **occurred in front of the other attendees** [at a dinner], which included Bitcoin mining **competitors**." D.I. 23 at Counterclaims ¶ 43; D.I. 26 ¶ 43 (admitting same). To the contrary, when discussing a business relationship, parties are expected to have their own best interests in mind. Thus, because, as a matter of law, McNamara and Lancium owed no duty to Plaintiffs, their claim for negligent misrepresentation should be dismissed.

## VI.    CONCLUSION

For the reasons above, the Court should dismiss Count III (conversion), Count IV (unjust enrichment), and Count V (negligent misrepresentation) in the Amended Complaint with prejudice.

DATED:  June 28, 2021                         BARNES & THORNBURG LLP

                                              */s/ Chad S.C. Stover*
                                              Chad S.C. Stover (No. 4919)
                                              1000 N. West Street, Suite 1500
                                              Wilmington, Delaware 19801-1050
                                              Telephone: (302) 300-3474
                                              E-mail: chad.stover@btlaw.com

                                              Mark C. Nelson (admitted pro hac vice)
                                              2121 N. Pearl Street, Suite 700
                                              Dallas, TX  75201
                                              Tel:  (214) 258-4140
                                              E-mail:  mark.nelson@btlaw.com

                                              *Attorneys for Defendants Lancium LLC,*
                                              *Michael T. McNamara, and Raymond E.*
                                              *Cline Jr.*