IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BEARBOX LLC and AUSTIN STORMS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-534-MN |
| | ) | |
| LANCIUM LLC, MICHAEL T. MCNAMARA, | ) | |
| and RAYMOND E. CLINE, JR. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFFS' BRIEF IN OPPOSITION TO
## DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

ASHBY & GEDDES
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
amayo@ashbygeddes.com

*Attorneys for Plaintiffs*
*BearBox LLC and Austin Storms*

*Of Counsel:*

Benjamin T. Horton
John R. Labbe
Raymond R. Ricordati, III
Chelsea M. Murray
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive
6300 Willis Tower
Chicago, IL 60606-6357
(312) 474-6300


Dated: July 19, 2021

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ..................................................................................................1

II.  STATEMENT OF FACTS ....................................................................................2

III.  LEGAL STANDARD............................................................................................4

IV.  ARGUMENT .........................................................................................................4

    A.  BearBox's state law claims are not preempted ........................................4

        1.  BearBox's state law claims require proof of different elements and seek remedies not provided under federal patent law ...................................5

        2.  "Explicit" and "field" preemption do not apply ...........................................6

        3.  "Conflict" preemption does not apply because BearBox seeks relief under state law for conduct that federal patent law does not govern ...................................................................................6

        4.  BearBox asserts that Austin Storms is the sole inventor of the '433 patent, which provides a basis to seek damages .........................................7

    B.  BearBox states claims for conversion, unjust enrichment, and fraudulent misrepresentation ..................................................................10

        1.  BearBox states a claim for conversion because it pleads that Lancium converted tangible documents that embodied BearBox's intangible property ..............................................................................11

        2.  BearBox states a claim for unjust enrichment ...........................................14

        3.  BearBox states a claim for negligent misrepresentation............................15

    C.  Material factual disputes preclude judgment on the pleadings.............16

V.  CONCLUSION.....................................................................................................18

## TABLE OF AUTHORITIES

**Cases**

*AgroFresh Inc. v. Essentiv LLC*,
  2018 WL 6974947 (D. Del. 2018) ................................................................. 10, 11

*BASF Agrochemical Prod. v. Unkel*,
  2006 WL 3533133 (W.D. La. Dec. 7, 2006) ......................................................... 11

*Bavarian Nordic A/S v. Acambis Inc.*,
  486 F. Supp. 2d 354 (D. Del. 2007)..................................................................... 10

*Brand Servs., L.L.C. v. Irex Corp.*,
  909 F.3d 151 (5th Cir. 2018) .............................................................................. 12

*Brown v. Brown*,
  No. 13-3318, 2013 WL 5947032 (N.D. Cal. Nov. 5, 2013) .................................. 8

*Bunge Corp. v. GATX Corp.*,
  557 So. 2d 1376 (La. 1990) ................................................................................. 15

*Canter v. West Pub. Co., Inc.*,
  31 F. Supp. 2d 1193 (N.D. Cal. 1999)................................................................... 8

*Christianson v. Colt Indus. Operating Corp.*,
  486 U.S. 800 (1988)............................................................................................... 6

*Core Wireless Licensing S.a.r.l. v. Apple Inc.*,
  No. 6:12-CV-100-JRG, 2015 WL 4775973 (E.D. Tex. Aug. 11, 2015) ................ 9

*Domino's Pizza LLC v. Deak*,
  383 F. App'x 155 (3d Cir. 2010) ........................................................................... 4

*Dow Chem. Co. v. Exxon Corp.*,
  139 F.3d 1470 (Fed. Cir. 1998) ......................................................................... 5, 6

*Endotech USA v. Biocompatibles Int'l PLC*,
  2000 WL 1594086, at *2 (E.D. La. Oct. 24, 2000) ....................................... 12, 13

*FinancialApps, LLC v. Envestnet, Inc.*,
  2020 WL 3640063 (D. Del. July 6, 2020) ........................................................... 10

*Gen. Elec. Co. v. Wilkins*,
  No. 1:10-cv-674, 2011 WL 3163348 (E.D. Cal. July 26, 2011) ........................... 8

*Gerawan Farming, Inc. v. Rehrig Pacific Co.*,
  No. 1:11-cv-1273, 2012 WL 691758 (E.D. Cal. Mar. 2, 2012) ............................ 8

*Hall v. Habul*,
    2014 WL 2441177 (M.D. La. May 30, 2014) ...................................................... 14

*Hazen v. Mod. Food Servs., Inc.*,
    113 F. App'x 442 (3d Cir. 2004) ............................................................ 4

*Hunter Douglas, Inc. v. Harmonic Design, Inc.*,
    153 F.3d 1318 (Fed. Cir. 1998) ............................................................ 6

*Int'l Bus. Machines Corp. v. Groupon, Inc.*,
    289 F. Supp. 3d 596 (D. Del. 2017) ........................................................ 4

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. (UAW) v.
    Visteon Corp.*,
    2015 WL 4126742 (D. Del. July 9, 2015) ................................................... 4

*James v. J2 Cloud Servs. Inc.*,
    No., 2018 WL 6092461 (C.D. Cal. Nov. 19, 2018) ........................................... 9

*Lancium LLC v. Layer1 Technologies, Inc.*,
    Case No. 6:20-cv-00739 (W.D. Tex.) ........................................................ 3

*Mabile v. BP, p.l.c.*,
    No. CV 11-1783, 2016 WL 5231839 (E.D. La. Sept. 22, 2016) ................... 5, 11, 12, 13, 16

*Mayer v. Lamarque Ford, Inc.*,
    2001 WL 175232 (E.D. La. Feb. 16, 2001) .................................................. 14

*McCullum v. McAlister's Corp. of Mississippi*,
    2010 WL 1489907 (E.D. La. 2010) .......................................................... 14

*Methode Elecs., Inc. v. Hewlett-Packard Co.*,
    No. 99-4214, 2000 WL 1157933 (N.D. Cal. May 4, 2000) ..................................... 8

*Mid-Am. Salt, LLC v. Morris Cty. Coop. Pricing Council*,
    964 F.3d 218 (3d Cir. 2020) .............................................................. 16

*Midwest Indus., Inc. v. Karavan Trailers, Inc.*,
    175 F.3d 1356 (Fed. Cir. 1999) ............................................................ 6

*OptoLum, Inc. v. Cree, Inc.*,
    244 F. Supp. 3d 1005 (D. Ariz. 2017) ...................................................... 9

*ORX Resources, Inc. v. Autra*,
    2009 WL 3447256 (E.D. La.  2009) ......................................................... 14

*Powell v. Home Depot U.S.A., Inc.*,
    No. 07-80435, 2010 WL 375796 (S.D. Fla. Jan. 26, 2010) .................................... 8

*Quealy v. Paine, Webber, Jackson & Curtis, Inc.*,
    475 So.2d 756 (La. 1985) ............................................................................ 12, 13

*Rainier v. Rispoli*,
    2012 WL 752371 (D. Del. 2012) ....................................................................... 16

*Richard v. Wal-Mart Stores, Inc.*,
    2007 WL 855357 (W.D. La. Mar. 16, 2007) ........................................................ 14

*Scientific Info., Inc. v. Gordon & Breach, Sci. Publishers, Inc.*,
    931 F.2d 1002 (3d Cir. 1991)) .......................................................................... 4

*Smith v. Healy*,
    744 F. Supp. 2d 1112 (D. Or. 2010) ................................................................... 8

*South Central Bell Telephone Co. v. Barthelemy*,
    643 So. 2d 1240 (La. 1994) ............................................................................. 13

*Speedfit LLC v. Woodway USA, Inc.*,
    226 F. Supp. 3d 149 (E.D.N.Y. 2016) .................................................................. 9

*Tavory v. NTP, Inc.*,
    297 F. App'x 976 (Fed. Cir. 2008) ...................................................................... 8

*Univ. of Colorado Found., Inc. v. Am. Cyanamid Co.*,
    196 F.3d 1366 (Fed. Cir. 1999) .......................................................................... 7

*University of Colorado Foundation, Inc. v. American Cynamid Company*,
    342 F.3d 1298 (Fed. Cir. 2003) ......................................................................... 10

*Wilson v. Mobil Oil Corp.*,
    940 F. Supp. 944 (E.D. La. 1996) ...................................................................... 15

*Wolfington v. Reconstructive Orthopaedic Assocs. II PC*,
    935 F.3d 187 (3d Cir. 2019) .............................................................................. 4

*Zazzali v. Hirschler Fleischer, P.C.*,
    482 B.R. 495 (D. Del. 2012) ............................................................................. 11

**Statutes**

35 U.S.C. § 256 ................................................................................................ 8

35 U.S.C. § 262 ................................................................................................ 8

**Rules**

Fed. R. Civ. P. 8(e)(2) ....................................................................................... 14

## I.       INTRODUCTION

Lancium misappropriated BearBox's documents and information to capitalize on BearBox's innovative, profitable, and energy-efficient cryptocurrency mining system. It did so intentionally and to make money. Not only has BearBox had to watch as Lancium publicly profits from its dishonesty—touting a monopoly it should not have, filing lawsuits it would not have standing to bring, and entering into lucrative agreements that would not otherwise exist—but because Lancium obtained the '433 patent with claims covering the system it stole, BearBox cannot even use its own software to compete with Lancium's knock-off version without infringing the ill-gotten '433 patent.

This motion represents nothing more than Lancium's latest strategic approach to avoid revealing to BearBox, and this Court, the amount of money it has gained, and stands to gain, through its theft of BearBox's system. Lancium initially pushed for bifurcation of all claims subject to an award of damages in contravention of Federal Circuit precedent and BearBox's Seventh Amendment rights. Realizing that tactic would fail, Lancium instead requested that the Court delay entry of a case schedule. Now, on the heels of the entry of the scheduling order in this action, Lancium has moved this Court for dismissal of claims subject to an award of damages under Rule 12(c). In the meantime, Lancium has treated itself to a self-imposed, indefinite stay of damages-related discovery.[1] Lancium's stay attempts are, of course, improper, and its motion is ill-conceived. Lancium acknowledges that the Federal Circuit controls preemption issues that involve patent law and overlapping state law causes of action, but then

---

[1] Defendants, in their responses to BearBox's First Set of Requests for Documents, have stated that, for damages-related requests, because of Defendants' motion to dismiss BearBox's state law claims, Defendants "will not produce documents at this time." BearBox has requested a meet and confer with Lancium and intends to ask the Court to intervene should the parties not reach a prompt resolution.

ignores that precedent, instead presenting a parade of distinguishable district court cases that, if followed as Lancium cobbles them together, would not only conflict with Federal Circuit law, but would vitiate two-hundred years of Supreme Court precedent.

BearBox asks this Court to see through Lancium's tactics, deny Lancium's motion, and allow BearBox's case, in its entirety, to be heard.

## II.   STATEMENT OF FACTS

Mr. Austin Storms, through his company, BearBox LLC (collectively, "BearBox" or "Plaintiffs"), developed a revolutionary system for energy-efficient cryptocurrency mining using power option agreements, power purchase agreements, and/or other power procurement mechanisms. D.I. 19 ¶¶ 24-30. Storms carefully documented his system, including annotated software schematics, hardware diagrams and functional prototypes, integrated systems design specifications, and proprietary data modeling. *Id.* ¶ 33. Using some of these materials and his own explanations, Storms tried to sell his system to Lancium, through Mr. Michael McNamara. *Id.* ¶¶ 31-32. McNamara feigned interest for a few days, inducing BearBox to disclose materials and "know-how," "under the guise of a possible business deal to jointly commercialize" Storms' system, until McNamara had what he needed. *Id.* ¶¶ 3, 33-35, 73. Soon after, McNamara and Lancium misappropriated Storms' system under false pretenses, "claiming it as their own" by modifying Lancium's Smart Response™ software to mimic BearBox's system, filing a patent application, paying the extra fee to fast track it, and receiving a newly-issued patent less than four months later, U.S. Patent No. 10,608,433 ("the '433 patent") with claims covering Storms' system. *Id.* ¶¶ 4, 36-43. Lancium issued a press release the same day, touting the '433 patent as covering "an essential function of Lancium Smart Response™" software.[2]

---

[2] https://www.prnewswire.com/news-releases/with-5th-patent-lancium-powers-ahead-in-fast-ramping-data-center-innovation-301033043.html

Lancium wasted no time commercializing is "wrongful use" of Storms' system, using Lancium's modified Smart Response software, now mimicking BearBox's system, to achieve "the first successful" designation of its kind from the Electric Reliability Council of Texas (ERCOT).[3] *Id.* ¶¶ 47, 68.

In just a few months, Lancium first threatened, then filed suit against industry competitor Layer1 Technologies, alleging infringement of the '433 patent. *Id.* ¶¶ 44-45. In its complaint against Layer1, Lancium called the '433 patent "revolutionary technology," and stated Lancium's technology has "attracted the interest of many companies."[4] Lancium issued a press release the same day it filed its lawsuit against Layer1, putting the industry on notice that it would enforce its ill-gotten monopoly and further "wrongful use" of Storms' system and know-how. *Id.* ¶ 46, 68, 73. Lancium and Layer1 settled the lawsuit a few months after it was filed, announcing a "mutually beneficial partnership," including a license to the '433 patent for Layer1 and a supply agreement for Lancium, "valuable consideration" to which Lancium is not entitled.[5] *Id.* ¶¶ 49-50.

Shortly thereafter, Lancium announced yet another money-making enterprise "wrongfully using" Storms' system, "intellectual property," and "know-how": a partnership with Riot Blockchain, one of the largest U.S.-based, publicly-traded cryptocurrency miners in North America, with Riot to use Lancium's Smart Response™ software.[6] *Id.* ¶¶ 47, 68.

On May 24, 2021, BearBox and Storms filed its Amended Complaint alleging

---

[3] https://lancium.com/press/lancium-mp2-demand-response/

[4] *Lancium LLC v. Layer1 Technologies, Inc.*, Case No. 6:20-cv-00739 (W.D. Tex.), Dkt. 1 ¶¶ 12-13.

[5] https://www.prnewswire.com/news-releases/lancium-and-layer1-settle-patent-infringement-suit-301242602.html

[6] http://edgar.secdatabase.com/1455/107997320001085/filing-main.htm

conversion, unjust enrichment, negligent misrepresentation, and correction of inventorship, seeking damages in an amount to be determined at trial, a correction of inventorship of the '433 patent, and a transfer of title of the '433 patent. *Id.* Prayer for Relief, ¶¶ A-J.

## III.   LEGAL STANDARD

Judgment on the pleadings should only be entered when the moving party "clearly establishes that no material issue of fact remains to be resolved" and that "judgment as a matter of law" should be granted. *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019); *see also Int'l Bus. Machines Corp. v. Groupon, Inc.*, 289 F. Supp. 3d 596, 600 (D. Del. 2017). In deciding a Rule 12(c) motion, "a district court is required to view the facts presented in the pleadings and the inferences to be drawn therefrom in light most favorable" to the nonmoving party. *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. (UAW) v. Visteon Corp.*, 2015 WL 4126742, at *2 (D. Del. July 9, 2015) (citing *Inst. for Scientific Info., Inc. v. Gordon & Breach, Sci. Publishers, Inc.*, 931 F.2d 1002, 1004 (3d Cir. 1991)). A motion for judgment on the pleadings must be denied unless "it appears to a *certainty* that no relief could be granted under *any* set of facts which could be proved." *Hazen v. Mod. Food Servs., Inc.*, 113 F. App'x 442, 444 (3d Cir. 2004) (emphasis added). This is an extremely "high standard" that Defendants must meet. *Domino's Pizza LLC v. Deak*, 383 F. App'x 155, 160 (3d Cir. 2010) (reversing district court's grant of judgment on the pleadings).

## IV.   ARGUMENT

### A.   BearBox's state law claims are not preempted

Even if all of BearBox's claims require an inventorship determination for the '433 patent, which they do not, the fact that patent law is a necessary element of a state-law cause of action does not mean that cause of action is preempted by federal patent law. Preemption is limited to causes of action that *conflict* with federal patent law, unlike BearBox's state-law claims which,

although some theories may rely on federal patent law, offer BearBox monetary remedies for theft that are not available under federal law, and which do not conflict with any federal remedy.

1.     **BearBox's state law claims require proof of different elements and seek remedies not provided under federal patent law**

A state tort claim that requires "adjudicate[ion] of federal patent law" is not preempted where it requires proof of different elements and provides for different remedies than a claim under federal patent law, as long as the claim "is not an impermissible attempt to offer patent-like protection." *Dow Chem. Co. v. Exxon Corp.*, 139 F.3d 1470, 1473, 1477-78 (Fed. Cir. 1998). Here, each of BearBox's state law claims require proof of additional elements in addition to inventorship, and provide for remedies that are not provided under the patent law. The state law claims are not an effort to seek "patent-like protection" by seeking to exclude the Defendants from any given activity, but rather are an effort to provide a remedy to BearBox for the Defendants' wrongful conduct in taking BearBox's property and claiming it as their own.

For example, a claim of conversion under Louisiana law requires proof of the following elements: (1) plaintiff's "right to possess"; (2) "the defendant's use was inconsistent with the plaintiff's right of ownership"; and (3) "the defendant's use constituted a wrongful taking." *Mabile v. BP, p.l.c.*, No. CV 11-1783, 2016 WL 5231839, at *21 (E.D. La. Sept. 22, 2016). The tort includes taking property and asserting ownership over it. *Id.* The tort of conversion is accordingly directed to *ownership* of property, not *inventorship*. It requires proof of ownership and conduct inconsistent with that ownership. In contrast, BearBox's inventorship claim under 35 U.S.C. § 256 requires a showing that Mr. Storms is an inventor of the inventions claimed in the '433 patent; that claim does not require proof that the defendants wrongfully took Mr. Storms's property and deprived him of it.

Moreover, in the context of determining what types of cases "arise under" federal patent

law, the Supreme Court has held that causes of action that are not created by patent law can nevertheless "arise under" patent law if patent law provides a necessary element of the claim. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808-09 (1988). This does not mean that such causes of action are preempted by patent law. The entire body of caselaw about "arising-under" federal patent law would be moot if all state causes of action that require interpretation of patent law were, in fact, preempted by federal patent law. They are not. *Dow*, 139 F.3d at 1475 ("[I]it is well established that a state court has authority to adjudicate patent questions so long as the action itself does not arise under the patent laws.").

### 2.    "Explicit" and "field" preemption do not apply

Lancium does not address what type of preemption purportedly applies in this case. A state law can be "preempted in any one of three ways, which are explicit, field, and conflict preemption." *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1332 (Fed. Cir. 1998), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999). None of BearBox's causes of action are explicitly preempted because "federal patent law plainly does not provide for explicit preemption." *Id.* Nor does field preemption apply here. In view of the "underlying presumption disfavoring preemption," there is no field preemption of causes of action that rely on interpretation of patent law where the state cause of action "regulates conduct in a different field from federal patent law." *Id.* at 1333-34. As the Federal Circuit has previously held, field prevention does not apply to state law causes of action because they generally regulate different conduct than patent law. *Id.* at 1334-35.

### 3.    "Conflict" preemption does not apply because BearBox seeks relief under state law for conduct that federal patent law does not govern

Conflict preemption only preempts a state law cause of action where it is based on "conduct that is protected or governed by federal patent law." *Id.* at 1335. Here, BearBox's state

law claims are not based on acts of patent infringement, but are based on acts of

misappropriating documents and information that form the basis for conversion, unjust

enrichment, and negligent misrepresentation claims. Preemption does not apply to this case

where state law causes of action "spring[] not from an attempt to enforce intellectual property

rights, but instead from [the defendant's] alleged wrongful use" of the plaintiff's documents and

information. *Univ. of Colorado Found., Inc. v. Am. Cyanamid Co.*, 196 F.3d 1366, 1372 (Fed.

Cir. 1999). In *University of Colorado*, the Federal Circuit reversed the district court only because

the district court applied a state common law standard for inventorship, rather than relying on

federal law to determine inventorship. *Id.* at 1372 ("[F]ederal patent law preempts any state law

that purports to define rights based on inventorship."). But the court found that the underlying

state *causes of action* were not preempted. Instead, even though the state law causes of action in

that case would require a determination of inventorship under federal law, the Federal Circuit

held that the state law causes of action are *not* preempted, even though they require application

of federal patent law. *Id.* at 1371-74.

### 4.    BearBox asserts that Austin Storms is the sole inventor of the '433 patent, which provides a basis to seek damages

BearBox pleads that Austin Storms is the sole inventor of the '433 patent and pleads in

the alternative that he is at least a joint inventor with McNamara and Cline. For purposes of

Defendants' motion for judgment on the pleadings, the Court should assume that BearBox will

succeed in proving that Mr. Storms is the sole, rightful inventor of the '433 patent. Under at least

that scenario, Mr. Storms would be entitled to financial relief for the Defendants' conversion of

his property, unjust enrichment, and negligent misrepresentation at least based on any financial

compensation the Defendants' have received in using or licensing the inventions claimed in the

'433 patent, which do not rightfully belong to Defendants.

The Defendants' reliance on *Tavory v. NTP, Inc.* is misplaced. In that case, the Federal Circuit found preemption specifically because the defendants were at least joint inventors (and therefore joint owners) of the relevant patent, not because a correction-of-inventorship claim preempts state law claims. *Tavory v. NTP, Inc.*, 297 F. App'x 976, 982-83 (Fed. Cir. 2008). In *Tavory*, the court found the plaintiff's unjust enrichment claim to be preempted only because the plaintiff admitted that defendants were at least co-inventors on the patent. *Id.* at 983. Under these circumstances, the plaintiff could not recover licensing fees from the defendants because, as co-inventors, they were entitled under 35 U.S.C. § 262 to license the patent, even if the plaintiff were a co-inventor. Thus, the plaintiff's claim to damages was preempted under section 262. The court did not consider, however, whether the plaintiff's claim was preempted under the correction-of-inventorship statute, 35 U.S.C. § 256, which is the issue in this case. *Id.* at 982-83. Defendants cite a smattering of district court cases in support of their preemption argument that are inapposite for the same reason.[7] Lancium's four remaining district court cases that are not explicitly limited to allegations of co-inventorship are likewise distinguishable.

First, in three of those four remaining cases, the plaintiff was already a patent owner, bringing both a patent infringement claim, as well as state law claims for damages based on the same actions. In this scenario, courts found the state law claims were preempted because they were being used as improper tools to seek damages for patent infringement, which is the exclusive province of federal law. For example, in *Core Wireless*, the jury returned a verdict of

---

[7] *Brown v. Brown*, No. 13-3318, 2013 WL 5947032 (N.D. Cal. Nov. 5, 2013); *Canter v. West Pub. Co., Inc.*, 31 F. Supp. 2d 1193 (N.D. Cal. 1999); *Gen. Elec. Co. v. Wilkins*, No. 1:10-cv-674, 2011 WL 3163348 (E.D. Cal. July 26, 2011); *Gerawan Farming, Inc. v. Rehrig Pacific Co.*, No. 1:11-cv-1273, 2012 WL 691758 (E.D. Cal. Mar. 2, 2012); *Methode Elecs., Inc. v. Hewlett-Packard Co.*, No. 99-4214, 2000 WL 1157933 (N.D. Cal. May 4, 2000); *Powell v. Home Depot U.S.A., Inc.*, No. 07-80435, 2010 WL 375796 (S.D. Fla. Jan. 26, 2010); *Smith v. Healy*, 744 F. Supp. 2d 1112 (D. Or. 2010).

non-infringement of the plaintiff's patents. After trial, the court granted a motion to dismiss the previously severed and stayed unjust enrichment claim, finding unjust enrichment was just plaintiff's second attempt at patent infringement damages. *Core Wireless Licensing S.a.r.l. v. Apple Inc.*, No. 6:12-CV-100-JRG, 2015 WL 4775973, at *4 (E.D. Tex. Aug. 11, 2015). Similarly, in *Speedfit* and *Optolum*, the plaintiffs were also patent owners, pleading state law torts in addition to patent infringement. *Speedfit LLC v. Woodway USA, Inc.*, 226 F. Supp. 3d 149, 160 (E.D.N.Y. 2016); *OptoLum, Inc. v. Cree, Inc.*, 244 F. Supp. 3d 1005, 1014 (D. Ariz. 2017).

Here, BearBox is not relying on state torts to back a claim for patent infringement. BearBox currently owns no patents for Defendants to infringe. Rather, BearBox seeks damages for Defendants' theft of BearBox's system and the subsequent use of that stolen system to profit, both by modifying Defendants' Smart Response software to operate as BearBox's system does and, in addition, use of that stolen property to obtain a patent for which Austin Storms is the sole inventor and therefore the rightful owner. In addition to copying BearBox's system and selling that copy for profit, Defendants have manufactured, and derived value from, a monopoly to which they are not entitled. A monopoly that simultaneously harmed, and continues to harm, BearBox. As a result, BearBox seeks not only a correction of inventorship to take ownership of the ill-gotten patent, but damages to account for Defendants' theft of BearBox's system and the resulting harm.

Defendants' final citation actually supports BearBox. In *James*, the court acknowledged that the plaintiff's state law claim "would not be preempted if it were not based on plaintiff's assertion of intellectual property rights." *James v. J2 Cloud Servs. Inc.*, No., 2018 WL 6092461, at *5 (C.D. Cal. Nov. 19, 2018); citing *University of Colorado Foundation, Inc. v. American*

*Cynamid Company*, 342 F.3d 1298 (Fed. Cir. 2003). Here, BearBox's claims for conversion, unjust enrichment, and negligent misrepresentation are not based on intellectual property rights. Indeed, Lancium has done its best to ensure that BearBox has no patent to enforce.

### B. BearBox states claims for conversion, unjust enrichment, and fraudulent misrepresentation

Disputed issues of material fact prevent entry of judgment on the pleadings for BearBox's conversion, unjust enrichment, and fraudulent misrepresentation claims. In their motion, Defendants argue that Louisiana law applies for these claims. Because Lancium's motion is based on Louisiana law, BearBox will also assume that Louisiana law applies for purposes of responding to this motion. The Court, however, need not (and cannot) decide at this stage of the case which law will ultimately govern. "[A]t the pleading stage, many courts choose to defer this 'most significant relationship' test analysis until later in the case, when a more complete factual record has been developed." *FinancialApps, LLC v. Envestnet, Inc.*, 2020 WL 3640063, at *5 (D. Del. July 6, 2020), *report and recommendation adopted in relevant part*, 2020 WL 5015447 (D. Del. Aug. 25, 2020), *report and recommendation adopted in relevant part*, 2020 WL 5422408 (D. Del. Sept. 10, 2020); *see also AgroFresh Inc. v. Essentiv LLC*, 2018 WL 6974947, at *7 (D. Del. 2018), *report and recommendation adopted*, 2019 WL 350620 (D. Del. 2019) ("Cases from within the Third Circuit support deferring choice of law determinations at the pleadings stage.").

Under Delaware conflicts of law rules, the "factors that *must* be considered in the most significant relationship test are: (1) the place where the injury occurred; (2) the place where the conduct causing injury occurred; (3) the location of the parties; and (4) the place where the relationship between the parties is centered." *Bavarian Nordic A/S v. Acambis Inc.*, 486 F. Supp. 2d 354 (D. Del. 2007) (emphasis added). Here, the conduct that caused injury occurred in several

different states, including Texas where Lancium is headquartered and Louisiana where BearBox is headquartered, and additional discovery is required to establish each location of the relevant conduct. As such, a choice of laws analysis is premature because "the factual record establishing the location of the relevant conduct has not been fully established." *AgroFresh*, 2018 WL 6974947, at *7; *see also Zazzali v. Hirschler Fleischer, P.C.*, 482 B.R. 495, 517 (D. Del. 2012) ("The Court will defer making a choice of law determination until there is development of a more complete factual record.").

Although the Court need not and cannot decide what law will ultimately apply, the Court can deny Defendants' motion by applying Louisiana law, the law that Defendants ask the Court to apply. Under Louisiana law, BearBox states plausible claims for conversion, unjust enrichment, and fraudulent misrepresentation.

### 1. BearBox states a claim for conversion because it pleads that Lancium converted tangible documents that embodied BearBox's intangible property

Under Louisiana law, "conversion is. . .  not exclusively defined as a cause of action involving property rights in tangible goods." *Mabile v. BP, p.l.c.*, 2016 WL 5231839, at *21 (E.D. La. Sept. 22, 2016). Instead, conversion can encompass "intangible property rights which are traditionally merged into or identified with some document." *BASF Agrochemical Prod. v. Unkel*, 2006 WL 3533133, at *7 (W.D. La. Dec. 7, 2006). In the context of intellectual property rights, conversion extends to protecting documents that reflect the intellectual property. For example, the court in *Mabile v. BP* found that the plaintiff could state a claim for conversion of his ideas about how to cap the *Deepwater Horizon* oil-well blowout where his ideas were embodied in written schematics, which he pled that the defendant converted for its benefit. *Mabile*, 2016 WL 5231839, at *22. The court found that a "conversion claim plausibly rest[ed] on a corporeal object" because the plaintiff alleged that (1) defendant "used [plaintiff's]

schematic to create the [invention at issue]," (2) defendant "intentionally and willfully exercised authority over [plaintiff's] intellectual property and the [invention's] schematic," and (3) plaintiff "was damaged as a result of [defendant's] unauthorized and improper use of the schematic to reconstruct and use the [invention]." *Mabile*, 2016 WL 5231839, at *22.

Likewise, in *Endotech USA v. Biocompatibles International* the court denied a motion to dismiss a conversion claim premised on use of the plaintiff's business plan. *Endotech USA v. Biocompatibles Int'l PLC*, 2000 WL 1594086, at *2 (E.D. La. Oct. 24, 2000). There, although defendants argued that an intangible business plan cannot be converted, the court found that the plaintiff could state a claim of conversion of its marketing, distribution, and financial information, which defendant used in an unauthorized way. *Id*. at *10. The court explained that "[c]onversion under Louisiana law 'consists of *an act in derogation* of the plaintiff's possessory rights, and *any* wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time.'" *Id*. (quoting *Quealy v. Paine, Webber, Jackson & Curtis, Inc.*, 475 So.2d 756, 760 (La. 1985)) (emphasis added); *see also Brand Servs., L.L.C. v. Irex Corp.*, 909 F.3d 151, 159 (5th Cir. 2018) (reversing dismissal of "claim for conversion of confidential information").

In this case, BearBox pleads that Lancium converted its intellectual property embodied in written documents and schematics, just like in *Mabile* and *Endotech*. BearBox alleges that Lancium converted its property through its unauthorized and improper use of Plaintiffs' "annotated system diagrams, component specifications, and modeled data sets . . . mimic[ing] real-world Bitcoin and energy prices" that were provided to Defendants "under the guise of a possible business deal." D.I. 19 ¶¶ 3 & 33.

BearBox pleads that Defendants intentionally exercised authority over Plaintiffs'

"annotated system diagrams, component specifications, and modeled data sets," Defendants used these materials in an unauthorized and improper way (*e.g.*, to prepare the application which resulted in the '433 patent), and Plaintiffs were damaged as a result (*i.e.*, "damaged by losing valuable intellectual property from which Plaintiffs would have derived substantial revenue via licensing and/or selling patented products"). D.I. 19 ¶¶ 33, 62.

BearBox and Storms allege they "provided annotated system diagrams, component specifications, and modeled data sets" to Defendants "solely for the purposes of evaluation for a potential business relationship." D.I. 19 ¶¶ 33, 60. Even though the relationship between the parties "abruptly ended" shortly after BearBox provided these tangible and confidential materials, Defendants "retained the BearBox Technology" embodied in these documents "and used it to their own advantage." *Id.* ¶¶ 34, 66. Defendants then further committed "an act in derogation of the plaintiff's possessory rights" by filing a patent application covering the BearBox Technology, and therefore obtaining a patent that would permit it from excluding BearBox from using its own technology. *Quealy v. Paine, Webber, Jackson & Curtis, Inc.*, 475 So. 2d 756, 760 (La. 1985); *see also Mabile*, 2016 WL 5231839, at *9; *Endotech*, 2000 WL 1594086, at *10.

Although BearBox shared its documents with Defendants in electronic format, a claim of conversion does not depend on physical documents, but can extend to electronic documents and even software. *South Central Bell Telephone Co. v. Barthelemy*, 643 So. 2d 1240, 1246 (La. 1994). ("[Software] is knowledge recorded in a physical form which has physical existence, takes up space on the tape, disc, or hard drive, makes physical things happen, and can be perceived by the senses.")

Accepting Plaintiffs' well-pleaded facts as true, Plaintiffs have stated a claim for

conversion under Louisiana law.

## 2.      BearBox states a claim for unjust enrichment

At a minimum, Plaintiffs' unjust enrichment claim stands as pled in the alternative, a

mechanism that is supported by both Fed. R. Civ. P. 8(e)(2) and Louisiana law. *See, e.g.*,

*Richard v. Wal-Mart Stores, Inc.*, 2007 WL 855357, at *3 (W.D. La. Mar. 16, 2007) ("Louisiana

law clearly permit[] unjust enrichment to be pleaded in the alternative."); *Hall v. Habul*, 2014

WL 2441177, at *5 (M.D. La. May 30, 2014); *McCullum v. McAlister's Corp. of Mississippi*,

2010 WL 1489907 (E.D. La. 2010) (finding that Louisiana law permits unjust enrichment to be

pleaded in the alternative); *ORX Resources, Inc. v. Autra*, 2009 WL 3447256 (E.D. La.  2009)

(finding that a claim for unjust enrichment may be pleaded in the alternative); *Mayer v.

Lamarque Ford, Inc.*, 2001 WL 175232 (E.D. La. Feb. 16, 2001) (denying motion to dismiss

unjust enrichment claim because the plaintiff pled unjust enrichment not as exclusive remedy but

in the alternative to other claims for the same alleged wrong).

Defendants' motion does not explain why Plaintiffs' unjust enrichment claim fails as a

matter of law. For example, Defendants allege that unjust enrichment is unavailable because

Bearbox has other remedies *at law*. D.I. 33 at 16-17 (emphasis added). But Lancium's claim is

contradicted by its opposite claim that Bearbox's conversion and negligent misrepresentation

counts fail as a matter of law. In other words, either: (1) Plaintiffs can recover for conversion

and/or negligent misrepresentation, *or* (2) if Plaintiffs are ultimately unable to recover for those

torts, Plaintiffs may nevertheless be able to recover for unjust enrichment. Lancium would have

its cake and eat it, too.

Because Plaintiffs have sufficiently pled facts to support their unjust enrichment claim

under Louisiana law, Defendants motion should be denied with respect to Plaintiffs' unjust

enrichment claim.

### 3.    BearBox states a claim for negligent misrepresentation

Defendants are wrong when they allege that Plaintiffs' negligent misrepresentation claim

fails because "Plaintiffs have not pled that Defendants owed them any duty." D.I. 33 at 26.

Plaintiffs pled the existence of a duty stemming from the confidential relationship established

between the parties. *See Wilson v. Mobil Oil Corp.*, 940 F. Supp. 944, 955 (E.D. La. 1996) (duty

may arise from confidential relationship between parties). In Plaintiffs' Amended Complaint,

Plaintiffs allege that "Defendant McNamara agreed to keep the BearBox Technology

confidential . . . under the guise of a potential business relationship."[8] D.I. 19 ¶¶ 71, 73. Plaintiffs

further allege that "Defendants induced the Plaintiffs to disclose the BearBox Technology to

them under the guise of a possible business deal between Defendants and Plaintiffs. . . [and

b]efore disclosing the BearBox Technology to Defendants, *Plaintiffs obtained assurances of

confidentiality from Defendants.*" *Id*. ¶ 3 (emphasis added).  When viewed in the light most

favorable to Plaintiffs, these allegations establish a confidential relationship between the parties

as a result of Defendant's agreement to keep the BearBox Technology confidential. *See Bunge

Corp. v. GATX Corp.*, 557 So. 2d 1376, 1384 (La. 1990) ("The confidential relationship is not

restricted to any specific association of the parties. . . and [includes] generally all persons who

are associated by any relation of trust and confidence."). At a minimum, that Defendants owed

Plaintiffs a duty is implicit in their understanding that the BearBox Technology was to be kept

confidential and used only in the context of a joint venture between BearBox and Lancium.

Accepting these well-pleaded allegations as true and viewing them in light most

---

[8] Plaintiffs' Amended Complaint further alleges that "[a]t all times before and during Storms's
disclosure of this [confidential] information, Storms told McNamara that the BearBox
Technology was confidential, and Storms relied on McNamara's good faith assurances that he
would keep confidential the information he received from Storms about the BearBox
Technology." D.I. 19 ¶ 32.

favorable to Plaintiffs, Plaintiffs have pled valid facts to support a finding that Defendants owed Plaintiffs a duty and Defendants' motion must be denied.

### C.     Material factual disputes preclude judgment on the pleadings

Defendants' Motion for Judgment on the Pleadings should be denied because several material issues of fact exist that, at a minimum, prevent resolution of necessary issues at this time. Judgment on the pleadings is proper only if the "movant clearly establishes that no material issue of fact remains to be resolved." *Mid-Am. Salt, LLC v. Morris Cty. Coop. Pricing Council*, 964 F.3d 218, 226 (3d Cir. 2020). Yet Defendants do not even attempt to argue that there are no issues of material fact.

A cursory review of the pleadings show that this case is replete with material issues of fact that preclude judgment on the pleadings. "[D]efendants filed an answer, denied liability, and have asserted affirmative defenses. The defendants' denials are sufficient to place *all* material facts in this case in dispute and, therefore, serve as a bar to [defendants'] motion for judgment on the pleadings." *Rainier v. Rispoli*, 2012 WL 752371, at *2 (D. Del. 2012) (emphasis added). Defendants' answer here, particularly when viewed in favor of Plaintiffs, contain denials of liability and asserted affirmative defenses that place these material facts at issue in this case and thereby bar the instant motion.  *See, e.g.*, Amended Answer to Amended Complaint, D.I. 30, ¶¶ 1, 3-4, 27-50; *Rainier*, 2012 WL 752371, at *2 (denying motion for judgment on the pleadings).

As an example, there are several material facts in dispute that are relevant to Plaintiffs' conversion claim in light of Defendants' Amended Answer. Under Louisiana law, "[t]o prevail on a claim of conversion, a plaintiff must prove that (1) he owned or had the right to possess; (2) the defendant's use was inconsistent with the plaintiff's right of ownership; and (3) the defendant's use constituted a wrongful taking." *Mabile v. BP, p.l.c.*, No. CV 11-1783, 2016 WL

5231839, at *21 (E.D. La. Sept. 22, 2016).  Defendants denials have placed all three elements in dispute.

With respect to the first element of conversion, Plaintiffs sufficiently allege that they owned or had the right to possess the BearBox Technology and tangible materials disclosing the BearBox Technology Plfs.' Am. Comp., ¶¶ 33, 60. (alleging Storms "conceived, developed, and reduced to practice the BearBox Technology" and "Plaintiffs own the BearBox Technology, related know-how, and related intellectual property," which includes the "annotated system diagrams, component specifications, and modeled data sets" provided to Defendants "under strict confidentiality obligations.") . Defendants deny all of these allegations. As a result, material issues of fact exist that preclude judgment on the pleadings.

Plaintiffs also properly allege the second element of conversion. D.I. 19 ¶¶ 4, 33, 61, 71 (alleging that "Defendants assumed dominion and control over the BearBox Technology," by (1) using these documents to incorporate the BearBox Technology into [Defendants'] own patent applications (2) wrongfully obtaining a patent covering the BearBox Technology and (3) wrongfully claiming the BearBox Technology as their own. *Id*. ¶ 4.  Plaintiffs further allege that "[t]hrough their wrongful conduct in obtaining the '433 Patent and claiming the BearBox Technology as their own, the Defendants have wrongfully obtained the purported ability to exclude Plaintiffs and others from using the BearBox Technology." *Id*. ¶ 61.  Plaintiffs sufficiently allege that Defendants use of the BearBox Technology, as embodied in the annotated system diagrams, component specifications, and modeled data sets, was inconsistent with Plaintiffs right of ownership. However, Defendants deny each of these allegations in their Amended Answer to Plaintiffs' Amended Complaint. Therefore, material issues of fact exist that preclude judgment on the pleadings.

With respect to the third element of conversion and Plaintiff's negligent misrepresentation claim, Plaintiffs allege that the "[i]nformation on the BearBox Technology was provided to Defendants solely for the purposes of evaluation for a potential business relationship and under strict confidentiality obligations." *Id*. ¶ 60. Plaintiffs further allege that "Storms told Defendant McNamara that the cryptocurrency mining systems and related methods were proprietary to Plaintiffs and not be used or shared outside of Lancium. . . Defendant McNamara agreed to keep the BearBox Technology confidential despite later recklessly incorporating the BearBox Technology into his own patent." *Id*. ¶ 71. Plaintiffs sufficiently allege that Defendants use of the BearBox Technology, as embodied in the system diagrams, component specification, and modeled data sets, constituted an unauthorized use and wrongful taking. Once again, Defendants deny each of these allegations and, as such, place these material issues of fact in dispute so as to preclude judgment on the pleadings.

Because Defendants have failed to show that all material facts are uncontested, judgment on the pleadings is inappropriate.  Discovery should proceed to allow the parties to resolve material questions of fact.

## V.    CONCLUSION

For all of the foregoing reasons, the Court should deny Defendants' Motion for Judgment on the Pleadings (D.I. 32). Should the Court grant the motion, however, BearBox respectfully requests leave to amend its Compliant to address any such decision.

ASHBY & GEDDES

*/s/ Andrew C. Mayo*

_____
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
amayo@ashbygeddes.com

*Attorneys for Plaintiffs*
*BearBox LLC and Austin Storms*

*Of Counsel:*

Benjamin T. Horton
John R. Labbe
Raymond R. Ricordati, III
Chelsea M. Murray
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive
6300 Willis Tower
Chicago, IL 60606-6357
(312) 474-6300

Dated:  July 19, 2021