IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BEAR BOX LLC and AUSTIN STORMS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 21-534-MN-CJB |
| | ) | |
| LANCIUM LLC, MICHAEL T. MCNAMARA and RAYMOND E. CLINE, JR., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

Pending before the Court in this inventorship dispute filed by BearBox LLC ("BearBox") and Austin Storms ("Mr. Storms" and collectively with BearBox, "Plaintiffs") is Defendants Lancium LLC ("Lancium"), Michael T. McNamara ("Mr. McNamara") and Raymond E. Cline, Jr.'s ("Mr. Cline" and collectively with Lancium and Mr. McNamara, "Defendants") "Motion for Judgment on the Pleadings[,]" filed pursuant to Federal Rule of Civil Procedure 12(c) (the "Motion"). (D.I. 32) For the reasons set forth below, the Court recommends that Defendants' Motion be GRANTED.[1]

**I.    BACKGROUND**

**A.    Factual Background**

Plaintiffs allege that Mr. Storms, through his company BearBox, developed proprietary technology for energy-efficient cryptocurrency mining systems (the "BearBox Technology"). (D.I. 19 at ¶¶ 2, 27-28) In May 2019, Mr. Storms attended an industry conference to promote the

---

[1] On September 10, 2021, United States District Judge Maryellen Noreika referred this case to the Court to resolve all pre-trial matters up to and including expert discovery matters, pursuant to 28 U.S.C. § 636(b). (D.I. 57)

BearBox Technology.  (*Id.* at ¶ 31)  Mr. Storms and Mr. McNamara met at the conference, and Mr. McNamara expressed interest in the BearBox Technology.  (*Id.* at ¶ 32)  Mr. Storms provided details regarding the BearBox Technology to Mr. McNamara over dinner and through other conversations, e-mails and text messages during the conference.  (*Id.*)  Conversations between Mr. Storms and Mr. McNamara at times occurred in front of other conference attendees.  (D.I. 28 at 27 at ¶ 43; D.I. 41 at ¶ 43)  Mr. Storms told Mr. McNamara that the BearBox Technology was confidential and Mr. McNamara assured him that he would keep the disclosures confidential.  (D.I. 19 at ¶ 32)  Following the conference, Mr. Storms provided annotated system diagrams, component specifications and modeled data sets to Mr. McNamara in reliance on Mr. McNamara's assurances of confidentiality.  (*Id.* at ¶ 33)  Mr. McNamara then ended communications with Mr. Storms.  (*Id.* at ¶ 34)

In October and December 2019, Defendants filed U.S. patent applications, which Plaintiffs allege wrongfully claim the BearBox Technology.  (*Id.* at ¶¶ 37-39)  The applications name Mr. McNamara and Mr. Cline as the sole joint inventors.  (*Id.* at ¶¶ 37, 39)  On March 31, 2020, United States Patent No. 10,608,433 (the "'433 patent") issued, claiming inventions that allegedly fall within the scope of the BearBox Technology and naming Mr. McNamara and Mr. Cline as the sole inventors.  (*Id.* at ¶¶ 40-41)  Mr. McNamara and Mr. Cline assigned their rights in the '433 patent to Lancium.  (*Id.* at ¶ 42)

On August 14, 2020, Lancium filed a patent infringement lawsuit against Layer1 Technologies ("Layer1") asserting the '433 patent.  (*Id.* at ¶ 44)  The lawsuit settled a few months later, with Layer1 taking a license to the '433 patent.  (*Id.* at ¶¶ 49-50)

Any further relevant facts will be set out as needed in Section III.

### B. Procedural History

Plaintiffs filed this action on April 14, 2021. (D.I. 1) On May 24, 2021, Plaintiffs filed the operative Amended Complaint, (D.I. 19), and on June 25, 2021, Defendants filed the operative Amended Answer to Amended Complaint and Counterclaims, (D.I. 28). On June 28, 2021, Defendants filed the instant Motion, (D.I. 32), which was fully briefed as of July 30, 2021, (D.I. 46).

## II. LEGAL STANDARD

In evaluating a motion for judgment on the pleadings brought pursuant to Rule 12(c), the Court uses the same standard that applies to a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019). It must view all factual allegations in a complaint in the light most favorable to the non-moving party, and it may not grant the motion "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Id.* (internal quotation marks and citation omitted). In deciding such a motion, the Court may consider only the pleadings, the exhibits attached thereto, matters of public record and undisputedly authentic documents integral to the pleadings. *Id.*

## III. DISCUSSION

Plaintiffs' Amended Complaint alleges five Counts: Count I's claim for "Correction of Inventorship for the '433 Patent: Austin Storms as Sole Inventor[,]" (D.I. 19 at ¶¶ 51-54); Count II's claim for "In the Alternative, Correction of Inventorship for the '433 Patent: Austin Storms as Joint Inventor with the Currently Named Inventors[,]" (*id.* at ¶¶ 55-58); Count III's claim for "Conversion by Lancium, McNamara, and Cline[,]" (*id.* at ¶¶ 59-62); Count IV's claim for

"Unjust Enrichment by Lancium, McNamara, and Cline[,]" (*id.* at ¶¶ 63-69); and Count V's claim for "Negligent Misrepresentation by Lancium and McNamara[,]" (*id.* at ¶¶ 70-73).

Defendants move to dismiss Count III, Count IV and Count V (the "state law claims"). (D.I. 33 at 1)[2] Defendants first argue that Plaintiffs' state law claims are preempted by federal patent law.[3] (*Id.* at 1-2) Additionally, they assert that, to the extent any of the claims are not preempted, they otherwise suffer from fatal flaws that warrant their dismissal as a matter of law. (*Id.*) The Court will assess each state law claim in turn.

### A. Conversion (Count III)

---

[2] Counts I and II are not at issue in Defendants' Motion. (D.I. 33 at 1)

[3] Federal law can preempt state law in three ways—explicit, field or conflict preemption. *Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1377 (Fed. Cir. 2005). This case implicates conflict preemption, (*see* D.I. 42 at 6; D.I. 46 at 3), which "involves a consideration of whether [a state] law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[,]" *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 262 (1979) (internal quotation marks and citations omitted); *see also Ultra-Precision Mfg.*, 411 F.3d at 1377. The law of the United States Court of Appeals for the Federal Circuit applies to the issue of whether federal patent law preempts a state law claim. *Ultra-Precision Mfg.*, 411 F.3d at 1376. The Federal Circuit has explained that "[i]f a plaintiff bases its [state law] tort action on conduct that is protected or governed by federal patent law, then the plaintiff may not invoke the state law remedy, which must be preempted for conflict with federal patent law." *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1335 (Fed. Cir. 1998), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999). Patent laws will not preempt state law claims if such claims include additional elements not found in the federal patent law cause of action, as long as the claims are not "an impermissible attempt to offer patent-like protection to subject matter addressed by federal law." *Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1306 (Fed. Cir. 1999). The Federal Circuit has held that "'the field of federal patent law preempts any state law that purports to define rights based on inventorship.'" *HIF Bio, Inc. v. Yung Shin Pharms. Indus. Co.*, 600 F.3d 1347, 1352-53 (Fed. Cir. 2010) (quoting *Univ. of Colo. Found. v. Am. Cyanamid Co.*, 196 F.3d 1366, 1372 (Fed. Cir. 1999)); *see also, e.g.*, *Speedfit LLC v. Woodway USA, Inc.*, 226 F. Supp. 3d 149, 160 (E.D.N.Y. 2016) (explaining that "according to controlling precedent, a state law claim that either seeks 'patent-like' protections not provided by federal patent law, or turns on a determination of inventorship, is preempted by federal patent law").

Courts have found that claims for conversion[4] that are dependent on a determination of patent inventorship are generally preempted by federal patent law. *See Gerawan Farming, Inc. v. Rehrig Pac. Co.*, No. 1:11-cv-01273-LJO BAM, 2012 WL 691758, at *7 (E.D. Cal. Mar. 2, 2012) (citing cases).[5] Defendants assert that Plaintiffs' conversion claim requires a determination of inventorship and is therefore preempted. (D.I. 33 at 7-9; D.I. 46 at 2) The Court agrees.

Plaintiffs' Amended Complaint begins by alleging that the case "is about the Defendants' *theft of inventions that rightfully belong to Plaintiffs*[,]" and Plaintiffs' conversion claim begins by incorporating by reference the allegations from Plaintiffs' correction of inventorship claims. (D.I. 19 at ¶¶ 1, 59 (emphasis added)) From there, the conversion claim alleges that "Defendants assumed dominion and control over the BearBox Technology *by claiming it as their own in the '433 patent*" and that "[t]hrough their wrongful conduct *in obtaining the '433 [p]atent and claiming the BearBox Technology as their own*, [] Defendants have wrongfully obtained the purported ability to exclude Plaintiffs and others from using the BearBox Technology." (*Id.* at ¶ 61 (emphasis added)) The harm that Plaintiffs allege as a result of the conversion is the loss of "valuable intellectual property[.]" (*Id.* at ¶ 62) This is clearly a claim that, by its wording, is

---

[4] At least for purposes of this Motion, both parties agree that Louisiana law applies to the state law claims at issue here. (D.I. 33 at 13; D.I. 42 at 10) Under Louisiana law, a claim for conversion requires proof of: (1) the plaintiff's right to possess; (2) that the defendant's use was inconsistent with the plaintiff's right of ownership; and (3) that the defendant's use constituted a wrongful taking. *Mabile v. BP, P.L.C.*, CIVIL ACTION NO. 11-1783, 2016 WL 5231839, at *21 (E.D. La. Sept. 22, 2016).

[5] On the other hand, conversion claims that are based on a non-patent-ownership theory of conversion are generally not preempted by federal patent law. *Gerawan Farming, Inc.*, 2012 WL 691758, at *7.

dependent on a determination of patent inventorship. It is thus preempted by federal patent law.[6] *See, e.g.*, *Speedfit LLC v. Woodway USA, Inc.*, 226 F. Supp. 3d 149, 160 (E.D.N.Y. 2016) (concluding that the plaintiffs' conversion claim was preempted by federal patent law, where plaintiffs' "assertion of ownership over the subject matter of the Woodway Patents, which underlies their claim of conversion, clearly turns on a determination of inventorship"); *Gerawan Farming, Inc.*, 2012 WL 691758, at *7 (concluding that the plaintiff's conversion claim was preempted by federal patent law, where the claim alleged that the defendant "substantially interfered with [the plaintiff's] rightful property by omitting [the plaintiff] as an inventor" and accordingly "wrongfully exercised control over [the plaintiff's] rights in the . . . '293 Patent'") (internal quotation marks and citation omitted); *Gen. Elec. Co. v. Wilkins*, No. 1:10-cv-00674-OWW-JLT, 2011 WL 3163348, at *9 (E.D. Cal. July 26, 2011) (finding that the defendant's conversion claim was preempted, where it sought "compensation for [p]laintiff's purported interference with [d]efendant's inventorship interests in the intellectual property embodied in the '565 and '985 patents; in other words, [d]efendant seeks patent-like protection under the guise of the tort of conversion").[7]

---

[6] In their briefing, Plaintiffs try to recast the conversion claim as one "based on acts of misappropriating documents and information[.]" (D.I. 42 at 7) But, as shown above, that is not accurate. The actual allegations in Count III make clear that Plaintiffs' conversion claim is "based on the alleged right to ownership of the '433 patent due to Storms' alleged inventorship." (D.I. 46 at 4)

[7] Moreover, the fact that Plaintiffs' conversion claim seeks damages amounting to the loss of "valuable intellectual property from which Plaintiffs would have derived substantial revenue via licensing and/or selling patented products[,]" (D.I. 19 at ¶ 62), demonstrates that it is patent-like in nature, *see Speedfit LLC*, 226 F. Supp. 3d at 160. That is another reason why the claim is preempted. (D.I. 46 at 4)

6

Because the Court finds that Plaintiffs' conversion claim is preempted, it need not now further evaluate Defendants' additional arguments for dismissal of the claim.

B.     **Unjust Enrichment (Count IV)**

The next claim, in Count IV, is a claim for unjust enrichment.[8] As with conversion claims, unjust enrichment claims that are based on a determination of patent inventorship are generally preempted by federal patent law. *See, e.g.*, *Tavory v. NTP, Inc.*, 297 F. App'x 976, 983-84 (Fed. Cir. 2008) (finding that an unjust enrichment claim was preempted by federal patent law where the "dispositive issue [was plaintiff's] alleged co-inventorship"); *Heat Techs., Inc. v. Papierfabrik Aug. Koehler SE*, Civil Action No. 1:18-cv-01229-SDG, 2020 WL 12309512, at *4 (N.D. Ga. June 5, 2020) (citing cases); *James v. J2 Cloud Servs. Inc.*, Case No. 2:16-cv-05769-CAS(PJWx), 2018 WL 6092461, at *5 (C.D. Cal. Nov. 19, 2018).[9] Defendants

---

[8]     The elements of an unjust enrichment claim in Louisiana are: (1) an enrichment of the defendant; (2) an impoverishment of the plaintiff; (3) a connection between the enrichment and the resulting impoverishment; (4) an absence of justification or cause for the enrichment and impoverishment; and (5) there must be no other remedy at law available to plaintiff. *Garber v. Badon & Ranier*, 981 So. 2d 92, 100 (La. Ct. App. 2008).

[9]     On the other hand, there are some circumstances where federal courts have concluded that an unjust enrichment claim having some connection to patent rights was not preempted, such as where it was alleged that defendants wrongfully obtained a patent based on confidential information received from a plaintiff, and claimed ownership of it in violation of a contract. *See, e.g.*, *Spears v. SHK Consulting & Dev., Inc.*, 338 F. Supp. 3d 1272, 1277 (M.D. Fla. 2018); *see also Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*, 342 F.3d 1298, 1306-07 (Fed. Cir. 2003) (finding that an unjust enrichment claim was not preempted, where it amounted to "a legal claim to remedy the breach of a contract implied in law for disclosure of [plaintiffs'] confidential manuscript in exchange for a promise not to disseminate the idea without the [plaintiffs'] consent"); *cf. Ki Beom Kim v. Dyna Flex, Ltd.*, 525 F. Supp. 3d 999, 1007-08 (E.D. Mo. 2021) (denying a motion to remand, where plaintiff's unjust enrichment claim raises a substantial federal question regarding inventorship, as it was not "a *dispute strictly concerning ownership, typically involving an underlying contract*" but instead one where "Plaintiff is unquestionably arguing that he is the true inventor of the Invention and should have been included on the patents. If [Defendant] is the true inventor and owner of the patents, there is no reasonable claim that it has been unjustly enriched by continuing to sell products based on the Patents") (emphasis added).

7

assert that Plaintiffs' unjust enrichment claim, like its conversion claim, is focused on the question of inventorship (and necessarily requires a determination of inventorship in order to know whether a legal violation can be found). (D.I. 33 at 9-11; D.I. 46 at 2-3) The Court again agrees with Defendants.

Plaintiffs' unjust enrichment claim begins by incorporating the previous allegations of Plaintiffs' inventorship and conversion claims. (D.I. 19 at ¶ 63) It then alleges that "Plaintiffs conferred a benefit on Defendants by providing them *valuable intellectual property* about cryptocurrency mining systems and related confidential information and materials" and that "Defendants have been and continue to be unjustly enriched by profiting from their wrongful conduct[,] *[i]n particular, Defendants have unlawfully used Plaintiffs' property by asserting inventorship* over the BearBox Technology, and deriving an unjust benefit from exploiting Storms' cryptocurrency mining inventions." (*Id.* at ¶¶ 64, 67 (emphasis added)) As for damages, Plaintiffs allege a "loss of money and property as a result of Defendants' *wrongful use of Plaintiffs' intellectual property, including the right to any patent* based on their own intellectual property." (*Id.* at ¶ 68 (emphasis added)) Thus, in light of the way Plaintiffs have pleaded the claim, the claim's gravamen is that Defendants have been enriched because they have declared that they are the inventors of the '433 patent—and that this enrichment is unjust because Mr. Storms is actually the true inventor. This claim, as pleaded, is also preempted by federal patent law. *See James*, 2018 WL 6092461, at *4-5 (finding that the plaintiff's unjust enrichment claim was preempted because it was "fundamentally based on plaintiff's assertion that he should have been named on the '638 patent"); *OptoLum, Inc. v. Cree, Inc.*, 244 F. Supp. 3d 1005, 1014 (D. Ariz. 2017) ("Because OptoLum's unjust enrichment claim depends on the

8

determination that OptoLum, not Cree, invented the LED technology at issue here, the claim is preempted by federal patent law.").

Here again, because the Court finds that this claim is preempted, it declines to evaluate Defendants' remaining arguments for dismissal.

### C. Negligent Misrepresentation (Count V)

The Court turns lastly to Plaintiffs' negligent misrepresentation claim in Count V. Under Louisiana law, the tort of negligent misrepresentation has three elements: (1) there must be a legal duty on the part of the defendant to supply correct information to the plaintiff; (2) there must be a breach of that duty; and (3) the breach must have caused damages to the plaintiff. *Schaumburg v. State Farm Mut. Auto. Ins. Co.*, 421 F. App'x 434, 439-40 (5th Cir. 2011); *Cook v. Am. Gateway Bank*, 49 So. 3d 23, 32 (La. Ct. App. 2010).

Defendants first assert that Count V is preempted because it is "dependent upon [Plaintiffs'] assertion that [Mr.] Storms is an inventor of the '433 patent[.]" (D.I. 33 at 11-12; *see also* D.I. 46 at 2-3) In the Court's view, however, the argument for preemption here is not as strong as it was regarding Counts III and IV.

While Plaintiffs' conversion and unjust enrichment claims clearly turned on whether Mr. Storms is a proper inventor of the '433 patent, the premise of Plaintiffs' negligent misrepresentation claim is a bit different. In Count V, Plaintiffs first allege that Mr. Storms "told [Mr.] McNamara that the cryptocurrency mining systems and related methods were proprietary to Plaintiffs and not to be used or shared outside of Lancium" and that "[Mr.] McNamara gave his word that he would abide by this confidentiality." (D.I. 19 at ¶ 71) The claim then asserts that Plaintiffs relied on Mr. McNamara's assurances that he would "keep the BearBox Technology confidential" and that Plaintiffs would not have continued to share information with

9

Mr. McNamara had they known that Defendants would violate that promise and incorporate the BearBox Technology into patent applications. (*Id.* at ¶¶ 71-72) As for damages suffered as a result of Defendants' alleged misrepresentation, Plaintiffs allege the loss of potential patent rights as well as the "*costs of Plaintiffs' know-how converted under the guise of a potential business relationship.*" (*Id.* at ¶ 73 (emphasis added))

Thus, here the claim as pleaded seems to turn in significant part on whether Mr. McNamara made a representation about confidentiality to Plaintiffs and whether that representation was false; in resolving those questions, whether Mr. Storms was a true inventor is not necessarily a relevant consideration. And Plaintiffs' request for relief is directed, at least in part, to damages for something other than the loss of the ability to license the patent at issue. In light of this, and in light of the lack of caselaw finding negligent misrepresentation claims to be preempted by federal patent law,[10] the Court concludes that Plaintiffs' negligent misrepresentation claim is not preempted. *Cf. HIF Bio, Inc. v. Yung Shin Pharms. Indus. Co.*, 600 F.3d 1347, 1356 (Fed. Cir. 2010) (finding that plaintiffs' causes of action for, *inter alia*, fraud and intentional and negligent interference with contractual relations claims were not preempted, where the inventorship issue was not essential to the resolution of such claims).

However, the Court agrees with Defendants that Count V should nevertheless be dismissed. In this regard, Defendants rightly contend that the claim is fatally flawed because Plaintiffs fail to plead a legal duty on the part of Lancium/Mr. McNamara. (D.I. 33 at 18-20; D.I. 46 at 10)

---

[10] Indeed, Defendants acknowledge that they are not aware of any case that specifically addresses preemption of a claim for negligent misrepresentation by federal patent law. (D.I. 33 at 13 & n.2)

Whether these Defendants owed a duty to Plaintiffs is a question of law. *Barrie v. V.P. Exterminators, Inc.*, 625 So. 2d 1007, 1015 (La. 1993). "[T]he initial inquiry is whether, as a matter of law, a duty is owed to this particular plaintiff to protect him from this particular harm[,]" and "[a] negative answer . . . results in a determination of no liability." *Miller v. Lowe*, Civil Action No. 08-1624, 2009 WL 4730201, at *4 (W.D. La. Dec. 4, 2009) (internal quotation marks and citations omitted).

Plaintiffs, for their part, argue that the Amended Complaint sufficiently pleads "the existence of a duty stemming from the confidential relationship established between the parties." (D.I. 42 at 15)  In this regard, the Supreme Court of Louisiana has explained that a confidential or fiduciary relationship giving rise to the requisite duty can exist between "generally all persons who are associated by any relation of trust and confidence" such as, for example, "trustee and beneficiary, attorney and client, parent and child, or husband and wife . . . [and] partners and co-partners, principal and agent, master and servant, physician and patient[.]" *Bunge Corp. v. GATX Corp.*, 557 So. 2d 1376, 1384 n.4 (La. 1990).

None of these types of relationships (or something close to them) are at issue here. Instead, the Amended Complaint pleads that Mr. Storms and Mr. McNamara were simply two men with no previous relationship who met each other at a conference, had dinner and went on to discuss a "potential business relationship"—and that in those conversations, Mr. Storms shared what he considered to be confidential information with Mr. McNamara. (D.I. 19 at ¶¶ 32, 72-73) Plaintiffs cite to no cases suggesting that this type of "business relationship" gives rise to the requisite duty under Louisiana law. And courts applying Louisiana law to circumstances involving similar types of business relationships have found the opposite. *See, e.g.*, *House of Raeford Farms of La. LLC v. Poole*, CIVIL ACTION NO. 19-271, 2021 WL 1081837, at *4-6

(W.D. La. Mar. 18, 2021) (dismissing a fraudulent misrepresentation claim, which similarly requires that a special relationship exist between a plaintiff and defendant establishing a duty to disclose omitted information, where the parties were in a seller-buyer relationship, since fiduciary duties do not arise from "ordinary supplier-customer contracts") (internal quotation marks and citation omitted); *S. Serv. Corp. v. Tidy Bldg. Servs., Inc.*, No. Civ.A. 04-1362, 2004 WL 2784909, at *6 (E.D. La. Dec. 1, 2004) (finding that the plaintiff's complaint failed to state a claim for negligent misrepresentation, where "[t]he relationships between Tidy and its customers and Tidy and [plaintiff] do not fall within the class of special relationships of trust and confidence; they are ordinary commercial relationships"). Plaintiffs' negligent misrepresentation claim therefore fails as a matter of law.

### D. Conclusion

In sum, the Court agrees with Defendants that Plaintiffs' conversion and unjust enrichment claims are preempted by federal patent law, and that Plaintiffs' negligent misrepresentation claim is wanting as a matter of law due to the failure to sufficiently allege the requisite duty. Plaintiffs have requested leave to amend the Amended Complaint if Defendants' Motion is granted. (D.I. 42 at 18) The Court believes that this request should be granted as to Counts III and IV because: (1) it is not clear that allowing the opportunity to amend would be a futile act;[11] (2) this is the first time the Court has found Plaintiffs' claims to be deficiently pleaded; and (3) leave to amend should be given freely "when justice so requires." Fed. R. Civ. P. 15(a)(2). As to Count V, however, the Court does not see how Plaintiffs can plead a plausible

---

[11] If Plaintiffs are given the opportunity to replead, they should be mindful of Defendants' other arguments for dismissal of these Counts, (D.I. 33 at 14-18), and should address those arguments in the new pleading to the extent they need to, as it is not likely that Plaintiffs would be given a further chance to replead thereafter.

claim (i.e. how Plaintiffs can possibly allege the requisite duty).  Thus, the Court also recommends that dismissal of Counts III and IV be without prejudice and that dismissal of Count V be with prejudice.  The Court suggests that, to the extent the District Court affirms the Court's recommendation, Plaintiffs be given leave to file one further amended complaint within 14 days. *TriDiNetworks Ltd. v. Signify N. Am. Corp.*, Civil Action No. 19-1063-CFC-CJB, 2020 WL 2839224, at *5 (D. Del. June 1, 2020).

## IV. CONCLUSION

For the foregoing reasons, the Court recommends that Defendants' Motion be GRANTED.[12]

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2).  The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.  *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: January 18, 2022

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

---

[12] Defendants' request for oral argument, (D.I. 47), is DENIED.