# EXHIBIT A

**COUNT ~~V~~III**
**TRADE SECRET MISAPPROPRIATION UNDER**
**FEDERAL DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836**

66.   ~~71.~~Plaintiffs incorporate the above paragraphs by reference.

67.   ~~72.~~At all relevant times, Plaintiffs and Defendants were engaged in interstate commerce. For example, Plaintiffs and Defendants are engaged in trade and business, developing and testing, among other things, cryptocurrency mining systems and related methods in interstate commerce throughout the United States.

68.   ~~73.~~In the course of the interactions between Austin Storms and Defendants, Defendants obtained confidential information about ~~the~~ BearBox ~~Technology~~'s technology relating to certain features, including methods for energy value arbitrage, including cryptocurrency mining systems and ~~related methods from Plaintiff. The confidential information included detailed technical information about the BearBox Technology~~arbitraging related energy values. Such information constitutes trade secrets of substantial economic value, at least because methods for energy value arbitrage may be used for substantial profit. This confidential technical information was not known to the public or to other persons who can obtain economic value from its disclosure or use. This information constituted a trade secret under the Defend Trade Secrets Act, 18 U.S.C. §§ 1836.

69.   74.Defendants knew the ~~technical~~ information they received from Austin Storms about ~~the~~ BearBox ~~Technology~~'s technology was confidential, as Storms specifically informed Defendant McNamara that the information given to him was to be held in confidence, ~~for internal use only,~~ and was not to be used for any other purpose beyond those necessary to carry out an evaluation in advance of a potential business relationship, and was in no way the information received to be used by Defendants' for their own profit. McNamara himself referred to the exchanges with Plaintiffs' "lots of stuff to collaborate on." Defendants further knew the technical information they received from Storms about BearBox's technology was confidential based upon Defendants' own actions taken to protect that information once they possessed it, and misappropriated it by using in modification of their Smart Response™ software. Defendants' restricted access to the information, including as it was represented in the Smart Response™ software, required confidentiality agreements for third party customers, potential customers, and licensees, and other internal measures were taken.

70.   Plaintiffs included a confidentiality designation on communications to which the confidential trade secret information was attached. Plaintiffs took additional reasonable steps to preserve secrecy via these explicit guidelines regarding confidentiality and by limiting the number of ~~collaborators~~individuals that Plaintiffs allowed to access this information. Plaintiffs also had systems in place to maintain confidentiality with respect to third parties, by, for example, limiting access to its ~~offices and~~ computers. The confidential information was, at all other times, secured on a password protected computer. The confidential information was not externally accessible through the internet. When that password protected computer was not attended, it was secured in a locked building at Storms residence, which included other security measures such as a concierge and elevator keys.

71. For the very limited number of additional occasions the confidential, trade secret information was shared, it was shared with a person or entity subject to contractual obligations regarding confidentiality and/or prohibitions on unauthorized use. For the limited number of occasions BearBox shared the confidential, trade secret information with potential customers, it was done only with BearBox management approval.

72. 75.Defendants' inclusion of Plaintiffs' confidential technical information in the '433 patent constituted a misappropriation of misappropriated Plaintiffs' trade secrets. Defendants acquired the confidential information under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret.76.Defendants' inclusion of Plaintiffs' confidential technical information in the '433 patent was an unauthorized disclosure in breach of Defendants' agreement to maintain the secrecy of this information or otherwise limit its use. As recently as December 4, 2019, Defendants have wrongly sworn that Plaintiffs' confidential technical information is their own by declaring to the United States Patent and Trademark Office that they were the original and joint inventors of the inventions claimed in the '433 patent. Even ignoring that Defendants have improperly claimed this information as their own, through their public filings when they used BearBox technology, without Plaintiffs' authorization, in at least its Smart Response™ software. Defendants have disclosed and/or used the confidential technical information without the express or implied consent of Plaintiffs. The acts of taking Plaintiffs' confidential information, claimingand using it as Defendants' own, and submitting it in public filings were improper means in breach of a confidential relationshipwithout permission was improper. Further, Defendant McNamara agreed to abide by Plaintiffs' confidentiality terms, only to violate these terms in secret. Defendant McNamara's deception led to Storms continuing to disclose confidential information to Defendants.

73. 77.As a result of Defendants' misappropriation of Plaintiffs' trade secrets, Plaintiffs' have suffered and will suffer damages or other financial harm in an amount to be

proven at trial including, but not limited to, damages for actual loss caused by the misappropriation of the trade secrets, ~~damages~~<u>financial loss</u> for any unjust enrichment caused by the misappropriation of the trade secrets, and/or damages caused by the misappropriation measured by imposition of liability ~~for a reasonable royalty for the Defendants' unauthorized disclosure or use of the trade secrets~~.

<u>74.</u>    ~~78.~~The Defendants willfully and maliciously misappropriated the Plaintiffs' trade secrets, and Plaintiffs are therefore entitled to an award of exemplary damages and an award of reasonable attorney's fees under 18 U.S.C. § 1836(b)(3)(C), (D).

**COUNT ~~VII~~IV TRADE SECRET MISAPPROPRIATION UNDER ~~TEXAS~~LOUSIANA CIVIL PRACTICE AND REMEDIES CODE ~~§ 134~~, TITLE 51, SECTION 13-A**

75. ~~79.~~Plaintiffs incorporate the above paragraphs by reference.

76. ~~80.~~At all relevant times, Plaintiffs and Defendants were engaged in trade or commerce within the meaning of ~~Texas Civil Practice and Remedies c. § 134A, the Texas~~La. R.S. 51:1431-39 (2011), the Louisiana Uniform Trade Secrets Act. For example, Plaintiffs and Defendants are engaged in trade and business, developing and testing, among other things, cryptocurrency mining systems and related methods.

77. ~~81.~~In the course of the interactions between Austin Storms and Defendants, Defendants obtained confidential information about ~~the~~ BearBox ~~Technology~~'s technology relating to certain features, such as methods for energy value arbitrage, including cryptocurrency mining systems and ~~related methods from Plaintiff. The confidential information included detailed technical information about the BearBox Technology~~arbitraging related energy values. Such information constitutes trade secrets of substantial economic value, at least because methods for energy value arbitrage, including cryptocurrency mining systems and arbitraging related energy valuesmay be used for substantial profit. This confidential technical information was not known to the public or to other persons who can obtain economic value from its disclosure or use. This information constituted a trade secret under the Louisiana Uniform Trade Secret Act.

78. ~~82.~~Defendants knew the technical information they received from Austin Storms about ~~the~~ BearBox ~~Technology~~'s technology was confidential, as Storms specifically informed Defendant McNamara that the information given to him was to be held in confidence, ~~for internal use only,~~ and was not to be used for any other purpose beyond those necessary to carry out an evaluation in advance of a potential business relationship. ~~Plaintiffs took~~, and was in no way the information received to be used by Defendants' for their own profit. Defendants further knew the information they received from Storms about BearBox's technology was confidential

based upon Defendants' own actions taken to protect that information once they possessed it.

Defendants' restricted access to the

information, required confidentiality agreements for third party customers, potential customers, and licensees, and other internal measures were taken. Defendants further took these actions to protect Plaintiffs' confidential information after Defendants misappropriated it by including it for use in Defendants' Smart Response™ software.

79.    Plaintiffs included a confidentiality designation on communications to which the confidential trade secret information was attached. Plaintiffs took additional reasonable steps to preserve secrecy via these explicit guidelines regarding confidentiality and by limiting the number of collaborators that Plaintiffs allowed to access this information. Plaintiffs also had systems in place to maintain confidentiality with respect to third parties, by, for example, limiting access to its offices and computers. The confidential information was, at all other times, secured on a password protected computer. The confidential information was not externally accessible through the internet. When that password protected computer was not attended, it was secured in a locked building.

80.    For the very limited number of additional occasions the confidential, trade secret information was shared, it was shared with a person or entity subject to contractual obligations regarding confidentiality and/or prohibitions on unauthorized use. For the limited number of occasions BearBox shared the confidential, trade secret information with potential customers, it was done only with BearBox management approval.

81.    83.Defendants' inclusion of Plaintiffs' confidential technical information in the '433 patent constituted a misappropriation of misappropriated Plaintiffs' trade secrets. Defendants acquired the confidential information under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret.

84.Defendants' inclusion of Plaintiffs' confidential technical information in the '433 patent was an unauthorized disclosure in breach of Defendants' agreement to maintain the secrecy of this information or otherwise limit its use. As recently as December 4,

~~2019,Defendants have wrongly sworn that Plaintiffs' confidential technical information is their own by declaring to the United States Patent and Trademark Office that they were the original and joint inventors of the inventions claimed in the '433 patent. Even ignoring that Defendants have improperly claimed this information as their own, through their public filings~~ <u>when they used BearBox technology, without Plaintiffs' authorization, in at least its Smart Response™ software.</u> Defendants have disclosed <u>and/or used</u> the confidential technical information without the express or implied consent of Plaintiffs. The acts of taking Plaintiffs' confidential information, ~~claiming~~<u>and using</u> it as Defendants' own, and ~~submitting it in public filings were improper means in breach of a confidential relationship~~<u>without permission was improper</u>.

Further, Defendant McNamara

agreed to abide by Plaintiffs' confidentiality terms, only to violate these terms in secret. Defendant McNamara's deception led to Storms continuing to disclose confidential information to Defendants.

82. ~~85.~~As a result of ~~the~~Defendants' misappropriation of Plaintiffs' trade secrets ~~and intended immediate use by the Defendants~~, Plaintiffs' have suffered and will suffer damages or other financial harm in an amount to be proven at trial including, but not limited to, damages for actual loss caused by the misappropriation of the trade secrets, financial loss for any unjust enrichment caused by the misappropriation of the trade secrets, and/or damages caused by the misappropriation measured by imposition of liability.

83.    The Defendants willfully and maliciously misappropriated the Plaintiffs' trade secrets, and Plaintiffs are therefore entitled to an award of exemplary damages and an award of reasonable attorney's fees under § 51:1434.

Document comparison by Workshare Compare on Wednesday, February 23, 2022 9:51:35 AM

| Input: | |
|---|---|
| Document 1 ID | file://C:\Users\nbutler\Desktop\TS #001 (19685120.1)_Redacted.pdf |
| Description | TS #001 (19685120.1)_Redacted |
| Document 2 ID | file://C:\Users\nbutler\Desktop\TS P Second Amended Complaint (01772495)_Redacted.pdf |
| Description | TS P Second Amended Complaint (01772495)_Redacted |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 61 |
| Deletions | 52 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 113 |