## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BEARBOX LLC and AUSTIN STORMS, | **REDACTED PUBLIC VERSION** |
| Plaintiffs, | |
| v. | Civil Action No. 21-534-MN-CJB |
| LANCIUM LLC, MICHAEL T. MCNAMARA, and RAYMOND E. CLINE, JR., | JURY TRIAL DEMANDED |
| Defendants. | |

## LETTER TO THE HONORABLE CHRISTOPHER J. BURKE
## IN RESPONSE TO DEFENDANTS' LETTER [D.I. 112]

*Of Counsel:*
Benjamin T. Horton
John R. Labbe
Raymond R. Ricordati, III
Chelsea M. Murray
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive
6300 Willis Tower
Chicago, IL 60606-6357
(312) 474-6300

Dated: March 10, 2022

ASHBY & GEDDES
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
amayo@ashbygeddes.com

*Attorneys for Plaintiffs*
*BearBox LLC and Austin Storms*

Dear Judge Burke:

The Court should deny Lancium's motion to strike Counts VI and VII (the "New Trade Secret Counts") in BearBox and Mr. Storms's (collectively, "BearBox") Second Amended Complaint ("SAC").[1]  When granting Lancium's motion for judgment on the pleadings, the Court gave BearBox leave to file an amended complaint. Although the Court granted Lancium's motion with prejudice with respect to one claim, with respect to other claims, the Court granted BearBox "leave to file one further amended complaint." D.I. 92 at 13. BearBox interpreted this ruling as giving it leave to amend both to plead additional facts in support of its existing claims and to add additional claims related to the existing claims. Thus, BearBox did not seek leave to amend when it filed its Second Amended Complaint.

To the extent that BearBox is required to demonstrate good cause to add its New Trade Secret Counts, BearBox respectfully asks the Court to find that good cause exists. BearBox could not have pleaded the New Trade Secret Counts before the November 1, 2021 deadline to amend the pleadings. Lancium's opposition is premised on the incorrect assumption that the New Trade Secret Counts are the same as the trade secret counts BearBox plead in its original complaint, and later voluntarily dismissed after discovering a public disclosure of that information. BearBox's New Trade Secret Counts, however, are based on a different trade secret. BearBox only learned of Lancium's misappropriation of this trade secret through discovery requested in May 2021 and June 2021, but not produced by Lancium until December 20, 2021, seven weeks after the pleading deadline.

## I.      RELEVANT FACTS

BearBox filed its Original Complaint on April 14, 2021, which included two counts for trade secret misappropriation. D.I. 1. On May 24, 2021, BearBox filed its First Amended Complaint ("FAC"), dropping its trade secret counts because BearBox counsel became aware of a public disclosure of the information that formed the basis of those counts. D.I. 19. On June 28, 2021, Lancium filed its Motion for Judgment on the Pleadings, challenging BearBox's FAC. D.I. 32.

After filing its FAC, BearBox served discovery requests, including its First Set of Interrogatories, on June 9, 2021. Lancium responded to those Interrogatories on July 23, 2021, stating that it would "identif[y] documents pursuant to Federal Rule of Civil Procedure 33(d)." Ex. A at 7 (Resp. to No. 3). Lancium did not identify any documents, though, and BearBox complained of Lancium's inadequate responses and document production on July 28, 2021, October 5 and 18, 2021, and November 15 and 23, 2021. Exs. B, C, D, E, and F.

Despite BearBox's diligence, it was not until December 20, 2021, seven weeks after the deadline to amend pleadings, that Lancium produced 1,329 documents. In fact, of the 2,709

---

[1] With its current motion to strike "[p]ursuant to Federal Rule of Civil Procedure 12(f)" (D.I. 111), Lancium should be barred from filing yet another Rule 12(b) motion, although it asserts that it intends to seek dismissal under Rule 12(b)(6) in a forthcoming motion. (D.I. 112 at fn. 1).  *See* Fed. R. Civ. P. 12(g)(2)  ("Limitation on Further Motions. Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.").  Lancium even suggests that it may move to dismiss the New Trade Secret Counts in a separate Rule 12(b)(6) motion should the Court deny its Rule 12(f) motion.  Any further motion pursuant to Rule 12 is procedurally improper.

documents Lancium has produced in this case, it produced 2,415 of them after the pleading deadline. Lancium cited many of the documents included in its December 20 production under FRCP 33(d) in its Second Supplemental Interrogatory Response, served on December 23. Ex. G. On January 18, 2022, this Court issued its R&R granting Lancium's Motion for Judgment on the Pleadings, which Judge Noreika adopted on February 2, 2022. On February 16, 2022, BearBox filed the SAC, including re-pleaded Counts III and IV, and the New Trade Secret Counts based on information learned from Lancium's December 20 production.

## II.   ARGUMENT

The Court should deny Lancium's motion to strike because BearBox had leave to file the SAC. Although the Court dismissed one of BearBox's claims with prejudice, it otherwise granted BearBox leave to file an amended complaint. D.I. 92 at 12-13. In view of the permissive standard for granting leave to amend following dismissal of claims, BearBox should be permitted to amend its complaint to include additional (but related) claims including claims that BearBox believes will survive any renewed motion to dismiss, such as the New Trade Secret Counts. *See* FRCP 15(a)(2) ("The court should freely give leave when justice so requires.").

If the Court should find, however, that BearBox was not given leave to amend beyond Counts III and IV, BearBox respectfully requests leave to file the SAC based on a showing of good cause under Rule 16(b)(4). *E. Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000). Good cause exists when the schedule cannot reasonably be met despite the diligence of the party seeking the extension. FRCP 16(b)(4) Adv. Cmte. Notes (1983 amendments). "[T]he good cause standard under Rule 16(b) hinges on diligence of the movant, and not on prejudice to the non-moving party." *Roquette Freres v. SPI Pharma, Inc.*, C.A. No. 06–540–GMS, 2009 WL 1444835, at *4 (D. Del. May 21, 2009). This Court regularly finds that good cause is present when the amendment sought is based on discovery received after the deadline to amend the pleadings. *Guardant Health, Inc. v. Personal Genome Diagnostics, Inc.*, Case No. 1:17-cv-01623, D.I. 277 (D. Del. June 5, 2019).[2] If good cause is shown, leave to amend should be granted absent a compelling reason to deny under Rule 15, such as bad faith, futility of the claims, or prejudice to the defendants. *Lipocine Inc. v. Clarus Therapeutics, Inc.*, No. CV 19-622 (WCB), 2020 WL 4794576, at *3 (D. Del. Aug. 18, 2020).

Here, BearBox first sought the information that would later form the basis of the New Trade Secret counts in May and June of 2021, five months before the November 1, 2021 pleading

---

[2] *See also Home Semiconductor Corp. v. Samsung Elecs. Co.*, No. CV 13-2033-RGA, 2019 WL 2135858, at *3-*6 (D. Del. May 16, 2019) (granting leave to amend after scheduling order deadline, the court finding that good cause was shown where plaintiff's new allegations were based on information obtained through discovery after the deadline had passed and plaintiff sought to amend within three months of learning of the new information); *TC Tech. LLC v. Sprint Corp.*, No. 16-CV-153-RGA, 2019 WL 529678, at *2 (D. Del. Feb. 11, 2019) (granting leave to amend after the scheduling order deadline and finding good cause to permit the amendment where the new claim was based on new information produced during a deposition conducted after the deadline to amend had passed); *Cornell Univ. v. Illumina, Inc.*, 2016 WL 3046258, at *5 (D. Del. May 27, 2016) (finding good cause where the party's new allegations were based on "a new set of facts obtained and confirmed during discovery which took place after the Scheduling Order's deadline for amending pleadings"); *Enzo Life Sciences, Inc. v. Digene Corp.*, 270 F. Supp. 2d 484, 489 (D. Del. 2003) (allowing amendment to add new allegations after the scheduling order deadline where the party sought to amend a month and a half after depositions revealed new facts supporting the allegations).

deadline. Lancium, however, did not produce responsive documents until December 20, 2021 (Lancium then voluntarily cited those documents in supplemental interrogatory responses).[3]

Lancium concedes that BearBox's New Trade Secret Counts are "narrower" than its original trade secret counts, but goes on to oversimplify the SAC so it may incorrectly argue that the New Trade Secret counts are simply the original trade secret counts "re-stated." D.I. 112. BearBox's New Trade Secret Counts, however, are based on information from documents Lancium produced eight months *after* the original trade secret counts. As such, the language of BearBox's New Trade Secret Counts is different. See, e.g., D.I. 103, ¶¶ 46, 68, 77 (describing the New Trade Secret as "methods for energy value arbitrage, including cryptocurrency mining systems and arbitraging related energy values"). BearBox is not required to spell out every detail of its trade secret in the SAC. *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 906 (3d Cir. 2021) ("a plaintiff need not 'spell out the details of the trade secret to avoid' dismissal"). Courts are in general agreement that trade secrets "need not be disclosed in detail in a complaint ... for the simple reason that such a requirement would result in public disclosure of the purported trade secrets." *Bos. Sci. Corp. v. Nevro Corp.*, 415 F. Supp. 3d 482, 496 (D. Del. 2019); citing *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 755 F. Supp. 635, 636 (D. Del. 1991). It is enough to allege facts surrounding the misappropriated trade secret, such as the pathway through which the confidential information flowed, specific documents exchanged, the products or features at issue, and the timeline of events. *Montrose Env't Grp., Inc. v. Yeddula*, No. CV 20-834-RGA-SRF, 2020 WL 4335522, at *7 (D. Del. July 28, 2020), report and recommendation adopted, No. CV 20-834-RGA, 2021 WL 355155 (D. Del. Feb. 2, 2021). The SAC alleges all that and more. See, e.g., D.I. 103, ¶¶ 32-37, 69, 77 (allegations describing the specific timeline, documents exchanged, and interactions between the parties), 46, 50, 68, 72, 81 (allegations specifying defendants' product incorporating the trade secret).

In addition, Lancium cannot credibly argue, after hours of deposition testimony by Lancium and BearBox witnesses following the filing of the SAC, that it is left wondering about the basis of the New Trade Secret Counts. For example, Lancium had the opportunity to, and did, question BearBox about the SAC.

Lancium does not argue that the SAC is in bad faith or futile, only that Lancium would suffer prejudice because it "has not had the opportunity to take meaningful discovery on those claims." D.I. 112 at 3. Lancium, however, has already conducted expansive discovery in this case seeking everything related to ███████████████████████████████████████████████ ████████████████████████████████████████████████████████ Indeed, Lancium cast discovery nets wide enough to capture its own pleadings, which state "[n]one of Lancium's intellectual property, products, or services were derived from or developed from any of the materials sent by Storms to McNamara." D.I. 30.

Finally, in view of the timing in which Lancium's motion was decided, BearBox offered to

---

[3] *See, e.g.*, Lancium's December 23, 2021 Second Supplemental Response to Interrogatory No. 3, and FRCP 33(d) citations to ██████████ Ex. G.

[4] *See, e.g.*, Defendants' Second Set of Requests for Production (Nos. 12-42); Defendants' Second Set of Interrogatories (Nos. 10-21); Defendants' First Set of Requests for Admission (Nos. 1-33). Exs. H, I, J.

seek permission from the Court to extend the case schedule, but Lancium declined that suggestion, and instead requested the following limited discovery in the event its motion to strike is denied: three (3) additional interrogatories, five (5) additional requests for admission, and two (2) additional hours of deposition time.  BearBox is willing to provide responses to this additional written discovery on an expedited basis if the Court denies Lancium's motion to strike.  Moreover, because Lancium's expert reports are not due until May 6, 2022, there is more than enough time to schedule two additional hours of deposition time to cure any alleged prejudice and keep the case on its current schedule. *Cloud Farm Assocs., L.P. v. Volkswagen Grp. of Am., Inc.*, No. CA 10-502-LPS, 2012 WL 3069390, at *6 (D. Del. July 27, 2012).  Accordingly, BearBox respectfully requests that the Court deny Lancium's motion to strike.

Respectfully,

/s/ *Andrew C. Mayo*

Andrew C. Mayo (#5207)

ACM/nml
Attachments
Cc:      All Counsel of Record (vial electronic mail; w/attachments)

# EXHIBIT A

## MATISIN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BEARBOX LLC and AUSTIN STORMS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-534-MN |
| | ) | |
| LANCIUM LLC, MICHAEL T. MCNAMARA, | ) | |
| and RAYMOND E. CLINE, JR., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANTS' RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES DIRECTED TO ALL DEFENDANTS

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules of this Court, Defendants Lancium LLC, Michael T. McNamara, and Raymond E. Cline, Jr., (collectively, "Defendants"), by their undersigned attorneys, hereby respond to Plaintiffs BearBox, LLC and Austin Storms' (collectively, "Plaintiffs") First Set of Interrogatories served on June 9, 2021 as follows:

## PRELIMINARY STATEMENT

Defendants' responses to Plaintiffs' First Set of Interrogatories are made to the best of Defendants' present knowledge, information, and belief. Defendants' investigation of the facts are ongoing, and Defendants reserve the right to supplement or amend these responses pursuant to the Federal Rules of Civil Procedure, the local rules, the Court's Default Standard for Discovery, Including Discovery of Electronically Stored Information ("ESI"), the Court's Scheduling Order, D.I. 35, and any other applicable orders. Defendants' responses are not admissions, concessions, or waivers as to the existence, relevance, materiality, foundation, or admissibility of any documents or information.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**

For each Lancium product or service, including but not limited to Your Smart Response™ products or services, that You contend practices any claim of the '433 Patent, please provide, on an element-by-element basis, a detailed description of Your contentions, including (1) all facts that support or challenge those contentions, (2) all information, conclusions, theories, and arguments that relate to or form the basis for your contentions, (3) an identification of all documents (and, where pertinent, the section, article, or subparagraph thereof) that relate to or form any part of the basis of your contentions, and (4) an identification of all communications that relate to or form any part of the basis of your contentions.

**ANSWER:**

Defendants object to this Interrogatory as irrelevant, overly broad, unduly burdensome, and not proportional to the needs to the case considering the importance of discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit. In particular, this Interrogatory seeks information regarding Lancium products or services that Defendants "contend practices any claim of the '433 Patent," but infringement is not an issue in this case and Plaintiffs have not asserted any claims regarding any "Lancium product or service." Furthermore, Plaintiffs bear the burden of proof on their claims and per the Court's Scheduling Order, D.I. 35, "contention interrogatories, if filed, shall first be addressed by the party with the burden of proof" and "the more detail a party provides, the more detail a party shall receive," but Plaintiffs have provided only a cursory explanation of their inventorship claims regarding the '433 Patent. In addition, as set forth in Defendants' Opening Brief in Support of Their Motion for Judgment on the Pleadings, D.I. 33, Plaintiffs' conversion, unjust enrichment, and negligent misrepresentation claims fail as a matter of law and should be dismissed. Defendants further object to this Interrogatory as seeking "all" facts, information, conclusions, theories, arguments, documents, and communications for the requested topic because this is not proportional to the needs of the case and it is unduly burdensome, if even possible, to locate, identify, and describe

2

every such fact, piece of information, conclusion, theory, argument, document, and communication within the scope of this Interrogatory.  Defendants also object to this Interrogatory as vague and ambiguous by requesting a detailed description of facts that "challenge" Defendants' "contentions" as well as a detailed description of "conclusions, theories, and arguments that relate to or form the basis for your contentions." Defendants object to the use of the terms "You" and "Your" as defined by Plaintiffs as overbroad because they include "all of Lancium LLC's predecessors, predecessors-in-interest, successors, successors-in-interest, subsidiaries, parents, and affiliates, all entities acting in joint venture, licensing or partnership with one or more of the aforementioned, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, and others acting on behalf of one or more of the aforementioned"; Defendants provide discovery responses on behalf of Lancium LLC and the named Defendants only. Defendants still further object to this Interrogatory to the extent it seeks information, documents, and communications protected by attorney-client privilege, work product privilege, or other privilege or immunity.

Subject to and without waiver of the foregoing objections Defendants offer to meet and confer with Plaintiffs regarding this Interrogatory.

**INTERROGATORY NO. 2:**

For each element of each claim of the '433 Patent that you contend is described, disclosed, or taught by the '632 Application, please provide, on an element-by-element basis, a detailed description of Your contentions, including (1) all facts that support or challenge those contentions, (2) all information, conclusions, theories, and arguments that relate to or form the basis for your contentions, (3) an identification of all documents (and, where pertinent, the section, article, or subparagraph thereof) that relate to or form any part of the basis of your contentions, and (4) an identification of all communications that relate to or form any part of the basis of your contentions.

**ANSWER:**

Defendants object to this Interrogatory as irrelevant, overly broad, unduly burdensome, and not proportional to the needs to the case considering the importance of discovery in resolving the

issues and whether the burden or expense of the proposed discovery outweighs its likely benefit. In particular, this Interrogatory seeks information regarding the '632 application, but Plaintiffs have not asserted any claims regarding that application. Furthermore, Plaintiffs bear the burden of proof on their inventorship claims and per the Court's Scheduling Order, D.I. 35, "contention interrogatories, if filed, shall first be addressed by the party with the burden of proof" and "the more detail a party provides, the more detail a party shall receive," but Plaintiffs have provided only a cursory explanation of their claims. Defendants further object to this Interrogatory as seeking "all" facts, information, conclusions, theories, arguments, documents, and communications for the requested topic because this is not proportional to the needs of the case and it is unduly burdensome, if even possible, to locate, identify, and describe every such fact, piece of information, conclusion, theory, argument, document, and communication within the scope of this Interrogatory. Defendants also object to this Interrogatory as vague and ambiguous by requesting a detailed description of facts that "challenge" Defendants' "contentions" as well as a detailed description of "conclusions, theories, and arguments that relate to or form the basis for your contentions." Defendants object to the extent this Interrogatory assumes that Defendants indeed contend that any claim of the '433 Patent "is described, disclosed, or taught by the '632 Application." Defendants object to the use of the terms "You" and "Your" as defined by Plaintiffs as overbroad because they include "all of Lancium LLC's predecessors, predecessors-in-interest, successors, successors-in-interest, subsidiaries, parents, and affiliates, all entities acting in joint venture, licensing or partnership with one or more of the aforementioned, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, and others acting on behalf of one or more of the aforementioned"; Defendants provide discovery responses on behalf of Lancium LLC and the named Defendants only. Defendants still further object to this

Interrogatory to the extent it seeks information, documents, and communications protected by attorney-client privilege, work product privilege, or other privilege or immunity.

Subject to and without waiver of the foregoing objections Defendants offer to meet and confer with Plaintiffs regarding this Interrogatory.

**INTERROGATORY NO. 3:**

Describe in detail the development of each invention claimed in the '433 Patent including the conception, reduction to practice, and any other development activities for each claimed invention. A complete response to this Interrogatory should include an identification, on a claim-by-claim and element-by-element basis, of which of the purported inventors named on the '433 Patent conceived of the claimed inventions, reduced the claimed inventions to practice, or otherwise contributed to the development of the claimed inventions, including the dates of each of these activities and an identification of all documents or other evidence that support Your contentions.

**ANSWER:**

Defendants object to this Interrogatory as premature, overly broad, unduly burdensome, and not proportional to the needs to the case considering the importance of discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit. In particular, Plaintiffs bear the burden of proof on their inventorship claims and per the Court's Scheduling Order, D.I. 35, "contention interrogatories, if filed, shall first be addressed by the party with the burden of proof" and "the more detail a party provides, the more detail a party shall receive," but Plaintiffs have provided only a cursory explanation of their claims. Defendants further object to this Interrogatory as seeking an identification of "all documents or other evidence that support Your contentions" because this is not proportional to the needs of the case and it is unduly burdensome, if even possible, to locate, identify, and describe every such document or piece of "evidence" within the scope of this Interrogatory. Defendants also object to this Interrogatory as irrelevant, overly broad, and unduly burdensome by requesting a detailed description of "which of the purported inventors named on the '433 Patent" conceived, reduced to

practice, or otherwise contributed to the claimed inventions because Plaintiffs have not pleaded claims challenging the comparative contributions of the named inventors; Plaintiffs' claims are based only upon the non-inclusion of Austin Storms as a purported inventor of the '433 Patent. Defendants also object to this Interrogatory as irrelevant, vague, ambiguous, overly broad, and unduly burdensome by requesting a detailed description of "reduc[ing] the claimed inventions to practice" and any "contribut[ion] to the development of the claimed inventions" of the '433 Patent because inventorship is based upon contribution to conception of a claimed invention. Defendants object to the use of the term "Your" as defined by Plaintiffs, as overbroad because it includes "all of Lancium LLC's predecessors, predecessors-in-interest, successors, successors-in-interest, subsidiaries, parents, and affiliates, all entities acting in joint venture, licensing or partnership with one or more of the aforementioned, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, and others acting on behalf of one or more of the aforementioned"; Defendants provide discovery responses on behalf of Lancium LLC and the named Defendants only. Defendants still further object to this Interrogatory to the extent it seeks information, documents, and communications protected by attorney-client privilege, work product privilege, or other privilege or immunity.

Subject to and without waiver of the foregoing objections, and based upon Defendants' investigation to date, Defendants respond as follows: Michael T. McNamara ("McNamara"), Lancium LLC's Chief Executive Officer, co-founded the company in 2017 as a technology company working to create software and intellectual property solutions that enable more renewable energy on the nation's power grid. Raymond E. Cline, Jr. ("Cline") joined Lancium LLC ("Lancium") in late 2017 as its Chief Computing Officer and currently serves as Lancium's Chief Technology Officer. Since 2017, McNamara and Cline have worked together to continue

innovating in the field of data center power ramping software, including power ramping for cryptocurrency mining operations, and their work has led to numerous issued patents, including the following:

- U.S. Patent No. 10,873,211 (filed Sept. 13. 2018) "Systems and Methods for Dynamic Power Routing with Behind-the-Meter Energy Storage";
- U.S. Patent No. 10,444,818 (filed Oct. 30, 2018) "Methods and Systems for Distributed Power Control of Flexible Datacenters";
- U.S. Patent No. 10,367,353 (filed Oct. 30, 2018) "Managing Queue Distribution between Critical Datacenter and Flexible Datacenter";
- U.S. Patent No. 10,452,127 (filed Jan. 11, 2019) "Redundant Flexible Datacenter Workload Scheduling";
- U.S. Patent No. 10,618,427 (filed Oct. 8, 2019) "Behind-the-Meter Branch Loads for Electrical Vehicle Charging;
- U.S. Patent No. 10,608,433 (filed Dec. 4, 2019) "Methods and Systems for Adjusting Power Consumption Based on a Fixed-Duration Power Option Agreement";
- U.S. Patent No. 10,857,899 (filed Mar. 4, 2020) "Behind-the-Meter Branch Loads for Electrical Vehicle Charging"; and
- U.S. Patent No. 11,016,456 (filed Feb. 13, 2018) "Method and System for Dynamic Power Delivery to a Flexible Datacenter Using Unutilized Energy Sources."

As demonstrated by their documented history of innovation, McNamara and Cline's work progressively led to the conception of the inventions claimed in the '433 Patent, which occurred prior to the filing on October 28, 2019, of provisional application no. 62/927,119, to which the '433 Patent claims priority. McNamara and Cline's conception of the inventions claimed in the '433 Patent also occurred independently of and without any contribution by Austin Storms.

Discovery in this litigation is also in its early stages, and Defendants' investigation regarding the subject matter of this Interrogatory is ongoing. Accordingly, Defendants reserve the right to amend or supplement this response as additional information becomes available, including by identifying documents pursuant to Federal Rule of Civil Procedure 33(d).

## <u>INTERROGATORY NO. 4:</u>

State the legal, factual, and evidentiary basis for Your contention that "Austin Storms properly was not named as an inventor on the '433 Patent." (D.I. 23 at 39 ¶ 93).

**ANSWER:**

Defendants object to this Interrogatory as premature, overly broad, unduly burdensome, and not proportional to the needs to the case considering the importance of discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit. In particular, Plaintiffs bear the burden of proof on their inventorship claims and per the Court's Scheduling Order, D.I. 35, "contention interrogatories, if filed, shall first be addressed by the party with the burden of proof" and "the more detail a party provides, the more detail a party shall receive," but Plaintiffs have provided only a cursory explanation of their claims. Defendants object to the use of the term "Your" as defined by Plaintiffs, as overbroad because it includes "all of Lancium LLC's predecessors, predecessors-in-interest, successors, successors-in-interest, subsidiaries, parents, and affiliates, all entities acting in joint venture, licensing or partnership with one or more of the aforementioned, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, and others acting on behalf of one or more of the aforementioned"; Defendants provide discovery responses on behalf of Lancium LLC and the named Defendants only. Defendants still further object to this Interrogatory to the extent it seeks information, documents, and communications protected by attorney-client privilege, work product privilege, or other privilege or immunity.

Subject to and without waiver of the foregoing objections, and based upon Defendants' investigation to date, Defendants respond as follows: It is well-established that "plaintiffs seeking to add themselves as inventors 'must meet the heavy burden of proving [their] case by clear and convincing evidence.'" *Scott v. Zimmer, Inc.*, 889 F. Supp. 2d 657, 662 (D. Del. 2012), *quoting Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358 (Fed. Cir. 2004). Moreover, "plaintiffs must show that they each individually made a 'contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full

invention, and [did] more than merely explain to the real inventors well-known concepts and/or the current state of the art.'" *Id.*, quoting *Acromed Corp. v. Sofamor Danek Grp., Inc.,* 253 F.3d 1371, 1379 (Fed. Cir. 2001). "Furthermore, plaintiffs' testimony regarding their own inventorship claim 'is regarded with skepticism' and 'cannot, standing alone, rise to the level of clear and convincing proof." *Id.* at 663, *quoting Price v. Symsek,* 988 F.2d 1187, 1194 (Fed. Cir. 1993). "As such, plaintiffs 'must supply evidence to corroborate [their] testimony.'" *Id.*, quoting *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1461 (Fed. Cir. 1998).

Plaintiffs have not met and cannot meet this high burden. Plaintiffs' allegations regarding the "BearBox Technology" that Defendants purportedly used and incorporated into the '433 Patent are vague, amorphous, and have changed as this litigation has progressed. Indeed, to the extent Plaintiffs' claims are based upon the alleged inventorship or misappropriation of the "BearBox Technology" as identified in Plaintiffs' original Complaint, D.I. 1, McNamara and Cline had already conceived and reduced to practice this so-called "BearBox Technology," as demonstrated by patent application WO 2019/139632 A1 (the "'632 application"), which was filed on February 13, 2018, approximately 15 months before Plaintiffs allege that McNamara even met Storms. Defendants further incorporate by reference, as if fully set forth herein, the explanation in their Answer and Counterclaims to the original Complaint, of how the so-called "BearBox Technology" is disclosed in the '632 application. *See, e.g.*, D.I. 13 ¶¶ 59-82 and the documents cited therein; *see also* D.I. 23 (Answer and Counterclaims to Amended Complaint) ¶¶ 59-82 and the documents cited therein; D.I. 2 (Amended Answer and Counterclaims to Amended Complaint) ¶¶ 59-82 and the documents cited therein.

Faced with this refutation of their claims, Plaintiffs have now changed their allegations regarding the so-called "BearBox Technology" in their Amended Complaint, D.I. 19. But to the

extent Plaintiffs now contend that the so-called "BearBox Technology" includes something other than what was alleged in the original Complaint, D.I. 1, Plaintiffs have not done so with any specificity and therefore cannot meet the high burden of showing that Storms contributed to any of the claimed inventions in the '433 Patent, which he did not. Moreover, Plaintiffs have not provided corroboration that any such information about the "BearBox Technology" was provided to McNamara, Cline, or Lancium, and thus also cannot demonstrate that Storms contributed to any of the claimed inventions of the '433 Patent, which again he did not.

In addition, Defendants incorporate their response to Interrogatory No. 3 as if fully set forth herein. Simply put, Lancium, McNamara, and Cline have been innovating in this field long before encountering Storms, and McNamara and Cline conceived of the inventions claimed in the '433 Patent independently of and without any contribution by Storms. Plaintiffs have provided no legitimate basis or evidence to support or corroborate their claim that Storms should properly be named as an inventor on the '433 Patent, and he is not an inventor of this patent.

Discovery in this litigation is also in its early stages, and Defendants' investigation regarding the subject matter of this Interrogatory is ongoing. Accordingly, Defendants reserve the right to amend or supplement this response as additional information becomes available, including to the extent Plaintiffs provide additional information regarding their claims.

**INTERROGATORY NO. 5:**

State the legal, factual, and evidentiary basis for Your affirmative defenses in Your Answer to Amended Complaint and Counterclaims (D.I. 23) including Your purported affirmative defenses of "no merger of intangible rights," "consent or approval," "equitable defenses," "unavailability of injunctive relief," and "failure to mitigate damages."

**ANSWER:**

Defendants object to this Interrogatory as compound and consisting of five (5) discrete subparts that constitute five separate Interrogatories. Accordingly, Defendants respond to each of

the five Interrogatories regarding each of the five affirmative defenses separately as Interrogatory Nos. 5 through 9. Defendants further object to this Interrogatory as premature, overly broad, unduly burdensome, and not proportional to the needs to the case considering the importance of discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit. In particular, Plaintiffs bear the burden of proof on their claims and per the Court's Scheduling Order, D.I. 35, "contention interrogatories, if filed, shall first be addressed by the party with the burden of proof" and "the more detail a party provides, the more detail a party shall receive," but Plaintiffs have provided only a cursory explanation of their claims. Defendants object to the use of the term "Your" as defined by Plaintiffs as overbroad because it includes "all of Lancium LLC's predecessors, predecessors-in-interest, successors, successors-in-interest, subsidiaries, parents, and affiliates, all entities acting in joint venture, licensing or partnership with one or more of the aforementioned, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, and others acting on behalf of one or more of the aforementioned"; Defendants provide discovery responses on behalf of Lancium LLC and the named Defendants only. Defendants still further object to this Interrogatory to the extent it seeks information, documents, and communications protected by attorney-client privilege, work product privilege, or other privilege or immunity.

Subject to and without waiver of the foregoing objections, and based upon Defendants' investigation to date, Defendants respond as follows: Plaintiffs' conversion claim is based upon the alleged conversion of intellectual property. Count III "Conversion By Lancium, McNamara, and Cline" in the Amended Complaint specifically alleges that "Defendants assumed dominion and control over the BearBox Technology by claiming it as their own in the '433 Patent. Through their wrongful conduct in obtaining the '433 Patent and claiming the BearBox Technology as their

11

own, the Defendants have wrongfully obtained the purported ability to exclude Plaintiffs and others from using the BearBox Technology. This constitutes unauthorized and unlawful conversion by Defendants." D.I. 19 ¶ 61.

As set forth in Section V.C.1 (pp. 14-16) of Defendants' Opening Brief in Support of Their Motion for Judgment on the Pleadings, D.I. 33, which Defendants incorporate by reference, as if fully stated herein, this claim fails as a matter of law because intangible, intellectual property cannot be converted unless it is merged into a tangible document, which is not the case here. In particular, under Louisiana law, "[a] conversion is an act in derogation of the Plaintiffs' possessory rights and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time" and "is committed when any of the following occurs: (1) possession is acquired in an unauthorized manner; (2) the chattel is removed from one place to another with the intent to exercise control over it; (3) possession of the chattel is transferred without authority; (4) possession is withheld from the owner or possessor; (5) the chattel is altered or destroyed; (6) the chattel is used improperly; or (7) ownership is asserted over the chattel." *Tracer Prot. Servs., Inc. v. Burton*, No. 2015-0215, 2015 WL 5515793, at \*6 (La. Ct. App. 2015) (citing *Dual Drilling Co. v. Mills Equip. Invs., Inc.*, 721 So. 2d 853, 857 (La. 1998)). Thus, a claim for conversion applies only to "goods" or "chattel." *See id.*; *see also Dorsey v. Money Mack Music, Inc.*, 304 F. Supp. 2d 858, 866 (E.D. La. 2003) ("[T]he torts of conversion and trespass relate to interference with tangible rather than intangible property."); *Brand Coupon Network, LLC v. Catalina Mktg. Corp.*, No. 11-00556, 2014 WL 6674034, at \*6 (M.D. La. Nov. 24, 2014) ("[C]onversion requires unlawful interference with *chattel*.") (emphasis in original). In Louisiana, chattel "is deemed 'corporeal movable' property." *BASF Agrochemical Prods. v. Unkel*, No. 05-1478, 2006 WL 3533133, at \*7 (W.D. La. Dec. 7, 2006).

12

Although "intangible property can be converted if the right is embodied in or merged into a document," Louisiana courts "have limited conversion to those intangible property rights which are traditionally merged into or identified with some document," such as "stock certificates and bonds, which represent valuable intangible property rights." *Id.* But unlike stock certificates and bonds, possession of a physical patent does not represent ownership of rights in the patent. Moreover, in *BASF* the court held that a conversion claim based on "depriving Plaintiffs of their rights" in patented technology "is outside the scope of Louisiana conversion law." *Id.* *6-7. Other courts have also found that intangible, intellectual property rights cannot be converted.[1] *See Uptown Grill, LLC v. Shwartz*, No. 13-6560, 2017 WL 2312882, at *10 (E.D. La. May 26, 2017)) (holding that "conversion is not applicable to incorporeal movables such as the intellectual property rights at issue in this matter"), *aff'd in part, rev'd in part on other grounds*, *Uptown Grill, LLC v. Camellia Grill Holdings, Inc.*, 920 F.3d 243 (5th Cir. 2019); *Pure Air Daigle, LLC v. Stagg*, No. 6:16-1322, 2017 WL 11534244, at *14 (W.D. La. Jan. 11, 2017) ("The tort of conversion is limited to major interferences with a person's rights in his movable property."). Thus, because the allegedly converted intellectual property is not merged into a physical document, it cannot be converted.

Discovery in this litigation is also in its early stages, and Defendants' investigation regarding the subject matter of this Interrogatory is ongoing. Accordingly, Defendants reserve the

---

[1] Although Louisiana law applies, Plaintiffs previously asserted a now-withdrawn claim for trade secret misappropriation under Texas law. *See* D.I. 1; D.I. 19-3 pp. 14-16. Thus, to the extent Plaintiffs contend that Texas law should apply, there is no conflict, as "Texas law has never recognized a cause of action for conversion of intangible property except in cases where an underlying intangible right has been merged into a document and that document has been converted**.**" *Express One Int'l, Inc. v. Steinbeck*, 53 S.W.3d 895, 901 (Tex. App.–Dallas 2001) (affirming summary judgment dismissing conversion claim.); *see also Carson v. Dynegy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003) (a conversion claim that "involves only intellectual property rights … is outside the scope of Texas conversion law, which concerns only physical property."); *Quantlab Techs. Ltd. (BVI) v. Godlevsky*, 719 F. Supp. 2d 766, 779 (S.D. Tex. 2010) ("Because intellectual property is not subject to conversion under Texas law, [Plaintiff's] conversion claim must therefore fail."); *WesternGeco v. Ion Geophysical Corp.***,** No. 09–cv–1827, 2009 WL 3497123, at *3 (S.D. Tex. 2009) (dismissing a conversion claim for confidential information and technology).

right to amend or supplement this response as additional information becomes available, including to the extent Plaintiffs provide additional information regarding their claims.

**INTERROGATORY NO. 6:**

State the legal, factual, and evidentiary basis for Your affirmative defenses in Your Answer to Amended Complaint and Counterclaims (D.I. 23) including Your purported affirmative defenses of "no merger of intangible rights," "consent or approval," "equitable defenses," "unavailability of injunctive relief," and "failure to mitigate damages."

**ANSWER:**

Defendants object to this Interrogatory as compound and consisting of five (5) discrete subparts that constitute five separate Interrogatories. Accordingly, Defendants respond to each of the five Interrogatories regarding each of the five affirmative defenses separately as Interrogatory Nos. 5 through 9. Defendants object to this Interrogatory as premature, overly broad, unduly burdensome, and not proportional to the needs to the case considering the importance of discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit. In particular, Plaintiffs bear the burden of proof on their claims and per the Court's Scheduling Order, D.I. 35, "contention interrogatories, if filed, shall first be addressed by the party with the burden of proof" and "the more detail a party provides, the more detail a party shall receive," but Plaintiffs have provided only a cursory explanation of their claims. Defendants object to the use of the term "Your" as defined by Plaintiffs as overbroad because it includes "all of Lancium LLC's predecessors, predecessors-in-interest, successors, successors-in-interest, subsidiaries, parents, and affiliates, all entities acting in joint venture, licensing or partnership with one or more of the aforementioned, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, and others acting on behalf of one or more of the aforementioned"; Defendants provide discovery responses on behalf of Lancium LLC and the named Defendants only. Defendants still further object to this Interrogatory to the extent it seeks

information, documents, and communications protected by attorney-client privilege, work product privilege, or other privilege or immunity.

Subject to and without waiver of the foregoing objections, and based upon Defendants' investigation to date, Defendants respond as follows: Under Louisiana law, "[a] conversion is an act in derogation of the Plaintiffs' possessory rights and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time" and "is committed when any of the following occurs: (1) possession is acquired in an unauthorized manner; (2) the chattel is removed from one place to another with the intent to exercise control over it; (3) possession of the chattel is transferred without authority; (4) possession is withheld from the owner or possessor; (5) the chattel is altered or destroyed; (6) the chattel is used improperly; or (7) ownership is asserted over the chattel." *Tracer Prot. Servs., Inc. v. Burton*, No. 2015-0215, 2015 WL 5515793, at *6 (La. Ct. App. 2015) (citing *Dual Drilling Co. v. Mills Equip. Invs., Inc.*, 721 So. 2d 853, 857 (La. 1998)). Thus, "when the owner gives another permission to take possession of his property he must terminate that permission by requesting return of the property before continued possession by the non-owner will constitute conversion." *Watson v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 14-1312, 2015 WL 5714635, at *8 (E.D. La. Sept. 29, 2015), *quoting Sec. Home Mortg. Corp. v. Bogues,* 519 So.2d 307, 312 (La. Ct. App. 1988); *see also Miller v. Harvey*, 408 So.2d 946, 952 (La. Ct. App. 1981) ("We agree that when one gives another permission to take possession of his property he must show that the permission has ended by requesting its return before a conversion can be considered committed."). In addition, "one who might otherwise be entitled to maintain an action for the conversion of his goods may afford the alleged wrongdoer a complete defense to the action by waiving the right to treat the act as wrongful, or by ratification thereof. If the owner expressly or impliedly assents to

or ratifies the taking, use or disposition of his property, he cannot recover for conversion of the property. In other words, the right to sue in conversion may be defeated by an act or conduct which amounts to estoppel." *Watson*, 2015 WL 5714635, at *8, *quoting Aymond v. State of La., Dep't of Revenue and Taxation,* 672 So.2d 273, 276 (La. Ct. App. 1996)

As set forth in Defendants' Sixth Affirmative Defense, "[a]ny alleged exchange or transfer of property between the parties was performed with Plaintiffs' full consent and/or approval and, thus precludes Plaintiffs' claim for conversion." D.I. 23; D.I. 28; *see also* D.I. 13 at Eighth Affirmative Defense. In other words, Plaintiffs cannot establish that Defendants committed any act of conversion because Storms and/or BearBox provided any information conveyed to Defendants freely and assented to its use by Defendants, and thus Defendants could not have committed any act of conversion.

Discovery in this litigation is also in its early stages, and Defendants' investigation regarding the subject matter of this Interrogatory is ongoing. Accordingly, Defendants reserve the right to amend or supplement this response as additional information becomes available, including to the extent Plaintiffs provide additional information regarding their claims.


**INTERROGATORY NO. 7:**

State the legal, factual, and evidentiary basis for Your affirmative defenses in Your Answer to Amended Complaint and Counterclaims (D.I. 23) including Your purported affirmative defenses of "no merger of intangible rights," "consent or approval," "equitable defenses," "unavailability of injunctive relief," and "failure to mitigate damages."

**ANSWER:**

Defendants object to this Interrogatory as compound and consisting of five (5) discrete subparts that constitute five separate Interrogatories. Accordingly, Defendants respond to each of the five Interrogatories regarding each of the five affirmative defenses separately as Interrogatory

Nos. 5 through 9. Defendants object to this Interrogatory as premature, overly broad, unduly burdensome, and not proportional to the needs to the case considering the importance of discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit. In particular, Plaintiffs bear the burden of proof on their claims and per the Court's Scheduling Order, D.I. 35, "contention interrogatories, if filed, shall first be addressed by the party with the burden of proof" and "the more detail a party provides, the more detail a party shall receive," but Plaintiffs have provided only a cursory explanation of their claims. Defendants object to the use of the term "Your" as defined by Plaintiffs as overbroad because it includes "all of Lancium LLC's predecessors, predecessors-in-interest, successors, successors-in-interest, subsidiaries, parents, and affiliates, all entities acting in joint venture, licensing or partnership with one or more of the aforementioned, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, and others acting on behalf of one or more of the aforementioned"; Defendants provide discovery responses on behalf of Lancium LLC and the named Defendants only. Defendants still further object to this Interrogatory to the extent it seeks information, documents, and communications protected by attorney-client privilege, work product privilege, or other privilege or immunity.

Subject to and without waiver of the foregoing objections, and based upon Defendants' investigation to date, Defendants respond as follows: As set forth in Defendants' Seventh Affirmative Defense, "Plaintiffs' Counts I through V are barred, in whole or in part, by laches, equitable estoppel, estoppel, implied license, waiver, ratification, acquiescence, unclean hands, and/or other related equitable doctrines." D.I. 28; see also D.I. 23; D.I. 13 (Ninth Affirmative Defense). For example, under Louisiana law:

> Equitable estoppel, or 'estoppel in pais,' can be defined as the effect of the voluntary conduct of a party whereby he is barred from asserting rights against

another party justifiably relying on such conduct and who has changed his position to his detriment as a result of such reliance. Thus, there are three elements of estoppel: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance.

*Wilkinson v. Wilkinson*, 323 So.2d 120, 126 (La. 1975). Here, Plaintiffs claims are barred by equitable estoppel because any information regarding the so-called "BearBox Technology" that Storms and/or BearBox provided to Defendants was provided voluntarily and they assented to its use by Defendants. Thus, to the extent that any of the "BearBox Technology" is found to have been used by Defendants and/or incorporated into the '433 Patent, Defendants justifiably relied on Plaintiffs consent and changed their position to their detriment based on such reliance. Accordingly, Plaintiffs' claims are barred by equitable estoppel.

In addition, "[l]aches is an equitable defense that may bar an inventorship claim." *Serdarevic v. Advanced Medical Optics, Inc.*, 532 F.3d 1352 (Fed. Cir. 2008). "The laches defense has two underlying elements: first, the [plaintiff]'s delay in bringing suit must be 'unreasonable and inexcusable,' and second, the [defendant] must have suffered 'material prejudice attributable to the delay.'" *See Intirtool, Ltd. v. Texar Corp.*, 369 F.3d 1289, 1297 (Fed. Cir. 2004). In response to Defendants' Interrogatory No. 6, Plaintiffs have admitted that "Mr. Austin Storms first learned of the '433 Patent on August 17, 2020 by reading a press release dated August 14, 2020 issued by Lancium regarding its lawsuit against Layer1 pending in the District Court for the Western District of Texas." Nonetheless, Plaintiffs unreasonably waited to bring this lawsuit until after the settlement of the "Layer1 Lawsuit" was publicly announced knowing that Defendants would continue expending resources on that litigation to their detriment, since such resources—and any other resources Defendants expended regarding the '433 Patent—would be wasted if Plaintiffs prevailed on their claims in this case.

18

Discovery in this litigation is also in its early stages, and Defendants' investigation regarding the subject matter of this Interrogatory is ongoing. Accordingly, Defendants reserve the right to amend or supplement this response as additional information becomes available, including to the extent Plaintiffs provide additional information regarding their claims.

**INTERROGATORY NO. 8:**

State the legal, factual, and evidentiary basis for Your affirmative defenses in Your Answer to Amended Complaint and Counterclaims (D.I. 23) including Your purported affirmative defenses of "no merger of intangible rights," "consent or approval," "equitable defenses," "unavailability of injunctive relief," and "failure to mitigate damages."

**ANSWER:**

Defendants object to this Interrogatory as compound and consisting of five (5) discrete subparts that constitute five separate Interrogatories. Accordingly, Defendants respond to each of the five Interrogatories regarding each of the five affirmative defenses separately as Interrogatory Nos. 5 through 9. Defendants object to this Interrogatory as premature, overly broad, unduly burdensome, and not proportional to the needs to the case considering the importance of discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit. In particular, Plaintiffs bear the burden of proof on their claims and per the Court's Scheduling Order, D.I. 35, "contention interrogatories, if filed, shall first be addressed by the party with the burden of proof" and "the more detail a party provides, the more detail a party shall receive," but Plaintiffs have provided only a cursory explanation of their claims. Defendants object to the use of the term "Your" as defined by Plaintiffs as overbroad because it includes "all of Lancium LLC's predecessors, predecessors-in-interest, successors, successors-in-interest, subsidiaries, parents, and affiliates, all entities acting in joint venture, licensing or partnership with one or more of the aforementioned, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, and others acting on behalf of one or more of

the aforementioned"; Defendants provide discovery responses on behalf of Lancium LLC and the named Defendants only. Defendants still further object to this Interrogatory to the extent it seeks information, documents, and communications protected by attorney-client privilege, work product privilege, or other privilege or immunity.

Subject to and without waiver of the foregoing objections, and based upon Defendants' investigation to date, Defendants respond as follows: Plaintiffs' "Prayer for Relief" in the Amended Complaint requests "a permanent injunction enjoining Defendants Lancium, McNamara, and Cline from asserting the McNamara or Cline are inventors of the '433 Patent in violation of the United States federal patent laws." D.I. 19. As explained by the Supreme Court:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Moreover, as set forth in Defendants' Eighth Affirmative Defense, "Plaintiffs are not entitled to injunctive relief because any injury to them is not immediate and irreparable, they would have an adequate remedy at law, the balance of hardships favors no injunction, and the public interest is best served by no injunction." D.I. 28; *see also* D.I. 23; D.I. 13 (Tenth Affirmative Defense). Indeed, Plaintiffs also seek remedies such as "[a]n order that the Director of the United States Patent and Trademark Office correct the inventorship of the '433 Patent to name Austin Storms as the sole inventor, or, in the alternative, as a joint inventor to one or both of the individuals currently listed as inventors on the '433 Patent" demonstrating that they are not entitled to an injunction under the *eBay* factors because they have adequate remedies available at law. Moreover, Plaintiffs' damages claims, to the extent they are

permitted and that Plaintiffs prevail on them, demonstrate that any harmed allegedly suffered is not irreparable.

Discovery in this litigation is also in its early stages, and Defendants' investigation regarding the subject matter of this Interrogatory is ongoing. Accordingly, Defendants reserve the right to amend or supplement this response as additional information becomes available, including to the extent Plaintiffs provide additional information regarding their claims.

**INTERROGATORY NO. 9:**

State the legal, factual, and evidentiary basis for Your affirmative defenses in Your Answer to Amended Complaint and Counterclaims (D.I. 23) including Your purported affirmative defenses of "no merger of intangible rights," "consent or approval," "equitable defenses," "unavailability of injunctive relief," and "failure to mitigate damages."

**ANSWER:**

Defendants object to this Interrogatory as compound and consisting of five (5) discrete subparts that constitute five separate Interrogatories. Accordingly, Defendants respond to each of the five Interrogatories regarding each of the five affirmative defenses separately as Interrogatory Nos. 5 through 9. Defendants object to this Interrogatory as premature, overly broad, unduly burdensome, and not proportional to the needs to the case considering the importance of discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit. In particular, Plaintiffs bear the burden of proof on their claims and per the Court's Scheduling Order, D.I. 35, "contention interrogatories, if filed, shall first be addressed by the party with the burden of proof" and "the more detail a party provides, the more detail a party shall receive," but Plaintiffs have provided only a cursory explanation of their claims. Defendants object to the use of the term "Your" as defined by Plaintiffs as overbroad because it includes "all of Lancium LLC's predecessors, predecessors-in-interest, successors, successors-in-interest,

subsidiaries, parents, and affiliates, all entities acting in joint venture, licensing or partnership with one or more of the aforementioned, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, and others acting on behalf of one or more of the aforementioned"; Defendants provide discovery responses on behalf of Lancium LLC and the named Defendants only. Defendants still further object to this Interrogatory to the extent it seeks information, documents, and communications protected by attorney-client privilege, work product privilege, or other privilege or immunity.

Subject to and without waiver of the foregoing objections, and based upon Defendants' investigation to date, Defendants respond as follows: "Louisiana jurisprudence imposes a duty on an injured tort victim to mitigate damages." *Jensen v. Matute*, 289 So.3d 1136 (La. Ct. App. 2020); *see also Aisole v. Dean*, 574 So.2d 1248, 1253 (La. 1991) ("Our jurisprudence has also recognized that an injured plaintiff has a duty to take reasonable steps to mitigate damages."). Here, Plaintiffs seek damages through their tort claims, but as set forth in Defendants' Ninth Affirmative Defense "[t]o the extent any damages to Plaintiffs exist, Plaintiffs have failed to mitigate such damages, as required by law." D.I. 28; *see also* D.I. 23; D.I. 13 (Eleventh Affirmative Defense). For example, in response to Defendants' Interrogatory No. 6, Plaintiffs have admitted that "Mr. Austin Storms first learned of the '433 Patent on August 17, 2020 by reading a press release dated August 14, 2020 issued by Lancium regarding its lawsuit against Layer1 pending in the District Court for the Western District of Texas." Nonetheless, despite their duty to mitigate damages, Plaintiffs waited months to bring this lawsuit until after the settlement of the "Layer1 Lawsuit" was publicly announced knowing that this delay would result in an increased damages claim. Accordingly, Plaintiffs have failed to mitigate their damages and any damages award should be reduced in an amount equal to that resulting from their failure to mitigate.

Discovery in this litigation is also in its early stages, and Defendants' investigation regarding the subject matter of this Interrogatory is ongoing. Accordingly, Defendants reserve the right to amend or supplement this response as additional information becomes available, including to the extent Plaintiffs provide additional information regarding their claims.

Dated:  July 23, 2021                    BARNES & THORNBURG LLP

    */s/ Chad S.C. Stover*
Chad S.C. Stover (No. 4919)
1000 N. West Street, Suite 1500
Wilmington, Delaware 19801-1050
Telephone: (302) 300-3474
E-mail: chad.stover@btaw.com

Mark C. Nelson (admitted *pro hac vice*)
2121 N. Pearl Street, Suite 700
Dallas, TX  75201
Telephone:  (214) 258-4140
E-mail:  mark.nelson@btlaw.com

Adam M. Kaufmann (admitted *pro hac vice*)
One North Wacker Drive, Suite 4400
Chicago, IL 60606
Telephone: (312) 214-8319
Email: adam.kaufmann@btlaw.com

*Attorneys for Lancium LLC, Michael T.*
*McNamara, and Raymond E. Cline Jr.*

## **CERTIFICATE OF SERVICE**

Please take notice that the undersigned hereby certifies that on July 23, 2021 a copy of *Defendants' Responses to Plaintiffs' First Set of Interrogatories Directed to All Defendants* was served on all counsel of record by electronic mail:

Andrew C. Mayo
Ashby & Geddes
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19801
Email: amayo@ashbygeddes.com

Benjamin T. Horton
John R. Labbe
Raymond R. Ricordati III
Chelsea M. Murray
Marshall, Gerstein & Borun LLP
233 South Wacker Drive
6300 Willis Tower
Chicago, IL 60606-6357
Email: bhorton@marshallip.com
Email: jlabbe@marshallip.com
Email: rricordati@marshallip.com
Email: cmurray@marshallip.com

*/s/ Chad S.C. Stover*
Chad S.C. Stover (No. 4919)

24

# EXHIBIT B

# REDACTED IN ITS ENTIRETY

# EXHIBIT C

# REDACTED IN ITS ENTIRETY

# EXHIBIT D

# REDACTED IN ITS ENTIRETY

# EXHIBIT E

# REDACTED IN ITS ENTIRETY

# EXHIBIT F

# REDACTED IN ITS ENTIRETY

{00925327;v1 }

# EXHIBIT G

# REDACTED IN ITS ENTIRETY

# EXHIBIT H

# REDACTED IN ITS ENTIRETY

# EXHIBIT I

# REDACTED IN ITS ENTIRETY

{00925327;v1 }

# EXHIBIT J

# REDACTED IN ITS ENTIRETY