# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BEARBOX LLC and AUSTIN STORMS, | ) |
| Plaintiffs, | ) ) ) |
| v. | ) )  C.A. No. 21-534-MN-CJB ) |
| LANCIUM LLC, MICHAEL T. MCNAMARA, and RAYMOND E. CLINE, JR. | )  **REDACTED VERSION** ) ) ) |
| Defendants. | ) ) |

**LETTER TO THE HONORABLE CHRISTOPHER J. BURKE IN REPLY TO MOTION TO STRIKE THE TRADE SECRET MISAPPROPRIATION COUNTS IN THE <u>SECOND AMENDED COMPLAINT</u>**

Dated: March 14, 2022
**Redacted Version filed
on March 21, 2022**

BARNES & THORNBURG LLP

Chad S.C. Stover (No. 4919)
1000 N. West Street, Suite 1500
Wilmington, Delaware 19801-1050
Telephone: (302) 300-3474
E-mail: chad.stover@btaw.com

Mark C. Nelson (*pro hac vice* admitted)
2121 N. Pearl Street, Suite 700
Dallas, TX  75201
Tel:  (214) 258-4140
E-mail:  mark.nelson@btlaw.com

Adam M. Kaufmann (admitted *pro hac vice*)
Dana Amato Sarros (admitted *pro hac vice*)
One North Wacker Drive, Suite 4400
Chicago, IL 60606
Tel:  (312) 214-8319
E-mail:  adam.kaufmann@btlaw.com
E-mail:  dana.sarros@btlaw.com

*Attorneys for Defendants Lancium LLC, Michael T. McNamara, and Raymond E. Cline Jr.*

Dear Judge Burke:

  Lancium respectfully submits this reply letter in support of its Motion to Strike the Trade Secret Misappropriation Counts in the Second Amended Complaint ("Motion to Strike," D.I. 111). Lancium's Motion to Strike should be granted because BearBox's attempt to add the Trade Secret Counts goes beyond the leave it was granted—which was limited to amending the dismissed conversion and unjust enrichment claims—and because good cause does not exist for this untimely amendment. Although BearBox attempts to characterize its claims as "New Trade Secret Counts," these claims are not new and are within the scope of BearBox's original trade secret misappropriation claims that it voluntarily dropped over 9 months ago. Now faced with the dismissal of all of its claims for which BearBox can pursue monetary damages, the "New Trade Secret Claims" are merely a belated attempt to preserve a claim for damages. But BearBox's attempt to re-assert these claims, without leave, over 3.5 months after the deadline for amending pleadings and at the close of fact discovery, is untimely, not diligent, and should be rejected.

  BearBox's opposition to the Motion to Strike asserts that good cause exists for its "New Trade Secret Counts" because these claims are based on the alleged misappropriation of a different trade secret than its original, dropped trade secret misappropriation claims, and BearBox asserts it was diligent in bringing these new claims because it only learned of the alleged misappropriation of this "New Trade Secret" on December 20, 2021. *See* D.I. 113, at 2-3. This is incorrect in both respects. First, BearBox's "New Trade Secret Counts" overlap with its original trade secret claims. BearBox describes the purported "New Trade Secret" that is the subject of its "New Trade Secret Counts" as "methods for energy value arbitrage, including cryptocurrency mining systems and arbitraging related energy values." *See* D.I. 113 at 3 (quoting D.I. 103, ¶¶ 46, 68, 77). BearBox's original Complaint, however, alleged misappropriation of the "BearBox Technology," which BearBox itself defined in discovery to include "dynamic participation in energy markets, including, inter alia, day-ahead and real-time markets" and "capitaliz[ing] on less expensive, abundant electricity from non-dispatchable generation sources while allowing load-shedding and diverting power for economic dispatch during periods of energy scarcity." *See* D.I. 112, at Ex. B (response to Interrogatory No. 1). Moreover, BearBox does not dispute that "[e]nergy value arbitrage merely refers to the concept of buying and selling energy (electricity, for example) to take advantage of a difference in price." *Compare* D.I. 112, at 3 *with* D.I. 113. Thus, the original trade secret claims encompass the "New Trade Secret Counts" and BearBox's attempt to reassert these claims more than 9 months after dropping them is not diligent.

  Second, even if the "New Trade Secret Counts" were different than the original trade secret claims—which they are not—BearBox still could have brought these claims at the outset of this litigation. The Second Amended Complaint ("SAC") alleges that "Plaintiffs became aware of Defendants' wrongful use of BearBox's Technology on or about August 17, 2020, when they learned about the Layer1 Lawsuit." *See* D.I. 103, ¶¶ 52, 54. Critically, Plaintiffs knowledge of the Layer1 Lawsuit—nearly 8 months *before* filing the original complaint in this case—provided or should have provided adequate knowledge for their "New Trade Secret Counts." Indeed, Lancium's publicly available August 14, 2020, complaint in the Layer1 Lawsuit explains that Lancium's Controllable Load Resource ("CLR") Technology can "ramp down (*i.e.*, stop (or reduce) its electricity consumption) by, for example, ceasing (or reducing) Bitcoin mining operation" and "[w]hen this occurs, the load-only CLR (*i.e.*, flexible data center) receives the difference in the value of the real time electricity versus the data center's pre-existing power

purchase agreement price." *See* Ex. 1 (Layer1 complaint), ¶ 10; *see also id.*, ¶¶ 7-9, 11. Thus, the Layer1 complaint explains that Lancium's technology allows for energy value arbitrage. Based on BearBox's admitted knowledge of the Layer1 Lawsuit, it could have pleaded the "New Trade Secret Claims" at the outset (and in fact did so by accusing Lancium of taking the "BearBox Technology"). And "[w]here, as here, the party knows or is in possession of the information that forms the basis of the later motion to amend at the outset of the litigation, the party is presumptively not diligent." *Boston Scientific Corp. v. Edwards Lifesciences Corp.*, 2018 WL 5043754, at *3 (D. Del. Sept. 19, 2018). As such, good cause does not exist for the "New Trade Secret Claims."

Moreover, Lancium produced the Layer 1 complaint to Plaintiffs on October 8, 2021, again providing sufficient information for the "New Trade Secret Claims." *See* Ex. 2 (Kaufmann Decl.), at ¶ 3; Ex. 3 (10/8/21 document production email). In addition, Lancium's October 8, 2021, document production included other documents providing adequate notice for the "New Trade Secret Claims," by explaining that Lancium's Smart Response™ software allows for energy value arbitrage. *See, e.g.*, Ex. 4, at LANCIUM00014683 (explaining that [redacted] LANCIUM00014686 (explaining that [redacted]; *see also* Ex. 5, at LANCIUM00014632; Ex. 6, at LANCIUM00014479; Ex. 3, at ¶ 3. These documents were also easily reviewable by BearBox as the October 8, 2021 production was a targeted production of 239 responsive documents spanning 2,266 pages. Ex. 3, at ¶¶ 3-4. BearBox's delay in seeking to add the "New Trade Secret Claims" for over 4 months after this production, again was not diligent. *See Pfizer Inc. v. Sandoz Inc.*, No. 12-654, 2013 WL 5934635, at *3-4 (D. Del. Nov. 4, 2013) (finding lack of diligence where the defendant delayed in seeking leave to amend after having relevant information in its possession for four months); *see also Asahi Glass Co., Ltd. v. Guardian Indus. Corp.*, 276 F.R.D. 417, 420 (D. Del. 2011) (same).

Finally, BearBox's attempt to excuse its lack of diligence by claiming that Lancium did not timely produce documents or supplement its interrogatory responses is meritless in several respects. First, as explained above—aside from the Layer1 complaint that was publicly available 8 months before BearBox brought this lawsuit—Lancium produced documents sufficient to provide notice of its use of "methods for energy value arbitrage, including cryptocurrency mining systems and arbitraging related energy values" by October 8, 2021. Second, Lancium supplemented its response to BearBox's Interrogatory No. 3—which is the interrogatory that BearBox points to as providing notice for their "New Trade Secret Claims"—on October 11, 2021, to specifically identify documents discussing the use of energy value arbitrage. *See* Ex. 7, at 12 (citing LANCIUM00014672). Third, although Plaintiffs insinuate that their Interrogatory No. 3 was directed towards potential trade secret misappropriation, it was not. This interrogatory asked Defendants to "Describe in detail the development of each invention claimed in the '433 Patent including the conception, reduction to practice, and any other development activities for each claimed invention." *See* Ex. 7, at 7. Thus, although Lancium was not tardy in supplementing this interrogatory response, even if it had been, it is unreasonable for BearBox to rely on discovery that was not seeking information regarding potential trade secret misappropriation as showing diligence in pursuing its "New Trade Secret Claims."

For the foregoing reasons, Lancium's Motion to Strike should be granted.

Respectfully,

*/s/ Chad S.C. Stover*

Chad S.C. Stover (No. 4919)

Enclosures

3