# EXHIBIT 7

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| BEARBOX LLC and AUSTIN STORMS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-534-MN |
| | ) | |
| LANCIUM LLC, MICHAEL T. MCNAMARA, | ) | |
| and RAYMOND E. CLINE, JR., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANTS' FIRST SUPPLEMENTAL RESPONSES TO PLAINTIFFS' FIRST SET
OF INTERROGATORIES (NOS. 1 - 4) DIRECTED TO ALL DEFENDANTS**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules
of this Court, Defendants Lancium LLC, Michael T. McNamara, and Raymond E. Cline, Jr.,
(collectively, "Defendants"), by their undersigned attorneys, hereby provide the following
supplemental responses to Plaintiffs BearBox, LLC and Austin Storms' (collectively, "Plaintiffs")
First Set of Interrogatories served on June 9, 2021 as follows:

**PRELIMINARY STATEMENT**

Defendants' responses to Plaintiffs' First Set of Interrogatories are made to the best of
Defendants' present knowledge, information, and belief. Defendants' investigation of the facts are
ongoing, and Defendants reserve the right to supplement or amend these responses pursuant to the
Federal Rules of Civil Procedure, the local rules, the Court's Default Standard for Discovery,
Including Discovery of Electronically Stored Information ("ESI"), the Court's Scheduling Order,
D.I. 35, and any other applicable orders. Defendants' responses are not admissions, concessions,
or waivers as to the existence, relevance, materiality, foundation, or admissibility of any
documents or information.

## RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 1:

For each Lancium product or service, including but not limited to Your Smart Response™ products or services, that You contend practices any claim of the '433 Patent, please provide, on an element-by-element basis, a detailed description of Your contentions, including (1) all facts that support or challenge those contentions, (2) all information, conclusions, theories, and arguments that relate to or form the basis for your contentions, (3) an identification of all documents (and, where pertinent, the section, article, or subparagraph thereof) that relate to or form any part of the basis of your contentions, and (4) an identification of all communications that relate to or form any part of the basis of your contentions.

### ANSWER:

Defendants object to this Interrogatory as irrelevant, overly broad, unduly burdensome, and not proportional to the needs to the case considering the importance of discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit. In particular, this Interrogatory seeks information regarding Lancium products or services that Defendants "contend practices any claim of the '433 Patent," but infringement is not an issue in this case and Plaintiffs have not asserted any claims regarding any "Lancium product or service." Furthermore, Plaintiffs bear the burden of proof on their claims and per the Court's Scheduling Order, D.I. 35, "contention interrogatories, if filed, shall first be addressed by the party with the burden of proof" and "the more detail a party provides, the more detail a party shall receive," but Plaintiffs have provided only a cursory explanation of their inventorship claims regarding the '433 Patent. In addition, as set forth in Defendants' Opening Brief in Support of Their Motion for Judgment on the Pleadings, D.I. 33, Plaintiffs' conversion, unjust enrichment, and negligent misrepresentation claims fail as a matter of law and should be dismissed. Defendants further object to this Interrogatory as seeking "all" facts, information, conclusions, theories, arguments, documents, and communications for the requested topic because this is not proportional to the needs of the case and it is unduly burdensome, if even possible, to locate, identify, and describe

2

every such fact, piece of information, conclusion, theory, argument, document, and communication within the scope of this Interrogatory. Defendants also object to this Interrogatory as vague and ambiguous by requesting a detailed description of facts that "challenge" Defendants' "contentions" as well as a detailed description of "conclusions, theories, and arguments that relate to or form the basis for your contentions." Defendants object to the use of the terms "You" and "Your" as defined by Plaintiffs as overbroad because they include "all of Lancium LLC's predecessors, predecessors-in-interest, successors, successors-in-interest, subsidiaries, parents, and affiliates, all entities acting in joint venture, licensing or partnership with one or more of the aforementioned, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, and others acting on behalf of one or more of the aforementioned"; Defendants provide discovery responses on behalf of Lancium LLC and the named Defendants only. Defendants still further object to this Interrogatory to the extent it seeks information, documents, and communications protected by attorney-client privilege, work product privilege, or other privilege or immunity.

Subject to and without waiver of the foregoing objections Defendants offer to meet and confer with Plaintiffs regarding this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:**

Subject to and without waiver of the foregoing objections, Plaintiffs have, thus far, failed to meaningfully identify any element of any claim of the '433 patent that "falls within the scope of the BearBox Technology" as alleged in paragraph 4 of the Amended Complaint as requested by Defendants in, for example, Defendants' Interrogatory No. 3. Instead, Plaintiffs produced a chart that, for each claim element, simply states "Austin Storms conceived and developed technology" and then essentially parrots the language of each claim element of the '433 patent. Plaintiffs also state they will produce documents sufficient to respond to the Interrogatory under Fed. R. Civ. P.

3

33(d).  But Plaintiffs identify no specific documents from their production that they contend are responsive to Defendants' Interrogatory No. 3 and thus have not complied with Rule 33(d). Moreover, as noted above, per the Court's Scheduling Order (D.I. 35) "contention interrogatories, if filed, shall first be addressed by the party with the burden of proof" and "the more detail a party provides, the more detail a party shall receive."   To date, Plaintiffs have provide essentially no details regarding the particular element(s) of the claims of the '433 patent for which Mr. Storms contends he should have been named as an inventor. In addition to Plaintiffs' failure to provide meaningful information about their claims, the parties agreed to postpone damages-related discovery until after the Court Rules on Defendants' Motion for Judgment on the Pleadings (D.I. 33).  Plaintiffs offer no rationale whereby the identity of Lancium's products that practice one or more claims of the '433 patent would be relevant to issues in the case beyond purported damages. Defendants, therefore, decline to identify Lancium's products that practice the '433 patent at this time, but reserve their right to do so when, and if, Plaintiffs identify each element of the claims of the '433 patent that Plaintiffs contend falls within the so-called BearBox Technology, including identifying the specific aspect(s) of the BearBox Technology that allegedly fall(s) within the scope of each claim element, and/or once the Court rules on Defendants Motion for Judgment on the Pleadings.

Notwithstanding the above, subject to and without waiver of the foregoing objections, and based upon Defendants' investigation to date, Defendants supplement their response as follows: The current version of Lancium's Smart Response$^{TM}$ software, when installed on an appropriate system, can provide control system functionality that meets the requirements of at least Claim 1 of U.S. Patent No. 10,608,433.

**INTERROGATORY NO. 2:**

For each element of each claim of the '433 Patent that you contend is described, disclosed, or taught by the '632 Application, please provide, on an element-by-element basis, a detailed description of Your contentions, including (1) all facts that support or challenge those contentions, (2) all information, conclusions, theories, and arguments that relate to or form the basis for your contentions, (3) an identification of all documents (and, where pertinent, the section, article, or subparagraph thereof) that relate to or form any part of the basis of your contentions, and (4) an identification of all communications that relate to or form any part of the basis of your contentions.

**ANSWER:**

Defendants object to this Interrogatory as irrelevant, overly broad, unduly burdensome, and

not proportional to the needs to the case considering the importance of discovery in resolving the

issues and whether the burden or expense of the proposed discovery outweighs its likely benefit.

In particular, this Interrogatory seeks information regarding the '632 application, but Plaintiffs

have not asserted any claims regarding that application.  Furthermore, Plaintiffs bear the burden

of proof on their inventorship claims and per the Court's Scheduling Order, D.I. 35, "contention

interrogatories, if filed, shall first be addressed by the party with the burden of proof" and "the

more detail a party provides, the more detail a party shall receive," but Plaintiffs have provided

only a cursory explanation of their claims. Defendants further object to this Interrogatory as

seeking "all" facts, information, conclusions, theories, arguments, documents, and

communications for the requested topic because this is not proportional to the needs of the case

and it is unduly burdensome, if even possible, to locate, identify, and describe every such fact,

piece of information, conclusion, theory, argument, document, and communication within the

scope of this Interrogatory.  Defendants also object to this Interrogatory as vague and ambiguous

by requesting a detailed description of facts that "challenge" Defendants' "contentions" as well as

a detailed description of "conclusions, theories, and arguments that relate to or form the basis for

your contentions." Defendants object to the extent this Interrogatory assumes that Defendants

indeed contend that any claim of the '433 Patent "is described, disclosed, or taught by the '632

Application." Defendants object to the use of the terms "You" and "Your" as defined by Plaintiffs as overbroad because they include "all of Lancium LLC's predecessors, predecessors-in-interest, successors, successors-in-interest, subsidiaries, parents, and affiliates, all entities acting in joint venture, licensing or partnership with one or more of the aforementioned, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, and others acting on behalf of one or more of the aforementioned"; Defendants provide discovery responses on behalf of Lancium LLC and the named Defendants only. Defendants still further object to this Interrogatory to the extent it seeks information, documents, and communications protected by attorney-client privilege, work product privilege, or other privilege or immunity.

Subject to and without waiver of the foregoing objections Defendants offer to meet and confer with Plaintiffs regarding this Interrogatory.

**<u>FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:</u>**

Subject to and without waiver of the foregoing objections, paragraphs 69-82 of Defendants' Counterclaims provide a detailed description of where each aspect/element of the so-called BearBox Technology (as identified by Plaintiffs in their Amended Complaint, the May 9, 2019 email sent to Mr. McNamara, and the text messages between Messrs. Storms and McNamara) is found in the '632 Application, thus evidencing that Mr. McNamara and Lancium were already in possession of the so-called BearBox Technology more than one year before Mr. McNamara ever met or communicated with Mr. Storms. With respect to certain aspects of the technology of the '632 Application being disclosed in the '433 patent, the burden to ascertain such information is essentially equal for both parties in that they and/or their respective experts can examine the teachings of the respective specifications and determine that information. Defendants remain open to further discussions with Plaintiffs regarding this Interrogatory if and when Plaintiffs provide a

meaningful response to Defendants' Interrogatory No. 3, the shortcomings of which, were described above in Defendants First Supplemental Response to Interrogatory No. 1.


**INTERROGATORY NO. 3:**

Describe in detail the development of each invention claimed in the '433 Patent including the conception, reduction to practice, and any other development activities for each claimed invention. A complete response to this Interrogatory should include an identification, on a claim-by-claim and element-by-element basis, of which of the purported inventors named on the '433 Patent conceived of the claimed inventions, reduced the claimed inventions to practice, or otherwise contributed to the development of the claimed inventions, including the dates of each of these activities and an identification of all documents or other evidence that support Your contentions.

**ANSWER:**

Defendants object to this Interrogatory as premature, overly broad, unduly burdensome, and not proportional to the needs to the case considering the importance of discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit. In particular, Plaintiffs bear the burden of proof on their inventorship claims and per the Court's Scheduling Order, D.I. 35, "contention interrogatories, if filed, shall first be addressed by the party with the burden of proof" and "the more detail a party provides, the more detail a party shall receive," but Plaintiffs have provided only a cursory explanation of their claims. Defendants further object to this Interrogatory as seeking an identification of "all documents or other evidence that support Your contentions" because this is not proportional to the needs of the case and it is unduly burdensome, if even possible, to locate, identify, and describe every such document or piece of "evidence" within the scope of this Interrogatory. Defendants also object to this Interrogatory as irrelevant, overly broad, and unduly burdensome by requesting a detailed description of "which of the purported inventors named on the '433 Patent" conceived, reduced to practice, or otherwise contributed to the claimed inventions because Plaintiffs have not pleaded

claims challenging the comparative contributions of the named inventors; Plaintiffs' claims are based only upon the non-inclusion of Austin Storms as a purported inventor of the '433 Patent. Defendants also object to this Interrogatory as irrelevant, vague, ambiguous, overly broad, and unduly burdensome by requesting a detailed description of "reduc[ing] the claimed inventions to practice" and any "contribut[ion] to the development of the claimed inventions" of the '433 Patent because inventorship is based upon contribution to conception of a claimed invention. Defendants object to the use of the term "Your" as defined by Plaintiffs, as overbroad because it includes "all of Lancium LLC's predecessors, predecessors-in-interest, successors, successors-in-interest, subsidiaries, parents, and affiliates, all entities acting in joint venture, licensing or partnership with one or more of the aforementioned, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, and others acting on behalf of one or more of the aforementioned"; Defendants provide discovery responses on behalf of Lancium LLC and the named Defendants only. Defendants still further object to this Interrogatory to the extent it seeks information, documents, and communications protected by attorney-client privilege, work product privilege, or other privilege or immunity.

Subject to and without waiver of the foregoing objections, and based upon Defendants' investigation to date, Defendants respond as follows: Michael T. McNamara ("McNamara"), Lancium LLC's Chief Executive Officer, co-founded the company in 2017 as a technology company working to create software and intellectual property solutions that enable more renewable energy on the nation's power grid. Raymond E. Cline, Jr. ("Cline") joined Lancium LLC ("Lancium") in late 2017 as its Chief Computing Officer and currently serves as Lancium's Chief Technology Officer. Since 2017, McNamara and Cline have worked together to continue innovating in the field of data center power ramping software, including power ramping for

cryptocurrency mining operations, and their work has led to numerous issued patents, including the following:

- U.S. Patent No. 10,873,211 (filed Sept. 13. 2018) "Systems and Methods for Dynamic Power Routing with Behind-the-Meter Energy Storage";
- U.S. Patent No. 10,444,818 (filed Oct. 30, 2018) "Methods and Systems for Distributed Power Control of Flexible Datacenters";
- U.S. Patent No. 10,367,353 (filed Oct. 30, 2018) "Managing Queue Distribution between Critical Datacenter and Flexible Datacenter";
- U.S. Patent No. 10,452,127 (filed Jan. 11, 2019) "Redundant Flexible Datacenter Workload Scheduling";
- U.S. Patent No. 10,618,427 (filed Oct. 8, 2019) "Behind-the-Meter Branch Loads for Electrical Vehicle Charging;
- U.S. Patent No. 10,608,433 (filed Dec. 4, 2019) "Methods and Systems for Adjusting Power Consumption Based on a Fixed-Duration Power Option Agreement";
- U.S. Patent No. 10,857,899 (filed Mar. 4, 2020) "Behind-the-Meter Branch Loads for Electrical Vehicle Charging"; and
- U.S. Patent No. 11,016,456 (filed Feb. 13, 2018) "Method and System for Dynamic Power Delivery to a Flexible Datacenter Using Unutilized Energy Sources."

As demonstrated by their documented history of innovation, McNamara and Cline's work progressively led to the conception of the inventions claimed in the '433 Patent, which occurred prior to the filing on October 28, 2019, of provisional application no. 62/927,119, to which the '433 Patent claims priority. McNamara and Cline's conception of the inventions claimed in the '433 Patent also occurred independently of and without any contribution by Austin Storms.

Discovery in this litigation is also in its early stages, and Defendants' investigation regarding the subject matter of this Interrogatory is ongoing. Accordingly, Defendants reserve the right to amend or supplement this response as additional information becomes available, including by identifying documents pursuant to Federal Rule of Civil Procedure 33(d).

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:**

Subject to and without waiver of the foregoing objections, Plaintiffs have, thus far, failed to meaningfully identify any element of any claim of the '433 patent that "falls within the scope

of the BearBox Technology" as alleged in paragraph 4 of the Amended Complaint as requested by Defendants in, for example, Defendants' Interrogatory No. 3.  Instead, Plaintiffs produced a chart that, for each claim element, simply states "Austin Storms conceived and developed technology" and then essentially parrots the language of each claim element.  Plaintiffs also state they will produce documents sufficient to respond to the Interrogatory under Fed. R. Civ. P. 33(d).  But Plaintiffs identify no specific documents from their production that they contend are responsive to Defendants' Interrogatory No. 3 and thus have failed to comply with Rule 33(d).

Plaintiffs also state that Mr. Storms verbally communicated information to Mr. McNamara, but provide no details regarding when those communications allegedly took place and/or the circumstances surrounding them.  *See*, *e.g.*, Plaintiffs' Supplemental Answer to Defendants' Interrogatory No. 1.  With respect to the substance of the alleged conversation(s), Plaintiffs cherry pick certain words/phrases, identify public electrical grid operators (*e.g.*, the Electric Reliability Council of Texas ("ERCOT"), the Midcontinent Independent System Operation ("MISO"), and the Southwest Power Pool ("SPP")), and recite concepts such as it is advantageous to mine cryptocurrency when power is inexpensive as evidence that Mr. Storms allegedly told Mr. McNamara information that (1) Mr. McNamara did not already know, and (2) Mr. Storms should be a named inventor on the '433 patent.  Such high-level statements, however, are not fully responsive to Defendants' Interrogatories.

It is black-letter law that a person seeking to add himself as an inventor "must meet the heavy burden of proving [his] case by clear and convincing evidence." *See Scott v. Zimmer, Inc.*, 889 F. Supp. 2d 657, 662 (D. Del. 2012). A purported inventor must show that he made a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention, and did more than merely explain to the real

inventor(s) well-known concepts and/or the current state of the art.  *See Acromed Corp. v. Sofamor Danek Group, Inc.*, 253 F.3d 1371, 1379 (Fed. Cir. 2001); *Scott*, 889 F. Supp. 2d at 662.  A purported inventor's uncorroborated testimony, moreover, cannot, by itself, rise to the level of clear and convincing evidence.  *Acromed*, 253 F.3d at 1379; *Scott*, 889 F. Supp. 2d at 663.  Further, as noted above, per the Court's Scheduling Order (D.I. 35) "contention interrogatories, if filed, shall first be addressed by the party with the burden of proof" and "the more detail a party provides, the more detail a party shall receive." To date, Plaintiffs have not provided a meaningful identification of any aspects of the claimed inventions of the '433 patent that Plaintiffs allegedly shared with Mr. McNamara.  Nor have Plaintiffs identified any corroboration of any alleged conversations with Mr. McNamara (or anyone else from Lancium) where such yet-to-be-identified aspects were allegedly communicated to Mr. McNamara.  Defendants, therefore, continue to object to this Interrogatory as premature, unduly burdensome, and overly broad.  Once Plaintiffs identify with particularity the elements of the '433 patent's claims for which Mr. Storms maintains he provided Mr. McNamara information (*e.g.*, identify the specific details of the alleged BearBox technology Plaintiffs contend are covered by the claims of the '433 patent that Mr. Storms purportedly shared with Mr. McNamara, and provide corroboration for each such identification), Defendants will further supplement this Response.

Notwithstanding the foregoing, and reserving all objections and reserving the right to further supplement as Defendants' investigation continues and if/when Plaintiffs fully respond to Defendants Interrogatories as discussed above, Defendants further respond that Lancium, Mr. McNamara, and Dr. Cline have been continuously developing their technology and intellectual property since at least 2017.  By no later than April 2019, Messrs. McNamara and Cline were aware of Loads as a Resource ("LAAR") and programs associated therewith, including, for

example, utilizing software to turn cryptocurrency miners on and off in response to the price/demand for electricity.  By no later than April of 2019, Messrs. McNamara and Cline had conceived of and reduced to practice technology capable of dynamic power delivery to flexible datacenters, including the ability to ramp up and down one or more computing systems (*i.e.*, to instruct cryptocurrency miners, for example, to mine or not to mine under certain conditions). Certain aspects of this technology are described in PCT Publication Number WO 2019/139632 A1 (the "'632 application"), LANCIUM00000050-93, which is a publication from an application filed on February 13, 2018 that eventually issued as U.S. Patent No. 11,016,456. *See also, e.g.*, LANCIUM00014483;   LANCIUM00014493;   LANCIUM00014517;   LANCIUM00014524; LANCIUM00014533;   LANCIUM00014534;   LANCIUM00014543;   LANCIUM00014552; LANCIUM00014559;   LANCIUM00014579;   LANCIUM00014586;   LANCIUM00014595; LANCIUM00014603;   LANCIUM00014612;   LANCIUM00014619;   LANCIUM00014628; LANCIUM00014653;   LANCIUM00014662;   LANCIUM00014671;   LANCIUM00014672; LANCIUM00014701;   LANCIUM00014702;   LANCIUM00014732;   LANCIUM00014733; LANCIUM00014764;   LANCIUM00014825;   LANCIUM00014832;   LANCIUM00014841; LANCIUM00014844;   LANCIUM00014864;   LANCIUM00015026;   LANCIUM00015027; LANCIUM00015046;   LANCIUM00015048;   LANCIUM00015108;   LANCIUM00015109; LANCIUM00015128;   LANCIUM00015129;   LANCIUM00015148;   LANCIUM00015150; LANCIUM00015154;   LANCIUM00015169;   LANCIUM00015170;   LANCIUM00015238; LANCIUM00015241;   LANCIUM00015260;   LANCIUM00015339;   LANCIUM00015452; LANCIUM00015456;   LANCIUM00015503;   LANCIUM00015595;   LANCIUM00015604; LANCIUM00015717;   LANCIUM00015798;   LANCIUM00015911;   LANCIUM00015912; LANCIUM00015931;   LANCIUM00015932;   LANCIUM00015982;   LANCIUM00015989;

LANCIUM00015998;     LANCIUM00015999;     LANCIUM00016051;     LANCIUM00016055;

LANCIUM00016069;     LANCIUM00016072;     LANCIUM00016086;     LANCIUM00016088;

LANCIUM00016102;     LANCIUM00016105;     LANCIUM00016119;     LANCIUM00016121;

LANCIUM00016135;     LANCIUM00016136;     LANCIUM00016168;     LANCIUM00016169;

LANCIUM00016201;     LANCIUM00016204;     LANCIUM00016218;     LANCIUM00016219;

LANCIUM00016228;     LANCIUM00016229;     LANCIUM00016241;     LANCIUM00016256;

LANCIUM00016257;     LANCIUM00016260;     LANCIUM00016261;     LANCIUM00016264;

LANCIUM00016267;     LANCIUM00016268;     LANCIUM00016292;     LANCIUM00016316;

LANCIUM00016317;     LANCIUM00016341;     LANCIUM00016342;     LANCIUM00016366;

LANCIUM00016368; LANCIUM00016436; LANCIUM00016437; LANCIUM00016448.

Defendants further state that by no later than April 2019, Messrs. McNamara and Cline were aware of market pricing and market structure for wholesale electricity pricing, the relationship between Qualified Scheduling Entities ("QSEs") and Independent System Operators such as ERCOT, including that a Load Resource must register with ERCOT as a Resource Entity and be represented in the ERCOT markets by a QSE. *See*, *e.g.*, www.ercot.com/services/programs/load/laar/index.html;     LANCIUM00014480; LANCIUM00016267;     LANCIUM00016292;     LANCIUM00016316;     LANCIUM00016317; LANCIUM00016341;     LANCIUM00016342;     LANCIUM00016436;     LANCIUM00016437; LANCIUM00016436; LANCIUM00016448.  In addition, by no later than April 2019, Messrs. McNamara and Cline were aware of real-time pricing for electricity, the functions and interactions of QSEs with ERCOT, the use of cryptocurrency miners as a Load for qualification as a Load Resource, and that to qualify as a Load Resource required the ability to change a load in response to an instruction to meet certain performance requirements. *See*

www.ercot.com/services/programs/load/laar/index.html.   Additionally, by no later than April 2019, Messrs. McNamara and Cline were aware that cryptocurrency could be mined, that hash rates could be calculated for such mining, that cryptocurrency could be traded, that there was real-time information available on the price of cryptocurrency in dollars, and that this information could be utilized in conjunction with information regarding the price and/or projected price of electricity in determining when to mine or not to mine cryptocurrency.  *See, e.g.*, LANCIUM00014483; LANCIUM00014493;   LANCIUM00014517;   LANCIUM00014524;   LANCIUM00014533; LANCIUM00014534;   LANCIUM00014543;   LANCIUM00014552;   LANCIUM00014559; LANCIUM00014579;   LANCIUM00014586;   LANCIUM00014595;   LANCIUM00014603; LANCIUM00014612;   LANCIUM00014619;   LANCIUM00014628;   LANCIUM00014653; LANCIUM00014662;   LANCIUM00014671;   LANCIUM00014672;   LANCIUM00014701; LANCIUM00014702;   LANCIUM00014732;   LANCIUM00014733;   LANCIUM00014764; LANCIUM00014825;   LANCIUM00014832;   LANCIUM00014841;   LANCIUM00014844; LANCIUM00014864;   LANCIUM00015026;   LANCIUM00015027;   LANCIUM00015046; LANCIUM00015048;   LANCIUM00015108;   LANCIUM00015109;   LANCIUM00015128; LANCIUM00015129;   LANCIUM00015148;   LANCIUM00015150;   LANCIUM00015154; LANCIUM00015169;   LANCIUM00015170;   LANCIUM00015238;   LANCIUM00015241; LANCIUM00015260;   LANCIUM00015339;   LANCIUM00015452;   LANCIUM00015456 LANCIUM00015503;   LANCIUM00015595;   LANCIUM00015604;   LANCIUM00015717; LANCIUM00015798;   LANCIUM00015911;   LANCIUM00015912;   LANCIUM00015931; LANCIUM00015932;   LANCIUM00015982;   LANCIUM00015989;   LANCIUM00015998; LANCIUM00015999;   LANCIUM00016051;   LANCIUM00016055;   LANCIUM00016069; LANCIUM00016072;   LANCIUM00016086;   LANCIUM00016088;   LANCIUM00016102;

LANCIUM00016105; LANCIUM00016119; LANCIUM00016121; LANCIUM00016135;

LANCIUM00016136; LANCIUM00016168; LANCIUM00016169; LANCIUM00016201;

LANCIUM00016204; LANCIUM00016218; LANCIUM00016219; LANCIUM00016228;

LANCIUM00016229; LANCIUM00016241; LANCIUM00016256; LANCIUM00016257;

LANCIUM00016260; LANCIUM00016261; LANCIUM00016264; LANCIUM00016267;

LANCIUM00016268; LANCIUM00016292; LANCIUM00016316; LANCIUM00016317;

LANCIUM00016341; LANCIUM00016342; LANCIUM00016366; LANCIUM00016368;

LANCIUM00016436; LANCIUM00016437; LANCIUM00016448.

Defendants further state that many (and potentially all) of the elements of each of the claims of the '433 patent had been conceived by no later than April 2019, but they are still investigating the exact date(s) and circumstances of conception of each of these elements.  Similarly, Defendants are still investigating the exact date(s) and circumstances regarding reduction to practice of each specific claim element of the '433 patent, but state that each of the claimed inventions in the '433 patent were reduced to practice by no later than October 28, 2019, the date Provisional Application No. 62/927,119 was filed with the United States Patent and Trademark Office.

Pursuant to Fed. R. Civ. Prod. 33(d), Defendants have produced and will be producing documents further evidencing conception and reduction to practice of the inventions claimed in the '433 patents. Defendants will further supplement this response identifying conception/reduction to practice related documents with particularity (*e.g.*, by Bates number).

**INTERROGATORY NO. 4:**

State the legal, factual, and evidentiary basis for Your contention that "Austin Storms properly was not named as an inventor on the '433 Patent." (D.I. 23 at 39 ¶ 93).

**ANSWER:**

Defendants object to this Interrogatory as premature, overly broad, unduly burdensome, and not proportional to the needs to the case considering the importance of discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit. In particular, Plaintiffs bear the burden of proof on their inventorship claims and per the Court's Scheduling Order, D.I. 35, "contention interrogatories, if filed, shall first be addressed by the party with the burden of proof" and "the more detail a party provides, the more detail a party shall receive," but Plaintiffs have provided only a cursory explanation of their claims. Defendants object to the use of the term "Your" as defined by Plaintiffs, as overbroad because it includes "all of Lancium LLC's predecessors, predecessors-in-interest, successors, successors-in-interest, subsidiaries, parents, and affiliates, all entities acting in joint venture, licensing or partnership with one or more of the aforementioned, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, and others acting on behalf of one or more of the aforementioned"; Defendants provide discovery responses on behalf of Lancium LLC and the named Defendants only. Defendants still further object to this Interrogatory to the extent it seeks information, documents, and communications protected by attorney-client privilege, work product privilege, or other privilege or immunity.

Subject to and without waiver of the foregoing objections, and based upon Defendants' investigation to date, Defendants respond as follows: It is well-established that "plaintiffs seeking to add themselves as inventors 'must meet the heavy burden of proving [their] case by clear and convincing evidence.'" *Scott v. Zimmer, Inc.*, 889 F. Supp. 2d 657, 662 (D. Del. 2012), *quoting Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358 (Fed. Cir. 2004). Moreover, "plaintiffs must show that they each individually made a 'contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full

invention, and [did] more than merely explain to the real inventors well-known concepts and/or the current state of the art.'" *Id.*, quoting *Acromed Corp. v. Sofamor Danek Grp., Inc.,* 253 F.3d 1371, 1379 (Fed. Cir. 2001). "Furthermore, plaintiffs' testimony regarding their own inventorship claim 'is regarded with skepticism' and 'cannot, standing alone, rise to the level of clear and convincing proof." *Id.* at 663, *quoting Price v. Symsek,* 988 F.2d 1187, 1194 (Fed. Cir. 1993). "As such, plaintiffs 'must supply evidence to corroborate [their] testimony.'" *Id.*, quoting *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1461 (Fed. Cir. 1998).

Plaintiffs have not met and cannot meet this high burden. Plaintiffs' allegations regarding the "BearBox Technology" that Defendants purportedly used and incorporated into the '433 Patent are vague, amorphous, and have changed as this litigation has progressed. Indeed, to the extent Plaintiffs' claims are based upon the alleged inventorship or misappropriation of the "BearBox Technology" as identified in Plaintiffs' original Complaint, D.I. 1, McNamara and Cline had already conceived and reduced to practice this so-called "BearBox Technology," as demonstrated by patent application WO 2019/139632 A1 (the "'632 application"), which was filed on February 13, 2018, approximately 15 months before Plaintiffs allege that McNamara even met Storms. Defendants further incorporate by reference, as if fully set forth herein, the explanation in their Answer and Counterclaims to the original Complaint, of how the so-called "BearBox Technology" is disclosed in the '632 application. *See, e.g.*, D.I. 13 ¶¶ 59-82 and the documents cited therein; *see also* D.I. 23 (Answer and Counterclaims to Amended Complaint) ¶¶ 59-82 and the documents cited therein; D.I. 2 (Amended Answer and Counterclaims to Amended Complaint) ¶¶ 59-82 and the documents cited therein.

Faced with this refutation of their claims, Plaintiffs have now changed their allegations regarding the so-called "BearBox Technology" in their Amended Complaint, D.I. 19. But to the

17

extent Plaintiffs now contend that the so-called "BearBox Technology" includes something other than what was alleged in the original Complaint, D.I. 1, Plaintiffs have not done so with any specificity and therefore cannot meet the high burden of showing that Storms contributed to any of the claimed inventions in the '433 Patent, which he did not. Moreover, Plaintiffs have not provided corroboration that any such information about the "BearBox Technology" was provided to McNamara, Cline, or Lancium, and thus also cannot demonstrate that Storms contributed to any of the claimed inventions of the '433 Patent, which again he did not.

In addition, Defendants incorporate their response to Interrogatory No. 3 as if fully set forth herein. Simply put, Lancium, McNamara, and Cline have been innovating in this field long before encountering Storms, and McNamara and Cline conceived of the inventions claimed in the '433 Patent independently of and without any contribution by Storms. Plaintiffs have provided no legitimate basis or evidence to support or corroborate their claim that Storms should properly be named as an inventor on the '433 Patent, and he is not an inventor of this patent.

Discovery in this litigation is also in its early stages, and Defendants' investigation regarding the subject matter of this Interrogatory is ongoing. Accordingly, Defendants reserve the right to amend or supplement this response as additional information becomes available, including to the extent Plaintiffs provide additional information regarding their claims.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:**

Subject to and without waiver of the foregoing objections, and incorporating Defendants' Response and Supplemental Response to Interrogatory No. 3, Defendants supplement their response as follows:

As explained above, Messrs. McNamara and Cline conceived of the inventions claimed in the '433 Patent independently of and without any contribution by Mr. Storms.  Plaintiffs have provided no legitimate basis or evidence to support and corroborate their claim that Mr. Storms

18

should properly be named as an inventor on the '433 Patent.  He is not an inventor of this patent. None of the documents or written communications that Mr. Storms exchanged with Mr. McNamara disclose the inventions claimed in the '433 patent.  Instead, all written information provided by Mr. Storms was information that was already known to Messrs. McNamara and Cline, as evidenced by, at least, the '632 application.

In response to Defendants' Interrogatory No. 1—which requested that Plaintiffs "[d]escribe with particularity" each aspect of the BearBox Technology that was communicated to Defendants and through what means—Plaintiffs directed Defendants to the allegations of the Complaint and brand-new, alleged "verbal communications" between Mr. Storms and Mr. McNamara. Plaintiffs' description of the purported "verbal communications" between Mr. Storms and Mr. McNamara, however, consists of cherry-picked words/phrases, naming public electrical grid operators such as ERCOT, MISO, and SPP, and concepts such as it is advantageous to mine cryptocurrency when power is inexpensive.  Mr. Storms provided no evidence that he verbally communicated anything to Mr. McNamara that Mr. McNamara did not already know.  He did not. Outside of indicating that he met Mr. McNamara for the first and only time at the Fidelity FCAT Mining Summit in Boston on May 3, 2019 and that he, Mr. McNamara and others attended drinks/dinner that night at a local restaurant, Mr. Storms has provided no evidence of other verbal communication with Mr. McNamara, let alone evidence of anything that was said between them (*i.e.*, Plaintiffs fail to identify the date(s), circumstances, and method of communication (*e.g.*, telephone or in-person conversation), and other(s) present during such communication(s)).

In sum, Mr. Storms did not provide any information to Mr. McNamara relevant to the inventions of the '433 patent or that was new to Mr. McNamara, and Mr. Storms did not provide information regarding—or even discuss with Mr. McNamara—much of what Plaintiffs now claim.

Indeed, Messrs. McNamara and Cline had conceived of the so-called BearBox Technology, to the extent it can be understood from Plaintiffs' deficient Interrogatory Responses, years earlier, as evidenced, for example, by the '632 application. *See, e.g.*, '632 application (LANCIUM00000050-64) ¶¶ 30, 39, 40, 44. In addition, pursuant to Fed. R. Civ. Prod. 33(d), Defendants have produced and will be producing documents further providing their evidentiary, factual, and legal basis that Mr. Storms is not an inventor of the '433 patent. Defendants will further supplement this response identifying conception/reduction to practice related documents with particularity (*e.g.*, by Bates number).

**INTERROGATORY NO. 5:**

State the legal, factual, and evidentiary basis for Your affirmative defenses in Your Answer to Amended Complaint and Counterclaims (D.I. 23) including Your purported affirmative defenses of "no merger of intangible rights," "consent or approval," "equitable defenses," "unavailability of injunctive relief," and "failure to mitigate damages."

**ANSWER:**

Defendants object to this Interrogatory as compound and consisting of five (5) discrete subparts that constitute five separate Interrogatories. Accordingly, Defendants respond to each of the five Interrogatories regarding each of the five affirmative defenses separately as Interrogatory Nos. 5 through 9. Defendants further object to this Interrogatory as premature, overly broad, unduly burdensome, and not proportional to the needs to the case considering the importance of discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit. In particular, Plaintiffs bear the burden of proof on their claims and per the Court's Scheduling Order, D.I. 35, "contention interrogatories, if filed, shall first be addressed by the party with the burden of proof" and "the more detail a party provides, the more detail a party shall receive," but Plaintiffs have provided only a cursory explanation of their claims.

Defendants object to the use of the term "Your" as defined by Plaintiffs as overbroad because it includes "all of Lancium LLC's predecessors, predecessors-in-interest, successors, successors-in-interest, subsidiaries, parents, and affiliates, all entities acting in joint venture, licensing or partnership with one or more of the aforementioned, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, and others acting on behalf of one or more of the aforementioned"; Defendants provide discovery responses on behalf of Lancium LLC and the named Defendants only. Defendants still further object to this Interrogatory to the extent it seeks information, documents, and communications protected by attorney-client privilege, work product privilege, or other privilege or immunity.

Subject to and without waiver of the foregoing objections, and based upon Defendants' investigation to date, Defendants respond as follows: Plaintiffs' conversion claim is based upon the alleged conversion of intellectual property. Count III "Conversion By Lancium, McNamara, and Cline" in the Amended Complaint specifically alleges that "Defendants assumed dominion and control over the BearBox Technology by claiming it as their own in the '433 Patent. Through their wrongful conduct in obtaining the '433 Patent and claiming the BearBox Technology as their own, the Defendants have wrongfully obtained the purported ability to exclude Plaintiffs and others from using the BearBox Technology. This constitutes unauthorized and unlawful conversion by Defendants." D.I. 19 ¶ 61.

As set forth in Section V.C.1 (pp. 14-16) of Defendants' Opening Brief in Support of Their Motion for Judgment on the Pleadings, D.I. 33, which Defendants incorporate by reference, as if fully stated herein, this claim fails as a matter of law because intangible, intellectual property cannot be converted unless it is merged into a tangible document, which is not the case here. In particular, under Louisiana law, "[a] conversion is an act in derogation of the Plaintiffs' possessory

rights and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time" and "is committed when any of the following occurs: (1) possession is acquired in an unauthorized manner; (2) the chattel is removed from one place to another with the intent to exercise control over it; (3) possession of the chattel is transferred without authority; (4) possession is withheld from the owner or possessor; (5) the chattel is altered or destroyed; (6) the chattel is used improperly; or (7) ownership is asserted over the chattel." *Tracer Prot. Servs., Inc. v. Burton*, No. 2015-0215, 2015 WL 5515793, at *6 (La. Ct. App. 2015) (citing *Dual Drilling Co. v. Mills Equip. Invs., Inc.*, 721 So. 2d 853, 857 (La. 1998)). Thus, a claim for conversion applies only to "goods" or "chattel." *See id.*; *see also Dorsey v. Money Mack Music, Inc.*, 304 F. Supp. 2d 858, 866 (E.D. La. 2003) ("[T]he torts of conversion and trespass relate to interference with tangible rather than intangible property."); *Brand Coupon Network, LLC v. Catalina Mktg. Corp.*, No. 11-00556, 2014 WL 6674034, at *6 (M.D. La. Nov. 24, 2014) ("[C]onversion requires unlawful interference with *chattel*.") (emphasis in original). In Louisiana, chattel "is deemed 'corporeal movable' property." *BASF Agrochemical Prods. v. Unkel*, No. 05-1478, 2006 WL 3533133, at *7 (W.D. La. Dec. 7, 2006).

Although "intangible property can be converted if the right is embodied in or merged into a document," Louisiana courts "have limited conversion to those intangible property rights which are traditionally merged into or identified with some document," such as "stock certificates and bonds, which represent valuable intangible property rights." *Id.* But unlike stock certificates and bonds, possession of a physical patent does not represent ownership of rights in the patent. Moreover, in *BASF* the court held that a conversion claim based on "depriving Plaintiffs of their rights" in patented technology "is outside the scope of Louisiana conversion law." *Id.* *6-7. Other

courts have also found that intangible, intellectual property rights cannot be converted.[1] *See Uptown Grill, LLC v. Shwartz*, No. 13-6560, 2017 WL 2312882, at \*10 (E.D. La. May 26, 2017)) (holding that "conversion is not applicable to incorporeal movables such as the intellectual property rights at issue in this matter"), *aff'd in part, rev'd in part on other grounds*, *Uptown Grill, LLC v. Camellia Grill Holdings, Inc.*, 920 F.3d 243 (5th Cir. 2019); *Pure Air Daigle, LLC v. Stagg*, No. 6:16-1322, 2017 WL 11534244, at \*14 (W.D. La. Jan. 11, 2017) ("The tort of conversion is limited to major interferences with a person's rights in his movable property."). Thus, because the allegedly converted intellectual property is not merged into a physical document, it cannot be converted.

Discovery in this litigation is also in its early stages, and Defendants' investigation regarding the subject matter of this Interrogatory is ongoing. Accordingly, Defendants reserve the right to amend or supplement this response as additional information becomes available, including to the extent Plaintiffs provide additional information regarding their claims.

**INTERROGATORY NO. 6:**

State the legal, factual, and evidentiary basis for Your affirmative defenses in Your Answer to Amended Complaint and Counterclaims (D.I. 23) including Your purported affirmative defenses of "no merger of intangible rights," "consent or approval," "equitable defenses," "unavailability of injunctive relief," and "failure to mitigate damages."

**ANSWER:**

---

[1] Although Louisiana law applies, Plaintiffs previously asserted a now-withdrawn claim for trade secret misappropriation under Texas law. *See* D.I. 1; D.I. 19-3 pp. 14-16. Thus, to the extent Plaintiffs contend that Texas law should apply, there is no conflict, as "Texas law has never recognized a cause of action for conversion of intangible property except in cases where an underlying intangible right has been merged into a document and that document has been converted**."** *Express One Int'l, Inc. v. Steinbeck*, 53 S.W.3d 895, 901 (Tex. App.–Dallas 2001) (affirming summary judgment dismissing conversion claim.); *see also Carson v. Dynegy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003) (a conversion claim that "involves only intellectual property rights … is outside the scope of Texas conversion law, which concerns only physical property."); *Quantlab Techs. Ltd. (BVI) v. Godlevsky*, 719 F. Supp. 2d 766, 779 (S.D. Tex. 2010) ("Because intellectual property is not subject to conversion under Texas law, [Plaintiff's] conversion claim must therefore fail."); *WesternGeco v. Ion Geophysical Corp.***,** No. 09–cv–1827, 2009 WL 3497123, at \*3 (S.D. Tex. 2009) (dismissing a conversion claim for confidential information and technology).

Defendants object to this Interrogatory as compound and consisting of five (5) discrete subparts that constitute five separate Interrogatories. Accordingly, Defendants respond to each of the five Interrogatories regarding each of the five affirmative defenses separately as Interrogatory Nos. 5 through 9. Defendants object to this Interrogatory as premature, overly broad, unduly burdensome, and not proportional to the needs to the case considering the importance of discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit. In particular, Plaintiffs bear the burden of proof on their claims and per the Court's Scheduling Order, D.I. 35, "contention interrogatories, if filed, shall first be addressed by the party with the burden of proof" and "the more detail a party provides, the more detail a party shall receive," but Plaintiffs have provided only a cursory explanation of their claims. Defendants object to the use of the term "Your" as defined by Plaintiffs as overbroad because it includes "all of Lancium LLC's predecessors, predecessors-in-interest, successors, successors-in-interest, subsidiaries, parents, and affiliates, all entities acting in joint venture, licensing or partnership with one or more of the aforementioned, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, and others acting on behalf of one or more of the aforementioned"; Defendants provide discovery responses on behalf of Lancium LLC and the named Defendants only. Defendants still further object to this Interrogatory to the extent it seeks information, documents, and communications protected by attorney-client privilege, work product privilege, or other privilege or immunity.

Subject to and without waiver of the foregoing objections, and based upon Defendants' investigation to date, Defendants respond as follows: Under Louisiana law, "[a] conversion is an act in derogation of the Plaintiffs' possessory rights and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite

time" and "is committed when any of the following occurs: (1) possession is acquired in an unauthorized manner; (2) the chattel is removed from one place to another with the intent to exercise control over it; (3) possession of the chattel is transferred without authority; (4) possession is withheld from the owner or possessor; (5) the chattel is altered or destroyed; (6) the chattel is used improperly; or (7) ownership is asserted over the chattel." *Tracer Prot. Servs., Inc. v. Burton*, No. 2015-0215, 2015 WL 5515793, at *6 (La. Ct. App. 2015) (citing *Dual Drilling Co. v. Mills Equip. Invs., Inc.*, 721 So. 2d 853, 857 (La. 1998)). Thus, "when the owner gives another permission to take possession of his property he must terminate that permission by requesting return of the property before continued possession by the non-owner will constitute conversion." *Watson v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 14-1312, 2015 WL 5714635, at *8 (E.D. La. Sept. 29, 2015), *quoting Sec. Home Mortg. Corp. v. Bogues,* 519 So.2d 307, 312 (La. Ct. App. 1988); *see also Miller v. Harvey*, 408 So.2d 946, 952 (La. Ct. App. 1981) ("We agree that when one gives another permission to take possession of his property he must show that the permission has ended by requesting its return before a conversion can be considered committed."). In addition, "one who might otherwise be entitled to maintain an action for the conversion of his goods may afford the alleged wrongdoer a complete defense to the action by waiving the right to treat the act as wrongful, or by ratification thereof. If the owner expressly or impliedly assents to or ratifies the taking, use or disposition of his property, he cannot recover for conversion of the property. In other words, the right to sue in conversion may be defeated by an act or conduct which amounts to estoppel." *Watson*, 2015 WL 5714635, at *8, *quoting Aymond v. State of La., Dep't of Revenue and Taxation,* 672 So.2d 273, 276 (La. Ct. App. 1996)

  As set forth in Defendants' Sixth Affirmative Defense, "[a]ny alleged exchange or transfer of property between the parties was performed with Plaintiffs' full consent and/or approval and,

thus precludes Plaintiffs' claim for conversion." D.I. 23; D.I. 28; *see also* D.I. 13 at Eighth Affirmative Defense. In other words, Plaintiffs cannot establish that Defendants committed any act of conversion because Storms and/or BearBox provided any information conveyed to Defendants freely and assented to its use by Defendants, and thus Defendants could not have committed any act of conversion.

Discovery in this litigation is also in its early stages, and Defendants' investigation regarding the subject matter of this Interrogatory is ongoing. Accordingly, Defendants reserve the right to amend or supplement this response as additional information becomes available, including to the extent Plaintiffs provide additional information regarding their claims.

## INTERROGATORY NO. 7:

State the legal, factual, and evidentiary basis for Your affirmative defenses in Your Answer to Amended Complaint and Counterclaims (D.I. 23) including Your purported affirmative defenses of "no merger of intangible rights," "consent or approval," "equitable defenses," "unavailability of injunctive relief," and "failure to mitigate damages."

## ANSWER:

Defendants object to this Interrogatory as compound and consisting of five (5) discrete subparts that constitute five separate Interrogatories. Accordingly, Defendants respond to each of the five Interrogatories regarding each of the five affirmative defenses separately as Interrogatory Nos. 5 through 9. Defendants object to this Interrogatory as premature, overly broad, unduly burdensome, and not proportional to the needs to the case considering the importance of discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit. In particular, Plaintiffs bear the burden of proof on their claims and per the Court's Scheduling Order, D.I. 35, "contention interrogatories, if filed, shall first be addressed by the party with the burden of proof" and "the more detail a party provides, the more detail a party shall

receive," but Plaintiffs have provided only a cursory explanation of their claims. Defendants object to the use of the term "Your" as defined by Plaintiffs as overbroad because it includes "all of Lancium LLC's predecessors, predecessors-in-interest, successors, successors-in-interest, subsidiaries, parents, and affiliates, all entities acting in joint venture, licensing or partnership with one or more of the aforementioned, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, and others acting on behalf of one or more of the aforementioned"; Defendants provide discovery responses on behalf of Lancium LLC and the named Defendants only. Defendants still further object to this Interrogatory to the extent it seeks information, documents, and communications protected by attorney-client privilege, work product privilege, or other privilege or immunity.

Subject to and without waiver of the foregoing objections, and based upon Defendants' investigation to date, Defendants respond as follows: As set forth in Defendants' Seventh Affirmative Defense, "Plaintiffs' Counts I through V are barred, in whole or in part, by laches, equitable estoppel, estoppel, implied license, waiver, ratification, acquiescence, unclean hands, and/or other related equitable doctrines." D.I. 28; see also D.I. 23; D.I. 13 (Ninth Affirmative Defense). For example, under Louisiana law:

> Equitable estoppel, or 'estoppel in pais,' can be defined as the effect of the voluntary conduct of a party whereby he is barred from asserting rights against another party justifiably relying on such conduct and who has changed his position to his detriment as a result of such reliance. Thus, there are three elements of estoppel: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance.

*Wilkinson v. Wilkinson*, 323 So.2d 120, 126 (La. 1975). Here, Plaintiffs claims are barred by equitable estoppel because any information regarding the so-called "BearBox Technology" that Storms and/or BearBox provided to Defendants was provided voluntarily and they assented to its use by Defendants. Thus, to the extent that any of the "BearBox Technology" is found to have

27

been used by Defendants and/or incorporated into the '433 Patent, Defendants justifiably relied on Plaintiffs consent and changed their position to their detriment based on such reliance. Accordingly, Plaintiffs' claims are barred by equitable estoppel.

In addition, "[l]aches is an equitable defense that may bar an inventorship claim." *Serdarevic v. Advanced Medical Optics, Inc.*, 532 F.3d 1352 (Fed. Cir. 2008). "The laches defense has two underlying elements: first, the [plaintiff]'s delay in bringing suit must be 'unreasonable and inexcusable,' and second, the [defendant] must have suffered 'material prejudice attributable to the delay.'" *See Intirtool, Ltd. v. Texar Corp.*, 369 F.3d 1289, 1297 (Fed. Cir. 2004). In response to Defendants' Interrogatory No. 6, Plaintiffs have admitted that "Mr. Austin Storms first learned of the '433 Patent on August 17, 2020 by reading a press release dated August 14, 2020 issued by Lancium regarding its lawsuit against Layer1 pending in the District Court for the Western District of Texas." Nonetheless, Plaintiffs unreasonably waited to bring this lawsuit until after the settlement of the "Layer1 Lawsuit" was publicly announced knowing that Defendants would continue expending resources on that litigation to their detriment, since such resources—and any other resources Defendants expended regarding the '433 Patent—would be wasted if Plaintiffs prevailed on their claims in this case.

Discovery in this litigation is also in its early stages, and Defendants' investigation regarding the subject matter of this Interrogatory is ongoing. Accordingly, Defendants reserve the right to amend or supplement this response as additional information becomes available, including to the extent Plaintiffs provide additional information regarding their claims.

**INTERROGATORY NO. 8:**

State the legal, factual, and evidentiary basis for Your affirmative defenses in Your Answer to Amended Complaint and Counterclaims (D.I. 23) including Your purported affirmative defenses of "no merger of intangible rights," "consent or approval," "equitable defenses," "unavailability of injunctive relief," and "failure to mitigate damages."

**ANSWER:**

Defendants object to this Interrogatory as compound and consisting of five (5) discrete subparts that constitute five separate Interrogatories. Accordingly, Defendants respond to each of the five Interrogatories regarding each of the five affirmative defenses separately as Interrogatory Nos. 5 through 9. Defendants object to this Interrogatory as premature, overly broad, unduly burdensome, and not proportional to the needs to the case considering the importance of discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit. In particular, Plaintiffs bear the burden of proof on their claims and per the Court's Scheduling Order, D.I. 35, "contention interrogatories, if filed, shall first be addressed by the party with the burden of proof" and "the more detail a party provides, the more detail a party shall receive," but Plaintiffs have provided only a cursory explanation of their claims. Defendants object to the use of the term "Your" as defined by Plaintiffs as overbroad because it includes "all of Lancium LLC's predecessors, predecessors-in-interest, successors, successors-in-interest, subsidiaries, parents, and affiliates, all entities acting in joint venture, licensing or partnership with one or more of the aforementioned, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, and others acting on behalf of one or more of the aforementioned"; Defendants provide discovery responses on behalf of Lancium LLC and the named Defendants only. Defendants still further object to this Interrogatory to the extent it seeks information, documents, and communications protected by attorney-client privilege, work product privilege, or other privilege or immunity.

Subject to and without waiver of the foregoing objections, and based upon Defendants' investigation to date, Defendants respond as follows: Plaintiffs' "Prayer for Relief" in the Amended Complaint requests "a permanent injunction enjoining Defendants Lancium,

McNamara, and Cline from asserting the McNamara or Cline are inventors of the '433 Patent in violation of the United States federal patent laws." D.I. 19. As explained by the Supreme Court:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Moreover, as set forth in Defendants' Eighth Affirmative Defense, "Plaintiffs are not entitled to injunctive relief because any injury to them is not immediate and irreparable, they would have an adequate remedy at law, the balance of hardships favors no injunction, and the public interest is best served by no injunction." D.I. 28; *see also* D.I. 23; D.I. 13 (Tenth Affirmative Defense). Indeed, Plaintiffs also seek remedies such as "[a]n order that the Director of the United States Patent and Trademark Office correct the inventorship of the '433 Patent to name Austin Storms as the sole inventor, or, in the alternative, as a joint inventor to one or both of the individuals currently listed as inventors on the '433 Patent" demonstrating that they are not entitled to an injunction under the *eBay* factors because they have adequate remedies available at law. Moreover, Plaintiffs' damages claims, to the extent they are permitted and that Plaintiffs prevail on them, demonstrate that any harmed allegedly suffered is not irreparable.

Discovery in this litigation is also in its early stages, and Defendants' investigation regarding the subject matter of this Interrogatory is ongoing. Accordingly, Defendants reserve the right to amend or supplement this response as additional information becomes available, including to the extent Plaintiffs provide additional information regarding their claims.

**INTERROGATORY NO. 9:**

State the legal, factual, and evidentiary basis for Your affirmative defenses in Your Answer to Amended Complaint and Counterclaims (D.I. 23) including Your purported affirmative defenses of "no merger of intangible rights," "consent or approval," "equitable defenses," "unavailability of injunctive relief," and "failure to mitigate damages."

**ANSWER:**

Defendants object to this Interrogatory as compound and consisting of five (5) discrete subparts that constitute five separate Interrogatories. Accordingly, Defendants respond to each of the five Interrogatories regarding each of the five affirmative defenses separately as Interrogatory Nos. 5 through 9. Defendants object to this Interrogatory as premature, overly broad, unduly burdensome, and not proportional to the needs to the case considering the importance of discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit. In particular, Plaintiffs bear the burden of proof on their claims and per the Court's Scheduling Order, D.I. 35, "contention interrogatories, if filed, shall first be addressed by the party with the burden of proof" and "the more detail a party provides, the more detail a party shall receive," but Plaintiffs have provided only a cursory explanation of their claims. Defendants object to the use of the term "Your" as defined by Plaintiffs as overbroad because it includes "all of Lancium LLC's predecessors, predecessors-in-interest, successors, successors-in-interest, subsidiaries, parents, and affiliates, all entities acting in joint venture, licensing or partnership with one or more of the aforementioned, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, and others acting on behalf of one or more of the aforementioned"; Defendants provide discovery responses on behalf of Lancium LLC and the named Defendants only. Defendants still further object to this Interrogatory to the extent it seeks information, documents, and communications protected by attorney-client privilege, work product privilege, or other privilege or immunity.

Subject to and without waiver of the foregoing objections, and based upon Defendants' investigation to date, Defendants respond as follows: "Louisiana jurisprudence imposes a duty on an injured tort victim to mitigate damages." *Jensen v. Matute*, 289 So.3d 1136 (La. Ct. App. 2020); *see also Aisole v. Dean*, 574 So.2d 1248, 1253 (La. 1991) ("Our jurisprudence has also recognized that an injured plaintiff has a duty to take reasonable steps to mitigate damages."). Here, Plaintiffs seek damages through their tort claims, but as set forth in Defendants' Ninth Affirmative Defense "[t]o the extent any damages to Plaintiffs exist, Plaintiffs have failed to mitigate such damages, as required by law." D.I. 28; *see also* D.I. 23; D.I. 13 (Eleventh Affirmative Defense). For example, in response to Defendants' Interrogatory No. 6, Plaintiffs have admitted that "Mr. Austin Storms first learned of the '433 Patent on August 17, 2020 by reading a press release dated August 14, 2020 issued by Lancium regarding its lawsuit against Layer1 pending in the District Court for the Western District of Texas." Nonetheless, despite their duty to mitigate damages, Plaintiffs waited months to bring this lawsuit until after the settlement of the "Layer1 Lawsuit" was publicly announced knowing that this delay would result in an increased damages claim. Accordingly, Plaintiffs have failed to mitigate their damages and any damages award should be reduced in an amount equal to that resulting from their failure to mitigate.

Discovery in this litigation is also in its early stages, and Defendants' investigation regarding the subject matter of this Interrogatory is ongoing. Accordingly, Defendants reserve the right to amend or supplement this response as additional information becomes available, including to the extent Plaintiffs provide additional information regarding their claims.

Dated:  October 11, 2021                        BARNES & THORNBURG LLP

                                           */s/ Chad S.C. Stover*
Chad S.C. Stover (No. 4919)
1000 N. West Street, Suite 1500
Wilmington, Delaware 19801-1050
Telephone: (302) 300-3474
E-mail: chad.stover@btaw.com

Mark C. Nelson (admitted *pro hac vice*)
2121 N. Pearl Street, Suite 700
Dallas, TX  75201
Telephone:  (214) 258-4140
E-mail:  mark.nelson@btlaw.com

Adam M. Kaufmann (admitted *pro hac vice*)
One North Wacker Drive, Suite 4400
Chicago, IL 60606
Telephone: (312) 214-8319
Email: adam.kaufmann@btlaw.com

*Attorneys for Lancium LLC, Michael T.*
*McNamara, and Raymond E. Cline Jr.*

## CERTIFICATE OF SERVICE

Please take notice that the undersigned hereby certifies that on October 11, 2021 a copy of ***Defendants' Supplemental Responses to Plaintiffs' First Set of Interrogatories Directed to All Defendants*** was served on all counsel of record by electronic mail:

Andrew C. Mayo
Ashby & Geddes
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19801
Email: amayo@ashbygeddes.com

Benjamin T. Horton
John R. Labbe
Raymond R. Ricordati III
Chelsea M. Murray
Marshall, Gerstein & Borun LLP
233 South Wacker Drive
6300 Willis Tower
Chicago, IL 60606-6357
Email: bhorton@marshallip.com
Email: jlabbe@marshallip.com
Email: rricordati@marshallip.com
Email: cmurray@marshallip.com


*/s/ Chad S.C. Stover*
Chad S.C. Stover (No. 4919)

34