IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BEARBOX LLC and AUSTIN STORMS,　　　　)
　　　　　　　　　　　　　　　　　　　　)　　**REDACTED PUBLIC VERSION**
　　　　　　　　　　　Plaintiffs,　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　　　　)　　C.A. No. 21-534-MN-CJB
　　　　　　　　　　　　　　　　　　　　)
LANCIUM LLC, MICHAEL T. MCNAMARA,　　)
and RAYMOND E. CLINE, JR.　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　Defendants.　　　　)


## LETTER TO THE HONORABLE CHRISTOPHER J. BURKE
## FROM ANDREW C. MAYO


ASHBY & GEDDES
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
amayo@ashbygeddes.com

*Attorneys for Plaintiffs*
*BearBox LLC and Austin Storms*

*Of Counsel:*

Benjamin T. Horton
John R. Labbe
Raymond R. Ricordati, III
Chelsea M. Murray
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive
6300 Willis Tower
Chicago, IL 60606-6357
(312) 474-6300


Dated:  March 22, 2022

Dear Judge Burke:

Plaintiffs BearBox and Austin Storms ("BearBox") move to compel Defendants Lancium, Michael McNamara, and Raymond Cline ("Lancium") to produce documents concerning recent investments related to Lancium's plans to build two new datacenter facilities in Texas. Specifically, BearBox seeks an order compelling Lancium to perform a reasonable search for all documents concerning valuations, transactions, investments, diligence, and current and expected revenue, costs, and profits related to Lancium's planned facilities including its plan to use its Smart Response™ software in connection with the facilities. This search should include at least the same custodians and repositories that Lancium has already searched for other documents.

## I.   Factual and procedural background

This case is about Lancium's misuse and misappropriation of BearBox's information to develop Lancium's Smart Response™ software and related processes to substantially increase the profitability of Lancium's datacenter business, including cryptocurrency mining (and to claim certain functions of the software in a patent). Cryptocurrency mining requires substantial amounts of electricity, and methods of reducing the cost of electricity are essential to profitable mining operations. Lancium's software and related methods are designed to capitalize on various opportunities in a deregulated electricity market, such as the Texas electricity grid, called ERCOT. To develop its Smart Response™ software, and to use the software in a profitable way, Lancium used, without permission, information that it received from BearBox in mid-2019.

Lancium is a startup company founded in late 2017. Beginning in mid-2019, after a meeting and other communications with Mr. Storms, Lancium began using software and methods that allowed it to more efficiently use electricity and profit from certain opportunities within the ERCOT market.  Because Lancium is a startup, its operations to date are modest. But, Lancium has big plans. It recently secured investments of about 150 million dollars to build two large-scale datacenters in Texas where it plans to use its Smart Response™ software and related methods. Lancium refuses to produce documents about these recent investments or its projections and plans for the new facilities.

## II.   Lancium should produce financial and related information about its new datacenters

BearBox RFP No. 14 requests: "All documents and communications relating to any sales, offers to sell, valuation, transactions, or other financial documents, regarding the technology and inventions claimed in the '433 Patent," and RFP No. 7 requests: "All documents and things related to any diligence done by, for, or shared with You regarding the '433 Patent, or related patents, applications, or associated materials." (Ex. A at 10, 19.)  Lancium initially objected and refused to produce *any* documents in response to Request No. 14, and agreed only to meet and confer for RFP No. 7. (*Id.* at 12, 19-20.)  Following meet-and-confer negotiations, Lancium agreed to produce limited financial information about their use of their Smart Response™ software. (Ex. D at 1.)[1]

---

[1] Although these RFPs are directed to information about the technology claimed in the '433 Patent, the parties have generally understood this to be a shorthand referring to the Lancium's use of its software and related methods. (*Id.* (noting that Lancium has produced spreadsheets reflecting

### A.    The requested information is relevant to the case

Financial information about Lancium's planned datacenter facilities is relevant to the damages analysis for this case. There is no debate that Lancium intends to utilize its Smart Response™ software and related methods in the operation of these facilities.  Accordingly, Lancium's projections and investments received for the facilities are relevant to determining the value of certain features of Lancium's Smart Response™ software and processes that it developed through its misuse and misappropriation of BearBox's information. Stated differently, without Lancium's Smart Response™ software and processes, such investments would not exist.  Lancium does not dispute that, but instead argues this case is "primarily a case about inventorship." (Ex. D at 1.) Regardless of how Lancium would describe the case, BearBox is seeking damages as a remedy for their conversion and trade secret claims, which are independent of their inventorship claims. Lancium cannot properly withhold financial information based on its own interpretation of what this case is "primarily" about. And, BearBox's requests seeking documents related to any diligence done on Lancium's intellectual property, including the '433 Patent, is independently relevant as to BearBox's correction of inventorship claims.

### B.    BearBox's requests are timely and proportional to the needs of the case

BearBox only recently learned about the existence of extensive documents surrounding Lancium's planned datacenters and investments to build those facilities. During his deposition on February 18, Defendant McNamara, Lancium's CEO, admitted that Lancium is investing millions of dollars in two new datacenters in Texas, which will be energized as early as April of this year, with significant expansions planned over the next two years. (Ex. E at 31-33.) Those facilities will rely on Lancium's Smart Response™ software including the ████████████████ and ████████████ features that are of primary importance to this case. (*Id.* at 33, 121-124.) Mr. McNamara further admitted that ████████████████████ including ████████████ and ████████████ to diligence requests created when soliciting investments in these new datacenters, Lancium's Smart Response software, and Lancium's intellectual property, which further may include documents like pitch books and other financial projections. (*Id.* at 26-28, 35-36.)

By at least January, BearBox had already requested that Lancium produce documents about the investments for its new datacenters (Ex. B at 1), and on February 21, shortly after the deposition, BearBox reiterated that request, asking specifically for the documents that Mr.

---

"revenue generated from its Smart Response software").)  That general understanding is further reflected in Lancium's November 4, 2021 letter acknowledging that BearBox sought discovery of "sales, costs, revenue, and other information relating to [Lancium's Smart Response™ software]," and Lancium's January 7, 2022 supplemental initial disclosures, in which Lancium identifies a general category of documents in its possession that it may rely upon as "documents relating to Lancium LLC's business, including its products, services, software, sales and financial information." Ex. F at 2; Ex. G at 6.

McNamara had identified, (Ex. C at 1-2). Lancium responded on March 7 by refusing to produce any additional documents. (Ex. D.) Therefore, BearBox's current requests and motion are timely.

Finally, BearBox's requests for documents are proportional to the needs of the case. Although producing information about investments, diligence, projections, and other financial information about their planned datacenters will results in an additional production of documents, Lancium has only produced a modest number of documents to date in this case (2709 documents). Even with the requested additional production ordered, the total burden on Lancium remains proportional to the needs of the case.

Respectfully,

*/s/ Andrew C. Mayo*

Andrew C. Mayo (#5207)

ACM/nlm

cc:  All counsel of record (via electronic mail)

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| BEARBOX LLC and AUSTIN STORMS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 21-534-MN |
| | ) | |
| LANCIUM LLC, MICHAEL T. MCNAMARA, and RAYMOND E. CLINE, JR., | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANTS' RESPONSES TO PLAINTIFFS' REQUESTS
FOR PRODUCTION OF DOCUMENTS AND THINGS (NOS. 1-30)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules of this Court, Defendants Lancium LLC, Michael T. McNamara, and Raymond E. Cline, Jr., (collectively, "Defendants"), by their undersigned attorneys, hereby respond to Plaintiffs BearBox, LLC and Austin Storms' (collectively, "Plaintiffs") Requests for Production of Documents and Things (Nos. 1-30) served on May 26, 2021 as follows:

**PRELIMINARY STATEMENT**

Defendants' responses to Plaintiff's first set of Requests for Production are made to the best of Defendants' present knowledge, information, and belief. Defendants' investigation of the facts are ongoing, and Defendants reserve the right to supplement or amend these responses pursuant to the Federal Rules of Civil Procedure, the local rules, and any scheduling order entered in this case. Defendants' responses are not admissions, concessions, or waivers as to the existence, relevance, materiality, foundation, or admissibility of any documents or information. Where

to the extent it seeks Defendants' confidential information or production of documents protected by any other right to privacy, confidentiality obligations, or agreement not to disclose such document or information until entry of a protective order currently being negotiated by the parties.

Subject to and without waiving the foregoing objections, Defendants will produce, after a reasonable search proportional to the needs of the case and to the extent they exist, relevant, non-privileged documents sufficient to show the conception and reduction to practice of the '433 patent.

**REQUEST FOR PRODUCTION NO. 7:**

All documents and things related to any diligence or investigation done by, for, or shared with You regarding the '433 Patent, or related patents, applications, or associated materials.

**RESPONSE:**       Defendants object to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs to the case considering the importance of discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit.   In particular, Defendants object to this Request to the extent seeks documents and things "related to any diligence or investigation … regarding the '433 Patent, or related patents, patent applications, or associated materials."   Plaintiffs have asserted claims regarding the inventorship of the '433 Patent, thus discovery concerning diligence regarding infringement or validity of the '433 Patent "or related patents, patent applications, or associated materials" is not likely to lead to the discovery of relevant, admissible evidence. Defendants further object to this Request

confidentiality obligations, or agreement not to disclose such document or information until entry of a protective order currently being negotiated by the parties.

Subject to and without waiver of the foregoing objections Defendants offer to meet and confer with Plaintiffs regarding this Request.

## REQUEST FOR PRODUCTION NO. 8:

Documents sufficient to identify all persons involved with the prosecution of the '433 Patent, any related patents, or related applications.

**RESPONSE**:      Defendants object to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs to the case considering the importance of discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit.   In particular, Defendants object to this Request as seeking documents sufficient to identify any persons involved with the prosecution of "related patents, or related applications."  The terms "related patents" and "related applications" are also vague and ambiguous.  For example, should "related patents and related applications" be interpreted to mean patents having the same specification, patents claiming priority from the application that led to the '433 patent, or patents and applications related in some other way (*e.g.*, involving similar technology and, if so, how similar). Defendants further object to this Request to the extent the materials are publicly available (*e.g.*, the file history of the '433 patent) and thus the burden to obtain the information is substantially the same for Plaintiffs and Defendants.  Defendants still further object to this Request to the extent it seeks documents and communications protected by attorney-client privilege, work product privilege, or other privilege or

extent they exist, relevant, non-privileged documents relating to the ideas that led to the '433 patent and the development of those ideas.

**REQUEST FOR PRODUCTION NO. 14:**

All documents and communications relating to any sales, offers to sell, valuation, transactions, or other financial documents, regarding the technology and inventions claimed in the '433 Patent.

**RESPONSE:**        Defendants object to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs to the case considering the importance of discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Plaintiffs' core allegations relate to inventorship.  Plaintiffs other allegations (*e.g.*, conversion and unjust enrichment) depend upon its inventorship claim.  None of the requested categories of documents in this Request are reasonably calculated to lead to the discovery of admissible evidence with respect to Plaintiffs' inventorship allegations. As explained in the parties' June 24, 2021 letter to the Court regarding scheduling issues (D.I. 27), Defendants will be moving to dismiss Plaintiffs' state law claims shortly as they are preempted and suffer other legal deficiencies.   As such, Defendants object to producing documents relating to this Request at this time because the Request is premature. Defendants further object to this Request as seeking "all" documents and communications "relating to" the requested topic because this is not proportional to the needs of the case and it is unduly burdensome, if even possible, to locate, collect, and review every document within scope of this Request. Additionally, the "technology and inventions claimed in the '433 Patent"

calls for a legal conclusion regarding the scope of the claims and the Court has not yet conducted claim construction. Defendants also object to this Request to the extent it seeks documents protected by the attorney-client, work product, and/or other privileges and immunities. Defendants further object to this Request to the extent it seeks Defendants' confidential information or production of documents protected by any other right to privacy, confidentiality obligations, or agreement not to disclose such document or information until entry of a protective order currently being negotiated by the parties.

Subject to and without waiving the foregoing objections, Defendants stand by their objections and will not produce documents at this time.

## REQUEST FOR PRODUCTION NO. 15:

All documents and things relating to the ownership, title, transfer, assignment, licensing, or any other transactions (including offers) of the '433 Patent in whole or part, alone or in conjunction with any other thing of value, including patents or other intellectual property, including, but not limited to, all agreements, draft agreements, and correspondence relating to the foregoing.

**RESPONSE:**      Defendants object to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs to the case considering the importance of discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Plaintiffs' core allegations relate to inventorship.  Plaintiffs other allegations (*e.g.*, conversion and unjust enrichment) depend upon its inventorship claim.  None of the requested categories of documents in this Request are reasonably calculated to lead to the discovery of admissible evidence with respect to Plaintiffs' inventorship allegations.

DMS 20250909.2

Dated:  June 25, 2021

BARNES & THORNBURG LLP

 /s/ Chad S.C. Stover
Chad S.C. Stover (No. 4919)
1000 N. West Street, Suite 1500
Wilmington, Delaware 19801-1050
Telephone: (302) 300-3474
E-mail: chad.stover@btaw.com

Mark C. Nelson (admitted *pro hac vice*)
2121 N. Pearl Street, Suite 700
Dallas, TX  75201
Tel:  (214) 258-4140
E-mail:  mark.nelson@btlaw.com

*Attorneys for Lancium LLC, Michael T.*
*McNamara, and Raymond E. Cline Jr.*

44

# EXHIBIT B



Marshall, Gerstein & Borun LLP
233 South Wacker Drive
6300 Willis Tower
Chicago, IL 60606-6357 USA

T: +1.312.474.6300
marshallip.com

Benjamin T. Horton
+1.312.474.9575
bhorton@marshallip.com

January 14, 2022
*Via E-mail*

Adam M. Kaufmann
Barnes & Thornburg LLP
One N. Wacker Dr., Suite 4400
Chicago, IL 60606
E: adam.kaufmann@btlaw.com

      Re:    *Bearbox LLC and Austin Storms v. Lancium et al.*
                  Case No.: 1:21-cv-00534-MN-CJB (D. DE)

Dear Adam:

I write regarding several issues with Defendants' document production and discovery responses, as well as a number of related matters. To begin, Defendants have yet to fully respond to issues previously raised by Plaintiffs. *See, e.g.*, Plaintiffs' November 13, 2021 Letter to Kaufmann. To the extent Defendants have not fully responded to discovery issues previously raised by Plaintiffs, please promptly respond.

**<u>Defendants' Document Production</u>**

First, with respect to Defendants' document production, Defendants have not produced any documents relating to the transactions described in Lancium's November 23, 2021 press release titled "Lancium Closes $150M In Financing To Advance Ambitious Growth Strategy," available at *<https://lancium.com/press/lancium-closes-financing-to-advance-growth-strategy/>*. As Defendant McNamara states in the press release, Lancium has received financing from "a broad range of investors" including, for example, Hanwha Solutions, Novawulf, and SBI Holdings. To the extent these transactions and events involve "the essential function" of Lancium's Smart Response software, or the '433 patent or related patents and applications, any documents related to these transactions and events are responsive to Plaintiffs' Requests for Production (for example, at least Request Nos. 14, 35, 40-41). Please confirm that such documents will be produced as soon as possible.

Similarly, Defendants have not produced documents relating to Lancium's "$2.4 billion project to Abilene," as discussed in a December 21, 2021 news article titled "Tech company behind 'largest project in Abilene and Taylor County history' unveiled" and available at *< https://www.bigcountryhomepage.com/news/abilene-news/tech-company-behind-largest-project-in-abilene-and-taylor-county-history-unveiled/>*. Per the news article, as of December 2021,

Adam M. Kaufmann
January 14, 2022
Page 2

Lancium was "in final negotiations for" a project which would require Lancium to "build one of [their] flagship Clean Campuses in Albilene" and is "expected to solidify the region as a major provider of renewable energy, while simultaneously hosting Bitcoin mining and other energy-intensive applications." To the extent these transactions and events involve Lancium's Smart Response software, or the '433 patent and related patents and applications, any documents related to this project and agreement are thus responsive to at least Plaintiffs' Request for Production Nos. 40-41. Please confirm that any such documents will be produced as soon as possible.

Defendants produced some communications with MP2. *See, e.g.*, LANCIUM00021600. However, the recent document production by MP2 in response to Plaintiffs' subpoena includes documents that should have been produced by Defendants, but were not. For example, the document marked MP20086 appears to be an email exchange between MP2 and Lancium from February 2020. This email chain is thus responsive to at least Plaintiffs' Request for Production No. 32, which seeks the production of communications and documents exchanged with MP2. However, this email chain does not appear to be part of Defendants' document production. Please confirm that all communications with MP2 have been produced or will be produced as soon as possible. Additionally, as discussed in Plaintiffs' November 15, 2021 letter to Defendants, LANCIUM00021600 references "MP2 statements," which do not appear in Defendants' production. Please confirm Defendants will produce those statements as soon as possible.

Defendants also produced some limited communications with Strategic Power, SBI, and ERCOT. *See, e.g.*, LANCIUM00024146, LANCIUM00026299. These, however, do not appear to be the only communications between Lancium and Strategic Power, SBI, and/or ERCOT. As a reminder, communications with Strategic Power, SBI, and/or ERCOT are responsive to at least Plaintiffs' Requests for Production Nos. 34-35 and 39. Please confirm that all communications with Strategic Power, SBI, and ERCOT have been produced.

Defendants produced some limited documents relating to Whinstone and Riot Blockchain. *See, e.g.*, LANCIUM00019951 (communication between Defendants and Riot Blockchain) and LANCIUM00035518 (references an "Anderson trip in July 2020 re: Whinstone"). These, however, do not appear to be the only relevant documents and communications between Lancium and Whinstone and/or Riot Blockchain. *See, e.g.*, Plaintiffs' Request for Production No. 2. Please confirm that all relevant documents and communications with Whinstone and Riot Blockchain have been produced or will be produced.

Defendants also produced some limited communications between Lancium and Compute North, the first of which is dated February 26, 2020, LANCOUM00021617. As previously discussed in Plaintiffs' November 15, 2021 letter to Defendants, this document does not appear to be the first, or only, communication between Lancium and Compute North regarding Smart Response or the inventions claimed in the '433 patent. Any additional communications and documents exchanged with Compute North are responsive to at least Plaintiffs' Request for

Adam M. Kaufmann
January 14, 2022
Page 3

Production No. 37. Please confirm that all communication with Compute North have been produced or will be produced as soon as possible.

Defendants further produced communications from Defendants' private email accounts from which Defendants' business was conducted. For example, Defendants produced a series of communications between Defendant McNamara and Glidepath (*see, e.g.*, LANCIUM00030262), from which it appears that Defendant McNamara is using mcnamaram@hotmail.com to communicate regarding Defendants' business. Per your November 17, 2021 letter, Defendants contend that Defendant McNamara's "hotmail" email address "appears as a result of metadata" and the document is actually a text message chain. While Plaintiffs appreciate Defendants confirming that Defendants' text messages have been reviewed and produced, please confirm Defendants have also searched Defendant McNamara and Cline's gmail and/or Hotmail account(s), and any other relevant email account(s) from which Lancium business was conducted.

With respect to Defendants' response to Request for Production No. 31, which seeks all documents existing prior to October 10, 2019 that reflect the "intellectual property" as mentioned and/or described in LANCIUM00021608, please confirm that no documents are being withheld on the basis of Defendants' objections.

Similarly, with respect to Defendants' objections to Request for Production Nos. 32-38 that communications after December 4, 2019 are not relevant, we disagree. While Lancium's theory is that inventorship is proper and was proper as of December 4, 2019, Defendants may not limit discovery according to their theories of the case. Some document requests ask for the production of documents related to things that transpired after December 4, 2019, or are otherwise not so temporally limited. For example, Request for Production No. 39 seeks communications with ERCOT regarding Lancium's operation as a controllable load resource ("CLR"), but Lancium wasn't approved as a CLR until 2020, and according at least to some public statements, Lancium considers its CLR status in connection with the inventions claimed in the '433 patent.[1] Please confirm that no documents responsive to Plaintiffs' Requests for Production Nos. 32-38 are being held based on Defendants' self-imposed December 4, 2019 cut-off date.

Generally speaking, with respect to Defendants' responses to Plaintiffs' Requests for Production, to the extent that any response qualifies the documents to be produced be limited to the '433 Patent, please confirm that no documents are being withheld on that basis. More specifically, the Requests for Production define the '433 Patent as including related patents and further seeks documents and communications relevant to any related patents. Accordingly, withholding documents on this basis is improper.

---

[1] https://lancium.com/press/lancium-files-patent-infringement-lawsuit-against-layer1/

Adam M. Kaufmann
January 14, 2022
Page 4

**Defendants' Interrogatory Responses**

In addition to the issues with Defendants' document production and responses, we also note several deficiencies in Defendants' Interrogatory Responses.

Interrogatory No. 7 asks Defendants to describe any valuations or investigations done regarding Lancium's Smart Response software, including the essential function covered by the '433 Patent and/or any patents or applications related to the '433 Patent. However, Defendants' response is limited to the '433 Patent and does not contemplate related patents.

With respect to Interrogatory No. 8, Defendants' response references agreements with Layer1 and MP2, as well as a joint venture agreement with Compute North. Please confirm that all such agreements have been produced to Plaintiffs, including agreements with Riot Blockchain and/or Whinstone.

Interrogatory No. 9 seeks information relating to the relationship between Lancium and MP2. Defendants' response incorporates their response to Interrogatory No. 3. However, Defendants' response to Interrogatory No. 3 does not provide "[a] complete response [] include[ing] names, dates, locations, and descriptions of meetings and communications with MP2, drafts of agreements and communications leading up to those agreements." Please supplement your response accordingly. Additionally, while Plaintiffs appreciate that Defendants have "produced agreements with MP2 dated prior to December 4, 2019," please confirm that there are no additional agreements and/or communications with MP2 after December 4, 2019.

With respect to Interrogatory No. 10, Defendants point to LANCIUM00035517 to identify the revenue received from its customers relating to the functionality of the '433 Patent, as well as the settlement agreement from the Lancium v. Layer1 litigation (see, e.g., LANCIUM00016702). Please confirm that these documents identify all of Lancium's revenue streams relating to the ''433 Patent. Otherwise, please supplement your response accordingly.

In response to Interrogatory No. 11, Defendants state that information regarding the differences between LR and CLR are the subject of expert testimony and the terms are not used in the '433 Patent. Plaintiffs disagree. First, the terms are used in prior art cited on the face of the '433 Patent. *See, e.g.*, Wilson, Joseph Nathanael, "A Utility-Scale Deployment Project of Behind-the-Meter Energy Storage for Use in Ancillary Services, Energy Resiliency, Grid Infrastructure Investment Deferment, and Demand-Response Integration," Portland State University, 2016. Additionally, Defendants are familiar with the terms as evidenced by their document production. *See, e.g.*, LANCIUM00031222, LANCIUM00021608. Defendants have also used these terms in public statements.[2]

Additionally, Interrogatory No. 14 asks Defendants to describe the contributions of each of the named inventors of the '433 Patent. Defendants' response refers only to their response to

---

[2] https://lancium.com/press/lancium-files-patent-infringement-lawsuit-against-layer1/; *see also* Case No. 6:20-cv-00739, Document 1-8.

Adam M. Kaufmann
January 14, 2022
Page 5


Interrogatory No. 3. However, that response does not detail individual inventor contributions. Instead, each statement referring to the alleged contributions of the inventors refers to "McNamara and Cline" collectively, as opposed to individually. This is not a sufficient response to Interrogatory No. 14. Please supplement your response accordingly.

Sincerely,

Benjamin T. Horton

cc:     Counsel of Record – via email

# EXHIBIT C



Marshall, Gerstein & Borun LLP
233 South Wacker Drive
6300 Willis Tower
Chicago, IL 60606-6357 USA

T: +1.312.474.6300
marshallip.com

Benjamin T. Horton
+1.312.474.9575
bhorton@marshallip.com

February 21, 2022

*Via E-mail*

Mark C. Nelson
Barnes & Thornburg LLP
2121 N. Pearl St., Suite 700
Dallas, TX 75201
E: mark.nelson@btlaw.com

> Re:   *Bearbox LLC and Austin Storms v. Lancium et al.*
>        Case No.: 1:21-cv-00534-MN-CJB (D. DE)

Dear Mark:

We write to follow-up on our requests for responsive documents that have not been produced, many of which have now been testified to by Mr. McNamara during his deposition on February 18, 2022. We also write to ask that defendants supplement their interrogatory responses to acknowledge information in the record that was somehow previously omitted.

First, we reiterate our request for documents related to the $150 million in investments made for Lancium's imminent datacenter expansion projects in Abilene and Fort Stockton. We specifically requested these documents in my letter of January 14, 2022, more than one month before Mr. McNamara's deposition. During his deposition, Mr. McNamara confirmed that the Abilene and Fort Stockton datacenters will operate as Controllable Load Resources (CLRs), covered by claims of the '433 patent, subject to control by Lancium's Smart Response software, and energized in a matter of weeks. Mr. McNamara further confirmed that at least the Abilene datacenter will further have fixed price energy hedges in place, and the same may be true of Fort Stockton. Further, Mr. McNamara mentioned imminent agreements with Lancium's Abilene and Fort Stockton datacenter customers, including Atlas Mining, CleanSpark, Marathon, "and a number of other customers."

Mr. McNamara confirmed the existence of "many documents" related to these investments and datacenter builds, including pitch books, financial models, and diligence reports, including documents and communications with investors such as Q Cells, Shell Ventures, ArcLight Capital, and others. Mr. McNamara further confirmed that several Lancium founders, employees, and directors have individually invested millions of dollars in these builds, including each of the witnesses Lancium has identified in its Rule 26(a)(1) disclosures, for example,

Mark C. Nelson
February 21, 2022
Page 2

Mr. Gupta, Mr. McNamara, Dr. Cline, Mr. Connell, and Ms. Arndt. Please confirm that all of these documents will be produced, and a date certain for their production.

Second, we ask that Lancium produce all agreements, draft agreements, negotiations, correspondence, and the like related to Lancium's relationship with Calpine, including Lancium's fixed price energy hedge arrangements with Calpine that began in 2019, and all communications regarding those arrangements. To the extent Lancium now has fixed price energy hedge arrangements with other QSEs, please also produce all documentation surrounding those arrangements.

Once produced, we will evaluate whether and to what extent we will need to depose Mr. McNamara on these additional documents.

In addition to producing responsive documents, Lancium must also supplement its interrogatory responses, which somehow completely failed to acknowledge the Abilene and Fort Stockton datacenters, and related investments.  At a minimum, Lancium must supplement its responses to Interrogatories 7, 8, 9, 10, 11, 13, and 15.

If defendants refuse to supplement these interrogatories, plaintiffs will seek intervention from the Court, and/or make all efforts to limit or preclude defendants' evidence and arguments to be used at trial.

We look forward to discussing these issues with you further on a meet a confer teleconference this week.

Sincerely,

Benjamin T. Horton

cc:     Counsel of Record – via email

# EXHIBIT D



BARNES &
THORNBURG LLP

2121 N. Pearl Street, Suite 700
Dallas, TX 75201 U.S.A.
(214) 258-4200
Fax: (214) 258-4199

www.btlaw.com

Mark C. Nelson
Partner
(214) 258-4140
mark_nelson@btlaw.com

March 7, 2022

**Via Email**
Benjamin T. Horton
Marshall, Gerstein & Borum LLP
233 South Wacker Drive
6300 Willis Tower
Chicago, IL  60606
bhorton@marshallip.com

Re:    *Bearbox LLC, et al., v. Lancium LLC, et al.,* C.A. No. 21-534-MN

Dear Ben:

This letter responds to your February 21, 2022 letter regarding discovery issues.  Your
letter requests documents related to what you characterize as (i) "investments made for
Lancium's imminent datacenter expansion projects in Abilene and Fort Stockton,"  (ii)
"agreements, draft agreements, negotiations, correspondence and the like related to Lancium's
relationship with Calpine," and (iii) documentation relating to "fixed price energy hedge
arrangement with other QSEs."  You also request supplementation of Interrogatory Nos. 7-11,
13, and 15.  We respond below to each of these issues.

**Documents Relating to Investments in Lancium.**  You characterize the Abilene and
Fort Stockton projects as "imminent," but the current pictures of those projects provided during
Mr. Cline's deposition show that those projects are not built yet.  Alleged imminence
notwithstanding, this case has been and remains primarily a case about inventorship.  Previously,
the parties meet and conferred (repeatedly) regarding the scope of financial documents relevant
to this case.  In response to those meet and confers, Defendants produced spreadsheets regarding
its financial data, including revenue generated from its Smart Response software being used by
its customers operating as Controllable Load Resources.  Defendants also produced a corporate
witness to testify about those documents.  That other documents may exist relating to company
financials and/or investments in the company based on the totality of the company's business
and/or its prospective business does not make them relevant to this case.  Nor does it justify the
burden of producing such documents, particularly after the close of fact discovery, given their, at
best, marginal relevance to the inventorship issues in this case.  We, therefore, reiterate the
position we took during the meet and confers several months ago, we do not believe these
documents are relevant and, moreover, the burden to produce such documents significantly
outweighs any potential benefit.

Benjamin T. Horton
March 7, 2022
Page 2

**Calpine-Related Documents.**  During Mr. McNamara's deposition, you questioned him extensively on an addendum to the Calpine agreement.  You also requested that Lancium produce the original Calpine agreement, which we promptly did.  Additionally, copies of that agreement were made available available during Mr. Cline's individual and Lancium's 30(b)(6) deposition.  We also produced communications relating the Calpine agreement, including the addendum.  We have also searched extensively for all documents mentioning BearBox and/or Mr. Storms and produced copies of same.  Given the production of the final Capline agreement, its addendum, communications relating to same, and all documents mentioning BearBox and/or Mr. Storms, we do not see that producing any "draft agreements, negotiations, correspondence, and the like" with Calpine that may exist would be relevant to the issues in this case and, moreover, the potential benefit of any such documents would be significantly outweighed by the burden to produce them.

**Other Agreements.**  Your letter also requests what you refer to as "fixed price energy hedge agreements with other QSEs."  To the extent we even understand your terminology, we do not understand the relevance of such agreements.  That said, to the extent we have signed agreements with other companies that will serve as QSEs for either the Abilene or Fort Stockton datacenters, we will produce those signed agreements.  We do not, however, agree to provide Mr. McNamara or Lancium for additional deposition time based on such a production because the terms of agreements (to the extent signed agreement exist) will be stated therein, and because you already deposed Mr. McNamara on the agreements.

**Supplementation of Interrogatories**.  We are evaluating whether we need to supplement our responses to interrogatories under the FRCP.  We expect to complete that evaluation by mid-week and, if we conclude supplementation is warranted will do so promptly.

Best regards,

Mark Nelson

cc:  Counsel of Record (via email)

**BARNES & THORNBURG** LLP

# EXHIBIT E

# REDACTED IN ITS ENTIRETY

# EXHIBIT F

# BARNES & THORNBURG LLP

One North Wacker Drive, Suite 4400
Chicago, IL 60606-2833 U.S.A.
(312) 357-1313
Fax (312) 759-5646

www.btlaw.com

Adam Kaufmann
Partner
(312) 214-8319
adam.kaufmann@btlaw.com

November 4, 2021

*Sent via email*

Benjamin T. Horton
Marshall, Gerstein & Borun LLP
233 South Wacker Drive
6300 Willis Tower
Chicago, IL 60606-6357
312.474.9575
bhorton@marshallip.com

  RE:  *BearBox LLC et al. v. Lancium LLC, et al.*, Case No. 1:21-cv-534 (D. Del.)

Dear Ben:

  This letter is the second letter following up on last week's meet and confer. In addition to committing to supplementing certain interrogatories (discussed in my November 3 letter), Plaintiffs also made certain representations regarding their responses to Defendants' Requests for Production.

- RFP Nos. 2-5 – You indicated Plaintiffs were not withholding any documents based on objections, such as reaching agreement on an ESI protocol, but that Plaintiffs would look again for responsive documents.  Please provide a date certain on which Plaintiffs will produce any additional documents located.

- RFP No. 6 – You represented that Storms is the owner of BearBox.  You also committed to produce formation documents and/or other documents indicating such ownership.  Please provide a date certain for such production.

- RFP Nos. 7 and 8 – You represented that Plaintiffs' production was complete.

- RFP Nos. 9-11 – You indicated you were not withholding any documents based on reaching agreement on an ESI protocol as set forth in your objections.  You committed to looking for additional documents.

  The parties also discussed whether Plaintiffs had requested documents from Great American Mining that were in Mr. Storms and/or BearBox's possession, custody, or control (*e.g.*, emails authored or received by Mr. Storms at a Great American Mining email address).  You indicated you were not aware whether Mr. Storms had a Great American Mining email address.

Benjamin T. Horton
November 4, 2021
Page 2

We requested that you confirm whether such an address (or address(es)) exist and, if so, search those addresses for responsive documents. To the extent Mr. Storms utilizes a Great American Mining computer and/or network, we request those locations be searched as well.

The parties also discussed Defendants' supplementation of their discovery. With respect to document production, Defendants committed to supplementing their production of documents relating to Defendants' conception and reduction of the inventions claimed in the '433 patent. Defendants indicated they would try and do so on or before November 5, 2021. Defendants are working diligently toward meeting that date. Defendants also indicated they would supplement their response to Plaintiffs Interrogatory No. 3 relating to conception and reduction to practice.

Defendants' responses to damages-related discovery were discussed. Per Plaintiffs' August 18, 2021 agreement, Defendants need not provide damages-related discovery (other than the Layer1 agreement and Lancium's standard agreement for Smart Response™) "until the Court rules of the pending motion [to dismiss]." *See* 8/18/21 Horton email. When asked why that agreement should no longer control, you indicated that the approaching discovery cut-off required further damages-related document production. Defendants disagree. The Court's schedule was in place when the agreement was made. That it would take the Court time to rule on Defendants' Motion was foreseeable at the time the agreement was made.

Further, as discussed, Plaintiffs have not sufficiently set forth their damages theory (or theories) as required. And while you attempted to do so during our discussion, in large part your theory seems to be that Plaintiffs' are entitled to all of the money that Defendants made from the '433 patent. Such a contention, however, is not a cognizable legal theory. Plaintiffs' Initial Disclosures, similarly, fail to provide Plaintiffs' damages theories in any meaningful detail.

You then indicated the types of damages-related documents that Plaintiffs are seeking, including, a copy of the Layer1 settlement agreement (a copy of which has been produced), any licenses to the '433 patent, licenses to the Smart Response™ software, and sales, cost, revenue, and other information relating to that software. We are considering your request in light of the case schedule, but do not commit to providing such information at this time. We suggest a further discussion on this issue next week.

Finally, the parties discussed Defendants supplementing their response to Plaintiffs' Interrogatory No. 1, which seeks, among other things, element-by-element contentions regarding whether the Smart Response™ software practices claims of the '433 patent. We explained that in their first supplemental response to Interrogatory No. 1, Defendants stipulated that the Smart Response™ software, when installed on an appropriate system, can practice the '433 patent, and that, given such a stipulation, the remainder of the Interrogatory is not relevant, or at a minimum, its benefit is greatly outweighed by its burden. You disagreed, maintaining that the specific contentions relating to the software (even if it was developed after the patent's filing date) are somehow relevant. We did not understand your theory during our discussion and do not understand it now. We suggest the parties continue their discussion on this issue.

**BARNES & THORNBURG** LLP

Benjamin T. Horton
November 4, 2021
Page 3


We are available to continue the meet and confer on 11/8/21 (afternoon) or 11/9/21.  Please let us know your availability.


Sincerely,


Adam Kaufmann


CC: All Counsel of Record (via email)


**BARNES & THORNBURG** LLP

# EXHIBIT G

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BEARBOX LLC and AUSTIN STORMS, | ) ) ) | |
| *Plaintiffs*, | ) ) | |
| v. | ) ) ) | CAUSE NO.: 21-534-MN |
| LANCIUM LLC, MICHAEL T. MCNAMARA, and RAYMOND E. CLINE, JR., | ) ) ) ) | |
| *Defendants*. | ) ) | |

## DEFENDANTS' SUPPLEMENTAL INITIAL DISCLOSURES

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure and the Court's Scheduling Order, D.I. 35, Defendants Lancium LLC, Michael T. McNamara, and Raymond E. Cline, Jr. ("Defendants") provide the following supplemental initial disclosures based on their reasonable investigation to date.

Defendants' investigation in this action is ongoing and Defendants reserve the right to amend, supplement, or otherwise modify these disclosures as additional evidence and information become available in accordance with the Federal Rules of Civil Procedure, the local rules of this Court, and any orders or guidance issued by the Court. Similarly, by making these initial disclosures, Defendants do not represent that they are identifying every document, tangible thing, or witness possibly relevant to this lawsuit.

Defendants' initial disclosures are made without waiving in this action or any other action or proceeding: (1) the right to object to the admissibility or

Pursuant to Rule 26(a)(l)(A)(ii) of the Federal Rules of Civil Procedure, and reserving all objections and privileges regarding production and discovery of said documents, ESI, and tangible things, Defendants identify the following categories of documents, which Defendants may rely upon in support of their claims and defenses in this action:

| Category of Document | Location(s) |
|---|---|
| Non-privileged written and/or electronic correspondence and other documentation regarding the '433 Patent, including its prosecution at the United States Patent and Trademark Office. | Lancium LLC; Barnes & Thornburg LLP; McDonnell Boehnen Hulbert & Berghoff LLP; and/or public sources. |
| Non-privileged documentation prepared and/or maintained by Defendants related to the technology covered by the '433 Patent, including its conception, reduction to practice, and development. | Lancium LLC; Barnes & Thornburg LLP; McDonnell Boehnen Hulbert & Berghoff LLP; and/or public sources. |
| Any documents introduced in any deposition taken by the parties in this case that Defendants deem to be relevant. | Lancium LLC; Plaintiffs |
| Non-privileged documentation relating to Lancium LLC's business, including its products, services, software, sales and financial information. | Lancium LLC |
| Communications between Defendants and Plaintiffs. | Lancium LLC; Plaintiffs |
| Any documents identified by Plaintiffs in their Initial Disclosures that Defendants deem to be relevant. | Plaintiffs; Lancium LLC; third parties; and/or public sources |
| Expert materials, analyses, and document that may be produced in connection with this litigation. | Barnes & Thornburg LLP |

DATED:  January 7, 2022                BARNES & THORNBURG LLP

                                        */s/ Chad S.C. Stover*
                                        Chad S.C. Stover (No. 4919)
                                        1000 N. West Street, Suite 1500
                                        Wilmington, Delaware 19801-1050
                                        Telephone: (302) 300-3474
                                        E-mail: chad.stover@btaw.com

                                        Mark C. Nelson (admitted *pro hac vice*)
                                        2121 N. Pearl Street, Suite 700
                                        Dallas, TX  75201
                                        Tel:  (214) 258-4140
                                        E-mail:  mark.nelson@btlaw.com

                                        Adam M. Kaufmann (admitted *pro hac vice*)
                                        Dana Amato Sarros (admitted *pro hac vice*)
                                        One North Wacker Drive, Suite 4400
                                        Chicago, IL 60606
                                        Telephone: (312) 357-1313
                                        Email:  adam.kaufmann@btlaw.com
                                                dana.sarros@btlaw.com

                                        *Attorneys for Lancium LLC, Michael T.*
                                        *McNamara, and Raymond E. Cline Jr.*

## <u>CERTIFICATE OF SERVICE</u>

On January 7, 2022, I caused a copy of the foregoing document to be served on the following counsel of record by electronic mail.

| | |
|---|---|
| Andrew C. Mayo | Benjamin T. Horton |
| Ashby & Geddes | John R. Labbe |
| 500 Delaware Avenue, 8th Floor | Raymond R. Ricordati III |
| P.O. Box 1150 | Chelsea M. Murray |
| Wilmington, DE 19801 | Marshall, Gerstein & Borun LLP |
| Email: amayo@ashbygeddes.com | 233 South Wacker Drive |
| | 6300 Willis Tower |
| | Chicago, IL 60606-6357 |
| | Email: bhorton@marshallip.com |
| | Email: jlabbe@marshallip.com |
| | Email: rricordati@marshallip.com |
| | Email: cmurray@marshallip.com |

 */s/ Chad S.C. Stover*
Chad S.C. Stover (No. 4919)

*Attorney for Lancium LLC, Michael T. McNamara, and Raymond E. Cline Jr.*

9