# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BEARBOX LLC and AUSTIN STORMS, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) C.A. No. 21-534-MN-CJB |
| | ) |
| LANCIUM LLC, MICHAEL T. | ) **REDACTED VERSION** |
| MCNAMARA, and RAYMOND E. CLINE, | ) |
| JR. | ) |
| | ) |
| Defendants. | ) |

### LETTER TO THE HONORABLE CHRISTOPHER J. BURKE IN RESPONSE TO PLAINTIFFS' MOTION TO COMPEL

Dated: March 29, 2022
**Redacted Version filed on April 5, 2022**

BARNES & THORNBURG LLP

Chad S.C. Stover (No. 4919)
1000 N. West Street, Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 300-3474
E-mail: chad.stover@btlaw.com

Mark C. Nelson (*pro hac vice* admitted)
2121 N. Pearl Street, Suite 700
Dallas, TX 75201
Tel: (214) 258-4140
E-mail: mark.nelson@btlaw.com

Darrick J. Hooker (*pro hac vice* pending)
Adam M. Kaufmann (admitted *pro hac vice*)
Dana Amato Sarros (admitted *pro hac vice*)
One North Wacker Drive, Suite 4400
Chicago, IL 60606
Tel: (312) 214-8319
E-mail: darrick.hooker@btlaw.com
E-mail: adam.kaufmann@btlaw.com
E-mail: dana.sarros@btlaw.com

*Attorneys for Defendants Lancium LLC, Michael T. McNamara, and Raymond E. Cline Jr.*

Dear Judge Burke:

 Lancium respectfully submits this response in Opposition to Plaintiffs' Motion to Compel production of "documents concerning recent investments related to Lancium's plans to build two new datacenter facilities in Texas." D.I. 124. These documents are not relevant to any claim or defense in this case, including damages. Plaintiffs have not and cannot articulate a cognizable damages theory that relies upon such speculative information as Lancium's future plans, its overall investments or capital raised, or its nascent construction projects.

 As an initial matter, BearBox mischaracterizes the parties' agreement regarding the scope of damages discovery. BearBox states that, after a meet-and-confer, "Lancium agreed" to produce a limited amount of damages-related discovery. Motion to Compel, at p. 2. Per BearBox's counsel's August 18, 2021 email, however, **BearBox agreed** to limited damages-related discovery until the Court ruled on Lancium's initial motion to dismiss (D.I. 32), which was granted.[1]

 BearBox admits that "[b]ecause Lancium is a startup, its operations to date are modest." Motion to Compel, at p. 1. In an effort to artificially inflate its damages claims against Lancium, however, BearBox insists that it is entitled to documentation regarding Lancium's "recently secured investments of about 150 million dollars to build two large-scale datacenters in Texas where it plans to use its Smart Response™ software and related methods." *Id.* Bearbox is not entitled to such documentation because it is relevant to the issues in this case. First, these datacenters are still being built. *See* Exhibit 1 (recent photographs of the under-construction datacenter facilities). As such, any attempt to rely on documentation regarding Lancium's unbuilt facilities cannot support a claim for damages in this matter. Lancium has no customers, provides no services, and earns no revenue from these facilities.

 Although BearBox has not explained how the documents it seeks are relevant to damages, any attempt to rely on potential future revenue or profit from these datacenters cannot be used to support a damages claim. The Fifth Circuit's decision in *Carbo Ceramics, Inc. v. Keefe* is instructive on this point. 166 F. App'x 714, 724 (5th Cir. 2006). In *Carbo*, the court affirmed summary judgment dismissing a patent infringement and trade secret misappropriation action because the damages claimed were predicated upon "speculative revenues and operating profit from an unbuilt plant." *Id.* The court explained that, because the plaintiff "has neither built a plant nor produced a product," then "any damage model based on speculative revenues and operating profit from an unbuilt plant, is in and of itself, inherently speculative." *Id. See also Brightview Grp., LP v. Teeters*, No. CV SAG-19-2774, 2021 WL 2627960, at *6 (D. Md. Feb. 8, 2021) ("Because Monarch has never operated a senior living community, or even begun constructing one . . . [t]he proffered damages theory use[ing] projected revenues and profits from defendant's own nascent business plan" is "simply too speculative"). This is identical to the scenario here. But even if potential future revenues were relevant—which they are not—Lancium has already provided discovery on its planned pricing structure and the associated potential revenues for these datacenters.

---

[1] BearBox has since repleaded two of these counts and added two new counts. Lancium has moved once again to dismiss BearBox's repleaded conversion and unjust enrichment claims, which continue to be legally improper, and Lancium has moved to strike BearBox's newly added trade secret misappropriation claims, which are untimely and unduly prejudicial.

1

██████████████████████████████████ Thus, no additional discovery is needed on this issue and the burden imposed by BearBox's requests are not proportional to the needs of the case.

Furthermore, to the extent BearBox attempts to rely on valuations of Lancium or its technology or investments in Lancium to support a damages claim, this too would be improper as irrelevant and does not justify the discovery it seeks. *Waymo LLC v. Uber Techs., Inc.* is instructive in this regard. In that case, the court excluded evidence of the plaintiff's damages theory that was based upon the defendant's own investments in its technology. No. C 17-00939 WHA, 2017 WL 5148390, at *4 (N.D. Cal. Nov. 6, 2017). Specifically, the plaintiff attempted to argue that the defendant's investments and expected profits resulting from its new technology (allegedly based on the plaintiff's trade secrets) could form the basis of a damages calculation, and those investments and expected profits could be shown through the defendant's internal documents. *Id.* at *2. The court disagreed, stating that "[t]his is a fantastic leap." *Id.*, at *2-3. The court further explained that such internal information "would actually contradict [the plaintiff's] conclusion because it estimated incremental future profits attributable to the *entire Ottomotto acquisition*, including *legitimate* assets like an entire team of engineers with knowledge, skill, and experience in a highly specialized and in-demand field, as well as *legitimate* anticipated benefits . . ." *Id.* at *4 (emphasis in original).

The same is true here—BearBox argues explicitly that "Lancium's projections and investments received for the facilities are relevant to determining the value of certain features of Lancium's Smart Response™ software and processes that it developed through its misuse and misappropriation of BearBox's information." Motion to Compel, at p. 2. But Lancium's "projections and investments" for these unbuilt facilities necessarily include assets unrelated to Lancium's Smart Response™ software and reflect Lancium's value outside of its Smart Response™ technology, such as its highly experienced team and extensive patent portfolio. *See* David S. Almeling, Walter Bratic, Monte Cooper, Alan Cox, P. Anthony Sammi, *Disputed Issues in Awarding Unjust Enrichment Damages in Trade Secret Cases*, 19 Sedona Conf. J. 667, 693 (2018)[2] ("In situations in which the plaintiff seeks recovery for the increased value that a company has achieved as a result of investment after an alleged misappropriation, it may be highly speculative for the plaintiff to claim that increased value was a product of defendant's use of its trade secrets, as opposed to independent venture capital enthusiasm generated from other aspects of the defendant's marketing and introduction of a particular technology . . . that problem arguably is what often incentivizes plaintiffs to claim as unjust enrichment damages virtually all of the value of a start-up which is alleged to have misappropriated plaintiff's trade secrets prior to its receiving significant capitalization. Yet, such a claim is fraught with danger since investor capitalization can be attributable to any number of independent factors, such as the potential of the start-up to independently develop its own intellectual property.").

Because information about Lancium's valuation or investments is too speculative to be relevant here, there is no other permissible use for these documents. Indeed, the Federal Circuit has expressed serious concern that permitting parties to introduce large dollar figures with little or no

---

[2] The Sedona Conference is a 501(c)(3) research and educational institute dedicated to the advanced study of intellectual property law and policy (among other areas). The Sedona Conference publishes leading scholarship on discovery policy and practice that is frequently relied upon by courts throughout the country. *See, e.g.*, *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 160 (3d Cir. 2012); *Brit. Telecommunications PLC v. IAC/Interactivecorp*, No. CV 18-366-WCB, 2020 WL 1043974, at *6 (D. Del. Mar. 4, 2020); *CBT Flint Partners, LLC v. Return Path, Inc.*, 737 F.3d 1320, 1328 (Fed. Cir. 2013).

2

relationship to a properly disclosed and valid damages model will "skew the damages horizon for the jury" and, ultimately, the verdict. *Virnetx, Inc. v. Cisco Systems, Inc.*, 767 F.3d 1308, 1333 (Fed. Cir. 2014); *accord LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011). Due to this risk, courts frequently exclude any arguments about a party's wealth, size, and corporate status. See *Draiper v. Airco, Inc.*, 580 F.2d 91, 95 (3d Cir. 1978); *HTC Corp. v. Technology Properties, Ltd.*, 2013 WL 4782598, at *6 (N.D. Cal. Sept. 6, 2013).

In *Uniloc*, for example, the plaintiff argued that its expert permissibly used a tiny royalty rate on the overall sales of the infringing product as a "check" on his separate analysis of a hypothetical negotiation. 632 F.3d at 1311, 1319-21. The Federal Circuit rejected that argument, holding that "disclosure that a company has made $19 billion dollars in revenue from an infringing product cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue." *Id*. at 1320. The same is true here. Discovery regarding Lancium's value and forecasted future revenues would serve no purpose other than to skew the damages horizon in this matter. *See, e.g.*, *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1581 (Fed. Cir. 1992), (affirming exclusion of damages as too speculative given the "uncertainties of future pricing, future competition, and future markets, in this fast-moving field, as well as the requirements of proof of future losses").

Simply put, information regarding Lancium's under-construction datacenters is irrelevant to this matter, as is information regarding Lancium's investments and investments in Lancium. Such information cannot form the basis of a cognizable damages theory. Because the information is not relevant to any claim or defense in this matter, Plaintiffs' Motion to Compel production of these documents should be denied.

Respectfully submitted,

Chad S.C. Stover (No. 4919)

cc:  Counsel of Record (via CM/ECF)

Enclosures