# EXHIBIT 1

```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF DELAWARE


BEARBOX LLC, et al.,      )
                          )
        Plaintiffs,       )   C.A. No. 21-534-MN-CJB
                          )
v.                        )
                          )
LANCIUM LLC, et al.,      )
                          )
        Defendants.       )




                  Monday, May 23, 2022
                  1:00 p.m.




BEFORE:  THE HONORABLE CHRISTOPHER J. BURKE
         United States District Court Judge




APPEARANCES:


         ASHBY & GEDDES
         BY:  ANDREW MAYO, ESQ.

              -and-

         MARSHALL, GERSTEIN & BORUN
         BY:  JOHN LABBE, ESQ.
         BY:  BENJAMIN HORTON, ESQ.

                        Counsel for the Plaintiff
```

2

1    APPEARANCES CONTINUED:

2

3            BARNES & THORNBURG
         BY:  CHAD STOVER, ESQ.
         BY:  ADAM KAUFMANN, ESQ.
4        BY:  MARK NELSON, ESQ.

5                        Counsel for the Defendant

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

```
 1                   THE COURT:  Good afternoon,

 2     everyone.  It's Judge Burke here.  Can everyone

 3     hear me okay?

 4                   COUNSEL:  Yes, Your Honor.

 5                   THE COURT:  All right.  I know our

 6     court reporter is with us and we thank our court

 7     reporter for their service and let's go on the

 8     record in light of that and as we do let me just

 9     say a few things for the record.  The first is

10     that we're here this afternoon by way of

11     teleconference in the matter of BearBox LLC, et

12     al, versus Lancium LLC, et al.  It's civil

13     action number 21-534-MN-CJB here in our court.

14     And we're here for a teleconference to hear

15     brief argument on the pending motion to dismiss

16     filed by the defendant's side.

17                   Before we go further, let's have

18     counsel for each side identify themselves for

19     the record.  We'll start first with counsel for

20     the plaintiff's side and we'll begin there with

21     Delaware counsel.

22                   MR. MAYO:  Good afternoon, Your

23     Honor.  This is Andrew Mayo from Ashby & Geddes

24     on behalf of the plaintiff, BearBox and Austin
```

```
 1    Storms.  I am joined this afternoon by my

 2    co-counsel from Marshall, Gerstein & Borun, you

 3    have Benjamin Horton and John Labbe on the line.

 4              THE COURT:  All right.  And Mr.

 5    Mayo, who will be addressing the issues today?

 6              MR. MAYO:  Mr. Horton, Your Honor.

 7              THE COURT:  Okay.  Great.  And

 8    similarly, we'll ask defendant's to identify

 9    themselves, again beginning with Delaware

10    counsel and to let us know who will be

11    addressing the issues for their side.

12              MR. STOVER:  Good afternoon, Your

13    Honor.  Chad Stover from Barnes & Thornburg for

14    defendants and with me are my partners Adam

15    Kaufmann and Mark Nelson and Mr. Kaufmann will

16    be addressing the Court this afternoon on this

17    motion.

18              THE COURT:  Okay.  Thank you.

19    Thanks to all.  All right.  Counsel, as you

20    know, the motion to dismiss implicates two

21    claims that are in the current iteration of the

22    operative complaint.  One is a conversion claim

23    and then the second is the unjust enrichment

24    claim.  There is one argument for dismissal of
```

1    the conversion claim and for the unjust

2    enrichment claim, there are a few different

3    arguments.  There, the arguments are related to

4    the fifth element of the claim on the one hand

5    and they will relate to the federal preemption

6    argument on the other.  Why don't we first deal

7    with the arguments about the conversion claim

8    and after we hear argument on that, we can move

9    on to the unjust enrichment claim.  On that

10   front, let me then turn first to defendant's

11   counsel and, Mr. Kaufmann, I'll turn to you and

12   I'll just have a few questions and I'll

13   certainly let you add anything else that you

14   wish to add from your briefing if it's not

15   something we get into via my questions.

16             And so with regard to the

17   conversion issue, you know, a lot of this comes

18   down to your argument that when it comes to

19   Louisiana law, what has to be pleaded and

20   established is that in some way what's alleged

21   here is an instance of a party depriving the

22   owner of possession of information or the

23   ability to use the property or the information.

24   And here your basic assertion is that the

```
1    complaint doesn't plead that because the

2    information at issue was transferred

3    electronically and it's clear from the

4    allegations that the plaintiff retained a copy

5    of it and so the plaintiff never lost -- was

6    never deprived of possession of the information

7    or the ability to use it.

8               Have I set out the gist of your

9    argument at least by way of kind of framing it?

10              MR. KAUFMANN:  Yes, Your Honor, I

11   think you have.  I guess maybe one point of

12   clarification I would make is you're correct

13   that the primary basis for our claim is that

14   there's been no alleged deprivation of the

15   converted property.  I will say I think there's

16   two aspects to the allegation of what the

17   converted property is.  The second amended

18   complaint refers to conversion of some actual

19   electronic documents, but also know-how is one

20   of the things that is allegedly converted.  And

21   to the extent that know-how is not tied to

22   physical things, physical documents or

23   electronic documents, our position is that would

24   also be, you know, not the proper subject matter
```

7

 1    of a conversion claim because it's intangible.

 2    Know-how divorced from any physical document is

 3    intangible and can't be converted and then of

 4    course for the electronic documents, there was

 5    no deprivation and so there can also been no

 6    conversion.

 7              THE COURT:  I don't remember this

 8    know-how issue coming up from the briefing.  My

 9    memory of the briefing, what the parties were

10    arguing about there, it seemed to be understood

11    that yes, the information that is alleged to

12    have been converted was information that was

13    sent electronically and obtained electronically

14    and that presumably stored electronically at

15    defendant's side.  Did the parties get into

16    this -- do you disagree?  Did the parties talk

17    about what you were just talking about now in

18    the briefs?

19              MR. KAUFMANN:  Well, Your Honor,

20    I'd just point out that in our brief the way the

21    claim has been alleged refers to know-how as

22    we've noted in our briefing as well.  But you're

23    correct, I don't believe there's any dispute

24    that what was converted was electronic

```
1      documents.
2                THE COURT:  Okay.  And then I
3      guess, you know, there was some back and forth
4      about whether under the Louisiana law electronic
5      information or documents can be the type of
6      property that could be converted.  And at some
7      point I guess certainly about the time of the
8      reply brief you acknowledged, yes, that's true,
9      we're not saying on the defendant's side that
10     electronic information can't be converted.  And
11     I guess my question there to you was, in your
12     view is the only way that electronic information
13     can be converted is if a party either literally
14     kind of takes the electronic information
15     physically, you know, say, for example, like in
16     one of the cases is information on a hard drive,
17     and takes that hard drive and takes it away from
18     the plaintiff or if the defendant's side, you
19     know, deletes or gets rid of the electronic
20     information?  Put differently, in your view, is
21     there any way that you can convert electronic
22     information simply by receiving it, you know,
23     via like an e-mail or a text or something like
24     that?
```

```
 1                    MR. KAUFMANN:  Well, Your Honor, I
 2        think that the conversion does require a
 3        deprivation of the property and so just by
 4        receiving a copy of electronic documents via
 5        e-mail or some other electronic conveyance, no,
 6        I don't believe there is a way that that could
 7        be converted as long as the owner of that
 8        property retained a copy of it.  I think you
 9        correctly summarized that instances of
10        conversion of electronic documents could occur
11        in instances like where the documents are stored
12        on a physical hard drive and the hard drive is
13        taken or, yeah, the files were withheld from the
14        owner, I believe is one of the cases.  What was
15        discussed in the briefing dealt with a situation
16        where a party developed software that was, you
17        know, stored on a computer hard drive and then
18        didn't turn it over to the party that had paid
19        for it.
20                    THE COURT:  Right.  Like if two
21        parties entered into a contract and the
22        defendant is supposed to develop and create
23        software for the plaintiff, but the allegation
24        is defendant never gave this software to the
```

1    plaintiff, you know, that's if you have

2    electronic information or software that can be

3    properly said to be alleged to be converted, but

4    you would say it's an example where the entirety

5    of that information is in the defendant's

6    possession?

7              MR. KAUFMANN:  Correct.

8              THE COURT:  Okay.  And then I

9    guess just thinking about it, how come there

10   can't be a deprivation of property regarding

11   electronic documents when an owner or plaintiff

12   retains a copy?  Isn't it -- couldn't it be said

13   that the owner is deprived of sole possession of

14   the electronic documents in that situation, even

15   if they're not deprived of total possession of

16   the information?

17             MR. KAUFMANN:  No, Your Honor, I

18   don't believe there could be.  You know, the

19   only, I think, potential scenario I could see

20   where there could be a deprivation where the

21   owner of the files retained a copy could be in

22   the scenario where the information was the basis

23   of a patent.  But as Your Honor knows, the

24   original conversion claim in this case was based

1    on that, that Lancium converted BearBox's

2    property by patenting it.  And Your Honor, you

3    know, correctly found that that claim was not

4    viable and dismissed that claim.  And so now the

5    basis of this conversion claim is something

6    different than that.  Right?  I mean, the

7    allegations are no longer that the property was

8    converted into a patent whereby Lancium would

9    have the ability to prevent, you know, someone

10   else from using their patented technology.  As

11   long as BearBox had a copy of their electronic

12   files, they can do whatever they want with it.

13   And again, that property, the basis of the

14   conversion claim is something different than

15   what is the subject matter of the patent that

16   their enrichment claims relate to.

17              THE COURT:  I think what you're

18   saying is, tell me if I'm wrong, but under the

19   Louisiana law when it comes to conversion, there

20   isn't the idea -- you can't have a scenario

21   where, you know, there's a piece of property,

22   say electronic information, or any kind of

23   property really, and the plaintiff holds onto

24   one copy of it, but the defendant gets another

```
1    copy of it and the plaintiff can claim that the

2    defendant converted their property.  Isn't that

3    right?  Isn't that -- isn't that, from what

4    you're arguing, you can't have a conversion

5    claim under Louisiana law in your view if each

6    side keeps a copy, if each side ends up with a

7    copy of the allegedly converted electronic

8    material, is that right?

9              MR. KAUFMANN:  I think that is

10   correct, Your Honor.  And that, you know, I

11   think what the CamSoft case found, you know,

12   explicitly, that, you know, they quoted the

13   Louisiana supreme court Binn case, cited to the

14   Binn, says that a conversion requires a case of

15   possession.  And, for example, in CamSosft there

16   was no deprivation because the owner of the

17   property retained copies of their information

18   and so there could not be a conversion.

19              THE COURT:  And then last question

20   for you that I had, the Louisiana law, as both

21   sides note, lists out the seven kind of possible

22   examples of conversion.  And in describing what

23   those things are, again, you say that they each

24   involve depriving the owner of possession or the
```

1    ability to use its property.  I guess my

2    question is how is that true with example number

3    seven, which is referred to as ownership is

4    asserted over the channel.  Can't you have a

5    scenario where you have a conversion claim where

6    a party claims that they own certain property

7    but nevertheless, it physically remains -- also

8    remains in the hands of the plaintiff?

9              MR. KAUFMANN:  Well, Your Honor, I

10   don't believe you could have that scenario where

11   there would be a situation other than, you know,

12   the scenario I mentioned before, where the --

13   you know, we're talking about the subject of a

14   patent.  You know, the Louisiana supreme court

15   has been clear that, you know, the basis of a

16   conversion claim, in the Import Sales case the

17   supreme court was explicit that the gist of a

18   conversion has been declared not to be the

19   acquisition of the property by the wrong does,

20   but the wrongful deprivation of a person of the

21   property to the possession to which he is

22   entitled.  And the only way to assert ownership

23   over property that would deprive the owner of

24   that ownership would be to have physical

1    possession of it, unless there was some legal

2    mechanism to preclude them from using that

3    property.  And I think the only legal mechanism

4    that could be would be a patent.  And Your Honor

5    has already found that that can't be the basis

6    of a conversion claim.

7                THE COURT:  Taking it out of the

8    electronic information context, though, let's

9    say think about just a physical item, like a

10   car.  Let's say a plaintiff on its property has

11   a car and a defendant says, hey, that's my car.

12   I don't have the physical car, but I think

13   that's my car.  And the defendant maybe goes and

14   files some type of legal claim in Louisiana

15   trying to convince somebody that the car is the

16   defendant's, but the plaintiff says, that's

17   totally false, this is my car.  The defendant is

18   asserting ownership of this physical thing that

19   I still possess, but I think defendant's

20   converted it or maybe defendant is successful

21   with their legal challenge if they converted it.

22   Can't you have -- in the physical realm, can't

23   you have a physical conversion claim where you

24   assert ownership of something even though the

1    thing is still in the possession of the

2    plaintiff?

3                    MR. KAUFMANN:  Well, I don't think

4    in that scenario that could be a conversion,

5    because if there was a legal claim that was

6    filed, you know, asserted against ownership of

7    the claim and it was successful, then, you know,

8    then the claimant prevailed and there would be

9    no wrongful taking or you know, and if they --

10   if they were unsuccessful, then there was no

11   interference with the property either.  So

12   there, Your Honor, I don't believe there's any

13   mechanism.  I guess the one example of depriving

14   the property owner of ownership would be in a

15   situation like what we discussed earlier where,

16   you know, developing the software and not

17   turning it over to the owner could be an example

18   of interfering with ownership, but there there's

19   still a deprivation.

20                   THE COURT:  Okay.  Mr. Kaufmann,

21   is there anything more you want to say about

22   this conversion issue before I turn to your

23   colleague on the other side?

24                   MR. KAUFMANN:  Your honor, the

1    only final point I would make on that is I think

2    the CamSoft case is wholly precedent here and

3    dealt with this issue, you know, nearly

4    identical issue and concluded that there could

5    be no conversion of electronic documents where

6    there is no deprivation of the property owner.

7    And under CamSoft, I think BearBox's claim

8    necessarily fails for identical reasoning that

9    there is simply no deprivation here because

10   BearBox at all times retained a copy of the

11   allegedly converted property and the ability to

12   use it.

13                 THE COURT:  Okay.  All right.

14   Thank you.  Let me turn to plaintiff's counsel.

15   And Mr. Horton I know is going to take this

16   issue.  And Mr. Horton, I'll start out where the

17   defendant's side left off.  If they say hey,

18   look, we have a Louisiana state court case that

19   we think pretty clearly addresses this issue

20   and, you know, of course no case is a hundred

21   percent the same facts, but basically pretty

22   clearly says that, you know, when it comes to

23   electronic information, you know, can electronic

24   information be converted?  Yeah, but what we

```
1    would have to see is someone physically taking

2    possession of that electronic information of the

3    plaintiff's and depriving them of it.  And if

4    you simply had a scenario where the electronic

5    information was transmitted from a plaintiff to

6    a defendant, but the plaintiff kept a copy,

7    defendant says that CamSoft kind of indicates

8    that that wouldn't cut it.  In your brief you

9    cited some cases in support of your conversion

10   claim, but do you have a Louisiana state court

11   case that's about a conversion claim that really

12   strongly supports your position?

13              MR. HORTON:  Yes, Your Honor.

14   Well, first, if I could address quickly the

15   CamSoft decision.

16              THE COURT:  Sure.

17              MR. HORTON:  The CamSoft decision

18   was a summary judgment decision, Your Honor.

19   And what the court found was there wasn't

20   sufficient evidence and denied summary judgment

21   on that basis.  It did not contemplate the

22   pleading standard for conversion under Louisiana

23   law, which is what we're talking about here in

24   the instant motion, Your Honor.
```

```
 1              The other thing I'd say about
 2    CamSoft is the CamSoft court also held that
 3    software was not protectable under Louisiana
 4    conversion law, which is something that has been
 5    rejected by the Louisiana supreme court and
 6    Lancium itself acknowledges is incorrect in its
 7    reply brief.  And so if we're debating the
 8    correctness or applicability of CamSoft, I think
 9    both of those points are important and worth
10    noting.  In terms of --
11              THE COURT:  I guess, Mr. Horton,
12    just to stop you briefly on the first point, you
13    said it in your brief to, but of course it's
14    correct that CamSoft's summary judgment decision
15    you say wasn't addressing the pleading standard,
16    but what it was addressing, plaintiff says was
17    addressing what the law requires as to these
18    claims.  You know, all the time we have
19    instances where like in a summary judgment
20    scenario you have to take a look at like what is
21    required for this claim, you know, whether to
22    plead or prove it.  And, you know, you can get a
23    lot of level information from courts about what
24    does a claim require and what just doesn't cut
```

```
1    it.  In a summary judgment decision that can be

2    useful for a motion to dismiss.  I guess if

3    everything I'm saying is correct and I think it

4    is, how come, you know, you may disagree with

5    CamSoft for other reasons, but why is it the

6    fact that the summary judgment decision is

7    irrelevant here?

8             MR. HORTON:  I think some of the

9    facts that the CamSoft court relied on was lack

10   of evidence on certain things.  And so, Your

11   Honor, to the extent, your point is well taken

12   that a summary judgment opinion can inform, you

13   know, what might be required under a pleading

14   standard, but here the Court's discussion of

15   those issues was focused on what the plaintiff

16   did not do in terms of introducing evidence and

17   sort of roundabout reached its conclusion on

18   that basis.  So I'm just suggesting that I think

19   that's an important context that we have for

20   CamSoft.  And the other important point is, you

21   know, the fact that there was another very wrong

22   portion of the decision that I think Lancium's

23   own positions are inconsistent with CamSoft and

24   so we should note that.
```

```
 1                    THE COURT:  Okay.  All right.  And

 2       then back to the question about, you know, the

 3       case law that you cite.  Do you have a Louisiana

 4       state court case regarding conversion that you

 5       think is pretty applicable on the facts?

 6                    MR. HORTON:  Well, I think first,

 7       Your Honor, I would go to the Louisiana supreme

 8       court decision in their discussion as to what

 9       constitutes conversion.  We've been talking

10       about the Dual Drilling case, the Dilio case

11       where the supreme court lace out the seven acts

12       that would constitute conversion.  I think Your

13       Honor is exactly right in pointing to, for

14       example, the seventh action where the Louisiana

15       supreme court I think very intentionally chooses

16       the word ownership, you know, for instance,

17       separate from possession to illustrate that

18       concept.  I also think it's important to note

19       that act number four, possession of, withheld

20       from the owner or possessor.  That's exactly the

21       one act of conversion that I think Lancium is

22       trying to expand or I guess consolidate all acts

23       of conversion into, just number four, when the

24       others are much broader, including number one,
```

1    Your Honor, where it says possession is acquired

2    in an unauthorized manner.

3              THE COURT:  Just to jump in.  You

4    know, when I read the seven examples, you know,

5    I saw it in your brief that you were trying to

6    say like, well, four is an example of when you

7    physically take something from another person,

8    you know, and they don't have it anymore, but

9    look at all these others.  But when I read them,

10   I don't know, it seems like all or almost all of

11   them are meant to be talking about examples of

12   just that.  You know, like number one,

13   possession is acquired in an unauthorized

14   manner.  Well, I acquired possession, I took the

15   thing, you don't have it anymore.  Number two,

16   the channel is removed from one place to

17   another, with the idea that you're going to

18   exercise control over it.  I took the thing.  I

19   have it.  You don't have it anymore.  Number

20   three possession of the channel is transferred

21   without authority.  It's transferred, now I've

22   got it.  You don't have it anymore.  You know

23   what I mean?  So I don't understand why -- why

24   is fourth only one of the possible conversion

22

1    scenarios that deals with the physical obtaining

2    of an item without the other side having it?

3                    MR. HORTON:  I think, Your Honor,

4    the fact that it is explicit I think is

5    acknowledgement that each of those other

6    scenarios could have a situation where there's a

7    dual possession or a partial possession.  And so

8    the fact that it is laid out explicitly, I

9    think, acknowledges that those other

10   possibilities exist.  For example, number six,

11   the channel was used improperly.  Well, that

12   doesn't say who is possessing the channel at the

13   time, just that it's being used improperly.

14   Your Honor had the example about a car where

15   someone is making the argument that that's my

16   car.  The plaintiff says no, it isn't.  I can

17   imagine other scenarios where someone is trying

18   to take out a loan as collateral on someone

19   else's house.  They say it's their house.  Well,

20   the plaintiff at all times had possession of

21   their house.  So there's all kinds of these

22   examples that we think up and I think the

23   Louisiana supreme court was explicit when

24   articulating number four and saying that that

1    alone is an act, but it's not necessarily

2    required for any of the others.  And I think

3    it's also important, Your Honor, to look at, you

4    know, what the supreme court says when it

5    summarizes those seven acts.  You know, I think

6    in defendant's brief they used the word

7    deprivation in an argument today.  Deprivation

8    is the word that's used, but the full quote from

9    the Louisiana supreme court is conversion

10    consists of an act of deprivation of the

11    plaintiff's possessory rights, comma, and

12    deprivation is impairment or interference.  But

13    it goes on to say and any wrongful exercise of

14    assumption of authority over another's goods

15    depriving him of a possession permanently or an

16    indefinite time is a conversion.  What you've

17    got there, Your Honor, is sort of that first

18    statement of an act of deprivation as a

19    conversion and them where it gives an example of

20    a conversion.  And I think that's more

21    consistent with how the supreme court has laid

22    out these seven types of conversion, an act of

23    deprivation, interference with the plaintiff's

24    possessory rights and I think that it makes

1      sense that in the electronic context an

2      interference with the plaintiff's possessory

3      rights would be interference or elimination of

4      exclusive possession of electronic information,

5      right?  It seems to flow that it would be

6      actionable or should be actionable under

7      conversion if a defendant has, for example,

8      taken a customer list or a schematic on how to

9      build a product and then used that information

10     to compete unfairly with the plaintiff who

11     possessed those things and still would possess

12     those things, you know, unlawfully taking

13     profits and sales away from that plaintiff.  I

14     think that's exactly the type of act where

15     there's dual possession that would be actionable

16     under conversion.  And in fact, there are

17     decisions that we've cited to in the briefing

18     that contemplate exactly that.  The Mayville

19     decision, Your Honor, and explicit when it talks

20     about copied the schematic and used it to

21     compete unfairly and illegally with the

22     plaintiff.

23                    THE COURT:  Do you think in

24     Mayville it's clear from the case that the owner

```
1        retained a copy of the information?

2                    MR. HORTON:  I do, Your Honor.

3                    THE COURT:  Okay.  And then in

4        terms of the -- just one more question about the

5        way the supreme court explains the tort.  I

6        talked about number seven with the other side.

7        Are you asserting -- are you saying in your

8        complaint that in some way the defendants

9        asserted ownership over the channel, which I

10       guess here is the electronic information that

11       passed between -- from plaintiff's side to

12       defendant's side?  And if you are, in what way

13       did they assert ownership of it?

14                   MR. HORTON:  I think we are, Your

15       Honor.  I think there's -- I think we

16       articulated in the briefing there's at least

17       four acts under Louisiana supreme court law that

18       we pled as actionable.  Ownership I think is one

19       of them and that would be in the way in which

20       the defendants have taken the electronic

21       information and asserted ownership in terms of

22       modifying their business practices, soliciting

23       and obtaining investments in their business

24       based on their ability to practice the methods
```

1    and really making money off of it, Your Honor.

2    They've asserted ownership over the information

3    that way.

4                 And if I could direct the court to

5    a specific cite from Mayville to answer that

6    question, Your Honor.  It's to page 1 actually

7    of the decision.  And the quote is, the

8    plaintiff left a schematic drawing with the

9    defendant and later e-mailed a digital copy of

10   the drawing.  So that case actually contemplates

11   exactly what we are a talking about here,

12   e-mails the schematic and of course necessarily

13   retaining a copy.

14                 THE COURT:  Okay.  And I guess

15   lastly and more broadly, you know, how can it be

16   said that the defendant impaired the plaintiff's

17   possessory rights to the electronic information

18   if in the end the plaintiff still possessed the

19   electronic information?  Is the answer that,

20   well, the definition of conversion is broader

21   than impairing possessory rights or is the

22   answer, well, they impaired our possessory

23   rights because we no longer had sole possession

24   of the information?

1          MR. HORTON:  Yeah, I think that's

2     one important articulation, Your Honor.  By

3     impairment by impairing the exclusive possession

4     of that information, going back to the example I

5     gave of a competitor acquiring a schematic.  Now

6     both competitors have the schematic, but

7     previously the second competitor didn't have it,

8     now they have it, they're making a competing

9     product and now the market is split in purchases

10    of that product where otherwise it wouldn't have

11    that.

12          THE COURT:  Okay.  Anything

13    further you wanted to add, Mr. Kaufmann on this

14    conversion issue?  Apologize.  Mr. Kaufmann,

15    before I turn to you, I should give Mr. Horton a

16    chance to tell me if he had anything else.  Mr.

17    Horton, did you have anything else before I turn

18    back to Mr. Kaufmann?

19          MR. HORTON:  There are other

20    decisions, Your Honor, that contemplate dual

21    possession of electronic information that I'd be

22    happy to draw the Court's attention to.  One is

23    called Total Safety.  It's 2019 WL 5964971.  And

24    of course they also cited Buena Vista is another

1 case that's in the briefing, Your Honor.  I

2 think that was defendant's took issue with that

3 in the reply brief saying that the allegations

4 actually were that the electronic information

5 was copied but then the original version was

6 deleted.  But that's actually not what happened

7 in Buena Vista.  The conversion allegation was

8 that information was copied put in archive and

9 then a separate allegation of conversion was

10 that different information was deleted from the

11 plaintiff's server, so I wanted to make that

12 clarification for the Court.

13     THE COURT:  I think you're talking

14 about Euro Veritas, am I right?

15     MR. HORTON:  I'm sorry, yes.

16     THE COURT:  Okay.  Got it.  Let me

17 go back to Mr. Kaufmann.  Anything you want to

18 say by way of brief rebuttal on the conversion

19 issue?

20     MR. KAUFMANN:  Yes, Your Honor.

21 One, I'd point out that the Mayville case

22 predates CamSoft by three years maybe.  It was a

23 2016 decision, CamSoft was from 2019.  And of

24 course Mayville was an Eastern District of

1    Louisiana case which is not controlling

2    authority where of course CamSoft is.  And Your

3    Honor, the total safety case Mr. Horton just

4    mentioned I don't believe is cited in the

5    briefing, so I don't believe that's an

6    appropriate authority to assert for the first

7    time in this argument.

8                 THE COURT:  I agree.  If there are

9    cases that the parties find after they submitted

10   the briefing that they think are particularly

11   helpful, we have a way to do that which is to

12   file another supplemental brief if it's

13   something that, that's new.  And if it's not,

14   you know, there should at least be a way to try

15   to give the other side a fair chance to respond

16   to it if they haven't heard it before, so I

17   understand your point there.

18                 Okay.  Let's move on to the unjust

19   enrichment issue.  And again, I'll turn to

20   defendant's side first.  And I guess, Mr.

21   Kaufmann, there there are two arguments you're

22   making, if I'm seeing it correctly, as to why

23   this claim should be dismissed.  One is that the

24   plaintiff can't satisfy the fifth element, that

```
 1    there be no other adequate remedy in law and the
 2    second is the preemption claim.  If you are
 3    correct on either one of them, you prevail, am I
 4    right about that?
 5              MR. KAUFMANN:  Yes, Your Honor.
 6    Although actually I believe the first point that
 7    BearBox can't establish the fifth element
 8    applies no matter what.  The preemption issue is
 9    really just to -- we included that to address I
10    think a potential argument or an ambiguity that
11    I don't believe BearBox has actually asserted,
12    which is if they were to assert that their
13    unjust enrichment claim was based on
14    non-confidential information, the briefing
15    doesn't state that, doesn't make that assertion.
16              THE COURT:  The presumption
17    affirmative defense only relates to the extent
18    that the claim is meant to refer to
19    non-confidential information that was passed
20    along and I think right now you're saying you
21    don't actually think that's what the plaintiff
22    is alleging, but just in case they are, if they
23    were, you would have a preemption argument?
24              MR. KAUFMANN:  That's correct.
```

```
 1                    THE COURT:  Okay.  I guess on the

 2          preemption issue, just briefly since we're

 3          talking about it, how come this -- you know, and

 4          the briefing basically, just for the record the

 5          briefing basically kind of is a dispute about

 6          whether federal circuit law permits an unjust

 7          enrichment claim outside of the alleged, you

 8          know, enrichment with regard to confidential

 9          information that may have been shared in a quasi

10          contract way.  And I think you acknowledge that

11          federal circuit has said that, look, there can

12          be some circumstances if a plaintiff is alleging

13          that the defendant was unjustly enriched, even

14          in the patent world when it comes to information

15          that was provided based on the promise of

16          confidentiality, there can be ways in which that

17          kind of a claim can survive.  But you say

18          otherwise in a circumstance like this where

19          we're dealing with a case of this nature, if

20          it's non-confidential information that's

21          transferred, federal circuit law just would not

22          let you make an unjust enrichment claim.  Is

23          that right??

24                    MR. KAUFMANN:  That's correct,
```

 1    Your Honor.  There may be scenarios where an

 2    unjust enrichment claim could be based on

 3    confidential information, but not -- there can

 4    not be a situation where a conversion claim or

 5    I'm sorry, an unjust enrichment claim is based

 6    on use of non-confidential information, that

 7    wouldn't be preempted.

 8              THE COURT:  And how come this

 9    confidential/non-confidential distinction didn't

10    come up the last time when we were having the

11    motion to dismiss arguments about this kind of a

12    claim?

13              MR. KAUFMANN:  Well, Your Honor,

14    because I think the nature of the allegations

15    were just different previously.  In the first

16    amended complaint the allegations were that the

17    patent, you know, what was patented was

18    BearBox's technology and that the unjust

19    enrichment was the incorporation of that

20    technology into the patent.  And that is -- a

21    claim of that nature is preempted separately

22    from the confidentiality issue.  The claim is

23    directly tied to whether the patent is the, is

24    the basis of the unjust enrichment.

1          THE COURT:  Okay.  I mean, going

2     back and re-reading the briefing and the

3     decision last time, it seems like the issue

4     there just really solely turned on, you know,

5     was the allegation in the complaint, one, as to

6     this unjust enrichment claim, that it turned on

7     an assertion of inventorship and if it was, in

8     my decision I highlighted a bunch of paragraphs

9     where it seems like that's exactly what the

10    plaintiff was saying, saying in my unjust

11    enrichment claim, it's all about the real

12    inventor.  They're not.  And if so, that

13    implicated defense's preemption.  Isn't that

14    what was going on last time?  And I guess, if it

15    was or if it wasn't.  Okay.  Go ahead.

16          MR. KAUFMANN:  And the preemption

17    issue there was federal patent law governs

18    inventorship and so that was the basis of the

19    preemption of the prior alleged claim.

20          THE COURT:  Okay.  But maybe the

21    alleged thing is slightly differently now and so

22    we're getting a different argument for a motion

23    to dismiss the claim on preemption grounds, is

24    that right?

```
 1                    MR. KAUFMANN:  That's correct.

 2                    THE COURT:  Okay.  And then you

 3        also pointed -- on the preemption issue, you

 4        pointed to the third circuit case Warinski and I

 5        know you distinguish it in in part by saying you

 6        don't think the case dealt with whether the

 7        information at issue was allegedly confidential

 8        or not.  But otherwise, do you think the case

 9        just got it wrong?  Do you think that the third

10        circuit just kind of misinterpreted federal

11        circuit precedence?

12                    MR. KAUFMANN:  Your Honor, I think

13        they did.  In fact, the Warinski case doesn't

14        even mention the Walter's case that dealt

15        with -- I'm sorry, not the Walter's case, the

16        federal circuit precedent on preemption.  Ultra

17        Precision.

18                    THE COURT:  Okay.  And then just

19        on the other issue, which would I guess be

20        entirely dispositive of the claim no matter what

21        confidential or non-confidential information is

22        at issue, there's no -- you know, dispute really

23        turns on like a case like Walters where the

24        supreme court has made it clear that, that when
```

1    it comes to this development, if there is an

2    adequate remedy at law, even one that the

3    plaintiff ultimately is successful on, you can't

4    make an unjust enrichment claim.  And I guess,

5    is the way that, you know, that there is an

6    adequate remedy of law otherwise that the

7    plaintiff pleads such a remedy in a complaint?

8    Is that how you know that one exists or are

9    there other ways that you would know?

10                MR. KAUFMANN:  Well, Your Honor, I

11   think there are potentially other ways that you

12   could know.  I suppose you could, even if there

13   was an unpled claim, the allegations in the

14   complaint satisfied the elements of an unpled

15   claim, that could be a situation again where the

16   unjust enrichment claim couldn't proceed.

17   Although, you know, here the trade secret claims

18   that were stricken, you know, again, are based

19   on the same conduct as the unjust enrichment

20   claim.  And, in fact, the trade secret claim

21   pled unjust enrichment as alleged harm from the

22   trade secret misappropriation.  And so, you

23   know, those claims are clearly based on the same

24   conduct and the same with the conversion claim.

1    And, Your Honor, courts that have dealt with

2    this issue like the Shaw case have found that,

3    you know, it's not whether -- even if the claim

4    fails as a matter of law, you know, the Shaw

5    case found that two other claims based on the

6    same conduct should also be dismissed as a

7    matter of law, but the allegation of those

8    claims based on the same conduct as the unjust

9    enrichment still precluded the unjust enrichment

10   claim.

11              THE COURT:  And just to parse

12   that, you know, like what it means to have an

13   alternative remedy at law.  Let's say I had a

14   complaint and there was like five claims and the

15   last of which was unjust enrichment and they

16   were all about the same conduct.  You know,

17   like, number one was breach of contract, number

18   two was conversion, three, four, whatever, and

19   then five is unjust enrichment and the defendant

20   moves to dismiss -- and they're all under

21   Louisiana law -- and defendant moves to dismiss

22   all five and the Court looks at them and says,

23   you know what, not one is dismissed.  The

24   plaintiff can't make out a plausible claim.

1      Count two, dismissed as well.  Plaintiff just

2      simply cannot make out a plausible claim.  Same

3      with count three, same with count four and then

4      you get to count five and you ask yourself, does

5      the plaintiff have a, you know, an alternative

6      remedy at law?  Well, from the one hand the

7      plaintiff pleaded that they did.  You know, they

8      pleaded four other claims based on the same

9      basic conduct, but that the Court that's

10     deciding whether they do just got through saying

11     they don't.  You know, they -- like the court

12     looked at it and plaintiff can't make out a

13     claim under count one, breach of contract or

14     count two conversion.  If you have a scenario

15     like that, how can it be said that there is an

16     adequate remedy at law if the Court says, as to

17     all the other things the plaintiff tried, no.

18             MR. KAUFMANN:  Well, Your Honor,

19     that's the guidance that the Louisiana supreme

20     court has given and that's the scenario that the

21     Court found in Shaw.  Although here, I think we

22     don't even need to get to that question, because

23     the trade secret claim, you know, as Your Honor

24     knows, those claims were not dismissed because

```
 1    they failed to plead an adequate trade secret
 2    claim.  They were stricken because they were
 3    untimely, so there's not an issue of whether
 4    other claims could be pled that set forth a
 5    viable claim.  And in fact, in their briefing on
 6    the motion to strike I believe BearBox was
 7    adamant that they had adequately alleged the
 8    elements of a trade secret claim and so because,
 9    you know, that claim could have been available
10    to them, we don't -- we don't even need to get
11    to the issue of, you know, if the conversion
12    claim is stricken could that -- is there still a
13    claim they could have availed themselves of.
14    There is and it was the trade secret claims, at
15    least.
16                 THE COURT:  Okay.  Anything
17    further you want to say on this unjust
18    enrichment issue, Mr. Kaufmann?
19                 MR. KAUFMANN:  No, Your Honor.
20                 THE COURT:  Okay.  Let me then
21    turn to Mr. Horton on plaintiff's side with
22    these issues and why don't we start with the
23    fifth element issue.  There I guess, you know,
24    why doesn't Walter's just settle the issue?  The
```

1      supreme court case from Louisiana supreme court.

2      The other side says it pretty clearly, in their

3      view, says that, look, if you plead another type

4      of claim based on the same basic content as an

5      unjust enrichment claim, even if that other

6      claim gets dismissed, you had an alternative

7      essential remedy.  And so you can't plead the

8      fifth element.  And the defendant would say,

9      heck, even in the recent case, federal cases

10     recognize that too like Andretti or Cytogel

11     Pharma.  How comes Walters doesn't just settle

12     the issue?

13             MR. HORTON:  Yes, Your Honor.  I

14     think we recognize in the briefing there seems

15     to be a split in authority here.  We recognize

16     the Walters decision, but there are decisions

17     subsequent to Walters and the Hall case

18     addresses Walters and distinguishes it.  And the

19     split seems to be, Your Honor, federal court

20     versus state court and we think that makes sense

21     here because in federal court, now federal rule

22     civil procedure 8 which allows for pleading in

23     the alternative.  And so we think because we're

24     in federal court with this case that the split

1    in authority should give, allow the unjust

2    enrichment claim to go forward.

3              THE COURT:  I guess just to stop

4    you there, Mr. Horton.  You mentioned Hall as

5    distinguishing Walters, but the way it

6    distinguished Walters, not even sure this is a

7    correct reading of Walters, but the way it

8    distinguished it was by saying well, Walters was

9    only talking about a scenario where the

10   alternative relief was a tort claim.  And then

11   it went on to talk about how that wasn't the

12   case in Hall.  Here, even if the way that Hall

13   was distinguishing Walters wouldn't help you,

14   right, because you've got alternative tort

15   claims that you're pleading, isn't that right?

16             MR. HORTON:  That was said in the

17   Hall case, Your Honor, that's correct.  The Hall

18   case also went on to say that the liberality of

19   rule 8 should be recognized and the Hall case

20   cites to the Richard versus Wal-mart case which

21   again relies on rule 8 which allows for pleading

22   in the alternative in federal court.

23             THE COURT:  And on the rule 8

24   issue a number of cases that you cite reference

1    rule 8.  But I mean, you know, there are cases

2    that the other side points to that say, and I'm

3    not sure why this is wrong, whether rule 8 or

4    rule 9 is a matter of federal procedure allows a

5    party to plead in the alternative, that doesn't

6    have much to do with what's the substance of the

7    elements of the claim under state law.  And if

8    the substance of an element of the claim was

9    that you can't have another form of potential

10   relief, it wouldn't matter what rule 8 or 9 lets

11   you do because the actual substantive claim

12   wouldn't permit a scenario like this.  How does

13   rule 8 or 9 get you out of this problem?

14            MR. HORTON:  Yeah, so I think,

15   Your Honor, you alluded to this earlier, which

16   is to say that, you know, how do you know which

17   cause of action is going to provide for the

18   remedy the plaintiff seeks until you know?  And

19   at the pleading stage we don't know.  And so I

20   think, you know, for conversion I think we feel

21   that the remedy is a disgorgement of the

22   defendants ill gotten gains and we think we're

23   entitled to that under conversion.  But if it

24   turns out that that's not right, then unjust

1        enrichment is meant to plug a gap in the law in

2        terms of remedies in what the plaintiff might

3        recover.  And so until we know that for sure, I

4        think our positions is that unjust enrichment

5        should stay in the case to continue to plug that

6        potential gap, until we know for certain whether

7        there's a gap or not.  And I think that's what

8        rule 8 contemplates in the federal procedure

9        context.

10                THE COURT:  All right.  And with

11       regard to the preemption issue, I guess one

12       question I have for you is the other side is

13       only making that argument to the extent that

14       your unjust enrichment claim is even alleged to

15       implicate information that is non-confidential.

16       You could tell me that the answer to that is no,

17       actually no, the whole claim is about

18       information that is asserted to have been

19       confidential on the plaintiff's side.  Is that

20       what's going on or does your unjust enrichment

21       claim also implicate some information that

22       wasn't confidential?

23                MR. HORTON:  Well, Your Honor, I

24       think the claim certainly does contemplate

1    information that is confidential.  I think we've

2    said that in the pleading.  I think we said that

3    in the briefing.  At the pleading stage I would

4    be hesitant to make a representation whether

5    it's all constitutes confidential or not.  And I

6    don't think the Court needs to reach that

7    conclusion, because the Rosinski case is on

8    point and it doesn't contemplate confidentiality

9    at all, it's simply saying that in order to

10   avoid preemption you simply just cannot seek a

11   patent-like remedy based on patent infringement.

12   And we don't have that here.  We're not seeking

13   patent infringement damages.  We don't even have

14   a patent.  I think we're contending that we

15   should have the patent, but we don't yet.  And

16   in Warinski the facts are even less favorable to

17   the plaintiff there because there the plaintiff

18   did have the patent and the third circuit said

19   as long as you're not asking for patent

20   infringement damages then unjust enrichment

21   cannot and will not be preempted.  So I think

22   that's really the only issue that the Court

23   needs to address.

24                THE COURT:  And so I guess you're

```
 1    saying -- is what you are saying to me, yes,

 2    Judge, you should understand the unjust

 3    enrichment claim to be alleging the unjust

 4    enrichment of the defendants with regard to both

 5    confidential and non-confidential information,

 6    is that right?

 7              MR. HORTON:  I guess what I'm

 8    saying, Your Honor, is I think the Court's

 9    decision doesn't need to parse things that

10    finely.  It can simply be a decision based on

11    the fact that the plaintiff is not seeking at

12    like remedies under unjust enrichment and on

13    that basis cannot be preempted by patent law.

14              THE COURT:  I'm asking partly from

15    an efficiency perspective because if you told me

16    the only thing you're alleging was used and

17    generated unjust enrichment was confidential

18    information, then, you know, I don't have to

19    make a decision on a whole big part of the

20    briefing here.  But if you're telling me the

21    opposite, then I might, so that's why I'm

22    asking.

23              MR. HORTON:  Understood, Your

24    Honor.
```

```
 1                    THE COURT:  So humor me, which one
 2       is it?
 3                    MR. HORTON:  Fair enough, Your
 4       Honor.  Confidential information.
 5                    THE COURT:  So only confidential
 6       information is being alleged to have been used
 7       in a way that unjustly enriched the other side?
 8                    MR. HORTON:  I think the pleading
 9       is broader than that, Your Honor, but that's the
10       claim I see going forward, is unjust enrichment
11       based on confidential information.
12                    THE COURT:  Okay.  All right.
13       Anything further you wanted to add, Mr. Horton?
14                    MR. HORTON:  No, Your Honor.
15                    THE COURT:  Okay.  All right.  Mr.
16       Kaufmann, anything more you want to say about
17       the unjust enrichment issue?
18                    MR. KAUFMANN:  Your Honor, I'd
19       just reiterate the point Your Honor noted that
20       controlling precedent here, Walters in the
21       Louisiana supreme court and the fifth circuit
22       precedent have established that unjust
23       enrichment can not be pled in the alternative.
24       Here, rule 8, federal rule 8 does not save the
```

```
 1    claim as you noted.  It is a substantive element

 2    of the claim that there can be no other remedy

 3    at law and here BearBox's own allegations show

 4    that there was other claims they could have

 5    availed themselves of and so here the unjust

 6    enrichment claim just can't be sustained.

 7                    THE COURT:  Okay.  All right.

 8    Thanks, counsel.  Appreciate your arguments.

 9    I'll take a short time to think about it and

10    then I'll intend to issue a short report and

11    recommendation in the very near future so that

12    the parties will have an answer here.

13    Appreciate everyone's time today.  Wish everyone

14    continued health and safety.  Unless there's

15    anything further, we can end our teleconference

16    today and go off the record.  Take care,

17    everybody.

18                    (End at 1:58 p.m.)

19

20

21

22

23

24
```

1    State of Delaware )
                      )
2    New Castle County )

3

4

5                CERTIFICATE OF REPORTER

6

7           I, Stacy M. Ingram, Certified Court Reporter

8    and Notary Public, do hereby certify that the

9    foregoing record, Pages 1 to 47 inclusive, is a true

10   and accurate transcript of my stenographic notes

11   taken on May 23, 2022, in the above-captioned matter.

12

13          IN WITNESS WHEREOF, I have hereunto set my

14   hand and seal this 23rd day of May 2022, at

15   Wilmington.

16

17

18              /s/ Stacy M. Ingram__

19              Stacy M. Ingram, CCR

20

21

22

23

24

**/**

**/s** [1] - 47:18

**1**

**1** [2] - 26:6, 47:9
**1:00** [1] - 1:10
**1:58** [1] - 46:18

**2**

**2016** [1] - 28:23
**2019** [2] - 27:23, 28:23
**2022** [3] - 1:10, 47:11, 47:14
**21-534-MN-CJB** [2] - 1:4, 3:13
**23** [2] - 1:10, 47:11
**23rd** [1] - 47:14

**4**

**47** [1] - 47:9

**5**

**5964971** [1] - 27:23

**8**

**8** [11] - 39:22, 40:19, 40:21, 40:23, 41:1, 41:3, 41:10, 41:13, 42:8, 45:24

**9**

**9** [3] - 41:4, 41:10, 41:13

**A**

**ability** [6] - 5:23, 6:7, 11:9, 13:1, 16:11, 25:24
**above-captioned** [1] - 47:11
**accurate** [1] - 47:10
**acknowledge** [1] - 31:10
**acknowledged** [1] - 8:8
**acknowledgement** [1] - 22:5
**acknowledges** [2] - 18:6, 22:9
**acquired** [2] - 21:1, 21:13, 21:14
**acquiring** [1] - 27:5
**acquisition** [1] - 13:19
**act** [7] - 20:19, 20:21, 23:1, 23:10, 23:18, 23:22, 24:14
**action** [3] - 3:13, 20:14, 41:17
**actionable** [4] - 24:6, 24:15, 25:18
**acts** [4] - 20:11, 20:22, 23:5, 25:17
**actual** [2] - 6:18, 41:11
**ADAM** [1] - 2:3
**Adam** [1] - 4:14
**adamant** [1] - 38:7
**add** [4] - 5:13, 5:14, 27:13, 45:13
**address** [3] - 17:14, 30:9, 43:23
**addresses** [2] - 16:19, 39:18
**addressing** [6] - 4:5, 4:11, 4:16, 18:15, 18:16, 18:17
**adequate** [5] - 30:1, 35:2, 35:6, 37:16, 38:1
**adequately** [1] - 38:7
**afternoon** [6] - 3:1, 3:10, 3:22, 4:1, 4:12, 4:16
**agree** [1] - 29:8
**ahead** [1] - 33:15
**al** [4] - 1:3, 1:6, 3:12
**allegation** [6] - 6:16, 9:23, 28:7, 28:9, 33:5, 36:7
**allegations** [7] - 6:4, 11:7, 28:3, 32:14, 32:16, 35:13, 46:3
**alleged** [12] - 5:20, 6:14, 7:11, 7:21, 10:3, 31:7, 33:19, 33:21, 35:21, 38:7, 42:14, 45:6
**allegedly** [4] - 6:20, 12:7, 16:11, 34:7
**alleging** [4] - 30:22, 31:12, 44:3, 44:16
**allow** [1] - 40:1
**allows** [3] - 39:22,
40:21, 41:4
**alluded** [1] - 41:15
**almost** [1] - 21:10
**alone** [1] - 23:1
**alternative** [9] - 36:13, 37:5, 39:6, 39:23, 40:10, 40:14, 40:22, 41:5, 45:23
**ambiguity** [1] - 30:10
**amended** [2] - 6:17, 32:16
**Andretti** [1] - 39:10
**Andrew** [1] - 3:23
**ANDREW** [1] - 1:20
**another's** [1] - 23:14
**answer** [5] - 26:5, 26:19, 26:22, 42:16, 46:12
**apologize** [1] - 27:14
**APPEARANCES** [2] - 1:17, 2:1
**applicability** [1] - 18:8
**applicable** [1] - 20:5
**applies** [1] - 30:8
**appreciate** [2] - 46:8, 46:13
**appropriate** [1] - 29:6
**archive** [1] - 28:8
**arguing** [2] - 7:10, 12:4
**argument** [13] - 3:15, 4:24, 5:6, 5:8, 5:18, 6:9, 22:15, 23:7, 29:7, 30:10, 30:23, 33:22, 42:13
**arguments** [6] - 5:3, 5:7, 29:21, 32:11, 46:8
**articulated** [1] - 25:16
**articulating** [1] - 22:24
**articulation** [1] - 27:2
**ASHBY** [1] - 1:19
**Ashby** [1] - 3:23
**aspects** [1] - 6:16
**assert** [5] - 13:22, 14:24, 25:13, 29:6, 30:12
**asserted** [7] - 13:4, 15:6, 25:9, 25:21, 26:2, 30:11, 42:18
**asserting** [2] - 14:18, 25:7
**assertion** [3] - 5:24, 30:15, 33:7
**assumption** [1] - 23:14
**attention** [1] - 27:22
**Austin** [1] - 3:24
**authority** [6] - 21:21, 23:14, 29:2, 29:6, 39:15, 40:1
**available** [1] - 38:9
**availed** [2] - 38:13, 46:5
**avoid** [1] - 43:10

**B**

**BARNES** [1] - 2:2
**Barnes** [1] - 4:13
**based** [10] - 10:24, 25:24, 30:13, 31:15, 32:2, 32:5, 35:18, 35:23, 36:5, 36:8, 37:8, 39:4, 43:11, 44:10, 45:11
**basic** [3] - 5:24, 37:9, 39:4
**basis** [11] - 6:13, 10:22, 11:5, 11:13, 13:15, 14:5, 17:21, 19:18, 32:24, 33:18, 44:13
**BearBox** [7] - 3:11, 3:24, 11:11, 16:10, 30:7, 30:11, 38:6
**BEARBOX** [1] - 1:3
**BearBox's** [4] - 11:1, 16:7, 32:18, 46:3
**BEFORE** [1] - 1:14
**begin** [1] - 3:20
**beginning** [1] - 4:9
**behalf** [1] - 3:24
**BENJAMIN** [1] - 1:23
**Benjamin** [1] - 4:3
**between** [1] - 25:11
**big** [1] - 44:19
**Binn** [2] - 12:13, 12:14
**BORUN** [1] - 1:22
**Borun** [1] - 4:2
**breach** [2] - 36:17, 37:13
**brief** [11] - 3:15, 7:20, 8:8, 17:8, 18:7, 18:13, 21:5, 23:6, 28:3, 28:18, 29:12
**briefing** [18] - 5:14, 7:8, 7:9, 7:22, 9:15, 24:17, 25:16, 28:1, 29:5, 29:10, 30:14, 31:4, 31:5, 33:2, 38:5, 39:14, 43:3, 44:20
**briefly** [2] - 18:12, 31:2
**briefs** [1] - 7:18
**broader** [3] - 20:24, 26:20, 45:9
**broadly** [1] - 26:15
**Buena** [2] - 27:24, 28:7
**build** [1] - 24:9
**bunch** [1] - 33:8
**BURKE** [1] - 1:14
**Burke** [1] - 3:2
**business** [2] - 25:22, 25:23
**BY** [5] - 1:20, 1:22, 1:23, 2:3, 2:3

**C**

**C.A** [1] - 1:4
**CamSoft** [16] - 12:11, 16:2, 16:7, 17:7, 17:15, 17:17, 18:2, 18:8, 19:5, 19:9, 19:20, 19:23, 28:22, 28:23, 29:2
**CamSoft's** [1] - 18:14
**CamSosft** [1] - 12:15
**cannot** [4] - 37:2, 43:10, 43:21, 44:13
**captioned** [1] - 47:11
**car** [9] - 14:10, 14:11, 14:12, 14:13, 14:15, 14:17, 22:14, 22:16
**care** [1] - 46:16
**case** [41] - 10:24, 12:11, 12:13, 12:14, 13:16, 16:2, 16:18, 16:20, 17:11, 20:3, 20:4, 20:10, 24:24, 26:10, 28:1, 28:21, 29:1, 29:3, 30:22, 31:19, 34:4, 34:6, 34:8, 34:13, 34:14, 34:15, 34:23, 36:2, 36:5, 39:1, 39:9, 39:17, 39:24, 40:12, 40:17, 40:18, 40:19, 40:20, 42:5, 43:7
**cases** [7] - 8:16, 9:14, 17:9, 29:9, 39:9, 40:24, 41:1
**Castle** [1] - 47:2
**CCR** [1] - 47:19
**certain** [3] - 13:6, 19:10, 42:6
**certainly** [5] - 5:13, 8:7, 42:24
**CERTIFICATE** [1] - 47:5

**Certified** [1] - 47:7
**certify** [1] - 47:8
**CHAD** [1] - 2:3
**Chad** [1] - 4:13
**challenge** [1] - 14:21
**chance** [2] - 27:16, 29:15
**channel** [6] - 13:4, 21:16, 21:20, 22:11, 22:12, 25:9
**chooses** [1] - 20:15
**CHRISTOPHER** [1] - 1:14
**circuit** [9] - 31:6, 31:11, 31:11, 34:4, 34:10, 34:11, 34:16, 43:18, 45:21
**circumstance** [1] - 31:18
**circumstances** [1] - 31:12
**cite** [3] - 20:3, 26:5, 40:24
**cited** [5] - 12:13, 17:9, 24:17, 27:24, 29:4
**cites** [1] - 40:20
**civil** [2] - 3:12, 39:22
**claim** [83] - 4:22, 4:24, 5:1, 5:2, 5:4, 5:7, 5:9, 6:13, 7:1, 7:21, 10:24, 11:3, 11:4, 11:5, 11:14, 12:1, 12:5, 13:5, 13:16, 14:6, 14:14, 14:23, 15:5, 15:7, 16:7, 17:10, 17:11, 18:21, 18:24, 29:23, 30:2, 30:13, 30:18, 31:7, 31:17, 31:22, 32:2, 32:4, 32:5, 32:12, 32:21, 32:22, 33:6, 33:11, 33:19, 33:23, 34:20, 35:4, 35:13, 35:15, 35:16, 35:20, 35:24, 36:3, 36:10, 36:24, 37:2, 37:13, 37:23, 38:2, 38:5, 38:8, 38:9, 38:12, 38:13, 39:4, 39:5, 39:6, 40:2, 40:10, 41:7, 41:8, 41:11, 42:14, 42:17, 42:21, 42:24, 44:3, 45:10, 46:1, 46:2, 46:6
**claimant** [1] - 15:8
**claims** [15] - 4:21, 11:16, 13:6, 18:18, 35:17, 35:23, 36:5, 36:8, 36:14, 37:8,

37:24, 38:4, 38:14, 40:15, 46:4
**clarification** [2] - 6:12, 28:12
**clear** [4] - 6:3, 13:15, 24:24, 34:24
**clearly** [4] - 16:19, 16:22, 35:23, 39:2
**co** [1] - 4:2
**co-counsel** [1] - 4:2
**collateral** [1] - 22:18
**colleague** [1] - 15:23
**coming** [1] - 7:8
**comma** [1] - 23:11
**compete** [2] - 24:10, 24:21
**competing** [1] - 27:8
**competitor** [2] - 27:5, 27:7
**competitors** [1] - 27:6
**complaint** [9] - 4:22, 6:1, 6:18, 25:8, 32:16, 33:5, 35:7, 35:14, 36:14
**computer** [1] - 9:17
**concept** [1] - 20:18
**concluded** [1] - 16:4
**conclusion** [2] - 19:17, 43:7
**conduct** [6] - 35:19, 35:24, 36:6, 36:8, 36:16, 37:9
**confidential** [21] - 30:14, 30:19, 31:8, 31:20, 32:3, 32:6, 32:9, 34:7, 34:21, 42:15, 42:19, 42:22, 43:1, 43:5, 44:5, 44:17, 45:4, 45:5, 45:11
**confidential/non** [1] - 32:9
**confidential/non-confidential** [1] - 32:9
**confidentiality** [3] - 31:16, 32:22, 43:8
**consistent** [1] - 23:21
**consists** [1] - 23:10
**consolidate** [1] - 20:22
**constitute** [1] - 20:12
**constitutes** [2] - 20:9, 43:5
**contemplate** [5] - 17:21, 24:18, 27:20, 42:24, 43:8
**contemplates** [2] -

26:10, 42:8
**contending** [1] - 43:14
**content** [1] - 39:4
**context** [4] - 14:8, 19:19, 24:1, 42:9
**continue** [1] - 42:5
**CONTINUED** [1] - 2:1
**continued** [1] - 46:14
**contract** [4] - 9:21, 31:10, 36:17, 37:13
**control** [1] - 21:18
**controlling** [2] - 29:1, 45:20
**conversion** [54] - 4:22, 5:1, 5:7, 5:17, 6:18, 7:1, 7:6, 9:2, 9:10, 10:24, 11:5, 11:14, 11:19, 12:4, 12:14, 12:18, 12:22, 13:5, 13:16, 13:18, 14:6, 14:23, 15:4, 15:22, 16:5, 17:9, 17:11, 17:22, 18:4, 20:4, 20:9, 20:12, 20:21, 20:23, 21:24, 23:9, 23:16, 23:19, 23:20, 23:22, 24:7, 24:16, 26:20, 27:14, 28:7, 28:9, 28:18, 32:4, 35:24, 36:18, 37:14, 38:11, 41:20, 41:23
**convert** [1] - 8:21
**converted** [19] - 6:15, 6:17, 6:20, 7:3, 7:12, 7:24, 8:6, 8:10, 8:13, 9:7, 10:3, 11:1, 11:8, 12:2, 12:7, 14:20, 14:21, 16:11, 16:24
**conveyance** [1] - 9:5
**convince** [1] - 14:15
**copied** [3] - 24:20, 28:5, 28:8
**copies** [1] - 12:17
**copy** [15] - 6:4, 9:4, 9:8, 10:12, 10:21, 11:11, 11:24, 12:1, 12:6, 12:7, 16:10, 17:6, 25:1, 26:9, 26:13
**correct** [12] - 6:12, 7:23, 10:7, 12:10, 18:14, 19:3, 30:3, 30:24, 31:24, 34:1, 40:7, 40:17
**correctly** [3] - 9:9, 11:3, 29:22

**correctness** [1] - 18:8
**counsel** [9] - 3:18, 3:19, 3:21, 4:2, 4:10, 4:19, 5:11, 16:14, 46:8
**Counsel** [1] - 1:24, 2:5
**COUNSEL** [1] - 3:4
**count** [6] - 37:1, 37:3, 37:4, 37:13, 37:14
**County** [1] - 47:2
**course** [7] - 7:4, 16:20, 18:13, 26:12, 27:24, 28:24, 29:2
**COURT** [46] - 1:1, 3:1, 3:5, 4:4, 4:7, 4:18, 7:7, 8:2, 9:20, 10:8, 11:17, 12:19, 14:7, 15:20, 16:13, 17:16, 18:11, 20:1, 21:3, 24:23, 25:3, 26:14, 27:12, 28:13, 28:16, 29:8, 30:16, 31:1, 32:8, 33:1, 33:20, 34:2, 34:18, 36:11, 38:16, 38:20, 40:3, 40:23, 42:10, 43:24, 44:14, 45:1, 45:5, 45:12, 45:15, 46:7
**Court** [10] - 1:14, 4:16, 28:12, 36:22, 37:9, 37:16, 37:21, 43:6, 43:22, 47:7
**court** [34] - 3:6, 3:13, 12:13, 13:14, 13:17, 16:18, 17:10, 17:19, 18:2, 18:5, 19:9, 20:4, 20:8, 20:11, 20:15, 22:23, 23:4, 23:9, 23:21, 25:5, 25:17, 26:4, 34:24, 37:11, 37:20, 39:1, 39:19, 39:20, 39:21, 39:24, 40:22, 45:21
**Court's** [3] - 19:14, 27:22, 44:8
**courts** [2] - 18:23, 36:1
**create** [1] - 9:22
**current** [1] - 4:21
**customer** [1] - 24:8
**cut** [2] - 17:8, 18:24
**Cytogel** [1] - 39:10

# D

**damages** [2] - 43:13, 43:20

**correctness** [1] - 18:8
**deal** [1] - 5:6
**dealing** [1] - 31:19
**deals** [1] - 22:1
**dealt** [5] - 9:15, 16:3, 34:6, 34:14, 36:1
**debating** [1] - 18:7
**deciding** [1] - 37:10
**decision** [7] - 17:15, 17:17, 17:18, 18:14, 19:1, 19:6, 19:22, 20:8, 24:19, 26:7, 28:23, 33:3, 33:8, 39:16, 44:9, 44:10, 44:19
**decisions** [3] - 24:17, 27:20, 39:16
**declared** [1] - 13:18
**Defendant** [1] - 2:5
**defendant** [17] - 9:22, 9:24, 11:24, 12:2, 14:11, 14:13, 14:17, 14:20, 17:6, 17:7, 24:7, 26:9, 26:16, 31:13, 36:19, 36:21, 39:8
**defendant's** [14] - 3:16, 4:8, 5:10, 7:15, 8:9, 8:18, 10:5, 14:16, 14:19, 16:17, 23:6, 25:12, 28:2, 29:20
**Defendants** [1] - 1:7
**defendants** [5] - 4:14, 25:8, 25:20, 41:22, 44:4
**defense** [1] - 30:17
**defense's** [1] - 33:13
**definition** [1] - 26:20
**Delaware** [3] - 3:21, 4:9, 47:1
**DELAWARE** [1] - 1:1
**deleted** [2] - 28:6, 28:10
**deletes** [1] - 8:19
**denied** [1] - 17:20
**deprivation** [16] - 6:14, 7:5, 9:3, 10:10, 10:20, 12:16, 13:20, 15:19, 16:6, 16:9, 23:7, 23:10, 23:12, 23:18, 23:23
**deprive** [1] - 13:23
**deprived** [3] - 6:6, 10:13, 10:15
**depriving** [5] - 5:21, 12:24, 15:13, 17:3, 23:15
**describing** [1] - 12:22

develop [1] - 9:22
developed [1] - 9:16
developing [1] - 15:16
development [1] - 35:1
different [6] - 5:2, 11:6, 11:14, 28:10, 32:15, 33:22
differently [2] - 8:20, 33:21
digital [1] - 26:9
Dilio [1] - 20:10
direct [1] - 26:4
directly [1] - 32:23
disagree [2] - 7:16, 19:4
discussed [2] - 9:15, 15:15
discussion [2] - 19:14, 20:8
disgorgement [1] - 41:21
dismiss [7] - 3:15, 4:20, 19:2, 32:11, 33:23, 36:20, 36:21
dismissal [1] - 4:24
dismissed [7] - 11:4, 29:23, 36:6, 36:23, 37:1, 37:24, 39:6
dispositive [1] - 34:20
dispute [3] - 7:23, 31:5, 34:22
distinction [1] - 32:9
distinguish [1] - 34:5
distinguished [2] - 40:6, 40:8
distinguishes [1] - 39:18
distinguishing [2] - 40:5, 40:13
DISTRICT [2] - 1:1, 1:1
District [2] - 1:14, 28:24
divorced [1] - 7:2
document [1] - 7:2
documents [12] - 6:19, 6:22, 6:23, 7:4, 8:1, 8:5, 9:4, 9:10, 9:11, 10:11, 10:14, 16:5
down [1] - 5:18
draw [1] - 27:22
drawing [2] - 26:8, 26:10
Drilling [1] - 20:10
drive [5] - 8:16, 8:17, 9:12, 9:17

Dual [1] - 20:10
dual [3] - 22:7, 24:15, 27:20

## E

e-mail [2] - 8:23, 9:5
e-mailed [1] - 26:9
e-mails [1] - 26:12
Eastern [1] - 28:24
efficiency [1] - 44:15
either [3] - 8:13, 15:11, 30:3
electronic [33] - 6:19, 6:23, 7:4, 7:24, 8:4, 8:10, 8:12, 8:14, 8:19, 8:21, 9:4, 9:5, 9:10, 10:2, 10:11, 10:14, 11:11, 11:22, 12:7, 14:8, 16:5, 16:23, 17:2, 17:4, 24:1, 24:4, 25:10, 25:20, 26:17, 26:19, 27:21, 28:4
electronically [4] - 6:3, 7:13, 7:14
element [7] - 5:4, 29:24, 30:7, 38:23, 39:8, 41:8, 46:1
elements [3] - 35:14, 38:8, 41:7
elimination [1] - 24:3
end [3] - 26:18, 46:15, 46:18
ends [1] - 12:6
enriched [2] - 31:13, 45:7
enrichment [39] - 4:23, 5:2, 5:9, 11:16, 29:19, 30:13, 31:7, 31:8, 31:22, 32:2, 32:5, 32:19, 32:24, 33:6, 33:11, 35:4, 35:16, 35:19, 35:21, 36:9, 36:15, 36:19, 38:18, 39:5, 40:2, 42:1, 42:4, 42:14, 42:20, 43:20, 44:3, 44:4, 44:12, 44:17, 45:10, 45:17, 45:23, 46:6
entered [1] - 9:21
entirely [1] - 34:20
entirety [1] - 10:4
entitled [2] - 13:22, 41:23
ESQ [6] - 1:20, 1:22, 1:23, 2:3, 2:3, 2:4

essential [1] - 39:7
establish [1] - 30:7
established [2] - 5:20, 45:22
et [4] - 1:3, 1:6, 3:11, 3:12
Euro [1] - 28:14
evidence [3] - 17:20, 19:10, 19:16
exactly [6] - 20:13, 20:20, 24:14, 24:18, 26:11, 33:9
example [13] - 8:15, 10:4, 12:15, 13:2, 15:13, 15:17, 20:14, 21:6, 22:10, 22:14, 23:19, 24:7, 27:4
examples [4] - 12:22, 21:4, 21:11, 22:22
exclusive [2] - 24:4, 27:3
exercise [2] - 21:18, 23:13
exist [1] - 22:10
exists [1] - 35:8
expand [1] - 20:22
explains [1] - 25:5
explicit [4] - 13:17, 22:4, 22:23, 24:19
explicitly [2] - 12:12, 22:8
extent [4] - 6:21, 19:11, 30:17, 42:13

## F

fact [9] - 19:6, 19:21, 22:4, 22:8, 24:16, 34:13, 35:20, 38:5, 44:11
facts [4] - 16:21, 19:9, 20:5, 43:16
failed [1] - 38:1
fails [2] - 16:8, 36:4
fair [2] - 29:15, 45:3
false [1] - 14:17
favorable [1] - 43:16
federal [16] - 5:5, 31:6, 31:11, 31:21, 33:17, 34:10, 34:16, 39:9, 39:19, 39:21, 39:24, 40:22, 41:4, 42:8, 45:24
few [3] - 3:9, 5:2, 5:12
fifth [6] - 5:4, 29:24, 30:7, 38:23, 39:8, 45:21
file [1] - 29:12

filed [2] - 3:16, 15:6
files [4] - 9:13, 10:21, 11:12, 14:14
final [1] - 16:1
finely [1] - 44:10
first [12] - 3:9, 3:19, 5:6, 5:10, 17:14, 18:12, 20:6, 23:17, 29:6, 29:20, 30:6, 32:15
five [4] - 36:14, 36:19, 36:22, 37:4
flow [1] - 24:5
focused [1] - 19:15
FOR [1] - 1:1
foregoing [1] - 47:9
form [1] - 41:9
forth [2] - 8:3, 38:4
forward [1] - 40:2, 45:10
four [8] - 20:19, 20:23, 21:6, 22:24, 25:17, 36:18, 37:3, 37:8
fourth [1] - 21:24
framing [1] - 6:9
front [1] - 5:10
full [1] - 23:8
future [1] - 46:11

## G

gains [1] - 41:22
gap [3] - 42:1, 42:6, 42:7
Geddes [1] - 3:23
GEDDES [1] - 1:19
generated [1] - 44:17
Gerstein [1] - 4:2
GERSTEIN [1] - 1:22
gist [2] - 6:8, 13:17
given [1] - 37:20
goods [2] - 23:14
governs [1] - 33:17
great [1] - 4:7
grounds [1] - 33:23
guess [22] - 6:11, 8:3, 8:7, 8:11, 10:9, 13:1, 15:13, 18:11, 19:2, 20:22, 25:10, 26:14, 29:20, 31:1, 33:14, 34:19, 35:4, 38:23, 40:3, 42:11, 43:24, 44:7
guidance [1] - 37:19

## H

Hall [7] - 39:17, 40:4, 40:12, 40:17, 40:19
hand [3] - 5:4, 37:6, 47:14
hands [1] - 13:8
happy [1] - 27:22
hard [5] - 8:16, 8:17, 9:12, 9:17
harm [1] - 35:21
health [1] - 46:14
hear [3] - 3:3, 3:14, 5:8
heard [1] - 29:16
heck [1] - 39:9
held [1] - 18:2
help [1] - 40:13
helpful [1] - 29:11
hereby [1] - 47:8
hereunto [1] - 47:13
hesitant [1] - 43:4
highlighted [1] - 33:8
holds [1] - 11:23
honor [1] - 15:24
Honor [56] - 3:4, 3:23, 4:6, 4:13, 6:10, 7:19, 9:1, 10:17, 10:23, 11:2, 12:10, 13:9, 14:4, 15:12, 17:13, 17:18, 17:24, 19:11, 20:7, 20:13, 21:1, 22:3, 22:14, 23:3, 23:17, 24:19, 25:2, 25:15, 26:1, 26:6, 27:2, 27:20, 28:1, 28:20, 29:3, 30:5, 32:1, 32:13, 34:12, 35:10, 36:1, 37:18, 37:23, 38:19, 39:13, 39:19, 40:17, 41:15, 42:23, 44:8, 44:24, 45:4, 45:9, 45:14, 45:18, 45:19
HONORABLE [1] - 1:14
Horton [10] - 4:3, 16:15, 16:16, 18:11, 27:15, 27:17, 29:3, 38:21, 40:4, 45:13
HORTON [20] - 1:23, 17:13, 17:17, 19:8, 20:6, 22:3, 25:2, 25:14, 27:1, 27:19, 28:15, 39:13, 40:16, 41:14, 42:23, 44:7, 44:23, 45:3, 45:8, 45:14

**horton** [1] - 4:6
**house** [3] - 22:19, 22:21
**humor** [1] - 45:1
**hundred** [1] - 16:20

## I

**idea** [2] - 11:20, 21:17
**identical** [2] - 16:4, 16:8
**identify** [2] - 3:18, 4:8
**ill** [1] - 41:22
**illegally** [1] - 24:21
**illustrate** [1] - 20:17
**imagine** [1] - 22:17
**impaired** [2] - 26:16, 26:22
**impairing** [1] - 26:21, 27:3
**impairment** [2] - 23:12, 27:3
**implicate** [2] - 42:15, 42:21
**implicated** [1] - 33:13
**implicates** [1] - 4:20
**Import** [1] - 13:16
**important** [6] - 18:9, 19:19, 19:20, 20:18, 23:3, 27:2
**improperly** [2] - 22:11, 22:13
**IN** [2] - 1:1, 47:13
**included** [1] - 30:9
**including** [1] - 20:24
**inclusive** [1] - 47:9
**inconsistent** [1] - 19:23
**incorporation** [1] - 32:19
**incorrect** [1] - 18:6
**indefinite** [1] - 23:16
**indicates** [1] - 17:7
**inform** [1] - 19:12
**information** [57] - 5:22, 5:23, 6:2, 6:6, 7:11, 7:12, 8:5, 8:10, 8:12, 8:14, 8:16, 8:20, 8:22, 10:2, 10:5, 10:16, 10:22, 11:22, 12:17, 14:8, 16:23, 16:24, 17:2, 17:5, 18:23, 24:4, 24:9, 25:1, 25:10, 25:21, 26:2, 26:17, 26:19, 26:24, 27:4, 27:21, 28:4, 28:8, 28:10, 30:14,

30:19, 31:9, 31:14, 31:20, 32:3, 32:6, 34:7, 34:21, 42:15, 42:18, 42:21, 43:1, 44:5, 44:18, 45:4, 45:6, 45:11
**infringement** [3] - 43:11, 43:13, 43:20
**Ingram** [3] - 47:7, 47:18, 47:19
**instance** [2] - 5:21, 20:16
**instances** [3] - 9:9, 9:11, 18:19
**instant** [1] - 17:24
**intangible** [2] - 7:1, 7:3
**intend** [1] - 46:10
**intentionally** [1] - 20:15
**interference** [5] - 15:11, 23:12, 23:23, 24:2, 24:3
**interfering** [1] - 15:18
**introducing** [1] - 19:16
**inventor** [1] - 33:12
**inventorship** [2] - 33:7, 33:18
**investments** [1] - 25:23
**involve** [1] - 12:24
**irrelevant** [1] - 19:7
**issue** [33] - 5:17, 6:2, 7:8, 15:22, 16:3, 16:4, 16:16, 16:19, 27:14, 28:2, 28:19, 29:19, 30:8, 31:2, 32:22, 33:3, 33:17, 34:3, 34:7, 34:19, 34:22, 36:2, 38:3, 38:11, 38:18, 38:23, 38:24, 39:12, 40:24, 42:11, 43:22, 45:17, 46:10
**issues** [4] - 4:5, 4:11, 19:15, 38:22
**item** [2] - 14:9, 22:2
**iteration** [1] - 4:21
**itself** [1] - 18:6

## J

**JOHN** [1] - 1:22
**John** [1] - 4:3
**joined** [1] - 4:1
**Judge** [3] - 1:14, 3:2, 44:2

**judgment** [7] - 17:18, 17:20, 18:14, 18:19, 19:1, 19:6, 19:12
**jump** [1] - 21:3

## K

**KAUFMANN** [22] - 2:3, 6:10, 7:19, 9:1, 10:7, 10:17, 12:9, 13:9, 15:3, 15:24, 28:20, 30:5, 30:24, 31:24, 32:13, 33:16, 34:1, 34:12, 35:10, 37:18, 38:19, 45:18
**Kaufmann** [11] - 4:15, 5:11, 15:20, 27:13, 27:14, 27:18, 28:17, 29:21, 38:18, 45:16
**keeps** [1] - 12:6
**kept** [1] - 17:6
**kind** [9] - 6:9, 8:14, 11:22, 12:21, 17:7, 31:5, 31:17, 32:11, 34:10
**kinds** [1] - 22:21
**know-how** [5] - 6:19, 6:21, 7:2, 7:8, 7:21
**knows** [2] - 10:23, 37:24

## L

**Labbe** [1] - 4:3
**LABBE** [1] - 1:22
**lace** [1] - 20:11
**lack** [1] - 19:9
**laid** [2] - 22:8, 23:21
**LANCIUM** [1] - 1:6
**Lancium** [5] - 3:12, 11:1, 11:8, 18:6, 20:21
**Lancium's** [1] - 19:22
**last** [5] - 12:19, 32:10, 33:3, 33:14, 36:15
**lastly** [1] - 26:15
**law** [26] - 5:19, 8:4, 11:19, 12:5, 12:20, 17:23, 18:4, 18:17, 20:3, 25:17, 30:1, 31:6, 31:21, 33:17, 35:2, 35:6, 36:4, 36:7, 36:13, 36:21, 37:6, 37:16, 41:7, 42:1, 44:13, 46:3
**least** [4] - 6:9, 25:16, 29:14, 38:15

**left** [2] - 16:17, 26:8
**legal** [5] - 14:1, 14:3, 14:14, 14:21, 15:5
**less** [1] - 43:16
**level** [1] - 18:23
**liberality** [1] - 40:18
**light** [1] - 3:8
**line** [1] - 4:3
**list** [1] - 24:8
**lists** [1] - 12:21
**literally** [1] - 8:13
**LLC** [4] - 1:3, 1:6, 3:11, 3:12
**loan** [1] - 22:18
**look** [6] - 16:18, 18:20, 21:9, 23:3, 31:11, 39:3
**looked** [1] - 37:12
**looks** [1] - 36:22
**lost** [1] - 6:5
**Louisiana** [24] - 5:19, 8:4, 11:19, 12:5, 12:13, 12:20, 13:14, 14:14, 16:18, 17:10, 17:22, 18:3, 18:5, 20:3, 20:7, 20:14, 22:23, 23:9, 25:17, 29:1, 36:21, 37:19, 39:1, 45:21

## M

**mail** [2] - 8:23, 9:5
**mailed** [1] - 26:9
**mails** [1] - 26:12
**manner** [2] - 21:2, 21:14
**Mark** [1] - 4:15
**MARK** [1] - 2:4
**market** [1] - 27:9
**Marshall** [1] - 4:2
**mARSHALL** [1] - 1:22
**mart** [1] - 40:20
**material** [1] - 12:8
**matter** [10] - 3:11, 6:24, 11:15, 30:8, 34:20, 36:4, 36:7, 41:4, 41:10, 47:11
**MAYO** [3] - 1:20, 3:22, 4:6
**Mayo** [2] - 3:23, 4:5
**Mayville** [5] - 24:18, 24:24, 26:5, 28:21, 28:24
**mean** [4] - 11:6, 21:23, 33:11, 42:12
**means** [1] - 36:12
**meant** [3] - 21:11,

30:18, 42:1
**mechanism** [3] - 14:2, 14:3, 15:13
**memory** [1] - 7:9
**mention** [1] - 34:14
**mentioned** [3] - 13:12, 29:4, 40:4
**methods** [1] - 35:24
**might** [3] - 19:13, 42:2, 44:21
**misappropriation** [1] - 35:22
**misinterpreted** [1] - 34:10
**modifying** [1] - 25:22
**Monday** [1] - 1:10
**money** [1] - 26:1
**motion** [8] - 3:15, 4:17, 4:20, 17:24, 19:2, 32:11, 33:22, 38:6
**move** [2] - 5:8, 29:18
**moves** [2] - 36:20, 36:21
**MR** [43] - 3:22, 4:6, 4:12, 6:10, 7:19, 9:1, 10:7, 10:17, 12:9, 13:9, 15:3, 15:24, 17:13, 17:17, 19:8, 20:6, 22:3, 25:2, 25:14, 27:1, 27:19, 28:15, 28:20, 30:5, 30:24, 31:24, 32:13, 33:16, 34:1, 34:12, 35:10, 37:18, 38:19, 39:13, 40:16, 41:14, 42:23, 44:7, 44:23, 45:3, 45:8, 45:14, 45:18

## N

**nature** [3] - 31:19, 32:14, 32:21
**near** [1] - 46:11
**nearly** [1] - 16:3
**necessarily** [3] - 16:8, 23:1, 26:12
**need** [3] - 37:22, 38:10, 44:9
**needs** [2] - 43:6, 43:23
**NELSON** [1] - 2:4
**Nelson** [1] - 4:15
**never** [3] - 6:5, 6:6, 9:24
**nevertheless** [1] - 13:7

**new** [1] - 29:13
**New** [1] - 47:2
**non** [7] - 30:14, 30:19, 31:20, 32:6, 34:21, 42:15, 44:5
**non-confidential** [7] - 30:14, 30:19, 31:20, 32:6, 34:21, 42:15, 44:5
**Notary** [1] - 47:8
**note** [3] - 12:21, 19:24, 20:18
**noted** [3] - 7:22, 45:19, 46:1
**notes** [1] - 47:10
**noting** [1] - 18:10
**number** [14] - 3:13, 13:2, 20:19, 20:23, 20:24, 21:12, 21:15, 21:19, 22:10, 22:24, 25:6, 36:17, 40:24

**O**

**obtained** [1] - 7:13
**obtaining** [2] - 22:1, 25:23
**occur** [1] - 9:10
**OF** [2] - 1:1, 47:5
**one** [30] - 4:22, 4:24, 5:4, 6:11, 6:19, 8:16, 9:14, 11:24, 15:13, 20:21, 20:24, 21:12, 21:16, 21:24, 25:4, 25:18, 27:2, 27:22, 28:21, 29:23, 30:3, 33:5, 35:2, 35:8, 36:17, 36:23, 37:6, 37:13, 42:11, 45:1
**operative** [1] - 4:22
**opinion** [1] - 19:12
**opposite** [1] - 44:21
**order** [1] - 43:9
**original** [2] - 10:24, 28:5
**otherwise** [4] - 27:10, 31:18, 34:8, 35:6
**outside** [1] - 31:7
**own** [3] - 13:6, 19:23, 46:3
**owner** [14] - 5:22, 9:7, 9:14, 10:11, 10:13, 10:21, 12:16, 12:24, 13:23, 15:14, 15:17, 16:6, 20:20, 24:24
**ownership** [14] - 13:3, 13:22, 13:24, 14:18,

14:24, 15:6, 15:14, 15:18, 20:16, 25:9, 25:13, 25:18, 25:21, 26:2

**P**

**p.m** [2] - 1:10, 46:18
**page** [1] - 26:6
**Pages** [1] - 47:9
**paid** [1] - 9:18
**paragraphs** [1] - 33:8
**parse** [2] - 36:11, 44:9
**part** [2] - 34:5, 44:19
**partial** [1] - 22:7
**particularly** [1] - 29:10
**parties** [6] - 7:9, 7:15, 7:16, 9:21, 29:9, 46:12
**partly** [1] - 44:14
**partners** [1] - 4:14
**party** [6] - 5:21, 8:13, 9:16, 9:18, 13:6, 41:5
**passed** [2] - 25:11, 30:19
**patent** [18] - 10:23, 11:8, 11:15, 13:14, 14:4, 31:14, 32:17, 32:20, 32:23, 33:17, 43:11, 43:13, 43:14, 43:15, 43:18, 43:19, 44:13
**patent-like** [1] - 43:11
**patented** [2] - 11:10, 32:17
**patenting** [1] - 11:2
**pending** [1] - 3:15
**percent** [1] - 16:21
**permanently** [1] - 23:15
**permit** [1] - 41:12
**permits** [1] - 31:6
**person** [2] - 13:20, 21:7
**perspective** [1] - 44:15
**Pharma** [1] - 39:11
**physical** [11] - 6:22, 7:2, 9:12, 13:24, 14:9, 14:12, 14:18, 14:22, 14:23, 22:1
**physically** [4] - 8:15, 13:7, 17:1, 21:7
**piece** [1] - 11:21
**place** [1] - 21:16
**plaintiff** [40] - 3:24,

6:4, 6:5, 8:18, 9:23, 10:1, 10:11, 11:23, 12:1, 13:8, 14:10, 14:16, 15:2, 17:5, 17:6, 18:16, 19:15, 22:16, 22:20, 24:10, 24:13, 24:22, 26:8, 26:18, 29:24, 30:21, 31:12, 33:10, 35:3, 35:7, 36:24, 37:5, 37:7, 37:12, 37:17, 41:18, 42:2, 43:17, 44:11
**Plaintiff** [2] - 1:24, 37:1
**plaintiff's** [11] - 3:20, 16:14, 17:3, 23:11, 23:23, 24:2, 25:11, 26:16, 28:11, 38:21, 42:19
**Plaintiffs** [1] - 1:4
**plausible** [2] - 36:24, 37:2
**plead** [6] - 6:1, 18:22, 38:1, 39:3, 39:7, 41:5
**pleaded** [3] - 5:19, 37:7, 37:8
**pleading** [10] - 17:22, 18:15, 19:13, 39:22, 40:15, 40:21, 41:19, 43:2, 43:3, 45:8
**pleads** [1] - 35:7
**pled** [4] - 25:18, 35:21, 38:4, 45:23
**plug** [2] - 42:1, 42:5
**point** [12] - 6:11, 7:20, 8:7, 16:1, 18:12, 19:11, 19:20, 28:21, 29:17, 30:6, 43:8, 45:19
**pointed** [2] - 34:3, 34:4
**pointing** [1] - 20:13
**points** [2] - 18:9, 41:2
**portion** [1] - 19:22
**position** [2] - 6:23, 17:12
**positions** [2] - 19:23, 42:4
**possess** [2] - 14:19, 24:11
**possessed** [2] - 24:11, 26:18
**possessing** [1] - 22:12
**possession** [26] - 5:22, 6:6, 10:6, 10:13, 10:15, 12:15,

12:24, 13:21, 14:1, 15:1, 17:2, 20:17, 20:19, 21:1, 21:13, 21:14, 21:20, 22:7, 22:20, 23:15, 24:4, 24:15, 26:23, 27:3, 27:21
**possessor** [1] - 20:20
**possessory** [6] - 23:11, 23:24, 24:2, 26:17, 26:21, 26:22
**possibilities** [1] - 22:10
**possible** [2] - 12:21, 21:24
**potential** [4] - 10:19, 30:10, 41:9, 42:6
**potentially** [1] - 35:11
**practice** [1] - 25:24
**practices** [1] - 25:22
**precedence** [1] - 34:11
**precedent** [4] - 16:2, 34:16, 45:20, 45:22
**Precision** [1] - 34:17
**preclude** [1] - 14:2
**precluded** [1] - 36:9
**predates** [1] - 28:22
**preempted** [4] - 32:7, 32:21, 43:21, 44:13
**preemption** [13] - 5:5, 30:2, 30:8, 30:23, 31:2, 33:13, 33:16, 33:19, 33:23, 34:3, 34:16, 42:11, 43:10
**presumably** [1] - 7:14
**presumption** [1] - 30:16
**pretty** [4] - 16:19, 16:21, 20:5, 39:2
**prevail** [1] - 30:3
**prevailed** [1] - 15:8
**prevent** [1] - 11:9
**previously** [2] - 27:7, 32:15
**primary** [1] - 6:13
**problem** [1] - 41:13
**procedure** [3] - 39:22, 41:4, 42:8
**proceed** [1] - 35:16
**product** [3] - 24:9, 27:9, 27:10
**profits** [1] - 24:13
**promise** [1] - 31:15
**proper** [1] - 6:24
**properly** [1] - 10:3
**property** [25] - 5:23, 6:15, 6:17, 8:6, 9:3,

9:8, 10:10, 11:2, 11:7, 11:13, 11:21, 11:23, 12:2, 12:17, 13:1, 13:6, 13:19, 13:21, 13:23, 14:3, 14:10, 15:11, 15:14, 16:6, 16:11
**protectable** [1] - 18:3
**prove** [1] - 18:22
**provide** [1] - 41:17
**provided** [1] - 31:15
**Public** [1] - 47:8
**purchases** [1] - 27:9
**put** [2] - 8:20, 28:8

**Q**

**quasi** [1] - 31:9
**questions** [2] - 5:12, 5:15
**quickly** [1] - 17:14
**quote** [2] - 23:8, 26:7
**quoted** [1] - 12:12

**R**

**re** [1] - 33:2
**re-reading** [1] - 33:2
**reach** [1] - 43:6
**reached** [1] - 19:17
**read** [2] - 21:4, 21:9
**reading** [2] - 33:2, 40:7
**real** [1] - 33:11
**really** [7] - 11:23, 17:11, 26:1, 30:9, 33:4, 34:22, 43:22
**realm** [1] - 14:22
**reasoning** [1] - 16:8
**reasons** [1] - 19:5
**rebuttal** [1] - 28:18
**receiving** [2] - 8:22, 9:4
**recent** [1] - 39:9
**recognize** [3] - 39:10, 39:14, 39:15
**recognized** [1] - 40:19
**recommendation** [1] - 46:11
**record** [6] - 3:8, 3:9, 3:19, 31:4, 46:16, 47:9
**recover** [1] - 42:3
**refer** [1] - 30:18
**reference** [1] - 40:24
**referred** [1] - 13:3
**refers** [2] - 6:18, 7:21

**regard** [4] - 5:16, 31:8, 42:11, 44:4
**regarding** [2] - 10:10, 20:4
**reiterate** [1] - 45:19
**rejected** [1] - 18:5
**relate** [2] - 5:5, 11:16
**related** [1] - 5:3
**relates** [1] - 30:17
**relied** [1] - 19:9
**relief** [2] - 40:10, 41:10
**relies** [1] - 40:21
**remains** [2] - 13:7, 13:8
**remedies** [2] - 42:2, 44:12
**remedy** [12] - 30:1, 35:2, 35:6, 35:7, 36:13, 37:6, 37:16, 39:7, 41:18, 41:21, 43:11, 46:2
**remember** [1] - 7:7
**removed** [1] - 21:16
**reply** [3] - 8:8, 18:7, 28:3
**report** [1] - 46:10
**reporter** [2] - 3:6, 3:7
**REPORTER** [1] - 47:5
**Reporter** [1] - 47:7
**representation** [1] - 43:4
**require** [2] - 9:2, 18:24
**required** [3] - 18:21, 19:13, 23:2
**requires** [2] - 12:14, 18:17
**respond** [1] - 29:15
**retained** [6] - 6:4, 9:8, 10:21, 12:17, 16:10, 25:1
**retaining** [1] - 26:13
**retains** [1] - 10:12
**Richard** [1] - 40:20
**rid** [1] - 8:19
**rights** [6] - 23:11, 23:24, 24:3, 26:17, 26:21, 26:23
**Rosinski** [1] - 43:7
**roundabout** [1] - 19:17
**rule** [12] - 39:21, 40:19, 40:21, 40:23, 41:1, 41:3, 41:4, 41:10, 41:13, 42:8, 45:24

**S**

**Safety** [1] - 27:23
**safety** [2] - 29:3, 46:14
**Sales** [1] - 13:16
**sales** [1] - 24:13
**satisfied** [1] - 35:14
**satisfy** [1] - 29:24
**save** [1] - 45:24
**saw** [1] - 21:5
**scenario** [13] - 10:19, 10:22, 11:20, 13:5, 13:10, 13:12, 15:4, 17:4, 18:20, 37:14, 37:20, 40:9, 41:12
**scenarios** [4] - 22:1, 22:6, 22:17, 32:1
**schematic** [6] - 24:8, 24:20, 26:8, 26:12, 27:5, 27:6
**seal** [1] - 47:14
**second** [4] - 4:23, 6:17, 27:7, 30:2
**secret** [7] - 35:17, 35:20, 35:22, 37:23, 38:1, 38:8, 38:14
**see** [3] - 10:19, 17:1, 45:10
**seeing** [1] - 29:22
**seek** [1] - 43:10
**seeking** [2] - 43:12, 44:11
**seeks** [1] - 41:18
**sense** [2] - 24:1, 39:20
**sent** [1] - 7:13
**separate** [2] - 20:17, 28:9
**separately** [1] - 32:21
**server** [1] - 28:11
**service** [1] - 3:7
**set** [3] - 6:8, 38:4, 47:13
**settle** [2] - 38:24, 39:11
**seven** [7] - 12:21, 13:3, 20:11, 21:4, 23:5, 23:22, 25:6
**seventh** [1] - 20:14
**shared** [1] - 31:9
**Shaw** [3] - 36:2, 36:4, 37:21
**short** [2] - 46:9, 46:10
**show** [1] - 46:3
**side** [23] - 3:16, 3:18, 3:20, 4:11, 7:15,

8:9, 8:18, 12:6, 15:23, 16:17, 22:2, 25:6, 25:11, 25:12, 29:15, 29:20, 38:21, 39:2, 41:2, 42:12, 42:19, 45:7
**sides** [1] - 12:21
**similarly** [1] - 4:8
**simply** [7] - 8:22, 16:9, 17:4, 37:2, 43:9, 43:10, 44:10
**situation** [7] - 9:15, 10:14, 13:11, 15:15, 22:6, 32:4, 35:15
**six** [1] - 22:10
**slightly** [1] - 33:21
**software** [6] - 9:16, 9:23, 9:24, 10:2, 15:16, 18:3
**sole** [2] - 10:13, 26:23
**solely** [1] - 33:4
**soliciting** [1] - 25:22
**someone** [5] - 11:9, 17:1, 22:15, 22:17, 22:18
**sorry** [3] - 28:15, 32:5, 34:15
**sort** [2] - 19:17, 23:17
**specific** [1] - 26:5
**split** [4] - 27:9, 39:15, 39:19, 39:24
**Stacy** [3] - 47:7, 47:18, 47:19
**stage** [2] - 41:19, 43:3
**standard** [3] - 17:22, 18:15, 19:14
**start** [3] - 3:19, 16:16, 38:22
**State** [1] - 47:1
**state** [6] - 16:18, 17:10, 20:4, 30:15, 39:20, 41:7
**statement** [1] - 23:18
**STATES** [1] - 1:1
**States** [1] - 1:14
**stay** [1] - 42:5
**stenographic** [1] - 47:10
**still** [7] - 14:19, 15:1, 15:19, 24:11, 26:18, 36:9, 38:12
**stop** [2] - 18:12, 40:3
**stored** [3] - 7:14, 9:11, 9:17
**Storms** [1] - 4:7
**STOVER** [2] - 2:3, 4:12
**Stover** [1] - 4:13

**stricken** [3] - 35:18, 38:2, 38:12
**strike** [1] - 38:6
**strongly** [1] - 17:12
**subject** [3] - 6:24, 11:15, 13:13
**submitted** [1] - 29:9
**subsequent** [1] - 39:17
**substance** [2] - 41:6, 41:8
**substantive** [2] - 41:11, 46:1
**successful** [3] - 14:20, 15:7, 35:3
**sufficient** [1] - 17:20
**suggesting** [1] - 19:18
**summarized** [1] - 9:9
**summarizes** [1] - 23:5
**summary** [7] - 17:18, 17:20, 18:14, 18:19, 19:1, 19:6, 19:12
**supplemental** [1] - 29:12
**support** [1] - 17:9
**supports** [1] - 17:12
**suppose** [1] - 35:12
**supposed** [1] - 9:22
**supreme** [18] - 12:13, 13:14, 13:17, 18:5, 20:7, 20:11, 20:15, 22:23, 23:4, 23:9, 23:21, 25:5, 25:17, 34:24, 37:19, 39:1, 45:21
**survive** [1] - 31:17
**sustained** [1] - 46:6

**T**

**talks** [1] - 24:19
**technology** [3] - 11:10, 32:18, 32:20
**teleconference** [3] - 3:11, 3:14, 46:15
**terms** [5] - 18:10, 19:16, 25:4, 25:21, 42:2
**text** [1] - 8:23
**THE** [48] - 1:1, 1:1, 1:14, 3:1, 3:5, 4:4, 4:7, 4:18, 7:7, 8:2, 9:20, 10:8, 11:17, 12:19, 14:7, 15:20, 16:13, 17:16, 18:11, 20:1, 21:3, 24:23, 25:3, 26:14, 27:12,

28:13, 28:16, 29:8, 30:16, 31:1, 32:8, 33:1, 33:20, 34:2, 34:18, 36:11, 38:16, 38:20, 40:3, 40:23, 42:10, 43:24, 44:14, 45:1, 45:5, 45:12, 45:15, 46:7
**themselves** [4] - 3:18, 4:9, 38:13, 46:5
**they've** [1] - 26:2
**thinking** [1] - 10:9
**third** [3] - 34:4, 34:9, 43:18
**THORNBURG** [1] - 2:2
**Thornburg** [1] - 4:13
**three** [4] - 21:20, 28:22, 36:18, 37:3
**tied** [2] - 6:21, 32:23
**today** [4] - 4:5, 23:7, 46:13, 46:16
**took** [3] - 21:14, 21:18, 28:2
**tort** [3] - 25:5, 40:10, 40:14
**total** [2] - 10:15, 29:3
**Total** [1] - 27:23
**totally** [1] - 14:17
**trade** [7] - 35:17, 35:20, 35:22, 37:23, 38:1, 38:8, 38:14
**transcript** [1] - 47:10
**transferred** [4] - 6:2, 21:20, 21:21, 31:21
**transmitted** [1] - 17:5
**tried** [1] - 37:17
**true** [3] - 8:8, 13:2, 47:9
**try** [1] - 29:14
**trying** [4] - 14:15, 20:22, 21:5, 22:17
**turn** [9] - 5:10, 5:11, 9:18, 15:22, 16:14, 27:15, 27:17, 29:19, 38:21
**turned** [2] - 33:4, 33:6
**turning** [1] - 15:17
**turns** [2] - 34:23, 41:24
**two** [4] - 4:20, 6:16, 9:20, 21:15, 29:21, 36:5, 36:18, 37:1, 37:14
**type** [4] - 8:5, 14:14, 24:14, 39:3
**types** [1] - 23:22

| U | W |
|---|---|
| **ultimately** [1] - 35:3 | **Wal** [1] - 40:20 |
| **Ultra** [1] - 34:16 | **Wal-mart** [1] - 40:20 |
| **unauthorized** [2] - 21:2, 21:13 | **Walter's** [3] - 34:14, 34:15, 38:24 |
| **under** [15] - 8:4, 11:18, 12:5, 16:7, 17:22, 18:3, 19:13, 24:6, 24:16, 25:17, 36:20, 37:13, 41:7, 41:23, 44:12 | **Walters** [11] - 34:23, 39:11, 39:16, 39:17, 39:18, 40:5, 40:6, 40:7, 40:8, 40:13, 45:20 |
| **understood** [2] - 7:10, 44:23 | **Warinski** [3] - 34:4, 34:13, 43:16 |
| **unfairly** [2] - 24:10, 24:21 | **ways** [3] - 31:16, 35:9, 35:11 |
| **UNITED** [1] - 1:1 | **whereby** [1] - 11:8 |
| **United** [1] - 1:14 | **WHEREOF** [1] - 47:13 |
| **unjust** [37] - 4:23, 5:1, 5:9, 29:18, 30:13, 31:6, 31:22, 32:2, 32:5, 32:18, 32:24, 33:6, 33:10, 35:4, 35:16, 35:19, 35:21, 36:8, 36:9, 36:15, 36:19, 38:17, 39:5, 40:1, 41:24, 42:4, 42:14, 42:20, 43:20, 44:2, 44:3, 44:12, 44:17, 45:10, 45:17, 45:22, 46:5 | **whole** [2] - 42:17, 44:19 |
| | **wholly** [1] - 16:2 |
| | **Wilmington** [1] - 47:15 |
| | **wish** [2] - 5:14, 46:13 |
| | **withheld** [2] - 9:13, 20:19 |
| | **WITNESS** [1] - 47:13 |
| | **WL** [1] - 27:23 |
| | **word** [3] - 20:16, 23:6, 23:8 |
| | **world** [1] - 31:14 |
| **unjustly** [2] - 31:13, 45:7 | **worth** [1] - 18:9 |
| **unlawfully** [1] - 24:12 | **wrongful** [3] - 13:20, 15:9, 23:13 |
| **unless** [2] - 14:1, 46:14 | |
| **unpled** [2] - 35:13, 35:14 | **Y** |
| **unsuccessful** [1] - 15:10 | |
| **untimely** [1] - 38:3 | **years** [1] - 28:22 |
| **up** [4] - 7:8, 12:6, 22:22, 32:10 | **yourself** [1] - 37:4 |
| **useful** [1] - 19:2 | |

| V |
|---|
| **Veritas** [1] - 28:14 |
| **version** [1] - 28:5 |
| **versus** [3] - 3:12, 39:20, 40:20 |
| **via** [3] - 5:15, 8:23, 9:4 |
| **viable** [2] - 11:4, 38:5 |
| **view** [4] - 8:12, 8:20, 12:5, 39:3 |
| **Vista** [2] - 27:24, 28:7 |