# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BEARBOX LLC and AUSTIN STORMS, ) | **REDACTED PUBLIC VERSION** |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | C.A. No. 21-534-MN-CJB |
| LANCIUM LLC, MICHAEL T. MCNAMARA, ) | |
| and RAYMOND E. CLINE, JR. ) | |
| ) | |
| Defendants. ) | |
| ) | |

## PLAINTIFFS' OPENING BRIEF IN SUPPORT OF THEIR MOTION TO EXCLUDE CERTAIN TESTIMONY OF DR. MARK EHSANI

*Of Counsel:*

Benjamin T. Horton
John R. Labbe
Raymond R. Ricordati, III
Chelsea M. Murray
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive
6300 Willis Tower
Chicago, IL 60606-6357
(312) 474-6300

Dated: June 15, 2022

ASHBY & GEDDES
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
amayo@ashbygeddes.com

*Attorneys for Plaintiffs*
*BearBox LLC and Austin Storms*

{01810474;v1 }

**TABLE OF CONTENTS**

I. BACKGROUND ................................................................................................................1

    A. Dr. Ehsani is an electrical engineer..........................................................................2

    B. Dr. Ehsani offers an opinion that Mr. Storms did not have an expectation of confidentiality in information he shared with Lancium .......................................2

    C. Dr. Ehsani further opines that Lancium's behavior did not prevent Mr. Storms from using his own system and ideas ............................................................3

II. LEGAL STANDARD........................................................................................................3

    A. Standard for exclusion of expert testimony .............................................................3

    B. Expert witnesses may not opine on subjects outside their fields of expertise ...................................................................................................................4

    C. An expert's opinions may not be based on subjective belief or speculation ...........4

III. ARGUMENT.....................................................................................................................5

    A. The Court should exclude Dr. Ehsani's opinions about Mr. Storms's expectations of confidentiality in his communications with Lancium ....................5

        1. Dr. Ehsani's qualifications as an electrical engineer do not qualify him to offer opinions about Mr. Storms's intentions or any fact questions about confidentiality ......................................................................5

        2. Dr. Ehsani's opinions about fact issues are unreliable and speculative, and would not be helpful to the jury because they are not rooted in any useful or reliable methodology .........................................6

    B. The Court should exclude Dr. Ehsani's opinions about whether Mr. Storms lost any opportunities to profit from his technology ..................................7

        1. Dr. Ehsani is not qualified to speak on the economics of any opportunities Mr. Storms lost as a result of Lancium's conduct .................7

        2. Dr. Ehsani's opinions are unreliable and unhelpful to the jury because they are speculative and are not based on a helpful or reliable methodology ................................................................................8

IV. CONCLUSION..................................................................................................................8

# **TABLE OF AUTHORITIES**

**CASES**

*Aloe Coal Co. v. Clark Equip. Co.*, 816 F.2d 110 (3d Cir. 1987).................................................. 4, 6

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) ......................................................... 3, 4

*Elcock v. Kmart Corp.*, 233 F.3d 734 (3d Cir. 2000) ...................................................................... 3, 6

*In re TMI Litig.*, 193 F.3d 613 (3d Cir. 1999) ..................................................................................... 5

*Mahmood v. Narciso*, 549 F. App'x 99 (3d Cir. 2013)......................................................................... 4

*Pell v. E.I. DuPont De Nemours & Co.*, 231 F.R.D. 186 (D. Del. 2005) ......................................... 4

*Schuchardt v. President of United States*, 802 F. App'x 69 (3d Cir.) ............................................. 3

*Senese v. Liberty Mut. Ins. Co.*, 661 F. App'x 771 (3d Cir. 2016) ....................................... 4, 5, 6, 7

**RULES**

Federal Rule of Evidence 702............................................................................................................. 3

The Court should exclude the purported expert opinions of Dr. Mark Ehsani about disputed facts for which he has no particular qualifications and applies no reliable methodology to arrive at his opinions. To the extent even relevant to the claims in this case, the jury will decide the facts, and Dr. Ehsani's opinions are not helpful because they are based on speculation and conjecture about disputed facts, and they are not grounded in reliable methodologies in his field of electrical engineering.[1] For example, in his expert report, Dr. Ehsani offers unhelpful and unsupported opinions about (1) whether Plaintiff Austin Storms had an expectation of confidentiality in information he shared with the Defendants, and (2) whether the Defendants' acts prevented Mr. Storms from capitalizing on his ideas. (Ex. A[2] (Ehsani Report) ¶ 353.)

These "opinions" are facts about which Dr. Ehsani is not a percipient witness. He lacks qualifications and does not implement a reliable methodology to offer any expert opinions about these fact issues. Dr. Ehsani is not qualified because his specialized experience is in the field of electrical engineering, not expectations of confidentiality or the economic value of Plaintiffs' information. Dr. Ehsani's speculative opinions, which turn on his own subjective interpretations, as opposed to any objective, technical analysis rooted in his specialized expertise, are unreliable and the Court should exclude them.

## I.   BACKGROUND

The Plaintiffs seek correction of inventorship of U.S. Patent No. 10,608,433 ("the '433 patent") because it claims inventions that Plaintiff Austin Storms conceived, and the Plaintiffs further seek remedies for Lancium's unauthorized use of technology and data that Plaintiffs disclosed to Lancium.

---

[1] If the Court denies this Motion, Plaintiffs may further seek to exclude Dr. Ehsani's testimony at trial or in a motion in limine based on relevance to the claims at issue in this case.
[2] All exhibits are attached to the Declaration of John R. Labbe, filed herewith.

### A. Dr. Ehsani is an electrical engineer

Dr. Ehsani holds undergraduate and graduate degrees in electrical engineering including a Ph.D. (Ex. A ¶ 6.) His "research and expertise includes, among other areas, power systems, power grid technologies, power electronics, renewable power systems, grid scale energy storage systems, dynamic loads, and their related technologies, such as variable value storage from the grid power generation." (Ex. A ¶ 6.) He teaches university courses about electrical power, is involved in professional engineering societies, and has published on issues "relating to power systems and applications" thereof. (Ex. A ¶¶ 5-12.) In his expert report, Dr. Ehsani claims to be "an expert in the areas of power systems, controlling electrical loads, including using computers to control electrical loads where such loads could include data centers, cryptocurrency miners, and/or other consumers of electrical power." (Ex. A ¶ 13.)

### B. Dr. Ehsani offers an opinion that Mr. Storms did not have an expectation of confidentiality in information he shared with Lancium

Dr. Ehsani opines multiple times in his report that Mr. Storms did not consider the information in emails provided to Mr. McNamara to be confidential. (Ex. A ¶¶ 19, 175, 188, 352, 353.) Dr. Ehsani says that he "understand[s] that Mr. Storms now states he considered the Excel spreadsheet attached to the May 9, 2019 email to Mr. McNamara to be confidential." (Ex. A ¶ 188.) Dr. Ehsani then outlines various facts about Mr. Storms's disclosures of his information to Lancium and others, and concludes that, in his "opinion," based on his prior involvement with "confidential technology," the nature of Mr. Storms's disclosures means that he did not consider the information he disclosed to be confidential. (Ex. A ¶ 188.) Dr. Ehsani goes so far as to opine that Mr. Storms's behavior means that he "was not seeking to protect his information or ideas" at all, much less maintain any confidentiality. (Ex. A ¶ 352.)

Dr. Ehsani explained at deposition that his opinion is about "confidential information and

the protocol or nondisclosure agreement [as] understood in the field by person[s] of ordinary skill, by responsible people and by people that consider themselves having confidential technology." (Ex. B at 169:1-9.) In sum, Dr. Ehsani asserts all of the information Mr. Storms provided to Lancium was not only "voluntarily" communicated, but also "with no reasonable expectation of confidentiality." (Ex. A ¶ 353.)

### C. Dr. Ehsani further opines that Lancium's behavior did not prevent Mr. Storms from using his own system and ideas

Dr. Ehsani opines that Lancium's conduct did not prevent Mr. Storms and BearBox from capitalizing on or using the information that Storms disclosed to Lancium. (Ex. A ¶¶ 19, 353.) His opinion rests on the fact that he has seen no evidence provided by Plaintiffs or Dr. McClellan of lost opportunities for Mr. Storms. (Ex. A ¶ 353.)

## II.  LEGAL STANDARD

### A.  Standard for exclusion of expert testimony

Under Federal Rule of Evidence 702, three restrictions govern the admissibility of expert testimony: qualifications, reliability, and fit. *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000); *see also Schuchardt v. President of United States*, 802 F. App'x 69, 75 (3d Cir.), *cert. denied sub nom. Schuchardt v. Trump*, 141 S. Ct. 367 (2020). With respect to qualifications, the trial judge must act as a "gatekeeper" to first ensure that an individual offering such testimony is "qualified by virtue of specialized expertise." *Elcock*, 233 F.3d at 741. With respect to reliability, expert testimony "must be supported by appropriate validation—i.e., 'good grounds,' based on what is known" and pertain to scientific or technical knowledge. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993). The proponent of the testimony bears the burden of establishing that expert testimony is admissible. *Daubert*, 509 U.S. at 592 n.10.

### B. Expert witnesses may not opine on subjects outside their fields of expertise

While aware of the generally "liberal policy of permitting expert testimony which will probably aid the trier of fact," courts nevertheless understand that such testimony must be based on "skill or knowledge greater than the average layman in" the proffered field. *Aloe Coal Co. v. Clark Equip. Co.*, 816 F.2d 110, 114-15 (3d Cir. 1987) (quotations omitted). Expertise in one area does not suffice for expertise in general because an expert may only opine on "issue[s] within his field of expertise, and the expert's opinion must be confined to that field." *Pell v. E.I. DuPont De Nemours & Co.*, 231 F.R.D. 186, 192 (D. Del. 2005). Expert testimony has bounds that a court draws by using its sound discretion to ensure an expert does not venture too far afield. *Aloe Coal*, 816 F.2d at 114 (finding that "determination of competency of an expert witness rests with the discretion of the district court"). Courts not only determine whether experts are qualified, but must also ensure they do not proffer opinions beyond their expertise.

### C. An expert's opinions may not be based on subjective belief or speculation

With respect to reliability of expert opinions, the Court must ascertain whether an expert's opinion is "based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'" and whether there exist "'good grounds' for his or her belief." *Mahmood v. Narciso*, 549 F. App'x 99, 102-03 (3d Cir. 2013) (quoting, inter alia, *Daubert*, 509 U.S. at 590). *Daubert* set forth several non-exhaustive factors to assess reliability of expert testimony: (1) whether the methodology can be and has been tested, (2) whether the technique has been subjected to peer review and publication; (3) the known or potential rate of error of the methodology; and (4) whether the technique has been generally accepted in the scientific community. *Daubert*, 509 U.S. at 589-95. An expert's methodology must include a sufficient "scientific or technical basis to verify" the purported conclusion. *Senese v. Liberty Mut. Ins. Co.*, 661 F. App'x 771, 775 (3d Cir. 2016). Expert witnesses must show more than a conclusion that is

generally related to "a litany of sources listed as reviewed." *Id.* Instead, courts require technical analysis that establishes sufficient nexus between the materials and the conclusions. *Id.*

### III. ARGUMENT

The Court should exclude Dr. Ehsani from offering opinions concerning fact issues about which he has no particular qualifications and for which he uses no reliable method in the field of electrical engineering to reach his conclusions. Instead, his opinions are speculation about fact disputes the jury must resolve.

> **A. The Court should exclude Dr. Ehsani's opinions about Mr. Storms's expectations of confidentiality in his communications with Lancium**
>
> **1. Dr. Ehsani's qualifications as an electrical engineer do not qualify him to offer opinions about Mr. Storms's intentions or any fact questions about confidentiality**

Dr. Ehsani's opinions about confidentiality extend outside the scope of his expertise. Dr. Ehsani broadly opines:

> In my opinion, as someone who has been involved with various forms of confidential technology for 40 years, Mr. Storms sending the spreadsheet and source code to Mr. Garland, the information to Mr. Franzen, and the information to Mr. McNamara, all without any agreements of confidentiality (oral or written), is inconsistent with Mr. Storms' statements that he considered the spreadsheet or information contained therein to be confidential.

(Ex. A ¶ 188.) In short, Dr. Ehsani's opinions depart from his field of electrical engineering, and are instead fact testimony masquerading as expert opinion where such testimony is not based on any specialized expertise that would be helpful to the jury. Dr. Ehsani specifically notes that he has "*seen*" companies sign NDAs, but is silent about any specialized expertise or experience related to NDAs or confidentiality in general. He is not a lawyer or a broker of technology transactions, but rather an electrical engineer. *See In re TMI Litig.*, 193 F.3d 613, 680 (3d Cir. 1999) (holding "a respected scientist" in plant irradiation who was "neither a medical doctor nor a

health physicist . . . plainly [did] not meet Rule 702's 'Qualifications' requirement" to "offer an expert opinion as to radiation-induced medical conditions" in humans). Dr. Ehsani merely identifies himself as "someone who has been *involved* with various forms of technology for 40 years." (Ex. A ¶ 188 (emphasis added).)

While "specialized knowledge" can include "practical experience," "a proffered expert witness must possess skill or knowledge greater than the average layman in the proffered field." *Elcock*, 233 F.3d at 741. For example, in *Aloe Coal*, the court found a tractor salesman not qualified to offer opinions about "the cause of [a] tractor shovel fire." 816 F.2d at 114-15. While the salesman "at times" was involved in "prepar[ing] damage estimates," the court noted his lack of engineering, construction, or mechanical experience and accordingly rejected his testimony. *Id.* Similarly, Dr. Ehsani's mere involvement with and observation of NDAs does not qualify him to offer opinion testimony about standards or intentions of confidentiality.

**2. Dr. Ehsani's opinions about fact issues are unreliable and speculative, and would not be helpful to the jury because they are not rooted in any useful or reliable methodology**

Dr. Ehsani does not point to any scientific or technical basis for his conclusions about confidentiality, but rather relies on "speculation and subjective belief." While Dr. Ehsani relies on Mr. Storms's deposition testimony, he offers no technical analysis to connect Mr. Storms's statements to the ultimate conclusion that Mr. Storms's communications to Mr. McNamara were "provided voluntarily by Mr. Storms to Mr. McNamara with no reasonable expectation of confidentiality." (Ex. A ¶ 353.) Dr. Ehsani merely describes the sources he uses in his report, and provides a speculative conclusion whether such sources contained confidential information. Such conclusory opinions are unreliable because they are "replete with legal conclusions that parrot[]" favorable theories or facts "without any independent basis" to support them or the proposition for which they stand. *Senese*, 661 F. App'x at 775 (opinions that merely "rest[] on a subjective

belief . . . [are] far from being helpful to the jury as required by Rule 702" because such opinions impermissibly "intrude[] on the jury's province to assess the credibility of witnesses").

While experts such as Dr. Ehsani may rely on external evidence to form an opinion, they still must relate and explain how their experience, expertise, or other scientific facts reinforces such evidence, rather than simply accept an assertion as true. *Id.* Dr. Ehsani fails to do so. Dr. Ehsani testified at his deposition that he is describing "protocols" for NDAs as they relate to "confidential technology," yet he does not describe any such protocols besides saying he has seen NDAs being signed. (Ex. B at 169:1-23.) Furthermore, even if Dr. Ehsani described such "protocols," he offers no analysis tying Mr. Storms's behavior and statements to Dr. Ehsani's conclusion that Mr. Storms's sending emails to multiple people as being inconsistent with a desire for such content to remain confidential. That is, even if such behavior *is* inconsistent with desires for confidentiality, Dr. Ehsani has done nothing more than repeat Mr. Storms's statements and announce his conclusions without any technical or scientific underpinning.

    **B.    The Court should exclude Dr. Ehsani's opinions about whether Mr. Storms lost any opportunities to profit from his technology**

        **1.    Dr. Ehsani is not qualified to speak on the economics of any opportunities Mr. Storms lost as a result of Lancium's conduct**

As discussed above, Dr. Ehsani has a background in electrical engineering, and this Court should not permit him to opine on matters relating to lost economic opportunities. In his report, Dr. Ehsani concludes there was no "money or opportunity that Mr. Storms lost because of materials and/or information provided to Lancium." (Ex. A ¶¶ 19, 353.) Dr. Ehsani lacks sufficient qualifications to opine on anyone's ability to "utilize" or "capitalize" on ideas and technology. Dr. Ehsani's knowledge of economics is at most limited to socio-economic aspects of sustainable energy in the realm of power electronics and power grids. (Ex. A App'x at 11, 29, 30, 47, 48 (listing awards and publications related to "socio-economic aspects of sustainable energy")). Dr.

Ehsani's economics experience does not qualify him to offer opinions about market harm, opportunities related to ideas and technology, or an ability to "capitalize" on technology.

### 2. Dr. Ehsani's opinions are unreliable and unhelpful to the jury because they are speculative and are not based on a helpful or reliable methodology

Dr. Ehsani does not offer any scientific or technical basis for his conclusions relating to Mr. Storms's ability to use his ideas and technology, but rather relies on speculation and subjective belief. Dr. Ehsani relies on speculative interpretations of his knowledge that "[n]either Mr. Storms nor Dr. McClellan identify any money or opportunity that Mr. Storms lost because of materials and/or information provided to Lancium, and neither have identified any opportunity that Mr. Storms lost as a result of Lancium's alleged use of the alleged Bearbox[*sic*] technology." (Ex. A ¶ 353.) In other words, Dr. Ehsani's opinions amount to the absence of evidence equating to the evidence of absence. This conclusion is unreliable because there is no technical analysis connecting it to the materials Dr. Ehsani used in forming that conclusion. Instead, Dr. Ehsani makes an incredible leap in logic to conclude, or at least imply, that Mr. Storms was not prevented from capitalizing on the BearBox technology. Dr. Ehsani's opinions parrot Lancium's attorney arguments without any technical underpinning, and should therefore be excluded as unreliable.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs ask the Court to exclude Dr. Ehsani's opinions about factual disputes about which he is not qualified and offers no methodology, including, (1) whether Plaintiff Austin Storms had an expectation of confidentiality in information he shared with the Defendants, or (2) whether the Defendants' acts prevented Mr. Storms from capitalizing on his ideas.

<table>
<tr><td>

*Of Counsel:*

Benjamin T. Horton
John R. Labbe
Raymond R. Ricordati, III
Chelsea M. Murray
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive
6300 Willis Tower
Chicago, IL 60606-6357
(312) 474-6300

Dated: June 15, 2022

</td><td>

ASHBY & GEDDES

*/s/ Andrew C. Mayo*
_____
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
amayo@ashbygeddes.com

*Attorneys for Plaintiffs*
*BearBox LLC and Austin Storms*

</td></tr>
</table>

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of June, 2022, the attached **PLAINTIFFS' OPENING BRIEF IN SUPPORT OF THEIR MOTION TO EXCLUDE CERTAIN TESTIMONY OF DR. MARK EHSANI** was served upon the below-named counsel of record at the address and in the manner indicated:

Chad S.C. Stover, Esquire  **VIA ELECTRONIC MAIL**
Barnes & Thornburg LLP
1000 N. West Street, Suite 1500
Wilmington, DE 19801-1050

Mark C. Nelson, Esquire  **VIA ELECTRONIC MAIL**
Barnes & Thornburg LLP
2121 N. Pearl Street, Suite 700
Dallas, TX 75201

Adam M. Kaufmann, Esquire  **VIA ELECTRONIC MAIL**
Barnes & Thornburg LLP
One N. Wacker Drive, Suite 4400
Chicago, IL 60606-2833

*/s/ Andrew C. Mayo*
_____
Andrew C. Mayo