**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| BEARBOX LLC and AUSTIN STORMS, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) C.A. No. 21-534-MN-CJB |
| | ) |
| LANCIUM LLC, MICHAEL T. | ) **REDACTED VERSION** |
| MCNAMARA, and RAYMOND E. CLINE, | ) |
| JR. | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR**
**MOTION FOR SUMMARY JUDGMENT REGARDING DAMAGES AND MOTION TO**
**EXCLUDE OPINIONS OF DAVID DUSKI**

Dated: July 8, 2022
**Redacted Version filed on July 15, 2022**

BARNES & THORNBURG LLP
Chad S.C. Stover (No. 4919)
222 Delaware Avenue, Suite 1200
Wilmington, Delaware 19801-1050
Telephone: (302) 300-3474
E-mail: chad.stover@btlaw.com

Mark C. Nelson (admitted *pro hac vice*)
2121 N. Pearl Street, Suite 700
Dallas, TX 75201
Tel: (214) 258-4140
E-mail: mark.nelson@btlaw.com

Adam M. Kaufmann (admitted *pro hac vice*)
Darrick Hooker (admitted *pro hac vice*)
Dana Amato Sarros (admitted *pro hac vice*)
One North Wacker Drive, Suite 4400
Chicago, IL 60606
Tel: (312) 214-8319
Email: adam.kaufmann@btlaw.com
Email: darrick.hooker@btlaw.com
Email: dana.sarros@btlaw.com

*Attorneys for Defendants Lancium LLC,
Michael T. McNamara, and Raymond E.
Cline Jr.*

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................. 1

II.  FACTUAL BACKGROUND ................................................................................ 2

III. LEGAL STANDARD ........................................................................................... 3

    A.   Summary Judgment .................................................................................... 3

    B.   Excluding Expert Opinions ......................................................................... 4

IV.  ARGUMENT ....................................................................................................... 4

    A.   Plaintiffs' Damages Claim Fails As A Matter Of Law Because There Is No Evidence Plaintiffs Are Entitled To Damages. ......................................... 4

    B.   Plaintiffs' Unjust Enrichment Damages Claim Fails As A Matter Of Law Because Unjust Enrichment Damages Are Not A Remedy For Conversion .......... 7

    C.   Mr. Duski's Opinions Regarding Damages For Plaintiffs' Conversion Claim Should Be Excluded Because They Do Not Fit The Facts Of The Case And Are Therefore Unhelpful ....................................................................... 8

        1.   Damages For Conversion Must Be Limited To The Value Of The Converted Property At The Time Of The Conversion................................ 8

        2.   Mr. Duski's Opinions Regarding Damages For Plaintiffs' Conversion Claim Should Be Excluded Because His Opinions Include More Than The Value Of The Allegedly Converted Property. .................................. 11

V.   CONCLUSION ................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Ajaxo, Inc. v. E\*Trade Fin. Corp.*,
   48 Cal.App.5th 129 (2020) ...................................................................................10

*B. Braun Melsungen AG v. Terumo Med. Corp.*,
   749 F. Supp. 2d 210 (D. Del. 2010)......................................................................4

*Bianco v. Globus Medical, Inc.*,
   53 F. Supp. 2d 929 (E.D. Tex. 2014)..................................................................10

*Borden, Inc. v. Howard Trucking Co., Inc.*,
   454 So.2d 1081 (La. 1983) ....................................................................................5

*Capers v. NorthPro Properties Mgmt, LLC*,
   53,919 (La. App. 2 Cir. 5/5/21), 321 So. 3d 502, writ denied, 2021-00768 (La.
   10/1/21), 324 So. 3d 1055.......................................................................................5

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)...............................................................................................3

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993)...............................................................................................4

*Dual Drilling Co. v. Mills Equip. Investments, Inc.*,
   721 So.2d 853 (La. 1998) ...................................................................................7, 8

*Elcock v. Kmart Corp.*,
   233 F.3d 734 (3d Cir. 2000)...................................................................................4

*Favrot v. Favrot*,
   2010-0986 (La. App. 4 Cir. 2/9/11), 68 So. 3d 1099, writ denied, 2011-0636
   (La. 5/6/11), 62 So. 3d 127 ....................................................................................4

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
   879 F.3d 1299 (Fed. Cir. 2018)..............................................................................9

*Garretson v. Clark*,
   111 U.S. 120 (1884)...............................................................................................9

*Gurst v. City of Natchitoches*,
   428 So.2d 502 (La. Ct. App. 1983).........................................................................6

*Holland v. First Nat. Bank of Crowley*,
   398 So.2d 186 (La. Ct. App. 1981)......................................................................5, 6

*Jackson v. Brumfield*,
    442 So.2d 518 (La. Ct. App. 1983)................................................................9

*KW Plastics v. U.S. Can Co.*,
    131 F. Supp. 2d 1289 (M.D. Ala. 2001) .......................................................10

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    694 F.3d 51 (Fed. Cir. 2012)..........................................................................9

*Mahmoud v. City of Paterson*,
    611 Fed. App'x 95 (3d Cir. 2015).................................................................3

*MLC Intellectual Property, LLC v. Micron Tech., Inc.*,
    10 F.4th 1358 (Fed. Cir. 2021) .....................................................................9

*Pikaluk v. Horseshoe Ent'mt LP*,
    No. 18-215, 2021 WL 3666856 (W.D. La. Aug. 17, 2021)...........................5

*Quealy v. Paine, Webber, Jackson & Curtis, Inc.*,
    475 So.2d 756 (La. 1985) ....................................................................5, 7, 8

*Schiller & Schmidt, Inc. v. Nordisco Corp.*,
    969 F.2d 410 (7th Cir. 1992) ......................................................................11

*Sunoco Partners Mkt'g & Terminals LP v. Powder Springs Logistics, LLC*,
    No. 17-1390, 2020 WL 3060458 (D. Del. June 9, 2020) ...........................10

*Teen Town Productions, LLC v. Scurlock*,
    15-454 (La. App. 5 Cir. 12/23/15), 182 So. 3d 1208....................................5

*Unique Const. Co. Inc. v. S.S. Mini Storage, Inc.*,
    570 So.2d 161 (La. Ct. App. 1990)........................................................5, 8, 9

*United States v. Velasquez*,
    64 F.3d 844 (3d Cir. 1995)............................................................................4

*Univ. Computing Co. v. Lykes-Youngstown Corp.*,
    504 F.2d 518 (5th Cir. 1974) ......................................................................10

*W.L. Gore & Assoc., Inc. v. C.R. Bard, Inc.*,
    No. 11-515, 2015 WL 12815314 (D. Del. Nov. 20, 2015).........................4

*Walters v. MedSouth Record Mgmt, LLC*,
    38 So.3d 243 (La. 2010) ..............................................................................8

*Waymo LLC v. Uber Tech., Inc.*,
    No. 17-939, 2017 WL 5148390 (N.D. Cal. Nov. 6, 2017) ........................10

*Williams v. Borough of West Chester, Pa.*,
   891 F.2d 458 (3d Cir. 1989)...................................................................................3

**Other Authorities**

Fed. R. Civ. P. 72 ...................................................................................................2

Fed. R. Evid. 702 ...................................................................................................4

## INDEX OF EXHIBITS

| Exhibit No. | Description |
|---|---|
| 24 | Expert Report of David R. Duski, dated April 5, 2022 |
| 25 | Supplemental Expert Report of David R. Dusky and exhibits, dated May 27, 2022 |
| 26 | Excerpts from Plaintiffs' Supplemental Objections and Responses to Defendants' Interrogatory Nos. 22, 24 and 25, dated April 1, 2022 |
| 27 | Plaintiffs' Initial Disclosures dated July 12, 2021 |
| 28 | Excerpts from the Deposition Transcript of David Duski, dated June 30, 2022 |
| 29 | Excerpts from the deposition transcript of Frank C. McCamant dated June 8, 2022 |

# I.      INTRODUCTION

Plaintiffs' damages claims for their lone remaining claim for which damages can be awarded—their claim for conversion (Count V of the Second Amended Complaint)—and their damages expert David Duski's opinions regarding these damages are fundamentally flawed for at least three reasons.[1] First, to be entitled to damages on this claim, Plaintiffs bear the burden of proof of establishing that the allegedly converted property cannot be returned to them. But they have not and cannot meet their burden on this issue because the allegedly converted property—an email and attachments—can clearly be returned. None of Plaintiffs' experts even address this fundamental, threshold issue. Summary judgment, therefore, should be granted finding that Plaintiffs are not entitled to damages on their conversion claim.

Second, Plaintiffs seek unjust enrichment damages as a remedy for their conversion claim. But, under Louisiana law,[2] unjust enrichment is not a remedy for conversion. In fact, as Magistrate Judge Burke recognized in recommending that Plaintiffs' unjust enrichment claim be dismissed, Plaintiffs' conversion claim precludes unjust enrichment as a remedy. Under Louisiana law, damages for conversion are either the return of the converted property, or if the property cannot be returned, the value of the converted property at the time of conversion. Summary judgment that Plaintiffs are not entitled to unjust enrichment damages on their conversion claim is thus appropriate.

Third, Plaintiffs' damages expert, Mr. Duski, failed to limit his calculations of alleged

---

[1] On May 24, 2022, Magistrate Judge Burke granted the parties' stipulation and proposed order to extend the deadline for filing dispositive and *Daubert* motions on damages issues to July 8, 2022. Pursuant to that order, Defendants submit their Motion for Summary Judgment Regarding Damages and Motion to Exclude Opinions Of David Duski, this supporting brief, and accompanying materials.

[2] The Court has previously found that Louisiana law applies to Plaintiffs' conversion claim and that "both sides agree" on this point. *See* D.I. 143.

conversion damages to the value of the allegedly converted property at the time of the alleged conversion. This failure not only directly contravenes Louisiana law, but is also inconsistent with Plaintiffs' technical expert's opinions. Specifically, even though Plaintiffs' technical expert, Dr. McClellan—on whom Mr. Duski relies—opines that use of the allegedly converted property only **increased the profitability** of Lancium providing ancillary services, Mr. Duski's damages calculations assume that **all** of Lancium's ancillary services revenues are due to use of the allegedly converted property resulting in improper, inflated figures. Thus, Mr. Duski's opinions are unreliable, unhelpful to the jury, and should be excluded.

## II.    FACTUAL BACKGROUND

Plaintiffs' operative Second Amended Complaint asserts, *inter alia*, claims for trade secret misappropriation, conversion, and unjust enrichment. D.I. 103 at 14-22. In light of these claims, Plaintiffs' damages expert, David Duski, opined in his April 5, 2022 opening report that Plaintiffs were entitled to unjust enrichment damages totaling $██████ as a remedy for any of these claims. SSOF ¶24;[3] Ex. 24 at 25. Mr. Duski did not set forth any other damages calculations in his opening report. SSOF ¶25; *see generally* Ex. 24.

After Mr. Duski's opening report was issued, however, Magistrate Judge Burke struck Plaintiffs' trade secret misappropriation claims, and Plaintiffs did not object to or otherwise challenge that Order. *See* 4/25/22 Minute Entry. Likewise, on May 26, 2022, Magistrate Judge Burke also recommended that Plaintiffs' unjust enrichment claim be dismissed, and Plaintiffs did not object to that recommendation. *See* D.I. 143. The time for objecting to either ruling has since passed. *See* D.I. 143; Fed. R. Civ. P. 72.

In addition, following Magistrate Judge Burke's Order on Plaintiffs' motion to compel,

---

[3] References to the "SSOF" are to Defendants' Supplemental Concise Statement of Undisputed Material Facts In Support of Motion For Summary Judgment, filed herewith.

Defendants produced additional documents regarding valuations of Lancium as well as some other categories of documents. *See* 4/25/22 Minute Entry. Based on one of these documents, a valuation that "█████████████████████████████████████████

███████████████████████████████████████████████████

███████████  Mr. Duski issued a supplemental report that for the first time offered opinions regarding the alleged "value of the Converted Property as of the date of conversion," but did not change his unjust enrichment opinions. *See* SSOF ¶¶26-27; Ex. 25 at 8-9. His new opinions, which Mr. Duski provided "as an alternative to the remedy of unjust enrichment," assert that the "value of the Converted Property at the time of conversion" ranges from ████████████████

████████████████████████████████████████████████████████.

SSOF ¶¶27-28; Ex. 25 at 16.

## III.    LEGAL STANDARD

### A.    Summary Judgment

"The party moving for summary judgment has the burden of showing that there is no genuine issue of material fact, and once the moving party has sustained this burden, the opposing party must introduce specific evidence showing that there is a genuine issue for trial."[4] *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 464 (3d Cir. 1989), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Mahmoud v. City of Paterson*, 611 Fed. App'x 95, (3d Cir. 2015) ("A moving party may discharge its burden by showing that there is an absence of evidence to support the nonmoving party's case. If the moving party can make such a showing, then the burden shifts to the non-moving party to present evidence that a genuine factual dispute exists."

---

[4] Defendants also incorporate by reference the statement of the legal standard for summary judgment in Defendants' Opening Brief In Support Of Their Motion For Summary Judgment filed on June 15, 2022. *See* D.I. 149 at 8.

(internal citations omitted)); *see also Favrot v. Favrot*, 2010-0986 (La. App. 4 Cir. 2/9/11), 68 So.

3d 1099, 1105, writ denied, 2011-0636 (La. 5/6/11), 62 So. 3d 127.

### B.      Excluding Expert Opinions

Federal Rule of Evidence 702 governs the admissibility of expert testimony and ensures

that an expert's testimony "both rests on a reliable foundation and is relevant to the task at hand."

*See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). Under Rule 702 "(1) the

proffered witness must be an expert, (2) the expert must testify to scientific, technical or

specialized knowledge, and (3) the expert's testimony must assist the trier of fact." *See W.L. Gore

& Assoc., Inc. v. C.R. Bard, Inc.*, No. 11-515, 2015 WL 12815314, at *2 (D. Del. Nov. 20, 2015)

(citing *United States v. Velasquez*, 64 F.3d 844, 849 (3d Cir. 1995)). In addition, expert testimony

is admissible only if "the testimony is based on sufficient facts or data," "the testimony is the

product of reliable principles and methods," and "the expert has reliability applied the principles

and methods to the facts of the case." Fed. R. Evid. 702; *see also Elcock v. Kmart Corp.*, 233 F.3d

734, 741 (3d Cir. 2000) (describing Rule 702 requirements as "three distinct substantive

restrictions on the admission of expert testimony; qualifications, reliability, and fit"). The party

offering expert testimony bears the burden of showing that it meets each of these admissibility

standards. *See B. Braun Melsungen AG v. Terumo Med. Corp.*, 749 F. Supp. 2d 210, 222 (D. Del.

2010).

## IV.     ARGUMENT

### A.      Plaintiffs' Damages Claim Fails As A Matter Of Law Because There Is No Evidence Plaintiffs Are Entitled To Damages.

Under Louisiana law, the primary remedy for conversion is the return of the allegedly

converted property, and monetary damages can only be awarded if the property cannot be returned.

Plaintiffs, however, present no evidence or expert opinions addressing, let alone establishing, that

the allegedly converted property (an email with attachments) cannot be returned. No dispute of material fact, therefore, exists regarding this fundamental, threshold issue. Accordingly, summary judgment is appropriate because Plaintiffs have not and cannot meet their burden of proof regarding their alleged entitlement to monetary damages

It is well-established under Louisiana law that "[t]he measure of damages for wrongful conversion is the return of the property, or if it ***cannot be returned***, the value of the property at the time of conversion." *Capers v. NorthPro Properties Mgmt, LLC*, 53,919 (La. App. 2 Cir. 5/5/21), 321 So. 3d 502, 514, writ denied, 2021-00768 (La. 10/1/21), 324 So. 3d 1055(emphasis added); *see also Pikaluk v. Horseshoe Ent'mt LP*, No. 18-215, 2021 WL 3666856, at *8 (W.D. La. Aug. 17, 2021), quoting *Quealy v. Paine, Webber, Jackson & Curtis, Inc.*, 475 So.2d 756, 761 (La. 1985)); *Holland v. First Nat. Bank of Crowley*, 398 So.2d 186, 189 (La. Ct. App. 1981). Indeed, Plaintiffs own damages expert, Mr. Duski, recognizes as much, noting that "I understand that under Louisiana state law, '[t]he traditional damages for conversion consist of the return of the property itself, or if the property cannot be returned, the value of the property at the time of the conversion.'" Ex. 25 at 7 (quoting *Quealy*, 475 So.2d at 761).[5] Moreover, "[a]s in any tort action, in a suit for wrongful conversion plaintiff bears the burden of proving the extent of the damages he suffered." *Teen Town Productions, LLC v. Scurlock*, 15-454 (La. App. 5 Cir. 12/23/15), 182 So. 3d 1208, 1215, quoting *Unique Const. Co. Inc. v. S.S. Mini Storage, Inc.*, 570 So.2d 161, 164 (La. Ct. App. 1990); *see also Borden, Inc. v. Howard Trucking Co., Inc.*, 454 So.2d 1081, 1092 (La. 1983) ("in

---

[5] General damages, such as "[d]amages for mental anguish and inconvenience arising from the loss of use of property have been allowed in tortious conversion cases," even if the converted property was returned. *See Quealy*, 475 So.2d at 762. But Plaintiffs do not seek such damages here, and have not identified any such alleged damages in response to Defendants' discovery requests or in their Second Amended Complaint or Rule 26 disclosures. *See* Ex. 26 at 5-8 (Response to Interrogatory 22); D.I. 103; Ex. 27. Moreover, Mr. Duski does not offer any opinions regarding such damages. *See generally* Ex. 25.

a suit for damages, it is the plaintiff's burden to prove the damage he suffered as a result of defendant's fault, and to support an award there must be evidence in the record").

Despite recognizing the threshold requirement for entitlement to damages for conversion, however, Mr. Duski does not even address whether—much less opine that—the allegedly converted property cannot be returned to Plaintiffs. Rather, Mr. Duski only offers two alternative measures of damages for the alleged conversion. *See* SSOF ¶28; Ex. 25 at 7-16. Moreover, neither of Plaintiffs' technical experts, Dr. McClellan and Mr. McCamant, opine that the allegedly converted property cannot be returned. This is unsurprising because this allegedly converted property clearly can be returned. Indeed, Mr. Duski acknowledges that the allegedly converted property consists of an email and its attachments that Mr. Storms sent to Michael McNamara on May 9, 2019. Ex. 25 at 3; Ex. 28 at 51:10-24 (confirming the information in the email marked as Plaintiffs' Ex. 54 is the converted property). If the allegedly converted property can be sent to Defendants then it can also be returned, and there is simply no evidence that the allegedly converted property has been destroyed or disposed of by Defendants. Moreover, Plaintiffs have presented no evidence or expert opinion to the contrary.

*Gurst v. City of Natchitoches*, 428 So.2d 502 (La. Ct. App. 1983) is instructive. In *Gurst*, the plaintiff prevailed on a claim for conversion and was awarded the value of the property taken. *See id.* at 504-505. On appeal, however, the Court of Appeal of Louisiana for the Third Circuit noted that "the general rule is that the measure of damages for conversion consists of return of the property itself" and "the record reveals the property can be returned." *Id.* Accordingly, the court "f[ound] that the proper remedy is return of the property" and reversed the trial court judgment "insofar as it awarded the value of the property taken." *Id.* at 505; *see also Holland*, 398 So.2d at 189 (where converted property was fungible coins, affirming trial court order requiring bank to

provide plaintiff with similar coins rather than the value of the coins, even though the actual converted coins had been sold).

Thus, because the allegedly converted property can clearly be returned and Plaintiffs have presented no evidence, much less expert testimony, to the contrary, summary judgment should be granted that Plaintiffs are not entitled to monetary damages on their conversion claim.

### B.   Plaintiffs' Unjust Enrichment Damages Claim Fails As A Matter Of Law Because Unjust Enrichment Damages Are Not A Remedy For Conversion

Plaintiffs and their damages expert, Mr. Duski, seek unjust enrichment damages as a remedy for their conversion claim, but unjust enrichment is not a cognizable measure of damages for conversion. Thus, summary judgment should be granted finding that Plaintiffs are not entitled to unjust enrichment damages.[6]

The Louisiana Supreme Court has made clear that unjust enrichment and conversion are separate causes of action, and the potential monetary remedy for conversion is "the value of the property at the time of the conversion." *Dual Drilling Co. v. Mills Equip. Investments, Inc.*, 721 So.2d 853, 857-58 (La. 1998); *see also Quealy*, 475 So.2d at 761 (explaining the measure of damages for conversion is "the value of the property at the time of the conversion"). Nonetheless, as an alternative to the purported value of the allegedly converted property, Plaintiffs and their expert, Mr. Duski, seek Defendants' alleged unjust enrichment through the use of the allegedly converted property as a remedy for that claim. Ex. 25 at 16. But there is no legal basis for receiving unjust enrichment damages as a remedy for conversion. Rather, as Magistrate Judge Burke recognized in his recommendation that Plaintiffs' unjust enrichment claim be dismissed, Louisiana

---

[6] As set forth above, although Plaintiffs also seek unjust enrichment damages as a remedy for their unjust enrichment and trade secret misappropriation claims, the trade secret misappropriation claims have been stricken and Plaintiffs' unjust enrichment claim should be dismissed consistent with Magistrate Judge Burke's recommendation, to which Plaintiffs have not objected. *See* 4/25/22 Minute Entry; D.I. 143.

law is clear that by pursuing a conversion claim Plaintiffs are "precluded from seeking an unjust enrichment remedy." D.I. 143; *see also Walters v. MedSouth Record Mgmt, LLC*, 38 So.3d 243, 244 (La. 2010) (finding that "having pled a delictual action, we find plaintiff is precluded from seeking to recover under unjust enrichment"); *Dual Drilling*, 721 So.2d at 857 (noting that conversion is a delictual action).

Accordingly, for the reasons above, summary judgment should be granted finding that Plaintiffs are not entitled to unjust enrichment damages.

### C. Mr. Duski's Opinions Regarding Damages For Plaintiffs' Conversion Claim Should Be Excluded Because They Do Not Fit The Facts Of The Case And Are Therefore Unhelpful.

#### 1. Damages For Conversion Must Be Limited To The Value Of The Converted Property At The Time Of The Conversion

Mr. Duski's calculation of Plaintiffs' purported damages due to the alleged conversion include more than the value of the allegedly converted property. As such, these opinions do not "fit" the facts of the case and should be excluded because they are unreliable and unhelpful to the jury.

As set forth above, Louisiana law is clear that damages for conversion are measured as "the value of the property at the time of the conversion." *Quealy*, 475 So.2d at 761. As such, courts routinely find damages awards that would provide more than the value of the converted property to be improper. This is shown, for example, by *Unique Construction Co. Inc. v. S.S. Mini Storage, Inc.*, 570 So.2d 161 (La. Ct. App. 1990). In *Unique Construction*, the plaintiff stored parts of a construction crane in a storage unit and these parts were taken and sold by the defendant, which was found liable for conversion. Despite only being entitled to the value of the converted property, "plaintiff's expert provided only an estimated value of an entire crane" and the plaintiff "provided no evidence as to the value of the stored component crane parts" that were actually converted. *Id.*

8

at 164-165. Thus, given the absence of relevant evidence, the trial court denied damages for the loss of the converted crane parts, and this denial was affirmed on appeal. *Id.* at 165.

*Jackson v. Brumfield*, 442 So.2d 518 (La. Ct. App. 1983) is also instructive. There, the plaintiff's car, which had previously been damaged in an accident, was converted when it was sold by the lot at which it was being kept. *See id.* at 520-21. The trial court awarded the value of the undamaged car as damages for defendant's conversion. *Id.* at 521. On appeal, however, the Court of Appeal of Louisiana for the Fifth Circuit reduced "the trial court's award to reflect the value of the damaged vehicle at the time of its conversion." *Id.*

Louisiana law limiting damages for the conversion of property to the value of the converted property is also consistent with and analogous to the law regarding damages available for claims regarding the taking of intellectual property—such as for patent infringement and trade secret misappropriation—for which damages are also limited to the value of the property taken. For example, it is well-established that reasonably royalty damages for patent infringement "must reflect the value attributable to the infringing features of the product, and no more." *MLC Intellectual Property, LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1373 (Fed. Cir. 2021), quoting *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1309 (Fed. Cir. 2018); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012), quoting *Garretson v. Clark*, 111 U.S. 120, 121 (1884) ("the patentee … must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features"). Thus, "when the accused technology does not make up the whole of the accused product, apportionment is required." *MLC*, 10 F.4th at 1373. And damages expert opinions that fail to do so are routinely excluded. *Id.* ("[W]e affirm the district court's grant of Micron's *Daubert* motion to exclude Mr. Milani's expert opinion on reasonable royalty for failure to apportion.");

*see also Sunoco Partners Mkt'g & Terminals LP v. Powder Springs Logistics, LLC*, No. 17-1390, 2020 WL 3060458, at \*7 (D. Del. June 9, 2020) (excluding damages expert opinions that "failed to apportion the value lost due to non-infringing manual blending").

Damages for trade secret misappropriation, such as under the federal Defend Trade Secrets Act, also generally must also be apportioned to account for the value of the trade secret.[7] *See Ajaxo, Inc. v. E\*Trade Fin. Corp.*, 48 Cal.App.5th 129, 169 (2020) ("We find nothing erroneous or contradictory in the trial court's application of apportionment principles to the reasonable royalty analysis" for trade secret misappropriation.); *Waymo LLC v. Uber Tech., Inc.*, No. 17-939, 2017 WL 5148390, at \*4, \*6 (N.D. Cal. Nov. 6, 2017); *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 539 (5th Cir. 1974) ("If the defendant enjoyed actual profits, a type of restitutionary remedy can be afforded the plaintiff—either recovering the full total of defendant's profits or some apportioned amount designed to correspond to the actual contribution the plaintiff's trade secret made to the defendant's commercial success."); *see also Bianco v. Globus Medical, Inc.*, 53 F. Supp. 2d 929, 937 (E.D. Tex. 2014) ("The Fifth Circuit has noted that it is generally accepted that the proper measure of damages in cases of trade secret misappropriation is determined by reference to the analogous line of cases involving patent infringement."). And damages expert opinions that fail to apportion damages to account for only the benefit provided by trade secret misappropriation are also routinely excluded. *See, e.g.*, *Waymo*, 2017 WL 5148390, at \*6 (excluding damages expert opinions that "made no attempt to apportion the alleged acceleration of Uber's development timeline between legitimate benefits and trade secret misappropriation"); *KW Plastics v. U.S. Can Co.*, 131 F. Supp. 2d 1289, 1295 (M.D. Ala. 2001)

---

[7] Notably, Plaintiffs sought the same "unjust enrichment" damages for their stricken trade secret misappropriation claims, including under the DTSA, as for their conversion claim. *See* Ex. 24 at 25.

(excluding damages expert's opinions that "did not attempt to determine the value of the specific trade secrets used" and instead "assumes that each and every penny that KW gained constitutes unjust enrichment"); *see also Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 415-16 (7th Cir. 1992) (for damages, including for trade secret misappropriation, "[t]he expert should have tried to separate the damages that resulted from the lawful entry of a powerful competitor—Nordisco—from the damages that resulted from particular forms of misconduct allegedly committed by that competitor").

  2. **Mr. Duski's Opinions Regarding Damages For Plaintiffs' Conversion Claim Should Be Excluded Because His Opinions Include More Than The Value Of The Allegedly Converted Property.**

Here, both of Mr. Duski's calculations of Plaintiffs' alleged damages due to conversion (what he refers to as his calculations of the "value of the Converted Property at the time of conversion" and "unjust enrichment") encompass more than the value of the allegedly converted property. For his calculation of the alleged "value of the Converted Property at the time of the conversion," Mr. Duski relies on what he refers to as the "███████████████████████ ████████████████████████████████████████ ██████████████████████████████████ ██████████████████'" SSOF ¶29; Ex. 25 at 9. The ██████████ uses a discounted cash flow (DCF) analysis, and to determine the "value of the Converted Property at the time of the conversion," Mr. Duski relies on cash flows referred to as "████████████████," which he "understands" are "attributable to the Converted Property." Ex. 25 at 13; Ex. 28 at 98:24-99:5 ("██ █████████████████████████████████████████ ██████████████████████████████████ ███████████████████████████████). Mr. Duski's use of a ██ ███████████████████████ cash flows to determine the purported "value of the

Converted Property at the time of the conversion," however, is fundamentally flawed and should be excluded because even assuming *arguendo* that Defendants converted Plaintiffs' property, the "███████████████" cash flows are not due entirely, if at all, to use of this property and Mr. Duski has not limited or apportioned his valuation to only account for the value of the allegedly converted property.[8]

Mr. Duski testified that he assumed Lancium's ████████████████████ revenues are based on use of the allegedly converted property "based on the understanding that [he] received from the technical experts in this matter." Ex. 28 at 103:6-12. He further testified that his "understanding" comes from his "synthesis" of Plaintiffs' technical experts' reports as well as other materials and an earlier conversation with one of Plaintiffs' experts, Mr. McCamant. Ex. 28 at 103:13-104:12. The only opinion offered by either of Plaintiffs' technical experts on this issue, however, is offered by Dr. McClellan, who opined only that he "understand[s] that Lancium uses Mr. Storms' trade secret method … to increase the profitability" of providing ancillary services.[9] D.I. 151 at Ex. 3, ¶308; Ex. 28 at 84:7-86:1; 105:4-16.

But even though Dr. McClellan opined that use of the allegedly converted property only *increased* the profitability of Lancium providing ancillary services, Mr. Duski agreed that he "did not try to calculate how much Mr. Storms' method allegedly increases the profitability of providing ancillary services," and that he is "not sure which, if any, profits they could have achieved" without using the allegedly converted property. Ex. 28 at 105:17-24; 107:3-19. Indeed, even though Mr. Duski understands that it "may be possible" to "provide ancillary services without using Mr.

---

[8] Mr. Duski's opinions regarding the purported "value of the Converted Property at the time of conversion" suffer from many other flaws that are not the subject of this motion.

[9] Plaintiffs' experts equate use of Plaintiffs' alleged trade secrets with use of the allegedly converted property. *See* Ex. 25 at 3 ("I understand the method disclosed by the Converted Property mirrors BearBox's trade secrets.")

Storms' arbitrage method," he acknowledged that he "didn't talk to any of the technical experts, Mr. McCamant or Dr. McClellan, about any ways in which it would be possible to operate as a load only [controllable load resource] providing ancillary services without using Mr. Storms' alleged method."[10] Ex. 28 at 78:11-20; 108:12-18. Instead (and improperly), Mr. Duski "included 100 percent of Lancium's estimated ██████████████████ revenue" in his discounted cash flow analysis of the alleged "value of the Converted Property at the time of the conversion." Ex. 28 at 100:23-101:12.

Mr. Duski's unjust enrichment calculation is similarly flawed because it includes Lancium's "total" controllable load resource (CLR) revenues.[11] Ex. 24 at 48. This again, is despite the fact that Dr. McClellan opines that Lancium's use of the allegedly converted property to operate as a CLR providing ancillary services only "increase[s] the profitability" of doing so. D.I. 151 at Ex. 3, ¶308; Ex. 28 at 84:7-86:1; 105:4-16. In other words, Mr. Duski's calculation of alleged unjust enrichment damages is not limited or apportioned to only the revenue (much less the profits) that are attributable to the increase in profitability that Lancium has purportedly earned through the use of the allegedly converted property.

Thus, just as in *Unique Construction*, because Mr. Duski's damages calculations include

---

[10] This is especially egregious because Plaintiffs' expert, Mr. McCamant, recognized that a controllable load resource providing ancillary services "may" use a strategy like Mr. Storms' alleged arbitrage method to inform their "AS [ancillary service] energy offer" and the price they would accept to perform ancillary services." D.I. 151 at Ex. 1, p.27. Or, for example, Mr. McCamant acknowledged they could be a "price taker," which he explained means they would "just bid zero or a very low price just to make sure they get included in the bid stack. And then they're a price taker because if they're awarded part of the RRS [ancillary service], then they get whatever the market clearing price is for that particular time period." Ex. 29 at 138:1-12. In other words, Mr. McCamant explained that a controllable load resource providing ancillary services could or could not use the alleged method of Plaintiffs' allegedly converted property.

[11] As Plaintiff's expert, Mr. McCamant acknowledges, a controllable load resource or "CLR" is a qualification that a load (or consumer of electricity) can achieve that allows them to provide certain ancillary services. *See* D.I. 151 at Ex. 1, p.24-25.

more than just the value of the allegedly converted property and do not attempt to limit or apportion either the alleged "value of the Converted Property at the time of the conversion" or "unjust enrichment" to account for only the value of that property (i.e., Lancium's increase in profitability in providing ancillary services as a CLR through use of the allegedly converted property) his opinions do not fit the facts of this case, are unreliable and unhelpful to the jury and should be excluded.

## V.   CONCLUSION

For the reasons above, the Court should grant summary judgment finding that Plaintiffs are not entitled to damages on their conversion claim. In the alternative, the Court should grant summary judgment finding that Plaintiffs are not entitled to unjust enrichment damages on their conversion claim, and the Court should exclude the damages opinions of David Duski.

Dated:  July 8, 2022                                             BARNES & THORNBURG LLP
**Redacted Version filed on July 15, 2022**

*/s/ Chad S.C. Stover*
Chad S.C. Stover (No. 4919)
222 Delaware Avenue, Suite 1200
Wilmington, Delaware 19801-1050
Telephone: (302) 300-3474
E-mail: chad.stover@btlaw.com

Mark C. Nelson (admitted *pro hac vice*)
2121 N. Pearl Street, Suite 700
Dallas, TX  75201
Tel:  (214) 258-4140
E-mail:  mark.nelson@btlaw.com

Adam M. Kaufmann (admitted *pro hac vice*)
Darrick Hooker (admitted *pro hac vice*)
Dana Amato Sarros (admitted *pro hac vice*)
One North Wacker Drive, Suite 4400
Chicago, IL 60606
Tel:  (312) 214-8319
Email:  adam.kaufmann@btlaw.com
Email:  darrick.hooker@btlaw.com
Email:  dana.sarros@btlaw.com

14

*Attorneys for Defendants Lancium LLC, Michael T. McNamara, and Raymond E. Cline Jr.*