# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BEARBOX LLC and AUSTIN STORMS, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) C.A. No. 21-534-MN-CJB |
| | ) |
| LANCIUM LLC, MICHAEL T. MCNAMARA, and RAYMOND E. CLINE, JR. | ) **REDACTED VERSION** |
| | ) |
| Defendants. | ) |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE CERTAIN TESTIMONY OF DR. MARK EHSANI

Dated: July 19, 2022
**Redacted Version filed on July 26, 2022**

BARNES & THORNBURG LLP
Chad S.C. Stover (No. 4919)
1000 N. West Street, Suite 1500
Wilmington, Delaware 19801-1050
Telephone: (302) 300-3474
E-mail: chad.stover@btlaw.com

Mark C. Nelson (admitted *pro hac vice*)
2121 N. Pearl Street, Suite 700
Dallas, TX 75201
Tel: (214) 258-4140
E-mail: mark.nelson@btlaw.com

Adam M. Kaufmann (admitted *pro hac vice*)
Darrick Hooker (admitted *pro hac vice*)
Dana Amato Sarros (admitted *pro hac vice*)
One North Wacker Drive, Suite 4400
Chicago, IL 60606
Tel: (312) 214-8319
Email: adam.kaufmann@btlaw.com
Email: darrick.hooker@btlaw.com
Email: dana.sarros@btlaw.com

*Attorneys for Defendants Lancium LLC, Michael T. McNamara, and Raymond E. Cline Jr.*

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1
II. LEGAL STANDARD ....................................................................................................... 2
III. ARGUMENT .................................................................................................................... 3
    A. Dr. Ehsani's Opinions Regarding Whether The Allegedly Converted Information Could Reasonably Be Considered Confidential Are Admissible And Helpful To The Jury. ......................................................................................... 3
        1. Dr. Ehsani's Opinions Are Reliable And Properly Based On His Specialized Knowledge and Experience. ....................................................... 3
        2. Dr. Ehsani Is Qualified to Opine On Whether A "Reasonable" Expectation Of Confidentiality Exists. ......................................................... 6
    B. Dr. Ehsani Did Not Opine Regarding Whether Mr. Storms "Lost Any Opportunities," Therefore The Court Should Deny Plaintiffs Motion To Exclude These Non-Existent Opinions. .................................................................. 9
IV. CONCLUSION ............................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aloe Coal Co. v. Clark Equip. Co.*,
  816 F.2d 110 (3d Cir. 1987) ...................................................................................................8

*Bihm v. Deca Sys., Inc.*,
  2016-0356 (La. App. 1 Cir. 8/8/17), 226 So. 3d 466 ..........................................................10

*Cantor v. Perelman*,
  No. CIVA 97-586 KAJ, 2006 WL 3462596 (D. Del. Nov. 30, 2006) ......................................5

*Elcock v. Kmart Corp.*,
  233 F.3d 734 (3d Cir. 2000) ...................................................................................................8

*Holbrook v. Lykes Bros. Steamship Co., Inc.*,
  80 F.3d 777 (3d Cir. 1996) ..............................................................................................2, 7

*Importsales, Inc. v. Lindeman*,
  231 La. 663, 92 So. 2d 574 (1957) .....................................................................................10

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ..........................................................................................................2, 4

*Leonard v. Stemtech Health Scis., Inc.*,
  No. CV 08-067-LPS-CJB, 2013 WL 5311295 (D. Del. Sept. 23, 2013) ...............................5

*In re Paoli R.R. Yard PCB Litig.*,
  35 F.3d 717 (3d Cir. 1994) .....................................................................................................7

*Pineda v. Ford Motor Co.*,
  520 F.3d 237 (3d Cir. 2008) ...................................................................................................7

*Quealy v. Paine, Webber, Jackson & Curtis, Inc.*,
  475 So. 2d 756 (La. 1985) ...................................................................................................10

*Quirantes v. State Farm Mut. Auto. Ins. Co.*,
  No. 20-22078-CIV, 2021 WL 4783691 (S.D. Fla. July 13, 2021) ...........................................5

*Senese v. Liberty Mut., Inc.*,
  No. CIV.A. 13-5139, 2014 WL 4088499 (E.D. Pa. Aug. 19, 2014) ........................................6

*Senese v. Liberty Mutual Insurance Company*,
  661 Fed. App'x 771 (3d Cir. 2016) .........................................................................................6

*In re TMI Litigation*,
    193 F.3d 613, 680 (3d Cir. 1999)..................................................................................8

*Ultra- Precision Mfg., Ltd v. Ford Motor Co.*,
    411 F.3d 1369 (Fed. Cir. 2005)......................................................................................4

*Waldorf v. Shuta*,
    142 F.3d 601 (3d Cir. 1998)................................................................................2, 7, 8

**Other Authorities**

Fed. R. Civ. P. 26(a)(2)(B) ..............................................................................................9

Federal Rule of Civil Procedure 26 ................................................................................9

Federal Rule of Evidence 702.....................................................................................2, 8

Federal Rule of Evidence 703........................................................................................9

I.      INTRODUCTION

Plaintiffs move to exclude two alleged opinions offered by Defendants' expert Dr. Mark Ehsani regarding "(1) whether Plaintiff Austin Storms had an expectation of confidentiality in information he shared with the Defendants," and "(2) whether the Defendants' acts prevented Mr. Storms from capitalizing on his ideas." D.I. 153 at 8. But Dr. Ehsani does not offer either of the opinions that Plaintiffs seek to exclude. Rather, Plaintiffs mischaracterize Dr. Ehsani's opinions in an attempt to exclude proper expert testimony.

First, Plaintiffs assert that Dr. Ehsani opines regarding "Mr. Storms's expectations of confidentiality" and "Mr. Storms' intentions … about confidentiality." Relying on this false premise, Plaintiffs argue that these opinions are improper and that Dr. Ehsani is not qualified to offer such opinions. But Plaintiffs' characterizations are incorrect. Dr. Ehsani does not opine regarding Mr. Storms' subjective intent, rather he offers opinions on the objective issue of whether the information Mr. Storms provided to Defendant Michael McNamara could reasonably be considered confidential. This is an appropriate topic of expert opinion, and Dr. Ehsani's decades of experience dealing with the treatment of confidential information more than qualifies him to opine on this issue.

Second, Plaintiffs again mischaracterize Dr. Ehsani's opinions by asserting that "**Dr. Ehsani concludes** there was no 'money or opportunity that Mr. Storms lost because of materials and/or information provided to Lancium.'" D.I. 153 at 7 (emphasis added). But Plaintiffs selectively quote and mischaracterize the statement in Dr. Ehsani's report. The actual statement in his report merely notes that "**[n]either Mr. Storms nor Dr. McClellan identify** any money or opportunity that Mr. Storms lost because of materials and/or information provided to Lancium, and neither have identified any opportunity that Mr. Storms lost as a result of Lancium's alleged use of the alleged Bearbox technology." Ex. 1 ¶ 353. Dr. Ehsani does not offer opinions on

1

"economics" as Plaintiffs contend.

Thus, because Dr. Ehsani does not offer the opinions Plaintiffs assert, and Dr. Ehsani is qualified to offer the opinions he actually offers (and these opinions would be helpful to the jury), the Court should deny Plaintiffs' motion.

## II. LEGAL STANDARD

"The Federal Rules of Evidence embody a 'strong and undeniable preference for admitting any evidence having some potential for assisting the trier of fact." *Holbrook v. Lykes Bros. Steamship Co., Inc.*, 80 F.3d 777, 780 (3d Cir. 1996) (citations omitted). Pursuant to Federal Rule of Evidence 702, a witness may be qualified as an expert "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. While a witness must possess "'specialized knowledge' regarding the area of testimony," the threshold bar for such specialized knowledge is only "posses[ing] skill or knowledge greater than the average layman." *Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998). Moreover, the Third Circuit has a "policy of liberal admissibility of expert testimony" and accordingly has "interpreted the specialized knowledge requirement liberally." *Id*.

*Daubert* identifies certain factors that may be considered in evaluating the admissibility of an expert's opinions. But these factors are not exhaustive and may not apply in all circumstances. As the Supreme Court has explained:

> We also conclude that a trial court *may* consider one or more of the more specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability. But, as the Court stated in *Daubert,* the test of reliability is "flexible," and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination.

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141–42 (1999) (emphasis in original).

### III. ARGUMENT

#### A. Dr. Ehsani's Opinions Regarding Whether The Allegedly Converted Information Could Reasonably Be Considered Confidential Are Admissible And Helpful To The Jury.

Plaintiffs move to exclude Dr. Ehsani's alleged opinions regarding "whether Plaintiff Austin Storms had an expectation of confidentiality in information he shared with Defendants." D.I. 153 at 8. But Plaintiffs' arguments are based on mischaracterizations of both Dr. Ehsani's opinions and qualifications. Contrary to Plaintiffs' assertions, Dr. Ehsani does not offer opinions regarding Mr. Storms' subjective state of mind—he offers opinions regarding the objective standard of whether there could be a "reasonable expectation of confidentiality" in the information provided to Defendants. Moreover, given his extensive experience with the treatment of confidential information, Dr. Ehsani is more than qualified to opine on this issue and his opinions will be helpful to the jury. Thus, Plaintiffs' motion should be denied.

##### 1. Dr. Ehsani's Opinions Are Reliable And Properly Based On His Specialized Knowledge and Experience.

Plaintiffs allege that Dr. Ehsani offers opinions regarding "Mr. Storms's expectations of confidentiality" and "about Mr. Storms's intentions" about confidentiality. D.I. 153 at 5-6. This is incorrect. Dr. Ehsani did not opine about Mr. Storms' intentions or thoughts. Dr. Ehsani's actual opinion is that "any information that Mr. Storms provided to Mr. McNamara was provided voluntarily by Mr. Storms to Mr. McNamara with no *reasonable* expectation of confidentiality." Ex. 1 ¶ 353 (emphasis added). Dr. Ehsani also confirmed at his deposition that he is not offering opinions regarding Mr. Storms mindset, when he testified:

> Q: But, Dr. Ehsani, are you offering an opinion as to what Mr. Storms considered to be confidential or not?
>
> A: No, I'm offering an opinion about what confidential information and the protocol or nondisclosure agreement is understood in the field by [a] person of

3

>ordinary skill, by responsible people and by people that consider themselves having confidential technology.

Ex. 2 at 169:1-9.

Dr. Ehsani's opinions and analysis regarding whether it is reasonable to consider the information Mr. Storms communicated to Mr. McNamara to be confidential is also relevant and helpful to the jury because whether this information is confidential impacts whether Defendants did or could have converted the information. Indeed, Defendants taking or use of non-confidential information could not be conversion—and a claim that Defendants converted non-confidential information would be preempted by federal patent law—because "[a]bsent secrecy, state law cannot create a collateral set of rights available as an adjunct or expansion to patent rights." *Ultra-Precision Mfg., Ltd v. Ford Motor Co.*, 411 F.3d 1369, 1379 (Fed. Cir. 2005) (finding state law claim premised on use of non-confidential information to be preempted by federal patent law because "[f]ederal law preempts state law that offers patent-like protection to discoveries unprotected under federal patent law"). It is thus unsurprising that Plaintiffs only allege that Defendants converted "***confidential*** Bearbox technology." D.I. 103 at ¶ 88.

Aside from mischaracterizing Dr. Ehsani's opinions, Plaintiffs assert that his opinions regarding confidentiality should be excluded because "Dr. Eshani does not point to any scientific or technical basis for his conclusions about confidentiality, but rather relies on 'speculation and subjective belief.'" D.I. 153 at 6. This argument, however, is based on the false premise that expert opinions must always rely on a scientific or technical basis. They do not. Indeed, the Supreme Court has explained that "scientific foundations" for expert opinions may only "be at issue in some cases," and that "[i]n other cases, the relevant reliability concerns may focus upon personal knowledge or experience." *Kumho*, 526 U.S. at 150. This is the situation here, because Dr. Ehsani's opinion that none of the information Mr. Storms provided to Mr. McNamara could reasonably be

4

considered confidential is not technical or scientific in nature, so there is no scientific method or technical basis on which his opinions must be based.

As is permissible when addressing an issue such as a reasonableness standard, Dr. Ehsani applies his considerable personal knowledge and experience regarding the treatment of confidential information to the facts in developing his conclusions. For example, Dr. Ehsani explains that he considered relevant facts and evidence, such as that Mr. Storms sent information that is similar to the allegedly confidential, converted information to another individual "with whom [Mr. Storms] did not have an NDA and did not otherwise have an agreement to keep the information confidential." Ex. 1 ¶¶ 188, 353. Dr. Ehsani further testified that the basis for his opinions regarding confidentiality included his "experience in the field," his "knowledge of a person of ordinary skill in the art," and his experience with "numerous companies large and small" regarding their practices and protocols for dealing with confidential information. Ex. 2 at 169:15-23.

Courts routinely find that challenges to the reliability of an expert's opinions, including non-scientific opinions, "are more appropriately pursued by way of cross-examination, as opposed to exclusion via *Daubert* and its progeny." *Leonard v. Stemtech Health Scis., Inc*., No. CV 08-067-LPS-CJB, 2013 WL 5311295, at *3 (D. Del. Sept. 23, 2013) (denying motion to exclude expert opinions that were based on "his 'personal knowledge and experience in image licensing'"); *see also Cantor v. Perelman*, No. CIVA 97-586 KAJ, 2006 WL 3462596, at *8 (D. Del. Nov. 30, 2006) ("Longstreth's opinion on the customs and practices of corporate directors is similar to the experienced-based testimony that the Third Circuit has approved"); *Quirantes v. State Farm Mut. Auto. Ins. Co*., No. 20-22078-CIV, 2021 WL 4783691, at *2–3 (S.D. Fla. July 13, 2021) (finding that an expert's "nonscientific opinion" regarding "ordinary and reasonable [insurance] claim

handling practices and whether or not [Defendant] complied with those standards" based on his "personal knowledge and experience" was reliable.). And the single case that Plaintiffs rely on, *Senese v. Liberty Mutual Insurance Company*, 661 Fed. App'x 771 (3d Cir. 2016), in support of their contention that Dr. Ehsani's opinions should be excluded because they are "not rooted in any useful or reliable methodology" is inapposite. D.I. 153 at 6. In *Senese*, the district court excluded an expert's opinions that a driver in a car accident "ha[d] no responsibility for the occurrence of the accident," that his "actions were reasonable and appropriate," and that "the collision in this case was caused by the actions of the unidentified motorist" that were based only on the driver's account of the accident. *See Senese v. Liberty Mut., Inc.,* No. CIV.A. 13-5139, 2014 WL 4088499, at *3 (E.D. Pa. Aug. 19, 2014). As such, exclusion of these opinions was upheld because the expert "merely accepted Senese's testimony as true" and his proposed testimony "was merely an 'unsupported speculation' or 'subjective belief' that Senese's version of the accident was correct." *Senese*, 661 Fed. App'x at 775. That is not the situation here, where as discussed above, Dr. Ehsani explained in his report and at his deposition the facts taken into account to form his conclusions, which included Mr. Storms' own testimony and actions as well as Dr. Ehsani's knowledge and experience with treatment of confidential information. *See, e.g.*, Ex. 1 at ¶¶ 188, 351-353.

As such, Dr. Ehsani's opinions are appropriate and should not be excluded.

### 2. Dr. Ehsani Is Qualified to Opine On Whether A "Reasonable" Expectation Of Confidentiality Exists.

Plaintiffs also gloss over Dr. Ehsani's extensive experience regarding the treatment of confidential information to argue that "Dr. Ehsani's opinions about confidentiality extend outside the scope of his expertise." D.I. 153 at 5. But Dr. Ehsani's experience more than qualifies him to opine about whether the allegedly converted information can reasonably be considered confidential.

6

As an initial matter, to qualify as an expert, an individual must only have "skill or knowledge greater than the average layman." *Waldorf*, 142 F.3d at 625 (holding district court did not abuse its discretion in qualifying someone as an expert, even though his qualifications were "a little thin" because "he has substantially more knowledge than an average lay person."). Moreover, "[t]he basis of [] specialized knowledge 'can be practical experience as well as academic training and credentials," and the Third Circuit has "interpreted the specialized knowledge requirement liberally." *Id.* As such, "[i]t is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008), quoting *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782, 3d Cir. 1996); *see also In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 753 (3d Cir. 1994) ("Dr. Sherman, while arguably a relatively poor clinician and less than fully credible witness, qualifies as an expert.").

Dr. Ehsani has considerable experience with the treatment of confidential information. As Plaintiffs' acknowledge, Dr. Ehsani has "been involved with various forms of confidential technology for 40 years." D.I. 153 at 5-6; Ex. 1 at ¶ 188. He has been a consultant to over 60 companies, U.S. government agencies, and internal organizations. Ex. 1 at Resume, p. 1. Through his consulting, Dr. Ehsani has experience with "numerous companies large and small" and their procedures for handling confidential information, such as that they "always sign an NDA before they give me information, and they refuse to listen to my technology if they think it may violate some technology that they are working on." Ex. 2 at 169:10-23. Dr. Ehsani has also held a "secret" level security clearance, which requires careful treatment of highly confidential, classified information. Ex. 1 at Resume, p. 2. Thus, Dr. Ehsani easily has "knowledge greater than the

average layman" regarding treatment of confidential information and is and qualified to offer the opinions he provides. *See Waldorf*, 142 F.3d at 625.

Moreover, the authority Plaintiffs rely on to argue that Dr. Ehsani is not qualified to offer his opinions is either distinguishable or actually supports the admissibility of his opinions. For example, in *In re TMI Litigation*—a case involving "radiation-induced medical conditions"—the proposed expert did not meet the "qualification" requirement of Rule 702 because his "only knowledge of the health effects of radiation was obtained from literature he reviewed in connection with his retention as an expert in this litigation." 193 F.3d 613, 680 (3d Cir. 1999). That is not the case here, where Dr. Ehsani has over 40 years of experience dealing with confidential information. Ex. 1 at ¶ 188. Plaintiffs next cite to *Elcock*, where the Third Circuit actually affirmed the district court's finding that the proposed expert was qualified, explaining that "[w]hile [the proposed expert] seems but marginally qualified to perform a vocational rehabilitation assessment, … we recognize that Copemann's qualifications fall within Waldorf's outer bounds." *Elcock v. Kmart Corp.,* 233 F.3d 734, 744 (3d Cir. 2000). Again, Dr. Ehsani is more than "marginally qualified" to offer his opinions. Finally, *Aloe Coal* is distinguishable because there a tractor salesman was precluded from offering opinions regarding the cause of a tractor fire because "[h]e had no knowledge or experience in determining the cause of equipment fires" nor any other relevant education or experience. *Aloe Coal Co. v. Clark Equip. Co.*, 816 F.2d 110, 114 (3d Cir. 1987). Again, this is very different than the circumstances here where Dr. Ehsani has 40 years of experience dealing with the treatment of confidential information with "numerous companies large and small" and has even held a security clearance. Ex. 2 at 169:10-23; Ex. 1 at Resume, page 2.

Dr. Ehsani's extensive background, history, and experience with confidentiality renders him qualified to testify regarding whether the allegedly converted information can reasonably be

8

considered confidential and his opinions would helpful the jury. Therefore, Plaintiffs' motion should be denied.

> **B.  Dr. Ehsani Did Not Opine Regarding Whether Mr. Storms "Lost Any Opportunities," Therefore The Court Should Deny Plaintiffs Motion To Exclude These Non-Existent Opinions.**

Plaintiffs' attempt to exclude any testimony by Dr. Ehsani regarding "whether the Defendants' acts prevented Mr. Storms from capitalizing on his ideas" is built on a false premise. D.I. 153 at 7.  In particular, Plaintiffs contend that "***Dr. Ehsani concludes*** there was no 'money or opportunity that Mr. Storms lost because of materials and/or information provided to Lancium'" in an attempt to characterize Dr. Ehsani as offering opinions on Mr. Storms' "lost economic opportunities." D.I. 153 at 7. This is simply incorrect. Rather, in support of his opinion that "Defendants have not and did not convert the alleged BearBox technology," Dr. Ehsani notes that ***"[n]either Mr. Storms nor Dr. McClellan identify*** any money or opportunity that Mr. Storms lost because of materials and/or information provided to Lancium, and neither have identified any opportunity that Mr. Storms lost as a result of Lancium's alleged use of the alleged Bearbox technology." Ex. 1 ¶¶ 2, 353. There is nothing improper about Dr. Ehsani noting the lack of evidence provided by Plaintiffs in support of his contrary opinions. As such, Plaintiffs' motion should be denied.

Federal Rule of Evidence 703 explicitly provides that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of … ." Fed. R. Evid. 703. And Federal Rule of Civil Procedure 26 requires that a trial expert's report contain "a complete statement of all opinions the witness will express and ***the basis and reasons for them***" as well as "***the facts or data considered by the witness*** in forming them." Fed. R. Civ. P. 26(a)(2)(B) (emphasis added). That is what Dr. Ehsani has done.

Here, Dr. Ehsani opines that Defendants did not convert Plaintiffs' alleged property. *See,*

9

*e.g.*, Ex. 1 ¶ 2. In support of this opinion, he notes that "*[n]either Mr. Storms nor Dr. McClellan identify* any money or opportunity that Mr. Storms lost because of materials and/or information provided to Lancium, and neither have identified any opportunity that Mr. Storms lost as a result of Lancium's alleged use of the alleged Bearbox technology." Ex. 1 ¶ 353. There is simply nothing improper about this required disclosure of the facts underlying Dr. Ehsani's opinions, especially because "[a] conversion is an act in derogation of the plaintiff's possessory rights and any wrongful exercise or assumption of authority over another's goods, ***depriving him of the possession***, permanently or for an indefinite time." *Quealy v. Paine, Webber, Jackson & Curtis, Inc.*, 475 So. 2d 756, 760 (La. 1985) (emphasis added); *see also Bihm v. Deca Sys., Inc.*, 2016-0356 (La. App. 1 Cir. 8/8/17), 226 So. 3d 466, 478 (citing *Quealy,* 475 So. 2d at 760 for the same); *Importsales, Inc. v. Lindeman*, 231 La. 663, 668, 92 So. 2d 574, 575–76 (1957) ("The gist of a conversion has been declared to be not the acquisition of the property by the wrongdoer, but the ***wrongful deprivation*** of a person of property to the possession of which he is entitled." (emphasis added, citations omitted)). Thus, Dr. Ehsani notes that there is no evidence supporting Plaintiffs' claim that Mr. Storms was deprived of his alleged property or the ability to use his alleged property. Contrary to Plaintiffs' assertion, Dr. Ehsani does not "offer opinions about market harm" or any allegedly lost economic "opportunities related to ideas and technology, or an ability to 'capitalize' on technology." D.I. 153 at 7-8.

Thus, Plaintiffs' attempt to preclude Dr. Ehsani from identifying or explaining facts underlying his opinions should be denied.

### IV.  CONCLUSION

For at least the foregoing reasons, Plaintiffs' Motion should be denied.

| | |
|---|---|
| Dated: July 19, 2022<br>**Redacted Version filed on July 26, 2022** | BARNES & THORNBURG LLP<br><br>*/s/ Chad S.C. Stover*<br>Chad S.C. Stover (No. 4919)<br>1000 N. West Street, Suite 1500<br>Wilmington, Delaware 19801-1050<br>Telephone: (302) 300-3474<br>E-mail: chad.stover@btlaw.com<br><br>Mark C. Nelson (admitted *pro hac vice*)<br>2121 N. Pearl Street, Suite 700<br>Dallas, TX 75201<br>Tel: (214) 258-4140<br>E-mail: mark.nelson@btlaw.com<br><br>Adam M. Kaufmann (admitted *pro hac vice*)<br>Darrick Hooker (admitted *pro hac vice*)<br>Dana Amato Sarros (admitted *pro hac vice*)<br>One North Wacker Drive, Suite 4400<br>Chicago, IL 60606<br>Tel: (312) 214-8319<br>Email: adam.kaufmann@btlaw.com<br>Email: darrick.hooker@btlaw.com<br>Email: dana.sarros@btlaw.com<br><br>*Attorneys for Defendants Lancium LLC, Michael T. McNamara, and Raymond E. Cline Jr.* |