## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BEARBOX LLC and AUSTIN STORMS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-534-MN-CJB |
| | ) | |
| LANCIUM LLC, MICHAEL T. MCNAMARA, and RAYMOND E. CLINE, JR. | ) | **REDACTED VERSION** |
| | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
## MOTION FOR SUMMARY JUDGMENT

Dated:  July 29, 2022
**Redacted Version filed on August 5, 2022**

BARNES & THORNBURG LLP
Chad S.C. Stover (No. 4919)
222 Delaware Avenue, Suite 1200
Wilmington, Delaware 19801-1050
Telephone: (302) 300-3474
E-mail: chad.stover@btlaw.com

Mark C. Nelson (admitted *pro hac vice*)
David Lisch (admitted *pro hac vice*)
2121 N. Pearl Street, Suite 700
Dallas, TX  75201
Tel:  (214) 258-4140
E-mail:  mark.nelson@btlaw.com
               david.lisch@btlaw.com

Adam M. Kaufmann (admitted *pro hac vice*)
Darrick Hooker (admitted *pro hac vice*)
Dana Amato Sarros (admitted *pro hac vice*)
One North Wacker Drive, Suite 4400
Chicago, IL 60606
Tel:  (312) 214-8319
Email: adam.kaufmann@btlaw.com
Email: darrick.hooker@btlaw.com
Email: dana.sarros@btlaw.com

*Attorneys for Defendants Lancium LLC, Michael T. McNamara, and Raymond E. Cline Jr.*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................. 4

III.  ARGUMENT .................................................................................................... 5

     A.    The Court Should Adopt Defendants' Proposed Claim Constructions ................. 5

          1.    Plaintiffs' Attempt To Avoid Claim Construction Is Meritless And Invites Reversible Error. .......................................................................... 5

          2.    Plaintiffs' Arguments Against Defendants' Construction Of "Power Option Agreement" Are Meritless. ........................................................... 8

          3.    Plaintiffs' Arguments Against Defendants' Construction Of "Minimum Power Threshold" Are Meritless............................................ 10

     B.    Plaintiffs' Sole Inventorship Claim Fails As A Matter Of Law .......................... 11

          1.    Plaintiffs' Attempt To Rely On Attorney Argument Rather Than Actual Evidence To Avoid Summary Judgment Should Be Rejected. ................ 11

          2.    Plaintiffs Cannot Corroborate That Storms Verbally Communicated The Claims Inventions To McNamara Or Any Of The Defendants......... 14

     C.    Plaintiffs' Joint Inventorship Claim Fails As A Matter Of Law........................... 15

     D.    Plaintiffs' Conversion Claim Is Precluded By The Statute Of Limitations.......... 17

     E.    Plaintiffs' Conversion Claim Is Preempted By Federal Patent Law Because It Seeks To Prevent Defendants From Using Non-Confidential Information, Which Amounts To "Patent-Like" Protection. .................................................... 19

IV.  CONCLUSION................................................................................................. 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACTV, Inc. v. Walt Disney Co.*,
  346 F.3d 1082 (Fed. Cir. 2003)................................................................9, 11

*AstraZeneca AB v. Mylan Pharm. Inc.*,
  19 F.4th 1325 (Fed. Cir. 2021) ......................................................................8

*Atchinson v. D.C.*,
  73 F.3d 418 (D.C. Cir. 1996) .......................................................................18

*Becton, Dickinson & Co. v. Tyco Healhcare Grp., LP*,
  616 F.3d 1249 (Fed. Cir. 2010) ....................................................................14

*Bihm v. Deca Sys., Inc.*,
  226 So.3d 466 (La. 2017) .................................................................3, 18, 19

*Carrier Corp. v. Goodman Glob., Inc.*,
  64 F. Supp. 3d 602 (D. Del. 2014)................................................................12

*Cat Tech LLC v. TuberMaster, Inc.*,
  528 F.3d 871 (Fed. Cir. 2008).......................................................................14

*Colvin v. McDougall*,
  62 F.3d 1316 (11th Cir. 1995) ......................................................................18

*Dana-Farber Cancer Inst., Inc. v. Ono Pharm. Co.*,
  964 F.3d 1365 (Fed. Cir. 2020).....................................................................17

*Gemstar-TV Guide Int'l, Inc. v. Int'l Trade Comm'n*,
  383 F.3d 1352 (Fed. Cir. 2004)........................................................................5

*Gemtron Corp. v. Saint-Gobain Corp.*,
  572 F.3d 1371 (Fed. Cir. 2009).....................................................................12

*Innova/Pure Water, Inc. v. Safari Filtration Sys., Inc.*,
  381 F.3d 1111 (Fed. Cir. 2004)........................................................................7

*Level Sleep LLC v. Sleep No. Corp.*,
  No. 2020-1718, 2021 WL 2934816 (Fed. Cir. July 13, 2021)........................8

*Neville v. Foundation Constructors, Inc.*,
  972 F.3d 1350 (Fed. Cir. 2020)......................................................................14

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
 521 F.3d 1351 (Fed. Cir. 2008)............................................................5

*Phillips v. AWH Corp.*,
 415 F.3d 1303 (Fed. Cir. 2005) (en banc).............................................8

*Rubin v. General Hosp. Corp.*,
 523 Fed. Appx. 719, 721-23 (Fed. Cir. 2013)......................................16

*Suffolk Techs., LLC v. AOL Inc.*,
 752 F.3d 1358 (Fed. Cir. 2014)...........................................................12

*Ultra-Precision Mfg. Ltd. v Ford Motor Co.*,
 411 F.3d 1369 (Fed. Cir. 2005)...........................................................19

*Univ. of Fla. Rsch. Found. v. Motorola Mobility, LLC*,
 3 F. Supp. 3d 1374 (S.D. Fla. 2014) ................................................9, 11

*University of Utah v. Max-Planck-Gesellschaft Zur Foerderung Der
 Wissenschaften E.V.*,
 851 F.3d 1317 (Fed. Cir. 2017)...........................................................17

*Wagner v. Ashline*,
 No. 2021-1715, 2021 WL 5353889 (Fed. Cir. Nov. 17, 2021) .............15

*Waner v. Ford Motor Co.*,
 331 F.3d 851 (Fed. Cir. 2003)..............................................................19

*Wawrzynski v. H.J. Heinz Co.*,
 728 F.3d 1374 (Fed. Cir. 2013).......................................................20, 21

*White v. Dunbar*,
 119 U.S. 47 (1886)................................................................................7

*Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*,
 442 F.3d 132 (Fed. Cir. 2006)...............................................................9

**Statutes**

35 U.S.C. § 271 ......................................................................................19

## INDEX OF EXHIBITS

| Exhibit No. | Description |
|---|---|
| 30 | Excerpts from June 3, 2022 deposition transcript of Dr. McClellan |
| 31 | Excerpts from February 23, 2022 deposition transcript of Austin Storms |
| 32 | Excerpts from February 18, 2022 deposition transcript of Michael McNamara |
| 33 | Excerpts from June 8, 2022 deposition transcript of Frank McCamant |
| 34 | Excerpts from Defendants' Second Set of Supplemental Response to Plaintiffs' Interrogatory No. 3, dated December 23, 2021 |
| 35 | True and correct copy of BB1000005-14 as produced by Plaintiffs in this case |
| 36 | True and correct copy of BB00000908-910 as produced by Plaintiffs in this case |
| 37 | True and correct copy of BB0000911-923 as produced by Plaintiffs in this case |
| 38 | True and correct copy of BB1000020-23 as produced by Plaintiffs in this case |
| 39 | True and correct copy of GAM0000149 as produced in this case |
| 40 | True and correct copy of BB0000717-731 as produced by Plaintiffs in this case |
| 41 | Excerpts from Expert Report of Dr. Mark Ehsani |
| 42 | True and correct copy of BB00000091-92 as produced by Plaintiffs in this case |

## I.       INTRODUCTION

The unsupported factual allegations in Plaintiffs' Brief in Opposition to Defendants' First Motion for Summary Judgment (Plaintiffs' "Opposition," D.I. 176) are a work of fiction that would make J.K. Rowling proud. Through cherry-picked citations, strategic omissions, and attributing functionality to Storms' alleged technology that is in no way supported by the evidence, Plaintiffs' Opposition incorrectly portrays Lancium as a struggling company that allegedly resurrected itself by converting and patenting Storms' "technology." The non-fiction version is different, but rather than address every misstatement and omission, Defendants focus on the issues important to deciding this motion.

Plaintiffs first attempt to avoid summary judgment by arguing that no claim construction is necessary for the terms "power option agreement" and "minimum power threshold" and fault Defendants for raising the issue in the context of summary judgment. *See* D.I. 176 at 15-19. But it was only during the deposition of Plaintiffs' expert, Dr. McClellan, that Defendants learned Plaintiffs' proposed plain and ordinary (and often contradictory) meanings of these terms. *See, e.g.*, Ex. 30 at 83:5-10; 90:2-13; 156:3-22; 157:1-18 (discussing "power option agreement") 83:21-85:8; 90:14-92:24; 154:21-156:24; 218:23-223:9 (discussing "minimum power thresholds"). Prior to that deposition, Plaintiffs had failed to disclose the plain and ordinary meaning of these terms in discovery, their experts' reports, and even in their Opposition (which fails to actually provide Plaintiffs' understanding of the plain and ordinary meaning of "power option agreement"). Defendants also learned during Dr. McClellan's deposition that Plaintiffs' plain and ordinary meanings are completely at odds with the '433 patent's specification and claims. The Court, therefore, should resolve the legal meaning of these disputed terms.

Plaintiffs next advance a variety of arguments relating to whether Storms conceived the systems and methods of the '433 patent, communicated these inventions to McNamara, and

"collaborated" with McNamara in the context of Plaintiffs' sole and joint inventorship claims. But as Dr. McClellan concedes, Storms' "system" (actually a simulation) was designed to maximize profits for a Bitcoin miner by comparing the profitability, based on a "breakeven" price, of using pre-purchased power to mine Bitcoin versus selling that power in the market. The '433 patent, on the other hand, describes and claims systems and methods to allow a power entity to stabilize the grid by giving the power entity the option (based on a "power option agreement") to reduce the amount of power used by a load by requiring the load to use specified amounts of power ("minimum power thresholds") during specified time periods unless the power entity instructs it to use less power. Because Plaintiffs do not and cannot identify any evidence that Storms conceived the properly construed inventions of the '433 patent—let alone communicated them to Defendants—Plaintiffs' sole and joint inventorship claims fail. Plaintiffs' sole inventorship claim also fails because Dr. McClellan admits that BearBox/Storms did not communicate information relating to certain dependent claims to Mr. McNamara. Ex. 30 at 175:20-176:4. Plaintiffs' joint inventorship claim, likewise, fails because Plaintiffs cannot satisfy the collaboration requirement for joint inventorship. *See* Ex. 30 at 250:17-251:12.

Finally, Plaintiffs make three arguments against summary judgment on their conversion claim, none of which have merit. To begin, Plaintiffs argue that their conversion claim is not prohibited under the statute of limitations because their claim purportedly relates back to their original complaint. But, because Plaintiffs admit that their original conversion claim "had nothing to do with" their current conversion claim, the current claim cannot relate back to the first claim. *See* D.I. 151, Ex. 22 at 22:16-24:3.

Next, Plaintiffs argue that even if the current conversion claim does not relate back, Plaintiffs should not be time barred because they were not on notice of their current claim more

than one year before their Second Amended Complaint ("SAC") was filed. The undisputed facts compel a different conclusion. Plaintiffs admit that they were aware of the Layer1 Lawsuit eighteen months before filing their current conversion claim. D.I. 103 at ¶¶ 52, 54. And Plaintiffs' Opposition acknowledges that "[t]he CLR designation" of Lancium's datacenters (which the Layer1 Lawsuit complaint identifies Lancium had achieved) "allow[s] Lancium's Bitcoin mining datacenters, once registered, to operate as Storms' BearBox system." D.I. 176 at 12. This acknowledgement alone indicates Plaintiffs were on inquiry notice based on the Layer1 Lawsuit. But Plaintiffs' knowledge runs much deeper. ███████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████. These undisputed facts demonstrate that Plaintiffs were, at the very least, on inquiry notice of their conversion claims against Defendants eighteen months before the SAC was filed. Plaintiffs' conversion claim is thus time barred. *See Bihm v. Deca Sys., Inc.*, 226 So.3d 466, 480 (La. 2017).

Lastly, Plaintiffs' conversion claim is preempted by federal patent law because it seeks patent-like protection for materials that Plaintiffs themselves placed in the public domain. As described previously and below, Storms not only provided the information to McNamara without confidentiality restrictions, ████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

3

████████████████████████████████████████████████████

████████████████████████████████████████████████████

and (4) disclosed his drawing on Twitter (Ex. 40).

## II.   FACTUAL BACKGROUND

Plaintiffs spend fourteen pages of their Opposition creating a story about Lancium, its technology, Storms' purported idea/technology, and what Storms communicated to McNamara to manufacture a narrative that Storms somehow had a role in Lancium's success. He did not.[1] As set forth previously, Lancium was a multi-million dollar company that heavily invested in, developed, and patented technology long before Storms' happenstance meeting with McNamara. At that time, Lancium was contemplating whether to manufacture its mining containers (*i.e.*, boxes) itself or utilize outside vendors and Storms was a box designer who attended the conference to try to get customers for his BearBoxes, and who was in "sales mode" during his dinner with McNamara and other potential buyers for his boxes. Ex. 32 at 138:6-139:7; Ex. 31 at 86:18-87:17. As such, he and McNamara exchanged contact information resulting in Storms ultimately sending his box specifications and simulation spreadsheet to McNamara. McNamara looked at the price for the box, determined it was too high, and sent the materials on to Cline and others at Lancium to see if they thought otherwise. That was the end of their relationship, or so it seemed. SOF ¶¶12-15; D.I. 177 ¶¶12-15. But Storms apparently continued to track Lancium, and when he learned of the settlement in the Layer1 Lawsuit, Storms brought this lawsuit.

---

[1] A fulsome narrative of Lancium's technology development is provided in Defendants' Second Supplemental Response to Plaintiffs' Interrogatory No. 3, attached hereto as Ex. 34. Defendants have not at this time attached all of the cited exhibits due to their length, but are happy to provide such exhibits if the Court wishes.

## III.    ARGUMENT

### A.    The Court Should Adopt Defendants' Proposed Claim Constructions

#### 1.    Plaintiffs' Attempt To Avoid Claim Construction Is Meritless And Invites Reversible Error.

The inventorship analysis, like an infringement or invalidity analysis, "first ***requires*** the construction of each disputed claim to determine the subject matter encompassed thereby." *Gemstar-TV Guide Int'l, Inc. v. Int'l Trade Comm'n*, 383 F.3d 1352, 1381-82 (Fed. Cir. 2004) (emphasis added). Where, as here, "reliance on a term's 'ordinary' meaning does not resolve the parties' dispute," the court, not the jury, ***must resolve that dispute***." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co*., 521 F.3d 1351, 1360-61 (Fed. Cir. 2008) (emphasis added).

Here, the parties' dispute the plain and ordinary meaning of the terms "power option agreement" and "minimum power threshold."  The '433 patent describes and claims systems and methods that, among other things, help stabilize the power grid by utilizing "a power option agreement" and a "set of minimum power thresholds" to give a power entity the ability to balance power supply with demand. As discussed in Defendants' Opening Brief (D.I. 149 at 3-5), the claimed system does this by giving a power entity (such as a grid operator) the "option" (through a "power option agreement") to control a load by giving the power entity the ability to instruct the load to reduce the amount of power it is using (i.e., "curtail" the load). D.I. 151, Ex. 17 at 43:46-44:35; 59:2-62:38. To make that option possible, the load (per the power option agreement) is required to use a specified amounts of power (*i.e.*, "minimum power thresholds") over specified time periods, regardless of whether it is profitable for the load to use that power.[2] *Id.* at 43:57-44:2. By giving the power entity the ability to reduce the amount of power used by the load, the

---

[2] This is also consistent with Plaintiffs' expert, Frank McCamant's explanation of the requirements of agreements to provide ancillary services for ERCOT." Ex. 33 at 59:1-13; 65:4-13.

power entity can make this now unused power available to the grid for use by others and thus provide stability to the grid during times of emergency when demand for power may exceed supply. *Id.*

Storms' "system" (actually a simulation of a system) is completely different.



Plaintiffs, through their expert Dr. McClellan, attempt to circumvent these differences by proffering purported plain and ordinary meanings for "power option agreement" and "minimum power threshold" that are completely at odds with the specification and with how one of ordinary skill in the art would understand these terms in the context of the intrinsic evidence. For example, Dr. McClellan's plain and ordinary meaning of "power option agreement" reads out the option: a "power option agreement" is "a contract to buy power at a certain price" ("essentially the same

---

as" a Power Purchase Agreement (PPA), "I don't know if power option agreement means you must consume – you must expend the power you contracted to buy … that's a question for McCamant … that's an ERCOT marketplace thing."[5] Ex. 30 at 83:3-87:1, 90:2-13, 156:3-22, 157:1-18. Similarly, with respect to "minimum power threshold," Dr. McClellan ascribes various plain and ordinary meanings to the term depending on context. When discussing the '433 patent, he asserts it means "the amount of power you're contracted to consume" (consume meaning either use, sell back, or both) but it is "a business question really … the contract amount that your going to pay – I don't think you have to use it … this is a question for Mr. McCamant … ." *Id.* at 83:21-85:8; 90:14-92. ████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████ Plaintiffs' Opposition, moreover, applies yet another interpretation, asserting that the plain and ordinary meaning is "the agreed upon amount of power by which the power entity may reduce power delivered to the load." D.I. 176 at 18. Thus, claim construction is needed because the meaning of claim terms cannot be twisted like a "nose of wax" to suit Plaintiffs' changing needs. *See Innova/Pure Water, Inc. v. Safari Filtration Sys., Inc.*, 381 F.3d 1111, 1117 (Fed. Cir. 2004), quoting *White v. Dunbar*, 119 U.S. 47, 51-52 (1886).[6]

---

[5] Mr. McCamant does not opine on the plain and ordinary meaning of any terms of the '433 patent and has not read it.  Ex. 33 at 15:8-16:22.

[6] Plaintiffs' assertion that Defendants should have sought claim construction sooner is meritless. As explained in Defendants' Opening Brief, it was not until Defendants received Plaintiffs' expert reports and deposed Plaintiffs' experts that it became clear how Plaintiffs' interpreted the plain and ordinary meaning of "power option agreement" and "minimum power threshold" as used in the '433 patent and that the parties disagreed about their plain meaning. *See* D.I. 149 at 12-13. Plaintiffs provide no evidence to the contrary. Furthermore, Plaintiffs' contention that Defendants should have raised the claim construction dispute in the 32 days between the close of expert

### 2. Plaintiffs' Arguments Against Defendants' Construction Of "Power Option Agreement" Are Meritless.

The specification—as thoroughly addressed in Defendants' Opening Brief—"is always highly relevant to the claim construction analysis." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc). Put differently, "the ordinary meaning of a claim term is not 'the meaning of the term in the abstract.' … [rather] the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent." *AstraZeneca AB v. Mylan Pharm. Inc.*, 19 F.4th 1325, 1330 (Fed. Cir. 2021). Plaintiffs' Opposition largely ignores the specification, and instead posits three meritless, easily-dispelled criticisms of Defendants' construction.[7]

First, Plaintiffs assert that Defendants' construction is "internally inconsistent because it does not allow for scenarios in which the option is exercised by a power entity." D.I. 176 at 17. Not so. As Defendant's Opening Brief makes clear, a key aspect of a power option agreement is that it gives the power entity the "option" to reduce the amount of power used by the load. Defendants' proposed construction explicitly explains, *inter alia*, that a power option agreement "provides the power entity with the option to reduce the amount of power delivered to the load." Nonetheless, Defendants would not oppose a construction (adding the underlined portion below) that "power option agreement" means "an agreement between a power entity associated with the delivery of power to a load and the load, wherein the load provides the power entity with the option

---

discovery and the summary judgment deadline is misplaced. Summary judgment was the most efficient and practical way for the Court to timely resolve the dispute. And Plaintiffs do not and cannot dispute that claim construction may properly be conducted as part of the summary judgment process. *Compare* D.I. 149 at 11 (citing *Level Sleep LLC v. Sleep No. Corp.*, No. 2020-1718, 2021 WL 2934816, at *3 (Fed. Cir. July 13, 2021), *with* D.I. 176 at 15-17.

[7] Plaintiffs' assertion that Defendants' expert, Dr. Ehsani "performs no claim construction of his own" is also a mischaracterization. D.I. 176 at 17. Dr. Ehsani did analyze and apply the meaning of "power option agreement" and "minimum power threshold" as used in the '433 patent. *See, e.g.*, Ex. 41 at ¶¶ 44, 106-109.

to reduce the amount of power delivered to the load up to an agreed amount of power during an agreed upon time interval such that the load must use at least the amount of power subject to the option during the interval <u>unless the power entity exercises the option</u>."

Second, Plaintiffs assert that Defendants' construction is "inconsistent with the remaining language of the claim" because allegedly "[t]he claim itself defines the 'power option agreement' in terms of its 'data,' which includes 'minimum power thresholds.'" D.I. 176 at 17-18. Plaintiffs thus contend that any construction of "power option agreement" should "continue to use the term 'minimum power threshold'" so that these terms are not applied inconsistently. *Id.* at 18. Plaintiffs' are again wrong. To begin, Plaintiffs' argument is inconsistent with its own expert's proposed plain and ordinary meaning for "power option agreement," which does not include "minimum power thresholds." Ex. 30 at 83:3-87:1; 90:2-13; 156:3-22; 157:1-18. Also, the claim does not define "power option agreement" in terms of its "data." Rather, the claim makes clear that the "power option data" is supplied "at least in part" based on a "power option agreement." A patentee's use of different words in a patent's claim creates a presumption that those different words have different meanings. *See, e.g.*, *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 132, 1328 (Fed. Cir. 2006). Finally, although Plaintiffs assert any construction of "power option agreement" should include "minimum power threshold," they also argue that "the plain meaning of minimum power threshold is recited in the claim itself: the amount of power subject to the power option agreement." D.I. 176 at 18. Thus, they propose circular meanings that refer to each other, but this circular reasoning "constitutes improper claim construction." *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1090 (Fed. Cir. 2003); *see also Univ. of Fla. Rsch. Found. v. Motorola Mobility, LLC*, 3 F. Supp. 3d 1374, 1377 (S.D. Fla. 2014).

Finally, Defendants' construction is not "inconsistent with the specification." D.I. 176 at

9

18. To the contrary, as thoroughly explained in Defendants' Opening Brief, Defendants' construction is based explicitly on the specification's definition of the term, which, as discussed below, would permit a minimum power threshold of zero for some time intervals.

### 3. Plaintiffs' Arguments Against Defendants' Construction Of "Minimum Power Threshold" Are Meritless.

Plaintiffs' assertion in their Opposition that the "plain meaning" of "minimum power threshold" is "the amount of power subject to the power option agreement, *i.e.* the agreed amount of power by which the power entity may reduce power delivered to the load" seeks to eliminate the clear requirement that the "minimum power threshold" is an amount of power the load must use.[8] As set forth in Defendants' Opening Brief, the specification repeatedly emphasizes this aspect of the term's meaning. For example, the specification states:

> "As part of the power option agreement, the load (e.g., load operator, contracting agent for the load, semi-automated control system associated with the load, and/or automated control system associated with the load) provides the power entity 1140 with the right, but not obligation, to reduce the amount of power delivered (e.g., grid power) to the load up to an agreed amount of power during an agreed upon time interval. In order to provide the power entity 1140 with this option, the load needs to be *using* at least the amount of power subject to the option (e.g., a *minimum power threshold*)." D.I. 151, Ex. 17 at 43:50-60 (emphasis added).

Similarly, the specification further explains that:

> "To illustrate an example, a power option agreement may specify that a load (e.g., the datacenters 1102-1106) is required to use at least 10 MW or more at all times during the next 12 hours. Thus, the *minimum power threshold* according to the power option agreement is 10 MW and this minimum threshold extends across the time interval for the next 12 hours. In order to comply with the agreement, the load must subsequently operate *using* 10 MW or more power at all times during the next 12 hours." D.I. 151, Ex. 17 at 44:17-25 (emphasis added).

Plaintiffs' assertions that Defendants' construction is "internally inconsistent" and

---

[8] And as explained above, their expert Dr. McClellan applies different alleged "plain and ordinary" meanings of "minimum power threshold." Those interpretations also seek to eliminate the use requirement.

"inconsistent with the language of the claim" are baseless and Plaintiffs provide no explanation in support of these assertions. And again Plaintiffs' circular position that the constructions of "power option agreement" and "minimum power threshold" should each include the other term, is wrong and would improperly inject ambiguity into the claims. *See ACTV*, 346 F.3d at 1090; *Univ. of Fla. Rsch. Found.*, 3 F. Supp. 3d at 1377. Finally, Plaintiffs argue that Defendants' construction fails because it does not permit the minimum power threshold to be zero for the entire duration of the power option agreement. But the portions of the specification cited by Plaintiffs refer only to the minimum power threshold being zero for a time interval during the duration of the power option agreement, not for all time intervals during the duration of the power option agreement. D.I. 176 at 18-19 (citing specification). Defendants' proposed construction contemplates and allows the minimum threshold to be zero (or not specified) for certain time intervals, as further discussed in the next sections.

**B.   Plaintiffs' Sole Inventorship Claim Fails As A Matter Of Law**

**1.   Plaintiffs' Attempt To Rely On Attorney Argument Rather Than Actual Evidence To Avoid Summary Judgment Should Be Rejected.**

Although Plaintiffs argue against summary judgment on their sole inventorship claim by repeatedly asserting that there are genuine issues of material fact, notably absent from their eight pages of argument is any evidence to support their position. This is unsurprising because Plaintiffs' inventorship claims are based on a fundamental misinterpretation of the '433 patent and its claims. Thus, Plaintiffs must rely on pure attorney argument for their contention that Storms' conceived of and communicated the inventions of the '433 patent as properly construed. But this is insufficient to avoid summary judgment.[9]

---

[9] Moreover, although they acknowledge that "[t]o prevail on sole inventorship at trial, Plaintiffs must prove (1) that Storms independently conceived the inventions claimed in the '433 Patent, and (2) that he communicated those inventions to Defendants" (D.I. 176 at 14), Plaintiffs' expert Dr.

For example, although Plaintiffs assert that the documents that Storms provided McNamara demonstrate "curtailment by a power delivering entity" (i.e., the power delivering entity instructing the load to use less power), neither Storms nor Dr. McClellan (or any of Plaintiffs' other experts) have testified or opined that the documents contain such teaching. *See* D.I. 176 at 14, 20-24. On their face, these documents do not mention "curtailment" or any sort of instruction by the power delivering entity to the load to use less power. *See* Ex. 10. And none of the testimony Plaintiffs cite from Storms or Dr. McClellan offers this opinion or even mentions curtailment. *See* D.I. 176 at 20-24. Plaintiffs merely argue—albeit strenuously—that Storms and Dr. McClellan offer these opinions, but that is insufficient to create a genuine dispute of material fact. *See Suffolk Techs., LLC v. AOL Inc.*, 752 F.3d 1358, 1367 (Fed. Cir. 2014) (finding that "attorney arguments, with no affirmative evidence, are insufficient" to demonstrate a genuine dispute of material fact and defeat summary judgment); *Gemtron Corp. v. Saint-Gobain Corp.*, 572 F.3d 1371, 1380 (Fed. Cir. 2009) (affirming summary judgment and explaining that a party's "unsworn attorney argument … is not evidence" and cannot defeat summary judgment); *Carrier Corp. v. Goodman Glob., Inc.*, 64 F. Supp. 3d 602, 612-13 (D. Del. 2014) ("relying on attorney argument" without evidence is insufficient to meet a party's burden at summary judgment).

As explained in Defendants' Opening Brief, Plaintiffs' expert, Dr. McClellan, opines that the documents Storms sent to McNamara demonstrate conception and communication of the elements of the '433 patent's claims that require a "power option agreement" and "minimum power thresholds" because they disclose a system ██████████████████████████████

██████████████████████████████████████████████████████████████

---

McClellan admitted that "I think there's some dependent claims that are not necessarily associated with stuff that Bearbox may have communicated" to McNamara. Ex. 30 at 175:20-176:4.



. These documents simply do not disclose the systems claimed in the '433 patent where—consistent with the proper constructions of "power option agreement" and "minimum power threshold"—a load must use at least an agreed upon minimum amount of power during specific time periods regardless of whether doing so is the most profitable use of the power. *Id.* And despite Plaintiffs' attorneys' argument to the contrary, Dr. McClellan provides no analysis or opinions that the documents Storms sent to McNamara disclose the properly construed inventions.

Faced with these shortcomings, Plaintiffs assert that "no claim requires mining occur 'regardless of profitability.'" D.I. 176 at 24. But neither reason Plaintiffs provide for this assertion is correct. First, Plaintiffs' assert that the claims do not literally include the phrase "regardless of profitability," so Defendants are wrong that the claims do not allow for profitability determinations. *See id.* Plaintiffs miss the point. Although the claims do not include the phrase "regardless of profitability," the claims require, <u>without qualification</u>, that pursuant to the power option agreement, the load <u>must agree to use</u> the agreed upon minimum amount of power (i.e., the

minimum power threshold). The load, therefore, could only use less than the minimum power threshold when the power entity instructed it to use less, regardless of whether this is profitable.

Second, Plaintiffs assert that since the "minimum power threshold" can be zero, this allows the load to consider profitability in determining whether or not to mine because in such a situation there is no amount of power the load must use. *See* D.I. 176 at 24. Plaintiffs misread the specification. Although the '433 patent explains that "[i]n some examples, the minimum power threshold for <u>a time interval</u> may be zero during the duration of a power option agreement," it does not state that the minimum power threshold can be zero for all time intervals during the duration of a power option agreement. *See* D.I. 151, Ex. 17 at 54:13-15 (emphasis added). The claims of the '433 patent require a control system to determine (and then provide instructions to implement) a performance strategy that comprises a power consumption target for a set of computing systems for various time intervals where the power consumption target is equal to or greater than the minimum power threshold for each time interval. If the minimum power threshold were always zero then the performance strategy would not require anything, which is nonsensical and cannot be correct. *See Neville v. Foundation Constructors, Inc.*, 972 F.3d 1350, 1357 (Fed. Cir. 2020) ("A claim construction that renders asserted claims facially nonsensical cannot be correct." (quoting *Becton, Dickinson & Co. v. Tyco Healhcare Grp., LP*, 616 F.3d 1249, 1255 (Fed. Cir. 2010); *see also Cat Tech LLC v. TuberMaster, Inc.*, 528 F.3d 871, 885 (Fed. Cir. 2008) (rejecting claim interpretation that would render a limitation "functionally meaningless"). Thus, Plaintiffs' suggestion that Storms conceived of the '433 patent by conceiving a system where the minimum power threshold is always zero does not create a genuine issue of material fact.

### 2. Plaintiffs Cannot Corroborate That Storms Verbally Communicated The Claims Inventions To McNamara Or Any Of The Defendants.

As addressed above and in Defendants' Opening Brief, because the documents that Storms

provided to McNamara do not demonstrate conception of the inventions of the '433 patent, these documents do not create a genuine issue of material fact that Storms is the sole (or a joint) inventor of the '433 patent, much less meet Plaintiffs' clear and convincing evidence standard. Plaintiffs' single, oral communication with McNamara does not cure this deficiency.

Despite asserting that "Lancium misstates the law on corroboration," Plaintiffs do not even address *Wagner v. Ashline*, No. 2021-1715, 2021 WL 5353889, at \*5 (Fed. Cir. Nov. 17, 2021), which is more recent than any case law they rely on. D.I. 176 at 26-27. In *Wagner*, the Federal Circuit explained that even under the "rule of reason" standard, evidence corroborating only that the named inventor and the alleged inventor "met and that they discussed" other topics is insufficient to meet the corroboration requirement because "[i]t does not corroborate [the alleged inventor]'s testimony in support of her claim of joint inventorship." *Wagner*, 2021 WL 5353889, at \*5. To adequately corroborate an alleged inventor's testimony, the corroborating evidence must corroborate what was actually communicated, not just that a communication occurred. *See id.* This is where Plaintiffs' alleged evidence falls short. Because the documents Storms provided to McNamara do not demonstrate conception of the claimed inventions of the '433 patent, they cannot corroborate that Storms communicated the claimed inventions to McNamara. And despite Plaintiffs' unsupported argument to the contrary, the other documents Plaintiffs purport to rely on to corroborate what was communicated to McNamara—such as Plaintiffs' undated "source code" files—cannot corroborate that Storms communicated the inventions of the '433 patent to McNamara because (1) it is undisputed that those documents were never provided to McNamara, and (2) they relate to a simulation that was different than the systems and methods claimed in the '433 patent.

### C.   Plaintiffs' Joint Inventorship Claim Fails As A Matter Of Law

Plaintiffs' joint inventorship claim fails because, as a matter of law, Plaintiffs cannot meet

their burden of proving by clear and convincing evidence that Storms: (1) contributed in a "significant manner" to any of the claims of the '433 patent; and (2) collaborated with the named inventors, McNamara and Cline.[10] Plaintiffs contend that "Lancium's entire joint inventorship argument is premised on the incorrect assertion that a document that is 'publicly disclosed … cannot support a finding a collaboration.'" *See* D.I. 176 at 28. But this is incorrect, and Plaintiffs' attempt to distinguish Defendants' case law is unavailing.

To begin, Storms cannot be a joint inventor as a matter of law because, as discussed above, he did not contribute in any significant manner (or at all) to any of the claims of the '433 patent. Storms' "system" was fundamentally different from the system claimed in the '433 patent. As such, none of Storms' communications with McNamara contributed (significantly or otherwise) to the claims of the '433 patent.

Storms joint inventorship claim also fails for a second reason. To be a joint inventor requires collaboration. Here, Plaintiffs, through their expert, admit there was no such collaboration. Ex. 30 at 250:17-251:12. And Plaintiffs fail to meaningfully address the cases cited by Defendants relating to this issue. *See* D.I. 176 at 27-30. For example, in *Rubin v. General Hosp. Corp.*, the Federal Circuit affirmed summary judgment of no joint inventorship where a paper written by one research group identifying two gene mutations that caused a specific disease was provided to another research group, which then patented a diagnostic method using these mutations. 523 Fed. Appx. 719, 721-23 (Fed. Cir. 2013). *Rubin*, which was decided after all the case law Plaintiffs cite regarding the collaboration requirement, found that simply receiving documents from an alleged

---

[10] Plaintiffs' assertion that Defendants falsely contend "that the standards for sole and joint inventorship are the same" is itself inaccurate. D.I. 176 at 27. Defendants' Opening Brief accurately explained that to prevail on a joint inventorship claim, the alleged inventor must prove that he or she contributed in some "significant manner" to the conception of the claimed invention. *See* D.I. 149 at 24.

inventor with no further discussion or communication does not support a finding of collaboration or joint inventorship. *Rubin* is, therefore, directly analogous to this case.

Plaintiffs also mischaracterize *University of Utah v. Max-Planck-Gesellschaft Zur Foerderung Der Wissenschaften E.V.*, 851 F.3d 1317 (Fed. Cir. 2017). There, the alleged inventor and one of the named inventors "met for dinner during a conference and discussed [the named inventor]'s research in relation to [the alleged inventor's] hypothesis" that was disclosed in the research paper. D.I. 149 at 25-26 (citing *University of Utah*, 851 F.3d at 1320-21). Nonetheless, the Federal Circuit took no issue with the district court's reasoning that this discussion "could not constitute the collaboration needed to establish joint inventorship." *Id.*[11]

### D.     Plaintiffs' Conversion Claim Is Precluded By The Statute Of Limitations

Plaintiffs assert that their conversion claim is not prescribed by the one year statute of limitations because (1) Louisiana law allows relation back and their current conversion claim concerns the same "conduct, transaction, or occurrence" so it does relate back, and (2) even if their new claim does not relate back, Plaintiffs were not on notice of their claim more than one year before the Second Amended Complaint was filed. D.I. 176 at 30. Plaintiffs are incorrect.

Plaintiffs' statements demonstrate that their current conversion claim does not relate back to their original conversion claim. Plaintiffs' current conversion claim is based on Defendants

---

[11] Plaintiffs' reliance on *Dana-Farber Cancer Inst., Inc. v. Ono Pharm. Co.*, 964 F.3d 1365 (Fed. Cir. 2020) is also misplaced. There, the alleged inventor's claim was not based solely on disclosure of non-confidential information, rather only "portions of that work were published prior to conception." *Dana-Farber*, 964 F.3d at 1372-73. In addition, there, unlike here, the alleged inventor and the named inventor "had worked together for around one year prior to the disclosure" of the information. *Id.* at 1272. This longstanding collaborative work was central to the inventorship analysis, as the Federal Circuit concluded that "a collaborative enterprise is not negated by a joint inventor disclosing ideas less than the total invention to others, especially when, as here, the collaborators had worked together for around one year prior to the disclosure, and the disclosure occurred just a few weeks prior to conception." *Id.*

allegedly using "Bearbox's technology," which Plaintiffs' Opposition describes as an "energy arbitrage method," to "modify [Lancium's] Smart Response™ software." D.I. 103 at ¶ 87; D.I. 176 at 32. As the Court found, however, Plaintiffs original conversion claim was "based on the alleged right to ownership of the '433 patent due to Storms' alleged inventorship" (*i.e.*, Defendants' alleged patenting of Plaintiffs' purported technology). D.I. 92 at 6 n.6. As Plaintiffs admit, the original complaint's conversion claim "***had nothing to do with energy value arbitrage methods***" and "it didn't have anything to do with arbitrage methods at all." *See* D.I. 151, Ex. 22 at 22:16-24:3 (emphasis added). Plaintiffs' Opposition highlights these differences emphasizing that their current "conversion claim is based on the theft of material that is *not* included in the '433 Patent." D.I. 176 at 34 (emphasis in original). These admissions preclude relation back. *See Colvin v. McDougall*, 62 F.3d 1316, 1318 (11th Cir. 1995) (finding plaintiff's counsel's characterization of original claim was "the most import indication" that new claim was different and should not relate back); *see also Atchinson v. D.C.*, 73 F.3d 418, 425 (D.C. Cir. 1996) (finding new claim and original claim were different and there was no relation back, based in part on plaintiff's attorney's characterization of original claim).

Relation-back notwithstanding, Plaintiffs were also on notice of their current conversion claim since at least August 2020. As Plaintiffs' acknowledge, the complaint in the Layer1 Lawsuit identified that Lancium's technology allows for power arbitrage and allows a datacenter to act as "a load-only CLR." D.I. 176 at 32-33. Plaintiffs' Opposition asserts that "[t]he CLR designation … allow[s] Lancium's Bitcoin mining datacenters, once registered, to operate as Storms' BearBox system." D.I. 176 at 12. Thus, by Plaintiffs' own admission, the Layer1 Lawsuit complaint contained enough information to put Plaintiffs "on guard or call for inquiry" regarding their conversion claim and thus triggered the statute of limitations. *See Bihm v. Deca Sys., Inc.*, 226

So.3d 466, 480 (La. 2017). But Storms' knowledge of the Layer1 Lawsuit runs much deeper. ▮



This is the same drawing that Dr. McClellan testifies "gives the overall concept" of Storms' allegedly converted arbitrage method. Ex. 30 at 226:18-239:9; Ex. 42 (BB00000092). These undisputed facts demonstrate that Plaintiffs were, at the very least, on inquiry notice of their conversion claims eighteen months before the SAC was filed. Plaintiffs' conversion claim is thus time barred. *See Bihm*, 226 So.3d at 480.

### E. Plaintiffs' Conversion Claim Is Preempted By Federal Patent Law Because It Seeks To Prevent Defendants From Using Non-Confidential Information, Which Amounts To "Patent-Like" Protection.

Federal patent law establishes a regime that allows a patent owner to prevent others from making, using, selling, offering for sale, or importing their invention, which by virtue of being patented is not confidential. *See* 35 U.S.C. § 271. The Federal Circuit, likewise, finds that state law claims seeking to prevent others from using non-confidential information are preempted by federal patent law because if such a state law claim were allowed "a would-be inventor need not satisfy any of the rigorous standards of patentability to secure a perpetual patent-like royalty under state law based on the use of an unpatented idea." *Ultra-Precision Mfg. Ltd. v Ford Motor Co.*, 411 F.3d 1369, 1380 (Fed. Cir. 2005). Thus, "[a]bsent secrecy, state law cannot create a collateral set of rights available as an adjunct or expansion to patent rights. *Id.* at 1379, quoting *Waner v. Ford Motor Co.*, 331 F.3d 851, 856 (Fed. Cir. 2003).

Plaintiffs' conversion claim is preempted because it attempts to prevent Defendants from using non-confidential information provided by Storms, *i.e.*, it seeks patent-like protection over information that Storms himself made public.[12] Plaintiffs do not dispute that the only alleged basis of confidentially for any of the allegedly converted documents and information is a boilerplate notice in the email Storms sent McNamara, which states only that "[t]his email communication **may** contain private, confidential, or legally privilege information intended for the sole use of the designated and/or duly authorized recipient(s)." SOF ¶16; D.I. 151, Ex. 10 at BB00000090 (emphasis added). But courts have found that, as a matter of law, such boilerplate notices are insufficient to establish secrecy. *See* D.I. 149 at 29 (citing cases). That Defendants shared the same allegedly confidential information with numerous others without confidentiality restrictions also defeats any claim of confidentiality.[13] *See id.* at 28; *see also* Exs. 36 & 37 (which are Exs. 51 and 52 to Storms Depo.); Ex. 31 at 243:1-247:7 (██████████████████████████████ ███████████████████████████████████████████████████████████ ████████); Ex. 38 (███████████████████████████████████████████ ██████████████); Ex. 40 (Storms' disclosure of the drawing on Twitter). Nor can Storms credibly argue his numerous disclosures were naïve, █████████████████████████ ████████████████████████████. *See* D.I. 151, Ex. 8.

Plaintiffs' assertion that *Wawrzynski v. H.J. Heinz Co.*, 728 F.3d 1374, 1381 (Fed. Cir. 2013) establishes that only state law claims based on use of information found in a patent can be

---

[12] Plaintiffs' assertion that their claim is not preempted because confidentiality is not an element of a claim for conversion is a red-herring. The fact that Plaintiffs' conversion claim is based on the use of information that is not confidential is what results in preemption.

[13] Plaintiffs' expert, Mr. McCamant, also admits that the drawing Storms publicly posted on the BearBox Twitter account "conceptually diagrams" Storms' allegedly converted arbitrage method. Ex. 33 at 96:6-97:19.

preempted is also incorrect. *See* D.I. 176 at 34-35. The issue *Wawrzynski* addressed was whether a claim that was pleaded as a state law claim "asserted a claim of patent infringement under § 1338(a)" and therefore provided the Federal Circuit with jurisdiction to decide an appeal of a summary judgment ruling. *See Wawrzynski*, 728 F.3d at 1379. The court held it did not have jurisdiction, in part, because the plaintiffs' claims "f[e]ll far short of a well-pleaded complaint of patent infringement" and "[i]f the complaint succeeds in adequately alleging any causes of action—regarding which we have no opinion—those causes of action are indubitably state law claims." *Id.* at 1380-81. *Wawrzynski*, therefore, does not stand for the proposition that only state law claims based on the use of information found in a patent are preempted.[14]

## IV.    CONCLUSION

For the reasons above and in Defendants' opening brief, the Court should grant summary judgment for Defendants on Plaintiffs' claims for correction of inventorship (Counts I and II) and for conversion (Count V).

---

[14] Plaintiffs' suggestion that a footnote in the report and recommendation on Defendants' motion for judgment on the pleadings regarding Plaintiffs' original conversion claim concluded that conversion claims based on a "non-patent ownership theory of conversion" are not preempted is also misplaced. The Court was not addressing the present issue in that ruling, rather it was addressing whether Plaintiffs' original conversion claim, which explicitly implicated inventorship of the '433 patent (and thus patent ownership), was preempted. *See* D.I. 92 at 5, n.5.

Dated:  July 29, 2022

BARNES & THORNBURG LLP

*/s/ Chad S.C. Stover*

Chad S.C. Stover (No. 4919)
222 Delaware Avenue, Suite 1200
Wilmington, Delaware 19801-1050
Telephone: (302) 300-3474
E-mail: chad.stover@btlaw.com

Mark C. Nelson (admitted *pro hac vice*)
David Lisch (admitted *pro hac vice*)
2121 N. Pearl Street, Suite 700
Dallas, TX  75201
Tel:  (214) 258-4140
E-mail:  mark.nelson@btlaw.com
        david.lisch@btlaw.com

Adam M. Kaufmann (admitted *pro hac vice*)
Darrick Hooker (admitted *pro hac vice*)
Dana Amato Sarros (admitted *pro hac vice*)
One North Wacker Drive, Suite 4400
Chicago, IL 60606
Tel:  (312) 214-8319
Email:  adam.kaufmann@btlaw.com
Email:  darrick.hooker@btlaw.com
Email:  dana.sarros@btlaw.com

*Attorneys for Defendants Lancium LLC, Michael T. McNamara, and Raymond E. Cline Jr.*

22

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| BEARBOX LLC and AUSTIN STORMS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-534-MN-CJB |
| | ) | |
| LANCIUM LLC, MICHAEL T. | ) | |
| MCNAMARA, and RAYMOND E. CLINE, JR. | ) | |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

I certify that on July 29, 2022, I caused a sealed copy of **Defendants' Reply Brief in Support of Their Motion for Summary Judgment** to be served on the following counsel of record by via email.

Andrew C. Mayo
Ashby & Geddes
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19801
Email: amayo@ashbygeddes.com

Benjamin T. Horton
John R. Labbe
Raymond R. Ricordati III
Chelsea M. Murray
Marshall, Gerstein & Borun LLP
233 South Wacker Drive
6300 Willis Tower
Chicago, IL 60606-6357
Email: bhorton@marshallip.com
Email: jlabbe@marshallip.com
Email: rricordati@marshallip.com
Email: cmurray@marshallip.com

Dated:  July 29, 2022                          BARNES & THORNBURG LLP

                                               _/s/  Chad S.C. Stover_____
                                               Chad S.C. Stover (No. 4919)
                                               222 Delaware Avenue, Suite 1200
                                               Wilmington, Delaware 19801-1050
                                               Telephone: (302) 300-3474
                                               E-mail: chad.stover@btaw.com

                                               Mark C. Nelson (admitted pro hac vice)
                                               2121 N. Pearl Street, Suite 700
                                               Dallas, TX  75201
                                               Telephone:  (214) 258-4140
                                               E-mail:  mark.nelson@btlaw.com

                                               Darrick J. Hooker (pro hac vice pending)
                                               Adam M. Kaufmann (admitted pro hac vice)
                                               Dana Amato Sarros (admitted pro hac vice)
                                               One North Wacker Drive, Suite 4400
                                               Chicago, IL 60606
                                               Tel: (312) 214-8319
                                               E-mail: darrick.hooker@btlaw.com
                                               E-mail: adam.kaufmann@btlaw.com
                                               E-mail: dana.sarros@btlaw.com

                                               Attorneys for Lancium LLC, Michael T.
                                               McNamara, and Raymond E. Cline Jr.

2