IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BEARBOX LLC and AUSTIN STORMS, | |
| Plaintiffs, | |
| v. | C.A. No. 21-534-GBW |
| LANCIUM LLC, MICHAEL T. MCNAMARA, and RAYMOND E. CLINE, JR., | UNSEALED ON NOV. 8, 2022 |
| Defendants. | |

Andrew C. Mayo, ASHBY & GEDDES, Wilmington, Delaware; Benjamin T. Horton, John R. Labbe, Raymond R. Ricordati III, Chelsea M. Murray, MARSHALL, GERSTEIN & BORUN LLP, Chicago, Illinois

*Counsel for Plaintiffs*

Chad. S.C. Stover. Mark C. Nelson, Darrick J. Hooker, Adam M. Kaufmann, Dana Amato Sarros, David M. Lisch, BARNES & THORNBURG LLP, Wilmington, Delaware

*Counsel for Defendants*

## MEMORANDUM OPINION

October 28, 2022
Wilmington, Delaware

_/s/ A.F. Williams_
GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

In this action filed by Plaintiffs BearBox LLC and Austin Storms (collectively, "BearBox") against Defendants Lancium LLC, Michael T. McNamara, and Raymond E. Cline, Jr. (collectively, "Lancium"), BearBox seeks to correct the inventorship of United States Patent No. 10,608,433 ("the '433 patent"), which is assigned to Lancium and lists Michael T. McNamara and Raymond E. Cline, Jr. as inventors. D.I. 103.

Presently before the Court is Lancium's First Motion for Summary Judgment[1] regarding BearBox's claims of sole inventorship, or, alternatively, joint inventorship. D.I. 148. Proper adjudication of Lancium's First Motion for Summary Judgment raises the issue of claim construction of two disputed terms in the '433 patent. D.I. 149 at 11-12. The Court has considered the parties' claim construction arguments embedded within their respective summary judgment briefing. D.I. 149 at 11-19; D.I. 176 at 15-19; D.I. 195 at 5-11. The Court held a *Markman* hearing on October 20, 2022 ("Tr. __").

## I. BACKGROUND

On February 16, 2022, BearBox filed its Second Amended Complaint (D.I. 103), asserting claims of sole inventorship, or alternatively, joint inventorship, of the '433 patent, theft of trade secrets, conversion, and unjust enrichment. The Court struck BearBox's trade secret claims on April 22, 2022. D.I. 111. Shortly thereafter, Lancium filed a Motion to Dismiss BearBox's

---

[1] In addition to seeking summary judgment as to BearBox's claims of sole inventorship, or, alternatively, joint inventorship, Lancium's First Motion for Summary Judgment also moves for summary judgment as to BearBox's conversion claim. D.I. 149 at 33-36. However, assessing Lancium's motion requires the Court to construe two disputed terms. As such, this Opinion only addresses the parties' arguments as to claim construction of the two disputed terms. A separate opinion assessing the merits of Lancium's First Motion for Summary Judgment will follow.

conversion and unjust enrichment claims (D.I. 120), which the Court granted in part and dismissed the unjust enrichment claim. D.I. 212; D.I. 213. Lancium then filed its First Motion for Summary Judgment related to all remaining claims (D.I. 148), and later filed its Second Motion for Summary Judgment Regarding Damages and its Motion to Exclude Opinions of BearBox's Expert David Duski (D.I. 167).

Lancium's First Motion for Summary Judgment asserts that BearBox's inventorship claims fail as a matter of law because there is no evidence that Plaintiff Austin Storms conceived of, communicated, or collaborated on the inventions of the '433 patent. D.I. 149 at 1-2. The '433 patent generally relates to systems and methods for adjusting the amount of power available on the electrical grid based on interactions with the ancillary services markets. The '433 patent provides a summary of the claimed invention:

> Examples relate to adjusting load power consumption based on a power option agreement. A computing system may receive power option data that is based on a power option agreement and specify minimum power thresholds associated with time intervals. The computing system may determine a performance strategy for a load (e.g., set of computing systems) based on a combination of the power option data and one or more monitored conditions. The performance strategy may specify a power consumption target for the load for each time interval such that each power consumption target is equal to or greater than the minimum power threshold associated with each time interval. The computing system may provide instructions the set of computing systems to perform one or more computational operations based on the performance strategy.

'433 patent at Abstract.

## II.   LEGAL STANDARDS

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted); *see also Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed. Cir. 1989) ("A claim in a patent provides

3

the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using, or selling the protected invention."). "[T]here is no magic formula or catechism for conducting claim construction." *Phillips*, 415 F.3d at 1324. The Court is free to attach the appropriate weight to appropriate sources "in light of the statutes and policies that inform patent law." *Id.* The ultimate question of the proper construction of a patent is a question of law, although subsidiary fact-finding is sometimes necessary. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837 (2015) (quoting *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996)).

"The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history." *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (citing *Phillips*, 415 F.3d at 1312–13). A person of ordinary skill in the art "is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313.

"When construing claim terms, [the court] first look[s] to, and primarily rely[s] on, the intrinsic evidence, including the claims themselves, the specification, and the prosecution history of the patent, which is usually dispositive." *Sunovion Pharms., Inc. v. Teva Pharms. USA, Inc.*, 731 F.3d 1271, 1276 (Fed. Cir. 2013) (internal quotation marks and citations omitted). "Other claims of the patent in question, both asserted and unasserted, can . . . be valuable" in discerning the meaning of a disputed claim term because "claim terms are normally used consistently throughout the patent," and so, "the usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Phillips*, 415 F.3d at 1314. In addition, "[d]ifferences among claims can also be a useful guide[.]" *Id.* For example, "the presence of a dependent claim that

4

adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Id.* at 1314-15.

In addition to the claim, the Court should analyze the specification, which "is always highly relevant to the claim construction analysis . . . [as] it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). It is also possible that "the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316 (citation omitted). "[E]ven when the specification describes only a single embodiment, [however,] the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1372 (Fed. Cir. 2014) (internal quotation marks omitted) (quoting *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004)). And, the specification "is not a substitute for, nor can it be used to rewrite, the chosen claim language." *SuperGuide Corp. v. DirecTV Enters., Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004).

The Court "should also consider the patent's prosecution history, if it is in evidence." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370, (1996). The prosecution history "can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution[.]" *Phillips*, 415 F.3d at 1317.

In some cases, the Court "will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Teva*, 135 S. Ct. at 841.

5

"Extrinsic evidence consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. Overall, while extrinsic evidence may be useful, it is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Phillips*, 415 F.3d at 1317 (internal quotation marks and citations omitted).

## III. CONSTRUCTION OF DISPUTED TERMS

### A. "power option agreement"

The claim term "power option agreement" appears in all independent claims of the '433 patent. The parties' competing proposed constructions for "power option agreement" are set out in the chart below:

| Claim Term | Plaintiff BearBox's Construction | Defendant Lancium's Construction |
|---|---|---|
| "power option agreement" | "an agreement between a power entity associated with the delivery of power to a load, wherein the load provides the power entity the option to reduce the amount of power delivered up to a minimum power threshold" | "an agreement between a power entity associated with the delivery of power to a load and the load, wherein the load provides the power entity with the option to reduce the amount of power delivered to the load up to an agreed amount of power during an agreed upon time interval such that the load must use at least the amount of power subject to the option during the time interval unless the power entity exercises the option" |

Throughout BearBox's summary judgment briefing, and initially during the *Markman* hearing, BearBox repeatedly asserted that the term "power option agreement" should be given its

6

plain and ordinary meaning.[2] *See, e.g.*, D.I. 176 at 15-19; Tr. at 6. While BearBox's proposed plain and ordinary meaning of "power option agreement" was not initially apparent, at the *Markman* hearing it became clear that BearBox was willing to accept much of Lancium's proposed construction, albeit not in its entirety, as the term's plain and ordinary meaning. *See* Tr. at 7-8. With that compromise, the remaining dispute centers on whether the term "power option agreement" requires that the load must use at least the amount of power subject to the option.[3] *See* Tr. at 8, 16. For the reasons set out below, the Court construes the claim term "power option agreement" to mean:

> "an agreement between a power entity associated with the delivery of power to a load and the load, wherein the load provides the power entity with the option to reduce the amount of power delivered to the load up to an agreed amount of power during an agreed upon time interval such that the load must use at least the amount of power subject to the option during the time interval unless the power entity exercises the option."

---

[2] At the outset, the Court rejects any contention that the term "power option agreement" is equivalent to the term "power purchase agreement." Although BearBox did not argue this point at the *Markman* hearing, as Lancium highlighted, BearBox's expert, Dr. McClellan, equated "power option agreement" to "power purchase agreement" throughout his deposition. *See, e.g.*, McClellan Dep. Tr. at 83:5-10; 86:6–87:1; 157:1-18. But the two terms do not share a common meaning because "power purchase agreement" is explicitly distinguished from "power option agreement" in the '433 patent. *Compare* '433 patent at 3:1-6; 4:33-34; 5:8-11 (discussing power purchase agreements), *with* '433 patent at 43:45-60 (discussing a power option agreement). When construing terms, there is a presumption that "different terms in the claims connotate different meanings." *CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co KG.*, 224 F.3d 1308, 1317 (Fed. Cir. 2000); *see also Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 132, 1328 (Fed. Cir. 2006). Therefore, the term "power option agreement" is presumed to be distinct from "power purchase agreement."

[3] Prior to the *Markman* hearing, the parties appeared to dispute which entity held the option subject to the power option agreement (i.e., the power entity or the load). D.I. 149 at 12-15; McClellan Dep. Tr. at 157:1-18 (testifying that the plain and ordinary meaning of "power option agreement" is "opting to purchase power ahead of time at a certain rate . . . I'm going to pay for that power, that's the option."). However, following BearBox's clarification as to its proposed plain and ordinary meaning of the term, it is clear that both parties agree that the power entity holds the option subject to the power option agreement. This is consistent with the '433 patent's explanation of "power option agreement." *See* '433 patent at 43:50-55 ("As part of the power option agreement, the load . . . provides the power entity with the right, but not obligation . . . .").

7

The use of the disputed term in claim 1 of the '433 patent is representative.

1. A system comprising:

> a set of computing systems, wherein the set of computing systems is configured to perform computational operations using power from a power grid;
>
> a control system configured to:
>
> monitor a set of conditions;
>
> receive power option data based, at least in part, on a ***power option agreement***, wherein the power option data specify:
>
> (i) a set of minimum power thresholds, and
>
> (ii) a set of time intervals, wherein each minimum power threshold in the set of minimum power thresholds is associated with a time interval in the set of time intervals;
>
> responsive to receiving the power option data, determine a performance strategy for the set of computing systems based on a combination of at least a portion of the power option data and at least one condition in the set of conditions, wherein the performance strategy comprises a power consumption target for the set of computing systems for each time interval in the set of time intervals, wherein each power consumption target is equal to or greater than the minimum power threshold associated with each time interval; and
>
> provide instructions to the set of computing systems to perform one or more computational operations based on the performance strategy.

'433 patent at claim 1 (emphasis added).

During oral argument, BearBox argued that "the claims do not require power consumption" by the load. Tr. at 8. In other words, BearBox contends that Lancium's construction improperly reads in a limitation that is not present in the claim language, thereby running afoul to the canons of claim construction. *See id.* at 8-9. Similarly, BearBox argued that Lancium's inclusion of the word "use" is not required by the claims and is inconsistent with the '433 patent's repeated discussion of the word "consumption." *Id.* Instead, BearBox urged the Court to adopt its

8

construction—which mirrors much of the first portion of Lancium's proposed construction—because the term "minimum power threshold" (the second disputed term requiring construction) encapsulates the latter portion of Lancium's construction, avoids redundancy, and does not improperly read in a "use" or "consumption" limitation. Tr. at 7, 23-24, 27.

In response, Lancium argues that its proposed construction is clearly supported by the specification's definition of the term "power option agreement." *See* D.I. 149 at 13; Tr. at 16-17. Although Lancium concedes that the claims do not include the word "use" or "consume," *see* Tr. at 15, it argues that the claims necessarily require that the load "use" or "consume" at least the minimum power subject to the option for each specified time interval as defined in the power option agreement.[4] *See id.* This is because the claim language explicitly requires that the system receive power option data (based in part on a power option agreement), which discloses a set of minimum power thresholds, and based on these thresholds, the system determines a performance strategy comprising power consumption targets equal to or greater than the minimum power threshold associated with each time interval. *See* '433 patent at claim 1. Thus, the load is necessarily required to use at least the minimum amount of power subject to the option for each associated time interval because failing to do so would violate the power option agreement. Tr. at 15 ("[I]f you fall below [the minimum amount of power] from the zero to five level during the time period, then you violate the power option agreement because you've agreed to at least be consuming that much power. Because if you're not consuming it, you can't be cutback, there's nothing for the grid to take back.").

---

[4] Lancium contends that the term "use" and "consume" mean the same thing in the context of the '433 patent and can therefore be used interchangeably. *See* Tr. at 16. BearBox disagrees only to the extent that the two words have different meanings. *See* Tr. at 9-10. Based the intrinsic evidence, the Court finds that the terms "use" and "consume" are used consistently throughout the '433 patent to convey identical meanings.

9

The Court agrees with Lancium that the '433 patent specification defines the term "power option agreement." The specification discloses that:

> In general, a power option agreement is an agreement between a power entity **1140** associated with the delivery of power to a load (e.g., a grid operator, power generation station, or local control station) and the load (e.g., the datacenters **1102-1106**). As part of the power option agreement, the load (e.g., load operator, contracting agent for the load, semi-automated control system associated with the load, and/or automated control system associated with the load) provides the power entity **1140** with the right, but not obligation, to reduce the amount of power delivered (e.g., grid power) to the load up to an agreed amount of power during an agreed upon time interval. In order to provide the power entity **1140** with this option, the load needs to be using at least the amount of power subject to the option (e.g., a minimum power threshold).

'433 patent at 43:45-60.

The specification is further replete with examples supporting Lancium's assertion that any construction of "power option agreement" necessarily requires the load to "use" or "consume" at least the amount of power subject to the option (e.g., the minimum power threshold):

> The power option agreement may be used by the power entity **1140** to reserve the right to reduce the amount of grid power delivered to the load during a set time frame (e.g., the next 24 hours). For instance, the power entity **1140** may exercise a predefined power option to reduce the amount of grid power delivered to the load during a time when the grid power may be better redirected to other loads coupled to the power grid. As such, the power entity **1140** may exercise power option agreements to balance loads coupled to the power grid.
> . . . .
> To illustrate an example, a power option agreement may specify that a load (e.g., the datacenters **1102-1106**) is required to use at least 10 MW or more at all times during the next 12 hours. . . . In order to comply with the agreement, the load must subsequently operate using 10 MW or more power at all times during the next 12 hours. This way, the load can accommodate a situation where the power entity **1140** exercises the option.

'433 patent at 44:3-12,17-35.

During oral argument, BearBox argued that the specification did not "rise[] to the level of lexicography." Tr. at 27. But this is not a situation where the patentees simply disclosed a single embodiment or used the term in the same manner in all embodiments. *See Helmsderfer v. Bobrick*

10

*Washroom Equip., Inc.*, 527 F.3d 1379, 1381 (Fed.Cir.2008) (to be considered a lexicographer, "[i]t is not enough for a patentee to simply disclose a single embodiment or use a word in the same manner in all embodiments."). Rather, the patentees' use of the phrase "is an" manifests a clear and express intention to define "power option agreement" in terms of the specification. *See* '433 patent at 43:45. The Court cannot contemplate how the patentees could more clearly express their intention to define the disputed term. *See Phillips*, 415 F.3d at 1316 (Fed. Cir. 2005) (en banc) ("[T]he specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs."). Therefore, because the specification defines the term "power option agreement," that definition governs the Court's construction.

Further, contrary to BearBox's assertion, construing "power option agreement" to require "use" or "consumption" of the power by the load does not violate claim construction canon. *See* Tr. at 9. Although it is often difficult to draw the "fine line between construing the claims in light of the specification and improperly importing a limitation from the specification into the claims," *Continental Circuits LLC v. Intel Corp.*, 915 F.3d 788 (Fed. Cir. 2019) (quoting *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011)), that line "can be discerned with reasonable certainty and predictability if the court's focus remains on understanding how a person of ordinary skill in the art would understand the claim terms." *Phillips*, 415 F.3d at 1323. Here, a person of ordinary skill in the art would understand that the claim language necessarily requires that the load "use" or "consume" at least the amount of power subject to the option, because if the load is not consuming that amount of power, the power cannot be curtailed by the power entity exercising the option. '433 patent at 43:57-60; *see also* D.I. 196-1, Ex. 41 at ¶ 107. Essentially, by not requiring the load to use or consume at least the minimum

11

amount of power subject to the option, the power entity's option is meaningless. Such a result renders claim 1 nonsensical because if the power entity's option could not be fully exercised, then the system could not determine a power consumption target equal to or greater than the minimum power subject to the option for each associated time interval. *See Neville v. Foundation Constructors, Inc.*, 972 F.3d 1350, 1357 (Fed. Cir. 2020) ("A claim construction that renders asserted claims facially nonsensical cannot be correct."). For the above reasons, the Court will adopt Lancium's proposed construction for the term "power option agreement."

### B. "minimum power threshold"

The claim term "minimum power threshold" appears in all independent claims of the '433 patent. The parties' competing proposed constructions for "minimum power threshold" are set out in the chart below:

| Claim Term | Plaintiff BearBox's Construction | Defendant Lancium's Construction |
|---|---|---|
| "minimum power threshold" | "a minimum amount of power delivered to a load unless the power entity exercises the option. A minimum power threshold may be zero" | "a minimum amount of power a load must use during an associated time interval" |

Like the other disputed term, BearBox repeatedly asserted that the term "minimum power threshold" should be given its plain and ordinary meaning. *See* D.I. 176 at 18-19; Tr. at 32. Yet only at the *Markman* hearing did BearBox's interpretation of the term's plain and ordinary meaning become clear. Tr. at 32. With the benefit of this clarification, the parties' remaining dispute relates to whether the term "minimum power threshold" requires that the load must use at

12

least the amount of power subject to the option in the power option agreement.[5] Tr. at 33-35. For the reasons set out below, the Court construes the claim term "minimum power threshold" to mean:

"a minimum amount of power a load must use during an associated time interval."

The use of the disputed term "minimum power threshold" in claim 1 of the '433 patent is again representative.

> 1. A system comprising:
>
>> a set of computing systems, wherein the set of computing systems is configured to perform computational operations using power from a power grid;
>>
>> a control system configured to:
>>
>> monitor a set of conditions;
>>
>> receive power option data based, at least in part, on a power option agreement, wherein the power option data specify:
>>
>> (i) a set of *minimum power thresholds*, and
>>
>> (ii) a set of time intervals, wherein each *minimum power threshold* in the set of *minimum power thresholds* is associated with a time interval in the set of time intervals;
>>
>> responsive to receiving the power option data, determine a performance strategy for the set of computing systems based on a combination of at least a portion of the power option data and at least one condition in the set of conditions, wherein the performance strategy comprises a power consumption target for the set of computing systems for each time interval in the set of time intervals, wherein each power consumption target is equal to or greater than the *minimum power threshold* associated with each time interval; and
>>
>> provide instructions to the set of computing systems to perform one or more computational operations based on the performance strategy.

---

[5] The parties' briefing initially indicated that there was a dispute regarding whether "minimum power threshold" could be zero for some, or all, of the time intervals in the power option agreement. D.I. 176 at 18-19; D.I. 195 at 10-11. However, at the *Markman* hearing, both parties agreed that the '433 patent allows the minimum power threshold to be zero for one or more of the time intervals, but not the entirety of the power option agreement. *See* Tr. at 32-33, 37-38.

13

'433 patent at claim 1 (emphases added).

According to BearBox, while the load will "more often than not, if not always" use or consume the minimum amount of power subject to the power option agreement, the claims do not require that the load must use that minimum amount of power. Tr. at 3. Thus, BearBox argues that Lancium's construction once again improperly imports a limitation not found in the claim language. *Id.* In response, Lancium contends that the claim language and intrinsic evidence reveal that "minimum power threshold" requires the load to use or consume at least the minimum amount of power subject to the power entity's option. Tr. at 35. Lancium asserts that the specification not only explicitly defines the term, but Figure 12 clearly illustrates the requirement that the load "use" or "consume" at least the amount of power subject to the option. *Id.* at 36-37.

The Court finds that the claim language supports Lancium's construction. Claim 1 requires the performance strategy to determine power consumption targets for each associated time interval that is equal to or greater than the minimum power threshold. *See* '433 patent at claim 1 ("[W]herein the performance strategy comprises a power consumption target . . . wherein each power consumption target is equal to or greater than the minimum power threshold associated with each time interval"). Accordingly, the claim language itself mandates that the load consume at least the minimum power threshold for each associated time interval. *See Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001) (claim construction analysis "must begin and remain centered on the language of the claims themselves, for it is that language the patentee chose to use to particularly point[] out and distinctly claim[] the subject matter which the patentee regards as his invention") (internal quotation omitted).

Moreover, the specification lends additional support for Lancium's construction. The Court agrees that the specification defines "minimum power threshold" in context of requiring the

14

load to use at least the minimum power subject to the option. *See* '433 patent at 43:57-60 ("In order to provide the power entity **1140** with this option, the load needs to be using at least the amount of power subject to the option (e.g., a minimum power threshold)"); *Phillips*, 415 F.3d at 1316 (a patentee's own lexicography governs). The '433 patent's written description and embodiments consistently use the term "minimum power threshold" to require the load to use or consume the minimum amount of power subject to the option. *See, e.g.*, '433 patent at 45:16-20 ("[T]he remote master control system . . . may adjust its own power consumption based on the power option agreement (e.g., ramp up or down power consumption based on the defined minimum power thresholds during time intervals)"); *id.* at 46:1-4 ("[T]he power option data may specify the minimum power threshold or thresholds associated with one or more time intervals for the load to operate at"); *id.* at 55:22-24 ("In some examples, each power consumption target is equal to or greater than the minimum power threshold associated with each time interval."). And the Court agrees with Lancium that Figure 12 illustrates that a proper construction of "minimum power threshold" requires that the load must use at least the minimum power threshold for each associated time interval to allow for the power entity to exercise the power option. *See id.* at Figure 12; *see also id.* at 51:28-34 ("[B]ased on the power option data shown in FIG. 12, the loads must be able to operate at a target power consumption level that is equal to or greater than the 5 MW minimum power threshold **1206A** at all times during the time interval extending from hour 0 to hour 8, in order to be able to satisfy the power option if it is exercised for that time interval.").

The Court rejects BearBox's use of the word "delivered" in its proposed construction. While the specification defines "power entity" as those entities "associated with the delivery of power to a load," *see id.* at 43:47-48, the word "delivered" does not appear in the claim language of the '433 patent. Nor does the Court find support in the intrinsic or extrinsic evidence to include

15

the word "delivered" in the construction of the claim term "minimum power threshold." Rather, the intrinsic evidence supports the Court's construction requiring the load to use or consume at least the minimum power subject to the option because "minimum power threshold" assigns an obligation to the load, not the power entity. *Id.* at 43:57-60 ("In order to provide the power entity **1140** with this option, the load needs to be using at least the amount of power subject to the option (e.g., a minimum power threshold)"). Furthermore, the Court rejects BearBox's assertion that any construction of the term must include that the minimum power threshold may be zero. Tr. at 33. A person of ordinary skill in the art reading the entirety of the patent understands that the minimum power threshold may be zero for some portion, but not the entirety, of the power option agreement. *See* '433 patent at 54:13-18; *see also Phillips*, 415 F.3d at 1313 (a person of ordinary skill in the art "is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification.").

For the above reasons, the Court construes the claim term "minimum power threshold" to mean "a minimum amount of power a load must use during an associated time interval."

## IV. CONCLUSION

The Court will construe the disputed claim terms as described above. The Court will issue an Order consistent with this Memorandum Opinion.