IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| BEARBOX LLC and AUSTIN STORMS, | | |
| Plaintiffs, | | |
| v. | | C.A. No. 21-534-GBW |
| LANCIUM LLC, MICHAEL T. MCNAMARA, and RAYMOND E. CLINE, JR., | | |
| Defendants. | | |

Andrew C. Mayo, ASHBY & GEDDES, Wilmington, Delaware; Benjamin T. Horton, John R. Labbe, Raymond R. Ricordati III, Chelsea M. Murray, MARSHALL, GERSTEIN & BORUN LLP, Chicago, Illinois

*Counsel for Plaintiffs*

Chad. S.C. Stover. Mark C. Nelson, Darrick J. Hooker, Adam M. Kaufmann, Dana Amato Sarros, David M. Lisch, BARNES & THORNBURG LLP, Wilmington, Delaware

*Counsel for Defendants*

### **MEMORANDUM OPINION**

**UNSEALED 1/12/2023**
November 15, 2022
Wilmington, Delaware

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Plaintiffs BearBox LLC and Austin Storms (collectively, "BearBox") filed this action against Defendants Lancium LLC, Michael T. McNamara, and Raymond E. Cline, Jr. (collectively, "Lancium"), seeking to correct the inventorship of United States Patent No. 10,608,433 ("the '433 patent"), which is assigned to Lancium and lists Michael T. McNamara ("McNamara") and Raymond E. Cline, Jr. ("Cline") as inventors. Pending before the Court is BearBox's Motion to Exclude Certain Testimony of Dr. Mark Ehsani. D.I. 152. The Court has reviewed the parties' respective briefing and responses thereto. *See, e.g.*, D.I. 152; D.I. 153; D.I. 154; D.I. 174; D.I. 175; D.I. 176; D.I. 190. For the reasons explained below, BearBox's Motion to Exclude Certain Testimony of Dr. Mark Ehsani is granted-in-part and denied-in-part. The Court writes for the benefit of the parties and assumes familiarity with the case.

## I.   LEGAL STANDARD

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993), the Supreme Court held that Federal Rule of Evidence 702 creates "a gatekeeping role for the [trial] judge" in order to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. As the Third Circuit has explained,

> Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit. Qualification refers to the requirement that the witness possess specialized expertise. We have interpreted this requirement liberally, holding that

2

"a broad range of knowledge, skills, and training qualify an expert." Secondly, the testimony must be reliable; it "must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his o[r] her belief. In sum, *Daubert* holds that an inquiry into the reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity." Finally, Rule 702 requires that the expert testimony must fit the issues in the case. In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact. The Supreme Court explained in *Daubert* that "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility."

*Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404-05 (3d Cir. 2003) (footnote and internal citations omitted).

Rule 702 "has a liberal policy of admissibility," *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008), as "the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court," *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

## II.   DISCUSSION

BearBox moves to preclude Lancium's expert, Dr. Mark Ehsani, from offering opinions related to (1) "whether Plaintiff Austin Storms had an expectation of confidentiality in information he shared with the Defendants"; and (2) "whether the Defendants' acts prevented Mr. Storms from capitalizing on his ideas." D.I. 153 at 8. In opposition, Lancium argues that BearBox mischaracterizes Dr. Ehsani's opinions and, when properly characterized, Dr. Ehsani is qualified to offer these opinions, which will ultimately be helpful to the factfinder. D.I. 174 at 1-2. The Court addresses each of Dr. Ehsani's opinions in turn.

3

A.     **Dr. Ehsani's Opinion Related to Confidentiality**

Dr. Ehsani opines, in relevant part, that "Mr. Storms' conduct demonstrates that he did not

consider the information he provided to Mr. McNamara to be confidential." D.I. 154 1, Ex. A at

¶ 19.  Dr. Ehsani then reviews and recounts the facts supporting his opinion that the allegedly

converted documents could reasonably be considered not confidential, including: (1) the files

emailed to Lancium, which only contained a standard confidentiality footer, *see id.* at ¶ 175; (2)

similar files sent to other parties without a non-disclosure agreement or confidentiality notice, *see*

*id.* at ¶ 188; and (3) Austin Storms' testimony that he would have "open sourced" his model had

he felt it would work, *see id.* ¶ 352.

BearBox contends that Dr. Ehsani's opinion departs from his expertise in the field of

electrical engineering and is "instead fact testimony masquerading as expert opinion." D.I. 153 at

5.  Thus, BearBox argues that his opinion should be excluded because Dr. Ehsani, an electrical

engineer, cannot opine as to a party's reasonable expectation of confidentiality. *Id.* at 5-6.  By

itself, Dr. Ehsani's qualifications as an electrical engineer would not support his testimony related

to confidentiality.  However, an expert's non-scientific opinions may be based upon that expert's

personal experience. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).  That is to

say, "an expert may be allowed to testify about an area in which he does not have extensive training

. . . when the expert has experience employing the same principles at issue." *Floorgraphics, Inc.*

*v. News Am. Mktg. In-Store Servs.*, 546 F. Supp. 2d 155, 165 (D.N.J. 2008) (citing *Tormenia v.*

*First Investors Realty Co., Inc.*, 251 F.3d 128 (3d Cir. 2000)).  Whether an expert's personal

experience rises to the level of "specialized knowledge," thereby qualifying him to opine on such

matters, requires the Court to consider the expert's "practical experience as well as academic

training and credentials." *Kane Builders, Inc. v. Southern New Jersey Building Laborers Dist.*

4

*Council*, 2007 WL 2416470, at *6 (D.N.J. 2007) (quoting *Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998)).

Here, Dr. Ehsani's extensive personal experience qualifies him to opine on the treatment of confidential information.  Dr. Ehsani bases his opinion on his nearly forty years of experience in the electrical engineering industry, including over thirty-five years consulting for "over 60 companies in the U.S. and internationally." D.I. 154-1, Ex. A at ¶¶ 5-11; *id.* at Resume.  Based on his knowledge as a consultant, Dr. Ehsani has had experience with "numerous companies large and small" regarding their practices and protocols for treating documents as confidential. D.I. 174, Ex. 2 at 169:15-23.  From having "been involved with various forms of confidential technology for 40 years," *see* D.I. 154-1, Ex. A at ¶ 188, Dr. Ehsani testified that companies "always sign an NDA before they give me information, and they refuse to listen to my technology if they think it may violate some technology that they are working on." D.I. 174, Ex. 2 at 169:10-23.  That Dr. Ehsani has also held a "secret" level security clearance, which necessarily requires knowing how to treat highly confidential information, further bolsters Dr. Ehsani's qualifications. D.I. 174 at 7; D.I. 154-1, Ex. A at Resume.  Thus, Dr. Ehsani's specialized knowledge regarding the treatment of confidential information from forty years of experience qualifies Dr. Ehsani to opine on such matters.

Additionally, BearBox contends that Dr. Ehsani's opinion on the treatment of confidential information relates to fact issues that are unreliable, speculative, and cannot be helpful because they are not rooted in any useful or reliable methodology. D.I. 153 at 6-7.  But, as explained above, an expert's opinion can be based on his personal experience. *Kumho*, 526 U.S. at 152; United States v. Ford, 481 F.3d 215, 219 (3d Cir. 2007).  While Dr. Ehsani may rely on his personal experience in offering his opinion, he must also "explain how that experience leads to the

conclusion reached, why that experience is a sufficient basis for an opinion, and how that experience is reliably applied to the facts." *Floorgraphics*, 546 F. Supp. 2d at 165 (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995)). Though Dr. Ehsani's attempt to explain the reliability of his personal experience as applied to his opinion is, at best, minimal, the Court cannot conclude that the proffered explanation demonstrates a lack of reliability. In fact, Dr. Ehsani's explanation that "Mr. Storms sending the spreadsheet and source code to Mr. Garland, the information to Mr. Franzen, and the information to Mr. McNamara, all without any agreements of confidentiality (oral or written)," *see* D.I. 154-1, Ex. A at ¶ 188, together with Dr. Ehsani's forty years of experience, supports the reasonable inference that exchanging information with oral or written agreements of confidentiality is a common practice to ensure a document is treated as confidential. Moreover, and contrary to BearBox's assertion, Dr. Ehsani plainly does not opine as to Austin Storms' subjective belief as to whether the documents were confidential, but rather simply offers his opinion as to whether, based on his experience, the actions of Austin Storms are consistent with a reasonable expectation of confidentiality. *See* D.I. 174, Ex. 2 at 169:1-9 ("Q: Dr. Ehsani, are you offering an opinion as to what Mr. Storms considered to be confidential or not? A: No, I'm offering an opinion about what confidential information and the protocol or nondisclosure agreement is understood in the field by [a] person of ordinary skill, by responsible people and by people that consider themselves having confidential technology."). Ultimately, while the reliability of Dr. Ehsani's method is open to challenge, such a challenge is more appropriately pursued by way of cross-examination at trial. *See Leonard v. Stemtech Health Scis., Inc.*, 2013 WL 5311295, at *7 (D. Del. Sep. 23, 2013) (holding that the reliability of an expert's non-scientific testimony is more appropriately challenged by way of cross-examination as opposed to exclusion via *Daubert*).

6

Thus, BearBox's Motion to Exclude the testimony of Dr. Eshani as related to the treatment of confidential information is denied.

### B.    Dr. Ehsani's Opinion Related to Lost Opportunities

Dr. Ehsani opines, in relevant part, that "Defendants' conduct did not prevent and has not prevented Mr. Storms from utilizing the 'alleged BearBox technology' in any way," D.I. 154-1, Ex. A at ¶ 19, and that "[n]either Mr. Storms nor Dr. McClellan identify any money or opportunity that Mr. Storms lost because of materials and/or information provided to Lancium, and neither have identified any opportunity that Mr. Storms lost as a result of Lancium's alleged use of the alleged BearBox technology." *Id.* at ¶ 353. BearBox argues that Dr. Ehsani is neither qualified to offer an opinion about the economics of any opportunities Mr. Storms may have lost, nor is such an opinion based on reliable methodology. D.I. 153 at 7-8. Lancium disagrees, arguing that Dr. Ehsani's opinion merely notes the lack of evidence supporting BearBox's conversion claim and is in no way related to any alleged lost economic opportunities. D.I. 174 at 9-10.

The Court agrees that Dr. Ehsani's opinion is solely related to drawing attention to Austin Storms and Dr. McClellan's failure to identify any money or opportunity lost as a result of Lancium's alleged conversion. It is neither related to economics nor requires such expertise of the same. Thus, Dr. Ehsani is qualified to at least opine on the absence of such evidence. *See* Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of."); Fed. R. Civ. P. 26(a)(2)(B) (an expert's report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them," and also "the facts or data considered by the witness in forming them."). However, Dr. Ehsani's opinion stands for the conclusion that "the lack of evidence is evidence of absence." Such a conclusion does not require any special knowledge or skill that would be particularly helpful in aiding the jury in arriving at the answer. *Daubert*, 509 U.S. at 591. In fact, Dr. Ehsani's opinion is nothing more

than drawing inferences from the evidence that he is no more qualified than the jury to draw. *Kremsky v. Kremsky*, No. 16-4474, 2017 WL 663091, at *2 (E.D. Pa. Feb. 17, 2017) (excluding expert testimony that supplants the jury's factfinding role); *United States v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991) (precluding expert testimony that "consists of nothing more than drawing inferences from the evidence that [the experts are] no more qualified than the jury to draw."). Because Dr. Ehsani's opinion related to BearBox's failure to proffer evidence supporting a claim of lost opportunities is based on an observation not helpful to the factfinder, it is excluded under Rule 702 and *Daubert*.

The Court will issue an order consistent with this Memorandum Opinion.