# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BEARBOX LLC and AUSTIN STORMS, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) C.A. No. 21-534-GBW-CJB |
| | ) |
| LANCIUM LLC, MICHAEL T. MCNAMARA, and RAYMOND E. CLINE, JR. | ) PUBLIC VERSION |
| | ) |
| Defendants. | ) |

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION FOR BIFURCATION

Dated: October 31, 2022
**Public version filed on November 22, 2022**

BARNES & THORNBURG LLP
Chad S.C. Stover (No. 4919)
1000 N. West Street, Suite 1500
Wilmington, Delaware 19801-1050
Telephone: (302) 300-3474
E-mail: chad.stover@btlaw.com

Mark C. Nelson (admitted *pro hac vice*)
David M. Lisch (admitted *pro hac vice*)
Benjamin T. Pendroff (admitted *pro hac vice*)
2121 N. Pearl Street, Suite 700
Dallas, TX 75201
Tel: (214) 258-4140
E-mail: mark.nelson@btlaw.com
E-mail: david.lisch@btlaw.com
E-mail: bpendroff@btlaw.com

Adam M. Kaufmann (admitted *pro hac vice*)
Darrick Hooker (admitted *pro hac vice*)
Dana Amato Sarros (admitted *pro hac vice*)
One North Wacker Drive, Suite 4400
Chicago, IL 60606
Tel: (312) 214-8319
Email: adam.kaufmann@btlaw.com
Email: darrick.hooker@btlaw.com
Email: dana.sarros@btlaw.com

`
`

*Attorneys for Defendants Lancium LLC, Michael T. McNamara, and Raymond E. Cline Jr.*

## TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................. 1

ARGUMENT .......................................................................................................................... 3

I.    The Court Should Bifurcate The Patent Inventorship Claims From The Conversion Claims. ........................................................................................................................ 3

    A.    Applicable Legal Principles ............................................................................. 3

    B.    Bifurcation Is Appropriate In This Case. ......................................................... 4

        1.    Bifurcation will enhance juror comprehension. .................................... 4

        2.    Bifurcation will reduce the risk of prejudice. ....................................... 7

        3.    Bifurcation will promote convenience and economy. ......................... 9

    C.    Bifurcation Will Not Deprive Plaintiffs Of Their Right To A Jury Trial. ........ 9

CONCLUSION ..................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Afga Corp. v. Creo Prods Inc.*,
    451 F.3d 1366 (Fed. Cir. 2006)..................................................................................................10

*Audio MPEG, Inc. v. Dell Inc.*,
    254 F. Supp. 3d 798 (E.D. Va. 2017) ................................................................................. *passim*

*Ciena Corp. v. Corvis Corp.*,
    210 F.R.D. 519 (D. Del. 2002) ......................................................................................1, 3, 4, 10

*Dileo v. Horn*,
    189 So. 3d 1189 (La. Ct. App. 5 Cir. 2016).................................................................................4

*Eli Lilly and Co. v. Arandigm Corp.*,
    376 F.3d 1352 (Fed. Cir. 2004)....................................................................................................5

*Gemstar-TV Guide Int'l, Inc. v. Int'l Trade Comm'n*,
    383 F.3d 1352 (Fed. Cir. 2004)....................................................................................................5

*Guardco Mfg., Inc. v. Herst Lighting Co.*,
    820 F.2d 1209 (Fed. Cir. 1987)................................................................................................8, 9

*Iceotope Grp. Ltd. Liquid Cool Sols., Inc.*,
    No. 20-CV-2644, 2022 WL 204923(D. Min. Jan. 24, 2022).......................................................5

*Lab. Skin Care, Inc. v. Ltd. Brands, Inc.*,
    757 F. Supp. 2d 431 (D. Del. 2010).............................................................................................3

*Massimo Corp. v. Philips Electronics N. Am. Corp.*,
    No. 09-80-JFF-MPT, 2010 WL 925864 (D. Del. Mar. 11, 2010) ...............................................8

*Quealy v. Paine, Webber, Jackson & Curtis, Inc.*,
    475 So. 2d 756,760 (La. 1985) ....................................................................................................4

*Scott v. Zimmer*,
    889 F. Supp. 2d 657 (D. Del. 2012).............................................................................................6

*Shum v. Intel Corp.*,
    499 F.3d 1272 (2007)...............................................................................................................9, 10

**Other Authorities**

Fed. R. Civ. P. 42(b) ...................................................................................................................1, 3

## INTRODUCTION

*"[Bearbox's] conversion claim is based on the theft of material that is not included in the '433 Patent, and therefore does not seek 'patent-like' relief, or turn on questions of patent inventorship or ownership."* – Plaintiffs' Brief In Opposition to Defendants' First Motion For Summary Judgment (D.I. 176), at 34 (emphasis original)

A court may order separate trials on one or more issues for convenience, to avoid prejudice, or to expedite and economize. Fed. R. Civ. P. 42(b). Plaintiffs BearBox LLC and Austin Storms (collectively "Plaintiffs") originally asserted six causes of action of which three remain—sole inventorship (Count I), joint inventorship (Count II), and conversion (Count V). Plaintiffs admit their patent inventorship claims (Counts I and II) are different than their conversion claim. Defendants Lancium LLC, Michael T. McNamara, and Raymond E. Cline, Jr. (collectively, "Lancium") request this Court take Plaintiffs at their word and bifurcate the patent inventorship claims from the conversion claim, first conducting a bench trial on the patent inventorship claims, and then holding a jury trial on the conversion claim. As demonstrated below, bifurcation is appropriate here because it will (i) enhance juror comprehension of the issues, (ii) avoid prejudice, and (iii) promote convenience and economy by having the Court decide the more complex patent inventorship issues, while the jury decides the more straightforward conversion state law claim. In sum, bifurcation is most likely to result in a just, final disposition of the litigation by eliminating substantial risk of jury confusion and prejudice. *See Ciena Corp. v. Corvis Corp.*, 210 F.R.D. 519, 520 (D. Del. 2002); *see also Audio MPEG, Inc. v. Dell Inc.*, 254 F. Supp. 3d 798, 803-04 (E.D. Va. 2017).

## FACTUAL BACKGROUND

Plaintiffs allege that Austin Storms should be declared to be the sole inventor (or, alternatively, at least a joint inventor) of U.S. Patent No. 10,608,433 ("the '433 patent"). Plaintiffs

1

seek no monetary relief for these claims. If tried,[1] resolution of these claims will require, among other things, consideration of the '433 patent, its claims, the Court's construction of those claims, Plaintiffs' "evidence," including a conversation during a dinner attended by approximately eight persons that occurred immediately following a cocktail hour where Messrs. Storms and McNamara allegedly met for the first time, a handful of ensuing text messages between the two men, and a single email with five attachments, four of which Plaintiffs concede were made publicly available *See* Lancium's Brief in Support of its Motion for Summary Judgment ("MSJ Motion") (D.I. 149) (and exhibits cited therein), at 35; Lancium's Reply Brief in Support of Motion for Summary Judgment ("MSJ Reply") (D.I. 195), at 20 (and exhibits cited therein)). It is expected that Plaintiffs will also rely on source code Plaintiffs contend demonstrates that Mr. Storms had "conceived" of the inventions of the '433 patent at the time he communicated with Mr. McNamara.[2] In addition, resolution will require consideration of Lancium's evidence of its independent technology development, including its conception of the subject matter claimed in the '433 patent.

Plaintiffs' conversion allegation is narrower. Plaintiffs assert a Louisiana state law claim for conversion of a "breakeven arbitrage" method allegedly described in a spreadsheet and a drawing that were attached to Mr. Storms' May 9, 2019 email to Mr. McNamara. *See, e.g,* MSJ Reply, at 20, n. 13, citing Ex. 33 (Plaintiffs' expert, Dr. McClellan), at 96:6-97:19. The drawing was made public numerous times, including being posted on BearBox's Twitter. *See* MSJ Reply, at 20 (Ex. 40 thereto). Versions of the allegedly confidential information in the spreadsheet were, likewise, provided to third parties. *Id*. (and exhibits cited therein). Plaintiffs seek millions of

---

[1] Lancium maintains summary judgment on Plaintiffs' inventorship claims is appropriate for the reasons identified in its Motion for Summary Judgment. (*See* D.I. 148, 195).

[2] It is undisputed that Mr. Storms never provided his source code to Mr. McNamara.

2

dollars in damages for Lancium's alleged conversion. If tried,[3] resolving the conversion issue will involve evidence of the origins of Plaintiffs' so-called "breakeven arbitrage" method, whether Plaintiff made it public, whether he communicated it to Lancium, whether such communication was voluntary, whether Lancium used Plaintiffs' method, Lancium's development of its own technology, a comparison of Lancium's and Plaintiffs' technologies, and damages issues and related witnesses.

## ARGUMENT

### I. The Court Should Bifurcate The Patent Inventorship Claims From The Conversion Claims.

#### A. Applicable Legal Principles

"[A] district court has broad discretion in separating issues and claims for trial as part of its wide discretion in trial management." Fed. R. Civ. P. 42(b); *Ciena Corp.*, at 520 (internal quotation marks omitted). To determine whether to bifurcate, Courts "should consider whether bifurcation will avoid prejudice, conserve judicial resources, and enhance juror comprehension of the issues presented in the case." *Id*; *see also Lab. Skin Care, Inc. v. Ltd. Brands, Inc.*, 757 F. Supp. 2d 431, 442 (D. Del. 2010) (granting bifurcation in a patent case where, among other things, bifurcation would reduce "risk of juror confusion"). "In the context of patent cases, experienced judges use bifurcation and trifurcation both to simplify the issues [] and to maintain manageability of the volume and complexity of the evidence presented to a jury." *Ciena Corp.*, 201 F.R.D. at 521; *Audio MPEG*, 254 F. Supp.3d at 803 (same). "[B]ifurcation of complex patent trials has become common." *Ciena Corp.*, 201 F.R.D. at 521.

---

[3] Lancuim also maintains summary judgment is proper on Plaintiffs' conversion claim for the reasons set forth it its MSJ Motion and MSJ Reply. (D.I. 148, 195).

3

### B.  Bifurcation Is Appropriate In This Case.

The major consideration in deciding whether to bifurcate is whether bifurcation will result in a just final disposition of the litigation.  *Audio MPEG*, 254 F. Supp.3d at 806.  Here, bifurcating the patent inventorship claims from the conversion claim and trying the patent inventorship issues to the bench, will help ensure a just final disposition because doing so will: (1) enhance juror comprehension, (2) avoid prejudice by ensuring the jury does not conflate the evidence relating to the patent inventorship allegations with those relating to the conversion allegation, and (3) simplify both trials.

### 1.  Bifurcation will enhance juror comprehension.

Bifurcation will enhance juror comprehension (*i.e.*, help avoid juror confusion) with respect to the applicable legal principles, the burdens of proof, and the comprehension of the relevant evidence.

First, bifurcation will enhance juror comprehension with respect to the applicable legal standards.  As one Court in this District has stated, in complicated patent cases, it is best to conduct a trial "in a way that reduces the number of legal principles the jury must consider and apply." *Ciena Corp.*, 210 F.R.D. at 521; *Audi*MPEG, 254 F. Supp. 3d at 807 (finding bifurcation enhanced jury decision making by, among other things, "limiting the number of legal issues the jury must address at any particular time").  Here, a jury is well-equipped to decide the simple question of whether Lancium converted information Plaintiffs voluntarily sent to Mr. McNamara in a single email. Generally, the jury will be asked to decide if Defendants acted in derogation of the Plaintiffs' possessory rights and wrongfully exercised or assumed authority over Plaintiffs' goods, thereby depriving Plaintiffs of possession of those goods either permanently or indefinitely. *Quealy v. Paine, Webber, Jackson & Curtis, Inc.*, 475 So. 2d 756, 760 (La. 1985) (emphasis added); *see also Dileo v. Horn*, 189 So. 3d 1189, 1198 (La. Ct. App. 5 Cir. 2016).

4

The inventorship determination, on the other hand, involves different, and more numerous legal requirements. To begin, inventorship is a question of law. *Eli Lilly and Co. v. Arandigm Corp.*, 376 F.3d 1352, 1362 (Fed. Cir. 2004). The analysis first requires construction of each disputed claim term (*Gemstar-TV Guide Int'l, Inc. v. Int'l Trade Comm'n*, 383 F.3d 1352, 1381-82 (Fed. Cir. 2004)). This Court issued its claim construction ruling on October 28, 2022. D.I. 218-219. To succeed on their sole inventorship claim, Plaintiffs must establish that "(1) the erroneously omitted inventor conceived [each of] the invention[s] claimed in the patent, *and* (2) the named inventor[s] on the patent did *not* conceive the invention[s]." *Iceotope Grp. Ltd. Liquid Cool Sols., Inc.*, No. 20-CV-2644, 2022 WL 204923, at 2 (D. Min. Jan. 24, 2022) (emphasis original). This analysis involves application of the claim construction to a myriad of technical issues regarding Mr. Storms' "technology" to determine whether he "conceived"[4] each of the 20 claims). In addition, the sole inventorship analysis requires consideration of what Mr. Storms communicated to Lancium, and involves analyzing Lancium's technology development and timeline to determine whether Messrs. McNamara and Cline did *not* conceive the inventions claimed in the '433 patent. *See* D.I. 149, at 24-25 (Defendants' MSJ explaining legal principles). The joint inventorship analysis involves determining whether Mr. Storms made a contribution "not insignificant in quality, when that contribution is measured against the dimension of the full invention," as opposed to merely explaining well-known concepts and/or the state of the art to the real inventors. *See* D.I. 149, at 24-25 (Defendants' MSJ explaining legal principles). It also involves determining what Mr. Storms communicated to Mr. McNamara, analyzing Lancium's technology development and timeline to determine whether Messrs. McNamara and Cline

---

[4] Conception is "the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention." *See Gemstar*, 383 F.3d at 1381.

conceived the claimed technology, and determining whether there was any collaboration between Mr. Storms and Messrs. McNamara and Cline for the invention. Moreover, both inventorship claims involve issues of corroboration and, ultimately, application of the rule of reason analysis. *See* D.I. 149, at 9-11, 30; D.I. 195, at 15-17. The conversion analysis does not implicate these legal requirements.

Second, bifurcation will enhance juror comprehension with respect to the burdens of proof. As discussed in connection with Lancium's Motion for Summary Judgment, patent issuance creates a presumption that the named inventors are the true and only inventors, and that people not named are not to be inventors. *Scott v. Zimmer*, 889 F. Supp. 2d 657, 662 (D. Del. 2012). Plaintiffs seeking to add Mr. Storms as an inventor, therefore, must meet "the heavy burden of proving [their] case by clear and convincing evidence." *Id.* But the standard for conversion is preponderance of the evidence. Trying the patent inventorship claims and the conversion claim together to a jury increases the likelihood of juror confusion regarding the respective burdens of proof and, ultimately, of the jury misapplying the respective burdens of proof.

Third, bifurcation will enhance juror comprehension of the evidence. To decide the inventorship claims, a jury will be asked to decipher the testimony of Mr. Storms, both parties' technical experts, source code issues, and the application of the claim construction to the respective parties' technology. Conversely, to decide conversion, the jury will be asked to decide issues of public availability/confidentiality, whether Mr. Storms voluntarily provided the allegedly converted information, and whether Lancium converted such information. However, based on the manner in which Plaintiffs appear to be presenting the evidence, the jurors' job would be further complicated because Plaintiffs' technical expert, Dr. McClellan, conflates the inventorship subject matter with the conversion subject matter in his report. *See, e.g.*, Expert Report of Dr. Stan

6

McClellan (D.I. 149, Ex. 3), at ¶ 62 (for claim 1, element c, discussing "comparing mining profitability based on, inter alia, current power usage and energy price conditions on the one hand with profitability based, inter alia, on expected future power usage and energy price conditions"); ¶ 66 (discussing similar analysis for claim 1, element d).[5] During his deposition, Dr. McClellan testified "the patent doesn't contemplate selling it [the power] back at all," and defers to Mr. McCamant regarding the meaning of power option agreement. *See* Ex. 5 to D.I. 149, at 154:24-156:11 (quote is at 155:5-6). For this reason, bifurcation should be granted because it would permit the evidence to be presented in a manner "that is easier for the jurors to understand." *Audio MPEG*, 254 F. Supp. 3d at 807.

Finally, Plaintiffs are legally precluded from seeking damages for their patent inventorship claims, but are seeking tens of millions for conversion. A jury is likely to be confused when Plaintiffs' damages expert attempts to (wrongfully) explain why Plaintiffs should receive money for conversion, but nothing for patent inventorship.

**2.      Bifurcation will reduce the risk of prejudice.**

Bifurcation is also warranted because it will reduce the risk of prejudice by reducing the risk of the jury conflating the evidence relating to the patent inventorship claims with the evidence relating to the conversion claims. As discussed above, a focus of the inventorship analysis is whether Mr. Storms conceived of the claimed inventions and communicated them to Mr. McNamara during the public dinner and/or later in text messages or via the single email. Because the materials that form the basis of Plaintiffs' conversion claim were attachments to Mr. Storms' email, there will likely be some evidentiary overlap between the evidence regarding inventorship

---

[5] Dr. McClellan repeats this analysis for independent claims 17 and 20. *See* D.I. 149 (Ex. 3), at ¶¶ 254-55, 272-73.

7

and the evidence regarding conversion.⁶ But based on Plaintiffs' expert Dr. McClellan's report, he conflates so-called "breakeven" power sell-back determinations, which Lancium understands is the basis for the conversion claim, with power option agreements and minimum power thresholds, which are limitations recited in the '433 patent's claims. As such, if the patent inventorship issues are not bifurcated, the likelihood of juror confusion (discussed above) also creates a significant risk of Lancium being prejudiced by the jury conflating the separate, legally distinct issues and evidence relating to Plaintiffs' sole and joint inventorship allegations with the issues and evidence relating Plaintiffs' conversion allegation.

This risk is further heightened here because Plaintiffs repeatedly describe Lancium's alleged conversion and wrongdoing in highly inflammatory terms (*e.g.*, "stole," "hatched a plan," "stolen").⁷ *See*, *e.g.*, Second Amended Complaint (D.I. 103), at ¶¶ 4, 41, 50. Bifurcation is, therefore, warranted to minimize the risk of Plaintiffs' conversion arguments tainting the entire trial. *See Massimo Corp. v. Philips Electronics N. Am. Corp.*, No. 09-80-JFF-MPT, 2010 WL 925864, at *2 (D. Del. Mar. 11, 2010); *Audio MPEG*, 254 F. Supp. 3d at 807 (finding allegations of anticompetitive conspiracies, improper market monopolization, and breach of promises could bias a jury against Plaintiffs when it evaluates the patent infringement claims). Indeed, if the jury is inclined to find for Lancium on conversion and thus award no damages, it could lead the jury to find for Plaintiffs on inventorship to award him something.

---

⁶ Plaintiffs may argue that evidentiary overlap cuts against bifurcation, but the law is clear that there is "a fundamental different between *evidence* and *issues*." *See Guardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1213 (Fed. Cir. 1987) (emphasis original) (bifurcating inequitable conduct issue).

⁷ Lancium objects to the use of such pejorative terms as violating at least FRE 401 and 403.

### 3. Bifurcation will promote convenience and economy.

Bifurcation will promote convenience and economy by simplifying and streamlining the issues and evidence for both trials. For example, because Plaintiffs cannot recover monetary damages for inventorship, the inventorship bench trial will not require testimony from damages experts. Also, the testimony regarding Lancium's business operations will likely be shorter, as will be the technical and power market experts' testimony. Similarly, because the conversion claim appears focused on the spreadsheet attached to Mr. Storm's email, the evidence and testimony presented to the jury will be streamlined to that issue. Thus, while there may be some overlap regarding evidence, bifurcation will greatly simplify both trials and is warranted. *See Audio MPEG*, 254 F. Supp. 3d at 805 (finding convenience factor favored bifurcation of antitrust and misuse claims from patent claims despite some evidentiary overlap); *Gardco*, 820 F.2d at 1213 (bifurcating inequitable conduct from infringement/validity despite some evidentiary overlap).

### C. Bifurcation Will Not Deprive Plaintiffs Of Their Right To A Jury Trial.

It is expected that Plaintiffs will argue that bifurcation will deprive them of their Seventh Amendment right to a jury trial. *See*, *e.g.*, *Shum v. Intel Corp.*, 499 F.3d 1272 (2007) (remanding district court's decision to bifurcate inventorship claim and fraud claim because doing so deprived Plaintiff right to jury trial on the fraud claims). In *Shum*, Plaintiff's inventorship and fraud claims were "inextricably intertwined" because Shum's fraud claim was based, in part, on his assertion of misrepresentations by Verdiell (the named inventor) to the patent office and to third parties that Verdiell was the sole inventor. *Id.* at 1277-78. To prove his fraud claim, Shum would have to establish that Verdiell was not the sole inventor, a claim the court found would be eviscerated if Verdiell, not Shum, had invented the claimed technology. *Id.* The *Shum* court distinguished bifurcation cases involving inequitable conduct noting that "while inequitable conduct and validity questions 'overlap in the consideration of some aspects of the same relevant evidence, they do not

9

involve a common issue.'" *Shum*, at 1270 (distinguishing *Afga Corp. v. Creo Prods Inc.*, 451 F.3d 1366, 1372 (Fed. Cir. 2006)).

The *Shum* case is readily distinguished from the present case. Here, Plaintiffs admit there is no common issue: "[Bearbox's] conversion claim is based on the theft of material that is ***not*** included in the '433 Patent, and therefore does ***not*** seek 'patent-like' relief, or turn on questions of patent inventorship or ownership." *See* D.I. 176, at 34; *See also* Plaintiffs' Brief in Opposition to Defendants' Motion for Judgment on the Pleadings (D.I. 42), at 5 ("The tort of conversion is accordingly directed to *ownership* of property, not *inventorship*.") (emphasis original). This case, therefore, is similar to *Afga*, *Gardco*, *Ciena*, and *Audio MPEG*, among others, where, despite some overlap in evidentiary issues, the court exercised its discretion to bifurcate patent infringement/validity issues from inequitable conducts, antitrust, or other issues because doing so enhanced juror comprehension of the issues, avoided prejudice, and promoted convenience and economy.

## CONCLUSION

For the reasons set forth above, the Court should bifurcate the patent inventorship claims from the conversion claim and try the inventorship claims to the bench followed by the conversion claim to the jury.

10

| | |
|---|---|
| Dated:  October 31, 2022<br>**Public version filed on**<br>**November 22, 2022** | BARNES & THORNBURG LLP<br><br>*/s/ Chad S.C. Stover*<br>Chad S.C. Stover (No. 4919)<br>222 Delaware Ave, Suite 1200<br>Wilmington, Delaware 19801-1050<br>Telephone: (302) 300-3474<br>E-mail: chad.stover@btlaw.com<br><br>Mark C. Nelson (admitted *pro hac vice*)<br>David M. Lisch (admitted *pro hac vice*)<br>Benjamin T. Pendroff (admitted *pro hac vice*)<br>2121 N. Pearl Street, Suite 700<br>Dallas, TX  75201<br>Tel:  (214) 258-4140<br>E-mail: mark.nelson@btlaw.com<br>E-mail: david.lisch@btlaw.com<br>E-mail: bpendroff@btlaw.com<br><br>Adam M. Kaufmann (admitted *pro hac vice*)<br>Darrick Hooker (admitted *pro hac vice*)<br>Dana Amato Sarros (admitted *pro hac vice*)<br>One North Wacker Drive, Suite 4400<br>Chicago, IL 60606<br>Tel:  (312) 214-8319<br>Email: adam.kaufmann@btlaw.com<br>Email: darrick.hooker@btlaw.com<br>Email: dana.sarros@btlaw.com<br><br>*Attorneys for Defendants Lancium LLC, Michael T. McNamara, and Raymond E. Cline Jr.* |