# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BEARBOX LLC and AUSTIN STORMS, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) C.A. No. 21-534-GBW-CJB |
| | ) |
| LANCIUM LLC, MICHAEL T. MCNAMARA, and RAYMOND E. CLINE, JR. | ) **PUBLIC VERSION** |
| | ) |
| Defendants. | ) |

**DEFENDANTS' OPENING LETTER BRIEF IN SUPPORT OF ITS EMERGENCY MOTION TO STRIKE PLAINTIFFS' NEWLY DISCLOSED, UNTIMELY EXPERT REPORT AND REQUEST FOR EXPEDITED BRIEFING**

On November 11, 2022, in the latest example of Plaintiffs substantially changing their theories and claims when faced with an adverse ruling or evidence, Plaintiffs served a supplemental report by their expert, Dr. McClellan, offering new opinions and analysis. Faced with Defendants' Motion *in Limine* No. 1 and the Court's rejection of Plaintiffs' asserted "plain and ordinary" meaning of the claim terms "power option agreement" and "minimum power threshold," Dr. McClellan's supplemental report, served without even seeking leave of the Court or any discussion with Defendants, is an improper, highly prejudicial, last minute attempt to bolster Plaintiffs' claims for correction of inventorship. Plaintiffs' asserted justification for the supplemental report—that Dr. McClellan should be allowed "to apply the language of the Court's claim construction"—is both meritless and inconsistent with their prior representation to the Court that "even under sort of the tortured proposed construction … that defendants have proposed, Dr. McClellan's analysis holds." Defendants' MIL 1, Ex. 1 (10/20/2022 Hr'g Tr.) at 31:6-15. Dr. McClellan could and should have analyzed and addressed the proper meaning of the claims in his previous reports but chose not to. Good cause, therefore, does not exist for this supplementation. To the contrary, the *Pennypack* factors strongly weigh in favor of striking Dr. McClellan's new opinions and analysis. The Court should strike Dr. McClellan's supplemental report and the opinions and analysis therein.

As an initial matter, Dr. McClellan's supplemental expert report (attached as Ex. 1) is untimely. Opening expert reports on issues for which a party bears the burden of proof, were due on April 5, 2022, rebuttals to those reports were then due on May 6, 2022, reply reports in support of an expert's opening reports were due on May 20, 2022, and expert discovery closed on June 6, 2022. *See* D.I. 109 (Stipulated Order); 3/3/22 Minute Entry adopting D.I. 109. Dr. McClellan's supplemental report, however, was not served until November 11, 2022 (and even then not until well after the Court's 5:00 pm service deadline to be deemed served that day). Ex. 2 (11/11/22 J. Labbe email serving McClellan Supplemental Report). Thus, Dr. McClellan's supplemental report is untimely and should be stricken. *See Praxair, Inc. v. ATMI, Inc.*, 231 F.R.D. 457, 463-64 (D. Del. 2005), *reversed on other grounds by Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306 (Fed. Cir. 2008) (granting motion to strike and excluding supplemental expert report filed after the close of expert discovery where trial was set to begin in less than a month); *Masimo Corp. v. Philips Elec. North Am. Corp.*, No. 09-80, 2013 WL 2178047, at (D. Del. May 20, 2013) (recommending striking untimely supplemental expert report), recommendation adopted by *Masimo Corp. v. Philips Elec. North Am. Corp.*, 62 F. Supp. 3d 368, 388-389 (D. Del. 2014); *INVISTA North America S.a.r.l. v. M&G USA Corp.*, No. 11-1007, 2013 WL 3216109, at *3-4 (D. Del. June 25, 2013) (striking new opinions in expert declaration served during summary judgment briefing).

Plaintiffs' purported excuse for Dr. McClellan's untimely report rings hollow. When considering a motion to strike untimely expert opinions, courts consider the "validity of the excuse offered by the party" seeking to introduce the new opinions. *See Praxair*, 231 F.R.D. at 463. Here, Plaintiffs contend that Dr. McClellan's supplemental report should be permitted because he allegedly could not have addressed the Court's claim constructions in his previous reports. Not so. Plaintiffs' argument ignores that Dr. McClellan's opening report purports to apply the "plain and ordinary meaning" of all of the '433 patent's claim terms. *See* D.I. 151, Ex. 3 at ¶ 49. It is well-established that this "plain and ordinary meaning" is the meaning a term would have to a person of ordinary skill in the art after reviewing the intrinsic record at the time of the invention." *O2 Micro*, 521 F.3d at 1360 (citing *Philips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005)); *see also AstraZeneca AB v. Mylan Pharm. Inc.*, 19 F.4th 1325, 1330 (Fed. Cir. 2021) ("[A]s we have explained, the ordinary meaning of a claim term is not the meaning of the term in the abstract.

1

… Instead, the ordinary meaning of a claim term is its meaning to the ordinary artisan after reading the entire patent." (internal citations and quotations omitted)); *Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1321 (Fed. Cir. 2016), quoting *Trustees of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1363 (Fed. Cir. 2016) ("[T]he question is not whether there is a settled ordinary meaning of the terms in some abstract sense of the words. Rather, as we recently explained, 'The only meaning that matters in claim construction is the meaning in the context of the patent.'"). Nonetheless, in his opening report Dr. McClellan did not provide any analysis of the purported "plain and ordinary meaning" of any claim terms in view of the intrinsic record.[1]

Dr. McClellan also could (and should) have provided his newly minted opinions back in May 2022 in reply to Dr. Ehsani's report. Unlike Dr. McClellan's opening report, Dr. Ehsani's rebuttal report did include an analysis of the meaning of "power option agreement" and "minimum power thresholds" and applied that meaning to his opinions regarding inventorship. *See, e.g.*, Defendants' MIL 1, Ex. 3 (Ehsani Report) at ¶¶ 42-43, 107, 109, 116-117. That analysis was consistent with the Court's construction. Thus, at the very least, Dr. McClellan could and should have responded to those opinions and interpretation of the asserted claims in his reply report. Plaintiffs and Dr. McClellan, in fact, had an obligation to address Dr. Ehsani's interpretation of the claim terms—the same interpretation the Court adopted—in Dr. McClellan's reply report. *See, e.g., St. Clair Intellectual Prop. Consultants, Inc. v. Matshushita Elec. Indus. Co., Ltd.*, No. 04-1436, 2012 WL 1015993, at *5 (D. Del. Mar. 26, 2012) ("When claim construction remains an open issue at the time the parties serve expert reports … the parties have an obligation 'to prepare for the fact that the court may adopt [the other party's claim] construction.'" (quoting *Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 270 F. Supp. 2d 519, 524 (D. Del. 2003)); *iCeutica Pty Ltd v. Novitium Pharma LLC*, No. 18-99, 2019 WL 4604029, at *2 (D. Del. Sept. 23, 2019) (similar). And Dr. McClellan even noted the dispute in his reply report, stating that "Dr. Ehsani alleges that I fundamentally misunderstand the claim" language and meaning. *See* D.I. 151, Ex. 4 at ¶ 86. But rather than address Dr. Ehsani's analysis and opinions, Dr. McClellan simply asserted in conclusory fashion that "I have applied the plain and ordinary meaning of the claim terms." D.I. 151, Ex. 4 at ¶ 8. Accordingly, the Court should not permit Dr. Ehsani to now provide the opinions and analysis that he chose not to provide during expert discovery.

The *Pennypack* factors also strongly weigh against permitting Dr. McClellan's supplemental report. *See Praxair*, 231 F.R.D. at 463 (striking supplemental expert report based on analysis of *Pennypack* factors). First, the prejudice and surprise to Defendants is substantial. Indeed, Defendants had no opportunity to depose Dr. McClellan regarding his new opinions or have their own experts respond during expert discovery, and now have no opportunity to pursue summary judgment or a *Daubert* motion based on these new opinions. Defendants prepared their case based on the opinions Dr. McClellan originally offered. And although Plaintiffs have represented that they are "open to discussing a schedule for [Defendant's] expert to respond to this supplement, should he wish to do so," this vague offer would only compound the prejudice to Defendants. *See* Ex. 3 (11/11/22 B. Horton email). Defendants and Dr. Ehsani should not be forced

---

[1] To the extent that Plaintiffs contend that Dr. McClellan's supplemental report should be allowed because he had a duty to supplement his opinions under Fed. R. Civ. P. 26(e) (*see* Ex. 3), this too is wrong. "The duty to supplement or correct pursuant to Rule 26(e) is not for the benefit of the party who has the duty." *Lockhart v. Willingboro High School*, No. 14-3701, 2017 WL 11465996, at *3 (D.N.J. May 3, 2017) (striking supplemental expert report) (quotations and citations omitted); *see also INVISTA*, 2013 WL 3216109, at *1 (similar).

2

to devote substantial time to preparing a supplemental rebuttal report with only 3 weeks left before trial. Likewise, although Plaintiffs have not offered to make Dr. McClellan available for deposition before trial, the need to prepare for and take such a deposition in the scant time before trial is also unduly prejudicial. *Id.* (finding prejudice due to supplemental expert report where opposing party had "no opportunity conduct rebuttal discovery"); *INVISTA*, 2013 WL 3216109, at *3 ("To allow these new expert opinions, in the middle of summary judgment briefing and just prior to trial, would unduly prejudice Invista."); *Reckitt Benckiser Inc. v. Tris. Pharma, Inc.*, No. 09-3125, 2011 WL 6722707, at *7 (D.N.J. Dec. 21, 2011) (striking supplemental expert report and finding prejudice due to "the resources which have expended [by defendant] in preparing this case in reliance on the expert reports that were initially served").

Second, there is no way to cure the prejudice to Defendants, and allowing Dr. McClellan to offer his new opinions at trial would disrupt the trial process. As addressed above, permitting Defendants to depose Dr. McClellan and/or serve their own new rebuttal expert reports before trial is prejudicial to Defendants' other trial preparation efforts, and delaying trial is prejudicial to Defendants' right to the prompt resolution of the Plaintiffs' lingering claims. *See Praxair*, 231 F.R.D. at 463-464 (noting that allowing "additional expert discovery" to address prejudice due to supplemental expert report "would undoubtedly disrupt the trial process, as trial is set to begin in less than a month"); *Reckitt Benckiser*, 2011 WL 6722707, at *7 (prejudice due to supplemental expert report "could not be cured in time for the agreed upon trial date" which "was scheduled to begin … approximately a month after oral argument" on motion to strike).

In addition, Dr. McClellan's supplemental report continues to offer opinions that are inconsistent with the Court's claim construction rulings, and thus perpetuates the prejudice to Defendants caused by these improper opinions. For example, although the Court noted that "[t]he specification is further replete with examples supporting Lancium's assertion that any construction of 'power option agreement' necessarily requires the load to 'use' or 'consume' at least the amount of power subject to the option (e.g., the minimum power threshold)" (D.I. 218 at 10), Dr. McClellan's supplemental report continues to assert his opinion that "[w]hether I use that power to do something with or whether I sell that power to somebody else, that's separate from the power option agreement." *See* Ex. 1 at 3-4.

Finally, Plaintiffs' providing a supplemental report from Dr. McClellan weeks after the Court's claim construction ruling, after previously representing to the Court that "even under sort of the tortured proposed construction … that defendants have proposed, Dr. McClellan's analysis holds," supports a finding of bad faith. Defendants' MIL 1, Ex. 1 (10/20/2022 Hr'g Tr.) at 31:6-15. Likewise, Plaintiffs' history of changing their allegations and theories in response to adverse rulings and evidence also supports a finding of bad faith. *See, e.g.*, D.I. 19 (Amended Complaint changing claims 12 days after Defendants filed their Answer, D.I. 18); D.I. 103 (Second Amended Complaint asserting new claims and theories after the Court dismissed all of Plaintiffs' state law claims); 4/22/22 Minute Entry (striking Plaintiffs' improperly re-asserted trade secret misappropriation claims). Nonetheless, bad faith is not necessary to strike the report. *Reckitt Benckiser*, 2011 WL 6722707, at *8 (striking supplemental expert report "without an express finding that Plaintiffs acted in bad faith"); *Lockhart*, 2017 WL 11465996, at *6; *see also Praxair*, 231 F.R.D. at 463-464 (striking supplemental expert report without finding bad faith).

The Court should strike Dr. McClellan's supplemental report and opinions.

| | |
|---|---|
| Dated: November 15, 2022<br>**Public Version filed on**<br>**November 22, 2022** | BARNES & THORNBURG LLP<br><br>*/s/ Chad S.C. Stover*<br>Chad S.C. Stover (No. 4919)<br>222 Delaware Ave., Suite 1200<br>Wilmington, Delaware 19801-1050<br>Telephone: (302) 300-3474<br>E-mail: chad.stover@btlaw.com<br><br>Mark C. Nelson (admitted *pro hac vice*)<br>David M. Lisch (admitted *pro hac vice*)<br>Benjamin T. Pendroff (admitted *pro hac vice*)<br>2121 N. Pearl Street, Suite 700<br>Dallas, TX  75201<br>Tel:  (214) 258-4140<br>E-mail: mark.nelson@btlaw.com<br>E-mail: david.lisch@btlaw.com<br>E-mail: bpendroff@btlaw.com<br><br>Adam M. Kaufmann (admitted *pro hac vice*)<br>Darrick Hooker (admitted *pro hac vice*)<br>Dana Amato Sarros (admitted *pro hac vice*)<br>One North Wacker Drive, Suite 4400<br>Chicago, IL 60606<br>Tel:  (312) 214-8319<br>Email: adam.kaufmann@btlaw.com<br>Email: darrick.hooker@btlaw.com<br>Email: dana.sarros@btlaw.com<br><br>*Attorneys for Defendants Lancium LLC, Michael T. McNamara, and Raymond E. Cline Jr.* |