# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BEARBOX LLC AND AUSTIN STORMS ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> LANCIUM LLC, MICHAEL T. ) <br> MCNAMARA, and RAYMOND E. CLINE, JR. ) <br> ) <br> Defendants. ) <br> ) | C.A. No. 21-534-GBW-CJB |

## LANCIUM'S RESPONSE TO PLAINTIFFS' SUBMISSION ON THE TESTIMONY OF DR. MCCLELLAN

Dated: December 7, 2022

BARNES & THORNBURG LLP
Chad S.C. Stover (No. 4919)
222 Delaware Avenue, Suite 1200
Wilmington, Delaware 19801-1050
Telephone: (302) 300-3474
E-mail: chad.stover@btaw.com

Mark C. Nelson (admitted pro hac vice)
David M. Lisch (admitted *pro hac vice*)
Benjamin T. Pendroff (*pro hac vice* pending)
2121 N. Pearl Street, Suite 700
Dallas, TX 75201
Telephone: (214) 258-4140
E-mail: mark.nelson@btlaw.com
E-mail: david.lisch@btlaw.com

Adam M. Kaufmann (admitted pro hac vice)
Darrick J. Hooker (*pro hac vice* pending)
Dana Amato Sarros (admitted pro hac vice)
One North Wacker Drive, Suite 4400
Chicago, IL 60606
Telephone: (312) 214-8319
E-mail: adam.kaufmann@btlaw.com
E-mail: darrick.hooker@btlaw.com
E-mail: dana.sarros@btlaw.com

Attorneys for Lancium LLC, Michael T.
McNamara, and Raymond E. Cline Jr.

Dear Judge Williams:

>The Court struck Dr. McClellan's supplemental expert report, stating as follows:
>
>Further, Dr. McClellan offers a new opinion related to "minimum power threshold and what is required of the load. See *id*. at 24-26. Specifically, Dr. McClellan's Supplemental Report now applies "consume" and "use" interchangeably—although he previously opined that a load was not required to use the "minimum power threshold." D.I. 247 (Opinion Striking McClellan Supp. Decl.) at 3.
>
>But, neither Dr. McClellan's Opening Report nor his Reply Report explain how BearBox's system operated by maintaining "a minimum amount of power a load must use during an associated time interval" (i.e., "minimum power threshold") as defined by the power option agreement. D.I. 247 at 3.

"If an expert report is stricken, that action effectively precludes the expert from testifying as to the subject matter and opinions contained in the report." *Withrow v. Spears*, 967 F. Supp. 2d 982, 1000 (D. Del. 2013). But now BearBox is attempting to introduce testimony from Dr. McClellan that in some cases appeared in that stricken report, or in other cases appears nowhere in any of his reports. The Court should sustain Lancium's objections to this testimony and the slides supporting it. *See, e.g., Magnetar Techs. Corp. v. Six Flags Theme Parks, Inc.*, 61 F. Supp. 3d 437, 442 (D. Del. 2014), aff'd, 599 F. App'x 960 (Fed. Cir. 2015) (finding that expert report failed to meet Rule 26(a)(2)(B)(i) where "it simply lists general references to multiple documents which purportedly show how each element of claim 3 of the '125 patent is satisfied" because "[t]his leaves too great an analytical gap between the data and the opinion being proffered."); *Sprint Commc'ns Co. L.P. v. Comcast IP Holdings, LLC*, No. CV 12-1013-RGA, 2015 WL 410342, at *2 (D. Del. Jan. 29, 2015), aff'd sub nom. *Sprint Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC*, 675 F. App'x 974 (Fed. Cir. 2017) (excluding expert testimony where the expert failed to explain "how" he reached his conclusion).

It is BearBox's burden to show what portion of Dr. McClellan's reports disclose his proposed testimony. Rather than providing targeted citations to Dr. McClellan's expert reports, BearBox has provided 40 pages of "shot-gun" style citations. This approach in itself reveals that there is no support for much of Dr. McClellan's planned testimony, otherwise BearBox would have been able to provide targeted citations.

While it is not possible to provide a full response to 40 pages of string citations in two hours, Lancium highlights below glaring examples where BearBox's citations do not support Dr. McClellan's proposed testimony.

Respectfully submitted,

Chad S.C. Stover (No. 4919)

cc: Counsel of Record (via CM/ECF)

**PDX 3.23**

This slide, and many others in Dr. McClellan's slide deck, point to the .CSV file and point to the "mining_rev" and "realized_rev" columns and say that they show "realizing mining revenue indicates power usage for interval" and "realizing sell-back revenue indicates reduction in power usage for interval," respectively. This argument appears nowhere in Dr. McClellan's reports.

BearBox cites:

Expert Report: ¶¶ 171-78; 300-301
Reply Report: ¶¶ 73-79
Deposition: 208:16-209:8; 232:10-233:22; 234:14-237:15

Paragraphs 171-178 of the expert report merely state that the .CSV file was sent to McNamara. Paragraphs 300-301 are completely irrelevant because they fall under the heading "power arbitrage trade secrets." The trade secrets claim was stricken by the Court months ago.

Paragraphs 73-79 of the reply report criticize Lancium's expert, Dr. Ehsani, but do not disclose the information in slide 3.23.

The cited deposition testimony discusses the breakeven mining cost column and not the columns circled on slide 4.23. It also discusses the breakeven arbitrage method that was the subject of the dismissed conversion claim.

In summary, none of these citations relate to the new opinions Dr. McClellan is stating on slide 3.23.

**PDX 3.25 ("The '433 Patent Mimics The Imagery in Storms")**

Plaintiffs' citations purportedly supporting PDX3.25 fail for the same reason as discussed in PDX-3.23. PDX-3.25 further discusses "~31kW." This discussion is not in McClellan's reports or testimony. Instead, it mimics opinions provided in Dr. McClellan's stricken supplemental report (¶ 24).

> [24] In light of the Court's Markman Order, I clarify that the "minimum power threshold" limitation is met, for example, by the current and future expected energy usage values I noted above, which, in conjunction with the time interval data (e.g. five minutes) I referenced above, comprise the "power option data, based at least in part, on a power option agreement." The amount of power for exemplary "minimum power thresholds" is reflected in data of the .CSV file, for example, which shows revenues generated by selling fixed amounts of energy at various real-time and day-ahead energy prices (approximately 31kW in one simulation), or the revenue to be earned by using that same amount of energy to mine Bitcoin.

PDX-3.34, 3.37, 3.39, 3.45, 3.47, 3.52, 3.57, 3.60, 3.62, and 3.64 include the same reference to "31kW" and similar annotations, and thus should be stricken for the same reason.

**PDX 3.27 ("The '433 Patent Mimics The Imagery in Storms")**

Plaintiffs' citations fail to demonstrate that Dr. McClellan's reports and testimony supports Dr. McClellan's demonstratives for PDX-3.27. DTX-3.27 is reproduced below.



First and foremost, PDX 3.27 contains a demonstrative image that is *nearly identical* to Dr. McClellan's stricken supplemental report. A side-by-side comparison of the annotated diagram from Dr. McClellan's supplement report against Plaintiff's PDX 3.27 is below. The red arrows align the equivalent annotated diagram portions



Stricken McClellan Supp. Report ¶ 25     PDX-3.27

This demonstrative appears to be McClellan's opining on the power entity holding the option. However, such is exactly what the court previously struck from McClellan's supplemental report:

"For example. Dr. McClellan's Supplement Report offers an analysis of how Austin Storms allegedly conceived of a system where the power entity held the option. See D.l. 237, Ex. 1 at 25-26. However, Dr. McClellan was previously of the opinion that the load, not the power entity, held the option in a power option agreement." D.I 247 at 2.

Plaintiffs' generally cite to McClellan's report ¶¶ 221-224, which relates to claim 9. This citation includes one paragraph of substantive analysis, which wholly fails to describe the diagram above and its annotations.

Additionally, PDX 3.27 relies on the '433 patent, Fig. 2. However, Dr. McClellan's report and testimony do not discuss the '433 patent, Fig. 2. Dr. McClellan's reply report discuss the '433 patent figure 11 (*see,* McClellan Reply Report ¶ 17). But it does not discuss or analyze Figure 2.

4



For at least these reasons, demonstrative PDX-3.27 is not support by Dr. McClellan's reports or testimony and should be struck.

5

**PDX 3.29 – "The Court's Claim Construction"**

PDX-3.29 indicates that Dr. McClellan will discuss the court's claim construction. Consistent with the Court's striking Dr. McClellan's supplemental report, this demonstrative should be struck.



## The Court's Claim Construction

- "Power Option Agreement" means "an agreement between a power entity associated with the delivery of power to a load and the load, wherein the load provides the power entity with the option to reduce the amount of power delivered to the load up to an agreed amount of power during an agreed upon time interval such that the load must use at least the amount of power subject to the option during the time interval unless the power entity exercises the option."

- "Minimum Power Threshold" means "a minimum amount of power a load must use during an associated time interval"

D.I. #219 at pp. 7 and 16

PDX- 3.29

**PDX 3.33**

BearBox's citations merely show that Dr. McClellan disclosed opinions about the documents sent by Storms to McNamara. But nothing in the citations shows the specific portions of these documents circled as they are in the slide. Further, none of the citations discuss these specific portions of the documents as support for communication of this specific portion of claim 1. That is, McClellan has not previously provided this argument as to "how" the documents show that claim element is met. Importantly, Dr. McClellan has never before cited BB0000091 and BB0000092 together and combined elements of each to argue that claim 1 was communicated from Storms to McNamara.

Note that McClellan uses these two documents (BB91 and BB92) together in other slides, such as 3.36, 3.38, 3.40, 3.42, 3.34, 3.49, 3.51, 3.53, 3.56, 3.63, 3.67, and 3.68. These slides are improper and should be stricken for the same reasons.

**PDX 3.34**

The analysis on this slide relating to how Storms' spreadsheet meets the "minimum power thresholds" and "power option data" limitations in claim 1, namely as they relate to a "day-ahead energy prices (approximately 31kW in one simulation)," appears for the first time in McClellan's Supplemental Report at paragraph 24:

> The amount of power for exemplary "minimum power thresholds" is reflected in data of the .CSV file, for example, which shows revenues generated by selling fixed amounts of energy at various realtime and day-ahead energy prices *(approximately 31kW in one simulation),* or the revenue to be earned by using that same amount of energy to mine Bitcoin.

The opinions on this slide relating to how Storms' spreadsheet met the respective patent claim terms were not a part of McClellan' s Original or Reply expert reports and are therefore, new opinions. This Court struck McClellan's new opinions related to these limitations. Court's 11/23/22 Memorandum Order Striking McClellan's Supplemental Response at 2-3(D.I. 247)).

BearBox's citations to McClellan's original and reply reports relate to other issues or do not use the Court's claim constructions but instead rely on Dr. McClellan's incorrect understanding of the plain and ordinary meaning of the claim terms.

> Expert Report: ¶¶ 171-78:  Relates to alleged discussions between Storms and McNamara and a discussion of Storms' diagram, which purport to relate to an analysis of claims 1-20 generally.  Does not relate to terms in slide 3.34.
>
> Expert Report: ¶¶187-190: Relates to an analysis of claim 1 limitations, "minimum power threshold" and power option data" inconsistent with the Court's claim construction.
>
> Expert Report: ¶¶300-301—Relates to issues that were dismissed from this matter, i.e. "power arbitrage trade secrets."
>
> Reply Report: ¶¶ 73-79: Relates to a discussion commenting on Dr. Ehsani's analysis related to "minimum power thresholds" and "power option agreement."  This paragraph does not relate to an analysis of these terms using the Court's claim construction.
>
> Reply Report ¶¶ 227, 244:  Relates to source code and does not relate to the opinions on this slide.

For the same reasons that slide 3.34 is unsupported and improper the following slides are also unsupported and improper:

> 3.25, 3.39, 3.47, 3.52, 3.57, 3.60, 3.62, 3.64

**PDX-3.54 ("Storms Communicated The Features of Claim 9 (TX157)**

Plaintiffs' citations fail to demonstrate that Dr. McClellan's reports and testimony supports Dr. McClellan's demonstratives for PDX-3.54. DTX-3.54 is reproduced below.

Just as with PDX 3.27, Dr. McClellan's demonstrative DTX-3.54 should be struck because it relies on an analysis involving the '433 patent's Fig. 2, which is not included in Dr. McClellan's reports or testimony. Dr. McClellan's reply report discuss the '433 patent figure 11 (*see,* McClellan Reply Report ¶ 17). But it does not discuss or analyze Figure 2.

