# EXHIBIT A

Page 1

1          UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF DELAWARE
2
3
4   BEARBOX, LLC, and AUSTIN      )
    STORMS,                       )
5                                 )
               Plaintiffs,        )
6                                 )
         -vs-                     )  No. C.A. 21-534-MN-CJB
7                                 )
    LANCIUM, LLC, MICHAEL T.      )
8   McNAMARA, and RAYMOND E.      )
    CLINE, JR.,                   )
9                                 )
              Defendants.         )
10
11          Deposition of STANLEY A. MCCLELLAN, Ph.D.
12   taken before CAROL CONNOLLY, CSR, CRR, and Notary Public,
13   pursuant to the Federal Rules of Civil Procedure for the
14   United States District Courts pertaining to the taking of
15   depositions, at 233 South Wacker Drive, Suite 6300,
16   Chicago, Illinois, commencing at 9:08 a.m. on the 3rd day
17   of June, A.D., 2022.
18
19
20
21
22
23
24

Page 2

```
 1      There were present at the taking of this
 2  deposition the following counsel:
 3      MARSHALL, GERSTEIN & BORUN, LLP by
        MR. RAYMOND R. RICORDATI III
 4      233 South Wacker Drive
        Suite 6300
 5      Chicago, Illinois  60606
        (312) 474-6617
 6      rricordati@marshallip.com
 7
           appeared on behalf of the Plaintiff;
 8
 9      BARNES & THORNBURG, LLP by
        MR. MARK C. NELSON
10      2121 North Pearl Street
        Suite 700
11      Dallas, Texas  75201
        (214) 258-4140
12      mnelson@btlaw.com
13           AND
14      BARNES & THORNBURG, LLP by
        MR. ADAM M. KAUFMANN
15      One North Wacker Drive
        Suite 4400
16      Chicago, Illinois  60606
        (312) 357-1313
17      adam.kaufmann@btlaw.com
18         appeared on behalf of the Defendants.
19  ALSO PRESENT:
20      Mr. Milo Savage, Videographer
21      Mr. Joseph Previti, Summer Associate
           Marshall, Gerstein & Borun
22
23
24
```

Page 3

```
 1              I N D E X
 2      DEPOSITION OF STANLEY A. McCLELLAN, Ph.D.
 3             TAKEN June 3, 2022
 4
 5  EXAMINATION BY                          PAGE
 6  Mr. Nelson                              6, 289
 7  Mr. Ricordati                           287
 8
 9
10          - - - - - - - -
11
12          EXHIBITS MARKED
13                                          PAGE
14  Exhibit 200    Curriculum Vitae of      29
                   Stan A. McClellan, Ph.D.
15
    Exhibit 201    Materials Considered by  38
16                 Bearbox Expert, Dr. Stan
                   McClellan
17
    Exhibit 202    Expert Report of Dr. Stan 42
18                 McClellan
19  Exhibit 203    U.S. Patent No. 10,608,433  94
20  Exhibit 204    May 9, 2019 email from   196
                   Austin Storms to Michael
21                 McNamara and attachments
22  Exhibit 205    Reply Expert Report of   246
                   Dr. Stan McClellan
23
    Exhibit 206    Expert Report of Mark    264
24                 Ehsani, Ph.D.
```

Page 4

```
 1  Exhibit 207    Lancium, Investor        271
                   Presentation, May, 2021
 2
    Exhibit 208    Pictures, etc.,          281
 3                 BB00000001-BB00000083
 4
 5          PREVIOUSLY MARKED EXHIBITS
 6
 7  Exhibit 55     Short Message Report,    189
                   Date Range
 8                 5/4/2019 - 5/9/2019
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

Page 5

 1   THE VIDEOGRAPHER:  Good morning.  We are going on
 2   the record at 9:08 a.m. on June 3rd, 2022.  Please note
 3   that the microphones are sensitive and may pick up
 4   whispering, private conversations and cellular
 5   interference.  Please turn off all cellphones or place
 6   them away from the microphones as they may interfere with
 7   the deposition audio.  Audio and video recording will
 8   continue to take place unless all parties agree to go off
 9   the record.
10        This is media unit 1 of the video-recorded
11   deposition of Dr. Stan McClellan taken by counsel for
12   defendant in the matter of Bearbox LLC et al. versus
13   Lancium, LLC, et al.  This case is filed in the United
14   States District Court for the District of Delaware.
15        This deposition is being held at Marshall
16   Gerstein, Borun, LLP located at 233 South Wacker Drive,
17   Suite 6300, Chicago, Illinois.
18        My name is Milo Savage from the firm Veritext,
19   and I'm the videographer.  The court reporter is Carol
20   Connolly from the firm Veritext.  I'm not authorized to
21   administer an oath, I'm not related to any party in this
22   action, nor am I financially interested in the outcome.
23        Counsel and all present in the room, and
24   everyone attending remotely, will please now state their

Page 82

1  THE WITNESS: It's the time period around this case
2  which, in my opinion, is relatively compact.
3  MR. NELSON: Q  So the time period from when to
4  when then?  Give me years.
5  A  I think the patent was filed in 2019, right?
6  The date of the patent filing -- If you look at the
7  timeline there's the date when they started -- when
8  Storms started to develop stuff, and there's a date when
9  Lancium had product, and there's a date where they
10 overlapped, then there's a date when the patent was
11 filed.  All of that timeframe was fairly compact between
12 like 2018 and 2020.  It's about a two-year period -- two-
13 or three-year period in there.
14 Q  So is that the time period you used, or did you
15 use your understanding as you were doing your -- plain
16 and ordinary meaning as you were doing your analysis --
17 When you were writing your report, what time period did
18 you use?
19 MR. RICORDATI:  Objection.  Asked and answered.
20 THE WITNESS:  The time period of the report is early
21 2022 which abuts the time period of the activity of the
22 patent and stuff.  So it's basically all the same time
23 period.  I don't know that there's any substantial
24 migration or substantial changes in any of the terms that

Page 83

1  are associated with this patent or with this case.  If
2  there have been -- if there have been, then we need to
3  isolate those and make sure that there wasn't any
4  misinterpretation of anything.
5  MR. NELSON: Q  What's your understanding of the
6  plain and ordinary meaning of power option agreement?
7  A  My understanding of power option agreement is
8  it's essentially a contract to buy power at a certain
9  price.  It's like a wholesale purchase.  I'm going to buy
10 X number of units at X price.
11 Q  What's your understanding of power option data?
12 A  Power option data is the data that's associated
13 with the power option agreement.
14 Q  What -- is there any specific data that's
15 required to be power option data, or can it be anything?
16 A  I think at least it has intervals and minimum
17 thresholds.  There may be other data that's associated
18 with that, but I think there's thresholds over intervals.
19 Q  And intervals are intervals of time?
20 A  Time intervals, yeah.
21 Q  And what are thresholds?
22 A  You agree to buy power at that -- you agree to
23 consume that much power at a certain price at that time.
24 Q  You agree to buy that much power or consume

Page 84

1  that much power?
2  A  Typically it's consume because you're a load
3  that's not controllable.  If you're a controllable load,
4  then you're buying that power with the assumption that
5  you're going to consume it.  If you have ability to sell
6  it back, then you can sell it back.  But you don't sell
7  it back to whoever you bought it from, you sell it into a
8  market at that time.  It's an agreement with the seller
9  to consume, right?
10    And consume doesn't mean use.  Consume means
11 purchase.  Whether I use that power to do something with
12 or whether I sell that power to somebody else, that's
13 separate from the power option agreement.
14 Q  What's your understanding of a minimum power
15 threshold in this case as used in the '433 patent?
16 A  That's the data that's associated with the
17 option agreement.
18 Q  What specifically is a minimum power threshold?
19 A  That's the amount of power that you're
20 contracted to consume.
21 Q  And by consume you don't mean use, correct?
22 A  I may not use it, but I'm going to consume it.
23 I'm purchasing it.  Whether I use it or whether I sell
24 it, that's a completely separate issue.  I'm agreeing to

Page 85

1  purchase it at that threshold.
2  Q  So just to be clear so our -- Your use of the
3  word consume here means -- it doesn't mean physically the
4  data center consumes the power by using it.  It also
5  could mean that the power is sold back.
6  A  Consume is a transactional thing.  Right.  The
7  consumption is a transaction where I'm consuming it.  I
8  have to dispatch that power some way.
9  Q  What do you understand the term performance
10 strategy to mean in the context of the claims of the '433
11 patent?
12 A  A performance strategy is deciding -- is a
13 decision based on incoming data and conditions and
14 monitored conditions as to how to dispatch the -- how to
15 dispatch the power that's been consumed through the PPA
16 against bitcoin miners or not.
17 Q  So in your understanding of performance
18 strategy could performance strategy be to not consume
19 power?
20 A  It could be --
21 Q  I'm sorry.  Let me -- I asked a bad question
22 because I used the word consume in a different context.
23    So in your understanding of the term
24 performance -- the meaning of the term performance

22 (Pages 82 - 85)

Page 150

1  long it would take Mr. Storms' miners to turn off from --
2  if they were instructed to turn off from an on state, how
3  long it would take them to turn off?
4     A   You mean -- you mean for the PDU to turn them
5  off?
6     Q   Yeah.
7     A   That would be instantaneous.
8     Q   So from --
9     A   The PDU -- if the power is taken away, the
10 computer shuts down almost immediately unless it has a
11 battery backup.
12    Q   Did you consider how long it would take the
13 miners to come back up if they were -- if they were in an
14 off state and turned -- and put into an on state?
15    A   That gets into the situation that we were
16 talking about before with computer systems.  Right.
17 Depends on this, depends on that, depends on the other
18 thing.  And if you -- if you -- if you turn a computer
19 system off in a nongraceful fashion, then how long it
20 takes for it to come back up is an it-depends question,
21 and we have doing down the rat hole of what a computer
22 system is.
23    Q   And did you -- in the context of your analysis
24 of Mr. Storms' system turning bitcoin miners off and on,

Page 151

1  did you consider how long it would take his system to
2  turn bitcoin miners on if they were in an off state?
3     A   Well, to turn them on would be instantaneous.
4  To make them operational would depend on all of these
5  other conditions.
6     Q   By turn them on, I mean make them operational.
7     A   Get them where they can mine bitcoin?  Depends,
8  depends, depends what operating system -- you out of
9  juice?
10    THE VIDEOGRAPHER:  I have five minutes left.
11    THE WITNESS:  So it depends what's the operating
12 system, what's the disk structure, what kind of
13 activities is it contained in, what's the cache
14 structure, depends, depends, depends, depends.
15    MR. NELSON:  Q   I understand that.
16    A   I can't answer that question.
17    Q   My question is, did you consider that in your
18 analysis?  I don't see that in your report.  Did you
19 consider how long it would take them from being -- from
20 an off state to being turned on to actually becoming
21 operational?  Did you consider that in your analysis of
22 his system?
23    A   No, I don't think -- it doesn't have a bearing
24 on the approach here.  The objective is to have -- I

Page 152

1  think his simulation had 272 miners or something like
2  that.  You know, if a few of them -- they're not all --
3  even if they're all turned off gracefully, they're not
4  all going to come up in the same way at the same time.
5  So there's just -- there's no good answer to that
6  question.
7     Q   Well, my question was did you consider it in
8  your analysis.
9     A   I considered it, and I thought well, you know,
10 there's too many outstanding variables on that.
11    MR. NELSON:  Why don't we take a break.  You can
12 change tapes?
13    THE VIDEOGRAPHER:  The time is 1:39 p.m.  This is
14 the end of media unit 2 and we're going off the video
15 record.
16    (Off the record)
17    THE VIDEOGRAPHER:  The time is 1:52 p.m.  This is
18 the beginning of media unit 3, and we're back on the
19 video record.
20    MR. NELSON:  Q   So going back to page 66 of your
21 report.
22    A   Okay.  Page 66 or paragraph --
23    Q   Paragraph 66.
24    A   Yes.  Got it.

Page 153

1     Q   So what portion of paragraph 66 addresses the
2  claim language wherein the performance strategy comprises
3  a power consumption target for the set of computing
4  systems?
5     A   Power consumption target.  I think it's -- it's
6  associated with current power usage and expected future
7  power usage.
8     Q   So is -- so is one of those the power
9  consumption target?
10    A   Yeah, I think so.  There's the -- there's
11 the -- there's the power threshold for the time intervals
12 and current power usage and energy price conditions.  So
13 the current power usage would essentially be the target,
14 and expected future power usage would be the estimated
15 future target.
16    Q   And how is the associated power threshold
17 utilized, if at all, to determine the expected future
18 power usage?
19    A   Well, the power threshold -- if you're assuming
20 that the data is coming from a market system, then the
21 power threshold is the minimum amount of power that
22 you're bound to pay for or consume.
23    Q   By consume you mean use or sell back, right?
24    A   Well, again, it depends on -- There's several

Page 154

1 different things going on here, right. There's the
2 patent language and there's the business of making the
3 contract with the service provider, and I think those two
4 things are separated somehow. For example, if you have a
5 wind turbine, you have a contract with the service
6 provider, and if they're not going to take the power, you
7 shunt it to ground. But -- so they don't have to take
8 the power, but --
9    Q    Well, we're focused on the patent.
10   A    You understand what I'm saying? So the patent
11 language -- If you go back to the patent language, it
12 says receive power option data based on an option
13 agreement. So there's a contract that's giving you the
14 data, and the power option data specifies time intervals
15 with thresholds, and the power -- the minimum power
16 threshold is associated with each time interval. So
17 there's time intervals that have thresholds that are
18 associated with them, and the thresholds are minimum
19 power that you're bound to consume. You have paid for,
20 you're going to pay for.
21   Q    And -- So we talked about this earlier, bound
22 to consume means you can either use it by running miners
23 or not use it by selling it back, is that right?
24   A    Well -- Let's look. Claim 1 says wherein --

Page 155

1 power consumption target -- you're talking about
2 targets -- for the set of computing systems for each time
3 interval in the set of time intervals wherein each power
4 consumption target is equal to or greater than the
5 minimum power threshold. So the patent doesn't
6 contemplate selling back at all. It talks about
7 consuming that minimum power threshold by those computing
8 devices. I mean, it's -- I just read the claim language
9 there. It says: Minimum power consumption target
10 wherein each target is equal to or greater than the
11 minimum power threshold associated with the time
12 interval.
13   Q    So earlier on I had asked you a question what
14 about the plain and ordinary meaning of minimum power
15 threshold was, and you said it was the power that could
16 either be consumed -- that could be consumed either by
17 using it or by selling it back. So -- Are you changing
18 the definition?
19   A    No. I'm saying in the power option agreement,
20 I believe I said it's not clear to me whether the power
21 option agreement mandates that you use the power. That's
22 a question for McCamant. I believe I said that several
23 times. I don't know about the contract -- there's a
24 contract, and then there's this language in the patent,

Page 156

1 and I'm trying to draw the distinction between the two.
2 The contract language may not make you use the power.
3    Q    Well, the term power option agreement is in the
4 claim, so it has a legal meaning per the claim. What do
5 you understand the legal meaning of power option
6 agreement to be?
7    A    I don't know if power option agreement means
8 that you must consume -- you must expend the power that
9 you're contracted to buy. I can't answer that. That's
10 again -- that's a question for McCamant because that's a
11 business -- that's ERCOT marketplace business thing.
12   Q    So when you did your analysis of the claim
13 language, did you apply a plain and ordinary meaning of
14 power option agreement as it's used in the patent in the
15 context of your analysis?
16   A    It says receive power option database at least
17 in part on a power option agreement where the power data
18 specify a set of minimum power thresholds. Right. So
19 the minimum power thresholds means you must be capable of
20 consuming that. I don't -- What I'm saying is I don't
21 know if it means that you must consume that. You must be
22 capable of consuming that.
23   Q    I understand that. But --
24   A    Those are two different things.

Page 157

1    Q    Do you know -- did you in your analysis
2 determine a plain and ordinary meaning of the word power
3 option agreement -- the phrase power option agreement as
4 used in the patent?
5    A    The phrase power option agreement to me in my
6 interpretation means options for buying power ahead of
7 time. To me means that's the plain and ordinary meaning
8 of it, opting to purchase power ahead of time at a
9 certain rate and then I'm going pay for that power, and
10 then when it comes for that time I'm going to pay for
11 that power whether I use it or not. There's a secondary
12 condition which says -- where I'm drawing a distinction,
13 I don't know if you're bound to use that power. Do you
14 understand what I'm saying? I'm going to pay for that
15 power, that's the option. When it comes time, I'm going
16 to pay for that whether I use it or not. I don't have to
17 use it. I can screw in that light bulb and turn off the
18 switch, and I'm still paying for that minimum power.
19   Q    So let's go back -- I think in connection with
20 paragraph 62 I had asked you some questions about where
21 -- where the code received the minimum power threshold
22 data. Do you remember that?
23   A    Yes.
24   Q    And I think you pointed to go -- go to the

40 (Pages 154 - 157)

Page 290

1    A   We discussed several different points that --
2 that I asked about that I thought were potentially needed
3 to be cleaned up or needed to be discussed, and then we
4 discussed those at least those three questions -- those
5 three concepts.  We didn't discuss the question.  We
6 discussed the concept.
7    Q   What did you discuss about the concepts?
8    A   Well, the first question -- the first question
9 was about the -- What was the question first question
10 about?  It was about the -- the first question was about
11 the report and the appendix, and he said he was going to
12 go back over the minimum power threshold and the load
13 specification.
14        The second question -- I don't even remember
15 the second question at this point.
16        Can you read it back?
17    Q   It was a question about being above a
18 threshold.
19    A   Yeah.  He asked me about -- When I said it was
20 difficult to maintain a computer system at a specific
21 power threshold, he wanted clarification on that I meant
22 at a specific power threshold rather than above or below
23 a specific power threshold, and I said I thought that
24 that's what I had described earlier.

Page 291

1        MR. NELSON:  No further questions.
2        THE VIDEOGRAPHER:  Okay.  The time is 6:15 p.m.
3 This is the end of media unit 4, it's also the end of the
4 deposition of Dr. Stan McClellan.  And we're going off
5 the video record.
6        Thank you, Dr. McClellan.
7        (Off the record)
8            - - - - - - -

Page 292

1 STATE OF ILLINOIS  )
                    ) SS:
2 COUNTY OF C O O K  )
3
4        The within and foregoing deposition of the
5 aforementioned witness was taken before CAROL CONNOLLY,
6 CSR, CRR and Notary Public, at the place, date and time
7 aforementioned.
8        There were present during the taking of the
9 deposition the previously named counsel.
10       The said witness was first duly sworn and was
11 then examined upon oral interrogatories; the questions
12 and answers were taken down in shorthand by the
13 undersigned, acting as stenographer and Notary Public;
14 and the within and foregoing is a true, accurate and
15 complete record of all of the questions asked of and
16 answers made by the forementioned witness, at the time
17 and place hereinabove referred to.
18       The signature of the witness was not waived,
19 and the deposition was submitted, pursuant to Rule 30 (e)
20 and 32 (d) 4 of the Rules of Civil Procedure for the
21 United States District Courts, to the deponent per copy
22 of the attached letter.

Page 293

1        The undersigned is not interested in the within
2 case, nor of kin or counsel to any of the parties.
3        Witness my official signature and seal as
4 Notary Public in and for Cook County, Illinois on this
5 6th day of June, A.D. 2022.

        *Carol Connolly*
9        CAROL CONNOLLY, CSR, CRR
         CSR No. 084-003113
10       Notary Public
         One North Franklin Street
11       Suite 3000
         Chicago, Illinois 60606
12       Phone:  (312) 386-2000

## Page 294

```
 1                Veritext Legal Solutions
                     1100 Superior Ave
 2                      Suite 1820
                     Cleveland, Ohio 44114
 3                  Phone: 216-523-1313
 4
     June 6, 2022
 5
     To: RAYMOND R. RICORDATI III
 6
     Case Name: Bearbox, LLC, et al. v. Lancium, LLC, et al.
 7
     Veritext Reference Number: 5259459
 8
     Witness: Stanley A. McLellann, Ph.D.   Deposition Date: 6/3/2022
 9
10   Dear Sir/Madam:
11
     Enclosed please find a deposition transcript.  Please have the witness
12
     review the transcript and note any changes or corrections on the
13
     included errata sheet, indicating the page, line number, change, and
14
     the reason for the change.  Have the witness' signature notarized and
15
     forward the completed page(s) back to us at the Production address
16   shown
17   above, or email to production-midwest@veritext.com.
18
     If the errata is not returned within thirty days of your receipt of
19
     this letter, the reading and signing will be deemed waived.
20
21   Sincerely,
22   Production Department
23
24   NO NOTARY REQUIRED IN CA
```

## Page 295

```
 1           DEPOSITION REVIEW
             CERTIFICATION OF WITNESS
 2
       ASSIGNMENT REFERENCE NO: 5259459
 3     CASE NAME: Bearbox, LLC, et al. v. Lancium, LLC, et al.
       DATE OF DEPOSITION: 6/3/2022
 4     WITNESS' NAME: Stanley A. McLellann, Ph.D.
 5     In accordance with the Rules of Civil
    Procedure, I have read the entire transcript of
 6  my testimony or it has been read to me.
 7     I have made no changes to the testimony
    as transcribed by the court reporter.
 8
    _____     _____
 9  Date             Stanley A. McLellann, Ph.D.
10     Sworn to and subscribed before me, a
    Notary Public in and for the State and County,
11  the referenced witness did personally appear
    and acknowledge that:
12
       They have read the transcript;
13     They signed the foregoing Sworn
          Statement; and
14     Their execution of this Statement is of
          their free act and deed.
15
       I have affixed my name and official seal
16
    this _____ day of_____, 20____.
17
             _____
18           Notary Public
19           _____
             Commission Expiration Date
20
21
22
23
24
25
```

## Page 296

```
 1           DEPOSITION REVIEW
             CERTIFICATION OF WITNESS
 2
       ASSIGNMENT REFERENCE NO: 5259459
 3     CASE NAME: Bearbox, LLC, et al. v. Lancium, LLC, et al.
       DATE OF DEPOSITION: 6/3/2022
 4     WITNESS' NAME: Stanley A. McLellann, Ph.D.
 5     In accordance with the Rules of Civil
    Procedure, I have read the entire transcript of
 6  my testimony or it has been read to me.
 7     I have listed my changes on the attached
    Errata Sheet, listing page and line numbers as
 8  well as the reason(s) for the change(s).
 9     I request that these changes be entered
    as part of the record of my testimony.
10
       I have executed the Errata Sheet, as well
11  as this Certificate, and request and authorize
    that both be appended to the transcript of my
12  testimony and be incorporated therein.
13  _____     _____
    Date             Stanley A. McLellann, Ph.D.
14
       Sworn to and subscribed before me, a
15  Notary Public in and for the State and County,
    the referenced witness did personally appear
16  and acknowledge that:
17     They have read the transcript;
       They have listed all of their corrections
18        in the appended Errata Sheet;
       They signed the foregoing Sworn
19        Statement; and
       Their execution of this Statement is of
20        their free act and deed.
21     I have affixed my name and official seal
22  this _____ day of_____, 20____.
23       _____
         Notary Public
24
         _____
25       Commission Expiration Date
```

## Page 297

```
 1           ERRATA SHEET
             VERITEXT LEGAL SOLUTIONS MIDWEST
 2           ASSIGNMENT NO: 5259459
 3  PAGE/LINE(S) /    CHANGE      /REASON
 4  _____
 5  _____
 6  _____
 7  _____
 8  _____
 9  _____
10  _____
11  _____
12  _____
13  _____
14  _____
15  _____
16  _____
17  _____
18  _____
19
    _____     _____
20  Date             Stanley A. McLellann, Ph.D.
21  SUBSCRIBED AND SWORN TO BEFORE ME THIS _____
22  DAY OF _____, 20_____ .
23       _____
         Notary Public
24
         _____
25       Commission Expiration Date
```