# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BEARBOX LLC and AUSTIN STORMS, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) C.A. No. 21-534-GBW-CJB |
| | ) |
| LANCIUM LLC, MICHAEL T. MCNAMARA, and RAYMOND E. CLINE, JR. | ) ) ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' SUR-REPLY POST-TRIAL BRIEF

Dated: February 8, 2023

BARNES & THORNBURG LLP
Chad S.C. Stover (No. 4919)
222 Delaware Avenue, Suite 1200
Wilmington, Delaware 19801-1050
Telephone: (302) 300-3474
E-mail: chad.stover@btlaw.com

Mark C. Nelson (admitted *pro hac vice*)
David Lisch (admitted *pro hac vice*)
2121 N. Pearl Street, Suite 700
Dallas, TX 75201
Tel: (214) 258-4140
E-mail: mark.nelson@btlaw.com
         david.lisch@btlaw.com

Adam M. Kaufmann (admitted *pro hac vice*)
Darrick Hooker (admitted *pro hac vice*)
Dana Amato Sarros (admitted *pro hac vice*)
One North Wacker Drive, Suite 4400
Chicago, IL 60606
Tel: (312) 214-8319
Email: adam.kaufmann@btlaw.com
Email: darrick.hooker@btlaw.com
Email: dana.sarros@btlaw.com

*Attorneys for Defendants Lancium LLC, Michael T. McNamara, and Raymond E. Cline Jr.*

**TABLE OF CONTENTS**

Table of Authorities ................................................................................................................... ii

Representative Claim ................................................................................................................ iii

Table of Abbreviations .............................................................................................................. iv

Duplicate Exhibits ..................................................................................................................... vi

I.   Storms Is Not The Sole Inventor Of The '433 Patent ........................................................ 2
     A.   Plaintiffs' Failure To Address Several Dependent Claims Is Fatal ........................ 2
     B.   Storms Did Not Conceive or Communicate Element [b2] .................................... 3
     C.   Storms Did Not Conceive or Communicate Elements [b3] and [b4] .................... 4
     D.   McNamara/Cline Conceived Elements [a], [b], [b1] Before McNamara Met Storms .................................................................................................................... 5
     E.   McNamara and Cline Independently Conceived The '433 Patent's Inventions ..... 6

II.  Storms Is Not A Joint Inventor Of The '433 Patent ............................................................ 9

III. McClellan Is Not Credible .................................................................................................. 9

IV.  Conclusion ........................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**                                                                                                                    **Page(s)**

*Alsco, Inc. v. Premier Outsourcing Plus, LLC*,
   No. 19-1631, 2020 WL 4001060 (D. Del. July 15, 2020) .......................................................2

*Am. Inst. For Chartered Prop. Cas. Underwriters*,
   No. 19-1600, 2021 WL 431475 (D. Del. Feb. 8, 2021) ...........................................................2

*Caterpillar Inc. v. Sturman Indus., Inc.*,
   387 F.3d 1358 (Fed. Cir. 2004) ...........................................................................................6, 9

*Iceotope Grp. Ltd. v. LiquidCool Sols., Inc.*,
   No. 20-CV-2644, 2022 WL 204923 (D. Minn. Jan. 24, 2022) .............................................6, 7

*Optima Media Grp. Ltd. v. Bloomberg, L.P.*,
   No. 17-1898, 2022 WL 992828 (S.D.N.Y. Mar. 31, 2022) ......................................................2

*Price v. Symsek,*
   988 F.2d 1187 (Fed. Cir. 1993) .................................................................................................7

*Progressive Sterilization, LLC v. Turbett Surgical LLC*,
   No. 19-627, 2020 WL 3071951 (D. Del. June 10, 2020) ............................................. *passim*

## **REPRESENTATIVE CLAIM**

1. A system comprising:

[a] a set of computing systems, wherein the set of computing systems is configured to perform computational operations using power from a power grid;

[b] a control system configured to:

    [b1] monitor a set of conditions;

    [b2] receive power option data based, at least in part, on a power option agreement, wherein the power option data specify: (i) a set of minimum power thresholds, and (ii) a set of time intervals, wherein each minimum power threshold in the set of minimum power thresholds is associated with a time interval in the set of time intervals;

    [b3] responsive to receiving the power option data, determine a performance strategy for the set of computing systems based on a combination of at least a portion of the power option data and at least one condition in the set of conditions, wherein the performance strategy comprises a power consumption target for the set of computing systems for each time interval in the set of time intervals, wherein each power consumption target is equal to or greater than the minimum power threshold associated with each time interval; and

    [b4] provide instructions to the set of computing systems to perform one or more computational operations based on the performance strategy.

# TABLE OF ABBREVIATIONS

| Abbreviation | Description |
| --- | --- |
| '433 Patent | U.S. Patent No. 10,608,433 (TX1) |
| '632 App. or '632 Application | International Application No. PCT/US2018/017950, published as WO 2019/139632 (TX163) |
| Baer | Mr. Nicolas Baer |
| Cline | Dr. Raymond (Ray) Cline |
| DF | Defendants' Proposed Findings of Fact |
| the Dinner | The May 3, 2019 dinner attended by Austin Storms and Michael McNamara |
| Ehsani | Dr. Mark Ehsani |
| ERCOT | Electric Reliability Council of Texas |
| FAC | First Amended Complaint |
| GAM | Great American Mining |
| Hakes | Mr. Benjamin Hakes |
| Lancium | Lancium LLC |
| LMP | locational marginal price |
| LR | load resource |
| McCamant | Mr. Frank McCamant |
| McClellan | Dr. Stanley McClellan |
| McNamara | Mr. Michael McNamara |
| MPT | Minimum Power Threshold as construed by the Court |
| PF | Plaintiffs' Proposed Findings of Fact |
| Plaintiffs | Mr. Austin Storms and BearBox LLC |

| | |
|---|---|
| POA | Power Option Agreement as construed by the Court |
| POSA | person of ordinary skill in the art |
| Ps' Br. | Plaintiffs' Opening Post-Trial Brief (D.I. 256) |
| Ps' Reply | Plaintiffs' Reply Post-Trial Brief (D.I. 260) |
| RTMB | real-time market balancing |
| SAC | Second Amended Complaint |
| Storms | Mr. Austin Storms |

## **DUPLICATE EXHIBITS**

| | |
|---|---|
| Lancium Deck - I Squared | TX266 / TX778 |
| Storms' Email / the Email | TX157 / TX887, TX887-1 / TX170-TX175 |
| Storms' Drawing / the Drawing | TX157.03 / TX171 at 14750 / TX887 at 92 |
| Storms' Spreadsheet / the Spreadsheet | TX157.08-.25 / TX175 / TX887 at 97, TX887-1 |
| Storms/Hakes Text Messages | TX14 / TX947 |
| Storms/McNamara Text Messages | TX742 / TX950 |

Storms is neither the sole inventor nor a joint inventor of the '433 patent. As made clear at trial and in Defendants' Response (D.I. 258), Storms' alleged "system" is fundamentally different than the system claimed in the '433 patent. Plaintiffs do not meaningfully address the technological differences, but instead attempt to redefine the '433 patent as nothing more than giving a windfarm the option to provide power to a Bitcoin miner or to sell the power back to the grid. D.I. 260 at 1. This redefinition, in addition to ignoring the claim language, is inconsistent with McClellan's testimony that the '433 patent does not "contemplate selling back at all" as quoted on page 7 of Plaintiffs' own Reply and during trial. Tr. 416:4-12; DF25. Further disregarding the Court's construction, Plaintiffs characterize the claim terms "power option agreement" and "minimum power threshold" as "just words" to argue that "minimum power thresholds" are simply logical consequences of an agreement to purchase power because "a load must use the power it contracts to purchase, subject to curtailment." D.I. 260 at 1. But the Court already rejected the contention that a "power option agreement" is equivalent to a "power purchase agreement" and construed "power option agreement" to have a specific, different meaning. D.I. 218 at 7 n.2. Plaintiffs' new-found "must-use" argument is also an about-face from their and their expert's pre-claim construction position (D.I. 149 at 15, 18-19 (citing McClellan's deposition testimony)), and is inconsistent with Storms' trial testimony indicating his system ***does not*** require that a specified amount of power be used for a specified time period. D.I. 258 at 1; Tr. 145:24-146:5; DF39-40, 42. At bottom, Plaintiffs' Reply offers nothing but false claims regarding "admissions" allegedly made by Defendants, mischaracterizations of the evidence and of Lancium's positions,[1] and simply ignores the mountain of unfavorable evidence indicating that Storms did not communicate any

---

[1] Contrary to Plaintiffs' criticism that Lancium asserts an unclean hands defense that was not included in the pretrial order (D.I. 260 at 2 n.1), Storms' actions and inactions are pertinent to Plaintiffs' claims under the rule of reason. *See* D.I. 256 at 18; D.I. 258 at 17-20.

aspect of the '433 patent's claims to McNamara that McNamara and/or Cline did not already know. The Court should rule for Defendants on all counts.

## I. STORMS IS NOT THE SOLE INVENTOR OF THE '433 PATENT

### A. Plaintiffs' Failure To Address Several Dependent Claims Is Fatal

Plaintiffs fail to provide evidence that Storms communicated each element of each of the claims of the '433 patent to McNamara and/or Cline. Even after Defendants' Response identified numerous failures of proof, Plaintiffs present no evidence that Storms conceived or communicated the requirements of dependent claim 4 of the '433 patent, nor do they address the evidence that McNamara and Cline conceived of the prioritization-of-operations aspect of this claim. D.I. 258 at 13-14. Plaintiffs present no evidence that Storms' Email communicated the requirements of claim 18 or that Storms' source code implemented this functionality. *Id.* at 14. Plaintiffs do not dispute that Storms' Email does not communicate the requirements of claim 10 or anything about a QSE (which McClellan admits). *Id.*; Tr. 390:12-25. These failures are fatal, demonstrating that Plaintiffs did not prove by clear and convincing evidence that Storms conceived of all the claimed inventions in the '433 patent, much less communicated them to McNamara, or that McNamara and Cline did not conceive these inventions. *Progressive Sterilization, LLC v. Turbett Surgical LLC*, No. 19-627, 2020 WL 3071951, at *2 (D. Del. June 10, 2020) ("[W]hen, as in this case, a party merely states an argument in conclusory fashion in its opening brief and then files a reply brief but does not contest in that brief the specific rebuttal points made in the answering brief, a court may rightly conclude that the party implicitly conceded those points.").[2]

---

[2] *See also Optima Media Grp. Ltd. v. Bloomberg, L.P.*, No. 17-1898, 2022 WL 992828, at *2 (S.D.N.Y. Mar. 31, 2022) (failure to make argument in post-trial brief waives it); *Am. Inst. For Chartered Prop. Cas. Underwriters*, No. 19-1600, 2021 WL 431475, at *10 n.22 (D. Del. Feb. 8, 2021) (argument that could have been made in opening brief but was not is waived); *Alsco, Inc. v. Premier Outsourcing Plus, LLC*, No. 19-1631, 2020 WL 4001060, at *3 (D. Del. July 15, 2020) (failure to address argument in reply brief "implicitly conceded the validity of those arguments").

### B. Storms Did Not Conceive or Communicate Element [b2]

Plaintiffs argue a "power option agreement" is "a fancy name Lancium chose for a contract that allows a power entity to stop delivery of electricity to a load. Nothing more." Ps' Reply at 3-4. But the Court construed "power option agreement" to be more, and importantly a POA requires the load to use power subject to the power entity's option. Plaintiffs seek to discount this core requirement as "an unremarkable, natural consequence of such an arrangement" (*id.* at 4) to hide Storms' concession that his technology did not require such use: Q: "[N]owhere in an of these materials [*i.e.*, TX887 (Storms' Email)] is there an indication that your simulated mining build must utilize at least a specified amount of power for a specified time period …, correct? A: That is correct, yes." Tr. 145:24-146:5; DF 39-40, 45; *see also* Tr. 406:3-23; DF25 (McClellan admitting similar).[3]

Storms' system is fundamentally different from the '433 patent. Plaintiffs originally stated it was the Bitcoin miner that purchased power and decided whether to use that power to mine Bitcoin or sell that power back to the grid based on profitability. *See* Tr. 266:18-267:4; D.I. 247 at 2; DF46. At trial, Plaintiffs argued that the windfarm decides whether to sell the power to the Bitcoin mine or to sell the power to the grid and thus has the "option" in the context of a "power option agreement." Regardless, under either theory, Storms did not conceive or communicate a requirement that the Bitcoin mine (load) must use the power, and thus there is no conception of a POA, which requires such use. This conclusion is supported by Storms' admission that "maintaining the load level above a certain value was not important" in his system (Tr. 148:25-

---

[3] Partially quoting a sentence from Defendants' Response, Plaintiffs argue that "Lancium essentially concedes" that Storms disclosed a system operating under a power option agreement. Ps' Reply at 4. Not so. The partially quoted portion of Defendants' Response made the point that Storms' "concept" was "Lancium's original concept from 2017" but nonetheless "is different than the inventions of the '433 patent." D.I. 258 at 8.

129:5; DF25), and by Storms' and McClellan's admissions that Storms' system does not teach using power regardless of profitability. Tr. 145:24-146:5, 406:3-23; DF25. Plaintiffs also do not dispute that Storms' system had no way to measure the amount of power actually used, as would be expected in a system that had to comply with a POA. Tr. 423:10-19.

Nor did Storms conceive or communicate a "minimum power threshold." As discussed extensively in Defendants' Response, Storms' system simply set a fixed value for the power and the only way to change that value was to change the code. D.I. 258 at 12; DF30. Thus, Storms' system did not "receive … a set of minimum power thresholds" per a POA or otherwise.[4] Storms' system also did not have a "set of time intervals, wherein each minimum power threshold … is associated with a time interval in the set of time intervals" because in Storms' system the power value was not associated with any time interval. Storms' 5-minute increments related to power prices, not power values. Plaintiffs fail to address these arguments (D.I. 258 at 10-12) and thus have conceded them. *See, e.g.*, *Progressive Sterilization*, 2020 WL 3071951, at *2.

### C. Storms Did Not Conceive or Communicate Elements [b3] and [b4]

Storms did not and could not conceive of claim elements [b3] and [b4] because he did not conceive of a system where the load has to use specified amounts of power (*i.e.*, minimum power thresholds) during specified time intervals.[5] Plaintiffs' convoluted argument regarding elements

---

[4] Plaintiffs try to side-step the minimum power threshold requirement by arguing that Storms' control software was logically separated from its PDUs meaning that the software could be run by whomever controlled the option and that the PDUs, once on, would stay on for the full 5 minutes. Ps' Br. at 4. This argument is a red herring. Profitability considerations were the ***only*** consideration in Storms' system. There is no requirement that his system use the power available to it—the decision to mine/not mine is made ***solely*** on profitability, not on a requirement to use the minimum power threshold per a power option agreement as required by the Court's construction.

[5] Plaintiffs' assertion that "Lancium does not dispute that Storms communicated 5 of the 6 elements in the independent claims of the '433 Patent" is wrong as demonstrated in Defendants' Response at pages 10-11 (discussing aspects of elements [b3]), pages 12-13 (discussing elements [b3] and [b4]), and pages 1, 6-7 (discussing fundamental differences between Storms' system and

[b3] and [b4] essentially asserts that minimum power thresholds can exist without a power option agreement. This is nonsensical because a load cannot be required to use specified amounts of power (*i.e.*, minimum power thresholds) during specified time intervals if there is no agreement requiring the load to use the power.[6]

Plaintiffs, moreover, nowhere explain (at trial or in their briefing) how Storms' system allegedly determined (and/or how his documents communicated) a "performance strategy" "***responsive to receiving*** the power option data," or how that non-existent strategy comprised "a power consumption target … for each time interval in the set of time intervals, wherein each power consumption target was equal to or greater than the minimum power threshold associated with each time interval." Storms MINE/NOT MINE decision was made based on the price of power versus the price of Bitcoin and a breakeven calculation for each 5-minute interval (*see, e.g.*, D.I. 258 at 10-11 (and evidence cited therein)), ***not in response to receiving minimum power thresholds***, or even in response to received time intervals. *Id.* And Storms' system did not have a power consumption target for each time interval equal to or greater than the MPT because Storms' system was not concerned with maintaining any particular power level; it ran at 100% if mining and 0% if not mining. Likewise, because Storms' system does not "determine a performance strategy" as required by element [b3], it does not and cannot "provide instructions … based on the performance strategy" as required by element [b4].

### D. McNamara/Cline Conceived Elements [a], [b], [b1] Before McNamara Met Storms

---

the '433 patent.

[6] Plaintiffs' assertion that Defendants' interpretation of the claims would render meaningless the "at least in part" aspect of the requirement of element [b2] (Ps' Reply, at 3) is wrong. The claim language requires that "power option data" must be based "at least in part on a power option agreement." Thus, power option data requires a power option agreement. It is Plaintiffs that are trying to read out the "at least in part" language by arguing that the 5-minute intervals and 373 kW/hour information does not need to "at least in part" come from a POA.

Plaintiffs' Reply essentially ignores the evidence discussed in Defendants' Response establishing that McNamara and Cline conceived of claim elements [a], [b], and [b1] before McNamara ever met Storms. D.I. 258 at 9-10; DF3-6; *see also* D.I. 258 at 4-5. Plaintiffs thus concede this point. *Progressive Sterilization*, 2020 WL 3071951, at *2. It bears repeating, however, particularly because Plaintiffs attempt to use these elements to argue joint inventorship (Ps' Reply at 8-9), that in 2018 Lancium successfully conducted a real-world test of its Bitcoin miner ramping system and software with 120 miners using grid power, where the system monitored conditions such as power and Bitcoin prices as well as actual power usage of individual miners thus demonstrating elements [a], [b], and [b1].[7] DF5; *see also* Tr. 459:16-474:23; TX189, TX179; TX180; TX222; TX223; TX781 at 21495. And by May 1, 2019, Lancium's self-developed software was monitoring signals from a wind farm, ERCOT, from the miners themselves (*e.g.*, actual power utilization), Bitcoin price, real-time power price, hashrate, and block height. DF6. Because McNamara and Cline already possessed elements [a], [b], and [b1], Storms cannot be the sole inventor and communication of these elements would not make him a joint inventor.[8]

### E. McNamara and Cline Independently Conceived The '433 Patent's Inventions

Despite Plaintiffs' attempt to argue that the timing of Storms' Email to McNamara precludes McNamara and Cline from having independently conceived the '433 patent, their Reply

---

[7] This system also used the monitored conditions to determine a target power level (*i.e.*, a performance strategy) and sent instructions to individual miners to implement the performance strategy and the target power level. DF6. Thus, contrary to Plaintiffs' assertion that Lancium was "just turning miners off when power prices got too high" when McNamara met Storms, Lancium was doing far more. Ps' Reply at 5.

[8] *Iceotope Grp. Ltd. v. LiquidCool, Sols., Inc.*, No. 20-CV-2644, 2022 WL 204923, at *2 (D. Minn. Jan. 24, 2022) (sole inventorship requires proof that "(1) the erroneously omitted inventor conceived the invention claimed in the patent and (2) the named inventor on the patent did not conceive the invention"); *Caterpillar Inc. v. Sturman Indus., Inc.*, 387 F.3d 1358, 1377 (Fed. Cir. 2004) ("a person will not be a co-inventor if he or she does no more than explain to the real inventors concepts that are well known [in] the current state of the art").

6

recognizes an obvious truth—even if Storms' Email disclosed the inventions of the '433 patent, which it does not, McNamara and/or Cline would have had to have Storms' information "in mind" for Storms to be an inventor.[9] In other words, if McNamara and Cline did not understand Storms' Email to disclose the inventions of the '433 patent—which again it does not—then Storms cannot be an inventor of the '433 patent. Plaintiffs present no evidence that either McNamara or Cline had any such understanding of Storms' Email. To the contrary, as set forth in Defendants' Response, McClellan admitted that Storms' Email only provided "information upon which to embark on a reverse engineering exercise of what Mr. Storms' system did" that would be "fraught with error." D.I. 258 at 13, 15-16; DF41-43. And the evidence showed that McNamara and Cline did not attempt to "reverse engineer" Storms' idea, rather they spent only a few minutes reviewing the Email and did not focus on the Spreadsheet. D.I. 258 at 15; DF15, 17-19.

Plaintiffs' assertion that Defendants provided "little testimony" and "no expert opinions" regarding their independent invention (Ps' Reply at 5) is revisionist history. McNamara and Cline both testified extensively about the independent development of their technology and the '433 patent, including the activities after McNamara met Storms that led to the independent conception of the '433 patent. *E.g.*, Tr. 570:5-580:11[10] (McNamara), Tr. 492:1-501:25 (Cline). And Dr. Ehsani did opine regarding their independent conception. *E.g.*, Tr. 690:15-691:3.

Plaintiffs' other criticisms of Defendants' evidence of independent conception are meritless. First, contrary to Plaintiffs' assertion, Lancium's "initial vision" from 2017 was not "just

---

[9] To the extent Plaintiffs suggest that they can prove their inventorship claims without proving that McNamara and Cline did not conceive of the '433 patent, they are wrong. *Iceotope Grp.*, 2022 WL 204923, at *2. *Price v. Symsek* does not hold otherwise, rather it notes that proving "prior conception" and "communication of the conception" are necessary for a correction of inventorship claim, not that this alone is necessarily sufficient. 988 F.2d 1187, 1190 (Fed. Cir. 1993).
[10] The reference to TX646 at Tr. 570:5 is a transcription error and should be TX626.

turning miners off when power prices got too high," rather it was a system where a windfarm would have the option to sell power to Lancium when power prices were low (so that Lancium could economically mine Bitcoin) and the windfarm would have the option to sell its power to the grid when power prices were high—the same idea that Plaintiffs now (after claim construction) argue was Storms' idea. *See* Response at 8; *see also* DF3-7, D.I. 13 & 28 (Answers).[11]

Second, with respect to, for example, elements [a], [b1], and [b2] (*see also* claim 16), Plaintiffs ignore Defendants' evidence of monitoring conditions that are unrelated to Bitcoin mining profitability, such as power usage, weather conditions, and directives from ERCOT or a windfarm, and using these conditions to determine a performance strategy (*see* DF5-6), and fail to meaningfully dispute that Defendants conceived these elements prior to meeting Storms. Defendants, likewise, provided documentary evidence of the conception of these elements (*e.g.* TX223) identifying, for example breakeven prices for different types of miners, LMPs (including LMPs in 5-minute increments), and individual miner data as conditions to be monitored and reported on a dashboard. Tr. 469:473:4. Lancium not only conceived these concepts prior to meeting Storms but had reduced many of them to practice using Lancium-modified Tier44 and ServiceNow software. Tr. 459:16-468:18; TX189, TX176-TX180; *see also* Section D above.[12]

---

[11] Plaintiffs cite TX57.5 (TX169) as evidence that prior to meeting Storms, Lancium was simply turning miners off when prices got to high. Ps' Reply at 5. Not true. For example, the examples in TX169 (pages 14477-78) under "load balancing" contemplate miners operating at different power levels (*e.g.* 65% load in example B, and 50% maximum load in example C) thus further evidencing Lancium's ability to monitor conditions and adjust the power actually consumed by the miners accordingly. Also, the document is an incomplete draft and the portion of the document that Plaintiffs cite to is simply one example to stop hashing at a certain price. That single example is not indicative of Lancium's technology or its software's capability as discussed at DF3-11.

[12] Plaintiffs attempt to cast aside the '632 Application's teaching by stating that it does not explicitly mention Bitcoin price or mining profitability. Ps' Reply at 5. The argument ignores the '632 Application's extensive discussion of a system where a generator (*e.g.*, a windfarm) could supply energy to a flexible datacenter performing Bitcoin mining operations, and that among the

8

Finally, Plaintiffs' dismissal of McNamara and Cline's conception of the complete inventions of the '433 patent as only recognizing "decades-old contractual arrangements" (Ps' Reply at 6) ignores the claim language. McNamara and Cline conceived much more than the existence of power option agreements and minimum power thresholds, they conceived of systems and methods of controlling computing systems operating under the constraints of a power option agreement, incorporating all of the aspects of the '433 patent's claims—something that had never been done before and that led to Lancium qualifying as the first ever load-only CLR. Tr. 499:21-501:3, DF10. And despite their assertion that Storms conceived of such a system, Plaintiffs do not dispute that he did not even know what ancillary services provided by loads were when he communicated with McNamara. *See* D.I. 258 at 16; DF24 n.6.

## II. STORMS IS NOT A JOINT INVENTOR OF THE '433 PATENT

Plaintiffs' argument that Storms' alleged contribution of "monitored conditions" is significant ignores voluminous evidence that Defendants possessed this idea before McNamara ever met Storms. DF5-6. Thus, Plaintiffs effectively concede that Storms' alleged "contribution" was no contribution at all because McNamara and Cline already had this idea. *Progressive Sterilization*, 2020 WL 3071951, at *2; *Caterpillar*, 387 F.3d at 1377. Plaintiffs' suggestion that monitoring conditions related to "power price arbitrage (sellback)" is "the crux of the invention" mischaracterizes the '433 patent, relies on extrinsic evidence that is not included in the patent, and is contradicted by their own expert: "I don't believe it [the '433 patent] contemplates selling back." DF25; Tr. 416:4-12. Put simply, the claims do not recite sell-back and instead recite limitations (*i.e*, constraints) such as [b2], [b3], and [b4] that are nowhere described in Storms' Email.

## III. MCCLELLAN IS NOT CREDIBLE

---

things monitored were "economic considerations," and Cline's testimony explaining that such considerations included power prices and Bitcoin prices. 445:6-448:23; TX163.

9

Plaintiffs' argument that "McClellan's opinion has always been that the load must use the MPT" (Ps' Reply at 6-7) is frivolous. The Court *twice* found the opposite. *See* Tr. 266:18-267:4; D.I. 247 at 3.[13] Far from being based on "fragments of McClellan's deposition, taken out of context," the Court's finding is well supported by McClellan's deposition testimony. *See* Exhibit 1 (highlighting McClellan's relevant testimony in green with Plaintiffs' citations in yellow). Plaintiffs' attempt to gaslight the Court on this issue demonstrates their overall lack of credibility.[14]

Plaintiffs' attempt to downplay McClellan's testimony that Storms' Spreadsheet provides "information upon which to embark on a reverse engineering exercise of what Mr. Storms' system did" is also meritless. The Spreadsheet does not explain the "logic" that McClellan admits would have to be reversed engineered. Tr. 395:14-397:16, *see also* 684:24-688:11 (Ehsani testimony that Spreadsheet calculations could not be determined). And Plaintiffs' assertion that McClellan only testified that such reverse engineering of "one piece of information" would be "fraught with error" ignores that this "one piece of information" was the breakeven value central to Storms' system. *Id.* Plaintiffs also do not address McClellan's other misleading, inaccurate testimony (DF47), Storms' dubious motivation for this lawsuit, or that the ideas he claims embody the '433 patent originated with Hakes/Labij. *See* DF33-36, 44-45. These failures further support judgment for Defendants.

## IV.  CONCLUSION

For the reasons above and in Defendants' Response brief, the Court should enter judgment finding Storms is NOT an inventor, either sole or joint, of the '433 patent.

---

[13] Similarly, Plaintiffs' assertion that "a load must use the power it contracts to purchase" directly contradicts McClellan's original opinions. Ps' Reply at 1

[14] Plaintiffs' criticism that Defendants selectively quote from the Storms/Hakes text chain (Ps' Reply at 8 n.2) also lacks merit. As noted on page 8 of Defendants' Response, Storms admitted he did not know what Lancium was doing software-wise and thus, contrary to his texts with Hakes, nothing set him apart from the so-called hardware guys (DF21), and Lancium knew how to control miners with software and had been doing for at least a year before meeting Storms. DF3-7.

| | |
|---|---|
| Dated: February 8, 2023 | BARNES & THORNBURG LLP |
| | |
| | */s/ Chad S.C. Stover* |
| | Chad S.C. Stover (No. 4919) |
| | 222 Delaware Avenue, Suite 1200 |
| | Wilmington, Delaware 19801-1050 |
| | Telephone: (302) 300-3474 |
| | E-mail: chad.stover@btlaw.com |
| | |
| | Mark C. Nelson (admitted *pro hac vice*) |
| | David Lisch (admitted *pro hac vice*) |
| | 2121 N. Pearl Street, Suite 700 |
| | Dallas, TX 75201 |
| | Tel: (214) 258-4140 |
| | E-mail: mark.nelson@btlaw.com |
| | david.lisch@btlaw.com |
| | |
| | Adam M. Kaufmann (admitted *pro hac vice*) |
| | Darrick Hooker (admitted *pro hac vice*) |
| | Dana Amato Sarros (admitted *pro hac vice*) |
| | One North Wacker Drive, Suite 4400 |
| | Chicago, IL 60606 |
| | Tel: (312) 214-8319 |
| | Email: adam.kaufmann@btlaw.com |
| | Email: darrick.hooker@btlaw.com |
| | Email: dana.sarros@btlaw.com |
| | |
| | *Attorneys for Defendants Lancium LLC, Michael T. McNamara, and Raymond E. Cline Jr.* |