# EXHIBIT 3

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
 2             IN AND FOR THE DISTRICT OF DELAWARE
 3                          - - -
 4
     BEARBOX LLC and AUSTIN      )
 5   STORMS,                     )
                                 )
 6         Plaintiffs,           )
                                 )
 7   vs.                         ) Civil Action No.
                                 ) 21-534-MN-CJB
 8   LANCIUM LLC, MICHAEL T.     )
     MCNAMARA, and RAYMOND E.    )
 9   CLINE, JR.,                 )
                                 )
10         Defendants.           )
11
                             - - -
12
                      Wilmington, Delaware
13                   Friday, April 22, 2022
                     Motion to Strike Hearing
14                             and
                     Discovery Dispute Hearing
15
                             - - -
16
     BEFORE:  HONORABLE CHRISTOPHER J. BURKE, Magistrate Judge
17
                             - - -
18   APPEARANCES:
19
             ASHBY & GEDDES, P.A.
20           BY:  ANDREW COLIN MAYO, ESQ.
21               and
             MARSHALL GERSTEIN BORUN LLP
22           BY:  BENJAMIN HORTON, ESQ., and
23               JOHN R. LABBE, ESQ.
                 (Chicago, Illinois)
24                  Counsel for Plaintiffs
```

Page 2

1  APPEARANCES: (Continued)
2
       BARNES & THORNBURG LLP
3  BY:  CHAD S.C. STOVER, ESQ.
4       and
5  BARNES & THORNBURG LLP
   ADAM KAUFMANN, ESQ.
6  (Chicago, Illinois)
7       and
8  BARNES & THORNBURG LLP
   MARK C. NELSON, ESQ.
9  (Dallas, Texas)
10          Counsel for Defendants

Page 3

1          THE COURT:  Good afternoon, everybody.
2  Just for the record, we're here this afternoon in the
3  matter of BearBox LLC and Austin Storms versus Lancium
4  LLC, et al., at civil action number 21-534-MN-CJB here in
5  our court.
6          And before we go further, let's have
7  counsel for each side identify themselves for the record.
8  We'll start first with counsel for the plaintiff's side,
9  and we'll begin there with Delaware counsel.
10         MR. MAYO:  Good afternoon, Your Honor.
11  This is Andrew Mayo from Ashby & Geddes for plaintiffs,
12  BearBox and Mr. Storms.  I am joined on the telephone
13  this afternoon by my cocounsel from Marshall Gerstein &
14  Borun.  You have Benjamin Horton and John Labbe on the
15  line, and Mr. Horton will be presenting the arguments on
16  behalf of the plaintiffs today.
17         THE COURT:  All right.  Thank you.
18         And we'll do the same for counsel on
19  defendants' side, and, again, we'll begin there with
20  Delaware counsel.
21         MR. STOVER:  Good afternoon, Your Honor.
22  This is Chad Stover from Barnes & Thornburg, and with me
23  are my partners, Mark Nelson from Dallas and
24  Adam Kaufmann from Chicago.  And Mr. Kaufmann and I will

Page 4

1  be presenting today on behalf of Lancium.
2          THE COURT:  Okay.  Great.  Thank you.
3          And I should say, for the record, Counsel,
4  that we're here this afternoon on this teleconference for
5  argument on two different motions:  The first is
6  defendants' motion to strike the trade secret
7  misappropriation counts in the second amended complaint,
8  which I believe are Counts 3 and 4, as well as a
9  discovery dispute motion, and that is plaintiffs' motion
10  to compel the defendants to produce documents concerning
11  investments in certain data center facilities in Texas.
12         I think it will make sense to first
13  address the motion to strike, and then address the
14  discovery dispute motion after that.
15         And so let me turn, first, to counsel with
16  regard to the motion to strike.  And I know it's
17  defendants' motion, so I'll turn to their counsel first.
18  Who's going to be speaking for defendants as to this
19  motion?
20         MR. KAUFMANN:  Good afternoon, Your Honor.
21  This is Adam Kaufmann on behalf of defendants.
22         THE COURT:  Okay.  Mr. Kaufmann, thank
23  you.
24         And, Mr. Kaufmann, I think, in the main,

Page 5

1  as I understand it, the argument you're making as to why
2  these counts should be stricken -- there's various
3  arguments, of course.  One of them is that the particular
4  counts here weren't the type of claims that the Court
5  specifically permitted leave to amend on, and that, as a
6  result of that, the other side shouldn't be able to amend
7  to add trade secret claims at this time.
8          But I think it makes sense to focus on
9  what I think was kind of the primary line of argument,
10  which really goes to kind of the merits or the substance
11  of the issue.  In other words, even assuming that the
12  plaintiffs had made a motion for leave to amend to add
13  the new trade secret claims, there, your argument is,
14  Look, we're past the deadline for amendment pleadings.
15  In fact, we're well past it, and so the movement would
16  have to show good cause.
17         And that would turn, as an initial matter,
18  on the diligence of the movement, and, therefore, it
19  would be on the plaintiffs' side to explain why it is
20  that they couldn't have added these claims any sooner.
21         And that, in turn, leads to an argument
22  from you as to whether or not they basically had the
23  information relating to these claims at the time of the
24  filing of the original complaint.  And in response, the

2 (Pages 2 - 5)

Page 38

1  which are documents that just talk about power price --
2  performing power price arbitrage, which is something they
3  were aware that Lancium was doing based on the complaint
4  in the LayerOne case that was filed eight months before
5  this case began, which they acknowledge they were aware
6  of when it was filed.  So, Your Honor, no, we're not
7  aware of what the details are.
8         They've continued to reiterate that it's
9  the details of how the arbitrage is performed that is the
10 key, and they've never explained to us how these
11 documents provide specific details that are different
12 than -- or, you know, the concept of performing power
13 price arbitrage.
14        THE COURT:  Mr. Horton, I'll give you a
15 chance for brief rebuttal with regard to what you heard
16 from your colleague on the other side before we conclude.
17        MR. HORTON:  Yes, Your Honor.  We just
18 don't agree with that.  We provided these documents and
19 citation in the opposition, and maybe more importantly
20 here, we served expert reports almost three weeks ago now
21 that go through in painstaking detail what's disclosed in
22 each of those documents and how we interpret that in the
23 context of the trade secret.  So saying now, three weeks
24 later, that, you know, the defendants don't know what the

Page 39

1  trade secret is or what we're talking about just doesn't
2  seem credible to me, Your Honor.
3         And to the other point on the complaint
4  that defendants filed against LayerOne a while ago,
5  again, that was a vague high-level disclosure.  It did
6  not discuss the particular method of energy value
7  arbitrage that's at issue here.  And, you know, I don't
8  blame Your Honor for not remembering this if you don't,
9  but we had a dispute in this case early on about the
10 scope of the protective order.  And defendants were
11 adamant about requiring an additional layer of protection
12 for its information, the way it conducts business and its
13 technology beyond what might be in the protective order
14 because it's so sensitive.  So to now suggest that we
15 should have somehow been aware of the particular methods
16 they were using through public documents just doesn't
17 square with that, Your Honor.
18        THE COURT:  All right.  Anything further
19 from the parties on this motion to strike?
20        MR. KAUFMANN:  Your Honor, if I could just
21 respond to that briefly.  I would say, one, the assertion
22 that defendants --
23        THE COURT REPORTER:  I apologize.  Who's
24 speaking?  I apologize.  Who's speaking?  I apologize.

Page 40

1         MR. KAUFMANN:  I'm sorry.  This is
2  Adam Kaufmann for Lancium.
3         THE COURT REPORTER:  Thank you.
4         THE COURT:  Okay.  Mr. Kaufmann, it's your
5  motion so you'll get the last word.
6         MR. KAUFMANN:  Thank you, Your Honor.  I
7  appreciate that.
8         One, Your Honor, plaintiffs' expert
9  reports came well after the briefing in these papers, and
10 so they couldn't have provided us with notice to be able
11 to respond in the papers.  But, two, Your Honor, it is
12 just not the case that their expert reports explained
13 what these actual trade secrets are.  These documents
14 that they point to, they have never told us what the
15 specific details of these trade secret claims are.
16        Mr. Horton keeps reiterating that, you
17 know, high-level discussions aren't enough, but we have
18 never seen the actual explanation of what the trade
19 secret is and how these documents disclose that.
20        THE COURT:  All right.  Thank you,
21 Counsel.  I'm going to go ahead and -- I appreciate the
22 arguments and the parties did have fairly extensive
23 briefing on this because, not only did we have an opening
24 answer in the reply brief, but the parties agreed to

Page 41

1  provide short surreply briefs.  So I have five different
2  briefs with regard to this issue, and now I've heard
3  argument.  I also know that the case is in its later
4  stages, and so I want to be able to provide you with
5  answers with regard to these disputes if I can.
6         So with regard to this motion to strike,
7  I'm prepared to provide a ruling now, and I'll do so on
8  our teleconference, and so the substance of the Court's
9  decision will be reflected in today's transcript.
10        And so with regard to the motion to
11 strike, I'll start by saying that the threshold issue
12 that the defendants raised was whether the amendment
13 should be permitted because -- in light of the fact that
14 the plaintiffs didn't file a motion for leave to amend.
15 They simply filed an amended complaint that included
16 these two new trade secret counts.
17        And in response to that, the plaintiffs
18 asserted that they didn't have to file a motion for leave
19 to amend because the Court had permitted them leave to
20 amend, including leave to amend to add trade secret
21 claims like these.  Now, there, I'll say, that that's not
22 correct.
23        It's very clear from looking at the
24 Court's prior order when it resolved the prior motion to

Page 42

1 dismiss that when it was recommending to the district
2 court that leave to amend should be granted, it was
3 talking about the claims that were actually dismissed
4 without prejudice in that prior motion to dismiss
5 briefing.
6          In fact, in articulating to the district
7 court why it is that the Court should permit leave to
8 amend, the Court was referring to the substance of the
9 parties' arguments about those two claims, neither of
10 which were trade secret misappropriation claims.  So it's
11 not the case that the Court intended its order to be
12 referring to any possible claims that the plaintiffs
13 might possibly want to bring later.
14          Now, that said, all that being said, I
15 would not cite to that as a reason why the motion to
16 strike should be granted because, of course, the
17 plaintiff could have filed a separate motion for leave to
18 amend with regard to these trade secret misappropriation
19 claims.  And I'm prepared to -- since I've had extensive
20 briefing here, I'm prepared to consider the plaintiffs'
21 briefs here as a de facto motion for leave because we
22 really should be addressing these squarely.  So I'll
23 consider the plaintiffs' motion for leave to amend to
24 have been raised by their briefing.

Page 43

1          But with regard to that type of motion,
2 and getting back to the defendants' motion to strike,
3 there, of course, the plaintiffs have a problem, and the
4 problem is that they're making this motion four months
5 after the deadline in the scheduling order for amendment
6 of pleadings.  And so because they're seeking to amend
7 their complaint as to these trade secret claims so long
8 after the motion deadline, the scheduling order deadline
9 has passed, they need to demonstrate good cause for
10 essentially amending the scheduling order to permit that.
11          And as the parties have noted in their
12 briefing, our case law notes that the threshold issue
13 with regard to a good cause showing is that the
14 plaintiffs have to sufficiently demonstrate that they
15 were diligent in bringing their new claims.  That is,
16 they have to demonstrate that, despite their own
17 diligence, they could not have raised these trade secret
18 misappropriation claims any earlier than they did here in
19 and around March of this year.  And if they are able to
20 show diligence, then the Court considers other factors as
21 to that Rule 16 analysis, but diligence is the threshold
22 issue.
23          And so before I talk about diligence, let
24 me just make this note that where we stand here in the

Page 44

1 case in terms of when these claims are seeking to be
2 added, we're not just a day or a week or a month after
3 the deadline for motions to amend has passed; we're many
4 months.  We're into the late stages of the case so we're
5 long past that deadline.  So the Court's search for good
6 cause kind of comes in that context as well.  There
7 really needs to be good cause because these are
8 late-added claims.
9          And with regard to the issue of good
10 cause, ultimately here -- and this is the reason I'm
11 going to grant the motion to strike -- is that the
12 plaintiff simply has not demonstrated that they had good
13 cause to move to amend only many months after the
14 deadline for amending pleadings had passed.  It was
15 plaintiffs' burden to make a record in that regard.  We
16 had many briefs in which to do it, and they have not.
17 And the primary reason why they have not, I'll assume for
18 purposes of my decision here, that the trade secrets that
19 are at issue in the second amended complaint in the
20 proposed trade secret counts, I'll assume that those are
21 different trade secrets than what the plaintiffs were
22 referring to in their original complaint.
23          Now, I say that I'll assume it because
24 it's not totally clear to me.  And I think the reason why

Page 45

1 it's not totally clear to me is that, in the original
2 complaint, the plaintiff said very little, almost nothing
3 about what they were actually talking about as to the
4 trade secrets that were at issue.  The plaintiffs have
5 now told me that they were referring to some type of
6 computer architecture.  I don't know how you could know
7 that from looking at that original complaint, but let's
8 assume that's so.  And so what the plaintiff described as
9 the more specific energy arbitrage methods that they're
10 now referring to in the second amended complaint, let's
11 assume those are different.
12          Nevertheless, the problem, again, is these
13 claims are being raised many months after the deadline,
14 and so the plaintiff has to make a record, has to show me
15 how it is that only in, they say, December of 2021 did
16 they discover for the first time that they had a trade
17 secret misappropriation claim with regard to these trade
18 secrets.
19          And in doing that, the plaintiffs are
20 attempting to argue that it was only through certain
21 materials that the defendants provided by way of
22 discovery at that time that they read and learned, oh,
23 we've got a trade secret misappropriation claim with
24 regard to these particular methods.  But the plaintiffs

Page 46

1  haven't provided any evidence that that's correct to me.
2  They haven't provided me with the documents that they
3  received in discovery that were said to have provided
4  them that notice for the first time.  They haven't shown
5  me what it is about those documents that demonstrate
6  that, like what it is about the documents that indicate,
7  for example, that the same exact specific methods that
8  the plaintiffs were talking about were being used by the
9  defendants, and the documents that show me that
10 information was being provided really for the first time.
11         Now, today on our call, the plaintiffs
12 have cited to five documents that are referenced in a
13 footnote.  Again, I don't have those documents in front
14 of me.  I have no idea what their content is.  The other
15 problem is that neither do -- the defendants didn't have
16 it in front of them.  And it's not to say that defendants
17 don't know what those documents are, because obviously
18 they were produced in discovery, but the more important
19 point is the plaintiffs haven't articulated to me or the
20 defendants what are the specific portions of those
21 documents that gave them notice for the first time.
22         And the reason why that's important is
23 it's often the case that parties disagree about what the
24 documents relate to, right?  So even if the plaintiffs

Page 47

1  have given me the documents, they would have been
2  required to point me to the portions of the documents
3  that provided this notice.
4          If they had done that in the briefings,
5  the defendants would have the opportunity to look at that
6  argument, and they might have said, We disagree, Judge.
7  Look at the portion of the documents that the plaintiffs
8  are pointing to.  That doesn't tell you anything about
9  what their claim is now.  But, again, the defendants
10 couldn't do that because the plaintiffs didn't make the
11 record.  And so that's why we have the briefing process
12 so that the record can be made and the arguments can be
13 set out by the parties, and it wasn't done here.
14         So, anyway, it's clear to me that I don't
15 have a sufficient record to demonstrate good cause on the
16 plaintiffs' part so I don't have a record to permit the
17 amendment and, therefore, the motion to strike, which
18 relies on the lack of good cause is well taken.
19         So I'm going to order that the motion to
20 strike be granted, and that the trade secret
21 misappropriation counts in the second amended complaint
22 be stricken in that regard.
23         Now with that said, that takes us to our
24 discovery dispute issue.  And that dispute has a

Page 48

1  relationship to the trade secret misappropriation counts,
2  which is why it's helpful that we're addressing it
3  second.  And, there, the dispute relates to the
4  plaintiffs' request that the defendants have to produce
5  documents concerning recent investments that the
6  defendants have made in building two new data center
7  facilities in Texas.
8          And more specifically, the plaintiffs have
9  argued that those documents are relevant because they're
10 relevant to a damages analysis in the case.  And I think,
11 particularly, the plaintiffs have asserted that the
12 documents may be relevant to a damages analysis as it
13 relates to the plaintiffs' conversion and trade secret
14 claims.
15         Obviously, we've just discussed trade
16 secret claims, and I've ruled that those claims are not
17 in the case at this time, but the claim for conversion
18 still is.  And so as part of the argument here with
19 regard to the discovery dispute, I'd like to try to get a
20 better handle on the parties' respective arguments for
21 why it is that such documents could possibly be relevant
22 to an existing claim, like conversion, or might not.  I
23 know the parties have talked about that a little bit in
24 their brief, but I want to try to parse that a little bit

Page 49

1  further on our call today.
2          It's plaintiffs' motion, and let me first
3  turn to them.  And who's going to be addressing this
4  issue on the plaintiffs' side?
5          MR. HORTON:  Your Honor, Ben Horton.  I'll
6  be discussing it.
7          THE COURT:  Okay, Mr. Horton.  I think
8  here, and I think in your letter, you talked about it
9  largely in the trade secret misappropriation context, but
10 my guess is probably that a claim for conversion on the
11 damages side is going to come down to having to assess
12 what's the value of the property converted.  And so I
13 wonder whether the analyses are that different or if
14 they're not.
15         But, obviously, part of the issue here
16 was, okay, well, when the plaintiffs get these documents,
17 how are the plaintiffs going to try to potentially use
18 them as part of their damages case, and why might these
19 documents be relevant.  And there, on page 2 of your
20 initial letter, I think you started -- you really --
21 there was a part where you spelled out why it is that the
22 requested info is relevant to the case.  And this is the
23 third sentence.  You said, "Accordingly Lancium's
24 projections and investments received for the facilities

Page 82

1 free to do so, okay?
2     All right. So with all that said,
3 Counsel, thanks for your patience today. I appreciate
4 it. I wish everybody continued health and safety. And
5 if there's nothing further, we'll end our teleconference
6 today and go off the record. I wish everyone a great
7 weekend.
8     (The hearing concluded at 4:57 p.m.)
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Page 83

1         C E R T I F I C A T E
2
3
4     I do hereby certify that the foregoing hearing was
5 taken before me, pursuant to notice, at the time and
6 place indicated; that the statements of participants were
7 correctly recorded in machine shorthand by me and
8 thereafter transcribed under my supervision with
9 computer-aided transcription; that the transcript is a
10 true record of the statements made by the participants;
11 and that I am neither of counsel nor kin to any party in
12 said action, nor interested in the outcome thereof.
13
14     WITNESS my hand and official seal this 27th day of
15 April A.D. 2022.
16     *[signature: Carrie Elizabeth Gold]*
17     _____
        Notary Public
18
19
20
21
22
23
24

22 (Pages 82 - 83)