# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BEARBOX LLC and AUSTIN STORMS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-534-GBW |
| | ) | |
| LANCIUM LLC, MICHAEL T. MCNAMARA, and RAYMOND E. CLINE, JR. | ) | **PUBLIC VERSION** |
| | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION FOR FEES AND EXPENSES

Dated:  April 19, 2023
**Public Version filed on May 1, 2023**

BARNES & THORNBURG LLP
Chad S.C. Stover (No. 4919)
222 Delaware Avenue, Suite 1200
Wilmington, Delaware 19801-1050
Telephone: (302) 300-3474
E-mail: chad.stover@btlaw.com

Mark C. Nelson (admitted *pro hac vice*)
David Lisch (admitted *pro hac vice*)
2121 N. Pearl Street, Suite 700
Dallas, TX  75201
Tel:  (214) 258-4140
E-mail:  mark.nelson@btlaw.com
          david.lisch@btlaw.com

Adam M. Kaufmann (admitted *pro hac vice*)
Darrick Hooker (admitted *pro hac vice*)
Dana Amato Sarros (admitted *pro hac vice*)
One North Wacker Drive, Suite 4400
Chicago, IL 60606
Tel:  (312) 214-8319
Email: adam.kaufmann@btlaw.com
Email: darrick.hooker@btlaw.com
Email: dana.sarros@btlaw.com

*Attorneys for Defendants Lancium LLC, Michael T. McNamara, and Raymond E. Cline Jr.*

## <u>TABLE OF CONTENTS</u>

Table of Authorities ..................................................................**Error! Bookmark not defined.**

I.      Introduction.................................................................................................... 1

II.     Concise Statement of the Facts ..................................................................... 3

III.    Applicable Law ............................................................................................. 7

IV.     Argument ...................................................................................................... 8

        A.    Defendants Are The Prevailing Parties................................................. 8

        B.    Plaintiffs' Continued Assertion Of Their Inventorship Claims After The Court's Claim Construction Ruling Warrants An Award of Defendants' Attorneys' Fees, Costs/Expenses, and Expert Witness Fees Incurred After That Ruling.................................................................................................. 8

              1.    Plaintiffs' continued assertion of their inventorship claims following the Court's claim construction ruling make this case exceptional.............. 8

              2.    The Court should award Defendants their post-claim construction costs/expenses under § 285, including trial costs/expenses..................... 14

              3.    The Court should award Defendants their post-claim construction expert witness fees. .................................................................................. 15

        C.    Defendants Should Be Awarded Their Reasonable Attorneys' Fees, Costs/Expenses, and Expert Witness Fees for Litigating Plaintiffs' Claim That Austin Storms Was the Sole Inventor of the '433 Patent ...................................... 16

        D.    Defendants Should Be Awarded Their Reasonable Attorneys' Fees Related To The Research And Briefing Of Their Motion To Strike Plaintiffs' Improper Attempt To Reinsert Their Meritless DTSA Claim Two Days Before The Close Of Fact Discovery ................................................................................... 18

        E.    Reasonable Estimate of Defendants' Attorneys' Fees and Costs ......................... 19

V.      Conclusion .................................................................................................... 20

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                         **Page(s)**

*AdjustaCam LLC v. Newegg, Inc.*,
   861 F.3d 1353 (Fed. Cir. 2017) ................................................................................. 9

*Central Soya Co., Inc. v. Geo. A. Hormel & Co.*,
   723 F.2d 1573 (Fed. Cir. 1983) ............................................................................... 14

*Clinicomp Int'l, Inc. v. Cerner Corp.*,
   No. 17-2479, 2023 WL 1767008 (S.D. Cal. Feb. 3, 2023) .................................. 9, 11

*Dexcom, Inc. v. AgaMatrix, Inc.*,
   No. 16-5947, 2018 WL 11350029 (C.D. Cal. May 9, 2018) ................................. 15

*Dragon Intellectual Property, LLC v. Dish Network LLC*,
   No. 13-2066, 2021 WL 3616147 (D. Del. Aug. 16, 2021) .................................... 17

*Drone Techs., Inc. v. Parrot S.A.*,
   No. 14-111, 2015 WL 4545291 (W.D. Pa. July 21, 2015) .................................... 14

*Eli Lilly & Co. v. Aradigm Corp.*,
   376 F.3d 1352 (Fed. Cir. 2004) ............................................................................... 13

*Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*,
   279 F.3d 1022 (Fed. Cir. 2002) ............................................................................... 17

*Fogerty v. Fantasy, Inc.*,
   510 U.S. 517 (1994) .................................................................................................... 7

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) .................................................................................................. 20

*Homeland Housewares LLC v. Sorensen R&D Trust*,
   No. 11-3720, 2013 WL 12126217 (C.D. Cal. June 27, 2013) .............................. 17

*Innovation Scis., LLC v. Amazon.com, Inc.*,
   842 F. App'x 555 (Fed. Cir. 2021) ........................................................................... 9

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
   876 F.3d 1372 (Fed. Cir. 2017) ................................................................................. 8

*Lakim Indus., Inc. v. Linzer Prods. Corp.*,
   No. 12-4976, 2013 WL 1767799 (C.D. Cal. Apr. 24, 2013), *aff'd*, 552 F.
   App'x 989 (Fed. Cir. 2014) ....................................................................................... 9

*MarcTec, LLC v. Johnson & Johnson*,
   664 F.3d 907 (Fed. Cir. 2012) ............................................................................ 9, 15

*Mathis v. Spears*,
    857 F.2d 749 (Fed. Cir. 1988)................................................................................20

*Maxwell v. Angel-Etts of California, Inc.*,
    53 Fed. App'x 561 (Fed. Cir. 2002)........................................................................14

*Nat'l Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*,
    676 F. App'x 967 (Fed. Cir. 2017) ..........................................................................11

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    572 U.S. 545 (2014)..............................................................................7, 8, 13

*Philips Elecs. N. Am. Corp. v. Compo Micro Tech, Inc.*,
    No. 02-123, 2006 WL 3020724 (D. Del. Oct. 23, 2006) ........................................14

*Princeton Digital Image Corp. v. Ubisoft Ent'mt SA*,
    No. 13-335, 2021 WL 4033220 (D. Del. Sept. 3, 2021)......................................9, 20

*Scott v. Zimmer, Inc.*,
    889 F. Supp. 2d 657 (D. Del. 2012) ........................................................................13

*Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*,
    549 F.3d 1381 (Fed. Cir. 2008)..........................................................................14, 15

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
    726 F.3d 1306 (Fed. Cir. 2013)..................................................................................9

*Teetex LLC v. Zeetex, LLC*
    No. 20-7092, 2022 WL 2439176 (N.D. Cal. July 5, 2022) ................................18, 19

*Thermolife Int'l LLC v. GNC Corp.*,
    922 F.3d 1347 (Fed. Cir. 2019)..........................................................................11, 17

*Thermolife Int'l, LLC v. Myogenix Corp.*,
    No. 13-651, 2018 WL 325025 (S.D. Cal. Jan. 8, 2018), *aff'd*, 922 F.3d 1347
    (Fed. Cir. 2019)........................................................................................................15

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
    130 F. Supp. 3d 1331 (C.D. Cal. 2015) ..................................................................14

*Vehicle Interface Techs., LLC v. Jaguar Land Rover N. Am., LLC*,
    No. 12-1285, 2016 WL 3436396 (D. Del. June 15, 2016) ....................................14

*WPEM, LLC v. SOTI Inc.*,
    837 F. App'x 773 (Fed. Cir. 2020) ........................................................................17

**Statutes**

18 U.S.C. § 1836(b)(3)(D)..................................................................................................8

35 U.S.C. § 285.................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 54(d)(1)..................................................................................................14

Fed. R. Civ. P. 54(d)(2)(B)(iii).......................................................................................20

Fed. R. Civ. P. 54(d)(2)(C)............................................................................................20

Local Rule 54.1...............................................................................................................14

## I.      INTRODUCTION

An "exceptional" case justifying an award of attorneys' fees is simply one that stands out from others with respect to the substantive strength of a party's litigating position *or* the unreasonable manner in which the case was litigated considering the totality of the circumstances. This case satisfies both prongs. Defendants spent millions of dollars in legal fees and costs to defend against Plaintiffs' baseless claims, all of which stemmed from a happenstance dinner and a single follow-up email where Austin Storms attempted to sell Mr. McNamara "BearBox" mining containers. Plaintiffs knew or should have known their sole inventorship claim was baseless from the beginning of the case and, at best, no later than May 12, 2021, the date Defendants filed their Answer and Counterclaims. D.I. 13. And, after claim construction, when it became undeniably clear that Plaintiffs' "technology" was completely different than the inventions of U.S. Patent No. 10,608,433 ("the '433 patent"), Plaintiffs engaged in unreasonable and bad faith tactics by, *inter alia*, flipping positions and manufacturing new arguments/expert opinions at the eleventh hour in a futile attempt to twist the facts to support their inventorship claims under the Court's constructions. Such behavior should be discouraged.

This case leaps out from the typical case for numerous reasons. ***First***, Plaintiffs' litigation conduct after the Court rejected their claim construction positions (D.I. 218 and 219) makes this case exceptional. As underscored in Defendants' October 31, 2022 letter, after the Court rejected Plaintiffs' proposed constructions, Plaintiffs no longer had any good faith basis to assert these claims. Ex. 1 (10/31/2022 M. Nelson email and letter to B. Horton). But Plaintiffs did not even respond to that letter. Instead, Plaintiffs (without leave or notice) filed a "supplemental" expert report on the eve of trial asserting what the Court found, in striking the report, were "***new legal***

***theories and opinions***[1] relat[ing] to BearBox's alleged conception and communication of the subject matter of the '433 patent." D.I. 247 at 2; *see also* Ex. 2 (Trial Tr.) at 266:20-267:4.

**Second**, nearly one and one-half years earlier (May 12, 2021), Defendants served their Answer and Counterclaims on Plaintiffs. D.I. 13. The counterclaims disclosed Defendants' WO Patent Application No. 2019/139632 ("the '632 Application") and contained an expansive chart mapping that Application's prior published disclosure to the so-called "BearBox Technology" relied upon by Plaintiffs for their inventorship claims. *See* D.I. 13 at ¶¶ 25-36, 61-72, 76-82. Thus, no later than the filing of Defendants' Answer and Counterclaims, Plaintiffs knew or should have known that Mr. Storms could not be the sole inventor of the '433 patent because, at a minimum, Messrs. McNamara and Cline had conceived and reduced to practice certain elements (*e.g.*, the preamble, and elements [b] and [b1], parts of [b4] of claims 1, 17, and 20)[2] of the '433 patent as evidenced by the published '632 Application and counterclaims. Plaintiffs' continued assertion of sole inventorship after May 12, 2021 was, therefore, bad faith.[3] **Finally**, Plaintiffs' improper attempt to re-insert their Defend Trade Secrets Act ("DTSA") claim a mere two days before the close of fact discovery further demonstrates bad faith and unreasonable litigation tactics.

Defendants, pursuant to 35 U.S.C. § 285 and the Court's inherent authority, respectfully move for a determination that this is an exceptional case and seek an award of: (1) their attorneys'

---

[1] Unless otherwise noted, all emphasis is added.

[2] The nomenclature identifying the claim elements is the same nomenclature used in the Court's Opinion (D.I. 262) and Defendants' post-trial briefing (D.I. 258). Also, as established, Plaintiffs should have known that Mr. Storms could not be the sole inventor since the beginning of the case because, as the Court found, the specification clearly disclosed the meanings of "power option agreement" and "minimum power threshold."

[3] Defendants asserted similar counterclaims in their answers and counterclaims to Plaintiffs' later amended complaints as discussed below. Also, as discussed below, Defendants provided a detailed timeline of their independent conception in response to Plaintiffs' discovery requests and thousands of pages of supporting documents that Plaintiffs simply ignored.

fees, costs/expenses, and expert witness costs/fees for defending against Plaintiffs' inventorship claims from the date of the Court's claim construction ruling onward; and (2) their attorneys' fees and costs/expenses for litigating Plaintiffs' claim that Mr. Storms was the sole inventor of the '433 patent from the beginning of the case or, alternatively, from May 12, 2021 onward. Defendants' also seek attorneys' fees for their successful motion to strike Plaintiffs' claim under the DTSA.

## II.   CONCISE STATEMENT OF THE FACTS

Plaintiffs asserted myriad claims throughout this case. None had merit. Plaintiffs' original Complaint included seven counts asserting claims for: (1) correction of inventorship for the '433 patent to list Austin Storms as the sole inventor; (2) an alternative claim for correction of inventorship for the '433 patent to list Storms as a co-inventor; (3) conversion; (4) unjust enrichment; (5) trade secret misappropriation under the federal DTSA; (6) trade secret misappropriation under Texas state law; and (7) negligent misrepresentation. D.I. 1. Defendants' Answer and Counterclaims (D.I. 13) disputed each of Plaintiffs' claims and explained in explicit detail how the so-called "BearBox Technology," which was allegedly disclosed by Plaintiffs to Defendants in May 2019 and formed the basis of their inventorship claims, was known and developed by Defendants more than a year before Defendants ever met or had any communication with Plaintiffs, as evidenced at least by Defendants' published '632 Application. D.I. 13 at ¶¶ 9-10, 61-82. In addition, Defendants explained that Plaintiffs failed to state a claim for trade secret misappropriation, including based on the disclosures in the '632 Application. D.I. 13 at Fourth Affirmative Defense.

On May 24, 2019, Plaintiffs filed a first Amended Complaint ("FAC") withdrawing their trade secret misappropriation claims and changing the description of the alleged "BearBox

Technology."[4] *See* D.I. 19-3 (redline) at ¶ 2. Many months later—on February 16, 2022 (over three months after the deadline for amendments to pleadings and just two days before the close of fact discovery)—Plaintiffs filed a Second Amended Complaint ("SAC"). That complaint not only attempted to replead claims for conversion and unjust enrichment (as permitted by the Court, D.I. 92 at 13; D.I. 97), but also attempted to plead new claims for trade secret misappropriation under the federal DTSA and Louisiana state law, without seeking leave from the Court. D.I. 103; *see also* D.I. 82; 11/23/2021 minute entry adopting D.I. 82. On March 3, 2022, Defendants moved to strike the newly pleaded trade secret misappropriation claims (D.I. 111; D.I. 112), which Magistrate Judge Burke granted, finding it "***very clear***" that the Court's prior order ***did not permit*** pleading of "any possible claims that the plaintiffs might possibly want to bring later." Ex. 3 (4/22/22 Hr'g Tr.) at 40:20-47:22; *see also* 4/25/2022 minute entry.[5]

---

[4] Defendants answered and counterclaimed (D.I. 28) and ultimately moved for judgment on the pleadings seeking to dismiss the remaining state law claims. On January 18, 2022, Magistrate Judge Burke issued a Report and Recommendation recommending that all three of these claims be dismissed. D.I. 92. As to Plaintiffs' claims for conversion and unjust enrichment, Magistrate Judge Burke concluded that these claims were preempted by federal patent law, although he recommended that Plaintiffs be allowed to attempt to replead them. D.I. 92 at 12. As to Plaintiffs' claim for negligent misrepresentation, Magistrate Judge Burke concluded that it should be dismissed with prejudice. D.I. 92 at 12. Plaintiffs did not object to the Report and Recommendation, and the Court adopted it.  D.I. 97.

[5] Defendants also moved to dismiss Plaintiffs' repleaded claims for conversion and unjust enrichment. (D.I. 120; D.I. 121). Magistrate Judge Burke issued a Report and Recommendation recommending that Plaintiffs' unjust enrichment claim be dismissed with prejudice (*see* 5/26/2022 minute entry), and the Court adopted this recommendation without objection from Plaintiffs. D.I. 212; D.I. 213. Defendants also moved for summary judgment on both of Plaintiffs' claims to correct inventorship of the '433 patent (*i.e.*, Counts I and II of the SAC) based largely on Plaintiffs' original claim construction position (as deduced from its expert's reports and deposition testimony), which fundamentally misinterpreted two key claim terms ("power option agreement" and "minimum power threshold"), and their resulting failure of proof. *See* D.I. 148; D.I. 149 at 12-22. In addition, Defendants moved for summary judgment on Plaintiffs' conversion claim (Count III of the SAC), *inter alia*, as preempted by federal patent law (*see* D.I. 148; D.I. 149 at 30-36). Although the Court denied summary judgment on the inventorship allegations, the Court granted summary judgment that Plaintiffs' conversion claim was preempted. D.I. 230 at 27; D.I. 231.

On December 23, 2021, Defendants supplemented their response to Plaintiffs' Interrogatory No. 3 (*see* D.I. 239, Plaintiffs' motion *in limine* No. 2, Ex. A at 13-35) providing a detailed timeline of their conception of the different claim elements and claims of the '433 patent correlated to a mountain of documentary evidence supporting their response. Plaintiffs did not even address this evidence in their expert reports or at trial. *See, e.g.*, D.I. 151, Ex. 3 (McClellan Opening Report); D.I. 151, Ex. 4 (McClellan Reply Report).

On October 28, 2022, the Court issued its claim construction ruling wholly adopting both of Defendants' proposed constructions. D.I. 218; D.I. 219. As to "power option agreement," the Court explained that it "cannot contemplate how the patentees could more clearly express their intention to define the disputed term" as Defendants' proposed, whereas the Court found that Plaintiffs' position made the power entity's option "meaningless" and rendered the claims "nonsensical." D.I. 218 at 10-12. Similarly, with respect to "minimum power threshold," the Court again adopted Defendants' proposed construction, finding "the claim language itself ***mandates*** that the load consume at least the minimum power threshold for each associated time interval" and "the specification ***defines*** 'minimum power threshold' in context of requiring the load to use at least the minimum power subject to the option." D.I. 218 at 14-16. The Court also noted Plaintiffs' proposed construction did not "find support in the intrinsic or extrinsic evidence." *Id.*

On October 31, 2022, three days after the Court's claim construction ruling, Defendants sent Plaintiffs a letter "put[ting] Plaintiffs on notice that Plaintiffs do not have a good faith basis to continue to assert their inventorship claims after the Court's claim construction ruling" and advising that "Lancium intends to seek [fees and costs] for any further pursuit by Plaintiffs of their inventorship claims [to] the extent applicable and allowed by law, including but not limited to 35 U.S.C. § 285[ and] the court's inherent powers … ." Ex. 1.

Shortly thereafter, on November 8, 2022, Defendants served Plaintiffs with motion *in limine* No. 1 ("MIL #1"), which sought to exclude opinions and testimony from Plaintiffs' experts, including Dr. Stanley McClellan, that were inconsistent with the Court's claim construction ruling and moved to exclude any new opinions. Ex. 4 (11/8/2022 A. Kaufmann email); *see also* D.I. 239, Ex. 13. Tellingly, Plaintiffs responded—three days after receiving MIL #1 and without seeking leave from the Court or Defendants—by serving a new expert report from Dr. McClellan. *See* D.I. 237, Ex. 1. This forced Defendants to file an emergency motion to strike this "supplemental" report (D.I. 236; D.I. 237), which the Court did, finding that the report offered new opinions, and concluding that Plaintiffs' service of the report well after the close of expert discovery and without seeking leave "**indicates bad faith**."[6] D.I. 247 at 2, 4; *see also* Ex. 2 at 266:20-267:4.

Following trial, the Court ruled in Defendants' favor on both of Plaintiffs' inventorship claims, finding that Storms was not a joint inventor, much less the sole inventor, of the '433 patent. Significantly, the Court found that Defendants conceived of, and reduced to practice, numerous elements of independent claims 1, 17, and 20 before ever communicating with Storms, based on, *inter alia*, the '632 Application (D.I. 262 at FF94-95, 97, 113), and Plaintiffs did not establish that Storms ever conceived of the remaining elements of the independent claims, based largely on Storms' own admissions. *See* D.I. 262 at FF103, 105, 109. The Court also found that Plaintiffs failed to prove that Storms invented claims 2, 3, 5-8, 13-14, and 19 for the same or similar reasons as the independent claims (D.I. 262 at FF117, 119-120, 130), and noted that Plaintiffs themselves asserted that claims 9-12 and 18 were "conventional features well-known in the art" and thus could

---

[6] The Court also granted-in-part Defendants' motion *in limine* No. 1 "to the extent it seeks to preclude Dr. McClellan from testifying inconsistently with the Court's *Markman* opinion" and denied-in-part the motion "as moot based on the Court's November 23rd ordering striking Dr. McClellan's supplemental report." D.I. 252 (11/29/2022 Hr'g Tr.) at 14:1-15.

not make Storms a joint inventor, even if he communicated these claim elements to Defendants before their independent conception. D.I. 262 at FF133. The Court further found that Defendants had conceived of claim 4 before ever communicating with Storms, based at least on another of Defendants' prior patent applications. D.I. 262 at FF125. The Court also found that Plaintiffs' assertion that Storms invented claim 16 failed at least because of Storms' own admissions and the testimony of Plaintiffs' expert, Frank McCamant.[7] D.I. 262 at FF144. And the Court found Dr. McClellan's testimony relating to "the BearBox system operating under a 'power option agreement,' … was **not credible** based on **multiple inconsistencies** between Dr. McClellan's expert reports, deposition testimony, and trial testimony. D.I. 262 at FF101.

## III.    APPLICABLE LAW

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "[A]n 'exceptional case' is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).

The determination of whether a case is "exceptional" is committed to the discretion of the district court considering "the totality of the circumstances." *Id.* at 554. A non-exclusive list of factors that may be considered include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id*. at 554 n.6, quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994). Courts have found the need to deter litigation

---

[7] In their post-trial briefing, Plaintiffs did not present or include any evidence or argument that Storms allegedly invented claim 15 of the '433 patent. *See* D.I. 256; D.I. 260. Accordingly, the Court did not address this claim in its Memorandum (D.I. 262).

based on weak arguments can be reason enough to find a case exceptional and award fees. *See, e.g.*, *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1377-78 (Fed. Cir. 2017). The prevailing party need only establish its entitlement to attorneys' fees by a preponderance of the evidence. *See Octane*, 572 U.S. at 554.

In addition, under the DTSA "if a claim of misappropriation is made in bad faith, which may be established by circumstantial evidence," the Court may "award reasonable attorney's fees to the prevailing party." 18 U.S.C. § 1836(b)(3)(D).

## IV.   ARGUMENT

### A.   Defendants Are The Prevailing Parties

The Court entered final judgment "in favor of Defendants and against Plaintiffs" on Counts I-VI of the SAC. D.I. 267. Defendants are thus the prevailing parties on every claim asserted by Plaintiffs. *Id*.

### B.   Plaintiffs' Continued Assertion Of Their Inventorship Claims After The Court's Claim Construction Ruling Warrants An Award of Defendants' Attorneys' Fees, Costs/Expenses, and Expert Witness Fees Incurred After That Ruling

Plaintiffs' inventorship claims were simply not viable after the Court rejected their claim construction positions with respect to "power option agreement" and "minimum power threshold." Undeterred, Plaintiffs recklessly charged forward, shifted positions, and tried to submit a new expert report. Forcing Defendants to incur the substantial cost and disruption of a trial based on Plaintiffs' meritless inventorship claims, especially in light of Plaintiffs' and their expert's ever-shifting positions, was entirely unjustifiable. Accordingly, the Court should find this case to be exceptional and award Defendants' their reasonable attorneys' fees, costs/expenses, and expert witness costs/fees incurred after the October 28, 2022 claim construction ruling.

### 1.   Plaintiffs' continued assertion of their inventorship claims following the Court's claim construction ruling make this case exceptional

"[A] party cannot assert baseless … claims and must continually assess the soundness of pending … claims, especially after an adverse claim construction." *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1327-29 (Fed. Cir. 2013). As such, courts routinely find patent cases to be exceptional where a party continues the litigation despite a claim construction ruling that renders their claims meritless. *See, e.g.*, *Clinicomp Int'l, Inc. v. Cerner Corp.*, No. 17-2479, 2023 WL 1767008, at *11 (S.D. Cal. Feb. 3, 2023); *Princeton Digital Image Corp. v. Ubisoft Ent'mt SA*, No. 13-335, 2021 WL 4033220, at *5 (D. Del. Sept. 3, 2021). Put succinctly by the Federal Circuit, "a case is exceptional when a party continues to litigate claims that have become baseless in view of a district court's claim construction opinion." *Innovation Scis., LLC v. Amazon.com, Inc.*, 842 F. App'x 555, 557 (Fed. Cir. 2021) (affirming attorney fee award under 35 U.S.C. § 285); *see also AdjustaCam LLC v. Newegg, Inc.*, 861 F.3d 1353, 1362 (Fed. Cir. 2017) (reversing district court and awarding attorneys' fees under 35 U.S.C. § 285 in part because the plaintiff's case "became objectively baseless after the district court's *Markman* order"). This is precisely the situation here.

As an initial matter, Plaintiffs' claim construction positions alone support a finding that this case is exceptional. Courts frequently find that claim construction positions that ignore the intrinsic record, as Plaintiffs did here, are frivolous and warrant a finding of exceptionality. *See Taurus IP*, 726 F.3d at 1327-29 (finding that plaintiff's claim construction position, for which "the written description provides no support," supported finding of exceptionality); *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 918 (Fed. Cir. 2012) ("MarcTec's proposed claim construction, which ignored the entirety of the specification and the prosecution history, and thus was unsupported by the intrinsic record, was frivolous and supports a finding of bad faith."); *accord Lakim Indus., Inc. v. Linzer Prods. Corp.*, No. 12-4976, 2013 WL 1767799, at *5, 7 (C.D.

Cal. Apr. 24, 2013), *aff'd*, 552 F. App'x 989 (Fed. Cir. 2014). As to "power option agreement," "[t]he Court agree[d] with Lancium that the '433 patent specification ***defines the term***," found that "[t]he specification is further ***replete with examples*** supporting Lancium's" construction, and even noted that "***[t]he Court cannot contemplate how the patentees could more clearly express their intention to define the disputed term***" consistent with Defendants' proposed construction. D.I. 218 at 10-11. In comparison, the Court found that Plaintiffs' position would make the power entity's option "meaningless" and render the claims "nonsensical." *Id.* at 11-12.

The Court expressed similar logic regarding "minimum power threshold," finding "the claim language itself ***mandates*** that the load consume at least the minimum power threshold for each associated time interval" and agreeing with Defendants "that ***the specification defines 'minimum power threshold'*** in context of requiring the load to use at least the minimum power subject to the option," and "[t]he '433 patent's ***written description and embodiments consistently use the term***" in line with Defendants' proposed construction. D.I. 218 at 14-15. In juxtaposition, the Court found that Plaintiffs' proposed construction included a word that "does not appear in the claim language of the '433 patent[,] [n]or does the Court find support in the intrinsic or extrinsic evidence" for their proposed construction. *Id.* at 15-16. Thus, Plaintiffs' meritless claim construction positions alone warrant a finding that this is an exceptional case.

But Plaintiffs' baseless claim construction positions are only the tip of their exceptional conduct iceberg. Immediately following the Court's ruling, Defendants sent Plaintiffs' lead counsel a letter advising him that "Plaintiffs do not have a good faith basis to continue to assert their inventorship claims after the Court's claim construction ruling" and that "Lancium intends to seek [fees and costs] for any further pursuit by Plaintiffs of their inventorship claims [to] the extent applicable and allowed by law, including but not limited to 35 U.S.C. § 285, [and] the court's

inherent powers." Ex. 1. Plaintiffs, however, did not respond to this letter. *See Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1358 (Fed. Cir. 2019) (explaining a notice letter "followed by continuation of litigation, can be a factor in justifying an award of attorney's fees"); *accord Nat'l Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc*., 676 F. App'x 967, 973 (Fed. Cir. 2017); *Clinicomp*, 2023 WL 1767008, at *7. A short time later, fearing Plaintiffs would continue to play fast and loose with their expert's opinions, Defendants served MIL #1 to exclude: (1) any expert opinions or testimony, including from Dr. McClellan, inconsistent with the Court's claim construction ruling; and (2) any new opinions outside the scope of Plaintiffs' experts' reports. D.I. 239, Ex. 13 (Defendants' MIL #1); *see also* Ex. 4. This time Plaintiffs did respond.

Plaintiffs' response, however, compounded their already exceptional conduct by improperly (without leave or notice) offering a newly-minted, eleventh-hour "supplemental" expert report trying to fit their inventorship theory into the Court's claim construction. This improper and highly prejudicial tactic necessitated that Defendants file an emergency motion to strike (D.I. 236; D.I. 237) and consumed Defendants' counsels' valuable trial preparation time. In granting that motion, the Court stated "it is clear that ***Dr. McClellan is offering new legal theories and opinions*** …" because "Dr. McClellan was previously of the opinion that the load, not the power entity, held the option in a power option agreement."[8] D.I. 247 at 2. The Court further found that even though Plaintiffs served the supplemental report over five months after the close of expert discovery and "nearly three weeks before the start of a three day bench trial … in contravention of

---

[8] Similarly, at trial the Court noted that "what I am clear on is that – a couple of things. Dr. McClellan was previously of the opinion that the load, not the power entity, held the option in the Power Option Agreement [and] that Dr. McClellan was previously of the opinion that a load was not required to use the minimum power threshold. And that thus he, in his opening report, in his reply report, did not explain how BearBox's system operated by maintaining a minimum amount of power, a load you must use during associated time intervals (*i.e.*, the minimum power threshold as defined by the Power Option Agreement"). Ex. 2 at 266:20-267:4.

the Court's Scheduling Order, BearBox neither sought leave of the Court or consent from Lancium to serve Dr. McClellan's Supplemental Report," which "***indicates bad faith***." D.I. 247 at 4.

Finally, the Court's post-trial findings of fact confirm that the claim construction ruling rendered Plaintiffs' inventorship claims meritless and their continued litigation of those claims was unjustifiable and make this case exceptional. The Court, in fact, found that Storms' ***own admissions*** about his email to McNamara—the only communication Plaintiffs relied on for their inventorship claims—undermined these claims. In particular, as to claim elements [b2] and [b3], which require a "power option agreement" and "minimum power thresholds," the Court found:

- "the BearBox Spec Sheet has no indication that a power option agreement, as construed by the Court, exists between the power entity and the load. In fact, ***Storms admitted*** that the BearBox Spec Sheet (i) does not indicate whether the BearBox System requires a certain amount of power to be used by the system, (ii) does not indicate that the BearBox System must use at least a specified amount of power for a specified period of time, and (iii) does not indicate that the BearBox System measured the actual amount of power the system used." (D.I. 262 at FF103);

- "there is no indication that a power option agreement, as construed by the Court, exists between the power entity and the load. In fact, ***Storms admitted*** that the Storms' Data File does not indicate whether the BearBox System requires a certain amount of power to be used by the system and does not indicate that the BearBox System must use at least a specified amount of power for a specified period of time. … [and] ***Storms conceded*** that the Storms' Data File was not concerned with maintaining the load above a certain power level because the intent of the BearBox System was that the load would run at 100% if it was profitable to mine and 0% if it was more profitable to sell power back." (D.I. 262 at FF105); and

- "there is no evidence establishing that Storms' Diagram determines a power consumption target that is equal to or greater than the minimum power threshold associated with each time interval. In fact, ***Storms admitted*** that Storms' Diagram does not indicate that the BearBox System must use at least a specified amount of power for a specified period of time." (D.I. 262 at FF109).

Moreover, the Court found the Defendants' '632 Application—which Plaintiffs have known about since Defendants' Answer and Counterclaims to the original Complaint (D.I. 13 at ¶¶ 9-10, 25-36, 61-82)—shows that Defendants conceived of claim elements [a], [b], [b1], and [b4] before ever

meeting or communicating with Plaintiffs. D.I. 262 at FF94-95, 97, 113. Likewise, the Court found that Storms' own admissions and Defendants' earlier published patent applications, including the '632 Application, establish that Storms is not an inventor of any of the '433 patent's dependent claims that Plaintiffs alleged were inventive.[9] *See* D.I. 262 at FF117, 119-120, 125, 130, 144.

Put simply, Plaintiffs knew or should have known that they had no good faith basis to continue to assert their inventorship claims after the Court ruled against them in claim construction. But rather than acknowledge this reality, Plaintiffs—through their expert—flip-flopped, asserting brand new theories that they disingenuously attempted to pass off as a "supplement" to their previous positions. D.I. 247 at 2 ("it is clear that Dr. McClellan is offering new legal theories and opinions"). And after the Court rejected their flip-flop, they nonetheless barreled on to trial with their meritless claims. This is textbook exceptional conduct and should be discouraged. That inventorship must be proven by "clear and convincing evidence" further highlights Plaintiffs' bad faith in continuing to litigate those claims after the Court's claim construction ruling. *Scott v. Zimmer, Inc.*, 889 F. Supp. 2d 657, 662 (D. Del. 2012), quoting *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358 (Fed. Cir. 2004). Defendants respectfully request that the Court find that this case "stands out from others with respect to the substantive strength" of Plaintiffs' "litigating position (considering both the governing law and the facts of the case)" as well as "the unreasonable manner in which the case was litigated" and is exceptional (*see Octane*, 572 U.S. at 554) and award Defendants their fees relating to Plaintiffs' continued assertion of inventorship claims after October 28, 2022, including the entirety of Defendants' pre-trial and trial fees.

---

[9] As the Court noted, Plaintiffs asserted that claims 9-12, and 18 were "conventional features well-known in the art" and thus could not make Storms a joint inventor, even if he communicated these claim elements to Defendants before their independent conception. D.I. 262 at FF133. Plaintiffs knew or should have known Storms could not be the sole inventor for the same reason.

2. **The Court should award Defendants their post-claim construction costs/expenses under § 285, including trial costs/expenses**

"The purpose of § 285 is, in a proper case and in the discretion of the trial judge, to compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit." *Central Soya Co., Inc. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983) (awarding expenses in addition to attorneys' fees). Accordingly, "[b]eyond attorney fees, the award of expenses is also properly within the scope of § 285." *Vehicle Interface Techs., LLC v. Jaguar Land Rover N. Am., LLC*, No. 12-1285, 2016 WL 3436396, at *5 (D. Del. June 15, 2016), quoting *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 130 F. Supp. 3d 1331, 1337, 1341 (C.D. Cal. 2015); *see also Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1391 (Fed. Cir. 2008) (affirming award of "attorney fees and related expenses" under § 285); *Maxwell v. Angel-Etts of California, Inc.*, 53 Fed. App'x 561, 569 (Fed. Cir. 2002) (explaining that an award under § 285 may include "expenses in addition to attorney fees"); *Drone Techs., Inc. v. Parrot S.A.*, No. 14-111, 2015 WL 4545291, at *10 (W.D. Pa. July 21, 2015) (recommending award of expenses under § 285). As such, "[c]ourts may award reimbursement of certain expenses when the expenses are reasonable, necessary to the prosecution of the litigation, and adequately documented. These expenses normally include those related to travel, food, lodging, telephone, mail, photocopying, facsimile, courier, filing fees, deposition transcripts, subpoena services, and other related services." *Vehicle Interface Techs.*, 2016 WL 3436396, at *5, quoting *Philips Elecs. N. Am. Corp. v. Compo Micro Tech, Inc.*, No. 02-123, 2006 WL 3020724, at *6 (D. Del. Oct. 23, 2006) (citations omitted). Thus, Defendants respectfully request that Court include such recognized expenses within the § 285 award.[10]

---

[10] Defendants also reserve the right, and intend, to seek their taxable costs under Fed. R. Civ. P. 54(d)(1) and Local Rule 54.1, but for simplicity and to the extent any costs/expenses are not included in the L.R. 54.1 award, Defendants also request their costs here.

### 3.    The Court should award Defendants their post-claim construction expert witness fees

"[A] district court may invoke its inherent power to impose sanctions in the form of reasonable expert fees in excess of what is provided for by statute." *Takeda*, 549 F.3d at 1391 (affirming award of expert fees); *see also MarcTec*, 664 F.3d at 921-922 (same); *Dexcom, Inc. v. AgaMatrix, Inc.*, No. 16-5947, 2018 WL 11350029, at *11 (C.D. Cal. May 9, 2018) (awarding "reasonable expert fees, expenses, and non-taxable costs"), vacated due to settlement by Ex. 5, *Dexcom, Inc. v. AgaMatrix*, No. 16-5947, D.I. 358 (C.D. Cal. Apr. 2, 2020); *Thermolife Int'l, LLC v. Myogenix Corp.*, No. 13-651, 2018 WL 325025, at *14 (S.D. Cal. Jan. 8, 2018) (awarding expert fees), *aff'd*, 922 F.3d 1347, 1350 (Fed. Cir. 2019). "The use of this inherent power is reserved for cases with a finding of fraud or abuse of the judicial process," such as "bad faith that cannot be otherwise reached by rules or statutes." *Takeda*, 549 F.3d at 1391 (quotations/citations omitted).

*Dexcom, Inc. v. AgaMatrix, Inc.* is instructive. There the district court awarded expert witness fees to the defendant, finding that:

> While the Court has not found that Dexcom's case was entirely unreasonable at the time it was filed, Plaintiff had no objective basis for continuing to assert infringement following the Court's *Markman* order. Its decision to continue litigating the case, coupled with its vague and ambiguous infringement contentions demonstrate that Plaintiff acted in bad faith.

*Dexcom*, 2018 WL 11350029, at *11. Similarly, Plaintiffs here had no objective basis to continue asserting their inventorship claims after the Court issued its claim construction ruling. The Court's ruling striking Dr. McClellan's untimely supplemental expert report also already found that "BearBox's disregard of the express terms of the Court's Scheduling Order indicates bad faith … ." D.I. 247 at 4. And Plaintiffs' assertions that the claim constructions adopted by the Court were "not dispositive" despite Storms' fatal admissions to the contrary further indicate bad faith. *See, e.g.*, Ex. 6 (10/20/22 Hr'g Tr.) at 34:6-12; D.I. 176 at 23 (asserting "Storms' BearBox system

literally meets each aspect of these limitations, even if Lancium's proposed construction were not modified"). Moreover, Plaintiffs' decision to continue the litigation without a legitimate basis, including by presenting non-credible expert testimony from Dr. McClellan at trial, forced Defendants to incur substantial expert witness fees. Indeed, Dr. McClellan's trial testimony, which the Court found to be "not credible based on multiple inconsistencies between Dr. McClellan's expert reports, deposition testimony, and trial testimony" (D.I. 262 at FF101), required Defendants to present their own rebuttal expert testimony from Mr. Baer and Dr. Ehsani, which the Court repeatedly found "more credible" than Dr. McClellan's testimony. D.I. 262 at FF42, 79, 113, 125, 144. Thus, the Court should award Defendants' their expert witness fees incurred after the Court's claim construction ruling.

### C. Defendants Should Be Awarded Their Reasonable Attorneys' Fees, Costs/Expenses, and Expert Witness Fees for Litigating Plaintiffs' Claim That Austin Storms Was the Sole Inventor of the '433 Patent

As addressed above, the Court found that Defendants' own publicly available '632 Application demonstrates their conception and reduction to practice of numerous claim elements in the '433 patent long before Plaintiffs ever met or communicated with Defendants and thus is fatal to Plaintiffs' claim that Storms is the sole inventor of the '433. D.I. 262 at FF94-95, 97, 113, 117, 130, 144. Moreover, the claim elements of the '433 patent that are taught by the '632 Application do not include the "power option agreement" or "minimum power threshold" terms construed by the Court, so claim construction was not needed for Plaintiffs to recognize the '632 Application's significance to their sole inventorship claim.

Defendants specifically informed Plaintiffs of the '632 Application and its relevance to this case from the very beginning, in their Answer and Counterclaims to the original Complaint. D.I. 13 at 27-28, 33, 35-37, 39-48. At that time, Defendants described in great detail the disclosures in the '632 Application and their overlap with Plaintiffs' alleged technology, and Defendants even

identified the '632 Application as a basis for their first affirmative defense against Plaintiffs'
inventorship claims. D.I. 13 at First Affirmative Defense, ¶¶ 61-82. But not only did Plaintiffs
continue to litigate their sole inventorship claim from this point, they affirmatively re-asserted it
*twice* in their first and second amended complaints.[11] D.I. 19; D.I. 103.

 Significantly, during discovery, Plaintiffs also admitted that before filing this lawsuit they
were not even aware of the '632 Application or *any* of Defendants' other patents. D.I. 151, Ex. 20
at 62-63 (6/25/21 BearBox Response to Lancium's Interrogatory Nos. 6 & 7). This demonstrates
an astounding failure to conduct even a cursory pre-filing investigation prior to publicly and falsely
proclaiming that "Defendants stole the BearBox Technology from Plaintiffs." D.I. 1 at ¶ 4. And
"[i]nadequacy of pre-filing preparation may be relevant to the 'exceptional' case question."
*Homeland Housewares LLC v. Sorensen R&D Trust*, No. 11-3720, 2013 WL 12126217, at *6
(C.D. Cal. June 27, 2013) (awarding attorneys' fees under 35 U.S.C. § 285), quoting *Epcon Gas
Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1035 (Fed. Cir. 2002). Had Plaintiffs
bothered to conduct a cursory search of Defendants' publicly available patent filings before filing
this lawsuit, they would or should have learned of at least the '632 Application and never brought
their meritless sole inventorship claim. This further supports a finding that this case is exceptional.
*See WPEM, LLC v. SOTI Inc.*, 837 F. App'x 773, 774 (Fed. Cir. 2020) (affirming award of
attorneys' fees where "frivolous nature" of plaintiff's claim "could have easily been foreseen with
an adequate pre-suit investigation"); *Thermolife*, 922 F.3d at 1350 (affirming attorney fees award
"based on plaintiffs' inadequate pre-suit investigation"); *Dragon Intellectual Property, LLC v.
Dish Network LLC*, No. 13-2066, 2021 WL 3616147, at *6-7 (D. Del. Aug. 16, 2021) (awarding

---

[11] Defendants included similar allegations and affirmative defenses based on the '632 Application
in their answers and counterclaims to Plaintiffs' FAC and SAC. *See* D.I. 28 at ¶¶ 25-36, 61-82,
First Affirmative Defense; D.I. 145 at ¶¶ 25-34, 59-80, First Affirmative Defense.

attorneys' fees in part due to inadequate pre-suit investigation).

Moreover, Defendants in response to Plaintiffs' discovery, provided a timeline cross-referenced to thousands of pages of supporting documents detailing their conception of the various claims and claim elements of the '433 patent. *See* D.I. 239, Plaintiffs' motion *in limine* No. 2, Ex. A at 13-35. Plaintiffs ignored this evidence, and their expert likewise failed to address this evidence in his expert reports or at trial, and even conceded that he "didn't read all of the documents" or "look at all of" the information cited in Dr. Ehsani's report. D.I. 237, Ex 1, Ex. A (McClellan Dep. Tr.) at 278:16-279:18. Bluntly stated, ignoring unfavorable evidence (and/or not providing it to your experts) is classic bad faith. Accordingly, Plaintiffs' decision to maintain their meritless sole inventorship claim after learning about the '632 Application and in the face of Defendants' supplemental discovery response also makes this an exceptional case and warrants an award of attorneys' fees for litigating this claim from the beginning of the case, or at the very least, since Defendants filed their Answer and Counterclaims (D.I. 13).

### D. Defendants Should Be Awarded Their Reasonable Attorneys' Fees Related To The Research And Briefing Of Their Motion To Strike Plaintiffs' Improper Attempt To Reinsert Their Meritless DTSA Claim Two Days Before The Close Of Fact Discovery

The Court should award Defendants their reasonable attorneys' fees incurred for their successful motion to strike Plaintiffs' DTSA claim. The DTSA permits the award of attorneys' fees to prevailing defendants when such claim was brought in "bad faith." *Teetex LLC v. Zeetex, LLC*, No. 20-7092, 2022 WL 2439176, at *4 (N.D. Cal. July 5, 2022) (awarding attorneys' fees to defendant in DTSA claim). And that is what occurred here where Plaintiffs improperly re-inserted their DTSA claim into the case—after voluntarily dropping it—months after the deadline for amending pleadings and without seeking leave.

In granting Defendants' motion to strike the DTSA claim, Magistrate Judge Burke noted that "in terms of when these claims are seeking to be added, we're not just a day or a week or a

month after the deadline for motions to amend has passed; we're many months[,] [w]e're into the late stages of the case so we're long past that deadline." Ex. 3 at 43:23-44:8. Magistrate Judge Burke also found that Plaintiffs' assertion that they did not need to seek leave was meritless because "[i]t's very clear" that they were not permitted to assert such claims in the SAC. Ex. 3 at 41:10-42:13. And the Court previously found that "BearBox's disregard of the express terms of the Court's Scheduling Order indicates bad faith," when granting Defendants' motion to strike Dr. McClellan's supplemental report. D.I. 247 at 4. The same is true here concerning Plaintiffs' disregard of the Court's scheduling order deadline for amending pleadings. *See Teetex*, 2022 WL 2439176, at *4 ("the Court can reasonably infer subjective bad faith from the record in the case").

Moreover, courts have found that DTSA claims that rely on "vague, general allegations" support a finding that they were brought in bad faith. *Id.* And that too is the situation here. Magistrate Judge Burke noted that "I don't know how you could know" that Plaintiffs' original and repleaded DTSA claims were allegedly different because "the plaintiff said very little, almost nothing about what they were actually talking about as to the trade secrets that were at issue." Ex. 3 at 44:9-45:11; *compare* D.I. 1 at ¶¶ 71-78, *with* D.I. 103 (SAC) at ¶¶ 66-74. And in opposing Defendants' motion to strike, "the plaintiffs haven't provided any evidence that" the repleaded claim was based on allegedly newly discovered information, and "plaintiffs haven't articulated to [the Court] or the defendants what are the specific portions of" any documents that allegedly provided new, relevant information. Ex. 3 at 45:12-47:18. Thus, Plaintiffs' conduct in repleading the DTSA claim demonstrates bad faith and Defendants are entitled to their reasonable attorneys' fees incurred as a result of having to move to strike this claim.

## E.  Reasonable Estimate of Defendants' Attorneys' Fees and Costs

Where a prevailing party "has obtained excellent results, [it] should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation."

*Mathis v. Spears*, 857 F.2d 749, 755 (Fed. Cir. 1988), quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (internal quotations omitted)). Pursuant to Fed. R. Civ. P. 54(d)(2)(B)(iii), Defendants' current fair estimate of fees and expenses that it intends to seek if this case is determined to be exceptional are as follows:

| Category | Fair Estimate |
|---|---|
| Attorneys' fees after claim construction ruling | $1,210,785 |
| Costs/expenses after claim construction ruling | $135,410 |
| Expert witness fees after claim construction ruling | $235,485 |
| Attorneys' fees for defending sole inventorship claim prior to claim construction ruling | $671,556 |
| Costs/expenses for defending sole inventorship claim prior to claim construction ruling | $40,037 |
| Expert witness fees for defending sole inventorship claim prior to claim construction ruling | $84,551 |
| Attorneys' fees for motion to strike DTSA claim | $87,449 |

Defendants will also provide an accounting of their fees and expenses however the Court prefers. *See Princeton*, 2021 WL 4033220, at *6 (ordering procedure for determining amount of § 285 award after declaration of exceptionality); *see also* Fed. R. Civ. P. 54(d)(2)(C) ("The court may decide issues of liability for fees before receiving submissions on the value of services."); *id.*, 1993 Advisory Committee Notes ("The rule does not require that the motion be supported at the time of filing with the evidentiary material bearing on the fees. This material must of course be submitted in due course, according to such schedule as the court may direct in light of the circumstances of the case. What is required is the filing of a motion sufficient to alert the adversary and the court that there is a claim for fees, and the amount of such fees (or a fair estimate).")

## V.     CONCLUSION

For the reasons above, the Court should find this case to be exceptional and award Defendants their reasonable attorneys' fees, costs, and expert witness fees.

Dated:  April 19, 2023
**Public Version filed on May 1, 2023**

BARNES & THORNBURG LLP

*/s/ Chad S.C. Stover*
Chad S.C. Stover (No. 4919)
222 Delaware Avenue, Suite 1200
Wilmington, Delaware 19801-1050
Telephone: (302) 300-3474
E-mail: chad.stover@btlaw.com

Mark C. Nelson (admitted *pro hac vice*)
David Lisch (admitted *pro hac vice*)
2121 N. Pearl Street, Suite 700
Dallas, TX  75201
Tel:  (214) 258-4140
E-mail:  mark.nelson@btlaw.com
         david.lisch@btlaw.com

Adam M. Kaufmann (admitted *pro hac vice*)
Darrick Hooker (admitted *pro hac vice*)
Dana Amato Sarros (admitted *pro hac vice*)
One North Wacker Drive, Suite 4400
Chicago, IL 60606
Tel:  (312) 214-8319
Email:  adam.kaufmann@btlaw.com
Email:  darrick.hooker@btlaw.com
Email:  dana.sarros@btlaw.com

*Attorneys for Defendants Lancium LLC, Michael T. McNamara, and Raymond E. Cline Jr.*

21