# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

BEARBOX LLC and AUSTIN STORMS,

          Plaintiffs,

    v.

LANCIUM LLC,
MICHAEL T. MCNAMARA, and
RAYMOND E. CLINE, JR.,

          Defendants.

C.A. No. 21-534-GBW-CJB

## PLAINTIFFS' RESPONSE TO DEFENDANTS'
## MOTION FOR FEES AND EXPENSES

ASHBY & GEDDES
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
amayo@ashbygeddes.com

*Of Counsel:*

Benjamin T. Horton
John R. Labbe
Raymond R. Ricordati, III
John J. Lucas
Chelsea M. Murray
MARSHALL, GERSTEIN & BORUN LLP
233 S. Wacker Drive
6300 Willis Tower
Chicago, IL 60606
(312) 474-6300

*Attorneys for Plaintiffs*
*BearBox LLC and Austin Storms*

Date: May 3, 2023

# TABLE OF CONTENTS

Table of Authorities ................................................................................................ ii

I.  Introduction .................................................................................................... 1

II.  Statement of Facts .......................................................................................... 2

III.  Applicable Law ............................................................................................... 6

IV.  Argument ........................................................................................................ 7

    A.  BearBox's sole inventorship claim from the outset of the case was
reasonable ............................................................................................. 7

    B.  BearBox's pursuit of sole and joint inventorship following claim
construction and denial of Lancium's motion for summary judgment was
reasonable ........................................................................................... 11

    C.  The Court's construction of two claim terms did not make BearBox's joint
inventorship case exceptional ............................................................. 16

    D.  Lancium is not entitled to its costs and expenses under § 285 ............ 17

    E.  Lancium is not entitled to an award of its expert witness fees under the
Court's inherent power ....................................................................... 17

    F.  Lancium is not entitled to attorneys' fees under 18 U.S.C. § 1836(b)(3)(D) ....... 18

V.  Conclusion .................................................................................................... 20

# TABLE OF AUTHORITIES

Cases                                                                                                           Page(s)

*Acceleration Bay LLC v. Take-Two Interactive Software, Inc.*,
   2022 WL 2785966 (D. Del. July 15, 2022) .......................................................................... 7, 13

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
   23 F.3d 374 (Fed. Cir. 1994) ................................................................................................ 17

*ArcelorMittal v. AK Steel Corp.*,
   2019 WL 486886 (D. Del. Feb. 7, 2019).............................................................................. 6

*Bos. Sci. Corp. v. Nevro Corp.*,
   415 F. Supp. 3d 482 (D. Del. 2019) ..................................................................................... 19

*Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*,
   858 F.3d 1371 (Fed. Cir. 2017) ........................................................................................... 7, 11

*Dexcom, Inc. v. AgaMatrix, Inc.*,
   2018 WL 11350029 (C.D. Cal. May 9, 2018) ...................................................................... 17

*Eli Lilly & Co. v. Aradigm Corp.*,
   376 F.3d 1352 (Fed. Cir. 2004) ........................................................................................... 16

*EON Corp. IP Holdings, LLC v. FLO TV Inc.*,
   2014 WL 2196418 (D. Del. May 27, 2014) ......................................................................... 7

*Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prod., Inc.*,
   790 F.3d 1369 (Fed. Cir. 2015) ........................................................................................... 7, 8, 12

*Golden Bridge Tech., Inc. v. Apple Inc.*,
   2013 WL 1431652 (D. Del. Apr. 9, 2013) ........................................................................... 15

*Home Semiconductor Corp. v. Samsung Elecs. Co.*,
   2019 WL 2135858 (D. Del. May 16, 2019) ......................................................................... 18

*Intell. Ventures I LLC v. Trend Micro Inc.*,
   944 F.3d 1380 (Fed. Cir. 2019) ........................................................................................... 16

*Intell. Ventures II LLC v. Motorola Mobility LLC*,
   692 F. App'x 626 (Fed. Cir. 2017)....................................................................................... 10

*Loken-Flack, LLC v. Novozymes Bioag, Inc.*,
   2015 WL 455769 (D. Colo. Jan. 27, 2015) ......................................................................... 13

*Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*,
   603 F.3d 943 (Fed. Cir. 2010) ............................................................................... 12

*Munchkin, Inc. v. Luv n' Care, Ltd.*,
   960 F.3d 1373 (Fed. Cir. 2020) ............................................................................... 6

*Netlist, Inc. v. Diablo Techs., Inc.*,
   2015 WL 5157315 (N.D. Cal. Sept. 1, 2015)......................................................... 9

*Oakwood Lab'ys LLC v. Thanoo*,
   999 F.3d 892 (3d Cir. 2021) ................................................................................... 19

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.*,
   572 U.S. 545 (2014) ............................................................................................ 6, 7

*Pannu v. Iolab Corp.*,
   155 F.3d 1344 (Fed. Cir. 1998) ............................................................................... 14

*Peloton Interactive, Inc. v. ICON Health & Fitness, Inc.*,
   2021 WL 3794829 (D. Del. Aug. 26, 2021)........................................................... 19

*Philips Elecs. N. Am. Corp. v. Compo Micro Tech, Inc.*,
   2006 WL 3020724 (D. Del. Oct. 23, 2006) ........................................................... 17

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
   585 F.Supp.2d 568 (D. Del. 2008) ......................................................................... 15

*Price v. Symsek*,
   988 F.2d 1187 (Fed. Cir. 1993) ............................................................................... 10

*ResQNet.com, Inc. v. Lansa, Inc.*,
   594 F.3d 860 (Fed. Cir. 2010) ............................................................................... 12

*Seoul Viosys Co. v. P3 Int'l Corp.*,
   2021 WL 4754789 (S.D.N.Y. Oct. 12, 2021)..................................................... 7, 12

*Stone Basket Innovations, LLC v. Cook Med. LLC*,
   892 F.3d 1175 (Fed. Cir. 2018) ............................................................................... 6

*Sun Pharm. Indus. Ltd. v. Saptalis Pharms., LLC*,
   2020 WL 5077412 (D. Del. Aug. 26, 2020)..................................................... 6, 7, 11

*Teetex LLC v. Zeetex, LLC*,
   2022 WL 2439176 (N.D. Cal. July 5, 2022) ........................................................... 20

*UCP Int'l Co. Ltd. v. Balsam Brands Inc.*,
  785 F. App'x 849 (Fed. Cir. 2019)..........................................................................17

*Ultravision Techs., LLC v. GoVision, LLC*,
  2021 WL 5154156 (E.D. Tex. Sept. 24, 2021)............................................................7

*Univ. of Utah v. Max-Planck-Gesellschaft zur Foerderung der Wissenschaften e.V.*,
  851 F.3d 1317 (Fed. Cir. 2017)................................................................................14

*Universal Stabilization Techs., Inc. v. Advanced Bionutrition Corp.*,
  2018 WL 6181479 (S.D. Cal. Nov. 27, 2018)............................................................16

*Vectura Ltd. v. GlaxoSmithKline, LLC*,
  2019 WL 1436296 (D. Del. Apr. 1, 2019) .................................................................15

*Vehicle Interface Techs., LLC v. Jaguar Land Rover N. Am.*, LLC, No. CV 12-1285-RGA,
  2016 WL 3436396(D. Del. June 15, 2016) ..............................................................17

Statutes

18 U.S.C. § 1836(b)(3)(D)........................................................................... 1, 18, 19

35 U.S.C. 285 ............................................................................................... 6, 7

I.      **INTRODUCTION**

This is not an exceptional case. The Court denied summary judgment on both sole and

joint inventorship finding genuine issues of material fact that needed resolution at trial even after

adopting Lancium's claim constructions. Although Lancium maintains that the Court's claim

constructions made this a "baseless" case (and therefore exceptional for BearBox to pursue),

Lancium never sought claim construction until summary judgment, and even then, the Court

denied summary judgment.

Even under Lancium's claim constructions, BearBox presented evidence that Storms

conceived (and communicated) a system where a power entity held an option to deliver power to

a load or reduce power to a load in a specific amount over various time intervals. BearBox relied

on testimony and corroborating documents to support its positions. BearBox's sole inventorship

claim was not baseless due to Lancium's '632 Application. Lancium did not even include this

argument in its summary judgment motion, nor did the Court adopt it in its final decision.

Further, Lancium essentially concedes that BearBox's joint inventorship claim was a closer call

than sole inventorship but does not explain how a relatively weaker sole inventorship claim made

the entire case exceptional, a required showing for a fees motion.

Finally, Lancium's stretches to contend that it became "undeniably clear" that BearBox

would lose on both joint and sole inventorship after the Court's Markman ruling given that the

Court promptly denied summary judgment on *both* sole and joint inventorship finding that

BearBox "present[s] ample analysis of, and support for, [its] claim of sole inventorship," that

"BearBox has demonstrated the potential for adequate corroboration," and "the present record is

replete with testimony and documents that could support a factfinder's reasonable inference that

Austin Storms conceived of the '433 patent's subject matter, as properly construed by this Court,

prior to Lancium's purported conception."

## II.     STATEMENT OF FACTS

BearBox filed its Original Complaint ("OC") on April 14, 2021, claiming correction of

inventorship under sole inventor or joint inventor theories, conversion, unjust enrichment,

negligent misrepresentation, and trade secret misappropriation. D.I. 1. On May 24, 2021,

BearBox filed a First Amended Complaint ("FAC") reiterating its claims, though dropping trade

secret misappropriation. BearBox later filed a Second Amended Complaint ("SAC") repleading

conversion and unjust enrichment and adding new trade secret misappropriation claims.[1]

**Correction of Inventorship**. In both the OC and the FAC (and later the SAC), Storms

alleged his conception of the claimed inventions in "late 2018 and early 2019," and then a

meeting between Storms and McNamara, including "conversations" and later "text messages"

leading to a BearBox email to Lancium on May 9, 2019 that attached BearBox's "system

diagrams, component specifications, and modeled data sets" that disclosed the subject matter

Lancium later claimed in the '433 patent. D.I. 1, 19, 103.

During discovery BearBox asked Lancium to describe its purported independent

conception citing evidence on a claim-by-claim, element-by-element basis, including "the dates

of each of these activities." Six months later Lancium confirmed that it did not conceive of the

full combination, or even sub-combinations, of limitations until August 2019 to October 2019,

after Storms conceived and communicated his inventions to Lancium. Ex. 11 TX005; D.I. 257 at

¶ 58.

At trial, BearBox introduced evidence of Storms' conception, including 20 source code

files, 27 drawings and diagrams, 11 photographs of components of BearBox's prototype, and 3

sets of whiteboard notes, all dated late 2018 to early 2019. D.I. 257 at ¶¶ 1-11. BearBox also

---

[1] In its SAC, BearBox repleaded its conversion and unjust enrichment counts as permitted by the Court. D.I. 103. Lancium again moved to dismiss those counts under Rule 12(b)(6), this time under new theories; Lancium no longer argued preemption, rather that there can be no conversion under Louisiana law because BearBox was not deprived of tangible property. D.I. 121.  On May 26, 2022, Lancium's motion to dismiss conversion was denied. D.I. 143.

introduced communications between BearBox and Lancium, including a dinner meeting following a Bitcoin conference, text messages, and an email to one named inventor (McNamara), who forwarded it to the other named inventor (Cline). BearBox alleged that Storms' email communicated Storms' inventions through an attached diagram, specification sheet, and data file. D.I. 257 at ¶ 12.

**Claim Construction and Summary Judgment**. At the outset, Lancium proposed a non-patent scheduling order because claim construction was not necessary in this case. D.I. 186 at Ex. T. The parties compromised that "by August 27, 2021, the parties shall determine whether or not claim construction is necessary and further notify the Court of their decision." D.I. 35 ¶ 8. The Court, at BearBox's request and over Lancium's objection, extended that deadline to October 15, 2021. D.I. 54 ("[Lancium does] not believe claim construction will be needed, and [Lancium] oppose[s] [BearBox's] attempt to extend the deadline"). On October 15, 2021, Lancium again told the Court it "do[es] not request claim construction at this time." D.I. 63.

On November 9, 2021, BearBox responded to Lancium's interrogatories providing Storms' conception on a claim-by-claim, element-by-element basis with narratives and document citations. BearBox's citations include source code files, images, drawings, notes, data, and correspondence, for each element of all 20 claims of the '433 patent, reflecting BearBox's understanding of the scope of each claim term. Ex. 1. On November 22, 2021, BearBox further explained its understanding of "power option agreement" as "an agreement between an entity associated with the delivery of power to the load and the load," and cited Lancium's statements that "demand response contracts are power option agreements" and the limitation would be met "by entering into 'demand response' contracts." Ex. 2 at 16; Ex. 4 TX018; Ex. 19 TX017. The parties exchanged technical expert reports on April 5, 2022, May 6, 2022, and May 20, 2022.

On June 15, 2022, Lancium moved for summary judgment on sole and joint inventorship

and for the first time raised a claim construction dispute for "power option agreement" and "minimum power threshold," arguing that "it was only during the deposition of Plaintiffs' expert … that Defendants learned Plaintiffs' proposed plain and ordinary" meanings. D.I. 149; D.I. 206 at 1. BearBox disagreed. Lancium argued that the "proper construction" of those terms was dispositive of BearBox's sole and joint inventorship claims on summary judgment. See, e.g., D.I. 149 at 9; see also Ex. 3, at 40:14-15 ("if [Defendants'] constructions are adopted, we think it is dispositive on summary judgment"). BearBox disagreed. D.I. 176 at 17, 23-25.

During briefing, BearBox corrected an internal inconsistency with Lancium's proposed construction for "power option agreement," which Lancium conceded, and BearBox clarified that "minimum power thresholds" may be zero (though not all zero) which Lancium acknowledged, and the Court accepted. D.I. 176 at 17-18. At the Markman hearing, BearBox proposed compromise constructions that largely tracked Lancium's proposals but eliminated what BearBox considered redundancies, and further sought to exclude a limitation that the claims require power to actually be used or consumed, though BearBox acknowledged that "the typical context in which the invention would be used is one in which power is consumed," only that the claims "stop[] short of [requiring use]." Ex. 3 at 8:17-9:7.

When asked about adopting BearBox's compromise constructions, Lancium said, "We certainly would consider it." Ex. 3 at 21:7-18. The Court ordered the parties to "meet and confer about the proposed compromise" to try "to reach agreement," and that the Court would "hold off on issuing a ruling until we hear back." Ex. 3 at 42:22-43:10. The parties later filed a letter stating that Lancium "could not agree to BearBox's claim constructions." D.I. 215.

On October 28, 2022, the Court issued its Markman ruling, adopting Lancium's proposals (including the compromised portion and BearBox's clarifications) for "power option agreement" and "minimum power threshold." D.I. 218. On October 31, 2022, Lancium wrote to

BearBox stating, among other things, that "Plaintiffs do not have a good faith basis to continue to assert their inventorship claims after the Court's claim construction ruling." D.I. 271 at Ex. 1. On November 14, 2022, the Court applied its construction of "power option agreement" and "minimum power thresholds," and denied Lancium's motion for summary judgment. See, e.g., D.I. 231 at 6 ("the present record is replete with testimony and documents that could support a factfinder's reasonable inference that Austin Storms conceived of the '433 patent's subject matter, as properly construed by this Court, prior to Lancium's purported conception.").[2]

Following denial of summary judgment, during a pretrial meet and confer on November 3, 2022, Lancium said BearBox's expert, Dr. McClellan, may not consider the Court's Markman order in his testimony at all. Ex. 5, Nov. 11, 2022 Email. BearBox argued McClellan may consider the Markman order if his opinions are not inconsistent. On November 11, 2022, BearBox served a supplement to McClellan's reports to "reiterate[] and clarif[y] some of [his] earlier analysis … in consideration of the Markman Order," and offered "a schedule for [Lancium's] expert to respond to the supplement." Ex. 6.

Lancium instead moved to strike McClellan's supplement, stating that BearBox's justification, "to apply the language of the Court's claim construction," was meritless. D.I. 237. BearBox opposed, arguing that McClellan not only had a right but an obligation to consider the Court's claim construction, that his supplemental report clarifies his existing opinions but with the benefit of the Court's claim construction, and that Lancium's delay in raising a claim construction dispute was the origin of any unfortunate timing. D.I. 241. On November 23, 2022, the Court granted Lancium's motion to strike. D.I. 247.

---

[2] While the Court denied summary judgment of BearBox's sole and joint inventorship claims, the Court granted summary judgment of BearBox's conversion claim, finding it preempted by federal patent law. Lancium also argued that conversion should be disposed because the claim was barred by the statute of limitations. The Court was "not persuaded" by Lancium's statute of limitations position, finding Lancium's citation to the record "selective" and that BearBox's claim "created no surprise or prejudice to Lancium." D.I. 231 at 21.

At the pretrial conference, the Court granted-in-part and denied-in-part Lancium's motion in-limine seeking to preclude McClellan's testimony, stating that McClellan may testify, just not "inconsistently with the Court's Markman opinion." Ex. 7 at 14:6-12. At trial Lancium again argued that McClellan cannot consider the Court's claim construction, to which the Court responded, "I'm not so sure I went so far as to how you're characterizing it now," and found "BearBox was able to cite to places in his expert report that arguably you can find some basis in his opinion," and that McClellan could, in fact, consider the Court's claim construction. Ex. 8, at 252:7-254:9, 266:9-17, 333:7-334:5. While ultimately the Court found inconsistencies in McClellan's testimony regarding "power option agreement," the Court allowed his testimony.

## III.    APPLICABLE LAW

A case is "exceptional" under § 285 only if it is "uncommon, rare, or not ordinary" because it "stands out from others with respect to the substantive strength of a party's litigating position … or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 548, 554 (2014). Even then, to support a fee award, a case must be "so exceptional" as to justify an award of fees. *ArcelorMittal v. AK Steel Corp.*, No. CV 10-050 (MN), 2019 WL 486886, at *20 (D. Del. Feb. 7, 2019). The "legislative purpose behind 35 U.S.C. 285 is to prevent a party from suffering a gross injustice, not to punish a party for losing." *Sun Pharm. Indus. Ltd. v. Saptalis Pharms., LLC*, No. CV 18-648-WCB, 2020 WL 5077412, at *2 (D. Del. Aug. 26, 2020) (citing *Munchkin, Inc. v. Luv n' Care, Ltd.*, 960 F.3d 1373, 1378 (Fed. Cir. 2020) (reversing district court fee award)). "[A] strong or even correct litigating position is not the standard by which we assess exceptionality," and a party's positions "need not be correct" to be found reasonable and unexceptional. *Stone Basket Innovations, LLC v. Cook Med. LLC*, 892 F.3d 1175, 1180 (Fed. Cir. 2018). Instead, courts consider the "totality of the circumstances," including "frivolousness, motivation, objective unreasonableness," and the

need for "compensation and deterrence," as well as "the conduct of the movant." *Octane*, 572 U.S. at 554 n.6; *Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prod., Inc.*, 790 F.3d 1369, 1373 (Fed. Cir. 2015); see also *Seoul Viosys Co. v. P3 Int'l Corp.*, No. 16-CV-6276 (AJN), 2021 WL 4754789, at *2 (S.D.N.Y. Oct. 12, 2021), aff'd, No. 2022-1145, 2022 WL 4103289 (Fed. Cir. Sept. 8, 2022) (movant's delays weighed against fee award). Courts have declined to find cases exceptional under § 285, generally, for a variety of reasons, including the difficulty in litigating complex, evolving areas of law, *EON Corp. IP Holdings, LLC v. FLO TV Inc.*, No. CV 10-812-RGA, 2014 WL 2196418, at *2 (D. Del. May 27, 2014), or issues of fact and credibility that need resolution at trial, *Ultravision Techs., LLC v. GoVision, LLC*, No. 2:18-CV-00100-JRG, 2021 WL 5154156, at *4 (E.D. Tex. Sept. 24, 2021).

Courts deny motions for fees when the losing party defeated a summary judgment motion. *Sun Pharm.*, 2020 WL 5077412, at *2 ("I find no reason to fault [Plaintiff] for taking the positions that I accepted at the summary judgment stage.") (citing *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1376 (Fed. Cir. 2017)); see also *Ultravision*, 2021 WL 5154156, at *4. Courts deny fees even in cases where the non-movant *loses* on summary judgment, with "objectively weak arguments" and "unfavorable claim construction rulings." *Acceleration Bay LLC v. Take-Two Interactive Software, Inc.*, No. CV 16-455-RGA, 2022 WL 2785966, at *2 (D. Del. July 15, 2022) (Plaintiff's case does not "stand out as exceptionally weak; instead, it is often the case in complex litigation that zealous advocates will lose on multiple issues."); see also *Seoul Viosys*, 2021 WL 4754789, at *2 (even if "claim[s] did *not* survive a motion for judgment on the pleadings, courts have been reluctant to shift fees").

## IV.   ARGUMENT

### A.   BearBox's sole inventorship claim from the outset of the case was reasonable

Lancium argues BearBox's sole inventorship case was baseless from the outset for three

reasons: Lancium's May 12, 2021, counterclaims revealed that Lancium's '632 Application described the entirety of the BearBox technology communicated to Lancium; that BearBox did not conduct an adequate pre-filing investigation to locate the '632 Application; and that BearBox ignored Lancium's other conception evidence. BearBox disagrees.

As an initial matter, Lancium's counterclaims did not compare the '632 Application to the BearBox's technology. D.I. 270 at 2. Rather Lancium compared the '632 Application to BearBox's notice-pleading summary of its technology, and Lancium's paraphrasing of a few lines from BearBox documents. D.I. 28 at ¶¶ 61, 66, 76. Even if Lancium did compare all BearBox's evidence to the '632 Application, if Lancium felt the case was "baseless" at that stage, it could have and should have moved to dismiss.

But Lancium did not move to dismiss. In fact, more than a year after its counterclaims, following claim construction and the close of fact discovery, Lancium moved for summary judgment on sole inventorship but did *not* move on any basis related to the '632 Application. D.I. 149. If Lancium truly believed BearBox's sole inventorship claim was "baseless" from the outset Lancium would have pursued summary judgment. *Gaymar Indus.,* 790 F.3d at 1373.

BearBox reasonably relied on its analysis of the deficiencies of Lancium's '632 Application, as well as BearBox's expert, McClellan's, opinion that the '632 Application "differs from Storms' system in at least a few key areas," including that the '632 Application does not teach monitoring Bitcoin mining profitability conditions, for energy prices, over multiple points in time with associated power thresholds. Ex. 9 at 4-5. McClellan also found the term "economic considerations" from the '632 Application conveys only "power price thresholds," and not the Bitcoin mining profitability conditions communicated by Storms. *Id.* The Court's ruling on summary judgment, in fact, rejected Lancium's strongest arguments against sole inventorship. D.I. 231 at 10 ("Lancium disputes material facts that are essential to the resolution of who

conceived of the subject matter of the '433 patent"); *Netlist, Inc. v. Diablo Techs., Inc.*, No. 13-CV-5962-YGR, 2015 WL 5157315, at *1 (N.D. Cal. Sept. 1, 2015), aff'd, 667 F. App'x 774 (Fed. Cir. 2016) (affirming denial of fees in inventorship case even when plaintiff "fail[ed] to present *any* corroborating" documents) (emphasis added).

At trial, McClellan testified that the '632 Application does not teach monitored conditions as claimed in the '433 patent, let alone the specific monitored conditions at issue. Ex. 8 at 376:10-16. BearBox also cross-examined Cline's on the phrase "economic considerations" in the '632 Application and whether the '632 Application actually used words like Bitcoin price, global hashrate, or breakeven calculations, or whether Cline was using a broad phrase to suggest specific teachings were in the document that were not. Ex. 8 at 510:6-21.

When the Court did consider BearBox's evidence alongside the '632 Application, the '632 Application was *not* found to teach the entire scope of BearBox's technology as presented through evidence at trial. See, e.g., D.I. 262. The Court found, for example, that Storms conceived of and communicated monitoring Bitcoin price, hashrate, and network difficulty, day-ahead and real-time energy prices, and calculated a breakeven mining cost. D.I. 262 at 14. The Court, however, in finding that Lancium independently conceived of these elements, relied on Cline's testimony that Lancium did these things "by the time the '632 Application was filed," not that the '632 Application taught these elements. D.I. 262 at 17.

McClellan was not required to review all of the "thousands of pages" of documents Lancium offered during discovery to purportedly support its independent conception. Instead, McClellan's expert testimony at trial focused on Storm's conception and his communications with Lancium. Because Lancium admitted that McNamara and Cline did not conceive the inventions of the patent-in-suit until after the Storms communications, McClellan appropriately focused his analysis on those communications. As discussed above, he also considered

Lancium's earlier patent filings.

In fact, Lancium itself never relied heavily on its "thousands" of pages. Lancium cited 519 documents in a discovery response about conception but not until December 23, 2021. Ex. 10. Many of those documents were cited for background information or support for undisputed elements, e.g. "computing systems," or alleged developments that were not tied to any '433 Patent claim limitations. See, e.g., Ex. 18 TX055 at 15. Lancium introduced only 35 of those documents at trial in support of conception dated prior to Storms' disclosure of May 9, 2019, many with little or no supporting testimony. D.I. 260 at 6; Ex. 8 at 502:1-509:12.

Lancium's approach of citing individual documents is at odds with the law of inventorship which looks to the *combination* of elements (often previously known) that make concepts inventive.[3] *Price v. Symsek*, 988 F.2d 1187, 1196 (Fed. Cir. 1993) (for conception "all of the evidence of record must be collectively evaluated"); *Intell. Ventures II LLC v. Motorola Mobility LLC*, 692 F. App'x 626, 628 (Fed. Cir. 2017) (an "element-focused attack [i]s improper because it is inconsistent with the required rule of reason analysis" for corroboration). Lancium confirmed during discovery that it did not conceive of "some claim elements," "combinations of limitations," or "the full combination of elements" until between August 2019 and October 2019, months after Storms' alleged conception and communications with Lancium. Ex. 11 TX005.

Even Lancium's own expert, Dr. Ehsani, focused only on a single document that Ehsani called the "flash of insight," dated August 27, 2019, that led to Lancium's conception. Ex. 8 at 695:20-697:9; Ex. 12 TX526. That email described a known, conventional element taught to Lancium by someone else. Because even Lancium admits that a known concept can be combined with other concepts when conceiving an invention, it was not improper for BearBox to focus its

---

[3] To the extent Lancium argues that because the '632 Application teaches some elements of some claims of the '433 patent, BearBox could not have conceived of every claim limitation and therefore been the sole inventor, it is of no moment. Sole inventorship is an evaluation of the full combination of claim elements. For example, Lancium does not contend, nor could it, that it was the first to conceive of element [b], i.e. "a control system."

trial presentation on the combination of elements and what Storms communicated to Lancium. BearBox also challenged the independent conception theory with Lancium documents that contradicted Lancium's story, Ex. 8 at 514:10-515:25; Ex. 13 TX169, and cross-examined Cline on the contents and purpose of another document Lancium focused on during trial. Ex. 8 at 513:5-514:6; Ex. 14 TX223.

While ultimately unsuccessful, it was not unreasonable for BearBox to challenge McNamara's and Cline's conception of the claimed inventions, which they admit did not occur until August 2019 to October 2019, only after receiving information from Storms.

**B.    BearBox's pursuit of sole and joint inventorship following claim construction and denial of Lancium's motion for summary judgment was reasonable**

The Court denied summary judgment on BearBox's joint and sole inventorship claims *after* ruling in Lancium's favor on the construction of two claim terms. This finding of genuine issues of material fact is sufficient alone to defeat Lancium's motion for fees, which is largely premised on the incorrect proposition that BearBox's continued pursuit of its inventorship case after claim construction was exceptional. *Sun Pharm.,* 2020 WL 5077412, at *2 ("I find no reason to fault [Plaintiff] for taking the positions that I accepted at the summary judgment stage."); citing *Checkpoint*, 858 F.3d at 1376.

Lancium first argues that BearBox's claim construction positions were "baseless" and "alone support a finding that this case is exceptional." D.I. 270 at 9-10. Up until summary judgment Lancium told BearBox and the Court that claim construction was not necessary; both parties were content to apply the plain meaning. Lancium resisted claim construction after Lancium's allegedly dispositive counterclaims involving the '632 Application, after Lancium served its own complete conception timeline, after BearBox served its conception and communication evidence mapped to the '433 patent claims on an element-by-element basis, and the parties exchanged expert reports. D.I. 241 at 1-3. If claim construction made it "undeniably

clear" that BearBox's entire case was baseless, Lancium should have asked for early claim construction rather than avoid it until the last minute. *Seoul Viosys*, 2021 WL 4754789, at *2; *see also Gaymar Indus.,* 790 F.3d at 1373 ("the conduct of the movant" is relevant to an exceptional case finding).

During briefing, BearBox took issue with Lancium's position as "internally inconsistent" because Lancium's proposal would require use of power the load would not receive and clarified that Lancium's proposal for "minimum power threshold" needed to allow for a minimum power threshold to be zero to be consistent with the specification. D.I. 176 at 17-19. Lancium, in its reply brief, corrected its construction of "power option agreement" fixing the inconsistency BearBox identified, and the Court agreed that a "minimum power threshold" may be zero if they are not all zero. D.I. 195 at 8-9, 11 At the Markman hearing, the parties nearly agreed to compromise constructions that the Court would have entered. Ex. 3, at 21:7-18, 42:23-43:10.

Finally, the Court denied summary judgment after adopting Lancum's proposed claim constructions, finding genuine issues of material fact "essential to the resolution of who conceived of the subject matter of the '433 patent."[4] D.I. 231 at 10; *Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 954 (Fed. Cir. 2010) ("[a]bsent misrepresentation to the court, a party is entitled to rely on a court's denial of summary judgment. . . as an indication that the party's claims were objectively reasonable and suitable for resolution at trial"); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 875 (Fed. Cir. 2010) (reversing fee award, stating "[i]t is significant that the district court declined to grant summary judgment" because "if a party has evidence with respect to a contention that would suffice to

---

[4] Also, about this time, the Court denied Lancium's motion for "disclosure of third-party litigation funding arrangements," finding Lancium's motion was "very untimely," provided "no explanation as to why they did not file the Motion earlier," sought information not relevant "to any claims or defenses," and that it is "inefficient to be making untimely requests for discovery-related information on the eve of trial." D.I. 233; *Gaymar Indus.,* 790 F.3d at 1373 ("To be sure, the conduct of the parties is a relevant factor under Octane's totality-of-the-circumstances inquiry, including the conduct of the movant.").

defeat a motion for summary judgment based thereon, it would have sufficient 'evidentiary support'" to avoid fees). BearBox's claim construction positions were not so "baseless" that they render this case exceptional. Courts have declined to find a case exceptional even when the non-movant's claim construction loss was far more lopsided, and the non-movant later *lost* on summary judgment. *Acceleration Bay*, 2022 WL 2785966, at *2; see also *Loken-Flack, LLC v. Novozymes Bioag, Inc.*, No. 13-CV-01617-MSK-BNB, 2015 WL 455769, at *1-2 (D. Colo. Jan. 27, 2015) (denying fees to patentee who prevailed on summary judgment in a correction of inventorship case finding that, while "weak," the plaintiff's claim was not exceptional).

Even if claim construction made sole inventorship more difficult for BearBox, it was not unreasonable. As mentioned *supra*, BearBox presented evidence that Storms communicated, as construed, both a "power option agreement," and "minimum power thresholds" of zero and non-zero. D.I. 257 at ¶¶ 23-25. Storms system was required to use a minimum amount of power, i.e. 373 kilowatts, or 31 kilowatts for each five-minute time interval. *Id.* at ¶ 26-27. Storms' documents reflected a system where a power entity (a wind farm) held an option to supply power to a load or sell it to the grid, as shown by diagram connections and through prices and revenue in Storms' data file. *Id.* BearBox also introduced evidence of a pipe with a T-coupling that depicted power flowing either to the load or to the grid, indicating the wind farm held the option. D.I. 257 at ¶¶ 28-33. Storms testified that this was reflected in an earlier version of his diagram that identified the dotted line as "RT LMP O*ption*." Ex. 15 TX14.27 (emphasis added). "BearBox also introduced testimony from Storms and McNamara that Storms discussed his technology in the context of a project for Glidepath, a windfarm operator, i.e. evidence of a relationship between a power entity and a load. *Id.* at ¶ 12.

BearBox also introduced evidence of Lancium's interpretation of "power option agreement" and "minimum power thresholds" as ERCOT "demand response contracts." Ex. 8 at

586:12-588:13, Ex. 16 TX17. BearBox's expert, McCamant, testified that demand response contracts were well-known concepts since at least the early 2000s. *Id*. at ¶¶ 45-48. BearBox, then, argued that even if its documents did not explicitly disclose a "power option agreement," Lancium's contribution of well-known "power option agreements" could not make Lancium a co-inventor with Storms. *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1351 (Fed. Cir. 1998) (to be a joint inventor one must "do more than merely explain to the real inventors well-known concepts"). The Court found that BearBox did not meet its burden, but that does not make BearBox's sole inventorship claim unreasonable. *Univ. of Utah v. Max-Planck-Gesellschaft zur Foerderung der Wissenschaften e.V.*, 851 F.3d 1317, 1321–22 (Fed. Cir. 2017) (affirming denial of 285 fees finding that "even though UUtah could not ultimately produce the evidence necessary to win, its inventorship claim was predicated on a valid interpretation" of the law).

Finally, Lancium argues that McClellan's supplement following claim construction was so unreasonable that it supports an exceptional case finding. After claim construction, BearBox was content to go to trial with McClellan's opinions as disclosed in his original reports, as BearBox told the Court at the Markman hearing. Ex. 3 at 34:6-17. Only after Lancium stated during a pretrial meet and confer its intent to preclude McClellan from offering *any* testimony considering the Court's Markman Order did BearBox believe the issue needed resolution. BearBox served McClellan's supplement citing Fed. R. Civ. P. 26(e), which cited no new documents, referenced only his deposition testimony, original reports, and the Court's Markman Order, and offered to meet and confer on a Lancium rebuttal to the supplement. Ex. 6. Lancium instead moved to strike the McClellan supplement; BearBox opposed. D.I. 237, 241.

BearBox believed Lancium's position was inconsistent with the law. Not only should an expert testify with the benefit of a court's claim construction, he is required to do so. Additionally, supplements have been allowed following claim construction as long as that

supplement clarified or expounded upon previously disclosed opinions.[5] Alternatively, even if

the opinions were new, BearBox argued the *Pennypack* factors disfavored striking the

supplement. D.I. 241 at 4. BearBox did not find a single case, nor did Lancium cite one, that

precluded an expert's testimony that considered a court's Markman order when the expert's

opinions were disclosed *prior* to claim construction, with no claim construction dispute pending.

D.I. 237, 241, 242.

Though the Court disagreed with BearBox and struck McClellan's supplement,

BearBox's actions were not unreasonable or so exceptional as to justify fees, let alone the other

sanctions Lancium requests. BearBox's position was that McClellan should be able to offer his

opinions, without being inconsistent with the Court's claim construction as the Federal Circuit

requires. In BearBox's view, this necessarily required McClellan to consider the Court's

Markman order. Lancium disagreed. Ultimately, the Court agreed with BearBox on the

underlying premise, even though the supplement was struck. Ex. 8 at 333:13-334:5 (overruling

Lancium objection to McClellan consideration of Court's claim construction). At trial, the Court

allowed McClellan to testify, but did not find McClellan's testimony on "power option

agreement" to be credible due to inconsistencies. The Court did, however, credit McClellan's

testimony for other findings in BearBox's favor. D.I. 262 at 39-40, 46-47 (crediting McClellan

testimony for Storms conception and communication of the substance of claims 2, 9, and 10).

---

[5] See, e.g., D.I. 241 at 3-4: *Vectura Ltd. v. GlaxoSmithKline, LLC*, No. CV 16-638-RGA, 2019 WL 1436296, at *2 (D. Del. Apr. 1, 2019) (permitting expert supplement that "reiterates his opinions … and elaborated on how he had reached that opinion by providing greater detail.... such an elaboration on his prior [report] is appropriate"). This is particularly true when experts first "offer[] their opinions before the court issue[s] its claim construction." *Golden Bridge Tech., Inc. v. Apple Inc.*, No. CV 10-428-SLR, 2013 WL 1431652, at *3 (D. Del. Apr. 9, 2013). Determining whether an expert's supplement is elaboration or clarification, as opposed to a new opinion, does not require "verbatim consistency," but rather "reasonable synthesis." *Dow Chem. Co. v. Nova Chemicals Corp. (Canada)*, No. CV 05-737-JJF, 2010 WL 2044931, at *2 (D. Del. May 20, 2010) (quoting *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 585 F.Supp.2d 568, 581 (D. Del. 2008)).

### C.     The Court's construction of two claim terms did not make BearBox's joint inventorship case exceptional

Lancium's premise for an exceptional case finding is that the Court's construction of "power option agreement" and "minimum power threshold" made it "undeniably clear" that BearBox's entire inventorship case, even joint inventorship, became "not viable." D.I. 270 at 8. In addition to the reasons discussed *supra*, Lancium has not explained how the construction of "power option agreement" and minimum power threshold" made it "undeniably clear" BearBox could not have contributed other elements to one or more claims in the '433 patent. There is no "lower limit on the quantum or quality of the inventive contribution required for a person to qualify as a joint inventor," and a meaningful contribution to the conception of even one claim in a patent can suffice to establish inventorship. *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358, 1361 (Fed. Cir. 2004).

For example, BearBox introduced evidence that Storms contributed to the "monitored conditions" limitations present in each claim of the '433 patent, as well as specific monitored conditions enumerated in claim 16. See, e.g., D.I. 257 at ¶¶ 32, 42. The Court ultimately found that BearBox did not meet its burden on joint inventorship, but that does not make BearBox's case exceptional. *Universal Stabilization Techs., Inc. v. Advanced Bionutrition Corp.*, No. 17CV87-GPC(MDD), 2018 WL 6181479, at *4 (S.D. Cal. Nov. 27, 2018) ("[Plaintiff] argues that the claim construction did not foreclose his inventorship claim because he could still be deemed a co-inventor if he contributed to some original aspect of the patent. The Court agrees…"); see also *Intell. Ventures I LLC v. Trend Micro Inc.*, 944 F.3d 1380, 1384 (Fed. Cir. 2019) (the Federal Circuit requires "a finding of an exceptional case—not a finding of an exceptional portion of a case" to support an exceptional case finding). In fact, the Court did find that BearBox conceived and communicated the substance of claims 2, 9, and 10, only that Lancium had conceived earlier. D.I. 262 at 39-40, 46-47.

{01903552;v1 }                                                    16

**D.     Lancium is not entitled to its costs and expenses under § 285**

For the reasons stated herein, because this case is not exceptional, let alone so exceptional

to justify fees, Lancium should not be awarded costs or expenses under § 285.

**E.     Lancium is not entitled to an award of its expert witness fees under the Court's inherent power**

The court's inherent power to impose sanctions in the form of expert fees is limited to

"fraud on the court or abuse of judicial process." *Vehicle Interface Techs., LLC v. Jaguar Land*

*Rover N. Am.*, LLC, No. CV 12-1285-RGA, 2016 WL 3436396, at *4 (D. Del. June 15, 2016)

(even an "objectively baseless" case, claim construction positions "not even close to being

proper," and "improperly motivated" conduct falls short of "an award of expert witness fees")

(quoting *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 378–79 (Fed. Cir.

1994)). To invoke the court's inherent power and award expert witness fees requires behavior

"sufficiently beyond exceptional." *Philips Elecs. N. Am. Corp. v. Compo Micro Tech, Inc.*, No.

CIVA 02-123 KAJ, 2006 WL 3020724, at *6 (D. Del. Oct. 23, 2006).

For expert fees, Lancium reiterates the same arguments it presents as support for

attorneys' fees under § 285. Lancium does not allege fraud or abuse of judicial process, or

anything "sufficiently beyond exceptional" that meets the extraordinarily high bar for inherent

powers sanctions. *UCP Int'l Co. Ltd. v. Balsam Brands Inc.*, 785 F. App'x 849, 853 (Fed. Cir.

2019) (affirmed denial of expert witness fees stating that inherent powers "must be exercised

with restraint" and therefore "the bar that must be met to award expert fees" is high).

Lancium's *Dexcom* case is distinguishable. In *Dexcom*, the court explained that "[e]xpert

witness fees and non-taxable costs are not recoverable under Section 285 and are only awarded if

there is a finding of fraud or bad faith whereby the '*very temple of justice has been defiled*.'"

*Dexcom, Inc. v. AgaMatrix, Inc.*, No. CV1605947SJOASX, 2018 WL 11350029, at *10 (C.D.

Cal. May 9, 2018), vacated sub nom., No. 216CV5947SJOASX, 2020 WL 10728639 (C.D. Cal.

Apr. 2, 2020) (emphasis added). The *Dexcom* court was then very clear that expert witness fees were awarded because "[o]ver the course of this litigation, the Court has—at every juncture— warned [patentee] of the possibility [of fees]." *Id*. at *2, *7. "Despite this repeated admonishment, [patentee] forged ahead with its infringement claims and has fought any attempt by [the alleged infringer] to clarify its vague positions or to quickly resolve the dispute." *Id*. at *7. Such was not the case here.

### F.   Lancium is not entitled to attorneys' fees under 18 U.S.C. § 1836(b)(3)(D)

Lancium asks for fees under 18 U.S.C. 1836(b)(3)(D) arguing because BearBox acted in bad faith in amending its complaint to "reinsert" a trade secret claim after the deadline and because BearBox's trade secret claim was vague. But BearBox did not "reinsert" its original trade secret claim, nor was it vague.[6] BearBox's voluntarily dismissed its original trade secret claim early in the case, in good faith, after learning that a relevant document was made public. D.I. 113. BearBox added the new trade secret claims after the deadline only because Lancium produced documents revealing the alleged misappropriation long after the deadline. D.I. 113.[7] The amendment coincided with BearBox's leave to amend given with the Court's R&R granting a motion for judgment on the pleadings for the unjust enrichment and conversion counts.

BearBox interpreted the Court's R&R as broadly allowing for an amendment. The R&R stated, among other things, "[t]he Court suggests that … Plaintiffs be given leave to file one further amended complaint within 14 days." D.I. 92. Though Magistrate Judge Burke disagreed with BearBox's broad interpretation, he did not conclude BearBox's interpretation was in bad

---

[6] See, e.g., D.I. 113; citing *Home Semiconductor Corp. v. Samsung Elecs. Co.*, No. CV 13-2033-RGA, 2019 WL 2135858, at *3-*6 (D. Del. May 16, 2019) (granting leave to amend after scheduling order deadline, the court finding that good cause was shown where plaintiff's new allegations were based on information obtained through discovery after the deadline had passed and plaintiff sought to amend within three months of learning of the new information).

[7] Lancium argued in its reply that certain other documents should have put BearBox on notice earlier of the alleged trade secret theft. D.I. 114. BearBox refuted this in its surreply. D.I. 125.

faith. In fact, he agreed to consider BearBox's opposition as a motion for leave for good cause, stating that failure to seek leave at the outset is not "a reason why the motion to strike should be granted." Ex. 17, at 42:14-24.

BearBox argued that there was good cause because the underlying claim was only revealed through Lancium's late document production. D.I. 113. BearBox argued the new trade secret was different than the original, describing it as "methods for energy value arbitrage, including cryptocurrency mining systems and arbitraging related energy values." D.I. 10 at ¶ 68.[8] BearBox alleged that the new misappropriation involved a BearBox document that had *not* previously been made public and that it was used in Lancium's Smart Response software. BearBox cited five late-produced Lancium documents in support. D.I. 113. While Magistrate Judge Burke disagreed, BearBox's positions were not unreasonable or in bad faith. Lancium did not even argue bad faith. D.I. 112, 114. The Court found that because BearBox did not provide copies of the cited Lancium documents, the record was insufficient to find good cause and therefore struck the claims. Ex. 17, at 47:14-22.

BearBox found just one instance of court in this district deciding a defendant's fees motion under § 1836(b)(3)(D). In *Peloton Interactive*, the court declined to award fees because there was no adjudication of the claim on the merits. *Peloton Interactive, Inc. v. ICON Health & Fitness, Inc.*, No. 20-CV-01535-RGA, 2021 WL 3794829, at *3 (D. Del. Aug. 26, 2021). Because BearBox's claim was struck from the SAC, there was no adjudication on the merits.

Even if Lancium's claim for DTSA fees was ripe, Lancium's lone citation is distinguishable. In *Teetex*, the court awarded fees because the trade secret claim was based on information "publicly available through customs import data" that the plaintiff "never

---

[8] *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 906 (3d Cir. 2021) ("a plaintiff need not 'spell out the details of the trade secret to avoid' dismissal"). Courts are in general agreement that trade secrets "need not be disclosed in detail in a complaint ... for the simple reason that such a requirement would result in public disclosure of the purported trade secrets." *Bos. Sci. Corp. v. Nevro Corp.*, 415 F. Supp. 3d 482, 496 (D. Del. 2019).

meaningfully refuted." *Teetex LLC v. Zeetex, LLC*, No. 20-CV-07092-JSW, 2022 WL 2439176, at *5 (N.D. Cal. July 5, 2022). The court also found bad faith because the claims involved a theory previously rejected, and the plaintiff "evaded its discovery obligations, provided inaccurate discovery responses, and failed to pursue discovery." *Id*. This is not the case here.

## V.    CONCLUSION

For at least these reasons, the Court should deny Lancium's Motion and find that Lancium may not move for taxable costs after the deadline.[9]

---

[9] Lancium purports to "reserve the right" to later "seek taxable costs." D.I. 270 at 14 n.10. The Court's Final Judgment, however, set a deadline of fourteen days after entry of Final Judgment for motions for "costs and/or attorney's fees." D.I. 267. The parties agreed to the language of the Final Judgment, and the Court entered it. D.I. 266. Because fee motions are due 14 days after judgment by default, Fed. R. Civ. P. 54(d)(2)(B)(i), the provision in the Final Judgment would be surplusage if it did not also mean that motions for costs would be due 14 days after judgment. BearBox intends to object to any later-filed requests for costs.

ASHBY & GEDDES

*/s/ Andrew C. Mayo*
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
amayo@ashbygeddes.com

*Of Counsel:*

Benjamin T. Horton
John R. Labbe
Raymond R. Ricordati, III
John J. Lucas
Chelsea M. Murray                                     *Attorneys for Plaintiffs*
MARSHALL, GERSTEIN & BORUN LLP                        *BearBox LLC and Austin Storms*
233 S. Wacker Drive
6300 Willis Tower
Chicago, IL 60606
(312) 474-6300
bhorton@marshallip.com
jlabbe@marshallip.com
rricordati@marshallip.com
jlucas@marshallip.com
cmurray@marshallip.com

Date: May 3, 2023