# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT<br>
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| BEARBOX LLC and AUSTIN STORMS,<br><br>                Plaintiffs,<br><br>    v.<br><br>LANCIUM LLC,<br>MICHAEL T. MCNAMARA, and<br>RAYMOND E. CLINE, JR.<br><br>                Defendants. | C.A. No. 21-534-MN |

**PLAINTIFFS' OBJECTIONS AND RESPONSES TO<br>
DEFENDANTS' SECOND SET OF INTERROGATORIES (NOS. 10-21)**

Pursuant to Rules 33 and 26 of the Federal Rules of Civil Procedure, Plaintiffs Bearbox LLC and Austin Storms (collectively, "Plaintiffs") hereby submits its Responses and Objections to the second set of interrogatories (Nos. 10-21) from Defendants, as follows:

PRELIMINARY STATEMENT

Plaintiffs' answers to Defendants' Second Set of Interrogatories are made to the best of Plaintiffs' present knowledge, information and belief. Plaintiffs expressly reserve its right to supplement and amend these answers, in accordance with applicable rules, to incorporate further information and documents and to offer such further information and documents at any trial or hearing in this case.

Plaintiffs make the objections and answers set forth below without waiving: (1) the right to object to the use of any answer, document or thing for any purpose in this action or any other actions on grounds of privilege, relevancy, materiality, or any other appropriate basis; (2) the right to object to any other discovery request involving or relating to the subject matter of the responses herein and any documents or things produced by Plaintiffs; (3) the right to revise,

correct, supplement, or clarify any of the responses provided below at any time; and (4) the right to seek a protective order with respect to discovery directed to damages.

## GENERAL OBJECTIONS

1.  Plaintiffs object to each interrogatory, and to each definition and instruction, to the extent that it calls for the disclosure of information that is protected by the attorney-client privilege, the work-product doctrine, Fed. R. Civ. P. 26(b)(3), or any other applicable law, rule, privilege, or immunity.

2.  Plaintiffs object to each interrogatory, and to each definition and instruction, to the extent that it calls for the disclosure of information referring or relating to methods and/or products, especially future methods and products, that are not the subject matter of any claim or defense in this case on the ground that such information is not relevant, would not reasonably lead to the discovery of admissible evidence, and would unduly risk competitive injury to Defendant.

3.  Plaintiffs object to each interrogatory, and to each definition and instruction, to the extent that it imposes obligations beyond or inconsistent with the requirements of the Federal Rules of Civil Procedure, the Local Rules of this Court, orders entered by the Court in this case, or any other applicable orders entered by the Court.

4.  Plaintiffs object to each interrogatory, and to each definition and instruction, to the extent that it seeks to combine in a single interrogatory what otherwise should be asked in separate interrogatories. Plaintiffs object to the extent that these compound interrogatories exceed or will contribute to the exceeding of the numeric limits established in this Court's Scheduling Order. Plaintiffs deem the service of these interrogatories to constitute an admission by Defendant that they will not object to the number and/or numbering of interrogatories of a similar compound nature, if served by Plaintiffs.

5.      These responses are made solely for the purpose of this action. Each response is subject to all objections as to competence, relevance, materiality, propriety, inadmissibility, and any and all other objections and grounds that would require the exclusion of any statement herein if the questions were asked, or any statements contained herein were made by a witness present and testifying in court, all of which objections and grounds are reserved and may be interposed at the time of trial.

6.      The fact that Plaintiffs have answered any interrogatory herein should not be taken as an admission that Plaintiffs accept or admit the existence of any facts set forth or assumed by such interrogatory, or that such response constitutes admissible evidence. The fact that Plaintiffs have answered part of, or all of, any question is not intended and shall not be construed to be a waiver by Defendant of all or any part of any objection to any interrogatory herein.

7.      Plaintiffs object to the definition of "Bearbox," "Austin Storms," "Plaintiffs," "You" or "Your" to the extent the definition of any of these terms would require Plaintiffs to search for and produce any document or information that is not within their possession, custody, or control.

8.      Plaintiffs object to the definition of "Alleged BearBox Technology." Defendants attempts to limit the technology at issue in this to paragraph 2 of Plaintiffs' First Amended Complaint, that is inappropriate, overly vague, mischaracterizes the record, and frustrates the discovery process. Plaintiffs' statements in paragraph 2 of the First Amended Complaint are qualified as "general" summary statements related to the BearBox Technology meant to be informative as part of the pleading process. In addition, many other paragraphs of the First Amended Complaint further describe the BearBox Technology, including paragraph 4, which

states that "[t]he claimed subject matter of the '433 Patent falls fully within the scope of the BearBox Technology." Defendants' additional attempts to define Alleged BearBox Technology as technology identified in email communications with various third parties similarly mistaken and frustrating to the discovery process. For purposes of responding to these interrogatories, Plaintiffs will treat the term BearBox Technology to at least refer to any technology that is claimed in the '433 Patent, and when appropriate will refer to the technology in dispute in this litigation as Plaintiffs' technology.

9. Plaintiffs object to each interrogatory to the extent it seeks information subject to a confidentiality obligation due to a third party and/or disclosure of such information would be subject to governmental or other regulation.

10. Plaintiffs object to each interrogatory to the extent the interrogatory calls for interpretation of terms that have not yet been construed.

11. Plaintiffs object to each interrogatory to the extent that it requires disclosure of confidential, trade secret, or other proprietary information prior to entry of a suitable protective order.

12. These General Objections are incorporated into each specific response below as if they were fully repeated therein. Neither the inclusion of any Specific Objection in response to an interrogatory nor the failure to include any General Objection or Specific Objection in response to an interrogatory shall in any way be deemed as a waiver of any General Objection made herein or that may be asserted at another date. Defendant's response to any interrogatory is not, and shall not be construed as, an admission of the relevance or admissibility into evidence of such response or of the propriety of any of Plaintiff's interrogatories.

**INTERROGATORY NO. 10:**

Identify the individuals "Tom," "Todd," and "Ben" referenced in BB000000030, and the individual identified as "Lee S." in BB000000033.

Plaintiffs object to Interrogatory No. 10 as vague and ambiguous, at least with respect to the phrase "identify," and "Lee S." Plaintiffs further object that this Interrogatory calls for information that is not relevant to any claim or defense and is not proportional to the needs of the case. Plaintiffs object to Interrogatory No. 10 as overbroad and unduly burdensome because the burden outweighs the discovery's likely benefit. Plaintiffs object to Interrogatory No. 10 to the extent it seeks information that is protected by the attorney-client privilege or the work-product doctrine, including any information subject to the common-interest doctrine. Plaintiffs object to Interrogatory No. 10 to the extent it seeks information that is not in the Plaintiffs' possession, custody, or control.

Subject to these objections and their General Objections, Plaintiffs respond that "Tom" refers to Tom Maseiro, "Todd" refers to Todd Garland, and "Ben" refers to "Ben Hakes." Plaintiffs further respond that BB00000033 does not reference "Lee S.," but rather refers to "LaaS," which is an abbreviation for "Load as a Service."

**INTERROGATORY NO. 11:**

For each verbal communication referenced in Your Supplemental Answer to Defendants' Interrogatory No. 1, identify the date, circumstances (e.g., location and purpose), individuals present (if any), type of verbal communication (e.g., in-person, telephone, etc.)), and the specific subject matter allegedly verbally conveyed to Michael McNamara.

Plaintiffs object to Interrogatory No. 11 as overbroad, to the extent it asks for information regarding technology developed by the Plaintiffs that is not subject matter claimed in the '433

Patent or related subject matter that is relevant and proportional to the needs of the case. Plaintiffs further object to Interrogatory No. 11 as vague and ambiguous, at least with respect to the phrases "each verbal communication," "specific subject matter," and "circumstances (e.g., location and purpose)." Plaintiffs also object to Interrogatory No. 11 as overbroad and unduly burdensome, at least with respect to the phrases "circumstances (e.g., location and purpose)," "individuals present (if any)," and "type of verbal communication (e.g., in-person, telephone, etc.)," and to the extent that it calls for information relatively accessible to Defendants. Plaintiffs further object to Interrogatory No. 11 as overbroad and unduly burdensome because the burden outweighs the discovery's likely benefit. Plaintiffs object to Interrogatory No. 11 to the extent it seeks information that is protected by the attorney-client privilege or the work-product doctrine, including any information subject to the common-interest doctrine. Plaintiffs object to Interrogatory No. 11 to the extent it seeks information that is not in the Plaintiffs' possession, custody, or control. Plaintiffs object to Interrogatory No. 11 as unreasonably cumulative and duplicative, at least with Defendants' Interrogatory No. 1. See, e.g., Fed. R. Civ. P. 26(b)(2)(C)(i).

Subject to these objections and their General Objections, Plaintiffs respond that on May 3, 2019, at a cocktail mixer held at Fidelity's headquarters in Boston, Massachusetts, in conjunction with the Fidelity FCAT Summit, Mr. Austin Storms had various conversations with individuals present, including James McAvity, Jesse Peltan, Rich Godwin, Quinn Lawlor, Michael McNamara, and another Lancium representative purported to be Lancium's Chief Financial Officer.

Later on May 3, 2019, at the Envoy Hotel's restaurant in Boston, Massachusetts, The Outlook, Mr. Storms met for dinner with a group of individuals including at least the above-

mentioned individuals from the cocktail mixer, as well as at least Chris Bendikksen, possibly among other individuals. Mr. Storms sat at the far end of a long table with Mr. McNamara and the other Lancium representative, and explained to them, orally, Plaintiffs' ideas and technologies, including those that Plaintiffs had conceived and reduced to practice and those Plaintiffs had thus far only conceived, over the course of what was approximately a 2-hour dinner. The substance of Mr. Storms' disclosures is reflected in Plaintiffs' response to Interrogatory No. 1.

**INTERROGATORY NO. 12:**

For each element, and each combination thereof, of each claim of the '433 Patent for which You contend Austin Storms should be named as an inventor of the '433 Patent (i.e., made an original contribution, and communicated the same to Defendants), identify (on an element-by-element and combination-by-combination basis) all corroborating evidence on which you intend to rely to support each such contention.

Plaintiffs object to Interrogatory No. 12 for its incorrect characterization that "[Plaintiffs contend] Austin Storms should be named as an inventor of the '433 Patent (i.e., made an original contribution, and communicated the same to Defendants)." Austin Storms is the sole inventor of the '433 patent. In the alternative, he is at least a joint inventor with McNamara and Cline. Plaintiffs also object to Interrogatory No. 12 as vague and ambiguous, at least with respect to the phrase "for each element, and each combination thereof." Plaintiffs further object to Interrogatory No. 12 as overbroad, unduly burdensome, vague, and ambiguous, at least with respect to the phrase "identify (on an element-by-element and combination-by-combination basis) . . ." Plaintiffs also object to Interrogatory No. 12 for its incorrect characterization of Plaintiffs positions, at least with respect to the phrase "each such contention." Plaintiffs further object that this Interrogatory calls for information that is not relevant to any claim or defense and is not proportional to the needs of the case. Plaintiffs object to Interrogatory No. 12 as overbroad

and unduly burdensome because the burden outweighs the discovery's likely benefit. Plaintiffs object to Interrogatory No. 12 to the extent it seeks information that is protected by the attorney-client privilege or the work-product doctrine, including any information subject to the common-interest doctrine. Plaintiffs object to Interrogatory No. 12 to the extent it seeks information that is not in the Plaintiffs' possession, custody, or control. Plaintiffs object to Interrogatory No. 12 as unreasonably cumulative and duplicative, at least with Defendants' Interrogatory Nos. 1, 2, and 3. See, e.g., Fed. R. Civ. P. 26(b)(2)(C)(i).

Subject to these objections and their General Objections, Plaintiffs' incorporate by reference their responses to Interrogatory Nos. 1, 2, and 3.

**INTERROGATORY NO. 13:**

Identify all aspects of Your relationship and/or communications with Ben Hakes, including, but not limited to, the circumstances that led You to allegedly share aspects of the Alleged BearBox Technology with Mr. Hakes under conditions of confidentiality, the date(s) of such communications, the purpose of such communications, any agreements between You and Mr. Hakes, any money or other consideration provided to Mr. Hakes or his employers (e.g., Pareto Advisors, Conservis, River Financial) by You or vice versa.

Plaintiffs object to Interrogatory No. 13 as overbroad and unduly burdensome, because it calls for irrelevant subject matter, and the burden outweighs the discovery's likely benefit. Plaintiffs further object to Interrogatory No. 13 as vague, ambiguous, overbroad, and unduly burdensome, at least with respect to the phrases "all aspects," and "the circumstances that led [Plaintiffs]." Plaintiffs object to Interrogatory No. 13 to the extent it seeks information that is protected by the attorney-client privilege or the work-product doctrine, including any information subject to the common-interest doctrine. Plaintiffs object to Interrogatory No. 13 to the extent it seeks information that is not in the Plaintiffs' possession, custody, or control.

Subject to these objections and their General Objections, Plaintiffs respond that Ben Hakes contacted Mr. Austin Storms to facilitate an introduction to a wind farm operator. Mr. Storms and Mr. Hakes had various text message and email exchanges about the possible creation of a new company for which BearBox would be the operating entity for the wind farm. This transaction never occurred. The only written agreement between Plaintiffs and Mr. Hakes is a confidentiality agreement. Plaintiffs never paid any money to Mr. Hakes or his employer(s), nor does Mr. Hakes or his employers have any rights in Plaintiffs' inventions at issue in this litigation.

**INTERROGATORY NO. 14:**

If You contend that, on or before October 19, 2019, the Alleged BearBox Technology caused (and/or was configured to cause) a set of computing systems to meet a minimum power threshold associated for each time interval in a set of time intervals specified in received power option data, describe in detail how the Alleged BearBox Technology caused (or was configured to cause) such functionality, including the date such functionality existed, and identifying all documents in Your possession, custody, or control describing such functionality, including source (and/or computer) code. For the purpose of this Interrogatory, You should interpret the terms/phrases "a set of computing systems," "minimum power threshold," "set of time intervals," and "received power option data" as You interpreted those terms/phrases in answering Defendants' Interrogatory No. 3.

Plaintiffs object to Interrogatory No. 14 to the extent it calls for information protected by attorney-client privilege or work-product doctrine. Plaintiffs also object to Interrogatory No. 14 for its use of the phrase "if [Plaintiffs] contend that," at least because any answer that Plaintiffs may make to Interrogatory No. 14 will in no way endorse any characterization by Defendants of any position held by Plaintiffs. Plaintiffs further object to Interrogatory No. 14 as vague and ambiguous, at least with respect to the phrase "describe in detail." Plaintiffs further object that this Interrogatory calls for information that is not relevant to any claim or defense and is not proportional to the needs of the case. Plaintiffs object to Interrogatory No. 14 as overbroad and

unduly burdensome because the burden outweighs the discovery's likely benefit. Plaintiffs object to Interrogatory No. 14 to the extent it seeks information that is protected by the attorney-client privilege or the work-product doctrine, including any information subject to the common-interest doctrine. Plaintiffs object to Interrogatory No. 14 to the extent it seeks information that is not in the Plaintiffs' possession, custody, or control. Plaintiffs object to Interrogatory No. 14 as unreasonably cumulative and duplicative, at least with Defendants' Interrogatory Nos. 1, 2, and 3. See, e.g., Fed. R. Civ. P. 26(b)(2)(C)(i).

Subject to these objections and their General Objections, Plaintiffs incorporate by reference their responses to Interrogatory Nos. 1, 2, and 3.

**INTERROGATORY NO. 15:**

Identify all entities and/or persons who hold an interest in BearBox and describe the nature of each such interest with particularity.

Plaintiffs object to Interrogatory No. 15 as overbroad and unduly burdensome, because it calls for irrelevant subject matter, and the burden outweighs the discovery's likely benefit. Plaintiffs also object to Interrogatory No. 15 as vague and ambiguous, at least with respect to the phrase "particularity." Plaintiffs object to Interrogatory No. 15 to the extent it seeks information that is protected by the attorney-client privilege or the work-product doctrine, including any information subject to the common-interest doctrine. Plaintiffs object to Interrogatory No. 15 to the extent it seeks information that is not in the Plaintiffs' possession, custody, or control.

Subject to these objections and their General Objections, Plaintiffs respond that Mr. Austin Storms is, and at all times has been, the only person or entity with an interest in BearBox.

**INTERROGATORY NO. 16:**

Identify and describe in detail the relationship(s) that Austin Storms and/or BearBox have (or had) with all partners, agents, affiliates, shareholders, owners, entities, or persons relating to

the development, conception, reduction to practice, offers for sale, sales, and/or licensing of BearBox cryptocurrency mining or the Alleged BearBox Technology, including, but not limited to the "partner" referred to in BB00000100.

Plaintiffs object to Interrogatory No. 16 as overbroad and unduly burdensome, as it calls for information that is irrelevant and not proportional to the needs of the case. Plaintiffs also object to Interrogatory No. 16 to the extent it calls for information protected by attorney-client privilege or work-product doctrine. Plaintiffs further object to Interrogatory No. 16 as vague and ambiguous, at least with respect to the phrases "in detail," "relationship(s)," "partners, agents, affiliates, shareholders, owners, entities, or persons," and "relating to." Plaintiffs further object to Interrogatory No. 16 as overbroad, to the extent it asks for information regarding technology developed by the Plaintiffs that is not subject matter claimed in the '433 Patent or related subject matter that is relevant and proportional to the needs of the case, at least with respect to the phrase "BearBox cryptocurrency mining." Plaintiffs object to Interrogatory No. 16 as overbroad and unduly burdensome because the burden outweighs the discovery's likely benefit. Plaintiffs object to Interrogatory No. 16 to the extent it seeks information that is protected by the attorney-client privilege or the work-product doctrine, including any information subject to the common-interest doctrine. Plaintiffs object to Interrogatory No. 16 to the extent it seeks information that is not in the Plaintiffs' possession, custody, or control.

Subject to these objections and their General Objections, Plaintiffs respond that the "partner" referred to in BB00000100 was a partner from another entity, Stormsmedia LLC, an entity that, at the time of that email, was in the process of liquidating inventory and miners. For context, BearBox may have considered purchasing miners from Stormsmedia LLC to potentially supply a project for GlidePath. The miners owned by Stormsmedia, however, had already been sold at the time of that email, unbeknownst to Mr. Storms. The Stormsmedia LLC partner

described in the other email had no interest in BearBox or its assets at that time, or anytime thereafter, nor did that Stormsmedia LLC partner contribute to the conception, development, reduction to practice, or any other attribute of the Plaintiffs' technology at issue in this litigation.

**INTERROGATORY NO. 17:**

Identify each entity (or individual) who has purchased and/or otherwise received any aspect of the Alleged Bear Box Technology, the date such entity purchased or otherwise received the technology, the price (or other consideration) paid for the technology, the circumstances surrounding such purchase or other receipt of the technology, and what the entity or individual did with the Alleged BearBox Technology once it was purchased or otherwise received (e.g., the use to which the technology was put, the location(s) of such use, the date(s) of such use, etc.).

Plaintiffs object to Interrogatory No. 17 because it calls for information that is irrelevant and not proportional to the needs of the case. Plaintiffs further object to Interrogatory No. 17 as overbroad and unduly burdensome because the burden outweighs the discovery's likely benefit. Plaintiffs further object to Interrogatory No. 17 to the extent it calls for information protected by attorney-client privilege or work-product doctrine. Plaintiffs also object to Interrogatory No. 17 as vague and ambiguous, at least with respect to the phrases "otherwise received," "any aspect," and "circumstances surrounding." Plaintiffs further object to Interrogatory No. 17 as overbroad and unduly burdensome, and because it calls for information that is irrelevant and not proportional to the needs of the case, at least with respect to the phrase "what the entity or individual did." Plaintiffs object to Interrogatory No. 17 to the extent it seeks information that is protected by the attorney-client privilege or the work-product doctrine, including any information subject to the common-interest doctrine. Plaintiffs object to Interrogatory No. 17 to the extent it seeks information that is not in the Plaintiffs' possession, custody, or control.

Subject to these objections and their General Objections, Plaintiffs respond that none of Plaintiffs' technology at issue in this litigation was sold or otherwise transferred to any other

person or entity. The mining container and exhaust fans used by Plaintiffs to conceive of and develop the technology at issue in this litigation were sold to Great American Mining in late 2020. Great American Mining completely overhauled the electrical distribution system of the mining container to accommodate a new generation of miners. None of the source code, or other aspects of Plaintiffs' technology at issue in this litigation was ever sold or transferred to Great American Mining. Great American Mining eventually deployed that specific mining at an oil and gas production facility in North Dakota in an off-grid generation setup.

**INTERROGATORY NO. 18:**

Identify all analysis of the '433 Patent (e.g., infringement, noninfringement, validity, invalidity, freedom to operate, market, and/or other analysis) performed by You or on Your behalf.

Plaintiffs object to Interrogatory No. 18 because it calls for production of information protected by the attorney-client privilege, the work-product doctrine, or other applicable privileges and doctrines. Plaintiffs further object to Interrogatory No. 18 as overbroad and unduly burdensome, because it calls for information that is not proportional to the needs of the case, and because the burden outweighs the discovery's likely benefit. Plaintiffs further object to Interrogatory No. 18 as vague and ambiguous, at least with respect to the phrase "all analysis." Plaintiffs further object that this Interrogatory calls for information that is not relevant to any claim or defense and is not proportional to the needs of the case. Plaintiffs further object to Interrogatory No. 18 to the extent it seeks information that is not in the Plaintiffs' possession, custody, or control.

**INTERROGATORY NO. 19:**

Provide Your understanding in detail of the meaning of the term "CLR" (i.e., Controllable Load Resource) as You used the term in Your Supplemental Answer to Interrogatory No. 2.

{01747638;v1 }   13

Plaintiffs object to Interrogatory No. 19 as vague and ambiguous, at least with respect to the phrase "in detail." Plaintiffs further object that this Interrogatory calls for information that is not relevant to any claim or defense and is not proportional to the needs of the case. Plaintiffs object to Interrogatory No. 19 as overbroad and unduly burdensome because the burden outweighs the discovery's likely benefit. Plaintiffs object to Interrogatory No. 19 to the extent it seeks information that is protected by the attorney-client privilege or the work-product doctrine, including any information subject to the common-interest doctrine. Plaintiffs object to Interrogatory No. 19 to the extent it seeks information that is not in the Plaintiffs' possession, custody, or control.

Subject to these objections and their General Objections, Plaintiffs respond that their understanding is that a controllable load resource ("CLR"), as that term was used in Plaintiffs' supplemental response to Interrogatory No. 2, is a load that is capable of increasing or decreasing its electricity consumption over a set of time intervals, and in response to a variety of factors or constraints, and is consistent with how Defendants used the term CLR in documents in Case No. 6:20-cv-00739, for example in the Complaint, LANCIUM00016546, and Exhibit H, LANCIUM00016631.

**INTERROGATORY NO. 20:**

To the extent that You contend that prior to October 28, 2019 You had Documents evidencing that the Alleged BearBox Technology was capable of providing "fine-grain load control or true LaaS (referred to as CLR or LaaR within ERCOT)" as You use that phrase in Your Supplemental Answer to Defendants' Interrogatory No. 2, identify by Bates number each such Document and identify the portion(s) of each such Document that supports Your contention.

Plaintiffs object to Interrogatory No. 20 for its use of the phrases "to the extent that you contend," and "Your contention," at least because any answer that Plaintiffs may make to Interrogatory No. 20 will in no way endorse any characterization by Defendants of any position held by Plaintiffs. Plaintiffs further object to Interrogatory No. 20 as vague and ambiguous, at least with respect to the phrases "capable of providing," and "portion(s) of each such Document." Plaintiffs further object that this Interrogatory calls for information that is not relevant to any claim or defense and is not proportional to the needs of the case. Plaintiffs object to Interrogatory No. 20 as overbroad and unduly burdensome because the burden outweighs the discovery's likely benefit. Plaintiffs object to Interrogatory No. 20 to the extent it seeks information that is protected by the attorney-client privilege or the work-product doctrine, including any information subject to the common-interest doctrine. Plaintiffs object to Interrogatory No. 20 to the extent it seeks information that is not in the Plaintiffs' possession, custody, or control. Plaintiffs object to Interrogatory No. 20 as unreasonably cumulative and duplicative, at least with Defendants' Interrogatory Nos. 1, 2, and 3. See, e.g., Fed. R. Civ. P. 26(b)(2)(C)(i).

Subject to these objections and their General Objections, Plaintiffs incorporate by reference their responses to Interrogatory Nos. 1, 2, and 3.

**INTERROGATORY NO. 21:**

Provide Your understanding in detail of the meaning of the term/phrase "power option agreement" as You used that term/phrase in Your Supplemental Answer to Defendants' Interrogatory No. 1.

Plaintiffs object to Interrogatory No. 21 as vague and ambiguous, at least with respect to the phrase "in detail." Plaintiffs further object that this Interrogatory calls for information that is not relevant to any claim or defense and is not proportional to the needs of the case. Plaintiffs

object to Interrogatory No. 21 as overbroad and unduly burdensome because the burden outweighs the discovery's likely benefit. Plaintiffs object to Interrogatory No. 21 to the extent it seeks information that is protected by the attorney-client privilege or the work-product doctrine, including any information subject to the common-interest doctrine. Plaintiffs object to Interrogatory No. 21 to the extent it seeks information that is not in the Plaintiffs' possession, custody, or control.

Subject to these objections and their General Objections, Plaintiffs respond that their understanding is that a power option agreement, as that term was used in Plaintiffs' supplemental response to Interrogatory No. 2, is consistent with the use of that term as claimed and described in the '433 Patent, and includes an agreement between an entity associated with the delivery of power to a load and the load, and is consistent with how the Defendants used the term "power option agreement" in documents in Case No. 6:20-cv-00739, for example in the Complaint, LANCIUM00016546, and Exhibit H, LANCIUM00016631

| | |
|---|---|
| *Of Counsel:* | ASHBY & GEDDES<br><br>*/s/ Andrew C. Mayo*<br>_____ |
| Benjamin T. Horton<br>John R. Labbe<br>Raymond R. Ricordati, III<br>Chelsea M. Murray<br>MARSHALL, GERSTEIN & BORUN LLP<br>233 South Wacker Drive<br>6300 Willis Tower<br>Chicago, IL 60606-6357<br>(312) 474-6300 | Andrew C. Mayo (#5207)<br>500 Delaware Avenue, 8th Floor<br>P.O. Box 1150<br>Wilmington, DE 19899<br>(302) 654-1888<br>amayo@ashbygeddes.com<br><br>*Attorneys for Plaintiffs*<br>*BearBox LLC and Austin Storms* |

Dated: November 22, 2021