# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BEARBOX LLC and AUSTIN STORMS, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> LANCIUM LLC, MICHAEL T. ) <br> MCNAMARA, and RAYMOND E. CLINE, ) <br> JR. ) <br> ) <br> Defendants. ) | C.A. No. 21-534-GBW-CJB |

## DEFENDANTS' REPLY IN SUPPORT
## OF THEIR MOTION FOR FEES AND EXPENSES

Dated: May 10, 2023

BARNES & THORNBURG LLP
Chad S.C. Stover (No. 4919)
222 Delaware Avenue, Suite 1200
Wilmington, Delaware 19801-1050
Telephone: (302) 300-3474
E-mail: chad.stover@btlaw.com

Mark C. Nelson (admitted *pro hac vice*)
David Lisch (admitted *pro hac vice*)
2121 N. Pearl Street, Suite 700
Dallas, TX 75201
Tel: (214) 258-4140
E-mail: mark.nelson@btlaw.com
　　　　 david.lisch@btlaw.com

Adam M. Kaufmann (admitted *pro hac vice*)
Darrick Hooker (admitted *pro hac vice*)
Dana Amato Sarros (admitted *pro hac vice*)
One North Wacker Drive, Suite 4400
Chicago, IL 60606
Tel: (312) 214-8319
Email: adam.kaufmann@btlaw.com
Email: darrick.hooker@btlaw.com
Email: dana.sarros@btlaw.com

*Attorneys for Defendants Lancium LLC, Michael T. McNamara, and Raymond E. Cline Jr.*

**TABLE OF CONTENTS**

I. Introduction ..................................................................................................................... 1

II. BearBox's Choice To Ignore Lancium's '632 Application's Teaching Makes Its Sole Inventorship Claim Exceptional ..................................................................................... 1

III. BearBox's Continued Pursuit Of Its Inventorship Claims After The Court's Claim Construction Ruling Makes This Case Exceptional ........................................................ 5

IV. The Court Should Award Lancium Its Requested Costs, Including Expert Witness Costs Incurred After The Claim Construction Ruling .................................................... 9

V. The Court Should Award Lancium Its Attorneys' Fees Incurred to Strike BearBox's Untimely, Improper, and Stricken DTSA Claim ........................................................... 10

VI. Conclusion ..................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Clinicomp Int'l, Inc. v. Cerner Corp.*,
   No. 17- 2479, 2023 WL 1767008 (S.D. Cal. Feb. 3, 2023) ................................................. 6, 7

*Dexcom, Inc. v. AgaMatrix, Inc.*,
   No. 16-5947, 2018 WL 11350029 (C.D. Cal. May 9, 2018) ................................................... 10

*Eko Brands, LLC v. Adrian Rivera Maynez Enter., Inc.*,
   946 F.3d 1367 (Fed. Cir. 2020) ............................................................................................... 5

*Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*,
   279 F.3d 1022 (Fed. Cir. 2002) ............................................................................................... 1

*Ethicon, Inc. v. U.S. Surgical Corp.*,
   135 F.3d 1456 (Fed. Cir. 1998) ............................................................................................... 2

*Highmark, Inc. v. Allcare Health Mgmt Sys., Inc.*,
   687 F.3d 1300 (Fed. Cir. 2012) ............................................................................................... 4

*Homeland Housewares LLC v. Sorensen R&D Trust*,
   No. 11-3720, 2013 WL 12126217 (C.D. Cal. June 27, 2013) ................................................. 1

*Innovation Scis., LLC v. Amazon.com, Inc.*,
   842 F. App'x 555 (Fed. Cir. 2021) .......................................................................................... 6

*MarcTec, LLC v. Johnson & Johnson*,
   664 F.3d 907 (Fed. Cir. 2012) ................................................................................................. 9

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*,
   726 F.3d 1359 (Fed. Cir. 2013) ............................................................................................... 5

*Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*,
   549 F.3d 1381 (Fed. Cir. 2008) ............................................................................................... 9

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
   726 F.3d 1306 (Fed. Cir. 2013) ............................................................................................... 4

**Statutes**

35 U.S.C. § 285 ............................................................................................................................. 1

**Other Authorities**

Fed. R. Civ. P. 54 ........................................................................................................................ 10

L.R. 54.1(a)(1) ................................................................................................................................10

I. **Introduction**

The Court should find this case to be exceptional. BearBox knew or should have known that its sole inventorship claim was meritless from the beginning in light of Lancium's '632 Application, which demonstrated that McNamara and Cline conceived certain elements of the '433 patent's claims more than a year before Storms' communications with McNamara. The lack of merit was expounded during discovery when Lancium produced and its expert Dr. Ehsani analyzed numerous documents further revealing such conception well prior to any contact with Storms—documents that BearBox's expert never reviewed or addressed in his expert report. And neither of BearBox's inventorship claims (sole or joint) were viable after the Court's claim construction ruling. BearBox, however, was not dissuaded and instead tried to change its theory by submitting a new expert report on the eve of trial. Finally, Storms' admissions at trial revealed that he knew or should have known that he did not conceive of the claims of the '433 patent as properly construed. D.I. 262 at FF103, 105, 109. Nothing in BearBox's Response (D.I. 273) indicates this case was not exceptional. The Court should grant Lancium's requested attorneys' fees and costs.

II. **BearBox's Choice To Ignore Lancium's '632 Application's Teaching Makes Its Sole Inventorship Claim Exceptional**

BearBox's claim that Storms was the sole inventor of the '433 patent was rendered "exceptional" at the outset of this case when Lancium specifically informed BearBox of its '632 application. BearBox's assertions to the contrary fall flat.[1]

---

[1] BearBox does not dispute or attempt to defend its failure to conduct a pre-filing investigation, including its failure to review any of Lancium's public patent filings that pre-date Storms' communications with Lancium. As set forth in Lancium's Brief (D.I. 270), "[i]nadequacy of pre-filing preparation may be relevant to the 'exceptional' case question." *Homeland Housewares LLC v. Sorensen R&D Trust*, No. 11-3720, 2013 WL 12126217, at *6 (C.D. Cal. June 27, 2013) (awarding attorneys' fees under 35 U.S.C. § 285), quoting *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1035 (Fed. Cir. 2002). And such an investigation should have led to the discovery of the '632 application and the realization that BearBox's sole inventorship

1

To begin, BearBox's defense of its sole inventorship claim is legally wrong and inconsistent with its alternative claim for joint inventorship. BearBox contends that Lancium's assertion that Storms cannot be the sole inventor of the '433 patent because the '632 Application shows that McNamara and Cline conceived elements of the '433 patent's claims (including the [b1]/"monitored conditions" claim element) before any communications with Storms "is at odds with the law of inventorship." Response at 10 (emphasis in original).[2] Not so. Contributing an element the named inventors already knew cannot make one a joint inventor, *see, e.g., Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998) ("One who simply provides the inventor with well-known principles … does not qualify as a joint inventor."). Thus, it certainly cannot support being the sole inventor. Moreover, BearBox's alternative claim that Storms' alleged contribution of the [b1]/"monitored conditions" element makes Storms a joint inventor is inconsistent with its denial that McNamara and Cline's conception of this element before the communications with Storms does not defeat BearBox's sole inventorship claim. BearBox cannot have it both ways. BearBox's failure to rationally evaluate its claims make this case exceptional.

BearBox's attempt to dismiss the significance of the '632 Application by asserting that "the '632 Application was *not* found to teach the entire scope of BearBox's technology" (Response at 9 (emphasis in original)) is irrelevant. It is the '632 Application's disclosure of certain elements of the '433 patent's claims—not the disclosure of Storms' alleged technology—that makes it fatal to BearBox's sole inventorship claim. And BearBox's attempt to minimize the Court's findings regarding the '632 Application completely ignores the Court's finding "that Lancium

---

claim was not viable.

[2] Tellingly, BearBox also cites no authority for its assertion that "[t]o the extent Lancium argues that because the '632 Application teaches some elements of some claims on the '433 patent, BearBox could not have conceived of every claim limitation and therefore been the sole inventor, it is of no moment." Response at 10 n.3.

independently conceived of element [b1] of the '433 patent prior to Storms' Email" because "by at least January 2018, Lancium's system was monitoring conditions, including economic conditions, to control its computing systems on a granular level—*as disclosed by the '632 Application*." D.I. 262 at FF97 (emphasis added). Lancium's counterclaims stressed the substance of this finding at the beginning of this case: "The '632 application discloses a control system *monitoring various external factors*…. Based on these external factors, the systems and/or methods of the '632 application may determine whether conditions are appropriate to mine cryptocurrency and, if so, subsequently mine the cryptocurrency." D.I. 13 at ¶ 69 (emphasis added); *see also id*. at pp. 42-43 (chart item 6). BearBox thus was on notice of the '632 Application and this specific teaching at the outset of the case, but simply ignored it and plowed forward with its sole inventorship claims.

Lancium continued to emphasize the '632 Application and other evidence of conception of certain '433 patent claim elements prior to the communication with Storms throughout this case. For example, Lancium provided a detailed supplemental response to BearBox's Interrogatory No. 3 on December 23, 2021 that explained that McNamara and Cline conceived certain elements of the '433 patent's claims prior to contact with Storms and provided citations to numerous contemporaneous Lancium documents (by Bates number) in support. *See* D.I. 239 at BearBox's motion *in limine* No. 2, Ex. A at 13-26. Lancium's expert Dr. Ehsani also analyzed this conception evidence in his report. BearBox and its expert McClellan, however, ignored that evidence. *See* Response at Ex. A to Ex. 6 (McClellan Dep. Tr.) at 278:24-279:18 (McClellan indicating at deposition that he "didn't read all of the documents" or even "look at all of" the information cited in Ehsani's report).

BearBox tries to excuse McClellan's failure to even review Lancium's evidence of its

independent conception pre-dating the communications with Storms because "Lancium admitted that McNamara and Cline did not conceive the inventions of the patent-in-suit until after the Storms communications." Response at 9. This is no defense. Ignoring detrimental evidence is exceptional conduct warranting attorneys' fees. *See Highmark, Inc. v. Allcare Health Mgmt Sys., Inc.*, 687 F.3d 1300, 1319, 1323 (Fed. Cir. 2012) (affirming finding of "exceptional" case where plaintiff "ignored persuasive, publically-available evidence which clearly demonstrated that [defendant]'s accused system failed to meet key elements of claim 52(c)"); *see also Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013) (a party "must continually assess the soundness" of its claims).

BearBox's reliance on McClellan's trial testimony as allegedly rendering its sole inventorship claim reasonable is also no defense. BearBox asserts that "[a]t trial, McClellan testified that the '632 Application does not teach monitored conditions as claimed in the '433 patent." Response at 9 (citing McClellan trial testimony at 376:10-16). But that was not McClellan's testimony. Rather, he merely disagreed that "the '632 application discloses most if not all the same features as Mr. Storms" and asserted that the only "economic consideration" the '632 application teaches monitoring of is "purchasing energy when it's at a negative price." Response Ex. 8 at 375:19-376:16. This testimony does not make BearBox's claim reasonable. First, again, it is the '632 Application's disclosure of elements in the '433 patent—not Storms' technology—that matters. Second, the [b1]/"monitored conditions" element of the '433 patent's claims is not limited to monitoring any specific type of condition, much less any specific economic consideration, such as Bitcoin price. Third, as noted in Lancium's original counterclaims, the '632 Application discloses monitoring other conditions, such as "behind-the-meter power availability" and directives from the "grid operator." D.I. 13 at p. 43 (quoting '632 Application ¶ 44).

4

Finally, BearBox's assertion that its sole inventorship claim was not exceptional because Lancium did not move to dismiss or for summary judgment based on the '632 Application is a red herring. Even denial of summary judgment does not preclude a finding of an exceptional case. *See, e.g.*, *Eko Brands, LLC v. Adrian Rivera Maynez Enter., Inc.*, 946 F.3d 1367, 1375-76 (Fed. Cir. 2020) (affirming award of attorneys' fees to accused infringer where patent owner defeated summary judgment); *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 726 F.3d 1359, 1366 (Fed. Cir. 2013) (affirming award of attorneys' fees and finding the patent owner's argument that "its defeat of summary judgment of noninfringement constitutes evidence sufficient to overcome any argument that its assertion of infringement was objectively baseless or made in bad faith" was "meritless").

### III. BearBox's Continued Pursuit Of Its Inventorship Claims After The Court's Claim Construction Ruling Makes This Case Exceptional

As soon as it became apparent during Dr. McClellan's expert deposition that BearBox's inventorship claims were based on unreasonable claim construction positions that were unsupported by the intrinsic evidence, Lancium promptly sought claim construction from the Court. Then, after the Court wholly adopted Lancium's positions, Lancium informed BearBox that the continued assertion of its inventorship claims was meritless. BearBox ignored Lancium's letter and instead—faced with the likelihood that McClellan's opinions would be excluded—submitted a new expert report on the eve of trial that offered new, inconsistent opinions.[3] This desperate attempt to save its claims, forced Lancium to file an emergency motion to strike, which the Court granted finding that "it is clear that Dr. McClellan is offering new legal theories and opinions" and that "BearBox's disregard of the express terms of the Court's Scheduling Order indicates bad

---

[3] Contrary to BearBox's assertion, Lancium's concern and the basis of its motion *in limine* No. 1 was not that McClellan would consider the Court's claim construction, it was that he would offer new opinions at trial, which is what he and BearBox tried to do. D.I. 239 at Ex. 13.

5

faith" D.I. 247 at 2, 4. And the Court ultimately rejected BearBox's inventorship claims based largely on (1) Storms' own admissions at trial that his Email documents do not teach the claim elements that require "minimum power thresholds" and a "power option agreement"; and (2) Lancium's '632 application. This is exceptional and Lancium should, at a minimum, be awarded its attorneys' fees and costs for litigating this case after the Court's claim construction ruling. *See, e.g., Clinicomp Int'l, Inc. v. Cerner Corp.*, No. 17- 2479, 2023 WL 1767008, at *10-11 (S.D. Cal. Feb. 3, 2023) (finding case exceptional and noting that attempting to change theories after claim construction showed that plaintiff "recognized it did not have [a] meritorious theory").

BearBox primarily defends maintaining its inventorship claims after claim construction by arguing that the Court's denial of summary judgment shows the claims were reasonable and not exceptional. Not so. As set forth above, surviving summary judgment does not preclude a finding that this case is exceptional. *Supra* at 5. Moreover, BearBox avoided summary judgment by arguing that "Storms' system as described in the documents he communicated to Lancium meets Lancium's constructions." D.I. 176 at 23-24. It is thus unremarkable that the Court concluded that the inventorship issue "centers on disputes about the substance and weight of the testimony and corroborating documents that BearBox cites" and "diving into the factual morass … is not a task appropriate for the Court at the summary judgment stage." D.I. 230 at 10-11.

But BearBox knew better. BearBox knew—contrary to its representations to the Court at summary judgment and as Storms conceded at trial— that his Email documents did not teach or disclose the systems and methods claimed in the '433 patent as properly construed by the Court. D.I. 262 at FF103, 105, 109 (finding that "Storms admitted" his Spec Sheet, Diagram, and Data File did not indicate Storms' system met various claim elements). Thus, BearBox's continued pursuit of its claims post-claim construction makes this case exceptional. *See, e.g., Innovation*

*Scis., LLC v. Amazon.com, Inc.*, 842 F. App'x 555, 557 (Fed. Cir. 2021) ("a case is exceptional when a party continues to litigate claims that have become baseless in view of a district court's claim construction opinion."); *Clinicomp*, 2023 WL 1767008, at *11.

BearBox's defense of its claim construction positions is also meritless. First, BearBox again treads well-worn ground arguing that Lancium should have sought claim construction sooner because "[u]p until summary judgment … both parties were content to apply the plain meaning."[4] Response at 11-12. This argument lacks merit because (i) BearBox's pre-claim construction position does not weigh against awarding attorneys' fees for its conduct after claim construction, (ii) the Court previously rejected BearBox's assertion that Lancium's request for claim construction was untimely, and (iii) as BearBox has previously acknowledged, "both sides reserve[d] the right to request claim construction in the future if necessary." *See* Ex. 7 (10/20/22 Hr'g Tr.) at 32:1-12. As explained previously, it was not until the deposition of BearBox's expert McClellan that Lancium realized that he (and BearBox) were applying purported "plain and ordinary" meanings of "minimum power threshold" and "power option agreement" that were inconsistent with the intrinsic record. D.I. 149 at 12-13.

BearBox's attempt to defend its claim construction position by suggesting that the Court adopted a "compromise" position and resolved a purported "inconsistency" in Lancium's original proposal revises history. Response at 4, 12. BearBox maintained no construction was needed until the *Markman* hearing when it proposed, for the first time, a purported "compromise" position, which was really an incomplete portion of Lancium's proposed construction. Ex. 7 (10/20/22 Hr'g

---

[4] BearBox's assertion that "Lancium proposed a non-patent scheduling order because claim construction was not necessary" is wrong and unsupported. Response at 3. Lancium proposed a non-patent scheduling order because there was no need for infringement and invalidity contentions in this case. Lancium agreed with including a deadline for advising the Court whether the parties believed claim construction was necessary. D.I. 35 ¶ 8.

Tr.) at 21:7-22:6. Having just heard the proposed compromise, Lancium unsurprisingly agreed to consider it, but ultimately rejected the proposal because it was incomplete and inadequate. As to the purported inconsistency in Lancium's construction of "power option agreement" (Response at 12)—there was none. Lancium simply added a clause to its original proposal to moot a BearBox argument, and in any event the Court adopted Lancium's—not BearBox's—proposal. *See* D.I. 195 at 8-9. And the suggestion that the Court recognized a problem with Lancium's construction of "minimum power threshold" because "the Court agreed that a 'minimum power threshold' may be zero if they are not all zero" is misleading at best. Response at 12. Lancium never disputed that a "minimum power threshold" could be zero for some time intervals (D.I. 195 at 10-11), and "the Court reject[ed] BearBox's assertion that any construction of the term must include that the minimum power threshold may be zero." D.I. 218 at 16.

Last, BearBox argues that "Lancium has not explained how the construction of 'power option agreement' and [']minimum power threshold'" precluded the possibility that BearBox "contributed other elements to one or more claims in the '433 patent." Response at 16. Not so. Lancium's Brief explained how BearBox's inventorship claims regarding the other claim elements (*i.e.*, those that did not include the terms construed by the Court), were meritless based on the '632 application, Lancium's other patent filings, McNamara and Cline's prior knowledge as evidenced by documents produced in discovery, and by BearBox's own admissions. *See* Brief at 6-7, 12-13. Furthermore, after trial BearBox only pointed to two claim elements as the basis for its joint inventorship claim: the [b1]/"monitored conditions" element and dependent claim 16. D.I. 256 at 17-18. As set forth above and in Lancium's Brief, the '632 Application clearly discloses the [b1]/"monitored conditions" claim element, as did numerous other Lancium documents relied on in Dr. Ehsani's report that McClellan did not look at. *Supra* at 3; Brief at 6-7, 12-13. And Storms'

8

claim to have invented claim 16 is meritless based on his own admissions, those of BearBox's expert Frank McCamant, and documents Lancium produced in discovery. Brief at 7, 13. Thus, after the Court's claim construction ruling, BearBox's inventorship claims as to every claim element in the '433 patent were meritless and its continued litigation makes this case exceptional.

**IV. The Court Should Award Lancium Its Requested Costs, Including Expert Witness Costs Incurred After The Claim Construction Ruling**

BearBox's contention that its post-claim construction conduct has not risen to a level warranting the award of expert witness costs ignores its bad faith conduct after claim construction. A "court may use sanctions in cases involving bad faith conduct that cannot be otherwise reached by rules or statutes" to award expert witness costs, even where the misbehaving party's conduct "did not amount to fraud." *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1391 (Fed. Cir. 2008) (affirming award of expert witness costs); *see also MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 921-22 (Fed. Cir. 2012). Here, not only did BearBox force Lancium to incur the cost and inconvenience of trial on inventorship claims that had become baseless, but BearBox's conduct demonstrates that it did so in bad faith. BearBox did not respond to Lancium's post-claim construction letter advising that "to the extent Plaintiffs ever had [a] good faith basis to assert their inventorship claims, the court's claim construction ruling extinguished such basis." Brief Ex. 1. Instead, BearBox attempted to save its claims by serving a new, eleventh-hour expert report for which the Court has found "it is clear that Dr. McClellan is offering new legal theories and opinions" and that "BearBox's disregard of the express terms of the Court's Scheduling Order" in serving the report on the eve of trial, months after the close of expert discovery "indicates bad faith" D.I. 247 at 2, 4. And after this report was stricken, McClellan offered testimony at trial that the Court found "was not credible based on multiple inconsistencies between Dr. McClellan's expert reports, deposition testimony, and trial testimony." D.I. 262 at FF101. This conduct forced

9

Lancium to incur substantial expert witness costs to rebut McClellan's testimony, warranting an award of these costs.

BearBox's attempt to distinguish *Dexcom, Inc. v. AgaMatrix, Inc.*, No. 16-5947, 2018 WL 11350029 (C.D. Cal. May 9, 2018) is also unavailing. There the court explained that "[w]hile the Court has not found that Dexcom's case was entirely unreasonable at the time it was filed, Plaintiff had no objective basis for continuing to assert infringement following the Court's *Markman* order." *Id.* at *11. Thus, the Court should award Lancium its requested costs.[5]

## V. The Court Should Award Lancium Its Attorneys' Fees Incurred to Strike BearBox's Untimely, Improper, and Stricken DTSA Claim

BearBox's Response essentially rehashes the arguments it made in support of its untimely, improper repleading of its DTSA claims, which Magistrate Judge Burke already rejected finding that "[i]t's very clear" that BearBox was not permitted to reassert this claim in the SAC "long past" the deadline for amended pleadings. D.I. 271, Ex. 3 at 41:10-42:13, 43:23-44:8. And the Court has previously found that such "disregard of the express terms of the Court's Scheduling Order indicates bad faith." D.I. 247 at 4. Thus, the Court should award Lancium its attorneys' fees for moving to dismiss this DTSA claim.

## VI. Conclusion

For the reasons above and in Lancium's opening brief, the Court should find this case to be exceptional and award Lancium its reasonable attorneys' fees, costs, and expert witness fees.

---

[5] Other than expert witness fees, BearBox does not dispute that Lancium is entitled to its requested costs, if this case is found to be exceptional. And BearBox's assertion that Lancium has waived the right to later seek taxable costs under Fed. R. Civ. P. 54 (Response at 20 n.9) is wrong. Under L.R. 54.1(a)(1), "[u]nless otherwise ordered by the Court, the prevailing party shall be entitled to costs" and "[t]he party shall, within 14 days after the time for appeal has expired or within 14 days after the issuance of the mandate of the appellate court, file a bill of costs." Thus, the deadline in the Final Judgment to "move for costs" does not apply. Lancium does not have to move for an award of taxable costs; by rule Lancium is already entitled to costs and must only "file a bill of costs" within the deadline set by L.R. 54.1(a)(1), which has not yet passed.

| | |
|---|---|
| Dated:  May 10, 2023 | BARNES & THORNBURG LLP |

/s/ Chad S.C. Stover
Chad S.C. Stover (No. 4919)
222 Delaware Avenue, Suite 1200
Wilmington, Delaware 19801-1050
Telephone: (302) 300-3474
E-mail: chad.stover@btlaw.com

Mark C. Nelson (admitted *pro hac vice*)
David Lisch (admitted *pro hac vice*)
2121 N. Pearl Street, Suite 700
Dallas, TX  75201
Tel:  (214) 258-4140
E-mail:  mark.nelson@btlaw.com
            david.lisch@btlaw.com

Adam M. Kaufmann (admitted *pro hac vice*)
Darrick Hooker (admitted *pro hac vice*)
Dana Amato Sarros (admitted *pro hac vice*)
One North Wacker Drive, Suite 4400
Chicago, IL 60606
Tel:  (312) 214-8319
Email:   adam.kaufmann@btlaw.com
Email:   darrick.hooker@btlaw.com
Email:   dana.sarros@btlaw.com

*Attorneys for Defendants Lancium LLC, Michael T. McNamara, and Raymond E. Cline Jr.*