**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

BEARBOX LLC and AUSTIN STORMS,

                Plaintiffs,

        v.

LANCIUM LLC, MICHAEL T.
MCNAMARA, and RAYMOND E.
CLINE, JR.,

                Defendants.

C.A. No. 21-534-GBW

---

## MEMORANDUM ORDER

Pending before the Court is Lancium LLC, Michael T. McNamara, and Raymond E. Cline, Jr.'s, (together, "Defendants") Motion for Attorney's Fees, Costs, Expenses, and Expert Fees in connection with Bearbox LLC and Austin Storms' (together, "Plaintiffs") claims for correction of inventorship of U.S. Patent No. 10,608,433 ("the '433 patent") and trade secret misappropriation. D.I. 269. Having reviewed the parties' briefing, D.I. 270, D.I. 273, and D.I. 275, and having heard oral argument regarding Defendants' motion on June 5, 2023, the Court denies Defendants' motion for the reasons stated below.

## I.    LEGAL STANDARD

In patent cases the Court deems "exceptional," the Court may award "reasonable attorney fees" to the "prevailing party." 35 U.S.C. § 285. The Supreme Court has held that an "exceptional" case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S.Ct. 1749, 1756 (2014). Ultimately, the Court must make a discretionary

decision based on the totality of circumstances. *See id.* A party moving for attorney fees must demonstrate, by a preponderance of the evidence, that the case is "exceptional." *Id.* at 1758.

The Federal Circuit has instructed that "[t]he ... purpose behind § 285 is to prevent a party from suffering a 'gross injustice'" and that "[t]he exercise of discretion in favor of awarding attorney fees should be bottomed upon a finding of unfairness or bad faith in the conduct of the losing party, or some other equitable consideration ... which makes it grossly unjust that the winner ... be left to bear the burden of his own counsel fees." *Checkpoint Sys., Inc. v. All-Tag Security S.A.*, 858 F.3d 1371, 1376 (Fed. Cir. 2017) (alterations and quotations omitted). In other words, "fee awards are not to be used 'as a penalty for failure to win a patent infringement suit.'" *Id.* (quoting *Octane Fitness*, 134 S. Ct. at 1753).

## II.    DISCUSSION

Defendants prevailed on every claim asserted by Plaintiffs. *See* D.I. 267. Thus, the only remaining issues are whether Plaintiffs' claim for correction of inventorship of the '433 patent was "exceptional" and whether Plaintiffs asserted its trade secret misappropriation claim in bad faith. *See* D.I. 270 at 1-3. Defendants contend that this is an exceptional case because Plaintiffs (1) continued litigation after the Court's claim construction ruling rendered its position untenable, (2) filed a supplemental expert report on the eve of trial asserting new legal theories and opinions relating to conception of the '433 patent, and (3) knew Mr. Storms was not the sole inventor of the '433 patent. *Id.* Defendants also contend that Plaintiffs asserted its misappropriation claim in bad faith because, after Plaintiffs voluntarily dropped its claim for trade secret misappropriation, Plaintiffs re-inserted the claim into the case—without seeking leave—after the deadline for amending pleadings. *Id.* For the reasons stated below, the Court

2

finds that the case was not exceptional and that Plaintiffs did not assert its misappropriation claim in bad faith.  Accordingly, the Court denies Defendants' motion.

> **A.    The Court Finds that Plaintiffs' Decision to Continue Litigating its Inventorship Claim After the Court's Claim Construction Ruling Did Not Render this Case "Exceptional."**

Defendants contend that this case is exceptional because Plaintiffs' inventorship claim was unjustifiably based on its meritless claim construction positions.  *See* D.I. 270 at 12. Specifically, Defendants argue that Plaintiffs' claim construction positions alone render this case exceptional because "[c]ourts frequently find that claim construction positions that ignore the intrinsic record" "are frivolous and warrant a finding of exceptionality." *Id.* at 9 (citing *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1327-29 (Fed. Cir. 2013).  Defendants also contend that Plaintiffs' decision to continue litigating its sole inventorship claim after the Court rejected Plaintiffs' claim construction positions renders this case exceptional.  *Id.* at 13.

The Court disagrees that Plaintiffs' claim construction positions, or its decision to continue litigating its inventorship claim after receiving the Court's claim constructions, renders this case exceptional.  Although the Court adopted Defendants' claim construction positions for the disputed terms "power option agreement" and "minimum power threshold," this itself does not mean that Plaintiffs' claim construction positions were "objectively baseless." *See* D.I. 219; *Taurus IP*, 726 F.3d at 1328 ("While an adverse claim construction generally cannot, alone, form the basis for an exceptional case finding, . . . a party cannot assert baseless infringement claims and must continually assess the soundness of pending infringement claims, especially after an adverse claim construction.").  In fact, until the parties filed their respective motions for summary judgement, Defendants *agreed* with Plaintiffs that each term possessed its plain and ordinary meaning. *See* D.I. 179, Ex. T; D.I. 148.

Moreover, while the Court adopted Defendants' proposed claim constructions, the Court denied Defendants' motion for summary judgement because the Court found that there existed genuine issues of material fact regarding who conceived of the '433 patent's subject matter. *See* D.I. 291, D.I. 230 at 5. Thus, Plaintiffs' decision to continue litigating the sole inventorship claim after receiving the Court's claim constructions was not sufficiently unreasonable to warrant a finding that this case is exceptional. *See Sarif Biomedical LLC v. Brainlab, Inc.*, 725 F. App'x 996, 1000 (Fed. Cir. 2018) ("under § 285, a party's position [must] be 'objectively unreasonable,' rather than merely 'weak,' for an award of attorney fees.").

The Court also finds that Defendants' letter to Plaintiffs stating that Plaintiffs did not have a good faith basis to continue asserting the sole inventorship claim after the Court's claim construction ruling does not compel a different result. *See* D.I. 270 at 5. The presence of an early notice letter, "followed by continuation of litigation, can be a factor in justifying an award of attorney's fees." *Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1358 (Fed. Cir. 2019) (quoting *Nat'l Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*, 676 F. App'x 967, 973 (Fed. Cir. 2017)). However, the Court denied Defendants' motion for summary judgment on Plaintiffs' sole and joint inventorship claims. *See* D.I. 230. Thus, Plaintiffs' decision to continue litigating inventorship after receiving Defendants' notice letter was not objectively unreasonable. *See Checkpoint*, 858 F.3d at 1376 ("Absent misrepresentation to the court, a party is entitled to rely on a court's denial of summary judgment . . . as an indication that the party's claims were objectively reasonable and suitable for resolution at trial.") (internal quotation marks omitted).

4

**B.    The Court Finds that Plaintiffs' Untimely Supplemental Expert Report
        Did Not Render this Case "Exceptional."**

Defendants also contend that this case is exceptional because Plaintiffs filed an untimely
supplemental expert report.   D.I. 270 at 11.   The Court faulted Plaintiffs for its untimely
supplemental expert report—particularly given that Plaintiffs had not sought leave to
supplement—and stated that Plaintiffs' filing "indicate[d] bad faith."    D.I. 247 at 4.
Accordingly, the Court struck the supplemental report.  *Id.*  The record, however, suggests that
Plaintiffs learned of Defendants' intent to preclude all testimony by Dr. McClellan regarding the
Court's *Markman* order only after the parties met and conferred.  *See* D.I. 241 at 1-3.   Thus,
Plaintiffs first became aware of the issues it sought to resolve in its supplemental expert report at
the parties' meet and confer.  *See id.*  Thereafter, Plaintiffs took the position that Dr. McClellan
needed to consider the Court's *Markman* order—and supplement his report—to offer opinions
consistent with the Court's claim construction.  *See id.* at 4-5.

While the Court struck Dr. McClellan's supplemental report as untimely, Plaintiffs'
actions were not sufficiently unreasonable to warrant a finding that this case is exceptional.  *See*
D.I. 247. Notably, the Court agreed with Plaintiffs' contention that Dr. McClellan could only
testify consistent with the Court's claim constructions.  *See id.* at 4-5.  In addition, Plaintiffs
served Dr. McClellan's initial expert report prior to the Court's claim construction order.  D.I.
141.  Thus, the Court may have granted a *timely* motion for leave to supplement Dr. McClellan's
expert report.  *See* D.I. 247 ("[T]he exclusion of otherwise admissible testimony because of a
party's failure to meet a timing requirement is a harsh measure and should be avoided where
possible.") (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 792 (3d Cir. 1994)).
Accordingly, even though the Court found Plaintiffs' timing indicative of bad faith, the Court
finds that, in this instance, Plaintiffs' desire to supplement Dr. McClellan's expert report to

ensure consistency with the Court's claim construction order did not render this an exceptional case. *See* D.I. 247.

## C. The Court Finds that Plaintiffs' Claim for Sole Inventorship Did Not Render this Case "Exceptional."

Defendants further contend that this case is exceptional because, in light of WO Patent Application No. 2019/139632 ("the '632 patent application"), Plaintiffs' claims for sole inventorship were meritless from the date of Plaintiffs' first filing.   D.I. 270 at 16-18. Defendants contend that Plaintiffs failed to conduct a proper pre-suit investigation because Plaintiffs would have found the '632 patent application had Plaintiffs inspected the prior art. *Id.* Thus, the case is exceptional because the Court—based on, *inter alia*, the '632 patent application—found that Defendants conceived of, and reduced to practice, elements of the '433 patent prior to any communication with Plaintiffs. *Id.* Defendants further contend that the case is exceptional because Plaintiffs did not address the '632 patent application at trial, or in its expert reports, even though Defendants' answer and counterclaims put Plaintiffs on notice of the '632 patent application and its relevance to the case. *Id.*

Conversely, Plaintiffs contend that it analyzed the '632 patent application and reasonably relied on the deficiencies it identified therein. D.I. 273 at 8.  Plaintiffs also contend that it relied on Dr. McClellan's opinion that the '632 patent application "differs from Storms' system in at least a few key areas" and Dr. McClellan's testimony that the '632 patent application did not teach the specific "monitored conditions" claimed in the '433 patent. *See id.*, Ex. 9 at 4-5; *id.*, Ex. 8 at 376:10-16.

The Court finds that Plaintiffs' claim for sole inventorship did not render this case exceptional.   The Court, in denying Defendants' motion for summary judgement, rejected

Defendants' argument that no reasonable juror could find that Mr. Storms was the sole inventor of the '433 patent. *See* D.I. 230. Thus, even considering the '632 patent application, Plaintiffs' position that Mr. Storms was the sole inventor of the '433 patent was not meritless. Further, after Plaintiffs learned of the '632 patent application, Plaintiffs reasonably relied on the purported deficiencies that Dr. McClellan identified with respect to the '632 patent application's teachings as compared to Plaintiffs' claimed technology. *See, e.g.*, D.I. 262 ("Plaintiffs' expert, Dr. McClellan, analyzed Storms' Source Code and concluded that, while never shown to Defendants, it corroborates that Storms conceived of each claim of the '433 patent.") (citing Tr. 281:8-307:8).

Having considered the reasons, both separately and in their entirety, advanced by Defendants for why this case is "exceptional" such that the Court should grant an award of attorney's fees, the Court is not convinced that the facts of this case render the case exceptional. *See Octane Fitness*, 134 S.Ct. at 1756. Instead, while the Court ruled in Defendants' favor on some issues, the Court finds that both parties' positions had merit—evidenced in part by the parties' decision to proceed to trial. The Court also finds that Plaintiffs' untimely filing of its supplemental expert report was not sufficient to make this case "stand out from others" with respect to how the parties litigated the action. *See id.* Accordingly, the Court denies Defendants' motion for fees under 35 U.S.C. § 285.

### D.  The Court Finds that Plaintiffs Did Not Assert its Misappropriation Claim in Bad Faith.

Defendants seek reasonable attorneys' fees for the costs incurred in its successful motion to strike Plaintiffs' trade secret misappropriation claim. D.I. 270 at 18-19; *see* 18 U.S.C. § 1836(b)(3)(D) ("[I]f a claim of misappropriation is made in bad faith, which may be established

by circumstantial evidence," the Court may "award reasonable attorney's fees to the prevailing party.").

Defendants argue that Plaintiffs re-asserted its misappropriation claim in bad faith because Plaintiffs failed to comply with the Court's scheduling order. *See* D.I. 270 at 18-19. Plaintiffs initially asserted, but later dropped, a claim for trade secret misappropriation. *See* D.I. 1; D.I. 103. Plaintiffs then, without seeking leave to amend, re-asserted its claim for misappropriation in its Second Amended Complaint—after the deadline for amending pleadings had passed. *See* D.I. 103. Defendants moved to strike the claim. *See* D.I. 270 at 18-19. In granting Defendants' motion, the Court found that Plaintiffs' assertion that it did not need to seek leave was meritless because "[i]t's very clear" that Plaintiffs could not assert such a claim in the Second Amended Complaint without first seeking leave. *Id.*, Ex. 3 at 41:10-42:13.

The Court finds that Plaintiffs did not re-assert its misappropriation claim in bad faith and, thus, denies Defendants' motion for an award of attorney's fees. The Court explained that Plaintiffs could have "filed a separate motion for leave to amend with regard to [the] trade secret misappropriation claims." D.I. 270, Ex. 3 at 42:14-19. Accordingly, the Court did not cite Plaintiffs' failure to seek leave to amend "as a reason why [Defendants'] motion to strike should be granted." *Id.* Instead, the Court treated Plaintiffs' answering brief in opposition to Defendants' motion to strike as a *de facto* motion for leave. *Id.* at 42:19-22. While the Court granted Defendants' motion to strike because Plaintiffs filed its *de facto* motion for leave four (4) months after the deadline to amend pleadings, the Court did not find that Plaintiffs' motion was filed in bad faith. *See* D.I. 270, Ex. 3.

Accordingly, while the Court's Scheduling Order required Plaintiffs to seek leave to amend prior to re-asserting its trade secret misappropriation claim, the Court finds that Plaintiffs

8

did not re-assert the claim in bad faith. *See Elmagin Capital, LLC v. Chen*, 2022 WL 2192932 (E.D. Pa. June 17, 2022) ("Defendants say that [Plaintiff] misbehaved throughout the case by prolonging discovery, filing baseless or untimely motions, and withdrawing evidence at the eve of trial. I disagree that this behavior was bad faith []."). Thus, the Court denies Defendants' motion for fees related to Plaintiffs' trade secret misappropriation claim under 18 U.S.C. § 1836(b)(3)(D).

### III.    CONCLUSION

WHEREFORE, at Wilmington this 9th day of January 2024, **IT IS HEREBY ORDERED** that Defendants' Motion for Attorney's Fees, Costs, Expenses, and Expert Fees is **DENIED**. *See* D.I. 269.

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Date: January 9, 2024